**EXHIBIT 4**

43

Apr-14-06   09:24   From-Monteleone & McCrory, LLP          2136129935          T-969  P.002/002  F-751

STEPHEN MONTELEONE
(1886-1962)

# MONTELEONE & McCRORY, LLP
### LAWYERS
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
725 SOUTH FIGUEROA STREET, SUITE 3200
LOS ANGELES, CALIFORNIA 90017-5446
TELEPHONE (213) 612-9900
FACSIMILE (213) 612-9930

ORANGE COUNTY OFFICE
450 WEST FOURTH STREET, SUITE 150
SANTA ANA, CALIFORNIA 92701

TELEPHONE
(714) 565-3170

FACSIMILE
(714) 565-3184

April 14, 2006

OUR FILE NUMBER
14852

Terry R. Marston II
Marston Heffernam Foreman PLLC
16880 NE 79th Street
Redmond WA 98052

Robert J. Dickson
Atkinson Conway & Gagnon
420 L Street, 5th Floor
Anchorage AK 99501

Michael E. Kreger
Jacob Nist
Perkins Coie LLP
1029 W 3rd Ave, Suite 300
Anchorage AK 99501

Peter Partnow
Lane Powell PC
301 W Northern Lights Blvd, Suite 301
Anchorage AK 99503

James B. Stoetzer
Lane Powell
1420 Fifth Ave, Suite 4100
Seattle WA 98101

Eric J. Brown
Jermain Dunnagan & Owens PC
3000 A Street, Suite 300
Anchorage AK 99503

Re:   *Absolute Environmental Services v. Emerco, Inc., et al.*
      USDC (AK) Case No. A-03-0199 (RRB)

To All Counsel:

Defendants Emerco, Inc., and Forrest J. McKinley object to taking the depositions of witnesses who have already been deposed, and with respect to the re-taking of depositions of Emerco-related witnesses, they will not be produced without a court order. Moreover, in view of the relatively limited dollar value of this case and the limited time remaining before trial, re-taking depositions is both unwarranted and a waste of resources. Finally, under no circumstances will the defendants agree to continue the July 24, 2006, trial date.

Very truly yours,

MONTELEONE & McCRORY, LLP

By _____
WILLIAM R. BAERG

EXHIBIT 4

# EXHIBIT 5

45

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                      DISTRICT OF ALASKA
 3
    ABSOLUTE ENVIRONMENTAL SERVICES,    )
 4  INC., an Alaska Corporation,        )
                                        )
 5              Plaintiff,              )
                                        )
 6  vs.                                 )
                                        )
 7  FORREST J. McKINLEY, an individual,)
    d/b/a "Imperial Industrial          )
 8  Coatings"; and EMERCO, INC., a      )
    California corporation, d/b/a       )
 9  Imperial Industrial Coatings;       )
    BRECHAN ENTERPRISES, INC., an       )
10  Alaska Corporation; and SAFECO      )
    INSURANCE COMPANY OF AMERICA,       )
11  a Washington corporation,           )
                                        )
12              Defendants.             )
    _____)
13
    Case No. A03-199 CIVIL
14
15
16                      HEARING
17      BEFORE THE HONORABLE RALPH R. BEISTLINE
          September 2, 2005 - Pages 1 through 22
18
19
20
21
22
23
24
25
```

EXHIBIT 5

46

Page 2

```
 1                    A P P E A R A N C E S
 2      FOR ABSOLUTE ENVIRONMENTAL SERVICES, INC.:
 3
                        Marston, Heffernan & Foreman
 4                      16880 NE 79th Street
                        Redmond, Washington  98052
 5                      BY:  TERRY R. MARSTON
                        Appearing Telephonically
 6
        FOR EMERCO, INC., IMPERIAL INDUSTRIAL COATINGS, and
 7      FORREST J. McKINLEY:
 8                      JERMAIN, DUNNAGAN & OWENS
                        3000 A Street, Suite 300
 9                      Anchorage, Alaska  99503
                        BY: ERIC J. BROWN
10
        FOR BRECHAN ENTERPRISES, INC. and SAFECO INSURANCE
11      COMPANY OF AMERICA:
12                      PERKINS COIE
                        1029 W. 3rd Avenue, Suite 300
13                      Anchorage, Alaska  99501
                        BY: MICHAEL KREGER
14
        FOR SPECIALTY POLYMERS:
15
                        ATKINSON, CONWAY & GAGNON
16                      420 L Street, Suite 300
                        Anchorage, Alaska  99501
17                      BY:  ROBERT J. DICKSON
18
        ALSO PRESENT:
19                      Forrest J. McKinley
                        (Telephonically)
20
21
22
23
24
25
```

47

Page 3

1                    PROCEEDINGS

2              THE CLERK:  All rise.  His Honor

3    the Court, United States District Court for the

4    District of Alaska is now in session.  The

5    Honorable Ralph R. Beistline presiding.

6              Please be seated.

7              Your Honor, telephonic appearances

8    this morning are Terry Marston and Forrest

9    McKinley.

10             THE COURT:  Good morning.

11             MR. MARSTON:  Good morning,

12   Your Honor.

13             MR. KREGER:  Good morning,

14   Your Honor.

15             MR. McKINLEY:  Good morning, Your

16   Honor.

17             THE COURT:  Okay.  We've got a

18   number of people here.  It's -- we're on the

19   record.  It's Absolute Environmental versus

20   Forrest McKinley, et al.  Case No. A03-0199

21   Civil.

22             Even since I set this hearing,

23   there's been developments in the case, including

24   the apparent intention to add additional parties,

25   and to file third-party complaint since August

Page 4

1    31st.

2                    Who is going to be the subject of

3    the Third-Party Complaint?

4                    MR. KREGER:  Your Honor, I'm Mike

5    Kreger.  I represent Brechan Enterprises, Inc.

6    We're the Third-Party Complainant.  The subject

7    of the Third-Party Complaint is Coffman

8    Engineers, Incorporated.

9                    THE COURT:  Okay.

10                    MR. KREGER:  And there is an

11   unopposed motion -- as far as I know, it was

12   unopposed -- to amend the answer to assert the

13   Third-Party Complaint against Coffman.  That was

14   filed on the 31st.

15                    THE COURT:  Okay.  So they haven't

16   been served yet?  Coffman hasn't?

17                    MR. KREGER:  They have not been

18   served.  The motion hasn't been ruled on yet.

19   That's one thing we could accomplish today.

20                    THE COURT:  Well, I think I -- I

21   think I signed that.  Let's see.

22                    MR. KREGER:  It would have just

23   come in front of the Court, I think, yesterday or

24   the -- perhaps the day before.

25                    THE COURT:  I knew I saw it.

49

Page 5

1                    Stipulate -- let's see, this is

2    August 30th.   Stipulation regarding deadline for

3    joinder of additional parties.   So that was done

4    -- I signed that.

5                    MR. KREGER:   Yes.

6                    THE COURT:   So that's what I

7    signed.

8                    And Then we had -- then we had the

9    joinder stipulation.   Unopposed motion -- to file

10   Third-Party Complaint.   And the question is:   Did

11   I sign that?

12                   THE CLERK:   I believe it's docket

13   119.

14                   THE COURT:   I did -- see, it isn't

15   the file.   Did I sign it?

16                   THE CLERK:   There's a docketed

17   order at 119 granting unopposed motion to file

18   Third-Party Complaint.

19                   THE COURT:   See, I knew I signed

20   it.   It just didn't make the file yet.

21                   MR. KREGER:   We can pick up a copy

22   today and -- and commence service on Coffman

23   immediately, then.

24                   THE COURT:   This is a top-rate

25   clerk.

Page 6

1                    MR. KREGER:  Isn't she?

2                    THE COURT:  She knows more what I

3      did, than I did.

4                    Okay.  So it's done.  It just

5      hasn't made my file yet.

6                    So how can we be ready for trial

7      when -- when one of the parties doesn't even know

8      that they're a party yet?

9                    MR. KREGER:  My suggestion,

10     Your Honor, would be to continue this scheduling

11     conference until we've had a chance to serve

12     Coffman, give us 15 days or 30 days, and give

13     them a chance to appear, and then we'll have --

14     be able to do it in one fell swoop.  We'll get

15     all the parties.

16                    THE COURT:  That, obviously, you

17     know, I've done this long enough to know that if

18     I didn't do that, I'd get a motion for

19     continuance -- you know how these things --

20     you've all been involved -- you've been on both

21     sides of that I'm sure.  "How can I possibly be

22     ready?  I just got served yesterday."

23                    MR. KREGER:  Right.

24                    THE COURT:  So why -- but I can't

25     talk to just you.  There's all kinds of other

61

Page 7

1    people.

2              MR. BROWN:  Your Honor, Eric Brown

3    for Forrest McKinley and Emerco.  I would agree

4    we're just going to duplicate things if we

5    don't continue this --

6              THE CLERK:  Mr. Brown, could you

7    speak into the microphone, please?

8              MR. BROWN:  We're just going to

9    duplicate things if we don't --

10             THE COURT:  Okay.  So you think we

11   should continue this whole matter, get all the

12   parties before us, come back, and then talk about

13   maybe a scheduling order, trial date, et cetera?

14             MR. BROWN:  Yes, Your Honor, get

15   some solid dates down and get this thing rolling.

16             THE COURT:  In terms of trial

17   dates, I saw people -- anytime after March I'm

18   available.  Usually, six months out, you can

19   almost be pretty certain you can have a date from

20   me.  Just in looking at the calendar, it's always

21   clogged three to four months out.  And then it

22   just opens up -- it just -- because of our heavy

23   criminal work, that just seems to be the way it

24   is.

25             So, for instance, if you wanted a

Page 8

1   trial next May, you could probably have the whole

2   month.  And then we'd be precluded by criminal

3   cases that interjected themselves in between.

4   But that's the way the calendar is, clogged for

5   usually four to six months ahead; wide open after

6   that.

7                    MR. MARSTON:  Your Honor, this is

8   Terry Marston speaking, the attorney for

9   Plaintiff, Absolute Environmental.

10                    THE COURT:  Yes.

11                    MR. MARSTON:  The chief concern

12   that we have is that as of three days ago this

13   case has been pending for two years.

14                    THE COURT:  Right.

15                    MR. MARSTON:  During that period of

16   time, my client's been out of pocket -- I don't

17   think anybody has disputed -- over $1.2 million.

18   As, you can imagine, that's a heavy burden to

19   bear for a lengthy period of time.

20                    THE COURT:  Right.

21                    MR. MARSTON:  Our No. 1 concern is

22   making sure that a trial date gets set and then

23   speaking to that trial date because, absent that,

24   justice just won't be served in this case.

25                    THE COURT:  Okay, well --

53

1          MR. MARSTON:  I recognize that

2   Coffman was just recently joined.  However, they

3   were aware of the prospect of their joinder, and

4   both Coffman and Brechan were, until just about

5   six months ago, parties for the first year and a

6   half of this suit.

7          THE COURT:  Right.

8          MR. MARSTON:  So, without question,

9   we need some input from Coffman on what their

10  availability is.

11          On the other hand, I would like to

12  get some affirmative indication from you that you

13  would be, in fact, willing to go ahead and set a

14  trial date and set one that is aggressive, given

15  the fact that this case has -- all the parties in

16  this case were participants in this case for a

17  year and a half.  And with vast -- when I'm

18  saying "vast," I mean 95 percent of the paper

19  discovery that would be necessary to include

20  document production in this case has been

21  produced.  The only paper missing would be from

22  the original subcontract, Swalling, and from the

23  Coast Guard.

24          So, the normal lengthy lag time

25  associated with just accumulating and organizing

54

1    documents doesn't exist here.

2                So there -- there isn't any reason

3    to push this thing out for -- for 18, 12, or

4    even, really, beyond six months.

5                I know this is a bit premature

6    because Coffman is going to have to be heard on

7    all this.  But I do -- I would like to hear that

8    the Court would be amenable to going ahead and

9    establishing a trial date and setting a pretrial

10    schedule that everybody understood would be

11    strictly adhered to by the Court.

12                THE COURT:  All I know is that I'm

13    the one who has a wide open calendar that can --

14    at this point can accommodate any trial date the

15    parties can agree upon in the next -- next year.

16                MR. MARSTON:  And that was where we

17    fell down even prior to the issue of Coffman

18    being joined.

19                THE COURT:  Right, I saw that.

20                MR. MARSTON:  Where we fell down

21    was what length of time would be necessary to

22    conduct discovery.

23                THE COURT:  Well, discovery can be

24    ongoing now, can't it?  Is there anything

25    precluding discovery now?

Page 11

1                    MR. KREGER:  We're waiting for

2      initial disclosures from Absolute.  The initial

3      disclosures were due August 15th, and we haven't

4      received them yet.

5                    THE COURT:  Okay.

6                    MR. KREGER:  And, Your Honor, I do

7      believe if it's not -- I think it is premature to

8      discuss setting a trial date.  I do disagree with

9      some of Mr. Marston's points with respect to how

10     much discovery has to take place and significance

11     of our prior involvement in the lawsuit, since

12     when we were involved in the lawsuit there were

13     no claims against Brechan having to do with the

14     allegations that have recently been made.  So

15     there is a substantial amount of discovery, in my

16     view, that needs to be place.

17                    I don't know whether any of this is

18     ripe to be discussed that point, but I think that

19     there is probably more -- our view is that

20     there's more discovery than Mr. Marston's view.

21                    MR. MARSTON:  Just a quick response

22     to Mr. Kreger's comments.  The essence of our

23     claim against Brechan is that they were aware of

24     a significant undisclosed condition on the

25     contract.  And that they failed to disclose that

56

Page 12

1    prior to the time so we could incorporate that

2    into our bid.

3                    That's it.

4                    In the documentation submitted to

5    the Court it was stated that we had ten different

6    claims.  Well, you know how Pleadings works?  You

7    have ten different theories of recovery, but it's

8    all identifying the same operative facts and all

9    talking about the same damages.  And the entire

10   question boils down to:  Did they, in fact, know

11   about the existence of this situation, and did

12   they disclose it?

13                   So that's not going to be something

14   that's going to take lengthy periods of time of

15   discovery.

16                   And as to document production, I

17   have already told Brechan that we have all of the

18   documents that have been produced in this case

19   thus far.  They have been scanned and put on

20   computer disks, and they're available for them.

21                   In fact, we volunteered to send

22   them to them, which we are going to do.  We are

23   in the process of doing right now.  So they will

24   not only have all the documents, but have all the

25   document was Bates numbers, and they'll have them

57

1    by the end of the day Tuesday.

2                 THE COURT:  Good.  So when do you

3    think the trial should be?

4                 MR. MARSTON:  I'd like to see a

5    trial in March.

6                 THE COURT:  Even given the fact

7    that one of the parties is still not served?

8                 MR. MARSTON:  Yes, because they

9    are -- they are aware of the lawsuit.  They

10   contacted me and let me know that they were going

11   to be sued, and they're aware that the nature of

12   the suit is purely indemnity.  They're saying if,

13   in fact, there's any merit to what Absolute is

14   saying about Brechan, then Brechan -- or, excuse

15   me, Coffman is liable over to Brechan.  And

16   that's -- that is the entirety of the lawsuit

17   they tell me they're being sued with.

18                 So they say they haven't been sued

19   yet, but evidently, they've been given at least a

20   courtesy copy of something, because they know

21   what the specific allegations are.

22                 THE COURT:  So how long a trial is

23   this going to be?

24                 MR. MARSTON:  We're probably

25   looking at something on the order of three weeks.

58

Page 14

```
 1                    A SPEAKER:  20 days.

 2                    THE COURT:  Okay.  Well, I saw 20

 3   days.

 4                    MR. DICKSON:  Your Honor, the

 5   Pleading -- this is Dixon for SBC.  The Pleading

 6   does say 20 days.

 7                    THE COURT:  Jury trial?

 8                    MR. MARSTON:  Yes.

 9                    THE COURT:  That's a long trial.

10   But -- but the subject matter is so exciting, I'm

11   sure the jury will be on their edge of their

12   chairs.

13                    (Chuckles.)

14                    MR. MARSTON:  It excites us,

15   Your Honor.

16                    THE COURT:  Okay.  Well, I'm just

17   saying that I can accommodate March, April, May,

18   but I'm not going to do it until we have all the

19   parties here.

20                    20 days is, you know -- I do happen

21   to have on -- of all -- I do happen to have a

22   trial in April, but it's not a -- it's not a

23   20-day trial; it's a four-day trial.  So --

24                    MR. MARSTON:  May I -- may I

25   suggestion that we simply then continue this
```

59

1    hearing for one week, and during that time I'll

2    get in contact with Mr. Stoetzer and Mr. Partnow

3    and see if they are amenable to participating in

4    a -- in a hearing at that point, and if they

5    insist that they need more time before they can

6    participate, then we'll contact the Court and

7    we'll agree to a different date.  But at least

8    we'll have a default date, assuming that -- that

9    date works for them.

10              THE COURT:  Well, one week, is that

11   enough to do everything?  How about two weeks?

12              MR. MARSTON:  I don't know that --

13   that there's any need for two weeks.

14              THE COURT:  I don't either.

15              MR. MARSTON:  All this is a matter

16   of is looking at the calendar.  Remember, these

17   parties have all been in this lawsuit.

18              THE COURT:  Well, I'm pretty

19   accommodating.  I have time next week.  I have

20   time the following week.  Then I move to

21   Fairbanks for a number of trials later in

22   September.

23              MR. KREGER:  Your Honor, Mike

24   Kreger.

25              My suggestion would be to set it

60

Page 16

```
 1   for ten days or two weeks.  That way it will
 2   allow less opportunity for Mr. Stetzer or
 3   Mr. Partnow to say I can't appear in a week, I've
 4   got other things -- other commitments that may
 5   make it more likely.  But we're amenable to
 6   either a week or ten days or two weeks.
 7              THE COURT:  How about September
 8   15th?  That's 13 days from now.  That's a
 9   Thursday.
10              MR. KREGER:  I have a deposition
11   that day, but --
12              THE COURT:  What time?
13              MR. KREGER:  It's scheduled to go
14   all day.
15              MR. MARSTON:  That would work for
16   Absolute.
17              MR. DICKSON:  That will work for --
18              THE COURT:  Do you want me to do it
19   at 1:15 or something so you can --
20              MR. KREGER:  I can take a break
21   from the deposition, yeah.
22              THE COURT:  What would be a convene
23   time to break?
24              MR. KREGER:  1:15 would be
25   convenient.
```

61

Page 17

1          THE COURT:  Okay.  Why don't we do

2    this at 1:15 so you can go late and then take a

3    late lunch?

4          MR. KREGER:  Yeah.

5          THE COURT:  Okay.  Is that okay

6    with everybody?

7          MR. MARSTON:  Okay with Absolute.

8          MR. BROWN:  That's okay with Amerco

9    and McKinley.

10          MR. NANGLE:  That's my 40th

11    college --

12          THE COURT:  That's your 40th

13    wedding anniversary?

14          MR. NANGLE:  40th college reunion

15    in Denver.

16          THE COURT:  Oh.

17          MR. NANGLE:  I will not be here.

18    But if it needs, you will have another attorney

19    come over for us.

20          THE COURT:  Okay.  And remember the

21    whole thrust of it is reset a trial date and

22    discovery schedule.

23          MR. NANGLE:  Right.

24          THE COURT:  So that's the issue.

25    And --

62

Page 18

```
 1                    MR. NANGLE:  Terry is going to be
 2    here telephonically.  I don't really have to be
 3    here.
 4                    THE COURT:  Okay.  All right.
 5    Again, what we're -- I understand it's going to
 6    be a trial -- literally, a trial-setting
 7    conference --
 8                    MR. NANGLE:  Right.
 9                    THE COURT:  -- in which I take a
10    date sometime next year, and then from there,
11    discovery -- everything else will be established.
12                    Is that what everyone is thinking?
13                    MR. MARSTON:  Yes, Your Honor.
14                    MR. KREGER:  Your Honor, for
15    Brechan, we were laboring under the assumption
16    that local Rule 40.3 would obtain and that the
17    parties would have to certify that the case was
18    ready for trial or the Court on its own motion
19    would set the case.  So --
20                    THE COURT:  Well, I do it both
21    ways.
22                    MR. KREGER:  Yeah.
23                    THE COURT:  I come in from State
24    Court --
25                    MR. KREGER:  Yeah.
```

1              THE COURT:  -- where we start off
2    with a trial date, and that's -- I can do that.
3              MR. KREGER:  Sure.
4              THE COURT:  But I'm getting used to
5    federal court where we do it this way.  And so I
6    generally defer to what people are comfortable
7    with.
8              MR. KREGER:  Well, I'm -- I'm
9    comfortable with either, except I don't want
10   Mr. Marston's client's interest in an aggressive
11   trial date to foreshorten what I think is some
12   serious discovery that needs to take place.
13             THE COURT:  That will be our
14   discussion in the next -- in two -- in 13 days
15   when we decide when the trial date will be,
16   because it's not -- it's not going to be my
17   calendar that is a consideration.  I can set it
18   next fall.  I can set it -- I can set it
19   whenever, basically, you want.  I do want to get
20   it resolved, but I want to do it one time.  I
21   don't want to have to get here and then keep
22   continuing it, et cetera, et cetera.
23             MR. KREGER:  Absolutely.
24             THE COURT:  So get a date and
25   everybody can -- no one loves, but everybody can

Page 20

1   live with.

2                 MR. KREGER:  Sure.

3                 THE COURT:  And then get it done

4   then.

5                 MR. KREGER:  Okay.

6                 THE COURT:  And whether we go --

7   seems to me, given the -- how long the case has

8   been pending, it's probably good to set a trial

9   date, but I'll be reasonable in fixing the date.

10  That way we'll satisfy everybody.  We'll have a

11  date.  There's no more messing around in terms of

12  when it's going to trial, but it will be a

13  sufficient -- date sufficient to allow people to

14  do what they have to do.  How about that for

15  fairness?

16                MR. KREGER:  Thank you, Your Honor.

17                THE COURT:  Okay.  Did you hear

18  everything on the telephone?

19                MR. MARSTON:  Yes.

20                MR. McKINLEY:  Everything.  Thank

21  you, Your Honor.

22                THE COURT:  Okay.  1:15 on -- on

23  the 15th.  Trial setting conference, basically,

24  it is what it is.  And then, you know, after

25  that, I'm -- we'll get a date and then I'll say

65

1    what about discovery close, what about these

2    other dates, and I don't know if you gentlemen

3    will have proposals or if I just arbitrarily pick

4    those other dates flowing back from the trial

5    date, which we can do as well.  Okay?

6              MR. KREGER:  Thank you, Your Honor.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25