**Request for Admission 121.** Admit that on March 13, 2002 Brechan de-scoped the Phase I portion of Swalling's' contract from 12,800 square feet to 8,100 square feet.

**Request for Admission 122.** Admit this de-scoped the project from bent 15 to bent 12 of the original cargos wharf.

**Request for Admission 123.** Admit that Brechan received a credit of $145,298.00 from Swalling for the de-scoping from 12,800 square feet to 8,100 square feet.

**Request for Admission 124.** Admit the amount of the credit from Swalling was $145,298.00

**Request for Admission 125.** Admit that Modification #1 of the Swalling Brechan contract modifies the preparation spec as per Option 2 of the Surface Preparation Technical Proposal dated February 26, 2002.

**Request for Admission 126.** Admit Coffman did not include the modified preparation spec per Option 2 of the Surface Preparation Technical Proposal dated February 26, 2002 in the November 26, 2002 Specification for Phase II.

**Request for Admission 127.** Admit Brechan did not include the modified preparation spec per Option 2 of the Surface Preparation Technical Proposal dated February 26, 2002 in the November 26, 2002 Specification for Phase II.

**Request for Admission 128.** Admit that this spec described immediately above was to be applied to work remaining to be completed.

**Request for Admission 129.** Admit modification #1 was executed on behalf of Brechan by Brechan's President Mike Martin.

**Request for Admission 130.** Admit that AESI performed the Swalling Phase I repair and warranty work for Brechan in the Month of October 2003.

EXHIBIT ____1____

PAGE ___61___ OF __91__

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 16

**Request for Admission 131.** Admit the November 26, 2002 Project Plans and Specifications did not describe poor weld workmanship conditions on the Original Cargo Wharf.

**Request for Admission 132.** Admit that the November 26, 2002 Project Plans and Specifications did not describe very rough weld profile conditions on the Original Cargo Wharf.

**Request for Admission 133.** Admit the November 26, 2002 Project Plans and Specifications did not describe weld undercutting conditions on the Original Cargo Wharf.

**Request for Admission 134.** Admit the November 26, 2002 Project Plans and Specifications did not describe the column splice run-off tab conditions on the Original Cargo Wharf.

**Request for Admission 135.** Admit the November 26, 2002 Project Plans and Specifications did not describe the amount of seal welding required on the Original Cargo Wharf.

**Request for Admission 136.** Admit surface defects including weld spatter, poor weld workmanship, very rough weld profiles, weld undercutting, column splice run-off tabs and areas requiring seal welding cause holidays.

**Request for Admission 137.** Admit caulking of surface defects including weld spatter, poor weld workmanship, very rough weld profiles, weld undercutting, column splice run-off tabs will not eliminate coating holidays when a holiday detector is used to detect the holidays.

**Request for Admission 138.** Admit that caulking by skilled and knowledgeable craftsmen of surface defects including weld spatter, poor weld workmanship, very rough weld profiles, weld undercutting, column splice run-off tabs will not eliminate coating holidays when a holiday detector is used to detect the holidays.

**Request for Admission 139.** Admit stripe coating by skilled and knowledgeable craftsmen of surface defects including weld spatter, poor weld workmanship, very rough weld profiles, weld undercutting, column splice run-off tabs will prevent holidays.

EXHIBIT ___1___
PAGE __62 OF 91__

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 17

**Request for Admission 140.** Admit that on October 30, 2001 Coffman stated in a Coffman Memorandum to Scott Bonney of the USCG ISC Kodiak, "An amount of grinding is expected by any coating contractor, however the amount of poor welding and lack of consideration for corrosion engineering design has resulted in an enormous amount of surface preparation".

**Request for Admission 141.** Admit that Coffman did not incorporate into the November 26, 2002 Phase II Specification that the amount of poor welding and lack of consideration for corrosion engineering design had resulted in an enormous amount of surface preparation on the Original Cargo Wharf.

**Request for Admission 142.** Admit that on October 30, 2001 Coffman stated in a Coffman Memorandum to Scott Bonney of the USCG ISC Kodiak, "The contractor has tried numerous times to coat the holiday areas and has spent an excessive amount of time trying to obtain a holiday free coating. But due to the nature of this coating system, accessibility and surface conditions; its going to be difficult to achieve a holiday free coating at the H-pile splice locations".

**Request for Admission 143.** Admit Coffman did not incorporate into the November 26, 2002 Phase II Specification that the contractor can anticipate trying numerous times to coat the holiday areas and spending an excessive amount of time trying to obtain a holiday free coating. And that due to the nature of the coating system, accessibility and surface conditions; it's going to be difficult to achieve a holiday free coating at the H-pile splice locations.

**Request for Admission 144.** Admit Coffman offered three options for correcting the surface preparation problems.

**Request for Admission 145.** Admit that on June 4, 2003 Coffman performed a visual inspection of Bents 1-12 of the Original Cargo Wharf a Brechan's request.

**Request for Admission 146.** Admit that on June 4, 2003 Coffman issued an inspection report to Brechan.

**Request for Admission 147.** Admit that Coffman stated in the June 4, 2003 Inspection report, "The configuration of the H-shape piles and 5" square tube diagonal members, along with the properties of this coating system made this section difficult to coat. In addition, this section had

EXHIBIT_____1
PAGE__63__OF__91

existing surface defects that included: weld spatter, poor weld workmanship, very rough weld profiles, weld undercutting, column splice weld run-off tabs and areas requiring seal welding".

**Request for Admission 148.** Admit that Coffman stated in the June 4, 2003 Inspection report, "As a result of the existing surface conditions, the coating contractor had difficulties obtaining a holiday free coating system on the H-pile splice weld locations. At the request of the project team and USCG, Coffman Engineers developed revised criteria for the coating application. The criteria developed by Coffman was summarized in a memo dated March 16, 2002. It was noted in the criteria, as well as during the preliminary discussions, that rust streaking from the column splice areas would likely occur".

**Request for Admission 149.** Admit that Coffman did not incorporate the March 16, 2002 revised criteria for the coating application in the November 26, 2002 Specification for Phase II of the Cargo Wharf.

**Request for Admission 150.** Admit that Brechan did not incorporate in the November 26, 2002 Specification for Phase II of the Cargo Wharf the criteria developed by Coffman as summarized in a memo dated March 16, 2002.

**Request for Admission 151.** Admit Coffman did not incorporate in the November 26, 2002 Specification for Phase II of the Cargo Wharf that as noted in the criteria, that rust streaking from the column splice areas would likely occur.

**Request for Admission 152.** Admit Coffman stated in the June 4, 2003 Inspection report, "During the April 25th inspection, it was evident that rust streaking was occurring at some of the splice areas, steel pile to concrete interfaces and from concrete form support angles welded only on three sides. Seal welding the form support bracket was removed from the revised criteria and replaced with stripe coating or caulking. This streaking is the type that was previously identified as likely to occur".

**Request for Admission 153.** Admit Coffman stated in the June 4, 2003 Inspection report, "With the present ongoing project, it should also be noted that the rust staining will likely continue on the remainder of the cargo wharf in areas where there is no seal welds, such as the concrete form support brackets. Seal welding is the best way (and most expensive) to prevent crevice corrosion between two lapped pieces of steel in a marine environment".

EXHIBIT _____1_____

PAGE __64_ OF _91_

**Request for Admission 154.** Admit Coffman stated in the December 7, 2003 Phase I Warranty Inspection report, "Coffman Engineers phase I "warranty" coating inspection report dated April 25, 2003 identified areas of corrosion that were to be repaired during this construction year. During the month of October, areas were repaired in accordance with the project specifications"

**Request for Admission 155.** Admit Coffman stated in the December 7, 2003 Phase I Warranty Inspection report, "On December 7, 2003, at the request of Brechan Enterprise, a final visual inspection was performed on the Phase I coating system repairs that were completed during October by Absolute Environmental Services Inc. The December inspection found all coating repair areas identified in the April 25th report, as being completed and visually acceptable in accordance with the project specifications".

**Request for Admission 156.** Admit Coffman stated in the December 19, 2003 Phase II Inspection Report, "During the April 2003 phase I warranty inspection, it was evident that rust streaking was occurring at some of the splice areas, steel pile to concrete interfaces and from the concrete form support angles welded only on three sides. The rust streaking shown below was previously identified as likely to occur. It should be noted that the phase II contractor completely removed a large number of the concrete form support brackets, eliminating the possibility of rust streaking from crevice corrosion at these locations".

**Request for Admission 157.** Admit Coffman stated in the December 17, 2004 Phase II Warranty Inspection report, "A final one-year warranty inspection was performed in October 2004 on the USCG Kodiak Cargo Wharf pile coating system that was applied during the 2003 construction system".

**Request for Admission 158.** Admit Coffman stated in the December 17, 2004 Phase II Warranty Inspection report, "During the April 2003 phase I warranty inspection, it was evident that rust streaking was occurring at some of the splice areas, steel pile to concrete interfaces and from the concrete form support angles welded only on three sides. The rust streaking shown below was previously identified as likely to occur. It should be noted that the phase II contractor removed a large number of the concrete form support brackets, eliminating the possibility of rust streaking from crevice corrosion at these locations. However, rust streaking from the pile to concrete pile-cap interface is also likely to occur throughout the phase II areas".

**Request for Admission 159.** Admit Coffman stated in the December 17, 2004 Phase II Warranty Inspection report, "During the October 2004 final inspection, a warranty inspection list was generated with 143 individual items".

EXHIBIT _____1_____

PAGE __65__ OF __91__

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 20

**Request for Admission 160.** Admit Coffman stated in the December 17, 2004 Phase II Warranty Inspection report, "After all coating repairs were completed in accordance with the project specifications; a follow-up inspection was performed in December 2004.  After a thorough visual inspection and holiday testing of all 142 coating repair areas in accordance with the project specifications, the coating system appears acceptable and is providing adequate corrosion protection".

**Request for Admission 161.** Admit there is a difference between a thorough visual inspection and holiday testing.

**Request for Admission 162.** Admit there was a less stringent acceptance criteria for the H-piles in phase I than for the H-piles for phase II.

**Request for Admission 163.** Admit that Brechan backcharged AESI for all Coffman Cargo Wharf related charges after August 2003.

**Request for Admission 164.** Admit that there was no final holiday testing performed on Bents 6 through 12 at the splice areas and the concrete form support angles welded only on three sides.

**Request for Admission 165.** Admit that there was final holiday testing performed on Bents 13 through 33 at the splice areas and the concrete form support angles welded only on three sides.

**Request for Admission 166.** Admit that Coffman stated in a June 16, 2003 Coffman Field Memorandum to Brechan that, "Not only was the coating repair areas not visually inspected by the applicators QC, but also there obviously was no holiday detection performed after coating repairs. The holiday detection testing is required to be performed after coating repairs to ensure that no holidays still exist".

**Request for Admission 167.** Admit that Coffman is referring to IIC in its June 16, 2003 Coffman Field Memorandum to Brechan.

EXHIBIT ____1____

PAGE _6_ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 21

**Request for Admission 168.** Admit that Coffman Engineers designed the coatings system and prepared the specifications for Phase I and Phase II of the Cargo Wharf Project.

**Request for Admission 169.** Admit that $35,000 is not a sufficient amount of money to caulk the welds on bents 13-33 of the original cargo wharf to create a holiday free coating system.

**Request for Admission 170.** Admit that Coffman did not discover defective welds in its initial inspection and design of the Cargo Wharf Project.

**Request for Admission 171.** Admit that Coffman did not disclose defective welds in the November 26, 2002 Phase II Specification.

**Request for Admission 172.** Admit that Coffman did not disclose the amount of defective welds in the November 26, 2002 Phase II Specification.

**Request for Admission 173.** Admit that Coffman did not specify repairs for defective welds in the November 26, 2002 Phase II Specification.

**Request for Admission 174.** Admit that Coffman did not discover missing seal welds in its initial inspection and design of the Cargo Wharf Project.

**Request for Admission 175.** Admit that Coffman did not disclose missing seal welds in the November 26, 2002 Phase II Specification.

**Request for Admission 176.** Admit that Coffman did not disclose the amount of missing seal welds in the November 26, 2002 Phase II Specification.

**Request for Admission 177.** Admit that Coffman did not specify repairs for missing seal welds in the November 26, 2002 Phase II Specification.

EXHIBIT ____1____
PAGE __67__ OF __91__

**Request for Admission 178.** Admit that Specification Section 09967 for Phase I 1.10 SEQUENCE OF WORK states the applicator shall submit bids delineating separate costs for recoating each of the three sections listed in that Specification.

**Request for Admission 179.** Admit Swalling Construction was awarded the entirety of the Cargo Wharf Extension and bents 1-15 of the Original Cargo Wharf as the Phase I project.

**Request for Admission 180.** Admit that the inspection criteria agreed to by Brechan and Swalling at the meeting of March 12, 2002 is all caulking repairs will be visually inspected for bare spots only and no pinhole holiday detection or repairs would be done at the caulked areas.

**Request for Admission 181.** Admit that at the February 8, 2002 meeting between Coffman, Brechan, and Swalling, that Dan Stears stated that the quality of the welding on the cargo dock, and the amount of unwelded adjacent surfaces amounted to a change in conditions.

**Request for Admission 182.** Admit that for the Phase II Cargo Wharf Project, Coffman agreed to indemnify and hold Brechan harmless from claims, liabilities, obligation, government penalties, fines, and causes of action including injury to or death of any person, or damage to or destruction of property resulting from the negligent acts or omissions of Coffman or any lower tier subconsultant, including court costs and attorney's fees.

**Request for Admission 183.** Admit that for the Phase II Cargo Wharf Project, Brechan agreed to indemnify and hold Coffman harmless from claims, liabilities, obligation, government penalties, fines, and causes of action including injury to or death of any person, or damage to or destruction of property resulting from the negligent acts or omissions of Coffman or any lower tier subconsultant, including court costs and attorney's fees.

**Request for Admission 184.** Admit that a SikaFlex limitation is an allowance of 1-week cure at standard conditions when using Sikaflex-1a in total water immersion situations and prior to painting.

**Request for Admission 185.** Admit that the product information sheet for SikaFlex states "do not apply when moisture-vapor-transmission condition exists from the substrate as this can cause bubbling within the sealant."

EXHIBIT _____I_____
PAGE __68__ OF __91__

**Request for Admission 186.** Admit that the steel tabs and concrete form supports on the H-piles in Phase II that were welded only on three sides trapped moisture between the pieces of metal.

**Request for Admission 187.** Admit that Coffman asked SPC in an e-mail on July 9, 2003, "is it acceptable to holiday test over the coating 3 or 4 times? Does holiday testing over the same spot several times have any adverse effects on the coating? For example we are experiencing holidays that we are repairing 3 or 4 times and each time I holiday test to see if they corrected the holiday".

**Request for Admission 188.** Admit that the Coffman Daily Reports Dated 10 August 2003 states, "Surface preparation continues in Area "D" by cutting off all non-structural form supports, weld run-off tabs, pad eyes, etc. and grinding edges smooth. This work will greatly decrease the potential for coating holidays."

**Request for Admission 189.** Admit that the Coffman Daily Reports Dated 11 August 2003 states, "Surface preparation continues in Area "D" by cutting off all non-structural form supports, weld run-off tabs, pad eyes, etc. and grinding edges smooth. The pile splice areas represent the majority of the holiday defects and AESI is going to extreme lengths to reduce the potential for holidays in this location. The considerable efforts in grinding will most likely pay-off during holiday testing of the new coating."

**Request for Admission 190.** Admit Swalling performed Option 1 work on Bents 1-5 of the Original Cargo Pier on Phase I.

**Request for Admission 191.** Admit that Swalling prepared a cost of $33,440.50 for the Option 1 work on Bents 1-5 of the Original Cargo Pier on 2/12/02.

**Request for Admission 192.** Admit that the $33,440.50 for bents 1-5 of the Original Cargo Wharf represented a possible additional cost of at least $475,000 to the project for bents 6-33.

**Request for Admission 193.** Admit that that Absolute performed surface preparation consisting of the cutting off all non-structural form supports, weld run-off tabs, pad eyes, etc. and grinding edges smooth in at least all of areas C, D, and E.

EXHIBIT ____1____
PAGE 69 OF 91

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 24

**Request for Admission 194.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify steel to steel connections that are not welded.

**Request for Admission 195.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify steel to steel connections that are welded only three sides.

**Request for Admission 196.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify the quantity of steel to steel connections that are welded only three sides.

**Request for Admission 197.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify the quantity of structural members with poor quality, defective or water weeping welds that shall be cleaned and seal welded prior to coating.

**Request for Admission 198.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify the quantity of structural members with good quality or non-defective welds to be cleaned and stripe coated prior to final coating.

**Request for Admission 199.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify the quantity of nonstructural members with poor quality or defective welds to be cleaned and stripe coated prior to coating.

**Request for Admission 200.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify the quantity of nonstructural members with water weeping welds to be cleaned and seal welded prior to coating.

**Request for Admission 201.** Admit that Section 1.7.3.6 of the November 26, 2002 Specification for Phase II does not identify the quantity of nonstructural members with good quality or non-defective welds to be cleaned and stripe coated prior to final coating.

EXHIBIT ____1____
PAGE __70__ OF __91__

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 25

**Request for Admission 202.** Admit the November 26, 2002 Specification for Phase II makes no reference as to the magnitude of structural members with poor quality, defective or water weeping welds to be cleaned and seal welded prior to coating.

**Request for Admission 203.** Admit the November 26, 2002 Specification for Phase II makes no reference as to the magnitude of structural members with good quality or non-defective welds to be cleaned and stripe coated prior to final coating.

**Request for Admission 204.** Admit the November 26, 2002 Specification for Phase II makes no reference as to the magnitude of nonstructural members with poor quality or defective welds to be cleaned and stripe coated prior to coating.

**Request for Admission 205.** Admit the November 26, 2002 Specification for Phase II makes no reference as to the magnitude of nonstructural members with water weeping welds to be cleaned and seal welded prior to coating.

**Request for Admission 206.** Admit the November 26, 2002 Specification for Phase II makes no reference as to the magnitude of nonstructural members with good quality or non-defective welds to be cleaned and stripe coated prior to coating.

**Request for Admission 207.** Admit Coffman provided no explanation whatsoever anywhere in the plans and specifications detailing why 1.7.3.6 of the November 26, 2002 Specification was changed.

**Request for Admission 208.** Admit that Coffman made no changes to the Surface Preparation portion of the November 26, 2002 Specification for Phase II to reflect the change in conditions encountered in Phase I.

**Request for Admission 209.** Admit AESI performed Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area E of the Cargo Wharf.

EXHIBIT ____1____
PAGE _71_ OF _91_

**Request for Admission 210.** Admit AESI performed Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area D of the Cargo Wharf.

**Request for Admission 211.** Admit AESI performed Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area C of the Cargo Wharf.

**Request for Admission 212.** Admit AESI performed Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area B of the Cargo Wharf.

**Request for Admission 213.** Admit AESI performed Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area A of the Cargo Wharf.

**Request for Admission 214.** Admit AESI exceeded Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area E of the Cargo Wharf.

**Request for Admission 215.** Admit AESI exceeded Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area D of the Cargo Wharf.

**Request for Admission 216.** Admit AESI exceeded Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area C of the Cargo Wharf.

**Request for Admission 217.** Admit AESI exceeded Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area B of the Cargo Wharf.

**Request for Admission 218.** Admit AESI exceeded Option I quality work (Per the February 26, 2002 Coffman Memorandum) in Area A of the Cargo Wharf.

**Request for Admission 219.** Admit that Coffman made no changes to the Coating Acceptance Criteria in the November 26, 2002 Specification for Phase II to reflect the change in conditions encountered in Phase I.

EXHIBIT _____ 1 _____
PAGE _72_ OF _91_

**Request for Admission 220.** Admit that Coffman made no changes to the Coating Acceptance Criteria in the November 26, 2002 Specification for Phase II to reflect the change in coating acceptance criteria developed for the balance of Phase I performed in 2002 by Swalling.

**Request for Admission 221.** Admit that Coffman made no changes to the Coating Acceptance Criteria in the November 26, 2002 Specification for Phase II to reflect the change in coating acceptance criteria developed by Coffman and summarized in a memo dated March 16, 2002.

**Request for Admission 222.** Admit that Coffman approved surface conditions of the steel surface and allowed IIC to apply coatings knowing that the coatings would not pass holiday detection requirements as specified in the November 26, 2002 specification.

**Request for Admission 223.** Admit that Brechan approved surface conditions of the steel surface and allowed IIC to apply coatings knowing that the coatings could not pass holiday detection requirements as specified in the November 26, 2002 specification.

**Request for Admission 224.** Admit that Coffman approved surface conditions of the steel surface and allowed AESI to apply coatings knowing that the coatings, without repairs, would not pass holiday detection requirements as specified in the November 26, 2002 specification.

**Request for Admission 225.** Admit that Brechan approved surface conditions of the steel surface and allowed AESI to apply coatings knowing that the coatings, without repairs, could not pass holiday detection requirements as specified in the November 26, 2002 specification.

**Request for Admission 226.** Admit that Specification Section 3.5.8.10 of the November 26, 2002 Specification for Phase II states, "Holiday test fully cured coatings on the entire structure using methods and voltages in NACE RP0188 (Latest Revision), 'Discontinuity (Holiday) Testing of Protective Coatings' and manufacturers approved holiday test procedure. The voltage setting shall be set for the actual thickness of the coating being tested. All holidays shall be marked. Pile and attachments not meeting the holiday requirements shall have the holidays repaired."

**Request for Admission 227.** Admit that Specification Section 3.5.10 of the November 26, 2002 Specification for Phase II states, "Upon completion of coating and prior to removal of access, each coated pile and attachment shall be given a final inspection by the COR, Applicator's and

Contractor's Representative. All deficiencies shall be corrected at this time. Any portions of the coating not documented for coating thickness, adhesion, cure, holidays, and visible defects shall be inspected, documented, and corrected."

**Request for Admission 228.** Admit that there were 4 piles in bent 1 of the Original Cargo Wharf.

**Request for Admission 229.** Admit in the 06 October 2001 Coffman Daily Summary Report that Coffman stated, "Bent 1, elevation 119' to 113', seal welding, cutting and grinding continue all day to prepare surfaces for proper coating application."

**Request for Admission 230.** Admit in the 07 October 2001 Coffman Daily Summary Report that Coffman stated, "Bent 1, elevation 119' to 113', seal welding, cutting and grinding continue all day to prepare surfaces for proper coating application. One welder and two helpers."

**Request for Admission 231.** Admit in the 08 October 2001 Coffman Daily Summary Report that Coffman stated, "Bent 1, elevation 119' to 113', seal welding and grinding is completed and acceptable to coat.

**Request for Admission 232.** Admit in the 08 October 2001 Coffman Daily Summary Report that Coffman stated, "Bent 1, environmental conditions within the containment area were controlled and allowed start of abrasive blasting at approximately 10:20AM. Piles A, B, C and D at elevation 119' to 113' were blasted to an SSPC SP-10 Near-White Cleanliness. The surface condition of areas listed above was acceptable with 4.5 mil anchor profile. Surface chloride test results were acceptable in accordance with project specifications."

**Request for Admission 233.** Admit in the 08 October 2001 Coffman Daily Summary Report that Coffman stated, "Coating application performed at 1:25PM. The finished coating displayed numerous visually apparent holidays, runs, and sags. Coating repair is required. Holiday testing will be performed after 24 hours of cure."

**Request for Admission 234.** Admit in the 09 October 2001 Coffman Daily Summary Report that Coffman stated, "Bent 1, elevation 119' to 107', holiday detection testing and DFT measurements performed. Test results indicated low coating DFT on elev. 113' to 107' and numerous holidays

EXHIBIT _____1_____
PAGE _74_ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 29

on elevation 119' to 113'. Most holidays were found at weld locations. Contractor is currently researching methods to improve coverage of weld areas to reduce number of holidays."

**Request for Admission 235.** Admit that the same situations occurred on bents 2 and 3 as did on bent 1 of the Original Cargo Pier.

**Request for Admission 236.** Admit that the same situations occurred on bents 4 and 5 as did on bent 1 of the Original Cargo Pier.

**Request for Admission 237.** Admit that in Coffman's Weekly Summary Report Dates 04 – 11 October 2001, Coffman stated, "Scaffolding is in place on bents 1, 2, 3 and 4. Abrasive blasting began and revealed a large number of surface defects that require an excessive amount of grinding, seal welding and flame cutting. This amount of surface prep was not anticipated and the contractor is not properly equipped to handle all of this in a timely manner."

**Request for Admission 238.** Admit that Coffman made no reference to the fact that on Phase I abrasive blasting revealed a large number of surface defects that required an excessive amount of grinding, seal welding and flame cutting.

**Request for Admission 239.** Admit that in Coffman's Weekly Summary Report Dates 04 – 11 October 2001, Coffman stated, "Coating application to continue on original wharf H-piles. Contractor is going to test some epoxy 'caulking' on the existing H-pile welds that are contributing to the surface prep problems."

**Request for Admission 240.** Admit that on 17 October 2001 there was a meeting held in Kodiak with the following people in attendance.

   a). USCG FD&CC, Steve Locher
   b). USCG COR, Scott Bonney
   c). Brechan Construction, Matt Holmstrom
   d). Coffman Engineers, Dan Stears
   e). Coffman Engineers, Jerry Hardenbergh
   f). Swalling Construction, Mike Anderson
   g). Swalling Construction, Tim Boyles

EXHIBIT ___1___
PAGE _75_ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 30

**Request for Admission 241.** Admit that in the 17 October 2001 Daily Summary Report Addendum Coffman stated, "To stop work for this year, it was mutually agreed that Swalling would complete bent 4 and 5 on the original wharf, testing a 'caulking' coating repair procedure, and stop coating work."

**Request for Admission 242.** Admit that the caulking coating repair procedure referenced in the 17 October 2001 Daily Summary Report Addendum failed to correct the holidays as detected using a holiday detector.

**Request for Admission 243.** Admit that in the 23 October 2001 Daily Summary Report Coffman stated, "After grinding and welding surface prep, caulking of all weld joints was performed with SPC SP-2888 RG.  Coating of all welds will hopefully reduce the number of holidays after final coating is applied."

**Request for Admission 244.** Admit that the caulking coating procedure referenced in the 23 October 2001 Daily Summary Report Addendum failed to correct the holidays as detected using a holiday detector.

**Request for Admission 245.** Admit that in the 24 October 2001 Daily Summary Report Coffman stated, "Holiday detection testing performed on bent 4 and 5, elevation 119' to 113'.  Test results indicated 22 total holidays.  Holidays on bent 1 were repaired by 'caulking' with SPC SP-2888 RG coating."

**Request for Admission 246.** Admit that no matter how many times some areas were repaired with caulk, the areas would not pass final holiday detection.

**Request for Admission 247.** Admit that the caulking repairs referenced in the 24 October 2001 Daily Summary Report Addendum failed to correct the holidays as detected using a holiday detector.

**Request for Admission 248.** Admit that on 24 October 2001 there was a teleconference meeting held with the following in attendance.

EXHIBIT _____ 1

PAGE _76_ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 31

a).  USCG FD&CC, Steve Locher (phone)
b).  USCG FD&CC, Paul Rendon (phone)
c).  USCG COR, Scott Bonney
d).  Brechan Construction, Matt Holmstrom
e).  Coffman Engineers, Jerry Hardenbergh
f).  Swalling Construction, Mike Anderson
g).  Swalling Construction, Tim Boyles

**Request for Admission 249.** Admit AESI performed Option 1 work per the Coffman 24 October 2001 Daily Summary Report Addendum.

**Request for Admission 250.** Admit that Coffman did not describe, identify, or quantify weld spatter in the November 26, 2002 Specification for Phase II.

**Request for Admission 251.** Admit that Coffman did not describe, identify, or quantify poor weld workmanship in the November 26, 2002 Specification for Phase II.

**Request for Admission 252.** Admit that Coffman did not describe, identify, or quantify very rough weld profiles in the November 26, 2002 Specification for Phase II.

**Request for Admission 253.** Admit that Coffman did not describe, identify, or quantify weld undercutting in the November 26, 2002 Specification for Phase II.

**Request for Admission 254.** Admit that Coffman did not describe, identify, or quantify column splice run-off tabs in the November 26, 2002 Specification for Phase II.

**Request for Admission 255.** Admit that Coffman did not describe, identify, or quantify areas missing welds in the November 26, 2002 Specification for Phase II.

**Request for Admission 256.** Admit that Coffman did not identify or describe in the November 26, 2002 Specification for Phase II that even after an excessive amount of time was spent

EXHIBIT _____ I _____
PAGE _77_ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 32

preparing the surface (in Phase I), some areas within the H-pile splice location still cannot be adequately coated and results in holidays.

**Request for Admission 257.** Admit that in the 25 October 2001 Daily Summary Report Coffman stated, "Holiday detection testing performed on bent 1, elevation 119' to 113'. Holidays on bent 1 were again repaired by 'caulking' with SPC SP-2888 RG coating."

**Request for Admission 258.** Admit that in a 30 October 2001 e-mail from Coffman to Swalling, Coffman stated, "The above is your criteria. Option 2; includes additional manpower, equipment and little extra time for moderate surface preparation that will result in a minimal level of holidays. The modified coating acceptance criteria is only applicable between pile elevations 119' and 116'. The acceptance criteria will be 2 or less holidays per lineal foot of weld; size not to exceed 1/8" diameter per holiday and cumulative length not to exceed ½ inch per foot of weld.

**Request for Admission 259.** Admit that the description in the October 30, 2001 e-mail does not constitute a holiday free coating criteria.

**Request for Admission 260.** Admit that the acceptance criteria in the October 30, 2001 e-mail was not incorporated into the November 26, 2002 Specification for Phase II.

**Request for Admission 261.** Admit that in the 05 November 2001 Coffman Daily Summary Report Coffman stated, "Coffman Engineers has written a memo regarding the coating surface preparation issue on the original wharf. The memo has not been distributed as Coffman Engineers is waiting on Swalling construction to estimate a cost for the recommended surface preparation."

**Request for Admission 262.** Admit that in their letter of December 21, 2001 Swalling Construction was seeking $227,542.00 for Option #1 work to correct the surface problems on Bents 6-15.

**Request for Admission 263.** Admit that bents 6-15 represent 87 individual H-piles.

EXHIBIT ____ I ____
PAGE __78__ OF __91__

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 33

**Request for Admission 264.** Admit that this would have represented an approximate average cost of $2,615.43 per pile based on $227,542.00.

**Request for Admission 265.** Admit that bents 16-33 represents 198 individual H-piles.

**Request for Admission 266.** Admit that the $2,615.43 per pile price would have represented an approximate cost of $517,855.00 for bents 16-33.

**Request for Admission 267.** Admit that in their letter of December 21, 2001 Swalling Construction was seeking $128,135.00 for Option #2 work to correct the surface problems on Bents 6-15.

**Request for Admission 268.** Admit that this would have represented an approximate average cost of $1,472.82 per pile for bents 6-15.

**Request for Admission 269.** Admit that the $1,472.82 per pile price would have represented an approximate cost of $291,617.56 for bents 16-33.

**Request for Admission 270.** Admit that in their letter of December 21, 2001 Swalling Construction estimated that there was 3200 lf of caulking work to be performed base on the total lf of welded connections on bents 6-15.

**Request for Admission 271.** Admit that this would have amounted to 37 lf of welding or caulking per pile on average.

**Request for Admission 272.** Admit that this would have amounted to 9,213 lf of caulking or welded connections between bents 13-33.

**Request for Admission 273.** Admit that in the Swalling letter of December 21, 2001 neither Sherwin Williams or Specialty Polymer Coatings was willing to guarantee that there coating

EXHIBIT ____1____

PAGE _79_ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 34

products with caulking products would provide a holiday free (pin-hole) application in the field, as these products were untested for this purpose.

**Request for Admission 274.** Admit in the Swalling letter of December 21, 2001 that Coffman, Swalling, and the coating suppliers came to an agreement that the best procedure available in lieu of removing the brackets and repairing the defective welds was caulking the areas in questions.

**Request for Admission 275.** Admit that none of the aforementioned information from the Swalling December 21, 2001 letter and contained in the previous two requests for admission was incorporated into the November 26, 2002 Specification for Phase II.

**Request for Admission 276.** Admit that in the December 21, 2001 Swalling letter, Swalling's proposals were based on holiday testing for coating thickness only, not including holiday (pinholes) repairs.

**Request for Admission 277.** Admit that per the December 21, 2001 Swalling letter, Swalling and the coating supplier would not be held responsible for coating performance related to pin-hole problems.

**Request for Admission 278.** Admit that in Coffman's February 26, 2002 Memorandum to Brechan Coffman states, "The project coating specification that we developed was intended to coat as much of the pile as feasible possible (lowest practical elevation) and provide a finished product that had a minimal amount of defects (no such thing as a defect free coating)".

**Request for Admission 279.** Admit the foregoing language from the February 26, 2002 Memorandum cannot be found in any version of the project specifications.

**Request for Admission 280.** Admit that AESI delivered a holiday free coating system in accordance with the project specifications for Phase II.

**Request for Admission 281.** Admit that in Coffman's February 26, 2002 Memorandum to Brechan Coffman states, "A part of the specified coating system included surface preparation

EXHIBIT ____( ____
PAGE __80__ OF __91__

requirements.  The intent of the surface preparation requirements was to provide surface cleanliness and anchor profile conditions conducive to the specified coating, while minimizing imperfections related to prior construction techniques (slivers, scabs, weld splatter, etc.)".

**Request for Admission 282.** Admit the foregoing language from the February 26, 2002 Memorandum cannot be found in any version of the project specifications.

**Request for Admission 283.** Admit that in Coffman's February 26, 2002 Memorandum to Brechan Coffman states, "The contract specifications identified the known types of imperfections and in the case of seal welds, quantified the amount that was anticipated to be encountered. Quantification of the seal welding was performed so that the coating contractor could provide a reasonable cost for performing this work.  The exact amount of seal welding could not be estimated without removing all of the existing coating or corrosion products and inspecting the entire area".

**Request for Admission 284.** Admit the foregoing language from the February 26, 2002 Memorandum cannot be found in any version of the project specifications.

**Request for Admission 285.** Admit that in Coffman's February 26, 2002 Memorandum to Brechan Coffman states, "During the surface preparation inspection, after abrasive blasting, a number of surface imperfections became apparent.  The majority of these imperfections were almost impossible to see without removing the old coatings and/or corrosion products.  Although the project specifications identified the types of defects that the coating contractor could expect to find, more surface imperfections were found than could have reasonable been anticipated".

**Request for Admission 286.** Admit the foregoing language from the February 26, 2002 Memorandum cannot be found in any version of the project specifications.

**Request for Admission 287.** Admit that in Coffman's February 26, 2002 Memorandum to Brechan Coffman states, "The extent of the substandard quality of the original construction workmanship was concealed by the existing coatings and corrosion products and was more than could have been reasonable anticipated by any of the parties involved."

EXHIBIT _____/_____
PAGE __8/__ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 36

**Request for Admission 288.** Admit the foregoing language from the February 26, 2002 Memorandum cannot be found in any version of the project specifications.

**Request for Admission 289.** Admit that the Project Scope and Fee Narrative put forth to the USCG on March 13, 2001 by Brechan and its designers states many of the utility hangers and braces were welded to the piles with fillet welds on one side only of the member.

**Request for Admission 290.** Admit that this condition described in the March 13, 2001 Project Scope and fee Narrative will result in nearly immediate rust bleed thru from the resultant unsealed crevice between the brace and pile.

**Request for Admission 291.** Admit the foregoing language from the Project Scope and Fee Narrative cannot be found in any version of the project specifications.

**Request for Admission 292.** Admit that Brechan performed the welding on the Cargo Wharf rehabilitation project in 1989.

**Request for Admission 293.** Admit that the Project Scope and Fee Narrative put forth to the USCG on March 13, 2001 by Brechan and its designers states the unwelded areas should be welded prior to recoating not caulked.

**Request for Admission 294.** Admit that the Project Scope and Fee Narrative put forth to the USCG on March 13, 2001 by Brechan and its designers says to assume 50' of 3/8" fillet weld will be required to be accomplished prior to blasting and coating.

**Request for Admission 295.** Admit that this language from the Project Scope and Fee Narrative cannot be found in the November 26, 2002 Specification for Phase II.

**Request for Admission 296.** Admit that the Project Scope and Fee Narrative put forth to the USCG on March 13, 2001 by Brechan and its designers says that the welding will be up to the contractor to identify incomplete and non-existent welds in advance of blasting operations and that the contractor shall perform the welding in a manner that does not impact coating operations.

EXHIBIT _____**l**_____

PAGE \_\_**82**\_ OF \_\_**91**\_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 37

1   **Request for Admission 297.** Admit that Brechan performs welding on construction projects.

2

3   **Request for Admission 298.** Admit that Brechan has performed a substantial amount of welding on construction projects.

4

5   **Request for Admission 299.** Admit that Brechan has erected steel structures using its own forces.

6

7   **Request for Admission 300.** Admit Bill Oliver of Brechan attempted to aid Coffman in design work by eliminating Option 2 and Option 3 in its February 26, 2002 Memorandum.

8

9

10  **Request for Admission 301.** Admit that Mike Martin, Matt Holmstrom, Harold Hollis, and Jerry Hardenbergh were in the receipt list for the Bill Oliver attempt to eliminate Options I and 2 from Dan Stears recommendation Memorandum of February 26, 2002.

11

12

13  **Request for Admission 302.** Admit that on March 6, 2002 John Daley of Tryck Nyman Hayes stated in an e-mail from Daley to Steve Locher of the USCG, "I understand that the seal welding is a big issue/problem on the cargo wharf project. Sorry to hear this."

14

15

16  **Request for Admission 303.** Admit Brechan never gave any of the $145,000 it received from Swalling in the March 13, 2002 Brechan/Swalling deductive change order to the USCG.

17

18  **Request for Admission 304.** Admit that the USCG never saw the March 13, 2002 contract modification between Swalling and Brechan.

19

20

21  **Request for Admission 305.** Admit that the USCG did not approve the March 13, 2002 contract modification between Brechan and Swalling.

22

23

24  **Request for Admission 306.** Admit Martin Boivin had knowledge of the $145,000 Brechan received from Swalling for the March 13, 2002 deductive change order.

25

26

EXHIBIT ____1____

PAGE 83 OF 91

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 38

**Request for Admission 307.** Admit Steve Locher had knowledge of the $145,000 Brechan received from Swalling for the March 13, 2002 deductive change order.

**Request for Admission 308.** Admit Paul Rendon had knowledge of the $145,000 Brechan received from Swalling for the March 13, 2002 deductive change order.

**Request for Admission 309.** Admit Anita Repanich had knowledge of the $145,000 Brechan received from Swalling for the March 13, 2002 deductive change order.

**Request for Admission 310.** Admit Matt Holmstrom had knowledge of the $145,000 Brechan received from Swalling for the March 13, 2002 deductive change order.

**Request for Admission 311.** Admit Bill Oliver had knowledge of the $145,000 Brechan received from Swalling for the March 13, 2002 deductive change order.

**Request for Admission 312.** Admit Mike Martin had knowledge of the $145,000 Brechan received from Swalling for the March 13, 2002 deductive change order.

**Request for Admission 313.** Admit Martin Boivin had knowledge of the de-scoping of Brechan's Contract from 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

**Request for Admission 314.** Admit Steve Locher had knowledge of the de-scoping of Brechan's Contract from 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

**Request for Admission 315.** Admit Paul Rendon had knowledge of the de-scoping of Brechan's Contract from 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

EXHIBIT ____1____
PAGE __84__ OF __91__

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 39

**Request for Admission 316.** Admit Anita Repanich had knowledge of the de-scoping of Brechan's Contract from 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

**Request for Admission 317.** Admit Matt Holmstrom had knowledge of the de-scoping of Brechan's Contract from 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

**Request for Admission 318.** Admit Bill Oliver had knowledge of the de-scoping of Brechan's Contract from 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

**Request for Admission 319.** Admit Mike Martin had knowledge of the de-scoping of Brechan's Contract from 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

**Request for Admission 320.** Admit that no consideration was given to the USCG for the de-scoping of Brechan's Constrict for 17,800 square feet to 15,500 square feet in the February 25, 2002 letter from the USCG to Brechan.

**Request for Admission 321.** Admit that the USCG paid for two mobilizations on the Cargo Wharf Project with each costing over $150,000.

**Request for Admission 322.** Admit that the USCG paid 2 times for the coating of bents 13-15 of the original cargo pier.

**Request for Admission 323.** Admit that Modification 5 of Delivery order 007 reduced the contract scope for coating three bents and 51 piles while adding $90,000 to the overall cost of the project.

**Request for Admission 324.** Admit the Coffman's Daily Summary Report of June 5, 2002 states, "Meeting between Matt Holmstrom, Grant DeLine, Jerry Hardenbergh and Mike Anderson to

EXHIBIT _____

PAGE __85__ OF __91__

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 40

discuss what appears to be some confusion with Swalling's office in Anchorage regarding the quality control criteria on this project, reference letter dated 31 May 2002 from Swalling Construction. All of the on-site construction management personnel are in agreement with the quality control criteria for the modified scope and have been working with this criteria since the beginning of this years construction."

**Request for Admission 325.** Admit that the acceptance criteria discussed at the June 5 meeting was that all caulking repairs will be visually inspected for bare spots only and no pinhole holiday detection or repairs will be done at the caulked areas.

**Request for Admission 326.** Admit that Brechan sent an e-mail on November 14, 2002 to Coffman stating, "Dan – Do you have a 'final' coating spec. 09967 that includes the changes we made regarding the 'seal weld' issue. The CG wants a proposal to complete the project. From what I gather, this is the only change from phase I. Thanks. Matt."

**Request for Admission 327.** Admit that the "Final Specification" of November 26, 2002 did not include the changes made regarding the "seal weld" issue.

**Request for Admission 328.** Admit that the "Final Specification" of November 26, 2002 did not include the quantity changes made regarding the "seal weld" issue.

**Request for Admission 329.** Admit that the "Final Specification" of November 26, 2002 did not include the testing criteria changes made regarding the "seal weld" issue.

**Request for Admission 330.** Admit that the "Final Specification" of November 26, 2002 did not include the acceptance criteria changes made regarding the "seal weld" issue.

**Request for Admission 331.** Admit that Coffman sent an e-mail to Brechan on January 4, 2002 that states, "The project coating specification that we developed was intended to coat as much of the pile as feasibly possible (lowest practical elevation) and provide a finished product that had minimal defects (no such thing as a defect free coating)."

EXHIBIT ____1____
PAGE __86__ OF _91_

**Request for Admission 332.** Admit that Coffman sent an e-mail to Brechan on January 4, 2002 that states, "As Swalling has identified, the original cargo wharf portion of the facility has several areas that require extensive grinding and welding to produce a minimal defect coating system. Most , but not all, of these areas are between elevations 116 and 119.  These changes of conditions were not readily identifiable until the existing corrosion products and coating system were removed."

**Request for Admission 333.** Admit that Coffman sent an e-mail to Brechan on January 4, 2002 that states, "Option, 2 of the Swalling proposal, offers a cost effective method for addressing the change of conditions.  This method will not produce a defect free coating, however the number of defects and the location of the defects should be minimized.   The rate of corrosion in the atmospheric and splash zones (above elevation 114) is significantly less than in the tidal zone (approximately elevation 107 to 114).  Some corrosion at the defects and staining of the adjacent coating is likely to occur in the future.  This approach will provide more of a commercial grade coating appearance rather than a showroom appearance."

**Request for Admission 334.** Admit that Coffman sent an e-mail to Brechan on January 4, 2002 that states, "2.  The estimated 3200 lf of caulking work was developed by Swalling.  I recommend that the change in scope state the following:  Caulking is acceptable only above elevation 116.  Most welds and crevices, above elevation 116, that would normally have been seal welded will be caulked.  Some seal welding, above elevation 116, may be required as part of the 10 man-hours per cell surface preparation requirement.  I personally do not feel comfortable with limiting caulking to 3200 lf.

**Request for Admission 335.** Admit the author of the January 4, 2002 e-mail from Coffman is referring only to bents 6-15 of the original cargo pier.

**Request for Admission 336.** Admit that Coffman sent an e-mail to Brechan on January 4, 2002 that states, "4.   I recommend the statement 'No holidays (pinholes) at connections will be repaired' be modified to read 'Holidays (coating defects) at the connections will typically not be repaired, however visible holidays (visible bare metal areas) at the connections will be repaired.' Testing may indicate there is a holiday (possibly not the specified coating thickness), however no visible bare metal is exposed.  This will eliminate obvious bare metal spots from being exposed to the environment."

EXHIBIT ____|____
PAGE __87_ OF _91_

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 42

1    **Request for Admission 337.** Admit that Coffman sent an e-mail to Brechan on January 4, 2002
2    that states, "5.  The Swalling proposal does not cover Bents 1-5, your mark-up and additional
     costs to you to have Jerry on site.  These should all be covered in your proposal to the USCG."

3

4    **Request for Admission 338.** Admit that as of May 13, 2003 all of the work on bents 13-15, A-H
     was complete and accepted by Coffman in accordance with the specifications with the exception
5    of final holiday testing.

6

7    **Request for Admission 339.** Admit that AESI forwarded IIC's June 10 letter to Brechan under
     the cover of its own letter on June 12, 2003.
8

9

10   **Request for Admission 340.** Admit that Brechan did not provide to AESI the items requested in
     IIC's June 10, 2003 correspondence.

11

12

13   DATED this ⟨21ˢᵗ⟩ day of April, 2006.

14
                              MARSTON HEFFERNAN FOREMAN, PLLC
15

16   By _____
        Terry R. Marston II, WSBA No. 14440
17      Jami K. Elison,   WSBA No. 31007
        Attorneys for Plaintiff Absolute Environmental
18      Service, Inc.

19

20

21

22

23

24

25
                                           EXHIBIT _____1_____
26                                         PAGE __88__ OF __91__

     PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
     Case No. A03-0199CV (RRB)-- 43

# ATTORNEY'S CR 26 CERTIFICATION

The undersigned has read the foregoing responses to plaintiff Absolute Environmental's Second Requests for Admission to defendant Coffman Engineers and certifies said responses are in compliance with FRCP 26(g).

DATED this _____ day of _____, 2006.

LANE POWELL SPEARS LUBERSKY

By _____
    Peter Partnow ABA # 7206029
    James B. Stoetzer ABA # 7911130
Attorneys for third-party defendant Coffman
Engineers

EXHIBIT _____1_____
PAGE __89_ OF _91_

1

2
<u>AFFIDAVIT</u>

3
STATE OF ALASKA                )
                                                  ) ss.

4
COUNTY OF _____   )

5
_____ being first duly sworn, on oath deposes and says:

6
    That _____ is the _____ for Coffman Engineers,

7
defendant in the above-entitled matter, and as such is authorized to sign on behalf of said
corporation, has read the foregoing answers to plaintiff's Second Requests for Admission, knows

8
the contents thereof, and believes the same to be true to _____ knowledge and belief.

9
                                        _____

10

11
    SUBSCRIBED AND SWORN TO before me this _____ day of _____, 2006.

12
                                        _____

13
                                        [Printed Name] _____
                                        NOTARY PUBLIC in and for the State of

14
                                        _____, residing at _____
                                        My appointment expires: _____

15

16

17

18

19

20

21

22

23

24

25
                                        EXHIBIT _____

26
                                        PAGE __90__ OF __91__

1

## CERTIFICATE OF SERVICE

2      The undersigned certifies under penalty of perjury, under the laws of the State of

3  Washington that I am now and at all times herein mentioned, a resident of the State of

4  Washington, over the age of 18 years, not a party to or interested in the above-entitled action,

5  and competent to be a witness herein.

6      On the date given below I caused to be served in the manner noted copies of the following

7  upon designated counsel:

8      1.  PLAINTIFF'S  SECOND  REQUESTS  FOR  ADMISSION  TO  DEFENDANT

9  COFFMAN ENGINEERS

10

| *VIA U.S. Mail* | *VIA U.S. Mail* |
|---|---|
| Eric J. Brown, Esq. | Mike Kreger |
| Jermain Dunnagan & Owens, P.C. | Jacob Nist |
| 3000 A Street, Suite 300 | Perkins Coie, LLP |
| Anchorage, AK  99503-4097 | 1029 West Third Avenue, Suite 300 |
| *Atty for Forrest McKinley and Emerco* | Anchorage, AK  99501 |
|  | *Atty for Brechan and Safeco* |
| *VIA U.S. Mail* | *VIA U.S. Mail* |
| Mr. William Baerg | Peter Partnow |
| Patrick Duffy | Lane Powell Spears Lubersky |
| Monteleone & McCrory, LLP | 301 W. Northern Lights Boulevard |
| 725 South Figueroa Street, Suite 3750 | Suite 301 |
| Los Angeles, CA  90017-5446 | Anchorage, Alaska  99503 |
| *Atty for Forrest McKinley and Emerco* | *Atty for Coffman* |
| *VIA Hand Delivery on 4.21.06* | *VIA U.S. Mail* |
| James B. Stoetzer | Robert J. Dickson |
| Lane Powell Spears Lubersky | Atkinson, Conway & Gagnon, Inc. |
| 1420 Fifth Avenue, Suite 4100 | 420 L Street, Suite 500 |
| Seattle, WA 98101 | Anchorage, AK  99501 |
| *Atty for Coffman* | *Atty for Specialty Polymer Coatings* |

21  SIGNED at Redmond, Washington this 21st day of April, 2006.

22

23                                         Kristy L. Martyn

24

25                                         EXHIBIT ____ 1 ____
                                           PAGE  91  OF  91
26

PLAINTIFF'S SECOND REQUESTS FOR ADMISSION TO DEFENDANT COFFMAN ENGINEERS
Case No. A03-0199CV (RRB)-- 46