Michael E. Kreger
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska  99501
(907) 279-8561
(907) 276-3108 (Facsimile)
mkreger@perkinscoie.com

Attorneys for Defendants Brechan Enterprises, Inc.
and Safeco Insurance Company of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ABSOLUTE ENVIRONMENTAL
SERVICES, INC., et al.
      Plaintiffs

v.

FORREST J. MCKINLEY, et al.,
      Defendants.

Case No. 3:03-cv-0199-rrb

## SAFECO INSURANCE COMPANY OF AMERICA, INC.'S MOTION FOR SUMMARY JUDGMENT

      Safeco Insurance Company of America, Inc. ("Safeco") hereby moves for summary judgment.  There is a single cause of action pled against Safeco – a claim under the Miller Act, 40 U.S.C. § 3133.  This claim is not timely.  As such, Safeco is entitled to judgment as a matter of law.

      A claim under the Miller Act must be brought "no later than one year after the day on which the last of the labor was performed or material supplied by the person bringing the action."  40 U.S.C. § 3133(b)(4).  Plaintiff Absolute Environmental Services, Inc. ("Absolute") filed this action against Safeco on

*Absolute Environmental Services, Inc. v. McKinley*
Case No. 3:03-cv-0199-rrb
        - 1 -        [38599-0012/AA061420.012]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

June 22, 2005. This was more than one year after Absolute supplied labor or materials for the Project. As demonstrated below, Absolute finished its work on the Project in November, 2003. Absolute returned to the Project in 2004 to perform repairs and corrective work, but it is well established that such repairs and corrective work do not extend the Miller Act's one-year limitations period. Consequently, Absolute's Miller Act claim is barred by the statute of limitations.

## BACKGROUND

This claim arises out of a federal construction project in Kodiak, Alaska. The United States Coast Guard ("USCG") contracted with Brechan Enterprises, Inc. ("Brechan") to, in part, strip the existing coatings (similar to paint) off a cargo wharf and reapply new coating so that the wharf would not rust (hereinafter the "Project"). Complaint for Damages and Restitution Against Brechan Enterprises and Safeco Insurance Co. of America, dated June 22, 2005 (hereinafter "Absolute Complaint"), at ¶ 4. Pursuant to the Miller Act, Brechan obtained a payment bond from Safeco. *See* 40 U.S.C. § 3133(a)(2). Safeco's only interest or potential liability in this lawsuit is as the surety for Brechan.

For Phase II of the Project, Brechan hired Absolute to perform the coating removal and reapplication. *See id.* at ¶ 23. Absolute, in turn, subcontracted with Imperial Industrial Coatings ("Imperial") to perform a majority of its work. *Id.* at ¶ 24. However, in August 2003, Imperial's certification from the coating manufacturer was revoked and Imperial discontinued working on the project. *Id.* at ¶¶ 60-62.

## I.    Absolute Finished its Work on the Project in November 2003.

Coffman Engineers, Inc. ("Coffman") tracked Absolute's progress on the

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

*Absolute Environmental Services, Inc. v. McKinley*
Case No. 3:03-cv-0199-rrb

[38599-0012/AA061420.012]

Project.  Hardenbergh Dep. (attached hereto as Ex. B) at 49-50, 148-49.  Shortly

after Imperial left the project, Coffman's quality assurance inspector, Jerry

Hardenbergh, performed an inspection of the areas that Imperial had coated and

found:

> numerous areas of coating defects . . . .  The coating defects
> consisted of areas of inadequate adhesion (inadequate surface prep),
> coating over marking paint and contaminants (inadequate surface
> prep), and repair coating material that did not cure properly due to
> the addition of solvent.
>
> Specialty Polymer Coatings (SPC) [the coating manufacturer]
> conducted their own investigation of coating problems and alleged
> modification coating materials by the coating contractor (Imperial
> Industrial Coatings).  The SPC representative concluded that most of
> the coating defects observed were applicator related (inadequate
> surface preparation) and confirmed that solvent/thinner was added to
> some of the repair coating materials. . . .
>
> Coating repair will consist of complete removal of the defective
> coating by abrasive blast cleaning and reapplication of coating
> materials in accordance with the coating manufacturer's
> specifications.

Coffman Field Memorandum dated August 19, 2003 (attached hereto as Exhibit

C); Olson Dep. (attached hereto as Exhibit D), at 298-99.  Absolute hired workers

to complete the Project and make repairs to Imperial's defective work.  Absolute

Complaint at ¶ 66.

By November 10, 2003, Absolute completed all of the new work and was

focusing exclusively on repairing Imperial's defective workmanship.  Coffman

Daily Summary Report dated 10 November 2003 (attached hereto as Exhibit A)

(noting that 100% of the new coatings had been applied and Absolute had repaired

90% of the coatings Imperial had improperly done).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Absolute's retained expert on this case concluded that Absolute completed its work on the Project, including the extensive repairs to Imperial's work, on November 22, 2003. Lembke Report (attached hereto as Exhibit E) at 13 ("The project was finally completed, including extensive repairs to [Imperial's] failures . . . , on November 22, 2003, 84 calendar days past the [scheduled] August 30 completion date."); *see also*, Ex. E at Exhibit 12 (noting the date of "actual completion" as November 22, 2003).

## II.    Absolute Came Back to the Project in 2004 to Perform Some Additional Repairs.

In December 2003, Jerry Hardenbergh performed a "final visual inspection" of the Project. Hardenbergh Dep. (Ex. B) at 97-99; Coffman Engineers Inspection Report dated December 19, 2003 (attached hereto as Exhibit I). During that inspection, Mr. Hardenbergh noted that several areas needed to be repaired. Ex. I. Mr. Hardenbergh noted that these areas "were coating repair areas not adequately repaired, areas missed (scaffolding covered), areas of coating damage from scaffolding removal, boats, etc. and areas not detected during holiday inspection." Ex. I. Mr. Hardenbergh created a "punch list" to correct these areas. Hardenbergh Dep. (Ex. B) at 98.

Although Absolute completed its work in November 2003, Absolute was required to warrant materials and workmanship for one year. Subcontract Agreement (attached hereto as Exhibit F); Olson Dep. (Ex. D) at 124-125. The USCG informed Brechan that it would "withhold final payment on the task order until corrective action is taken [and that the USCG was] considering this to be a punch list item." Elmore Dep. (attached hereto as Exhibit G) at 143-44; Ex. J.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Brechan immediately notified Absolute and Mr. Hardenbergh. *Id.*

Even though Absolute had not completed its warranty obligations, in April 2004, Absolute invoiced Brechan and stated that it was 100% complete with the work in all areas. Elmore Dep. (Ex. G) at 152-53; Absolute Environmental Services, Inc. Invoice dated April 22, 2004 (attached hereto as Exhibit H). The only line item on the invoice which did not reflect 100% completion was the line item for "Mobe/Demobe/Materials." Ex. H. Mr. Elmore, responsible for Absolute's billing, testified that this line item did not show 100% because Absolute had not performed its punch list work. Elmore Dep. (Ex. G) at 143, 153.

In April 2004, Matt Holmstrom of Brechan asked Todd Elmore of Absolute "when are you planning on repairing the areas identified last Fall." Elmore Dep. (Ex. G) at 142-44; Ex. K. In response, Mr. Elmore replied that Absolute "would like to do the repairs in mid or late May." Ex. K. Brechan replied that Absolute "should schedule repairs for after 6/7, so that we can get Jerry [Hardenbergh] down here prior to doing repairs." *Id.* In the summer of 2004, Absolute returned to perform these repairs as part of its warranty. Elmore Dep. (Ex. G) at 144; Olson Dep. (Ex. D) at 301-302; Lynch Dep. (attached hereto as Exhibit M) at 18 (USCG representative noting that Absolute came back to the project a year after they started to perform some "punch list items and warranty items").

## III.    Absolute Sued Safeco Under the Miller Act on June 22, 2005.

Absolute sued both Brechan and Safeco on June 22, 2005. Absolute now claims that it is entitled to additional compensation in its performance of the

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

work.[1]  Absolute also pled a claim against Safeco as Brechan's surety.[2]  Absolute's

theory in this case is that Brechan was aware of latent "defective welds" on the

project.  Absolute Complaint ¶ 105.  According to Absolute, these "defects"

created holidays (i.e. holes) in the coatings.  *Id.* at ¶ 101-03.  According to

Absolute's coatings expert, "[i]t's well-known in the industrial painting area when

you have a surface that is to be holiday-free that welds need to be addressed in that

you most frequently will have holidays on welds."  Vernon Dep. (attached hereto

as Ex. L) at 55-56.  Absolute cannot identify any areas in the performance of its

2004 repairs on the Project that involved any weld areas.  Olson Dep. (Ex. D) at

303-04.

## ARGUMENT

### I.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  "[A] party seeking summary judgment always bears

the initial responsibility of informing the district court of the basis for its motion"

---

[1] Both Brechan and Safeco deny that Absolute is entitled to additional compensation.  However, the substantive merit of Absolute's claims are irrelevant to this motion.

[2] Technically, a claim under the Miller Act is brought in the name of the United States of America.  The Miller Act provides that the action must be brought in the "name of the United States" for the use and benefit of the subcontractor (in this case Absolute).  40 U.S.C. § 3133(b)(3)(A).  Therefore, although the United States is technically the plaintiff asserting claims against Safeco, the real party in interest is Absolute.  In an effort to lessen any confusion throughout this motion, Safeco will refer to the plaintiff as Absolute.

*Absolute Environmental Services, Inc. v. McKinley*
Case No. 3:03-cv-0199-rrb

[38599-0012/AA061420.012]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

and of identifying those portions of the record which demonstrate the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party can only overcome such a showing by adducing competent, admissible facts that could support a verdict by the fact-finder in the non-moving party's favor on each and every element of its claim. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the non-moving party fails to adduce evidence supporting an essential element of its claim, then evidence on the other elements becomes immaterial, and summary judgment should be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

II.    **Absolute Did Not Provide Labor or Materials to the Project Within One Year of Filing Suit Because its Activity on the Project in 2004 Was Limited to Repair Work.**

An action under the Miller Act,

> Must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.

40 U.S.C. § 3133(b)(4).[3]  Absolute filed suit against Safeco on June 22, 2005. It must, therefore, demonstrate that it performed labor or supplied materials to the Project after June 21, 2004. Absolute cannot make this showing.

---

[3] The Miller Act also provides that a subcontractor's subcontractor (e.g. Imperial) must additionally provide written notice to a contractor "within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material" in order to make a claim under the Miller Act. Therefore, several of the cases addressing the running of the Miller Act's limitation's period are addressing this 90-day provision. However, the test is identical for both the 90-day notice period and the one-year period for bringing suit.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

The test for starting the limitations period is the last day the work was performed as "part of the original contract." *U.S. for the Use of Austin v. Western Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964). Work performed "for the purpose of correcting defects, or making repairs following inspection of the project" does not extend the Miller Act's limitations period. *Id.* at 573; *T & A Painting, Inc. v. U.S.*, 673 F. Supp. 994, 996 (N.D. Cal. 1987) ("Miller Act payment bond obligations apply only to work performed under the original contract and not to subsequent work to repair defects.").

Punch list and warranty work do not extend the Miller Act's limitations period. *T & A Painting, Inc. v. U.S.*, 673 F. Supp. 994, 996 (N.D. Cal. 1987) (holding that warranty work under a contract was "repair work" that did not extend the Miller Act's statute of limitations); *U.S. for the Use of Balf Co. v. Casle Corp.*, 895 F. Supp. 420, 425 (D. Conn. 1995) ("It is well established that labor for the purpose of correcting or repairing defects in a completed project, i.e. punch list work, does not serve to toll the notice period of the Miller Act."); *U.S. for Use of Interstate Mech. Contractors, Inc. v. Inter. Fidelity Ins. Co.*, 200 F.3d 456, 461 (6th Cir. 2000) (holding work done at the request of the government and pursuant to a warranty falls outside the meaning of labor performed under the Miller Act.); *U.S. for Use of Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249 (4th Cir. 1983) ("Finding no work done after July 23, 1979, that can be characterized as anything other than the making of repairs or the correcting of defects, we conclude that the filing of this action on July 24, 1980, was barred by the one-year limitations period of 40 U.S.C. § 270b(b)."); *U.S. ex rel. Automatic Elevator Co., Inc. v. Lori Const.*, 912 F. Supp. 398 (N.D. Ill. 1996) (Miller Act's one-year

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

limitations period ran from last date on which subcontractor performed labor or supplied materials to fulfill terms of government contract, rather than from later date on which labor was performed or materials were supplied pursuant to contractual post-completion warranty); *U.S. for Use of Interstate Mech. Contractors, Inc. v. Inter. Fidelity Ins. Co.*, 200 F.3d 456, 461 (6th Cir. 2000) (holding that subcontractor's "tests of remedial or corrective work do not qualify as 'labor' for purpose of the Miller Act."); *U.S. for the Use of T.L. Wallace Const., Inc., v. Fireman's Fund Ins. Co.*, 790 F. Supp. 680, 685 (S.D. Miss. 1992) ("punch list work can clearly be termed 'remedial' or 'corrective' because the work involved fixing items previously worked on by [the subcontractor]").

As the above facts demonstrate, Absolute finished its work on the Project in November, 2003 and the one-year statute of limitations under the Miller Act began to run.  Absolute performed repairs in 2004, but the limitations period was not extended by these repairs.  Consequently, the statute of limitations expired before Absolute filed this lawsuit on June 22, 2005.

## CONCLUSION

Absolute's Miller Act claim is not timely.  The Court should grant summary judgment in favor of Safeco on this basis.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

DATED at Anchorage, Alaska, this 1st day of August, 2006.

**PERKINS COIE LLP**
Attorneys for Brechan Enterprises, Inc. and
Safeco Insurance Company of America.


By s/Michael E. Kreger
    Michael E. Kreger
    Alaska Bar No. 8311170
    Jacob Nist
    Alaska Bar No. 0211051
    Perkins Coie LLP
    1029 West Third Avenue, Suite 300
    Anchorage, Alaska  99501
    (907) 279-8561
    (907) 276-3108 (fax)
    Email:  mkreger@perkinscoie.com

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically on:

**Counsel for Absolute Environmental Services, Inc.**
Paul Nangle
Paul J. Nangle & Associates
101 Christensen Drive
Anchorage, Alaska 99501
(Fax: 907-274-8866)

**Counsel for Coffman Engineers, Inc.**
Peter C. Partnow
Lane Powell PC
301 West Northern Lts Blvd., Suite 301
Anchorage, Alaska 99503
(Fax: 907-276-2631)
(Phone: 907-264-3317)

**Co-Counsel for Coffman Engineers, Inc.**
James B. Stoetzer
Lane Powell PC
1420 Fifth Avenue, Suite 4100
Seattle, Washington 98101
(Fax: 206-223-7107)
(Phone: 206-223-7109)

**Counsel for Absolute Environmental Services, Inc.**
Terry R. Marston II
Marston, Heffernan & Foreman
Anderson Park Building
16880 NE 79th Street
Redmond, WA 98052-4424
(Fax: 425-861-6969)

**Counsel for Specialty Polymer Coating USA, Inc.**
Robert J. Dickson
Atkinson Conway & Gagnon
410 L Street, Suite 500
Anchorage, Alaska 99501
(Fax: 907-272-2082)

**Co-Counsel for Forrest J. McKinley and Emerco, Inc., d/b/a Imperial Industrial Coatings**
William R. Baerg
Monteleone & McCrory
725 South Figueroa Street, Suite 3750
Los Angeles, California 90017-5402
(Fax: 213-612-9930)

**Counsel for Forrest J. McKinley and Emerco, Inc., d/b/a Imperial Industrial Coatings**
Eric J. Brown
Jermain Dunnagan & Owens
3000 A Street, Suite 300
Anchorage, Alaska 99503
(Fax: 907-563-7322)

this 1st day of August, 2006.

s/Michael Kreger

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

*Absolute Environmental Services, Inc. v. McKinley*
Case No. 3:03-cv-0199-rrb

[38599-0012/AA061420.012]

# TABLE OF CONTENTS OF EXHIBITS

A.    Coffman Daily Summary Report dated November 10, 2003

B.    Deposition Transcript of Jerry R. Hardenbergh

C.    Coffman Field Memorandum dated August 19, 2003

D.    Deposition Transcript of David Olson

E.    Findings and Opinion Report dated November 12, 2004

F.    Subcontract between Brechan and Absolute dated December 18, 2002

G.    Deposition Transcript of Todd Elmore

H.    Absolute Environmental Services invoice dated April 22, 2004

I.    Coffman Inspection Report dated December 19, 2003

J.    Emails dated December 11 and December 15, 2003

K.    Emails dated April 22 and April 27, 2004

L.    Deposition Transcript of L. Skip Vernon

M.    Deposition Transcript of Chris Lynch

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

*Absolute Environmental Services, Inc. v. McKinley*
Case No. 3:03-cv-0199-rrb

[38599-0012/AA061420.012]