**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., AN ALASKAN CORPORATION, </br></br> PLAINTIFF, </br></br> VS. </br></br> FORREST J. MC KINLEY, ET AL., </br></br> DEFENDANTS. </br></br> AND RELATED CROSS-ACTIONS. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) NO. A-03-0199 </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

DEPOSITION OF MARK S. SCHILLING

JUNE 5, 2006

REPORTED BY:
SHERYL WILLIAMS
CSR NO. 7453

*Seijas Court Reporters*

*A Professional Corporation*
*1260 Huntington Drive, Suite 107, South Pasadena, California 91030*
*(626) 799-0810 ~ Fax (626) 799-5565*

Exhibit 25

1      WHAT ABOUT "FIREPROOFING FOR PETROCHEMICAL
2  FACILITIES"?
3      A.   THAT SHOULD NOT BE OF INTEREST.
4      Q.   WHAT ABOUT THE NEXT ARTICLE ON LINING FAILURES?
5      A.   THAT ONE MAY BE OF INTEREST BECAUSE IT DOES NOT
6  DEAL WITH MARINE COATINGS, BUT IT DOES, AS THE TITLE
7  INDICATES, SPEAK TO A
8  BE-CAREFUL-WHAT-YOU-ASK-FOR-YOU-MIGHT-GET-IT SORT OF
9  ATTITUDE.  THAT'S WHAT THAT PAPER IS ABOUT.
10     Q.   WHEN YOU SAY "LINING," ARE YOU TALKING ABOUT PIPE
11 LINING?
12     A.   ONE OF THE CASE HISTORIES IS A LINING ON THE
13 INSIDE OF WATER PIPE.  SOME OF THE CASE HISTORIES ARE TANK
14 LININGS.  SO THEY'RE ALL AQUEOUS IMMERSION ENVIRONMENTS.
15     Q.   I'LL TAKE ONE OF THOSE.
16          TELL ME WHAT "TRUTH OR CONSEQUENCES" RELATES TO.
17     A.   "TRUTH AND CONSEQUENCES" WAS A COLUMN THAT I WAS
18 ASKED TO WRITE FOR THE "JOURNAL OF PROTECTIVE COATINGS AND
19 LININGS."  THIS WAS A MONTHLY SHORT COLUMN.  TRY TO KEEP IT
20 TO TWO PAGES.  KEEP IT WITTY.  FIND A TOPIC THAT MAKES FOR
21 SOME INTERESTING READING.  SOMETHING THAT'S NOT AS DRY AS
22 THE TYPICAL TECHNICAL ARTICLE.
23     Q.   WHICH OF THESE MIGHT RELATE TO THE ISSUES IN THIS
24 CASE REGARDING WHICH YOU HAVE EXPRESSED OPINIONS?
25     A.   THE SECOND ONE, "OVERZEALOUS PAINT INSPECTION

20

1     Q.    WELL, YOU WERE ON SITE IN JULY OF 2003, WERE YOU
2  NOT?
3     A.    YES.
4     Q.    AND YOU OBSERVED WORK BY IMPERIAL DURING THE TIME
5  THAT YOU WERE THERE IN JULY OF 2003?
6     A.    YES.
7     Q.    DID YOU OBSERVE HYDROBLASTING?
8     A.    YES.
9     Q.    DO YOU RECALL WHO WAS DOING THE HYDROBLASTING?
10    A.    THE WORK, THE HYDROBLASTING THAT I SAW WAS BEING
11 PERFORMED BY ABSOLUTE OR ONE OF THEIR SUBCONTRACTORS THAT
12 HAD BEEN BROUGHT IN TO SUPPLEMENT OR HELP IMPERIAL.
13    Q.    DID YOU DURING THAT VISIT OBSERVE IMPERIAL
14 PERSONNEL DOING ANY PREP WORK?
15    A.    YES.
16    Q.    WHAT WAS THAT PREP WORK?
17    A.    ABRASIVE BLASTING.
18    Q.    ANY OTHER TYPE OF PREP WORK?
19    A.    I MAY HAVE BRIEFLY SEEN SOME GRINDING BUT WASN'T
20 PAYING MUCH ATTENTION TO THAT.
21    Q.    DID YOU OBSERVE ANY COATING WORK DONE BY IMPERIAL
22 DURING JULY 2003 WHILE YOU WERE ON SITE?
23    A.    YES.
24    Q.    AND WHO WAS DOING THE ACTUAL COATING IF YOU
25 RECALL?

1    Q.   I'M SAYING A WELD THAT IN YOUR EXPERIENCE WOULD
2 PRECLUDE COATING CONSISTENT WITH THE EXPECTATION THAT YOU
3 WOULD BE EXTENDING THE LIFE OF THE SUBJECT CARGO WHARF 25
4 YEARS.
5    A.   THE KEY WORD IN YOUR QUESTION IS PRECLUDE, AND
6 THE ANSWER IS NO.  THIS WAS A KIND OF COATING THAT CAN GO
7 ON VERY THICK.  YOU CAN ENTOMB ROUGH WELDS.  THAT'S WHY THE
8 WELD WOULD NOT BE DETECTIVE, AND THE ISSUE OF HOW MUCH
9 GRINDING IS ACTUALLY REQUIRED.  YOU CAN PUT THIS MATERIAL
10 ON AT A HALF-INCH THICK AND BURY ANYTHING.  THE PROBLEM
11 THAT YOU HAVE WITH THE SPECIFICATION IS THAT IT CALLS FOR
12 CERTAIN AESTHETICS.  IT NEEDS TO LOOK GOOD.  NO DRIPS, NO
13 RUNS, NO SAGS.  SO WHEN YOU ASK THE QUESTION ABOUT PRECLUDE
14 AND FROM A PERFORMANCE POINT OF VIEW FOR 25 YEARS, NO.  YOU
15 CAN BURY THOSE WELDS.  THERE'S NO NEED TO GRIND THEM.
16    Q.   SO BASED ON YOUR OBSERVATIONS IN JULY OF 2003,
17 THERE WAS NOTHING ABOUT THE WELDS THEMSELVES THAT PRECLUDED
18 ORDERLY PREPARATION INCLUDING REMOVAL OF THE ORIGINAL
19 COATING, THAT GRAY COATING AREA ASIDE FOR THE MOMENT,
20 GRINDING AS NECESSARY AND OTHER STANDARD SURFACE
21 PREPARATION?
22    A.   YES. AND THE THING THAT I WOULD ADD SUBSEQUENTLY
23 EVEN AFTER HAVING DONE THAT WOULD BE WELDS CAN BE
24 SUBSEQUENTLY CAULKED AFTER COATING.  THERE ARE MANY WAYS TO
25 APPROACH THE PERFORMANCE PROBLEM WHICH IS WHAT YOU SEEM TO

1   FOCUS ON WITH THE 25-YEAR POINT. BUT THE ISSUE IS THE
2   INTENT AND JUDGMENT FACTORING IN AESTHETICS. HOW IS IT
3   GOING TO LOOK WHEN I'M DONE? SO YOU HAVE PERFORMANCE AND
4   AESTHETICS.
5       Q. HAVE YOU EVER WORKED WITH OWNERS FOR WHOM
6   AESTHETICS WASN'T IMPORTANT?
7       A. THE ANSWER IS YES. I HAVE WORKED FOR OWNERS, AND
8   I HAVE BEEN AN OWNER WHERE APPEARANCE IS NOT THAT IMPORTANT
9   AS LONG AS THE CORROSION PROTECTION IS GOOD.
10      Q. LIKEWISE, HAVE YOU WORKED WITH OWNERS FOR WHOM
11  AESTHETICS WAS VERY IMPORTANT?
12      A. ABSOLUTELY.
13      Q. HAVE YOU WORKED WITH OWNERS THAT DIDN'T WANT
14  DRIPS, RUNS OR SAGS IN THEIR COATINGS?
15      A. ABSOLUTELY.
16      Q. JUST TO ROUND OUT THE OBSERVATIONS THAT YOU MADE
17  IN JULY 2003 AT THE KODIAK CARGO WHARF, THERE WAS NOTHING
18  ABOUT THE WELDS THAT PRECLUDED EFFECTIVE COATING OF THE
19  SURFACES THAT YOU OBSERVED?
20      A. AGAIN, I AGREE. THE EMPHASIS IS ON PRECLUDE.
21  THERE IS NOTHING THAT PRECLUDED GETTING GOOD PROTECTION.
22      Q. I'M GOING TO GO BACK BRIEFLY TO EXHIBIT 22 AND
23  THE PUBLICATIONS. I'M NOW ON THE LAST PAGE. THE TOP
24  ARTICLE IS "UNDERSTANDING PROTECTIVE COATINGS AND LININGS."
25  THIS APPARENTLY IS SOMETHING YOU WROTE BACK IN '99. DOES

```
 1   REPORTS NOR WAS I ASKED ABOUT IT IN MY PRIOR TESTIMONY THAT
 2   I MAY HAVE ADDITIONAL SUPPORT THAT I DID NOT -- TO
 3   SUBSTANTIATE MY POINT OF VIEW THAT I DID NOT EXPRESS IN A
 4   REPORT OR IN A DEPOSITION.
 5        Q.   AS YOU SIT HERE TODAY, HAVE YOU BEEN ASKED TO
 6   PROVIDE ANY ADDITIONAL OPINIONS SPECIFIC TO ANY PARTY?
 7        A.   ADDITIONAL OPINIONS, NO.
 8        Q.   I TAKE IT YOU'RE AWARE THAT IMPERIAL, THE PARTY
 9   THAT RETAINED YOU, NO LONGER HAS ANY CLAIMS AGAINST COFFMAN
10   ENGINEERS?
11        A.   NO, I'M NOT SURE THAT I'M SURE OF THAT.  IT HAS
12   NOT BEEN THOROUGHLY EXPLAINED TO ME THAT I UNDERSTAND HOW
13   THE SITUATION AMONGST THE VARIOUS PARTIES HAS CHANGED.
14        Q.   HAVE YOU BEEN TOLD THAT IMPERIAL STIPULATED TO A
15   DISMISSAL OF ANY AND ALL CLAIMS AGAINST COFFMAN?
16        A.   I BELIEVE THAT THAT WAS MY UNDERSTANDING PERHAPS
17   A YEAR OR TWO AGO PRIOR TO MY DEPOSITION IN 2003.
18        Q.   WHAT IS YOUR PRESENT UNDERSTANDING?
19        A.   MY PRESENT UNDERSTANDING IS SIMPLY LIMITED TO
20   THINGS HAVE CHANGED AS FAR AS COFFMAN AND BRECHAN HAD BEEN
21   LET OUT OF THE LEGAL MATTERS AND HAVE SINCE COME BACK IN.
22   WHAT THE RELATIONSHIPS ARE I DON'T KNOW.
23        Q.   WERE YOU ADVISED THAT IMPERIAL HAS ALSO
24   STIPULATED TO A DISMISSAL OF ALL CLAIMS AGAINST BRECHAN?
25        A.   NOT SPECIFICALLY.  I MAY HAVE HEARD THIS BRIEFLY
```

```
 1     Q.   ARE YOU REFERRING TO PITTING?
 2     A.   YES.
 3     Q.   THAT'S ITEM NO. 6?
 4     A.   THAT'S CORRECT.
 5     Q.   ARE THERE ANY OTHER REFERENCES TO SURFACE
 6  IMPERFECTIONS BESIDES THE DEEP PITTING?
 7     A.   NO, I DON'T SEE IT IN THIS COPY.
 8     Q.   THE DEEP PITTING THAT'S MENTIONED AS ITEM NO. 6,
 9  AS I UNDERSTAND IT THAT IS CAUSED BY CORROSION; IS THAT
10  CORRECT?
11     A.   YES.
12     Q.   WHEN YOU WERE AT THE SITE IN JULY OF '03, DID
13  ANYONE CALL TO YOUR ATTENTION AND ASK YOU TO INVESTIGATE
14  SURFACE IMPERFECTIONS, AND I'M GOING TO EXCLUDE NOW PITTING
15  AND ALSO EXCLUDE GRAY COATING TO THE EXTENT THAT YOU MIGHT
16  CONSIDER THAT A SURFACE IMPERFECTION.  PUTTING ASIDE GRAY
17  COATING AND PUTTING ASIDE PITTING, DID ANYONE POINT OUT TO
18  YOU OR ASK YOU TO INVESTIGATE OTHER SURFACE IMPERFECTIONS?
19     A.   YES.
20     Q.   WHAT WERE YOU ASKED TO EXAMINE?
21     A.   I LOOKED AT WELDS, AND I LOOKED AT SOME EDGES ON
22  PILES THAT HAD BEEN GROUND.
23     Q.   THIS WAS IN JULY OF '03?
24     A.   YES.
25     Q.   WHO ASKED TO YOU LOOK AT WELDS?
```

167

```
 1        A.    I BELIEVE IT WAS TOM PUETT.
 2        Q.    WHAT DID HE ASK YOU TO LOOK AT?
 3        A.    WE JUST LOOKED TO SEE WHAT HE WAS DOING.  AS I
 4   TESTIFIED EARLIER, I WAS THERE TO OBSERVE THE WORK IN
 5   PROGRESS.  WE LOOKED AT THE CONDITION OF THE STRUCTURE THAT
 6   HE WAS CLEANING.
 7        Q.    WHAT DID YOU OBSERVE IN CONNECTION WITH MR.
 8   PUETT'S REQUEST?
 9        A.    THAT'S A GOOD QUESTION, AND THE ANSWER IS NOTHING
10   TERRIBLY UNUSUAL FOR THIS KIND OF STRUCTURE IN THIS KIND OF
11   AN ENVIRONMENT.  I ADVISED TOM PUETT THAT THIS WAS NOT AN
12   INORDINATE AMOUNT OF PITTING, AND THAT THESE WELDS WERE NOT
13   ATYPICAL.  THAT I DIDN'T SEE THAT THIS WAS ANYTHING OUT OF
14   THE ORDINARY.
15        Q.    I SAW IN YOUR DEPOSITION EARLIER LAST YEAR THAT
16   YOU HAD RETAINED A SAMPLE OF COATING MATERIAL, AND YOU WERE
17   HOLDING IT -- I'M GOING TO GET THIS PROBABLY WRONG.  A
18   QUESTION CAME UP AS TO WHETHER YOU SHOULD SUBMIT THAT
19   ADDITIONAL AMOUNT OF COATING MATERIAL FOR FURTHER
20   LABORATORY TESTING.  DO YOU REMEMBER THAT?
21        A.    YES.  ABSOLUTELY.
22        Q.    AND AS I UNDERSTAND IT FROM YOUR DEPOSITION, YOU
23   NO LONGER HAVE THAT PARTICULAR SAMPLE OF MATERIAL; IS THAT
24   CORRECT?
25        A.    THAT IS INCORRECT.
```

1          REPORTER'S CERTIFICATE

2

3        I, SHERYL WILLIAMS, CSR NO. 7453, CERTIFIED

4   SHORTHAND REPORTER IN AND FOR THE STATE OF CALIFORNIA DO

5   HEREBY CERTIFY:

6        THAT PRIOR TO BEING EXAMINED THE WITNESS

7   NAMED IN THE FOREGOING DEPOSITION WAS BY ME DULY SWORN

8   TO TESTIFY THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT

9   THE TRUTH;

10        THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN

11   SHORTHAND AT THE TIME AND PLACE NAMED HEREIN AND WAS

12   THEREAFTER REDUCED TO TYPEWRITING UNDER MY DIRECTION AND

13   SUPERVISION;

14        THAT THE FOREGOING DEPOSITION IS A FULL, TRUE

15   AND CORRECT TRANSCRIPTION OF MY ORIGINAL SHORTHAND

16   NOTES.

17        I FURTHER CERTIFY THAT I HAVE NO INTEREST IN

18   THE OUTCOME OF THE ACTION.

19        WITNESS MY HAND THIS ___22ND___ DAY OF

20   _____JUNE_____, __2006__.

21

22   _____Sheryl Williams_____

23   SHERYL WILLIAMS, CSR NO. 7453

24   CERTIFIED SHORTHAND REPORTER IN

25   AND FOR THE STATE OF CALIFORNIA