Case 3:03-cv-00199-RRB    Document 216-4    Filed 08/03/2006    Page 1 of 13

Absolute vs. McKinley                    5-17-2006                    Michael Lembke

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                  DISTRICT OF ALASKA

 3  ABSOLUTE ENVIRONMENTAL SERVICES, )
    INC.,                            )
 4                                   )
                    Plaintiff,       )
 5                                   )
        vs.                          ) No. 3:03-cv-0199-RRB
 6                                   )
    FORREST J. MCKINLEY, et al.      )
 7                                   )
                    Defendants.      )
 8
 9
10          Deposition Upon Oral Examination
11                         of
12                  MICHAEL LEMBKE
13

14
15
16
                       9:10 a.m.
17
                    May 17, 2006
18
            1201 Third Avenue, Suite 4800
19
                  Seattle, Washington
20
21
22
23
24  Valerie L. Seaton, RPR                EXHIBIT  2
25  Court Reporter                        PAGE  1  OF  13
```

```
00002
 1                APPEARANCES

 2

 3
      FOR THE PLAINTIFF:  TERRY R. MARSTON II
 4           Attorney at Law
             MARSTON HEFFERNAN FOREMAN
 5           16880 NE 79th Street
             Redmond, Washington 98052
 6

 7

 8    FOR THE DEFENDANT:  MICHAEL KREGER
      (Brechan & Safeco)   Attorney at Law
 9           PERKINS COIE
             1029 West Third Avenue
10           Suite 300
             Anchorage, Alaska 99501
11
      (Coffman Engineers)  PETER C. PARTNOW and
12           JAMES B. STOETZER
             Attorneys at Law
13           301 W. Northern Lights Blvd.
             Suite 301
14           Anchorage, Alaska 99503

15

16
      ALSO PRESENT:      WEB CHANDLER
17

18

19

20

21

22

23

24

25
```



EXHIBIT 2
PAGE 2 OF 13

```
00003
 1                  I N D E X

 2      EXAMINATION                        PAGE

 3      BY MR. KREGER: ......................    5

 4      BY MR. PARTNOW: .....................  196

 5              EXHIBIT INDEX
        EXHIBIT MARKED                     PAGE
 6      1    Subpoena                         5
        2    Errata No. 2                    13
 7      3    MKL Associates, LLC Invoice for  19
             Services, dated 9-17-04
 8
             MKL Associates, LLC Findings and 22
 9           Opinion Report dated 11-12-04
        5    2-8-06 Errata to 11-12-04 report 23
10      6    7-17-02 letter from Anita Repanich to  60

11           Brechan Enterprises, enclosing contract

12           No. DTCG50-02-D-643J55

13      7    Order for Supplies or Services   60

14      8    USCG ISC Kodiak Cargo Wharf Maintenance  76

15           Technical Requirements for Design-Build

16           Contract, March 2001

17      9    United States Coast Guard Pre/Post  98

18           Negotiation Memorandum, dated 12-11-02

19

20           March 21, 2006 Findings and Opinion  105

21           Report

22      11   Marston Heffernan Foreman fax    126

23           coversheet from Kristy Martyn to Mike

24           Lembke, dated May 25, 2005

25      12   Estimate Summary Sheet          136
```

EXHIBIT 2
PAGE 3 OF 13

```
00004
 1                EXHIBIT INDEX continued

 2  EXHIBIT MARKED                              PAGE

 3   13    E-mail from Jason Peterson to Matt    141
           Holmstrom, sent 9-17-02.  Subject, RE:
 4         cargo wharf coating

 5   14    Drawing, Section A and Section B.  Also   143
           marked as Ex. 10 to Puett's dep.
 6

 7

 8

 9

10

11

12

13

14

15        Affidavit to the deposition of Michael    150

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 2
PAGE 4 OF 13

```
00005
 1  MICHAEL LEMBKE, witness herein, having been
            duly sworn by the Notary,
 2              testified under oath as
            follows:
 3
 4          (Exhibit No. 1 marked for
 5          identification.)
 6                EXAMINATION
 7  BY MR. KREGER:
 8     Q.  Would you state your name and spell your last
 9  name for the record, please.
10     A.  Michael K. Lembke, L-e-m-b-k-e.
11     Q.  Mr. Lembke, my name is Mike Kreger.  I
12  represent Brechan Enterprises, Inc. and Safeco
13  Insurance Company in this matter.  You're here for your
14  deposition.  You're appearing pursuant to a subpoena;
15  is that correct?
16     A.  Yes, sir.
17     Q.  We've had this marked as Exhibit 1.  Would
18  you take a look at that and tell me if that's the
19  subpoena that you received in connection with this
20  matter.
21     A.  I believe it is.
22     Q.  Have you ever had your deposition taken
23  before?
24     A.  Yes, sir.
25     Q.  How many times?
```

EXHIBIT 2
PAGE 5 OF 13

00194
1  affected by the same problem with trying to meet the
2  specification for high voltage Holiday testing that
3  Absolute was affected by later on, and so Imperial's
4  costs were also impacted by this problem. They went
5  back time and time again making repairs because they
6  kept failing the Holiday testing in Areas A and B, and
7  those are the two areas that they actually did coatings
8  work on. They did primarily prep and other preliminary
9  work in the other two sections.
10         MR. MARSTON: It's 4 o'clock, Peter.
11     Q. (BY MR. KREGER) Have you done an independent
12  analysis of the so-called business devastation item
13  that you have reported in your recap under Line 12?
14     A. I read the report.
15     Q. Have you done an independent analysis of the
16  business devastation that you reported in Line 12?
17     A. No. I'm assuming that the expert that
18  prepared that report has done it properly and I'm
19  relying on his report.
20     Q. What do you mean in your report, Exhibit D,
21  by business devastation?
22     A. What do I mean by Exhibit D, the line item
23  regarding business devastation?
24     Q. Yes, sir.
25     A. Well, that is a separate element of a claim

EXHIBIT 2
PAGE 6 OF 13

00195
1  that my understanding Mr. Olson has that's part of this
2  overall litigation.
3    Q.  Have you formed an opinion as to whether or
4  not -- excuse me.  Have you been asked to express an
5  opinion about the relationship between the business
6  devastation number that you were supplied by the other
7  expert and the events that occurred on the project?
8    A.  Have I been asked an opinion with respect to
9  the business devastation aspect of this lawsuit?
10   Q.  Yes.
11   A.  No.
12   Q.  So are you going to express an opinion at
13 trial as to whether Absolute has experienced business
14 devastation?
15   A.  I don't believe so.
16       MR. KREGER:  Let's go off record
17 briefly.
18       (Off the record at 4:03 p.m.)
19       (Back on the record at 4:08 p.m.)
20   Q.  (BY MR. KREGER) How does your method of
21 calculating the damages that you have opined are owed
22 by Brechan and Coffman account for the factors that you
23 identified in your first report having to do with
24 Imperial's poor performance on the work, lack of
25 quality control, improper pump equipment, improper

EXHIBIT 2
PAGE 7 OF 13

00198
1  analysis for Absolute. I've got questions about
2  whether there are different types of loss exposures.
3  Those are the ones that I see in my notes here that I
4  haven't asked him.
5          MR. MARSTON: Okay. This is what I'll
6  agree to do: I'll agree to confer with you after the
7  deposition is over and maybe we can make some
8  reciprocal accommodations or something along those
9  lines, but we can take that up when the deposition's
10 concluded.
11      Mr. Partnow?
12              EXAMINATION
13 BY MR. PARTNOW:
14    Q. Mr. Lembke, hi. I'm Peter Partnow. I
15 represent Coffman Engineers. I have as many questions
16 that I can get in. I'll see how we do.
17      In Exhibit D to your report, just look at
18 Errata 2, in terms of the business devastation, I
19 understand you've just plugged in the number that you
20 got from Mr. Bullion. I think that's the expert who
21 developed that number?
22          MR. MARSTON: Rulene.
23    Q. (BY MR. PARTNOW) Rulene. Sorry. I
24 apologize to him.
25    A. Yes. In the business devastation line item

EXHIBIT 2
PAGE 8 OF 13

00199

1  of Number 12, that is the number that comes directly

2  from his report.

3     Q.  And in terms of putting that totally under

4  the Coffman/Brechan as opposed to attributing any of

5  that to Imperial, why did you make that determination?

6     A.  I don't remember.  Quite honestly, I don't

7  remember.

8     Q.  In terms of -- you yourself, as I understand,

9  you're not going to express any -- you have not formed

10 any opinion in terms of -- strike that.

11        You haven't done any analyses yourself in

12 terms of Absolute's alleged business devastation?

13    A.  Is the question:  Have I done any analysis in

14 terms of Absolute's business devastation?

15    Q.  Yes.

16    A.  No.

17    Q.  For instance, let's assume for the sake of

18 argument that Absolute's business is less robust now

19 than it was a couple years ago.  You haven't done

20 anything, for instance, to determine whether Absolute

21 grew too quickly and had problems or whether they took

22 too much capital out of the business or whether

23 Mr. Olson's health affected the business?  You haven't

24 done any of that sort of thing, have you?

25    A.  Well, I have knowledge of the fact that he

EXHIBIT 2
PAGE 9 OF 13

00200
1  spent an awful lot of money on this lawsuit and it has
2  been a hardship on him, but I haven't done any analysis
3  of the problem, no.
4    Q.  And as far as you know, that's not on your
5  to-do list for trial, the scope of opinions you're
6  going to be expressing?
7    A.  No.
8    Q.  Do you currently have plans to further
9  supplement either your March 2006 report or your
10 November 2004 report?
11   A.  I'm certain that I will supplement my second
12 report.
13   Q.  And when is it that you think that
14 supplementation is going to be done by?
15   A.  That will be driven by the discovery and the
16 cutoff for that, I would assume.
17         MR. MARSTON:  Now, let me jump in
18 there.  He's not been asked to do anything more.  The
19 only supplementation is, like Mr. Kreger said, the duty
20 upon all experts to supplement their opinions, to the
21 extent that discovery required -- information gleaned
22 through further discovery impacts their opinions.  Same
23 thing all experts are going to do.
24   Q.  (BY MR. PARTNOW)  In your March report of
25 this year, as well as responding to Mr. Kreger's

EXHIBIT 2
PAGE 10 OF 13

00202
1  their relationship with Brechan and probably with the
2  Coast Guard as well.  You know, everybody would like to
3  walk away from a project without people being upset
4  with them about how the project went.
5        So I don't understand all of Coffman's
6  motives, but I will say that Coffman was involved in
7  both the identification of the problem, trying to get
8  the costs for the problem resolved and in the
9  relaxation of the specifications.  And so I'm assuming
10 that they had some interest there that was driving
11 their participation trying to help this issue other
12 than just a simple contractual obligation that they had
13 to Brechan.
14       Could I add one thing for the record?  I just
15 recalled why I put the business devastation number
16 under Item 12 Brechan/Coffman.  That was at the request
17 of Mr. Olson.  I just remembered that.
18   Q.  (BY MR. PARTNOW) So you yourself have no
19 basis for allocating it one place or another, just that
20 that's what Mr. Olson asked you to do?
21   A.  That's correct.
22   Q.  In terms of saying that Coffman was in the
23 middle of things and so forth, based upon the work that
24 you've done to date and the opinions you've expressed
25 in your reports, are you critical of anything that

EXHIBIT 2
PAGE 11 OF 13

```
00255
 1           C E R T I F I C A T E
 2  STATE OF WASHINGTON )
                        ) SS.
 3  COUNTY OF PIERCE    )
 4           I, the undersigned Notary Public in and
 5  for the State of Washington, do hereby certify:
 6           That the annexed and foregoing
 7  deposition of each witness named herein was taken
 8  stenographically before me and reduced to typewriting
 9  under my direction;
10           I further certify that the deposition
11  was submitted to each said witness for examination,
12  reading and signature after the same was transcribed,
13  unless indicated in the record that the parties and
14  each witness waive the signing;
15           I further certify that I am not a
16  relative or employee or attorney or counsel of any of
17  the parties to said action, or a relative or employee
18  of any such attorney or counsel, and that I am not
19  financially interested in the said action or the
20  outcome thereof;
21           I further certify that each witness
22  before examination was by me duly sworn to testify the
23  truth, the whole truth and nothing but the truth;
24           I further certify that the deposition,
25  as transcribed, is a full, true and correct transcript
```

EXHIBIT 2
PAGE 12 OF 13

```
00256
  1  of the testimony, including questions and answers, and
  2  all objections, motions, and exceptions of counsel made
  3  and taken at the time of the foregoing examination;
  4           IN WITNESS WHEREOF, I have hereunto set
  5  my hand and affixed my official seal this _____ day
  6  of _____, 2006.
  7
  8
  9
 10
 11
 12
 13       _____
 14           VALERIE L. SEATON, RPR, CCR
             Notary Public in and for
 15            the State of Washington,
             residing at Tacoma.
 16            License No. 2557
 17
 18
 19
 20
 21
 22
 23
 24
 25
```

EXHIBIT 2
PAGE 13 OF 13