IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA


ABSOLUTE ENVIRONMENTAL SERVICES, INC.,
an Alaska Corporation,
              Plaintiff,

vs.

FORREST J. MCKINLEY, an individual, d/b/a
"Imperial Industrial Coatings" and EMERCO,
INC., a California Corporation, d/b/a Imperial
Industrial Coatings, BRECHAN ENTERPRISES, INC.,
an Alaska Corporation; and SAFECO INSURANCE
COMPANY OF AMERICA, a Washington Corporation.
              Defendants.
_____/

EMERCO, INC., a California Corporation d/b/a
Imperial Industrial Coatings, and the States
for Use and Benefit of EMERCO, INC.,

              Counterclaimant/Third-Party Claimant,

vs.

ABSOLUTE ENVIRONMENTAL SERVICES, INC.,
an Alaska Corporation, et al.,

              Cross-Defendants/Third-Party Defendants.
_____/

THE UNITED STATES OF AMERICA for the use and benefit
of ABSOLUTE ENVIRONMENTAL SERVICES, INC., an
Alaska Corporation,

              Plaintiff,

vs.

SAFECO INSURANCE COMPANY OF AMERICA, a Washington
Corporation.

              Defendants.
_____/

EXHIBIT 3
PAGE 1 OF 16

Page 1

00002

1    BRECHAN ENTERTAINMENT, INC., an
     Alaska Corporation,

2
            Counterclaim Plaintiff,

3
     vs.

4
     ABSOLUTE ENVIRONMENTAL SERVICES, INC.,
5     an Alaska Corporation,

6            Counterclaim Defendant.

                                                              /

7    BRECHAN ENTERPRISES, INC., an Alaska
     Corporation,

8
            Third-Party Plaintiff,

9
     vs.

10
     COFFMAN ENGINEERS, INC., a Washington
11    Corporation,

12           Third-Party Defendant.

                                                              /

13   ABSOLUTE ENVIRONMENTAL SERVICES, INC.,
     an Alaska Corporation,

14
            Plaintiff/Cross-Claimant

15

16   vs.

17   COFFMAN ENGINEERS, INC., a Washington
     Corporation,

18
            Third-party Defendant.

19   _____/

20
            DEPOSITION OF DONOVAN RULIEN
21              Pages 1-152 inclusive
                June 27, 2006
22              Commencing at 9:00 a.m.
                Anchorage, Alaska
23

24

25
                                    EXHIBIT __3__
                                    PAGE _2_ OF _16_

**Rulien, Donovan 062706**                    **Page 2**

00003

1       IN THE UNITED STATES DISTRICT COURT FOR THE

2          STATE OF ALAKSA

3

4

5                      _____

6

7

8

9

10

11

12

13

14

15         DEPOSITION OF DONOVAN RULIEN,

16   Taken on behalf of Third-party Defendant Coffman

17   Engineers, Inc., pursuant to Notice at the offices of

18   Lane Powell, 301 West Northern Lights Boulevard,

19   Anchorage, Alaska, before Patta K. Johnson, Shorthand

20   Reporter for Alaska Stenotype Reporters and Notary Public

21   In and for the State of Alaska.

22

23

24

25

EXHIBIT 3
PAGE 3 OF 46

**Rulien, Donovan 062706**                  **Page 3**

00005
1        I N D E X

2

3   EXAMINATION BY:                    PAGE

4
   Mr. Partnow                    6, 148
5
   Mr. Nist                       80
6

7

8

9

10
   EXHIBITS:
11

12   Exhibit 1              6

13   Exhibit 2              25

14   Exhibit 3              36

15   Exhibit 4              40

16   Exhibit 5              40

17   Exhibit 6              67

18   Exhibit 7              67

19   Exhibit 8              104

20

21

22

23

24

25

EXHIBIT 3
PAGE 4 OF 16

**Rulien, Donovan 062706**                    **Page 5**

00006

1

Whereupon,

2          Donovan Rulien,

3     called as a witness herein having been duly sworn

4     upon oath by Patta K. Johnson, Notary Public, was

5     examined and testified as follows:

6          EXAMINATION

7     (Exhibit 1 marked for identification prior to deposition.)

8     BY MR. PARTNOW:

9        Q.  For the record, can you state your name and

10    business address?

11       A.  Yeah.  Donovan W. Rulien 1407 West 31st, Suite

12    500, Anchorage, Alaska, 99503.

13       Q.  Is it Rulien?

14       A.  Rulien, like contractor lien.

15       Q.  And I gather you have been deposed before?

16       A.  Yes.

17       Q.  So you know more or less how depositions go.  I

18    will ask you questions and if they're stupid questions, let

19    me know.  If you don't understand them, I'll try to

20    rephrase.  Working with numbers and the concepts you work

21    with, when you're not a licensed CPA like Mr. Nangle, can

22    be difficult for attorneys like us.

23          If you need to take a break at any point, just

24    let me know.  It's not a duration contest to see who can

25    last longest.

EXHIBIT 3
PAGE 5 OF 16

**Rulien, Donovan 062706**                    **Page 6**

00009

1    Q.  Back on record.  One thing I forgot to

2  mention and the court reporter will remind us if you

3  try to remember -- and so far you have been good and

4  I forget this sometimes -- to wait until I finish my

5  question before you give your answer.  And I will try

6  not to ask the next question so not to have both of

7  us going at the same time.  And also try to

8  remember -- and you have been good to remember to

9  answer audibly rather than head shakes, once you get

10  to that point, because she can't get a head shake

11  down on the record.

12        First, I have marked before we started,

13  Exhibit 1.  And am I correct that this is basically

14  an expert valuation report you prepared in

15  conjunction with this litigation?

16    A.  Yes.

17    Q.  Along with various attachments, and so

18  forth, some of which you prepared and some of which

19  you relied on and some of which were already in

20  existence -- I'm not sure all the appendices were --

21    A.  I'm sure this was the full report I

22  submitted, yes.

23    Q.  Okay.  Let me ask you to turn to the last

24  couple of pages of that where you have your CV.

25    A.  Yes.

EXHIBIT _3_
PAGE _6_ OF _16_

**Rulien, Donovan 062706**                    **Page 9**

00016

1   of similar size to the business you valued for the

2   purposes of this litigation?

3      A.  Can you define "similar"?

4      Q.  Well, let's say they were doing gross

5   revenues in the range of 2 to 5 million dollars a

6   year?

7      A.  I would say probably the majority of these

8   would be in that range.  Well, let me take that back.

9   There are one -- I would say there are five of those.

10  Do you want me to --

11     Q.  Yes.

12     A.  Saltwater Inc; Alaska Developors, Inc;

13  Scan Home; Lake View General Contractors, Inc., and

14  Anchorage Yamaha.

15     Q.  Okay.  And of the remaining 11, would they

16  generally be larger or smaller?

17     A.  Smaller.

18     Q.  All of them smaller?

19     A.  All of them smaller.

20     Q.  Now, my understanding is that in addition

21  to providing your expert report, you have had an

22  ongoing relationship as a CPA with Absolute

23  Environmental?

24     A.  Yes, I have.

25     Q.  And they are a client of your firm?

EXHIBIT 3
PAGE 1 OF 16

**Rulien, Donovan 062706**                    **Page 16**

00017

1    A.  Yes, they are.

2    Q.  How long has Absolute been a client of

3  yours?

4    A.  I would have to look at a tax return to

5  tell you, but a long time.

6    Q.  Do they predate your working in your

7  current firm?

8    A.  Yes.

9    Q.  Do you have any recollection as to how you

10  first became involved in doing -- strike that.  You

11  do Mr. Olson's personal taxes as well the business

12  tax; is that correct?

13    A.  Yes, I do.

14    Q.  And do you have any recollection how you

15  came to know Mr. Olson?

16    A.  He was a referral, I would say back in

17  1991 or 1992, from a banker that I know.

18    Q.  And could you describe what the nature of

19  the work is that you perform on behalf of Mr. Olson,

20  Absolute and SAD?

21    A.  Currently tax preparation for all three.

22    Q.  Anything else?

23    A.  No.

24    Q.  Historically, what else?

25    A.  Historically, we reviewed financial

EXHIBIT 3
PAGE 8 OF 16

**Rulien, Donovan 062706**                    **Page 17**

00018

1  statements for Absolute Environmental Services.

2      Q.   I note -- and correct me if I'm wrong -- I

3  understand that your report, Exhibit 1, values the

4  combined -- both Absolute and SAD Leasing?

5      A.   That's correct.

6      Q.   My understanding is that those two

7  companies are separately incorporated; is that your

8  understanding?

9      A.   That's correct.

10     Q.   Do the papers that you brought with you

11  today, which we are having copied now, reflect the

12  relative size, assets, property ownership, so on and

13  so forth of the two entities?

14     A.   Yes, they do.

15     Q.   Is that reflected anywhere else in the

16  report itself?

17     A.   Yes, it is.

18     Q.   Okay.  Could you direct me in the report

19  to where one would distinguish between what is SAD

20  Leasing versus what is Absolute?

21     A.   Oh, I guess I didn't understand your

22  question.

23     Q.   I apologize.

24     A.   In the report it states who the owner is;

25  100 percent owned by Dave Olson, each entity.

EXHIBIT 3
PAGE 9 OF 16

**Rulien, Donovan 062706**                    **Page 18**

00020

1    Q.  Does SAD Leasing pay a salary or anything

2  like that to anybody?

3    A.  Not that I recall.

4    Q.  What does SAD Leasing do with the revenue

5  it generates?

6    A.  It is set up to not make money.  It's set

7  up to -- Absolute pays rent to SAD Leasing and that

8  is used to pay off the debts.

9    Q.  Were you involved in setting up SAD

10  Leasing with Mr. Olson or was it done with other

11  folks?

12    A.  I worked with him and then there were

13  attorneys who set it up.

14    Q.  I note that your report selects December

15  31, 2003 as the date of the valuation.  Whose

16  determination was it to perform the valuation as of

17  that date?

18    A.  It was probably a combination of myself,

19  Mr. Marston, and Mr. Olson.

20    Q.  What is your understanding as to why that

21  particular date was chosen other than it happens to

22  coincide with the end of a tax year?

23    A.  Other than it happens to coincide with the

24  end of the tax year and that 2003 was the year the

25  loss -- Mr. Olson's company had the large contract

EXHIBIT __3__
PAGE _10_ OF _16_

**Rulien, Donovan 062706**                    **Page 20**

00021
1  that went south on him.  And we had all the tax

2  information and financial data for that year as of

3  December 31, so we could do a better job of valuation

4  based on that instead of trying to go to find a

5  specific period in time.

6      Q.  If I understood your report, you indicated

7  if a different date was chosen, an earlier date, any

8  other date, then the valuation would likely be

9  different?

10     A.  That is correct.

11     Q.  Have you performed any assessment, for

12  instance, if date were chosen today, how would that

13  affect the value of the company?

14     A.  No.  I haven't been asked to do that.

15     Q.  So your opinion is limited to the value of

16  the company on that date?

17     A.  That's correct.

18     Q.  Have you been asked to supplement this

19  report in any way?

20     A.  Yes, I have.  One supplement I entered in

21  because Mr. Marston asked me to clarify a couple of

22  pieces of information.

23     Q.  I'm sorry, I've asked a bad question.

24  Your report dated, I think, it was March of -- we

25  received it in March of this year, have you been

EXHIBIT 3
PAGE 11 OF 16

**Rulien, Donovan 062706**                    **Page 21**

00022

1  asked to supplement this report, to change this

2  report in any way since the date it was issued?

3      A.  I did not change the report per se.  1

4  added a supplement to the report to further clarify

5  some information.

6      Q.  Since it was issued?

7      A.  Yes.

8      Q.  Do you recall which information was

9  clarified in your supplement?  I don't recall that I

10  have seen that.

11      A.  It's in my binder there.  But yes, there

12  was specific areas Mr. Marston requested me to say

13  what the information was for and that was on the net

14  asset value.

15      Q.  Do you know what the date of your

16  supplement was?

17      A.  Yesterday.

18      Q.  Okay.  We'll, get back to that after we've

19  had chance to look.  Do you know if you are

20  anticipated -- have you been requested to do any

21  further supplementation other than what you have

22  completed as of yesterday?

23      A.  No.

24      Q.  From the date this report was completed

25  until today, have you changed any of the opinions

EXHIBIT  3
PAGE  12 OF 16

**Rulien, Donovan 062706**                    **Page 22**

00023

1  that you have stated in your report?

2      A.  No.

3      Q.  Did anybody else work on this report other

4  than you?

5      A.  Yes.

6      Q.  At your firm?

7      A.  No.  I requested some information from the

8  National Association of CVA's.

9      Q.  Your report comes to the conclusion, does

10  it not, that as of December 31, 2003, the value of

11  the combined SAD Leasing slash Absolute Environmental

12  was $2.28 million?

13      A.  That's correct.

14      Q.  Did you come to some conclusion as to how

15  that value was affected by the litigation that this

16  report was issued for?

17      A.  How do you mean?

18      Q.  In other words, whether that value as of

19  that date was higher or lower than it would been but

20  for the Kodiak Cargo Wharf Project.  Let me just add

21  for clarification, I understand one of the things you

22  did in doing the valuation is you added back in -- if

23  I can use the word "the loss" attributed to that

24  project so that it wouldn't affect your valuation;

25  did I understand that correctly?



EXHIBIT 3
PAGE 13 OF 16

00024

1      A.  I added in the loss back to the valuation

2  report, yes.

3      Q.  And so does that mean, in terms of your

4  opinion, basically, no consideration is given to the

5  adverse impact of the Cargo Wharf Project for the

6  purpose of valuing the company as of December 31,

7  2003?

8      A.  How you mean?

9      Q.  I'm not sure.  I'm trying to determine

10  whether this report -- let me ask it a different way.

11  To what extent does this report reflect some change

12  in value of the company as a result of the Kodiak

13  project?

14      A.  All I did was normalize the company to

15  reflect what the company was worth if the loss had

16  not incurred.

17      Q.  So in other words this report assumes

18  there was a contract for a certain amount of money

19  and that contract was performed without unusual

20  circumstances having been generated?

21      A.  Correct.

22      Q.  And does your report in any way indicate

23  the amount of business devastation which Absolute may

24  have suffered?

25      A.  No.  The valuation is based on a specific

EXHIBIT 3
PAGE 14 OF 16

**Rulien, Donovan 062706**                    **Page 24**

00025

1  date as if the devastation did not occur.

2     Q.  So if there was business devastation, as

3  you understand it, that would then be the difference

4  between that $2.28 million, and what would be the

5  value of the company today, for instance?

6     A.  I haven't been asked to look at that.

7     Q.  But in fact, in other words, one cannot

8  look at your report and put a number to so-called

9  business devastation because you need to know what

10 it's gone to.  In other words, what change there has

11 been from the 2.28 to something else?

12    A.  Correct.

13    Q.  Have you ever spoken with Mr. Lembke?

14    A.  No, have I not.

15    Q.  Have you ever seen Mr. Lembke's report?

16    A.  I think I was faxed that report yesterday.

17    Q.  Let me -- Mr. Lembke in his report,

18 Exhibit D to his report, and also Exhibit 2 to his

19 deposition --

20       MR. NANGLE:  Why don't we make a copy of

21 that.

22       MR. PARTNOW:  And I'll make it an exhibit.

23       (Off record.  Exhibit 2 marked for

24 identification.)

25 BY MR. PARTNOW:

EXHIBIT 3
PAGE 15 OF 16

**Rulien, Donovan 062706**                **Page 25**

00152
1           C E R T I F I C A T E

2           I, the undersigned Notary Public in and for the

3    State of Alaska, do hereby certify that:

4           I am not a relative or employee or attorney or

5    counsel of any of the parties to said action, or a relative

6    of employee of any such attorney or counsel, and that I am

7    not financially interested in the said action or the

8    outcome thereof;

9           The witness, before examination, was by me duly

10   sworn to testify the truth, the whole truth, and nothing

11   but the truth; and

12          The deposition, as transcribed, is a true

13   record of the testimony given by the witness.

14          IN WITNESS WHEREOF, I have hereunto set my hand

15   and affixed my official seal this 7th day of July, 2006.

16

17

18   _____

19   PATTA K. JOHNSON
     My commission expires
20   07/04/08

21

22

23

24

25

EXHIBIT 3
PAGE 16 OF 16

**Rulien, Donovan 062706**                    **Page 152**