UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ABSOLUTE ENVIRONMENTAL
SERVICES, INC., an Alaska Corporation

     Plaintiff,

vs.

FORREST J. MCKINLEY, an individual,
d/b/a "Imperial Industrial Coatings" and
EMERCO, INC., a California Corporation,
d/b/a/ Imperial Industrial Coatings, BRECHAN
ENTERPRISES, INC., an Alaska Corporation;
and SAFECO INSURANCE COMPANY OF
AMERICA, a washington Corporation.

     Defendants.

---

EMERCO, INC., a California corporation d/b/a
Imperial Industrial Coatings, and the States for
Use and benefit of EMERCO, INC.,

Counterclaimant/Third-party Claimant,

v.

Absolute Environmental Services
INC., an Alaska corporation, et al.,

Cross-defendants/Third-party Defendants.

---

THE UNITED STATES OF AMERICA for
The use and benefit of ABSOLUTE
ENVIRONMENTAL SERVICES, INC., an
Alaska Corporation,

     Plaintiff,

vs.

SAFECO INSURANCE COMPANY OF
AMERICA, a Washington Corporation.

     Defendants.

---

*1*

EXHIBIT 4
PAGE 1 OF 22

Page 1

00002

1 _____

Brechan Enterprises, INC., an Alaska
2 Corporation,

3       Counterclaim Plaintiff,

4 vs.

5 ABSOLUTE ENVIRONMENTAL
SERVICES, INC., an Alaska Corporation,
6
      Counterclaim Defendant.
7 _____

Brechan Enterprises, INC., an Alaska
8 corporation,

9       Third-Party Plaintiff,

10 vs.

11 COFFMAN ENGINEERS, INC,a Washington
Corporation.
12
      Third-Party Defendant.
13 _____

Absolute Environmental Services
14 INC., an Alaska Corporation,

15       Plaintiff/Cross-claimant,

16 vs.

17 COFFMAN ENGINEERS INC., a Washington
Corporation.
18
      Third-Party Defendant.
19 _____

Case No. A-03-0199CV (RRB)
20

21

22

23

24

25

EXHIBIT 4
PAGE 2 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 2**

00003
1

2

3

4

5

6

7          DEPOSITION OF DAVID OLSON

8              Pages 1-128, inclusive

9              Commencing at 9:12 a.m.

10             Friday, June 9, 2006

11                 Anchorage, Alaska

12

13

14

15

16

17

18         Alaska Stenotype Reporters
           511 West Ninth Avenue
19           Anchorage, AK 99501-3520
           Serving Alaska Since 1953

20

21

22  Rick D. McWilliams, RPR, Ret.    Telephone 907.276.1680
      Fred M. Getty, RPR, Ret.        Email AkSteno@aol.com
23                  Fax 907.276-8016

24

25



EXHIBIT 4
PAGE 3 OF 22

**Olson, David 30b6 cont depo 060906**            **Page 3**

00004

1               UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF ALASKA

2

   ABSOLUTE ENVIRONMENTAL
3  SERVICES, INC., an Alaska Corporation

4      Plaintiff,

5  vs.

6  FORREST J. MCKINLEY, an individual,
   d/b/a "Imperial Industrial Coatings" and
7  EMERCO, INC., a California Corporation,
   d/b/a/ Imperial Industrial Coatings, BRECHAN
8  ENTERPRISES, INC., an Alaska Corporation;
   and SAFECO INSURANCE COMPANY OF
9  AMERICA, a washington Corporation.

10     Defendants.

11 EMERCO, INC., a California corporation d/b/a
   Imperial Industrial Coatings, and the States for
12 Use and benefit of EMERCO, INC.,

13 Counterclaimant/Third-party Claimant,

14 v.

15 Absolute Environmental Services
   INC., an Alaska corporation, et al.,
16
   Cross-defendants/Third-party Defendants.
17
   THE UNITED STATES OF AMERICA for
18 The use and benefit of ABSOLUTE
   ENVIRONMENTAL SERVICES, INC., an
19 Alaska Corporation,

20     Plaintiff,

21 vs.

22 SAFECO INSURANCE COMPANY OF
   AMERICA, a Washington Corporation.
23
       Defendants.
24

25

EXHIBIT 4
PAGE 4 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 4**

00005

```
 1  _____
    Brechan Enterprises, INC., an Alaska
 2  Corporation,

 3      Counterclaim Plaintiff,

 4  vs.

 5  ABSOLUTE ENVIRONMENTAL
    SERVICES, INC., an Alaska Corporation,
 6
        Counterclaim Defendant.
 7  _____
    Brechan Enterprises, INC., an Alaska
 8  corporation,

 9      Third-Party Plaintiff,

10  vs.

11  COFFMAN ENGINEERS, INC,a Washington
    Corporation.
12
        Third-Party Defendant.
13  _____
    Absolute Environmental Services
14  INC., an Alaska Corporation,

15      Plaintiff/Cross-claimant,

16  vs.

17  COFFMAN ENGINEERS INC., a Washington
    Corporation.
18      Third-Party Defendant.
    _____
19  Case No. A-03-0199CV (RRB)

20      DEPOSITION OF DAVID OLSON, taken on behalf of the

21  Defendants, pursuant to notice, at the Law Offices of

22  Perkins, Coie, 1029 West Third Avenue, Suite 300

23  Anchorage, Alaska, before Rosie S. Scott, Certified

24  Shorthand Reporter for Alaska Stenotype Reporters and

25  Notary Public for the State of Alaska.
```

EXHIBIT 4
PAGE 5 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 5**

00006
1              A-P-P-E-A-R-A-N-C-E-S

2

3  For the Plaintiff:  MARSTON HEFFERNAN FOREMAN
              By:  Terry R. Marston
4              16880 N.E. 79th Street
              Redmond, WA
5              (425) 861-5700

6

7  For Coffman:    LANE POWELL SPEARS LUBERSKY
              By:  Peter Partnow
8              301 West Northern Lights Boulevard
              Suite 301
9              Anchorage, AK 99503
              (907) 277-9511
10

11  For Brechan
    And Safeco:     PERKINS COIE
12              By: Jacob Nist
              1029 West Third Avenue
13              Suite 300
              Anchorage, AK 99501
14              (907) 279-8561

15

16

17

18

19
    Also present:    Tom Puett
20

21

22
    Reported By:     Rosie S. Scott, Certified
23              Shorthand Reporter

24

25

EXHIBIT 4
PAGE 6 OF 22

**Olson, David 30b6 cont depo 060906**              **Page 6**

00007
1          I-N-D-E-X

2

3

EXAMINATION BY:                    PAGE
4

5 Mr. Nist                    8

6 Mr. Partnow                    80

7 Further by Mr. Nist            121

8

9 EXHIBITS:

10

11 Exhibit 1, Excerpt of Rulien's Report        39

12 Exhibit 2, Financial Statements            47

13 Exhibit 3, Profit and Loss            54

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 4
PAGE 1 OF 22

00008

1 Anchorage, Alaska, Friday, June 9, 2006

2                DAVID OLSON,

3        called as a witness herein on behalf of the

4        defendant, having been duly sworn upon oath

5        by Rosie S. Scott, Notary Public, was

6        examined and testified as follows:

7                EXAMINATION

8 BY MR. NIST:

9    Q.   Mr. Olson, we'll skip the preliminaries since

10 you're very familiar with depositions at this point, I

11 assume. Let's see. Well, let's just get to what

12 Absolute has been doing since the last time your

13 deposition has been taken. Has Absolute defaulted on any

14 contracts?

15   A.   Have we defaulted on any contracts?

16        MR. PARTNOW: Objection. Vague in terms on

17 what you mean by contract.

18        MR. NIST: Do you understand what --

19        MR. MARSTON: Objection. Calls for a legal

20 conclusion, but go ahead.

21 BY MR. NIST:

22   Q.   Let me rephrase that. Has Absolute been

23 working on any contracts since the last time your

24 deposition has been taken?

25   A.   Yes, we have.

EXHIBIT 4
PAGE 8 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 8**

00013

1    Q.    Do you remember what the contract value was on

2  that?

3    A.    No.

4    Q.    Can you give me a rough order of magnitude?

5    A.    I don't remember.

6    Q.    Would it be less than $100,000?

7    A.    Oh, yes.

8    Q.    Less than 50?

9    A.    I don't know.

10    Q.    Since the last time your deposition has been

11  taken, has Absolute started any other projects?

12    A.    I -- yeah, yes.

13    Q.    And what are those projects?

14    A.    When was my deposition last taken?

15    Q.    I believe in March.

16    A.    I don't know if we started one in Fairbanks --

17  I believe one in Ketchikan.  May have started one here.

18    Q.    Here in Anchorage?

19    A.    Yeah, here in Anchorage.  I can't recall where

20  exactly the rest of them were.

21    Q.    Okay.  Are these all asbestos or lead

22  remediation?

23    A.    Yes.

24    Q.    And can you give me the approximate dollar

25  value of each of these contracts?

EXHIBIT 4
PAGE 9 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 13**

00014

1    A.    I don't know.

2    Q.    You can't tell me?

3    A.    I don't know with great specificity.

4    Q.    Okay.  Can you get me within the tens of

5  thousands of dollars range?

6    A.    No, but I can get that information for you.

7    Q.    Are all of them worth over $100,000?

8    A.    No, I don't believe so.

9    Q.    Are any of them worth over $100,000?

10    A.    I don't know, to be honest with you -- between

11  any potential contract mods and base contracts, I don't

12  know.

13    Q.    Since the last time your deposition has been

14  taken, has Absolute finished any projects?

15    A.    I believe we have, yes.

16    Q.    Okay.  And what was the -- which projects were

17  those?

18    A.    I guess we'd have to define finish in regards

19  to, you know, are we done with the labor on the job or

20  closed out the paperwork.

21        MR. MARSTON:  He'll define it for you.

22  BY MR. NIST:

23    Q.    Okay.  Well, let's take one step at a time.  It

24  sounds like you finished the labor on the project, on

25  some projects?



EXHIBIT 4
PAGE 10 OF 22

**Olson, David 30b6 cont depo 060906**          **Page 14**

00015

1   A.   I believe we have.

2   Q.   Okay.  And which projects are those?

3   A.   I'd have to get back to you on that.

4   Q.   You can't say?

5   A.   I don't know for certain.

6   Q.   And --

7       MR. MARSTON:  You don't know, but you can find

8  out?

9       THE WITNESS:  Yeah, I can find out.  I know we

10  finished up some little job at Dimond Center we did for

11  the Ashlock Firm.

12  BY MR. NIST:

13   Q.   Were these projects profitable for Absolute?

14   A.   I believe so.

15   Q.   Can you say to the tune of how much?

16   A.   No.

17   Q.   Can you give me a rough order magnitude?

18   A.   No, but I can find out for you.

19   Q.   Since the last time your deposition has been

20  taken, has Absolute bid on any new work?

21   A.   I believe so.

22   Q.   Which projects are those?

23   A.   I don't know, but I can find out.

24   Q.   And this would involve you going through

25  Absolute -- when you say you can find out, does that

EXHIBIT  4
PAGE  11  OF  22

**Olson, David 30b6 cont depo 060906**              **Page 15**

00021

1  Sad Leasing?

2    A.    I don't know.  I can find out.

3    Q.    What would you have to do to find out?

4    A.    I have to look through exhaustive paperwork on

5  the lawsuit, I suppose.

6    Q.    You mentioned Mr. Rulien's report as -- for

7  your business devastation.  Has there been any steps to

8  separately value Sad Leasing as a business?

9    A.    Yeah.

10        MR. MARSTON:  Objection.  Calls for

11  speculation.  Lack of foundation.

12        THE WITNESS:  I can't recall without looking at

13  the report.

14  BY MR. NIST:

15    Q.    It would be in the expert -- Mr.Rulien's expert

16  report if such valuation did exist?

17    A.    In Mr. -- well, I've retained numerous experts.

18  There may be within Mr. Lembke's report that pertain to

19  it as well.  But I would have to look at both reports and

20  refer you to both of them, as I have retained those

21  people for those reports and am satisfied with those

22  reports.

23    Q.    So again, I just want to make sure I'm clear on

24  this:  The experts' reports is the only basis of the

25  valuation -- you have to evaluate business -- Absolute

EXHIBIT  4
PAGE 12 OF 22

**Olson, David 30b6 cont depo 060906**                 **Page 21**

00022

1  and Sad Leasing?

2    A.   I would say whatever work went into the report

3  would be whatever data is referred to or documents that

4  were provided to prepare said reports, would be germane

5  as well to your question.

6    Q.   Okay.  So Mr. -- am I correct in hearing that

7  you don't have any kind of independent basis for

8  valuating these claims, that you'd have to -- for

9  evaluating the business you would have to defer to

10  Mr. Rulien and whatever work that he did?

11    A.   I said I would have to look at the reports.

12    Q.   Okay.

13    A.   And --

14      MR. MARSTON:  Objection.  Misstates the

15  witness' testimony.

16      THE WITNESS:  I just can't recite back to you

17  the exact documents, sitting here right now, that were

18  used to prepare those reports.  And like I said, I have

19  reviewed those reports and concur with the opinions

20  expressed in those reports.

21  BY MR. NIST:

22    Q.   Have all those documents been produced as part

23  of this litigation?

24      MR. MARSTON:  Objection.  Lack of foundation.

25      THE WITNESS:  I don't know, but I believe so.

EXHIBIT 4
PAGE 13 OF 22

**Olson, David 30b6 cont depo 060906**          **Page 22**

00030
1  time, I believe, in 1999.

2    Q.    Well, since 1993, can you give me a description

3  of how and whether Absolute has grown?

4    A.    Yes.  Absolute has grown dramatically since

5  1993.  It -- well, it started out with some total of -- I

6  guess the way I always relate it is, is I started out

7  with $40,000 in working capital, and worked up to where

8  that was one week's payroll.  So it has grown steadily up

9  until 2003.

10    Q.    And how much of that -- of Absolute's success

11  do you attribute to your management?

12    A.    A great deal.  And I only say that because a

13  number of people left my employ, started companies, and

14  never made it.  And so I would have to think that I have

15  something to do with the success of the company.

16    Q.    You were present for Mr. Elmore's deposition;

17  were you not?

18        MR. MARSTON:  The corporation or Mr. Olson?

19        MR. NIST:  I assume Mr. Olson is here as a

20  representative of the corporation.

21        MR. MARSTON:  I think you're right.

22  BY MR. NIST:

23    Q.    Okay.  Mr. Elmore testified in 2004 he was let

24  go because he essentially was not getting enough work for

25  Absolute.  Did you hear that?

EXHIBIT 4
PAGE 14 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 30**

00037

1  on work because of this -- Absolute -- or because of this

2  cargo wharf project?

3      A.  No.

4          MR. MARSTON: Objection.  Grossly

5  mischaracterizes the witness' testimony.

6          THE WITNESS: We didn't have a choice in the

7  matter.  If I don't have the cash to support a job that's

8  going to require payroll of $25,000 a week, since I don't

9  have the working capital, I have no choice but to let

10  that particular project go.

11  BY MR. NIST:

12     Q.   And I'm trying to figure out which projects

13  those are, sir.

14          MR. MARSTON: Objection.  Asked and answered.

15          THE WITNESS: I told you already that I don't

16  know with specificity what projects those are.

17  BY MR. NIST:

18     Q.   Absolute Environmental Services, do you know

19  what it's valued at?

20          MR. MARSTON: Objection.  Point and time.

21          THE WITNESS: At what point in time?

22  BY MR. NIST:

23     Q.   Let's go to 2003.  Do you know what it was

24  valued at in 2003?

25     A.   What date in 2003?



EXHIBIT 4
PAGE 15 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 37**

00038

1   Q.   December 31st.

2   A.   A million dollars less than it was valued at on

3   August 7th of 2003.

4   Q.   There was some kind of valuation?

5   A.   Plus or minus.

6   Q.   You did some kind of valuation of Absolute

7   Environmental Services on August 7th, 2003?

8   A.   I believe the business valuation that was

9   performed by my expert witness was based on the value of

10  Absolute Environmental Services prior to the overwhelming

11  losses it suffered on the cargo pier.

12  Q.   Okay.

13  A.   As a result of your client's actions.

14  Q.   And do you have any basis to agree or disagree

15  with Mr. Rulien's report?

16  A.   Agree or disagree?

17  Q.   Yeah.

18  A.   I agree with Mr. Rulien's report.

19  Q.   Without that report, do you have sufficient

20  knowledge to put a reasonably accurate value on Absolute

21  Environmental Services?

22  A.   I'm sorry, repeat the question.

23  Q.   Without Mr. Rulien's report do you have

24  sufficient knowledge and background to put a reasonably

25  accurate value on Absolute Environmental Services' worth?

EXHIBIT ___4___
PAGE 16 OF 22

**Olson, David 30b6 cont depo 060906**          **Page 38**

00039

1    A.   You'd have to define value.

2         MR. MARSTON:  Objection.  Vague.

3         THE WITNESS:  I don't have an accounting

4    background, and I don't have a -- I've never done a

5    business valuation of any business before.  You know,

6    that number doesn't take into account what people refer

7    to as blue sky.  I would think that Absolute is worth

8    more than what's stated possibly as for potential future

9    worth of it, as opposed to actual at that moment worth.

10   BY MR. NIST:

11   Q.   What about currently?  Do you have any idea

12   about Absolute Environmental Services current worth?

13        MR. MARSTON:  Calls for a yes or no answer.

14        THE WITNESS:  Do I have a knowledge of its

15   current worth?

16   BY MR. NIST:

17   Q.   Yes.

18   A.   No.

19        (Exhibit 1 marked.)

20   BY MR. NIST:

21   Q.   Mr. Olson, you've been handed what's been

22   marked as Exhibit 1 to Volume 2 of this deposition.  Do

23   you recognize this document, sir?

24   A.   I believe this to be part of Mr. Rulien's

25   expert report.

EXHIBIT 4
PAGE 17 OF 22

**Olson, David 30b6 cont depo 060906**                    **Page 39**

00044

1    So to say that's it -- I mean, given the

2  circumstances of us getting killed on this particular

3  project, I would qualify my answer, give you a yes, if we

4  put it into the -- into a micro cause of it.

5    MR. NIST:  Okay.

6    MR. MARSTON:  And before you ask another

7  question can we take a quick -- step outside with my

8  client and confer.

9    (Off record.)

10  BY MR. NIST:

11    Q.  Mr. Olson, do you know whether the net asset

12  valuation method described in Exhibit E to Mr. Rulien's

13  report takes into consideration things like your time?

14    MR. MARSTON:  Objection.  Mischaracterizes the

15  evidence.  The net asset valuation method is not

16  described in this document.

17    THE WITNESS:  I don't know.

18  BY MR. NIST:

19    Q.  Does Absolute Environmental Services still

20  maintain an office?

21    A.  Yes, we do.

22    Q.  And does it rent that space or does it own that

23  space?

24    A.  It now rents that space -- well, it's always

25  rented that space.

EXHIBIT 4
PAGE 18 OF 22

**Olson, David 30b6 cont depo 060906**      **Page 44**

00081

1    A.    A number of conversations with representatives

2  of the Coast Guard?

3    Q.    One or more conversations with representatives

4  of the Coast Guard?

5    A.    In what capacity of the people of the Coast

6  Guard?

7    Q.    Any capacity, who had something to do with --

8    A.    With the cargo work?

9    Q.    To the cargo wharf.

10    A.    I haven't had a -- yeah, I've had conversations

11  about the cargo wharf with people that worked for the

12  Coast Guard.

13    Q.    Okay.  And am I correct in my understanding

14  that in all of the conversations that you had, you were

15  speaking in your capacity as the president and the sole

16  shareholder of Absolute?

17    A.    No.

18    Q.    Okay.  With Mr. Rulien, were you dealing with

19  him in that capacity?

20    A.    Not strictly.  Mr. Rulien prepares my personal

21  taxes as well, so we'd have conversations about, you

22  know.

23    Q.    When you were talking with Mr. Rulien about his

24  expert report, were you speaking in your capacity as

25  president and shareholder of Absolute?

EXHIBIT 4
PAGE 19 OF 22

**Olson, David 30b6 cont depo 060906**          **Page 81**

00090

1  Mr. Marlow down there at the McKay Building.

2    Q.    Did you get the project at the McKay building

3  for Mr. Marlow?

4    A.    We did not, and then I rented that piece of

5  equipment out to somebody for some work over at

6  Elmendorf.

7    Q.    When did you move to Idaho?

8    A.    July of 2005.

9    Q.    And did you have a -- does Absolute rent any

10  portion of your house or property in Idaho to conduct its

11  business?

12    A.    No.

13    Q.    Do you have a business license in Idaho?

14    A.    No.  Do I or does Absolute?  You got away with

15  one there.

16      MR. MARSTON:  I think he was talking about

17  Absolute.

18  BY MR. PARTNOW:

19    Q.    I'm sorry, does Absolute have a business

20  license?

21    A.    No.

22    Q.    Did you build the house new as opposed to

23  Absolute build a house in Idaho to move into?

24    A.    No.

25      MR. MARSTON:  Slow down.

EXHIBIT _4_
PAGE _20_ OF _22_

**Olson, David 30b6 cont depo 060906**          **Page 90**

00092

1  18 months or something, we'd get to trial.  So I was

2  going along with thinking at some point in time I'd get

3  my money back.  So to give you an exact date of when

4  business devastation is prior to me -- or right about the

5  time I asked Mr. Nist's client for an equitable

6  adjustment, which is getting to the point where it hurt

7  too much for losses.

8  BY MR. PARTNOW:

9      Q.    So do I understand your answer to be that at or

10  about the date of the request for equitable adjustment to

11  Brechan was the point that you came to the conclusion

12  that Absolute had suffered business devastation?

13      A.    No.  It's a philosophical question to me.  To

14  me it is because I can't give you a specific date as to

15  what day I said we're devastated.

16      Q.    From the response to the earlier question, is

17  it your belief that the business devastation was --

18  strike that.

19          Your -- Absolute's position is that they lost,

20  in terms of a hard dollar loss or money out-of-pocket on

21  this project, they were negative somewhere in the range

22  of a million dollars, plus or minus?

23          MR. MARSTON:  Objection.  Vague as to how you

24  define hard money.

25          THE WITNESS:  Can you repeat the question?

EXHIBIT  4
PAGE  21  OF  22

**Olson, David 30b6 cont depo 060906**          **Page 92**

00127

1              REPORTER'S CERTIFICATE

2        I, ROSIE S. SCOTT, CSR, hereby certify:

3      That I am a Certified Shorthand Reporter

4  for Alaska Stenotype Reporters and Notary Public for the

5  State of Alaska; that the foregoing proceedings were

6  taken by me in computerized machine shorthand and

7  thereafter transcribed by me; that the transcript

8  constitutes a full, true and correct record of said

9  proceedings taken on the date and time indicated therein.

10        Further, that I am a disinterested person to

11  said action.

12        IN WITNESS WHEREOF, I have hereunto

13  subscribed my hand and affixed my official seal this

14  _____ day of _____, 2006.

15

16

17

18        _____

19     ROSIE S. SCOTT
       Certified Shorthand Reporter
20     My Commission Expires
       8/16/08

21

22

23

24

25

EXHIBIT 4
PAGE 22 OF 22

**Olson, David 30b6 cont depo 060906**            **Page 127**