# EXHIBIT 15

7-7

RECEIVED

JUL 1 2 2006

PERKINS COIE
ANCHORAGE

Terry R. Marston, *pro hac vice,* terry@mhf-law.com
Jami K. Elison, *pro hac vice.* jamie@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. <br><br> Defendants. | Case No.: A03-0199CV (RRB) <br><br><br><br><br><br> **ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S DISCOVERY REQUESTS** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC., <br><br> Counterclaimant/Third-party Claimant, <br><br> v. <br><br> ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, et al., <br><br> Cross-defendants/Third-party Defendants. | |

ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S
DISCOVERY REQUESTS
Case No. A03-0199CV (RRB)-- 1

| | |
|---|---|
| 1 | THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, )<br>)<br>)<br>)<br>)<br>) |
| 2 | |
| 3 | |
| 4 | Plaintiff, )<br>vs. )<br>) |
| 5 | |
| 6 | SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. )<br>)<br>) |
| 7 | Defendants. )<br>) |
| 8 | |
| 9 | BRECHAN ENTERPRISES, INC., an Alaska corporation, )<br>)<br>) |
| 10 | Counterclaim Plaintiff, )<br>vs. )<br>) |
| 11 | |
| 12 | ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, )<br>)<br>) |
| 13 | Counterclaim Defendant. ) |
| 14 | BRECHAN ENTERPRISES, INC., an Alaska corporation, )<br>)<br>) |
| 15 | Third-Party Plaintiff, )<br>vs. )<br>) |
| 16 | |
| 17 | COFFMAN ENGINEERS, INC, a Washington Corporation. )<br>)<br>) |
| 18 | Third-Party Defendant. )<br>) |
| 19 | ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, )<br>)<br>) |
| 20 | |
| 21 | Plaintiff/Cross-claimant, )<br>vs. )<br>) |
| 22 | COFFMAN ENGINEERS, INC, a Washington Corporation. )<br>)<br>) |
| 23 | |
| 24 | Third-Party Defendant. )<br>) |
| 25 | |
| 26 | |

ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S
DISCOVERY REQUESTS
Case No. A03-0199CV (RRB)-- 2

COMES NOW Absolute Environmental Services, Inc., and in response to Safeco's discovery requests responds as follows:

## DISCOVERY REQUESTS

**REQUEST FOR ADMISSION NO. 3:** Please admit that, prior to serving its complaint against Brechan and Safeco in this matter, Absolute Environmental Services, Inc. did not deliver to defendant Safeco Insurance Company of America a demand for money due under the Miller Act payment bond for this Project.

**ANSWER:** Admitted; none is required of a first-tier subcontractor under the Miller Act.

**INTERROGATORY NO. 7:** If you contend that Absolute Environmental Services, Inc., prior to serving its complaint against Brechan and Safeco in this matter, delivered to defendant Safeco Insurance Company of America a demand for money due under the Miller Act payment bond for this Project, please identify the demand, produce a copy of it, and identify the date you contend it was delivered to Safeco.

**ANSWER:** N/A

**REQUEST FOR PRODUCTION NO. 1:** Please produce all documents containing correspondence between Absolute and Safeco which relates to your complaint against Safeco in this litigation, *including specifically* correspondence to Safeco containing claims, notices of claims, and demands to Safeco for investigation of claims or events. If you content such correspondence has previously been produced, please identify correspondence by reference to Bates numbers.

ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S
DISCOVERY REQUESTS
Case No. A03-0199CV (RRB)-- 3

**ANSWER:** N/A

**INTERROGATORY NO. 8:** If you contend that defendant Safeco failed "to perform a reasonable investigation" of some event in connection with this Project, please describe the event you contend Safeco had an obligation to investigate, and state all facts which support your contention that Safeco was under an obligation to conduct an investigation of such event including, without limitation, the following:

- The event you contend Safeco had an obligation to investigate;
- The date you notified Safeco of the event you content it had an obligation to investigate;
- The date you requested that Safeco conduct an investigation of any such event;
- The representative of Safeco to whom you contend you made such request.

**ANSWER:**

1. The event Safeco had an obligation to investigate: AESI's Request for Equitable Adjustment

2. The date you notified Safeco of the event: The date Safeco's registered agent was served with the Summons and Complaint in this Lawsuit by AESI.

3. The facts that support your contention that Safeco had a duty to investigate: The obligations arise out of the language of the bond itself and the common law clarifications of those obligations.

4. The date you requested that Safeco conduct an investigation: AESI did not formally request an investigation; the duty to investigate does not require a formal request but instead arises out of the undertakings of the surety in its bond upon learning of the assertion of a claim against the bond principal and the surety.

5. The representative of Safeco to whom you made such request: Unknown; attorney Michael Kreger appeared on Safeco's behalf and no individual with Safeco was ever identified until recently.

**INTERROGATORY NO. 9:** If you contend that defendant Safeco failed to pay Absolute any "amounts due," please state all facts which support your contention, including, without limitation, the amount you contend became due from Safeco to Absolute, and the date such amount became due.

**ANSWER:**

6. The facts supporting that Safeco failed to pay Absolute amounts due: Absolute's claim as to entitlement and quantum are true and correct and Safeco has paid nothing.

7. The amount you contend became due from Safeco to Absolute: The amount of damages are those identified and attributed to BEI in the reports of Michael Lembke and Donovan Rulien, and not less than the penal sum of the bond.

8. The date such amount became due: The amounts became due at the time they were owed by BEI, which is the date of the Request for Equitable Adjustment.

**INTERROGATORY NO. 10:** Do you contend that Safeco's principal, Brechan Enterprises, Inc., failed to provide you, while under duty or obligation to disclose, material information regarding the work performed on the Project, and that Safeco is therefore liable under the terms of its payment bond to Absolute? If so, please state the following:

a. Describe in detail any and all information which was withheld or concealed from you by Brechan;

ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S
DISCOVERY REQUESTS
Case No. A03-0199CV (RRB)-- 5

b.   Whether you requested such information from Brechan;

c.   Whether you requested such information from any other person or entity;

d.   Any facts which you contend support your claim that Brechan had an obligation or duty to disclose the information you claim was not disclosed;

e.   All work (by date, place, hours and employee) you claim to have performed as a direct result of Brechan's alleged failure to disclose such information.

**ANSWER:**

9.  All information that was withheld or concealed by Brechan ...

> Information that latent material subsurface conditions existed in the form of defective and omitted welds that caused holidays to form in the coatings; that the specified caulking/stripe-coating procedure would not solve the holiday problem caused by the defective and omitted welds; that, due to the characteristics of the specified coating and caulking materials and the circumstances under which the work was required to be performed, the specified caulking/stripe coating procedure could not be done; and that the only way to achieve the holiday-free coating specified would be to engage in extensive, and expensive, cutting and grinding of structural and non-structural welds, work that was never identified as being required at the time the contract was entered into.

In addition, BEI withheld or concealed Jerry Hardenbergh's October 30, 2001 memorandum to Scott Bonney, which included the following statements ...

> During surface preparation inspection, after abrasive blasting, large number of surface defects became very apparent. The majority of these surface defects are almost *impossible* to see without removing the old coatings and corrosion build-up. Basically, there is a *lot* more surface preparation required, before coating application, than anyone anticipated.

> \*\*\* [T]he amount of poor welding and lack of consideration for corrosion engineering design has resulted in an *enormous* amount of surface preparation. \*\*\* The coating contactor is having difficulties obtaining a holiday-free coating system on the H-pile splice weld locations. The only areas that are not passing the holiday testing are the welded areas; splice plate locations in the upper elevations. The contractor has tried *numerous* times to coat the holiday areas and has spent an *excessive* amount of time trying to obtain a holiday-free coating. But due to the nature of this coating system, accessibility and surface conditions it's going to be difficult to achieve a holiday-free coating at the H-pile splice locations.
>
> After many discussions about the surface preparation difficulties, Coffman Engineers has developed three options for the CG to choose from, considering that it is their structure and money involved.
>
> Option 1: Includes additional manpower, equipment, and time to spend on extensive surface preparation and stripe coating welds *to achieve no coating holidays.* Very expensive option, estimate $500,000 to complete remainder of wharf.
>
> Option 2: Includes additional manpower, equipment, and little extra time for a moderate surface preparation *to result in a minimal level of holidays to remain.* This would require establishing an acceptance criterion. The coating contactor is formulating a cost for this option.

... plus approximately 1,000 pages of emails, correspondence, photographs, meeting minutes, and other documentation produced and/or exchanged between BEI's Mike Martin, Bill Oliver, Matt Holmstrom, and Jimmy Houck, CEI's Harold Hollis, Dan Stears, Jerry Hardenbergh, and Lawrence Radcliffe, Swalling's Mike Swalling, Andy Romine, and Michael Anderson, and FD&CC's Martin Boivin, Jerry Johnson, Kyle Hicks, Anita Repanich, Maggie Wilson, Paul Rendon, Steven Locher, Andy Brown, Chris Lynch and Scott Bonney regarding this very issue.

10. Whether you requested such information from Brechan: Before submitting Absolute's proposal, Jason Peterson asked BEI's project manager, Matt Holmstrom, whether the previous coating application subcontractor (Swalling) had encountered any significant problems in the first phase of the work. In response, Holmstrom said

that Swalling had experienced difficulties scheduling its work with the tide changes. He said that coordinating work with the tides was the "key" to the coating application work. He never mentioned that Swalling had encountered extensive defective and omitted welds causing holidays in the coatings and for which Swalling had projected cost increases approaching $1,000,000 to complete the first and second phases of the wharf project, unless the holiday-free standard was eliminated. On or about June 10, 2001, AESI passed through to BEI the request of IIC, AESI's coating application subcontractor for copies of correspondence between BEI and Swalling exchanged during the earlier phase of the work, correspondence (referred to as "war letters" by BEI's project manager) that would have revealed the existence of the weld problems. BEI never provided the correspondence IIC requested.

11. Whether you requested such information from any other person or entity: No

12. The facts supporting your claim that Brechan had a duty to disclose the information: Brechan was the general contractor; Brechan was aware of the information; Brechan was aware that the information would have a material impact on the difficulty and cost of the work; Brechan was aware that the information was not disclosed in the plans and specifications; Brechan was aware that the information was not what an experienced coatings applicator would normally expect; and Brechan was aware that AESI was not an experienced coatings applicator.

13. The work you performed as a result of Brechan's failure to disclose: As a result of BEI's failure to disclose this information, AESI and/or its subcontractor were required to coat and repair the same areas repeatedly; to consume excessive amounts of coating in performing repairs (and repeated repairs) and in failed attempts to prevent holidays

by building up coating millage; and to perform massive amounts of grinding of welds, including cutting off non-structural steel and grinding the remainder of the welds that had attached the steel.

14. The date of the work: This work was performed continuously throughout the project, from the time that holidays were first detected in the coatings over welds applied by IIC to the time that AESI performed the last of its warranty repairs.

15. The place of the work: The locations where this work was performed were at every weld. This was primarily at elevation 116'-119', but also at locations where seismic bracing and non-structural steel were welded to the piles. The structural weld areas can be specifically identified by reviewing the 1989 wharf renovation structural drawings (produced in discovery by CEI) and the structural details depicting weldments.

16. The hours of the work: The hours of the extra work were not separately coded, or codeable, at the time. AESI was not aware that the holiday problems it was experiencing were the result of the weld problems, as this information had not been disclosed by BEI or CEI and was only discovered much later, in the course of litigation with its subcontractor, by AESI.

17. The employees who performed the work: All employees mentioned in the certified payrolls participated in performing the work.

**INTERROGATORY NO. 11:** As to any damages which you claim to have incurred as a result of Brechan's breach of contract as alleged in paragraph 106 of your complaint, please identify with specificity the amount of all such damages, the conduct, act or omission which caused the

damage, and the amount of damages caused by such act or omission for which you seek recovery from Safeco.

**ANSWER:**

18. The amount of all damages you incurred as a result of Brechan's breach of contract: The amount of damages are those described in the reports of Michael Lembke and Donovan Rulien

19. the conduct, act or omission which caused the damage: Brechan's concealment and/or failure to disclose the information described above

20. the amount of damages caused by such act or omission you seek from Safeco: The amount of damages are those described in the reports of Michael Lembke and Donovan Rulien

**INTERROGATORY NO. 12:** As to any damages which you claim to have incurred as a result of Brechan's tortious conduct, as alleged in paragraph 107 of your complaint, for which you seek to recover damages from Safeco, please identify with specificity the amount of all such damages, the conduct, act or omission which caused such damages, and the amount of damages caused by each such act or omission.

**ANSWER:**

21. The amount of all damages you incurred you seek to recover from Safeco as a result of Brechan's tortious conduct: The amount of damages are those described in the reports of Michael Lembke and Donovan Rulien

22. the conduct, act or omission that caused the damages : Brechan's concealment and/or failure to disclose the information described above

23. the amount of damages caused by each act or omission.: The amount of damages are those described in the reports of Michael Lembke and Donovan Rulien

**INTERROGATORY NO. 13:** Please describe by Bates number the certified payroll reports which you prepared to report labor on the project for which you seek to recover damages from Safeco.

**ANSWER:**

24. Those documents have previously been produced by AESI long ago. The burden of locating them among the documents produced would be no greater on BEI at this point than it would be on AESI. AESI will defer to BEI to identify the specific Bate numbers with its own forces.

**REQUEST FOR PRODUCTION NO. 2:** Please produce true and accurate copies of certified payroll reports maintained by Absolute in connection with the project.

**ANSWER:** Previously produced.

**INTERROGATORY NO. 14:** If you contend Brechan constructively or expressly changed a term or condition of the subcontract between Brechan and Absolute, and that Absolute performed extra work in connection with such a change (for which you also contend Safeco is or may be liable under the Payment bond), please identify the change(s) you allege were made to the subcontract, the date the change occurred; the date you noticed the change(s) occurred; whether you gave anyone at Brechan, Coffman or the USCG notice of the alleged change; and the date of such notice, the date and location of any extra work you allege was caused by the change.

**ANSWER:**

25. Describe change(s) you allege were made to the subcontract: The changes made include the requirements imposed on AESI and/or its subcontractor to coat and repair the same areas repeatedly; to consume excessive amounts of coating in performing repairs (and repeated repairs) and in failed attempts to prevent holidays by building up coating millage; and to perform massive amounts of grinding of welds, including cutting off non-structural steel and grinding the remainder of the welds that had attached the steel, plus the resulting delays to the completion of the work.

26. The date the change occurred: Objection; number of interrogatories exceeds those permitted under the FRCP. This work was performed continuously throughout the project, from the time that holidays were first detected in the coatings over welds applied by IIC to the time that AESI performed the last of its warranty repairs.

27. The date you noticed the change(s) occurred: Objection; number of interrogatories exceeds those permitted under the FRCP. This question is ambiguous in that it presumes that AESI knew that the work it was having to perform in order to achieve a holiday-free coating at the time the work was performed *was* a change. This is not the case. AESI was never informed of the relationship between defective welds and the holidays, and did not uncover this fact until long after the work had been completed. Therefore, the changed work was performed throughout the project, however AESI's discovery of the information that identified that the work amounted to a compensable change was not discovered until AESI came into possession of the Hardenbergh October 30, 2001 memo. Had BEI provided this memo, or the correspondence requested by IIC on June 10, 2003, which AESI passed through to BEI, the fact of the existence of a compensable change would doubtless have been apparent at the time.

ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S
DISCOVERY REQUESTS
Case No. A03-0199CV (RRB)-- 12

28. Whether you gave anyone at Brechan, Coffman or the USCG notice of the alleged change: Objection; number of interrogatories exceeds those permitted under the FRCP. There are no contractual notice requirements, even had BEI disclosed to AESI the cause of the proliferation of holidays before or during the performance of the work. AESI submitted a Request for Equitable Adjustment to BEI based on this situation promptly after discovering the documentation from Phase I of the relationship between the holidays and the weld problems.

29. The date of such notice: Objection; number of interrogatories exceeds those permitted under the FRCP. The date of the Request for Equitable Adjustment.

30. The date and location of any extra work you allege was caused by the change: Objection; number of interrogatories exceeds those permitted under the FRCP. The locations where this work was performed were at every weld. This was primarily at elevation 116'-119', but also at locations where seismic bracing and non-structural steel were welded to the piles. The structural weld areas can be specifically identified by reviewing the 1989 wharf renovation structural drawings (produced in discovery by CEI) and the structural details depicting weldments.

RESPECTFULLY SUBMITTED this 7th day of July, 2006.

MARSTON HEFFERNAN FOREMAN, PLLC

By _____
Terry R. Marston II, WSBA No. 14440
Jami K. Elison, WSBA No. 31007
Attorneys for Plaintiff Absolute Environmental Service, Inc.

## VERIFICATION

STATE OF IDAHO             )
                           ) ss.
COUNTY OF IDAHO            )

I, Dave Olson, the President of Absolute Environmental Services, Inc., say on oath or affirm that I have read the foregoing answers to requests for admissions and interrogatories and I believe that the answers are true.

ABSOLUTE ENVIRONMENTAL SERVICES, INC.

By _____
Its  President

ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S
DISCOVERY REQUESTS
Case No. A03-0199CV (RRB)– 14

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury, under the laws of the State of Washington that I am now and at all times herein mentioned, a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below I caused to be served in the manner noted copies of the following upon designated counsel:

1. ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S DISCOVERY REQUESTS

| | |
|---|---|
| **_VIA E-Mail_** <br> Eric J. Brown, Esq. <br> Jermain Dunnagan & Owens, P.C. <br> 3000 A Street, Suite 300 <br> Anchorage, AK 99503-4097 <br> *Atty for Forrest McKinley and Emerco* | **_VIA E-Mail_** <br> Mr. William Baerg <br> Patrick Duffy <br> Monteleone & McCrory, LLP <br> 725 South Figueroa Street, Suite 3750 <br> Los Angeles, CA 90017-5446 <br> *Atty for Forrest McKinley and Emerco* |
| **_VIA E-Mail and US First Class Mail_** <br> Mike Kreger <br> Jacob Nist <br> Perkins Coie, LLP <br> 1029 West Third Avenue, Suite 300 <br> Anchorage, AK 99501 <br> *Atty for Brechan and Safeco* | **_VIA E-Mail_** <br> Peter Partnow <br> Lane Powell Spears Lubersky <br> 301 W. Northern Lights Boulevard <br> Suite 301 <br> Anchorage, Alaska 99503 <br> *Atty for Coffman* |
| **_VIA E-Mail_** <br> James B. Stoetzer <br> Lane Powell Spears Lubersky <br> 1420 Fifth Avenue, Suite 4100 <br> Seattle, WA 98101 <br> *Atty for Coffman* | **_VIA E-Mail_** <br> Robert J. Dickson <br> Atkinson, Conway & Gagnon, Inc. <br> 420 L Street, Suite 500 <br> Anchorage, AK 99501 <br> *Atty for Specialty Polymer Coatings* |

SIGNED at Redmond, Washington this 7th day of July, 2006.

_____
Kristy L. Martyn

ABSOLUTE ENVIRONMENTAL'S RESPONSES TO SAFECO INSURANCE COMPANY'S
DISCOVERY REQUESTS
Case No. A03-0199CV (RRB)-- 9