Peter C. Partnow, ASBA No. 7206029
James B. Stoetzer, ASBA No. 7911130
Lane Powell LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Tel: 907-277-9511
Fax: 907-276-2631
PartnowP@LanePowell.com

Attorneys for Third-Party Defendant
Coffman Engineers, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>                              Plaintiff,<br><br>v.<br><br>FORREST J. McKINLEY, an individual, d/b/a "Imperial industrial Coatings"; and EMERCO, INC., a California corporation, d/b/a Imperial Industrial Coatings; BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation,<br><br>                              Defendants. | Case No. 3:03-cv-00199-RRB |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the United States for the Use and Benefit of EMERCO, INC.,<br><br>        Counterclaimant/Third-Party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, et al.,<br><br>        Cross-Defendants/Third-Party Defendants. | **COFFMAN'S MOTION FOR SUMMARY JUDGMENT DISMISSAL OF ABSOLUTE'S NEGLIGENCE CLAIMS** |

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

THE UNITED STATES OF AMERICA for the use
and benefit of ABSOLUTE ENVIRONMENTAL
SERVICES, INC., an Alaska corporation,

                                Plaintiff,

v.

SAFECO INSURANCE COMPANY OF
AMERICA, a Washington corporation,

                                Defendant.

BRECHAN ENTERPRISES, INC., an Alaska
corporation,

                    Counterclaim Plaintiff,

v.

ABSOLUTE ENVIRONMENTAL SERVICES,
INC., an Alaska corporation,

                  Counterclaim Defendant.

BRECHAN ENTERPRISES, INC., an Alaska
corporation,

                    Third-Party Plaintiff,

v.

COFFMAN ENGINEERS, INC., a Washington
corporation,

                  Third-Party Defendant.

## I.  INTRODUCTION AND RELIEF REQUESTED

Third party defendant and cross-defendant, Coffman Engineers, Inc. ("Coffman") moves this Court for entry of an order on summary judgment dismissing the negligence claims asserted against it by plaintiff Absolute Environmental Services Inc. ("Absolute").  This motion is based on the following grounds:

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

1.      Absolute seeks damages from Coffman that constitute and consist of purely economic loss.  Governing case authority in Alaska holds that such damages are not recoverable in tort, but rather must be recovered pursuant a claim for breach of contract.  No contract exists or existed between Coffman and Absolute.  Absolute's negligence claims should, therefore, be dismissed.

2.      Absolute has failed to produce any competent expert testimony or evidence to establish that Coffman breached the applicable standard of care.  Expert testimony is required in order for Absolute to establish this necessary element of its negligence claims against Coffman. However, Absolute's purported expert lacks the requisite knowledge, skill and experience regarding the corrosion engineering work performed by Coffman on the construction project underlying this litigation, including writing specifications for plural component industrial coatings in a marine environment and the performance of quality assurance ("QA") duties on industrial coating projects in marine environments.  Due to this lack of knowledge and experience on the part of Absolute's expert in these areas, he is not competent to testify as to the standard of care applicable to Coffman nor is he competent to opine that Coffman breached that standard of care. His opinions are, therefore, inadmissible. In the absence of competent expert testimony regarding these issues, Absolute's negligence claims against Coffman must fail.

## II.  UNDISPUTED FACTS RELEVANT TO MOTION

This case arises out of the design for and implementation of renovations to the United States Coast Guard ("USCG") cargo wharf in Kodiak, Alaska.  Defendant and third party plaintiff Brechan Enterprises, Inc., ("Brechan") was the general contractor to the USCG for that project.  Part of the renovation included the removal of existing coatings and application of new coatings on the wharf's steel support members.  Coffman was hired by Brechan's sub-consultant, Tryck Nyman Hayes ("TNH"), to prepare the coating specification and perform QA services.  See Declaration of Jerry Hardenbergh, page 4.

In connection with this project, the USCG required that the coating specification be written so as to provide corrosion prevention that in conjunction with cathodic protection and coating maintenance, would provide the wharf's structure an additional 25 years of useful life. In order to meet this standard, it was necessary that the coating applied meet a "holiday free" standard, meaning that no holes or surface penetrations below a stated testing standard would be allowed to remain.[1] Hardenbergh declaration, pages 4-5. This standard was extremely important on the Kodiak wharf, where the steel members are constantly exposed in a marine, salt water environment. Moreover, sections of the steel members are in the tidal zone and therefore subject to immersion in the salt water by tides twice daily. Other elevations of the steel members, while not in the tidal zone, were in the "splash zone" and therefore subject to frequent inundation by waves and surface turbulence. Hardenbergh declaration, pages 4-5.

Due to funding limitations of the USCG, the project was divided into two phases. Phase I involved a wharf extension which was supported by circular support piles as well as the first portion of the original wharf which was supported by H-piles, while Phase II involved the completion of the original wharf. On Phase I, Swalling Construction Company ("Swalling") was the coating application subcontractor to Brechan. During the Phase I work on a portion of the original dock, Swalling encountered differing site conditions in the form of defective and omitted welds on the H pile support steel members. It was ultimately determined that Swalling was entitled to additional compensation for the additional work necessitated by these differing site conditions. Additionally, the coating specification was relaxed to allow the applicator the choice of stripe coating, caulking, or removing (grinding) non-structural steel rather than seal welding connections. These changes

---

[1] The testing standard in the specification was identical to that prescribed by the manufacturer of the coating material, namely, no holidays based on high voltage testing where the voltage meter was set for 100 volts per mil of coating thickness, based on actual thickness of the coating.

**LANE POWELL** LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

were incorporated into the Phase I contract documents through Modification 5 to Phase I. Hardenbergh declaration, page 6.

After Brechan had selected a subcontractor to perform the Phase II work, Brechan and the USCG requested Coffman (which was not under contract at the time, was not involved in anyway in the selection of a Phase II subcontractor or the price negotiations for Phase II work, and was unaware of the identity of the Phase II subcontractor) was requested to prepare a revised coating specification for Phase II that would incorporate the changes made in Modification 5.  After the exchange of several drafts, Coffman issued the final revised coating specification for Phase II dated November 26, 2002.

Brechan subcontracted the Phase II coating work to Absolute, who in turn subcontracted the coatings application to Imperial.  The project specifications required that the coatings applicator (Imperial) be certified by the manufacturer of the coatings material, Specialty Polymer Coatings U.S.A., Inc. ("SPC").  Although Imperial's applicators were certified by SPC in Kodiak at the start of Phase II, SPC  revoked Imperial's certification in early August, 2003 as a result of Imperial's failure to comply with SPC's recommendations and requirements in connection with the coating application.  Id.  Thereafter, Absolute, using its own forces, repaired much of the coating that Imperial had already applied and completed the remainder of the coating application.

In the fall of 2003, Absolute initiated this litigation by suing Imperial and its owner, Forrest McKinley, for damages Absolute allegedly incurred as a result of Imperial's conduct.  Imperial immediately responded by asserting claims against Absolute (as well as subsequently dismissed conspiracy claims against Coffman, Brechan, and others.)  It was not until after Coffman had been dismissed from this case by stipulation, and then brought back into the litigation in mid-November 2005, that Absolute asserted its cross-claims against Coffman.  See Exhibit A to declaration of counsel.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

In summary, Absolute's cross claims allege that Coffman was negligent by failing to include in the Phase II specification a description of the weld conditions encountered on Phase I. Absolute also alleges that Coffman was negligent in carrying out its quality assurance ("QA") duties. Absolute alleges that this purported negligence resulted in "financial damages" including increased costs to complete the work and "business devastation." See Absolute Cross-Claim, ¶¶ 10-27. Absolute also alleges that Coffman negligently or fraudulently misrepresented the condition of the welds on Phase II, allegedly causing damage to Absolute. These allegations are made despite the fact that no complaints regarding weld conditions were ever made during Phase II by Absolute, Imperial, or anyone else.

In its attempt to support its negligence claims against Coffman, Absolute engaged the services of Jeremy Hailey, P.E., to opine regarding Coffman's alleged failure to comply with the applicable standard of care. Mr. Hailey, whose services were retained on March 1, 2006, issued his report on March 21, 2006. A true and correct copy of that report is attached to the Partnow Declaration as Exhibit B. In his report, Hailey opines Coffman breached the standard of care in four ways:

1.    Mr. Hailey opines that Coffman breached the standard of care when it failed to include in the November 26, 2002 Phase II specification a description of the "existence and severity of defective and omitted welds discovered during Phase 1."

2.    Mr. Hailey opines that Coffman breached the standard of care in preparing the Phase II specification by requiring the coating applicator to provide a "holiday-free" coating.

3.    Mr. Hailey opines that Coffman breached the standard of care in preparing the Phase II specification by requiring that a "holiday-free" coating be established by high-voltage testing despite the alleged existence of "an enormous quantity of defective welds."

**LANE POWELL** LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**LANE POWELL** LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

4.    Mr. Hailey opines that Coffman breached the standard of care by specifying the use of stripe coating and/or caulking over weld areas despite allegedly knowing that SPC would not guarantee a holiday-free coating under those circumstances.

Mr. Hailey goes on to opine that these alleged breaches of the standard of care by Coffman caused Absolute to suffer "substantial financial losses."  Mr. Hailey renders these opinions despite the fact that:

1.    The vast majority of his knowledge and experience relates to cathodic protection, not to coatings.

2.    In connection with obtaining his degree in agricultural engineering he never took any course work relating to industrial or marine coatings.  Deposition of Jeremy Hailey ("Hailey Dep."), p 20, ll. 11-14, Hailey Dep. p. 32, 11.8-10.

3.    He took only one class, at the University of Alaska, in corrosion engineering.  (Hailey Dep., pp 20-21.)

4.    He has never written a specification for or relating to the application of a plural component industrial coating.  Hailey Dep., p. 44, 11.16-17.

5.    He has never written a specification for the application of an industrial coating in an over-water or marine environment.  Hailey Dep. p. 38-41

6.    He has never written a specification for the application of industrial coatings in a tidal zone.  Hailey Dep. pp. 38-41.

7.    His coating inspection experience consists of one project involving a water tank.  Haley Dep., pp 28-30.

8.    He has never performed any high voltage testing of industrial coatings.  Hailey Dep., pp. 60-61.

9.    He never personally observed the weld conditions on Phase I or Phase II, and in fact, has never actually seen or visited the cargo wharf.  Hailey Dep. p. 12.

Thus, Mr. Hailey offers opinions despite the fact that he has virtually no experience in writing coating specifications or performing high voltage testing on projects, such as this one, that involve the application of a plural component industrial coating in a marine environment with intertidal areas.

Absolute's damages experts are Michael Lembke and Donovan Rulien.   In summary, Absolute merely asserts a "total cost" claim against Coffman, in which it seeks to recover the cost of all work it performed on the project.  Absolute also alleges that its business was "devastated" as a result of Coffman's breaches of the standard of care.  Absolute makes no allegations of damages arising from personal injury or property damage.  See Declaration of Peter C. Partnow in Support of Coffman's Motion for Partial Summary Judgment Re: Business Devastation Damages Claim.

### III.  AUTHORITY AND ARGUMENT

**A.    Summary Judgment Standard.**

It is well established that under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to Summary judgment as a matter of law."  In Celotex Corporation v. Catrett, 477 U.S. 323 (1986) the party moving for summary judgment "bears the initial responsibility of informing the District Court of the basis for its motion, and demonstrating 'an absence of a genuine issue of material fact.'" Thereafter, the party opposing the motion can overcome the entry of summary judgment only by showing that the moving party is wrong as a matter of law, or by inducing competent, admissible facts which would support a verdict by the finder of fact in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986).  In the event the non-moving party fails in this

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

regard, then other disputed evidence becomes immaterial, and the moving party is entitled to summary judgment as a matter of law. <u>Celotex</u>, <u>supra</u>, 477 U.S. at 323 (1986).

In the present case, there is no dispute regarding the facts relevant to the economic loss rule argument set forth herein:  Absolute had no contract with Coffman, and seeks recovery of purely economic loss against Coffman.  Likewise, no material facts exist with regard to Mr. Hailey's lack of expertise and qualifications to testify regarding any alleged breaches by Coffman of the applicable standard of care.  Applying these undisputed facts to governing legal authority, Coffman is entitled to entry of summary judgment dismissing Absolute's negligence claims against it.

**B.**     **Alaska's Economic Loss Rule Precludes Absolute from Recovering its Damages, which Constitute Solely Economic Loss, from Coffman Pursuant to its Negligence Claims.**

The extensive discovery undertaken in this matter has revealed a number of unassailable facts.  Among those material indisputable facts are the following:

1.     Absolute had no contract with Coffman; and

2.     The damages Absolute seeks to recover against Coffman constitute purely economic loss.

The application of these undisputed and indisputable facts to governing Alaska case authority as discussed below mandates the dismissal of Absolute's negligence claims against Coffman pursuant to Alaska's economic loss rule.

The economic loss rule stands for the proposition that while damages arising from injuries to persons or property are properly recoverable in tort, economic losses, such as those alleged by Absolute herein, are recoverable only under contract law.  In other words, in the absence of contractual privity between a plaintiff and defendant, purely economic losses are not recoverable.

The application of the economic loss rule in Alaska began with products liability and strict liability cases, such as <u>Morrow v. New Moon Homes, Inc.</u>, 548 P.2d 79 (Alaska 1976) and <u>Northern

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Power & Engineering Corp. v. Caterpillar Tractor Co., 623 P.2d 324 (Alaska 1981).  Those cases

describe economic loss as the loss in value of the product itself or "costs of replacement and repair."

Morrow, 548 P.2d at 290; Northern Power, 623 P.2d at 329-30.

In Morrow, the Alaska Supreme Court adopted the holding and reasoning from the seminal

California case of Seeley v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965),

which held:

> The distinction that the law has drawn between tort recovery for physical injuries and
> warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of
> one plaintiff in having an accident causing physical injury.  The distinction rests,
> rather, on an understanding of the nature of the responsibility a manufacturer must
> undertake in distributing his products.  He can appropriately be held liable for
> physical injuries caused by defects by requiring his goods to match a standard of
> safety defined in terms of conditions that create unreasonable risks of harm.  He
> cannot be held liable for the level of performance unless he agrees that the product
> was designed to meet the consumer's demands.  A consumer should not be charged at
> the will of the manufacturer with bearing a risk of physical injury when he buys a
> product on the market.  He can, however, be fairly charged with the risk that the
> product will not match his economic expectations unless the manufacturer agrees that
> it will.

Morrow, 548 P.2d at 284-285.

In approving and following this holding, the Alaska Supreme Court in Morrow held:

> To extend strict tort liability to reach the Morrow's case would, in effect, be an
> assumption of legislative prerogative on our part and would vitiate clearly articulated
> statutory rights.  [fn. omitted.]  This we decline to do.  Thus, we hold that the theory
> of strict liability in tort which we recognized in Clary does not extend to the consumer
> who suffers only economic loss because of defective goods.

Id. at 286.

The Alaska Supreme Court has subsequently confirmed that the application of the economic

loss rule is not restricted to strict liability or products liability cases.  In Smith v. Tyonek Timber,

680 P.2d 1148 (1984), the Kenai Peninsula Borough contracted with H&S Construction for an

addition to a school in Tyonek, Alaska.  H&S subcontracted the concrete and masonry work to

Fred L. Smith.  In his original bid, Smith contemplated supplying concrete at the price of $100/yard.

If the concrete was provided by someone other than Smith, H&S was to pay any excess cost over that $100/yard figure.

From May to July, 1976, Smith mixed and poured his own concrete and successfully poured the foundation footings and block walls.  However, from July 7 to July 9, Tyonek Lumber supplied concrete pursuant to a contract with H&S.  The concrete supplied by Tyonek Lumber proved to be defective, and Smith was required to perform additional remedial work.  Thereafter, Smith sued Tyonek Lumber, alleging negligence arising from Tyonek's furnishing of defective concrete.  Smith sought damages in the form of the costs of replacing the defective concrete.

After trial, the trial court granted Tyonek's motion for a directed verdict on the grounds that Smith's damages, which consisted solely of economic losses, were not recoverable by Smith under a negligence claim.  Smith appealed. In upholding the trial court's ruling in this regard, the Alaska Supreme Court stated:

> We have had occasion to confront this issue in the context of a strict liability claim. In Morrow v. New Moon Homes, Inc., 548 P.2d 279 (Alaska 1976), we disallowed recovery in strict liability in tort against a remote manufacturer for economic loss sustained by purchasers of a thoroughly defective mobile home [fn. omitted].
>
> In reaching our decision, we adopted the approach of Chief Justice Traynor in Seely v. White Motor Co., 63 Cal.2d 9 (45 Cal. Rptr. 17, 403 P.2d 145 (1965) that recovery of economic loss should continue to be limited to contractual remedies.  The vast majority of jurisdictions support the Seely position and have not permitted recovery of purely economic losses in products liability actions sounding in tort. [fn omitted]

Id. at 1151.

The court went on to address Smith's argument that the economic loss rule applies only to strict liability claims, and not to simple negligence claims.  The court first cited with approval the Illinois case of Moorman Manufacturing Co. v. National Tank Co., 91 Ill.2d 69, 61 Ill. Dec. 746, 435 NE.2d 443 (1982), stating:

> From a broader perspective, we find Moorman Manufacturing Co. v. National Tank Co., [citation omitted] helpful in its extensive discussion of the evolution of the law relating to privity and economic loss.  Moorman held that a food processor could not

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

recover against a manufacturer of a defective grain storage tank for economic loss under the tort theories of strict liability, or negligence or innocent misrepresentation for primarily the same reasons.

Id. at 1153.

The Alaska Supreme Court went on to quote the holding in Moorman:

The policy considerations against allowing recovery for solely economic loss in strict liability cases apply to negligence actions as well.

Smith at 1154, quoting Moorman, 435 NE.2d at 451.

Based on this, and on the fact that Smith's damages, like Absolute's alleged damages in the present case, indisputably constituted purely economic loss, the Alaska Supreme Court in Smith held:

Consequently, we hold that Smith's lack of privity with Tyonek precludes his recovery for pure economic loss based on a negligence theory. We affirm the trial court's order granting appellee Tyonek's motion for directed verdict on this issue.

Id. at 1154.

The same result should apply here. There can be no dispute that Absolute was not in contractual privity with Coffman. Likewise, there can be no dispute that Absolute's damages constitute purely economic loss. Consequently, Absolute's negligence claims against Coffman should be dismissed pursuant to the economic loss rule.

## C.    Absolute's Failure to Produce Competent, Admissible Testimony that Coffman Breached the Standard of Care Mandates the Dismissal of Absolute's Negligence Claims Against Coffman.

It is well established under Alaska law that a negligence claim against a professional requires the testimony of a competent and commensurate professional to establish that the applicable standard of care has been breached.

[P]rofessional malpractice plaintiffs must support their claims with expert opinion evidence of the standard of care unless the negligence is sufficiently non-technical to be cognizable by lay persons.

Ball v. Birch, Horton, Bittner & Cherot, 58 P.3d 481, 485 (Alaska 2002), citing Kendall v. State, Div. of Corrs., 692 P.2d 953, 955 (Alaska 1984).

Consequently, in order to establish its negligence claims against Coffman, Absolute must produce expert testimony to establish that Coffman breached the standard of care.   That expert testimony must be competent, admissible, relevant and reliable.     Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L. Ed. 2d 469 (1993); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L. Ed. 2d 238 (1999)  In the absence of competent, admissible expert testimony, Absolute is unable to establish a necessary element of these negligence claims, and those claims must be dismissed.

As noted above, Absolute attempts to satisfy its obligations in this regard through the opinions of Jeremy Hailey.   However, applying the standards and requirements described below regarding the admissibility of expert opinions and testimony to Mr. Hailey's admitted lack of qualifications and expertise reveals he does not qualify as an expert with regard to the areas on which he opines and in connection with the issues presented in this case.   As described in more detail below, while Mr. Hailey offers opinions that Coffman breached the standard of care in connection with its preparation of the coating specification for the subject project, he admits to never having actually written a coating specification, particularly with respect to a plural component industrial coating applied in a marine environment involving tidal and splash zones.  While Mr. Hailey may qualify as an expert witness in the area of cathodic protection, a separate arm of the discipline known as corrosion engineering, that expertise bears no relevance to the issues presented herein. Mr. Hailey's lack of expertise renders his opinion testimony inadmissible.  This inadmissibility is fatal to Absolute's negligence claims against Coffman.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

### 1.    Mr. Hailey's Opinions.

As noted above, Mr. Hailey issued a written report setting forth his opinions regarding all of the instances in which he claims that Coffman breached the standard of care.  See Exhibit B to declaration of counsel.  On page 13 of his report, Mr. Hailey addresses the following question:

> Whether in your opinion Coffman breached its standard of care when it failed to disclose the existence and severity of defective and omitted welds discovered during Phase 1 within its November 26, 2001[sic] revised specifications?

Not surprisingly, Mr. Hailey answers this question in the affirmative.  He goes on to state as follows:

> Information concerning the actual site conditions regarding weld defects encountered during the work of Phase 1 was not transferred to the specifications associated with Phase II.  Known information in regard to the existence, quantity, and severity, of weld defects would have allowed [Absolute] to provide an accurate price proposal and realistic schedule for completing the work.

Id. at 13.

At page 13 of his report, Mr. Hailey poses another question:

> Whether, in your opinion, Coffman breached its standard of care when it required the applicator to provide a holiday-free coating in its November 26, 2001[sic] Phase II specifications?

Id. at 13.  Again, Mr. Hailey answers  in the affirmative.  He goes on to state at page 14 of his report:

> It is understood that the intent of the specification was to provide a structure that was adequately coated and was capable of extending the useful life by 25 years.  However, it is also reasonable to assume that the coating would soon experience damage and continue to do so throughout its life (from floating debris, ice conditions, vessel contact, general deterioration, etc.) and that minor maintenance will be required on a regular basis.  Under these circumstances, it was not necessary or feasible to provide a holiday-free coating.

Id. at 14.

Mr. Hailey poses another question on page 14 of his report:

> Whether in your opinion Coffman breached its standard of care when it specified a "holiday-free" coating established by high-voltage testing methods on piles with an enormous quantity of defective welds?

Id. at 14.  Again, Mr. Hailey opines that the answer to this question is "yes."  He goes on to state:

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

> It is my opinion that requiring a holiday-free coated surface, given the known existing surface imperfections and quantity of defective welds, would be unreasonable for a coating contractor to complete in a practical manner.

Id. at 14.

It is interesting to note that Mr. Hailey fails to describe or to provide any detail as to what would or would not constitute a "practical manner."[2]

Another question Mr. Hailey addresses on page 14 of his report is as follows:

> Whether in your opinion Coffman breached its standard of care when it specified the use of stripe coating/caulking over defective welds despite knowing that SPC would not guarantee a holiday-free coating under these circumstances.

Id. at 14.

Mr. Hailey's report again answers in the affirmative, that Coffman breached the standard of care by specifying the use of stripe coating or caulking over defective welds."[3]

Thus, each of Mr. Hailey's opinions as noted regarding Coffman's conduct relate to Coffman's preparation of the revised specification for Phase II.

Finally, on page 15 of his report, Mr. Hailey opines that these alleged breaches by Coffman of the standard of care caused Absolute to suffer "substantial" financial losses.

## 2.    Mr. Hailey's Lack of Qualifications.

Even a casual examination of Mr. Hailey's stated qualifications to offer the opinions described above reveals he has virtually no experience in preparing specifications for projects such as the Kodiak cargo wharf, which involve the application of a plural component industrial coating

---

[2] It is worthy to note that Mr. Hailey makes this opinion despite the fact that he never actually saw any "existing surface imperfections and [the] quantity of defective welds," since he never visited the site. This opinion is also made despite the fact that no complaints were ever made during Phase II regarding either surface imperfections or defective welds.

[3] It is important to note that Coffman's specification did not, in fact, "specify the use of stripe coating/caulking over defective welds…". The specification actually required that the welds be cleaned up to remove all weld splatter, scabs, etc., prior to stripe coating. Nevertheless, for purposes of this motion only, Coffman will accept Mr. Hailey's inaccurate reading of the project specifications.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

over a marine environment with tidal and splash zones.  Likewise, he has never been hired to perform quality assurance or quality control services in connection with this type of project, nor has he performed any high voltage testing of a plural component industrial coating applied to a structure with a marine exposure.  The simple, undisputed fact is, Mr. Hailey has never performed <u>any</u> work of the type that Coffman undertook in connection with the Kodiak cargo wharf project.  As his deposition testimony establishes, he has neither the education, the knowledge nor, perhaps most importantly, the experience in marine coating engineering or specification writing to qualify him to testify as an expert in regarding the matters at issue in this litigation.

A review of Mr. Hailey's own statements about his background and qualifications is instructive and revealing.   First, with regard to his educational background, Mr. Hailey acknowledges he did not take any course work in corrosion engineering while obtaining his degree in agricultural engineering from Washington State University.  Hailey Dep., pp. 19-20.  He further acknowledges that he took a single class in corrosion engineering at the University of Alaska (Hailey Dep., pp. 20-21).

Turning to actual work experience,  Mr. Hailey testified that during college, he worked for a contractor who installed a cathodic protection system at a refinery in Anacortes.  Hailey Dep., p. 24, ll. 11-16.  Mr. Hailey acknowledged that cathodic protection is a distinct branch of the "corrosion engineering:"

> Q.    Describe cathodic protection, please.
> A.    Cathodic protection is -- is the application of protective current to a metallic structure to keep the surface from supporting an oxidation reaction, essentially keeping the structure from corroding.

Hailey Dep., p. 24, ll. 17-21.

Mr. Hailey acknowledged that all of his design-build corrosion related specifications experience involved cathodic protection.  None were directed to a marine coating.  Hailey Dep., p. 43 line 15 to p. 44 line 1.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Mr. Hailey testified that he worked from 1994 to 1996 for an entity called Premier Cathodic Protection.  He testified that his employment with Premier did not involve any coatings work. During that time period, he did not draft any specifications at all, let alone specifications for a marine coating project such as the Kodiak cargo wharf.  Hailey Dep., p. 25, l. 1-p. 27, l. 18.

Mr. Hailey testified his next employer was Intermountain Corrosion Service located in Tacoma, Washington, where his job title was "Corrosion Engineer."  Hailey Dep., p. 27, l. 21-p. 28, l. 3.  He testified that he did "coating inspection work" on one project that involved a water tank at Jim Hill Creek.  Hailey Dep., p. 28, ll. 4-10.  He did not do any high voltage testing on that project. Hailey Dep., p. 28, ll. 12-13.  The water tank involved on that project was not coated with a plural component coating, nor was it in a marine environment.  Hailey Dep., p. 30, ll. 8-22.  He did not perform any further coating projects while at Intermountain, nor did he perform any coating inspection work, nor draft any coating specifications during that time.

Mr. Hailey testified that after leaving Intermountain, he went to work for Corrpro Companies, where he was a corrosion engineer at the Mukilteo, Washington office.  Hailey Dep., p. 31, ll. 17-20. While at Corrpro, he did not have any experience with marine coatings projects.  Rather, he again concentrated on cathodic protection work.  Indeed, he readily acknowledges that his background has focused primarily on cathodic protection.  Hailey Dep., p. 31, l. 19-p. 32, l. 10.  While at Corrpro, Mr. Hailey did not write any specifications for any kind of coating application.  Hailey Dep., p. 32, l. 25-p. 33, l. 2.

After transferring to Corrpro's Anchorage office, Mr. Hailey was again primarily engaged in the area of cathodic protection.  Hailey Dep., p. 33, ll. 12-17.  Mr. Hailey testified that while at the Alaska office of Corrpro, he got "involved with reviewing and revising and updating coating specifications" on one project.  Hailey Dep., p. 34, ll. 1-2.  He did not, however, draft any coating specifications.  Hailey Dep., p. 35, ll. 6-10.  Mr. Hailey acknowledged that it was unlikely that he

made any changes to the coating specification he reviewed in connection with that single project.

Hailey Dep., p. 37, ll. 1-3.

After leaving Corrpro, Mr. Hailey started his own business, Northwest Corrosion

Engineering.  As to his work with Northwest Corrosion Engineering, Mr. Hailey testified:

> Q.    Can you identify all the major projects you have had with your current employer, your business, a sole proprietorship, that involve writing coating specifications for marine projects?
> A.    I have not wrote[sic] any coating specifications for marine projects for coating in the marine environment.

Hailey Dep., p. 38, l. 22-p. 39, l. 2.  And while Mr. Hailey claims that he has prepared specifications

for coating jobs, none of those jobs included marine environments, and none of them involved plural

component coatings:

> Q.    Have you ever prepared a bid for a coating job?
> A.    I have wrote[sic] specifications for coating jobs, but I have not prepared a complete bid, which includes putting it out for bid, having the typical boilerplate information that you would require of a contractor, such as insurances and licenses and that, but I have written coating specifications that were included in those bid documents.
> Q.    But I think we've established none of those were for marine projects coatings?
> A.    Correct.
> Q.    How many of them involved plural component coatings?
> A.    None.

Hailey Dep., p. 44, ll. 13-17. [4]

Mr. Hailey's deposition testimony firmly establishes that he has absolutely no experience in

writing specifications, performing coatings inspections, or in performing quality assurance or quality

control work on coatings projects such as the Kodiak cargo wharf at issue in this litigation.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

---

[4] True and correct copies of these excerpts from the Hailey deposition are attached to the Partnow declaration as Exhibit C.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**3.    Mr. Hailey is Not Competent to Testify as an Expert Regarding the Standard of Care Applicable to Coffman on this Project, Nor as to Any Breach of that Standard of Care**.

As a starting point, the admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states in relevant part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, <u>a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise</u>. . . . [emphasis added]

The quoted language from ER 702 includes amendments to that rule to reflect the United States Supreme Court's decision in <u>Daubert</u>, <u>supra,</u> which established, among other things, that with regard to expert testimony and opinion, the district court acts in the role as a gatekeeper to determine admissibility.  It also reflects the Court's ruling in <u>Kumho</u>, <u>supra</u>, which expanded <u>Daubert</u>'s "gatekeeper" analysis to technical and other expert testimony, in addition to the traditional scientific testimony addressed in <u>Daubert</u>.  The Court in <u>Kumho</u> reiterated and reinforced the holding from <u>Daubert</u> that expert testimony must be both relevant and reliable.

The federal standard for the admissibility of expert testimony was addressed in <u>Tyus v. Urban Search Management</u>, 102 F.3d 256, 263, (Alaska 2005) which held that in determining the admissibility of expert testimony:

> The court must first consider whether the proffer demonstrated that the work that the scientific expert has done meets the standard of intellectual rigor described in <u>Braun [v. Lorillard, Inc.</u>, 84 F.3d 230 (7th Cir. 1996)] using criteria like those described in <u>Daubert</u> for guidance.  Next it must determine whether the proffered testimony is based upon the expert's special skills.  Finally, Rule 702 requires the Court to decide whether the proffered testimony will assist the Trier of fact to understand or determine a fact in issue.

Judge Sedwick recently addressed the issue the admissibility of non-scientific expert testimony in <u>Poon Lim/Pert Joint Venture v. Dick Pacific/Ghemm Joint Venture</u>, 2000 U.S. Dist. LEXIS 19281 (Mar. 2, 2006).  There, Judge Sedwick observed:

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

> In cases where the subject of the expert testimony is non-scientific, as the case at bar, education, training and experience, not necessarily methodology or theory, are more appropriate benchmarks for determining reliability.

Id. at 12.

Judge Sedwick also addressed the requirements of relevance and reliability required by Daubert and Kuhmo in Adams v. Teck Cominco Alaska, Inc., 399 F. Supp.2d 1031, 1034-35 (D. A. 2005):

> To be admissible, expert testimony must be both relevant and reliable [footnote omitted]. "Encompassed in the determination of whether expert testimony is relevant is whether it is helpful to the jury." [Footnote omitted.] In addition, Rule 702 "charges the court with assuring that the expert's testimony 'rests on a reliable foundation.'" [Citation omitted.] Rule 702 grants the district court discretionary authority "to determine reliability in light of the particular facts and circumstances of the particular case."

Of course, the judge "alone must decide the qualifications of the expert on a given subject and the extent to which his opinions may be required." United States v. Chang, 207 F.3d 1169, 1172 (9th Cir.2000).

Under governing federal authority, expert testimony is excluded where the witness simply lacks sufficient expertise; in other words, lacks the required "knowledge, skill, experience, training or education." United States v. King, 532 F.2d 505 (1988). Significantly, expert testimony is excluded even where the purported expert possesses substantial expertise, but not in the area relevant to the evidence or facts of the particular case. Likewise, an expert witness may be excluded where the witness possesses substantial expertise but attempts to go beyond his known subject matter. Eagleston v. Guido, 41 F.3d 865 (2$^d$ Cir. 1994).

The question of determining whether an expert witness is qualified to testify can only be determined by the nature of the opinion offered. Berry v. City of Detroit, 25 F.3d 1342 (6th Cir. 1994). In Eagleston, the plaintiff attempted to elicit expert testimony from one Dr. Bengston regarding the practices of one of the defendant police officials. The Second Circuit Court of Appeals upheld the trial court's exclusion of Dr. Bengston's testimony, holding that while Dr.

Bengston held a doctorate degree in Sociology, that credential did not endow him with any scientific or technical expertise relevant to the case.

> Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence match the subject matter of the witness's testimony.  Thus, the courts have frequently precluded a witness from testifying as an expert where the witness has specialized knowledge on one subject but offers to testify on a different subject.

Charles Alan Wright and Victor James Gold, 29 Federal Practice and Procedure Evidence, § 6265, pp. 255-56 (1997).

Engineers whose expertise does not align with the subject matter of their opinion are susceptible to such challenges.  In upholding the trial court's refusal to certify an expert, the Second Circuit stated that

> Woolley's training as an electrical and industrial engineer, along with his experience in the safety field, might qualify him to testify as to the need for a ventilation system, but that was not an issue in dispute.   The adequacy of the warning labels was at issue, and Woolley is not an expert in that field because he lacks training or experience in chemical engineering, toxicology, environmental engineering, or the design of warning labels.    We agree with Judge Billings' finding that Woolley was not qualified as an expert witness.

McCulloch v. H.B. Fuller Co., 981 F.2d 656, 657-58 (2nd Cir. 1992).

"Expertise in the technology of fruit is not sufficient when analyzing the science of apples. Courts have excluded the testimony of engineers because their expertise was not particular to the science involved in the case."  Diviero v. Uniroyal Goodrich Tire Co., 919 F. Supp. 1353, 1357 (D. Ariz. 1996) (excluding proposed expert testimony of engineer).

Indeed, due to the specializations within the general category of "engineer," courts regularly exclude expert testimony from engineers who propose to testify outside the areas of their expertise. See, e.g., McDonald v. Federal Laboratories, Inc., 724 F.2d 243, 248 (1st Cir. 1984) (upholding refusal to certify chemist as expert in issues of design of mace canister when his "qualifications, including his education and work experience, related to the chemical contents of mace canisters, not

**LANE POWELL** LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

to their design aspects.  He had no education in and expressed no familiarity with the engineering principles involved in the design of the Federal Streamer."); <u>Perkins v. Volkswagen of America, Inc.</u>, 596 F.2d 681, 682 (5th Cir.1979) (holding that a mechanical engineer with no experience in designing automobiles was permitted to express opinions on general mechanical engineering principles, but was prohibited from testifying as an expert in the area of automotive design); <u>Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.</u>, 762 F. Supp. 1016, 1017-18 (D. P.R. 1991) (holding that the proposed witness's work as a civil engineer in the construction field did not qualify him as an expert concerning the design and manufacture of cranes).

The case of <u>Hoban v. Grumman Corp.</u>, 717 F. Supp. 1129, 1133-34 (E.D. Va. 1989), presents a similarly "misqualified" engineer.  The <u>Hoban</u> Court did not permit a licensed professional engineer to testify as an expert regarding aircraft engines or fuel systems where his only formal education in aerodynamics was as an undergraduate and he had never worked in the field.  His experience in "design of aircraft control instrumentation, mainly fuel gauges" did not qualify him "to testify as an expert regarding aircraft engines or fuel systems."  <u>Id.</u> at 1133.

In the present case, Mr. Hailey lacks sufficient expertise in the area of industrial coatings. By his own admissions,  he has taken only one college level course in corrosion engineering, has never written a specification for a coating application in a marine environment, has never written a specification for a plural component coating, and has never performed QA work in connection with the application of a plural component industrial coating in a marine environment.  Moreover, while Mr. Hailey may have substantial expertise in the area of cathodic protection, that expertise is irrelevant to the issues presented in this case  Furthermore, Mr. Hailey's opinions regarding the propriety of the coating specification prepared by Coffman are well beyond his area of expertise. Consequently, his opinions are unreliable and inadmissible.  His testimony should be disregarded and excluded.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

In the absence of admissible expert testimony to establish the standard of care and any breaches of the standard by Coffman,  Absolute's negligence claims against Coffman fail as a matter of law.  Those claims should be dismissed.

**D.      Any Absolute Claims Relating to or Arising From Coffman's Inspection and/or Quality Assurance Work Should Be Dismissed.**

In the event the Court does not grant Coffman's motion as set forth above, Coffman moves the Court for an order on partial summary judgment dismissing Absolute's claims to the extent that they are based on or arise out of allegations that Coffman negligently performed its inspection and/or quality assurance duties.   Although Mr. Hailey does not specifically state in his report that Coffman's conduct in this regard fell below the standard of care, allegations in Absolute's cross-claims against Coffman indicate the possibility that such claims may be asserted.   See Absolute cross-claims against Coffman, paragraphs 17 through 21.

Despite these allegations, statements and admissions made by Absolute and by Mr. Hailey mandate the entry of partial summary judgment dismissing any such claims.  For example, in Mr. Hailey's deposition, the following exchange took place relating to the prior report of Absolute's original expert, Skip Vernon:

Q.      Have you reviewed Mr. Vernon's report?
A.      I have read Mr. Vernon's report.

Q.      Have you been asked to assess or contradict Mr. Vernon's report?
A.      I have not been asked to assess or contradict Mr. Vernon's report.

Q.      Would you agree that Mr. Vernon's report concludes that Jerry Hardenbergh's quality assurance inspections were in compliance with industry standards?
A.      Yes.  I would agree with that.

Q.      And would you agree with Mr. Vernon's conclusion that he saw no problems with Jerry Hardenbergh's inspections?
A.      Based on the information that I reviewed, I would agree with that.

Hailey Dep., p. 158, ll. 1-14.

Moreover, in response to the requests for admission in contained in Coffman's first set of discovery requests to Absolute, Absolute made the following admission:

REQUEST FOR ADMISSION 13:  Please admit that the QA work performed by Coffman during Phase II of the Cargo Wharf Project comported with normally accepted industry standards for field coating quality assurance.

RESPONSE:  Admit.

See  Declaration of counsel, Exhibit D.

In light of Mr. Hailey's testimony and in light of Absolute's admission as described above, Coffman is entitled to entry of an order on partial summary judgment dismissing any claim by Absolute that Coffman was negligent in its performance of its quality assurance and inspection duties.

DATED this 4th day of August, 2006.

LANE POWELL LLC
Attorneys for Coffman Engineers, Inc.


By  s/ Peter C. Partnow
    Peter C. Partnow, ASBA No. 7206029
    301 W. Northern Lights Blvd., Suite 301
    Anchorage, Alaska 99503-2648
    Tel:  907-277-9511
    Fax:  907-276-2631
    Email:  PartnowP@LanePowell.com

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

I certify that on August 4, 2006, a copy of the foregoing was served electronically on the following:

William R. Baerg, baerg@mmlawyers.com
Eric J. Brown, ebrown@jdolaw.com
Robert J. Dickson, acgecf@acglaw.com
Patrick J. Duffy, duffy@mmlawyers.com
Jami K. Elison, jamie@mhf-law.com
Michael E. Kreger, mkreger@perkinscoie.com
Terry R. Marston, terry@mhf-law.com
James B. Stoetzer, stoetzerj@lanepowell.com

and by mail on:

Paul J. Nangle, Paul J. Nangle & Associates
101 Christensen Dr, Anchorage, AK 99501

 s/Peter C. Partnow
011680.0076/156097.1

**Coffman's Motion for Summary Judgment Dismissal of Absolute's Negligence Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)     **Page 24 of 24**