Peter C. Partnow, ASBA No. 7206029
James B. Stoetzer, ASBA No. 7911130
Lane Powell LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Tel: 907-277-9511
Fax: 907-276-2631
PartnowP@LanePowell.com

Attorneys for Third-Party Defendant
Coffman Engineers, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>                            Plaintiff,<br><br>v.<br><br>FORREST J. McKINLEY, an individual, d/b/a "Imperial industrial Coatings"; and EMERCO, INC., a California corporation, d/b/a Imperial Industrial Coatings; BRECHAN ENTERPRIESES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation,<br><br>                           Defendants. | Case No. 3:03-cv-00199-RRB |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the United States for the Use and Benefit of EMERCO, INC.,<br><br>   Counterclaimant/Third-Party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, et al.,<br><br>  Cross-Defendants/Third-Party Defendants. | **COFFMAN'S MOTION FOR SUMMARY JUDGMENT AGAINST ABSOLUTE REGARDING NEGLIGENT AND FRAUDULENT MISREPRESENTATION CLAIMS** |

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

| |
|---|
| THE UNITED STATES OF AMERICA for the use and benefit of ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, |
| Plaintiff, |
| v. |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation, |
| Defendant. |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, |
| Counterclaim Plaintiff, |
| v. |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, |
| Counterclaim Defendant. |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, |
| Third-Party Plaintiff, |
| v. |
| COFFMAN ENGINEERS, INC., a Washington corporation, |
| Third-Party Defendant. |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Third party defendant and cross-claim defendant Coffman Engineers Inc. ("Coffman") moves this Court for an order on summary judgment dismissing the negligent and fraudulent misrepresentation claims alleged against it by plaintiff Absolute Environmental Services Inc. ("Absolute").

In this construction dispute, which involves a cargo wharf in Kodiak, Alaska, Absolute alleges misrepresentation claims based on its contention that Coffman failed to include in the Phase II specifications a detailed description of the poor condition of the welds encountered during Phase I of the project, on which Absolute was not involved. This allegation wrongly assumes that weld conditions encountered on Phase II were similar to the poor welds discovered in portions of the Phase I wharf area. However, the only competent evidence regarding this issue establishes unequivocally and indisputably that the weld conditions which were found in Phase II were dramatically better than those which constituted a changed condition in Phase I. Because the weld conditions in Phase II were substantially better than the conditions encountered in Phase I, the alleged misrepresentations do not relate to a material fact, and cannot form the basis for Absolute's negligent and fraudulent misrepresentation claims. Consequently, those claims should be dismissed.

Additionally, Absolute's fraudulent misrepresentation claim should be dismissed due to the fact that Absolute can provide no competent evidence that any alleged misrepresentations made by Coffman were intentional. In the absence of such proof, Absolute's fraud claim must fail and should be dismissed.

## II. MATERIAL FACTS

This dispute arises out of the design and construction of renovations to the cargo wharf owned by the United States Coast Guard ("USCG") and located in Kodiak, Alaska. Part of that renovation involved the removal and replacement of industrial coatings on the steel support system under the wharf. Defendant/third party plaintiff Brechan Enterprises Inc. ("Brechan") was the project's design-build contractor; Coffman was hired by Tryck Nyman & Hayes ("TNH"), a sub-consultant to Brechan, to prepare the specifications relating to the coatings. Hardenbergh declaration, page 4.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Coffman's Motion for Summary Judgment Against Absolute Regarding
Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* **(Case No. 3:03-cv-00199-RRB)**                    Page 3 of 17

Due to the USCG's funding limitations, the project was separated into two phases. On the first phase, the coating application subcontractor to Brechan was Swalling Construction Company ("Swalling"). Hardenberg declaration, page 6.. While performing its work on the first few H pile support members (referred to in the parlance as "bents") at one end of the original cargo wharf, Swalling encountered different site conditions from those which could reasonably have been discovered or anticipated in the form of missing or defective welds. After these unanticipated conditions were discovered by Swalling and brought to the attention of Coffman, Brechan, and the USCG, it was determined the problem welds did indeed constitute a differing site condition which entitled Swalling to additional compensation.

To enable Swalling to complete the Phase I work at a reasonable price, while still allowing the USCG to attain its desired 25 year extension in the useful life of the wharf, in the spring of 2002, prior to Swalling completing the Phase I work, the Phase I specification was relaxed to allow Swalling to use stripe coating or caulking in lieu of seal welding to seal non-structural metal to metal connections or to grind off (remove) non-structural members, thus avoiding the need to seal connections. This relaxation of the specifications was accomplished through the execution and implementation of Modification 5 to the Phase I contract. Hardenberg declaration, page 6. Phase I was completed in the summer of 2002 by Swalling without further significant disruption due to the revised specifications and due to the fact that the welding which was encountered improved as Swalling worked down the wharf.

Phase II, which involved completion of the removal of existing coating and application of new coating for the remainder of the wharf, was performed in 2003. To perform the Phase II coatings work, Brechan selected and entered into a subcontract with Absolute, which in turn selected and entered into a sub-subcontract with defendant Emerco Inc., doing business as Imperial Industrial Coatings ("Imperial"). At the time Brechan selected Absolute and Absolute selected Imperial,

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

Coffman was not under contact for any work related to the cargo wharf. Coffman was not involved in either the selection of the subcontractors or in any of the price negotiations involving the USCG, Brechan, Absolute, and or Imperial for performance of the work.

However, as the other parties neared finalization of contracts for performance of the Phase II work, Brechan contacted Coffman and requested that Coffman revise the specification from Phase I to reflect the changes that had been accomplished by Modification 5 to the Phase I contract. Hardenbergh declaration at page 6. Coffman prepared several iterations of a revised specification, with drafts being provided to Brechan and the USCG for approval. The final specification was ultimately provided by Brechan to both Absolute and Imperial.

The final revised Phase II specification was dated November 26, 2002 and was provided to Imperial and Absolute many months before they commenced work on Phase II. Several e-mail exchanges which discussed changes made from the Phase I specifications and referenced the fact that problems had been encountered on Phase I, with the specification being revised based upon the "lessons learned" during Phase I, were provided to Absolute and Imperial. Indeed, this e-mail chain was specifically incorporated as an appendix to the Absolute/Imperial subcontract. See Exhibit E to declaration of counsel. Again, at the time of the specification was being revised by Coffman, Coffman was unaware that Absolute and Imperial were to be involved on Phase II. The issuance of that revised specification predated the dates on which the Brechan/Absolute and Absolute/Imperial contracts were executed.

Prior to the commencement of any Phase II work, a pre-job meeting was conducted at Coffman's offices in Anchorage. Representatives of both Absolute and Imperial attend that meeting. During the course of the meeting, problems which had been encountered during Phase I were discussed, including the unanticipated problems which had been encountered by Swalling with some of the weld areas. Hardenbergh declaration at page 8.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

The Phase II work started in the spring of 2003. Imperial experienced problems which led to it being increasingly behind schedule. Numerous issues arose between Imperial and Absolute during the summer of 2003 as Imperial slipped increasingly farther behind schedule. Significant performance problems were observed in Imperial's work. In early August, 2003, Imperial's required certification to apply the Specialty Polymers Coatings USA, Inc ("SPC") product used on the wharf, was revoked by SPC. SPC learned, among other things, that Imperial had been diluting the plural component coating with a solvent (MEK) in order to extend the "pot life" of the product. Dilution of the coating material was contrary to SPC product requirements and adversely affected the performance of the product. After the decertification, Imperial left the job.[1] Hardenbergh declaration at page 7.

Thereafter, Absolute completed the coating work for Phase II and performed remedial work on portions of Phase II where coatings had been applied by Imperial. Hardenbergh declaration at page 7. After substantial completion was achieved, Absolute sued Imperial alleging that Imperial's negligence, defective work and failure to finish the work resulted in substantial damages. Imperial filed counter claims back against Absolute, asserting that Absolute had caused Imperial to incur damages. (Significantly, Absolute did not attempt to pass Imperial's claims on to Brechan, the USCG, TNH or Coffman.) Imperial also asserted civil conspiracy claims on which it added Coffman, SPC, and Brechan as third party defendants. Following discovery, Imperial stipulated to the dismissal with prejudice of all of its claims against both Brechan and Coffman.

However, in November 2005, approximately two years after substantial completion was achieved, Absolute asserted cross-claims against Coffman. Included among those claims are causes

---

[1] There is a dispute between Imperial and Absolute as to whether Imperial voluntarily abandoned the job, or whether Imperial was thrown off the job.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

of action for negligent and fraudulent misrepresentation.  Absolute alleges at paragraphs 29 and 33 of its cross-claims against Coffman as follows:

> 29.  Coffman made negligent misrepresentations, including without limitation, with regard to the condition of the welds and the seal welding within the coating's specifications, through both what it disclosed and what it neglected to disclose.[2]
>
> * * *
>
> 33.  Coffman made intentional and/or fraudulent misrepresentations regarding the condition of the welds and of the seal welding within its coatings specifications, through both commission and omission.  [Absolute] reasonably relied upon these misrepresentations to its financial detriment.

See Exhibit A to declaration of counsel.

Absolute makes these allegations despite the fact that neither Absolute nor Imperial made any complaints during the Phase II work that there were problems with the welds, nor did they seek compensation for any additional or unanticipated problems with the welds they encountered.[3]  The failure to mention any such problems was particularly significant in light of the fact that when asked during the initial phase of this litigation to identify all conditions which Imperial claims caused it damages, Imperial submitted a detailed 16 page response which went into minute detail regarding purported problems, including alleged changed site conditions (addressing not welds, but a different layer of coating material that Imperial claimed to have encountered). See Exhibit G to declaration of

---

[2] This allegation was made despite the fact that no seal welding was required on Phase II.

[3] It is worthy of note that Absolutes newly asserted allegations were made despite the fact that Imperial's own expert witness, Mark Schilling testified in his deposition that he observed the weld conditions on Phase II in July of 2003, while Imperial's coating work was ongoing.  When asked in his deposition what he observed, he answered as follows:

> A.  That's a good question, and the answer is nothing terribly unusual for this kind of structure in this kind of an environment.  I advised [Imperial's] Tom Puett that this was not an inordinate amount of pitting and that these welds were not atypical.  That I didn't see that this was anything out of the ordinary. [Emphasis added.]

Schilling deposition, page 168, line 9-14.  See Exhibit F to Partnow declaration.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

counsel. Imperial made no mention of having encountered defective or missing welds that increased the cost or duration of the coatings work. Further, during the course of the work, no mention was made by either the Imperial forces (such at its superintendent Tom Puett), Absolute's retained quality control officer, Mr. Keith McLeod, or Absolute's most experienced coatings applicator, Dan Yell, of weld problems of the type which impacted Swalling in the performance of Phase I work. Moreover, no mention was made of weld areas presenting unusual or unanticipated problems or changed site conditions in the depositions of Mr. Yell, Mr. McLeod, Mr. Peterson, (Imperial's most experienced journeyman applicator hired out of the union hall in Anchorage), the USCG's on site representative, Chris Lynch, (an engineer who observed the work on a daily basis) or even Absolute's original retained coatings expert, Mr. Skip Vernon.

Absolute was requested in interrogatories to identify each and every alleged negligent or fraudulent misrepresentation made by Coffman. Coffman's interrogatory and Absolute's answer, stated as follows:

> INTERROGATORY NO. 3: Please identify with specificity each and every alleged negligent or fraudulent misrepresentation you claim was made by Coffman, including the date when each such misrepresentation was made, who made each such misrepresentation, the person or persons who received or heard each such misrepresentation, the date when Absolute first learned of each such misrepresentation, and the manner in which Absolute learned of each such misrepresentation.
>
> ANSWER: (Misrepresentation of site conditions, scope of work, and how work could be accomplished) November 26, 2002 and when we found the October 30 memo in Imperial Industrial Coating's production of documents it had obtained from the USCG. Dan Stears of Coffman had extensive knowledge of the nature, extent and severity of the 'weld problems' at the time he prepared the November 26, 2001 [sic] specifications. He also knew, or should have known, that the weld problems could not be satisfactorily resolved by stripe coating/caulking and that the only effective method of resolving the problems was by structurally modifying the welds by grinding them all. Mr. Stears did not disclose the existence of the problem that was encountered by the coating applicator in Phase I, a problem that resulted in the coating applicator being paid additional compensation to deal with the problem under terms far more liberal than those he included in the November 26 specifications. Mr. Stears, knowing that the revised specifications agreed to by [Brechan] and

**Coffman's Motion for Summary Judgment Against Absolute Regarding**
**Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)   **Page 8 of 17**

>[USCG] would not work and would necessitate a massive amount of added work, never disclosed this information and never initiated the inclusion of specification modifications that would fairly alert a coating applicator bidding on the work to the necessity and cost of this added work. Stears' misrepresentations were relied upon by both [Absolute] and [Imperial]. [Absolute] discovered the first evidence of this problem when [Imperial] produced documents it had obtained through USCG FOIA requests, including most notably Hardenberg's 10/30/01 memorandum. Further details have been continually winnowed out of review of subsequently acquired documents and depositions that have continued through the date of this writing.

Coffman's First Set of Discovery Requests to Absolute and Absolute's Answers and Responses Thereto are attached to the declaration of counsel as Exhibit H.

Thus, Absolute contends that Coffman made negligent or fraudulent misrepresentations by failing to include in the Phase II specification a description of the weld conditions found on Phase I of the project, or to otherwise inform Absolute that those conditions existed.[4]

However, the extensive discovery conducted in this matter has revealed unequivocally that only one person actually observed the weld conditions on both Phase I and Phase II. That person is Coffman's Jerry Hardenbergh. From the point that Absolute belatedly and for the first time suggested that weld problems, not mentioned at any point during the Phase II work, were a significant cause of its alleged damages, Mr. Hardenbergh has steadfastly and unequivocally maintained that the weld conditions differed greatly from Phase I to Phase II, that the weld conditions on Phase II were much improved over the Phase I conditions, and that there was little similarity between the conditions of the welds on Phase I compared to the Phase II welds. Hardenbergh declaration at page 8. Mr. Hardenbergh testified to this effect in his deposition, and his recollections are set forth in the Declaration of Jerry Hardenbergh filed in support of Coffman's summary judgment motions.

---

[4] It is important to note that Coffman and Brechan personnel have testified that the Phase I conditions were extensively discussed with representatives of Absolute and Imperial at various points, including specifically at a pre job meeting at Coffman's offices in February 2003.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Mr. Hardenbergh's testimony is the only competent, admissible evidence regarding the weld conditions uncovered during 2001 on the H-piles at the far end of the original cargo wharf as part of Phase I as compared to the weld conditions encountered on Phase II. No other person (except perhaps some Brechan employees who were not intimately familiar with coatings work or conditions encounter under the wharf) was even in a position to observe and compare the weld conditions encountered in 2001 during Phase I with the weld conditions encountered during the summer of 2003 when Phase II was being performed.

Moreover, Mr. Hardenbergh possesses extensive experience observing and inspecting welds as well as coatings. Because no other person was in a position to observe the weld conditions which impacted Swalling and the weld conditions which Imperial and Absolute actually encountered during Phase II, Absolute is unable to disprove or even dispute Mr. Hardenbergh's testimony. Absolute simply has no evidence regarding defective or missing welds in the Phase II area of the wharf. Mr. Hardenbergh's testimony establishes indisputably that the Phase II weld conditions were completely different from, and far better than, the Phase I weld conditions.

That being the case, the condition of the welds on Phase I is simply a red herring. The Phase I weld conditions, unless replicated in the Phase II area, are simply and indisputably not material to Absolute's work on Phase II. Because Absolute's misrepresentation claims against Coffman are grounded totally on the unsupported assertion that the Phase II conditions were identical to the conditions which Swalling encountered on Phase I, and because there is no factual basis to support that assertion, the conditions of the welds on Phase I was not material. Absolute is thus unable to sustain its burden of proving the materiality of the alleged misrepresentation, and those claims should be dismissed.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Coffman's Motion for Summary Judgment Against Absolute Regarding
Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)   Page 10 of 17

### III.  ARGUMENT AND AUTHORITY

**A.     Summary Judgment Standard.**

It is well established that under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to Summary judgment as a matter of law."  In Celotex Corporation v. Catrett, 477 U.S. 323 (1986) the party moving for summary judgment "bears the initial responsibility of informing the District Court of the basis for its motion, and demonstrating 'an absence of a genuine issue of material fact.'"  Thereafter, the party opposing the motion can overcome the entry of summary judgment only by showing that the moving party is wrong as a matter of law, or by inducing competent, admissible facts which would support a verdict by the finder of fact in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986).  In the event the non-moving party fails in this regard, then other disputed evidence becomes immaterial, and the moving party is entitled to summary judgment as a matter of law.  Celotex, supra, 477 U.S. at 323 (1986).

In the present case, Absolute cannot raise any factual issues regarding the lack of materiality of the alleged misrepresentations.  There simply is no witness other than Jerry Hardenbergh that observed the weld conditions on both Phase I and Phase II of the project.  Mr. Hardenbergh's statements that the Phase II weld conditions were vastly improved over the Phase I weld conditions, and that the weld conditions in the two phases differed greatly, cannot be disputed by competent, admissible evidence.  Applying these indisputable facts to governing legal authority, Coffman is entitled to entry of summary judgment dismissing Absolute's negligent and fraudulent misrepresentation claims.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Coffman's Motion for Summary Judgment Against Absolute Regarding
Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* **(Case No. 3:03-cv-00199-RRB)**            **Page 11 of 17**

B.     **Absolute Is Unable to Establish That Coffman's Alleged Misrepresentations Related to a Material Fact.**

The elements that must be established in order to prevail on a claim for fraudulent misrepresentation include a false representation of fact, scienter, the intention on the part of the defendant that the statement be relied upon, justifiable reliance on the statement by the plaintiff and damages.  Barber v. National Bank of Alaska, 815 P.2d 857 (Alaska 1991).  The elements required to establish a claim for negligent misrepresentation include the following:

> (1) The party accused of the misrepresentation must have made the statement in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, (2) the representation must supply false information, (3) there must be justifiable reliance on the false information supplied, and (4) the accused party must have failed to exercise reasonable care or competence in obtaining or communicating the information.

Bubbel v. Wien Air Alaska, 682 P.2d 374, 380 (Alaska 1984).

While Alaska's formulation of the tort of negligent misrepresentation does not explicitly include "materiality" as a requirement, materiality has been required in practicality.  See, e.g., Valdez Fisheries Development Association Inc. v. Alyeska Pipeline Service Co., 45 P.3d 657, 671 (Alaska 2002); Barber v. National Bank of Alaska, 815 P.2d 857, 862 (Alaska 1991) ("Barber alleges that NBA/Wallace made knowing or negligent misrepresentations of numerous facts, or that it failed to inform him of material facts."); Donnybrook Building Supply Inc. v. Interior City Branch First Nat. Bank, 798 P.2d 1263, 1266 (Alaska 1990) (Upholding the trial court's finding that misrepresentations "were negligent rather than intentional, [and] that the misrepresentations were not material breaches of the Agreement").

In the present case, as described above, Absolute's misrepresentation claims are based exclusively on Coffman's alleged failure to impart to Absolute information regarding the condition of the welds discovered during Phase I.  As Mr. Hardenbergh, the only witness competent to testify

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Coffman's Motion for Summary Judgment Against Absolute Regarding Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)     Page 12 of 17

regarding this issue, has stated, the condition of the welds in Phase I was significantly different than the condition of the welds on Phase II of the project. Consequently, any information relating to the condition of the Phase I welds was simply irrelevant and immaterial in connection with Phase II of the project, since the Phase I conditions did not exist on Phase II. As a result of this lack of materiality of the statements that Absolute alleges were misrepresented, the misrepresentation claims fail and should be dismissed.

The present case is similar to BECK Constructors v. State of Alaska, 604 P.2d 578 (Alaska 1979). In that case, BECK made a bid to the State of Alaska's Department of Highways, in connection with a project that included two new bridges over the Copper River. The project also included the demolition of an existing bridge known as Bridge 331. The contract contained a description of Bridge 331 which merely described its dimensions and the materials with which it was constructed. The only other reference to Bridge 331 in the contract appeared in a report by the Highway Department's engineering geology section, which report accompanied the bid package. That reference described generally the size and nature of the bridge and noted that it appeared to have suffered "very little damage" during the 1964 earthquake. The bid package also notified bidders of the availability of other information about Bridge 331, but included the following disclaimer:

> The information shown in the above is for information only. It is expressly understood that the State will not be responsible for any deduction, interpretation or conclusion drawn therefrom by the contractor. This information is made available so that the contractor may have access to the same information as the State.

Id. at 580, 581.

During construction, BECK did repair work to the superstructure of Bridge 331 and used that bridge for access to the worksite. However, while BECK was moving a crane across the bridge, it collapsed, killing two men and cutting off BECK's access to the worksite for approximately 30 days.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

**Coffman's Motion for Summary Judgment Against Absolute Regarding
Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)      **Page 13 of 17**

BECK subsequently brought misrepresentation claims against the State. It first alleged that the statement in the bid package that the piers supporting the bridge suffered very little damage from the 1964 earthquake constituted a misrepresentation. BECK also alleged that the statement in the bid package that additional information on the existing structure was being made available "so that the contractor may have access to the same information as the state" constituted a misrepresentation. The Alaska Supreme Court held that the first alleged misrepresentation was intended only to impart information about the stability of the soils in the river bed, and not to warrant the structural integrity of the bridge's piers themselves. That court also found that the second alleged misrepresentation was made only to assist the contractor in estimating the cost of demolition. The court went on to state:

> Although the state had information in its files pertaining to Bridge 331 that was not included in the bid package [footnote omitted], and the contractor, therefore, did not actually 'have access to the same information as the State,' there is no indication that the information was pertinent to the demolition of the bridge. We conclude that the statement in question did not misrepresent the extent of the State's knowledge concerning the bridge.
>
> Considering the context in which the two statements were made and considering the contract's clear statement that Bridge 331 was 'a damaged . . . structure,' we conclude that there was no misrepresentation.

Id. at 582, 583.

A similar situation is presented here. As noted above, in the present case, as in BECK, the specification specifically stated that the descriptions provided therein were for information only and were not to be used as the basis for bidding. Paragraph 1.1.3.1 of Coffman's November 26, 2002 specification stated:

> **1.1.3.1. The original coating, applied in 1989, is in relatively poor condition. The following descriptions are provided as information only and shall not be utilized as basis for bid. It is the Applicator's responsibility to inspect and determine the actual conditions that [are] present prior to bid.**

Coffman's specification also stated at paragraph 1.1.3:

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Coffman's Motion for Summary Judgment Against Absolute Regarding
Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)    Page 14 of 17

> **The Applicator shall inspect the wharf prior to bid to determine existing conditions and quantities of surfaces to be recoated. The existing coating is a coal tar epoxy.**

Moreover, in BECK, the court found that the State had additional information in its files pertaining to Bridge 331 to which BECK did not actually have the same access as the State. However, as in this case, the information was not pertinent to the contractor's work: in BECK the information was not pertinent to the demolition of the bridge; in the present case, the condition of the welds in Phase I were not pertinent to the condition of the Phase II welds, since the Phase I conditions were not the same as Phase II conditions. In BECK, as in the present case, the contractor's misrepresentation claims were based on information that it allegedly did not receive, but which was irrelevant and immaterial to their work on the project. Consequently, Absolute's misrepresentation claims, like those of the contractor in BECK, should be dismissed.

**C.    Absolute Is Unable to Satisfy the Scienter Element of Its Fraudulent Misrepresentation Claim.**

The only significant difference between a claim for negligent misrepresentation and one for fraudulent misrepresentation is the element of scienter, or intent. Barber v. National Bank of Alaska, 815 P.2d 857 (Alaska 1991). While the existence of fraudulent intent is frequently a question of fact (Crittell v. Bingo, 36 P.3d 634, 642 (Alaska 2001)), this issue may be determined on summary judgment. For example, in McHugh v. Church, 583 P.2d 210, 217 (Alaska 1978), a trustee of real property sold that property after foreclosure of the underlying deeds of trust. The trustor brought suit against the trustee seeking to set aside the sale and to reinstate the deeds of trust. In upholding the trial court's grant of summary judgment in favor of the trustee, the Alaska Supreme Court stated:

> Missing from McHugh's opposition to the motion for summary judgment is any persuasive evidence indicating the presence of any genuine issues of material fact relating to fraud or unfairness on the appellee's part.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Accord Alaska Pacific Assur. Co. v. Collins, 794 P.2d 936, 948 (Alaska 1990) ("absent any evidence that Collins asked a question of Mears and was mislead, or that Mears had any intention to commit fraud, Collins' claim for fraudulent misrepresentation must fail.")

In the present case, Absolute is unable to produce or provide any evidence of the scienter element of its fraudulent misrepresentation claim. While there is unfortunately no transcript of the pre-job meeting which was held at the Coffman offices in February, 2003, the meeting agenda and notes on the agenda clearly reflect that "welds" was a discussion topic at that meeting. Further, e-mail strings which reflected the changes which had been made in the specifications from Phase I to Phase II were transmitted to both Absolute and Imperial, with one of the strings actually being included as an appendix to the contract between Absolute and Imperial. While Absolute may now complain that references such as the reference in the e-mail string to "lessons learned" in Phase I were not as precise or specific as they could have been, it certainly cannot not be claimed, with the undisputed existence of the various documents, that Coffman fraudulently concealed information.

In the absence of evidence that Coffman fraudulently concealed information, Absolute's claim for fraudulent misrepresentation must also fail and should be dismissed.

## CONCLUSION

Without dispute, the existence of "problem welds" created a changed and unanticipated site condition during Phase I of the wharf coating project. Absolute bases its claims against Coffman on the bald and belated assertion that it incurred significant damages in performance of its Phase II work due to such weld problems. Even assuming, for the purposes of this motion, that the relaxation of the requirements from Phase I to Phase II were not adequate to address the weld problems encountered in Phase I, any such evidence is not material or relevant unless similar "problem weld conditions" were also actually present in the Phase II work area. There is no evidence which supports such a conclusion. No one, not even experienced coating applicators or experts, observed,

**LANE POWELL** LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

documented, or otherwise complained of any such problems while the Phase II work was being performed; no complaints were made until long after that work was completed, and then only in the context of the instant litigation. Further, the only competent, trained individual in a position to observe and compare the weld conditions encountered on Phase I and Phase II, Jerry Hardenbergh, has indicated unequivocally that there were no unusually bad or concealed weld problems which impacted the Phase II work.

Because there are no disputes of material fact regarding these matters, Coffman is entitled to summary judgment as a matter of law dismissing Absolute's claims for negligent and fraudulent misrepresentation.

DATED this 4th day of August, 2006.

> LANE POWELL LLC
> Attorneys for Coffman Engineers, Inc.
>
> By  s/ Peter C. Partnow
>     Peter C. Partnow, ASBA No. 7206029
>     301 W. Northern Lights Blvd., Suite 301
>     Anchorage, Alaska 99503-2648
>     Tel:  907-277-9511
>     Fax:  907-276-2631
>     Email:  PartnowP@LanePowell.com

I certify that on August 4, 2006, a copy of the foregoing was served electronically on the following:

William R. Baerg, baerg@mmlawyers.com
Eric J. Brown, ebrown@jdolaw.com
Robert J. Dickson, acgecf@acglaw.com
Patrick J. Duffy, duffy@mmlawyers.com
Jami K. Elison, jamie@mhf-law.com
Michael E. Kreger, mkreger@perkinscoie.com
Terry R. Marston, terry@mhf-law.com
James B. Stoetzer, stoetzerj@lanepowell.com

and by mail on:

Paul J. Nangle, Paul J. Nangle & Associates
101 Christensen Dr, Anchorage, AK 99501

 s/Peter C. Partnow
011680.0076/156098.1

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Coffman's Motion for Summary Judgment Against Absolute Regarding
Negligent and Fraudulent Misrepresentation Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)     Page 17 of 17