Michael E. Kreger
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)
mkreger@perkinscoie.com

Attorneys for Defendants Brechan Enterprises, Inc.
and Safeco Insurance Company of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

ABSOLUTE ENVIRONMENTAL
SERVICES, INC., et al.,
     Plaintiffs,
v.
FORREST J. MCKINLEY, et al., ,
     Defendants.

Case No. 3:03-cv-0199-rrb

## MOTION FOR SUMMARY JUDGMENT ON ABSOLUTE ENVIRONMENTAL SERVICES' NEGLIGENT DESIGN, DIFFERING SITE CONDITION, CONSTRUCTIVE CHANGE, COVENANT OF GOOD FAITH AND FAIR DEALING, IMPLIED CONTRACT AND EQUITY CLAIMS

This is a construction contract case brought by Absolute Environmental

Services, Inc. ("Absolute") against several parties, including Brechan Enterprises,

Inc. ("Brechan") and Safeco Insurance Company of America, Inc. ("Safeco").

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)     - 1 -     [38599-0012/AA061190.001]

Absolute has asserted a failure to disclose "superior knowledge" is the gist of its claim. Brechan and Safeco deny the allegation and have separately moved for summary judgment.[1]

In total, Absolute has asserted eleven common law claims against Brechan. Brechan and Safeco hereby move for summary judgment on seven of these theories – Absolute's claims of "negligent design," "differing site conditions," "constructive change," "implied warranty of good faith and fair dealing," "implied contract and quantum meruit," "equitable theories," and "warranty of plans and specifications." These seven common law claims fail as a matter of law. Absolute's negligent design claim is precluded under Alaska law because Brechan was not a design professional. Absolute's differing site conditions claim fails because there was not an agreement for Absolute to receive additional compensation because of differing site conditions. Absolute's constructive change claim is merely a restatement of its differing site conditions claim, and therefore, fails for the same reason. Absolute's breach of covenant of good faith and fair dealing claim fails because at the time the alleged breach occurred, there was no contract between Absolute and Brechan to perform the work at issue in this dispute. Absolute's quantum meruit claim fails because the extra work Absolute claims it did was within the nature and general scope of its

---

[1] Absolute's claims in superior knowledge and nondisclosure are addressed by Brechan and Safeco in a separate motion for summary judgment at Docket 214. If both motions for summary judgment are granted, Brechan and Safeco will have prevailed on all liability claims asserted by Absolute in this action. Brechan and Safeco will, therefore, be entitled to final judgment in their favor.

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                - 2 -                [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

coating contract with Brechan. Finally, Absolute cannot meet any of the elements necessary to establish its warranty of plans and specifications claim.

## ARGUMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and of identifying those portions of the record which demonstrate the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party can only overcome such a showing by adducing competent, admissible facts that could support a verdict by the fact-finder in the non-moving party's favor on each and every element of its claim. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the non-moving party fails to adduce evidence supporting an essential element of its claim, then evidence on the other elements becomes immaterial, and summary judgment should be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

**I.     The Court Should Grant Summary Judgment Against Absolute On The "Negligent Design" Claim Because Coffman Prepared the Specifications and is a Design Professional.**

Alaska law clearly holds that where a design professional prepares specifications for a project, an owner or contractor cannot be sued in tort for negligently designing or supplying defective specifications. As such, summary judgment on Absolute's negligent design claim is proper.

It is undisputed Coffman is a design professional and it prepared the

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 3 -                    [38599-0012/AA061190.001]

specifications for the Project.  Exhibit B at 5 (Coffman's responses to Absolute's interrogatories where Coffman explains that it revised Project specifications for Phase II "at the request of the United States Coast Guard ("USCG") and Brechan Enterprises, Inc. ("Brechan")); Coffman Engineers, Inc.'s Motion and Memorandum in Support of Motion to Amend Case Schedule and Reset Trial Date (Docket 169) dated April 20, 2006, at 3 ("Brechan Enterprises, Inc. ("Brechan") was the design-build contractor for USCG, and hired Coffman to provide design and quality assurance services with regard to Phase II of the coating application project."); Deposition of Jerry R. Hardenbergh (attached at Exhibit C) at 104 (stating that Coffman was "the design engineering firm that specified this coating system be applied to the dock"); 30(b)(6) Deposition of Absolute Environmental Services, Inc. (attached as Exhibit D) at 12-13; *see also*, Absolute Environmental Services' Cross Claims Against Coffman Engineers, Inc. dated Nov. 14, 2005, at ¶ 8-10 (stating that Coffman was hired "to provide designs and specifications for repairs to the failed coating systems" on the Project).  (Docket 133.)

Alaska law clearly holds that only the design professional may be sued in tort for negligent design. *State v. Transamerica Premier Ins. Co.*, 856 P.2d 766, 772-774 (Alaska 1993).  A project owner may be held liable in <u>contract</u> under a theory that, when project specifications are supplied to a contractor, there is an implied warranty that they will be sufficient for their particular purpose.[2] *Id.* at 772.  However, the Alaska Supreme Court has made it perfectly clear that:

---

[2] Brechan's motion for summary judgment on the Spearin Doctrine is Section VI, pages 15-20, infra.

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                                    - 4 -                              [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

> [i]f defective specifications cause the contractor to incur extra costs in performing the contract, then the contractor may recover those costs that result from breach of the implied warranty. The implied warranty is part of the bargain between the owner and the independent contractor, and does not exist outside the contract. Because this duty arises solely from a contractual promise, <u>a party cannot use a tort action to enforce it.</u>
>
> . . .
>
> To expose an owner to liability as a design professional might negate the ability of contracting parties to allocate and bargain for risk of loss in commercial transactions. Therefore, even if the owner negligently provides defective plans and specifications, which cause economic loss to the contractor in the course of performance, the contractor's action for the owner's breach is in contract, not tort.

*Id.* at 772-73 (internal citations omitted) (emphasis added). Although Brechan was not the owner on this Project, the analysis is the same where the allegations are that a prime contractor supplied negligent specifications to a subcontractor. Indeed, in *Transamerica*, the Alaska Supreme Court cited several cases with approval that have so held. *See id.,* (citing *Scott Co. v. MK-Ferguson Co.*, 832 P.2d 1000 (Colo. App. 1991) (denying subcontractor a tort action for negligence against general contractor who supplied defective plans and specifications); *Oldenburg v. Hagemann*, 159 Ill.App.3d 631, 111 Ill.Dec. 329, 334, 512 N.E.2d 718, 722 (1987) (denying subcontractor a tort action against general contractor who, among other things, allegedly did not inspect subcontractor's work). Whether or not Brechan had an obligation to furnish plans and specifications to Absolute that were free from defect is an issue to be decided under the contract between Absolute and Brechan. Absolute's claim that Brechan did so "negligently" cannot give rise to a tort claim. "Because this duty arises solely

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                - 5 -                [38599-0012/AA061190.001]

from a contractual promise, a party cannot use a tort action to enforce it."[3]
*Transamerica*, 856 P.2d at 772.

## II.    The Court Should Grant Summary Judgment Against Absolute on the "Differing Site Condition" Claim Because The Contract Between Absolute and Brechan Did Not Have a Differing Site Conditions Clause.

As a matter of contract law, the absence of a "changed conditions" or a "differing site conditions" clause places the risk of unexpected physical conditions on the project to Absolute. The contract between Brechan and Absolute to perform the Project is attached as Exhibit E. Exhibit F at 124-27. There is no provision that shifts the risk of a differing site condition from Absolute to Brechan – a fact that is not in dispute. David Olson, Absolute's President, testified as follows:

Q       Does this subcontract have a differing site condition clause in it?

A       Not specifically.

Q       Does it generally?

A       No.

Deposition of David Olson at 127 (attached hereto as Exhibit F).

---

[3] Brechan had a role in reviewing the specifications and making suggestions to Coffman about what should be included. The Alaska Supreme Court has squarely held that a party's review of the specifications does not transform the party into a "design professional" subject to a tort action. *Transamerica*, 856 P.2d at 774 ("The Division did not assume a design professional's duties simply because it reviewed the plans before putting them out for bid or because it assigned an inspector to the construction site.").

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 6 -                    [38599-0012/AA061190.001]

In the absence of a differing site condition clause, Absolute's differing site condition claim must fail. It is a well established rule of contract law that,

> [w]here one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. Thus one who undertakes to erect a structure upon a particular site, assumes ordinarily the risk of subsidence of the soil.

*U.S. v. Spearin*, 248 U.S. 132, 136 (1918) (internal citations omitted).

Because the contractor in a construction contract assumes the risk of a differing site condition, it must naturally have a higher bid price to cover this contingency. In an effort to reduce bid costs, some construction contracts shift the risk of unexpected site conditions away from the contractor using the "differing site condition" clause which allows for recovery if there is a differing site condition. *See e.g.,* 48 C.F.R. § 52.236-2. However, there is no such clause in the contract between Brechan and Absolute. As a matter of law, Absolute's differing site condition claim must fail.[4] *Day v. U.S.,* 245 U.S. 159, 161 (1917) ("[W]hen the scope of the undertaking is fixed, that is merely another way of saying that the contractor takes the risk of the obstacles to that extent."); *Green Const. Co. v.*

---

[4] Brechan's prime contract with the USCG contained a differing site condition clause. This fact does not change the analysis. First, Absolute is not a party to this contract and the clause was not incorporated by reference in the subcontract, and there was no requirement that Brechan incorporate that clause into its subcontract with Absolute. Second, even if there were such a requirement, Absolute would still not recover because Absolute failed to provide any written notice of its claim in a timely manner. *See* 48 C.F.R. § 52.236-2 (requiring written notice "promptly, and before the conditions are disturbed" and stating that "[n]o request by the Contractor for an equitable adjustment to the contract for differing site conditions shall be allowed if made after final payment under this contract.").

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 7 -                    [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

*Kansas Power & Light Co.*, 717 F. Supp. 738, 742 (D. Kan. 1989) (holding that

the risk of differing site condition was allocated to the contractor in absence of

express contract provision allocating risk to the owner); *Pinkerton and Laws Co.,*

*Inc. v. Roadway Exp., Inc.*, 650 F. Supp. 1138, 1146 (N.D. Ga. 1986) ("[W]hen the

contract contains no changed conditions clauses and imposes a site inspection

requirement on the contract, the risk of uncertainty of subsurface conditions is

placed on the contractor."); *Eastern Tunneling Corp. v. Southgate Sanitation Dist.*,

487 F. Supp. 109, 113 (D. Colo. 1979) ("a contractor who undertakes an entire

contract for erecting a building is presumed, in the absence of an express provision

to the contrary, to have assumed the risk of unforeseen contingencies arising

during the course of the work"); *American Demolition Inc. v. Hapeville Hotel Ltd.*

*Partnership*, 413 S.E.2d 749, 752 (Ga. Ct. App. 1991) (demolition contract that

contained no differing site conditions clause allocated the risk of such conditions

to the party performing the work); *Thompson-Arthur Paving Co. v. North*

*Carolina Dept. of Transp.*, 387 S.E.2d 72, 73-74 (N.C. App. 1990) (excavation

contract with no differing site conditions clause left risk of quantity overruns with

the party performing the work); *L. Loyer Const. Co. v. City of Novi*, 446 N.W.2d

364, 367 (Mich. App. 1989) (soils risk on contractor where contract contained

multiple disclaimers and no differing site conditions clause); *S & M Constructors,*

*Inc. v. City of Columbus*, 434 N.E.2d 1349, 1352 (Ohio 1982) (risk of groundwater

inflows was a risk allocated to the contractor by a contract that contained no

differing site conditions clause).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                              - 8 -                              [38599-0012/AA061190.001]

III.    **The Court Should Grant Brechan Summary Judgment on Absolute's Constructive Change Claim Because it is Nothing More than a Restatement of Its Differing Site Conditions Claim.**

Absolute has also pled a cause of action for "constructive change."

> The doctrine of the "constructive" change was first utilized during World War II, and was well established by the early 1960s. The need for the doctrine was supported by the arcane federal dispute resolution process of the early 20th century in which the jurisdiction of federal administrative boards of contract appeal was circumscribed by the federal "Disputes" clause, which permitted the boards to remediate only those claims arising under a remedy granting clause of the contract. The doctrine of "constructive change" thus was a device by which the federal boards of contract appeal could "bootstrap" into their jurisdiction all manner of contractor claims not otherwise cognizable under the [Federal Acquisition Regulation's] Changes clause due to the absence of any change actually having been issued.

1 Philip L. Bruner and Patrick J. O'Connor, Jr., Construction Law § 4:25 (2002) (internal footnotes omitted); *see also* Ralph C. Nash, Jr., Government Contract Changes, 202-03 (1981) (also explaining the history and development of the clause).

This is <u>not</u> a case where Absolute alleged that there was a dispute about contractual requirements during contract performance and Brechan ordered Absolute to proceed without a written change order and that Absolute so did, with notice and under protest. *See* Exhibit G (Absolute Environmental's Responses to Safeco Insurance Company's Discovery Requests) at 11-12. Instead, Absolute describes its claim for "constructive change" as follows:

> The changes made include the requirements imposed on AESI [Absolute] and/or its subcontractor to coat and repair the same areas repeatedly; to consume excessive amounts of coating in performing repairs (and repeated repairs) and in failed attempts to prevent

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 9 -                    [38599-0012/AA061190.001]

holidays by building up coating millage; and to perform massive amounts of grinding of welds, including cutting off non-structural steel and grinding the remainder of the welds that had attached to the steel, plus the resulting delays to the completion of the work.

Exhibit G at 11. Absolute contends that it performed this work as the result of concealed "defective welds" on the cargo wharf. *Id.* at 11-12; *see also* Exhibit H at 6 ("AESI's entitlement is based on its increased costs of performing its subcontract work arising in whole or part from the consequences of, and the cost of correcting, concealed defective and missing welds.").

In short, Absolute is contending that the "constructive change" to the contract is its alleged additional work, but only to address an alleged concealed or latent physical condition on the project. These allegations amount to no more than Absolute's differing site condition claim. As explained above, the risk that a differing site condition would make performance of the subcontract extremely difficult was on Absolute. Absolute was obligated to perform its contract without adjustment to the contract price even if it encountered a differing site condition. As such, Absolute cannot claim that work addressing these physical conditions was a directed or constructive change to Absolute's contract with Brechan.

## IV.    The Court Should Grant Summary Judgment Against Absolute On Its Good Faith and Fair Dealing Claim Because the Alleged Breach of Contract Occurred at a Time When There Was No Contract.

Absolute has also alleged that Brechan breached the covenant of good faith and fair dealing. However, Absolute's theory of recovery does not support this position. Absolute's President, David Olson, testified as follows:

Q        What was your reason for deciding to attempt to bring Brechan

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                                   - 10 -                          [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

back into the lawsuit?

A    I discovered that Brechan's subcontractor on Phase 1 had encountered a differing site condition that was never disclosed to me by Brechan Enterprises.

Q    What was the differing site condition that you believe you discovered?

A    Discovered a memorandum that spoke to the condition – poor condition of welds throughout the original cargo pier that made it impossible or virtually impossible for my predecessor to perform his work.

Q    What was the condition that you believe you discovered that made it, as you say, impossible or virtually impossible for your predecessor to do his work?

A    The condition of the cargo – the original cargo pier was such that you couldn't satisfy the requirement in the specification for what they called a holiday-free coating.

Q    Anything else that you thought about or you considered for your reasons for bringing Brechan back into the lawsuit?

A    The fact that they didn't disclose it to me. I don't know if it's the same – it would be the same thing as what I just answered to.

Exhibit F at 40-41. When asked via interrogatory to describe the material facts which form the basis of Absolute's claim, Absolute devotes ten pages to discussing the existence of a differing site condition on Phase I of the Project and Brechan's alleged failure to disclose this information to Absolute prior to the time that Absolute entered into a contract with Brechan.[5] Exhibit H.

_____

[5] Absolute has admitted that its "entitlement theories are all applicable to the same operative facts and are not reflective of different occurrences for which claims are being made." Exhibit H at 17 (emphasis added).

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                - 11 -                [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Absolute's allegations, if true, could not form the basis of a claim alleging the violation of the covenant of good faith and fair dealing. The covenant of good faith and fair dealing is a term implied in contracts in Alaska. *Mitford v. de LaSala*, 666 P.2d 1000 (Alaska 1983). As such, it is well-established Alaska law that a prerequisite to such a claim is that there must be an actual contract in place between two parties before there can be any breach of the covenant. *O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 526 (Alaska 1988) (declining to recognize a tort duty of good faith and fair dealing independent of the contractual relationship); *Revelle v. Marston*, 898 P.2d 917 (Alaska 1995) (holding that "[b]ecause the [the defendants] had no contract with [the plaintiff], they cannot be found to have violated the implied covenant of good faith and fair dealing").

Absolute's contentions demonstrate that there was no contract in place between Brechan and Absolute when Brechan allegedly failed to disclose the existence of a differing site condition. This alleged event occurred prior to the time of contracting. Because there was no contract in place at the time that this event occurred, it could not give rise as a matter of law to a breach of the covenant of good faith and fair dealing.

## V.    The Court Should Grant Summary Judgment on Absolute's Equitable Theories Because Its Work Was Within the Scope of Its Contract with Brechan.

"Courts generally treat actions brought upon theories of unjust enrichment, quasi-contract, contracts implied in law, and quantum meruit as essentially the same." *Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 n.6

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                                    - 12 -                          [38599-0012/AA061190.001]

(Alaska 1987).  In order to recover in quantum meruit, Absolute must demonstrate that Absolute does not have an express contract with Brechan which covers the services in question.  *Fairbanks North Star Borough v. Kandik Construction, Inc.*, 795 P.2d 793, 799 (Alaska 1990).  Absolute cannot make this showing, and therefore summary judgment is proper.

A party may not recover in quantum meruit if the work in question is within the scope of an express contract.  *Kandik Const.*, 795 P.2d at 800; *see also*, *Mitford v. de LaSala*, 666 P.2d 1000, 1006 n.1 (Alaska 1983).  "It is well settled that proof of an express contract covering the services in question precludes relief in quantum meruit."  *Id.*  "As long as the nature of the problems encountered was contemplated by the contract, . . . there is no basis to abandon the contract in favor of quantum meruit."  *Hensel Phelps Constr. Co. v. King County*, 787 P.2d 58, 65 (Wash. 1990).[6]

Absolute contends that the specifications it was working under in the Project required a "holiday-free" coating requirement.  Exhibit H at 9.  Absolute also contends that the welds on the cargo wharf made this very difficult to achieve.  *Id.*  Absolute also states, that in order to meet the "holiday-free" coating requirement,

---

[6] In *Hensel Phelps*, the court rejected the contractor's argument that the magnitude of the problems it encountered provided a basis for recovery under quantum meruit.  787 P.2d at 64-65.  The contractor argued that its use of nearly three times the amount of labor hours to perform its contract obligations, necessitating the use of 26 painters instead of nine, provided for recovery in quantum meruit.  The court flatly rejected this argument.

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)    - 13 -    [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

> Absolute elected to cut off all nonstructural steel and grind down the welds for the . . . work. This was costly and labor-intensive work, but it ended up reducing the number of holidays encountered on the remainder of the project. Nevertheless, Absolute was forced to return repeatedly to perform holiday repairs at great expense long after substantially [sic] completion.

*Id.* at 16. Absolute is seeking recovery in this lawsuit for its increased costs of performing its subcontract work arising from "the consequences of, and the cost of correcting, concealed defective and missing welds" in order to meet the requirements of the specification. Exhibit H at 6, 16.

The correction of any "defective welds" in order to meet the "holiday-free" coating requirement was specifically contemplated by the contract between Brechan and Absolute. The contract between Brechan and Absolute states that Absolute:

> shall include; all work, necessary or incidental to complete the: Removal of existing pile coatings and application of new pile coatings.
>
> Work for the Project as more particularly, though not exclusively specified in Scope of Work dated 11/27/02 and your proposal dated 10/22/02.

Exhibit E (emphasis added). The referenced scope of work states that the contractor must act in accordance with the attached specifications. Exhibit E. These specifications, dated November 26, 2002, warn that there are "defective welds" on the Project and instruct Absolute how to address them.

> 1.1.4  [Absolute] is responsible for repair of holidays, coating damage, and repairs due to project work . . .
>
> . . .

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 14 -                    [38599-0012/AA061190.001]

1.7.3.6. . . Nonstructural members with <u>poor quality or defective welds</u> shall be cleaned and stripe coating prior to coating . . . Abandoned nonstructural members may be removed to increase [Absolute's] productivity.

. . .

3.3.2  All cleaned surfaces to be coating shall be visually checked by [Absolute] for surface imperfections, including slivers, scabs, weld spatter, and gouges. Edges, including welds, shall be rounded to 1/8" radius, minimum, and prior to abrasive blasting. <u>Remove all slivers, scale, weld spatter, and other imperfections by filing, grinding or other suitable means prior to abrasive blasting.</u>

. . .

3.7.1  <u>All repairable defects disclosed by the holiday detector . . . shall be repaired by [Absolute]</u> in a manner complying with the approved coating plan.

Exhibit E at BEI0173, BEI0180, BEI0184, BEI0189 (emphasis added). In short, Absolute's contract with Brechan contemplated that there were defective welds on the project which would need to be addressed, that Absolute would be required to grind down imperfections and stripe coat or caulk welds, and that Absolute would be required to repair holidays. This work is, therefore, within the scope of Absolute's contract and Absolute may not recover in quantum meruit.

**VI.    There Was No Breach of an Implied Warranty of the Adequacy of the Specification.**

Absolute has pled a claim alleging that Brechan breached the "warranty of plans and specifications."[7] This claim, also known as the "Spearin Doctrine,"

---

[7] To the extent that Absolute is arguing that the specifications were defective because they fail to adequately disclose the existence of "defective welds," this issue is addressed in connection with Brechan and Safeco's separate

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                     - 15 -                     [38599-0012/AA061190.001]

creates an implied warranty that certain plans and specifications are suitable for their intended use. John Cibinic, Jr. and Ralph C. Nash, Jr., *Administration of Government Contracts*, 267 (3d ed. 1995).

To recover for an alleged breach of an implied warranty of the adequacy of the specification, Absolute must establish: (1) the specification that caused the harm was a "design specification" (rather than "performance specification"); (2) Absolute must have relied on the specification at issue and the reliance was reasonable; (3) Absolute followed the specification; and (4) the specification was "defective." John Cibinic, Jr. and Ralph C. Nash, Jr., *Administration of Government Contracts*, 267-95 (3d ed. 1995). Absolute cannot demonstrate any of these elements.

> **A.    The specification's requirement to achieve a "holiday-free" condition over the surfaces of welds was a performance specification, not a design specification.**

The Spearin Doctrine only applies to design specifications – it does not protect a contractor from inefficiencies in complying with performance specifications. *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1582 (Fed. Cir 1987); *Aleutian Constructors v. United States*, 24 Cl. Ct. 372 (1991).

> The difference between performance specifications and design specifications is well established. Performance specifications "set forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection." Design specifications, on the other hand, describe in precise detail the

motion for summary judgment addressing Absolute's fraud, misrepresentation and superior knowledge claims.

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                          - 16 -                    [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

materials to be employed and the manner in which the work is to be performed. The contractor has no discretion to deviate from the specifications, but is "required to follow them as one would a road map."

*Blake Constr. Co. v. United States*, 987 F.2d 743, 745 (Fed. Cir. 1993) (quoting

*J.L. Simmons Co. v. United States*, 188 Ct. Cl. 684, 412 F.2d 1360, 1362 (1969)).

The requirement that the coating be "holiday-free" is a performance requirement, not a design requirement. The specification afforded the contractor discretion in the means and methods it might use to prepare the surfaces of welds for coating that would be holiday-free. The specification stated that Absolute could file, grind or use "other suitable means" to remove imperfections from the cargo wharf in order to achieve a holiday-free coating. Exhibit E at BEI0184; see also Lembke Deposition at 39-40 (Exhibit I). Absolute also had the discretion to apply as thick a coat of product to the welds as it wanted, caulk them, stripe coat them, or cut off non structural steel. Exhibit E at BEI0180, BEI0168; Olson Dep. (Exhibit F) at 266-67. The contractor was left to its own discretion to employ a method or combination of methods which adequately prepared and coated the surfaces of weld areas. *Ahern Painting Constructors, Inc.* 1968 WL 270, 68-1 BCA ¶ 6949, DOTCAB No. 67-7 (Mar. 20, 1968) (specification which required that paint be applied at minimum temperatures was not a warranty that a satisfactory result would be obtained); *Inlet Co.*, 964 WL 956, 1964 BCA ¶ 4093, ASBCA No. 9095, (Feb. 20, 1964) (holding that government's specification of a minimum thickness of metal did not create a warranty that the minimum would be satisfactory).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 17 -                    [38599-0012/AA061190.001]

### B.    Absolute did not reasonably rely on the specifications relating to preparation of the welds.

Absolute must also show that it relied upon the specification at issue when planning its costs, and its reliance was reasonable. *M.A. Mortenson Co. v. United States*, 40 Fed Cl. 389, 419-20 (1998). If a contractor enters into a contract with pre-award knowledge of defects in specifications, its reliance is unreasonable and it is precluded from recovery. *Lewis v. Anchorage Asphalt Paving Co.*, 535 P.2d 1188, 1199 (Alaska 1975) ("where he knows or had reason to believe that the plans are defective, . . . he is not entitled to recover"). Absolute cannot show either actual or reasonable reliance on the specification.

Absolute did not rely on the specifications relating to the preparation for welds when it prepared its estimate. Imperial's Tom Puett prepared Absolute's estimate. Puett Dep. (attached hereto as Exhibit J) at 60; Olson Dep. (Exhibit F) at 254-55; Peterson Dep. (attached hereto as Exhibit K) at 99-100. Mr. Puett believed preparing defective welds was deleted from the Absolute/Imperial contract, and that this work was another contractor's responsibility. Puett Dep. (Exhibit J) at 17-18, 47-49. Consequently, he completely disregarded the specification regarding weld preparation work.

Absolute also cannot establish that its reliance was reasonable, because its subcontractor believed that the "stripe coating" (a method called for in the specification to lessen the amount of holidays on welds) was impossible to accomplish. Puett Dep. (Exhibit J) at 46-48. Mr. Puett testified he was "smart enough" to realize he would not be able to do any stripe coating with the SPC product. Puett Dep. (Exhibit J) at 47. Because he believed it was impossible to

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 18 -                    [38599-0012/AA061190.001]

do, he didn't want to get involved with it. Puett Dep. (Exhibit J) at 46-47. A
contractor who has actual knowledge of the defect in a specification must bring
the defect to the upstream owner's attention, or be deemed to have assumed the
risk. *Allied Contractors v. United States,* 381 F.2d 995, 998-1000 (1967).

    **C.**    **Absolute did not follow the specifications when Imperial
was performing the work.**

A contractor may only recover under the Spearin Doctrine if the
contractor adheres to the requirements of the plans and specifications during
construction. *Al Johnson Constr. Co. v. United States*, 854 F.2d 467, 469 (Fed.
Cir. 1988); *see also Tyger Constr. Co., Inc. v. United States,* 31 Fed. Cl. 177, 243
(1994) (holding that plans supplied by the government were defective but that the
contractor could not recover because the contractor did not comply with the
defective specifications). It is undisputed that Absolute's subcontractor, Imperial,
did not comply with the specifications in several respects. *See* Exhibit H at 9-11
(describing Imperial's poor workmanship and its failure to comply with the
specifications).

    **D.**    **The alleged defective specification did not cause
additional work.**

The specification says that rust occurs primarily near edges, welds or
corners and that rust and pitting is anticipated beneath the coating. See Exhibit D
at BEI0172 (Section 1.1.3.1(a) and (b)). Absolute admits that based on the
specification and pre-proposal site visit(s), Absolute and Imperial reasonably
should have anticipated the existence of rusted and pitted steel in many locations,
which conditions would require difficult and time consuming work to obtain the

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)    - 19 -    [38599-0012/AA061190.001]

finish required by the specifications. *See* Absolute Environmental's Responses to Coffman's Second Discovery Requests (Request for Admission No. 10 and response) (Exhibit L hereto).

The efforts required to prepare the surfaces of welds are the same whether the "defect" – i.e., the condition of the weld, is a poor quality weld or a rusted and pitted weld: it is grinding, stripe coating, caulking or if the weld is on non-structural steel, removal of the non-structural steel.

Since there are conditions disclosed in the specification and visible at pre-proposal site visits which Absolute either did or reasonably should have anticipated and which require "difficult and time consuming work to obtain the finish required by the specification," the presence of an additional type of defect, i.e., a defective weld due to poor quality welding versus a defect due to pitting and rusting, is not actionable under the Spearin Doctrine. It is not actionable because there was a concurrent cause – defects from pitting and rusting welds – that would themselves cause difficult and time-consuming work. Unless Absolute can show that the defect of poor quality welds caused some effort other than what should have been anticipated, it cannot show reliance on a defect in the specification.

**E.    There is no evidence that the specification was defective.**

Finally, a claim under the Spearin Doctrine requires the plaintiff to demonstrate that the specification was, in fact, defective. *Fru-Con Constr. Corp v. United States*, 42 Fed. Cl. 94, 96 (1998). In order to establish the specification as defective, Absolute must demonstrate that the specification was either objectively impossible or commercially impracticable to follow. *Intercontinental Mfg. Co. v. United States*, 4 Cl. Ct. 591, 595 (1984).

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                    - 20 -                    [38599-0012/AA061190.001]

Absolute cannot demonstrate impossibility or commercial impracticability. In this case, it is undisputed that the specifications were <u>not</u> impossible to achieve. Absolute admits it accomplished the work using the specification. Olson Dep. (Exhibit F), at 275 ("Well, obviously, [the work] could be accomplished because we did accomplish it at the end of the day, but at great expense.").

Establishing commercial impracticability requires that the work be "commercially senseless." *Northern Corp. v. Chugach Elec. Ass'n,* 518 P.2d 76, 81 (Alaska 1974). Commercial senselessness "require[s] a showing that no buyers existed which were willing to pay a price consisting of the costs of production plus a reasonable profit." *Read Plastics, Inc.,* 1977 WL 1969, 77-2 BCA ¶ 12,609, GSBCA No. 4159 (Jun. 20, 1977). There has been no such showing in this case. To the contrary, Absolute's retained coating expert, L. Skip Vernon, has testified that the requirement to obtain a holiday-free condition under the circumstances at the wharf was very difficult but reasonably attainable. Vernon Dep. (attached hereto as Exhibit M) at 120-121. Absolute cannot establish the specification's inadequacy.

## CONCLUSION

Absolute's causes of action for negligent design, differing site condition, constructive change, breach of the covenant of good faith and fair dealing, implied contract, equity and warranty of plans and specifications all fail as a matter of law. Absolute's factual allegations do not plead facts upon which relief can be granted under these theories. As such, Brechan and Safeco respectfully request that summary judgment be granted on these claims.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                        - 21 -                        [38599-0012/AA061190.001]

DATED at Anchorage, Alaska, this 4th day of August, 2006.

PERKINS COIE LLP
Attorneys for Brechan Enterprises, Inc. and
Safeco Insurance Company of America.


By s/Michael E. Kreger
    Michael E. Kreger
    Alaska Bar No. 8311170
    Jacob Nist
    Alaska Bar No. 0211051
    Perkins Coie LLP
    1029 West Third Avenue, Suite 300
    Anchorage, Alaska  99501
    (907) 279-8561
    (907) 276-3108 (fax)
    Email: mkreger@perkinscoie.com


**CERTIFICATE OF SERVICE**

I hereby certify that on *Aug. 4, 2006,*, the foregoing
has been served by electronic mail on Robert J.
Dickson, Peter C. Partnow, William R. Baerg, Terry
R. Marston II, James B. Stoetzer, and Eric J. Brown.

  /s/ Michael E. Kreger
    Michael E. Kreger

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                 - 22 -                 [38599-0012/AA061190.001]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

## TABLE OF CONTENTS OF EXHIBITS

B.    Plaintiff's First Interrogatories to Coffman Engineers and Responses
       Thereto

C.    Deposition Transcript of Jerry Hardenbergh

D.    30(b)(6) Deposition Transcript of Absolute

E.    Subcontract between Brechan and Absolute

F.    Deposition Transcript of David Olson

G.    Absolute's Responses to Safeco's Discovery Requests

H.    Absolute's Responses to Brechan's Discovery Requests

I.    Deposition Transcript of Mark Schilling

J.    Deposition Transcript of Tom Puett

K.    Deposition Transcript of Jason Peterson

L.    Absolute's Responses to Coffman's Second Discovery Requests

M.    Deposition Transcript of L. Skip Vernon

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

MOTION FOR SUMMARY JUDGMENT
ABSOLUTE v. McKINLEY, et al.
3:03-cv-0119 (rrb)                - 23 -              [38599-0012/AA061190.001]