# EXHIBIT D

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF ALASKA
 3
 4   ABSOLUTE ENVIRONMENTAL
     SERVICES, INC., An Alaska
 5   corporation,
 6              Plaintiff,
 7      vs.
 8   FORREST J. McKINLEY and "JANE
     DOE" McKINLEY, et al.,
 9
                Defendants.
10   _____
11   Case No A03-0199 Civil (RRB)
12
13
14
15
        30(b)(6) DEPOSITION OF ABSOLUTE ENVIRONMENTAL SERVICES
16
                           David Olson
17
                       Taken March 30, 2006
18                    Commencing at 4:00 p.m.
19            Volume I - Pages 1 - 42, inclusive
20
21
                      Taken by the Defendant
22                              at
                           PERKINS COIE
23                 1029 W. Third Av., Suite 300
                       Anchorage, AK  99501
24
25
```

COPY

EXHIBIT D

Page 10

1  areas, then additional labor, cutting and grinding. What
2  other activities?
3  A  The work we did on Phase 1.
4  Q  Was that under the contract for Phase 2 or was that
5  under a different contract?
6  A  That would be under the Phase 2 contract. It was
7  added to the Phase 2 contract.
8  Q  What work did Absolute do on Phase 1?
9  A  Repair work as required.
10 Q  Were you compensated for that or was Absolute?
11 A  Partially.
12 Q  When you say partially, what does that mean?
13 A  That means we performed the work as directed by
14 Brechan when we fixed the punch list that I believe
15 Mr. Hardenbergh had prepared for Phase 1, and we did go
16 and perform the work, and we issued an invoice to Brechan
17 for, I think, raw costs of 42,000 or $43,000. And they
18 informed us that they had $15,000 budgeted. That's all we
19 were going to get for the work.
20 Q  And were you paid the $15,000 -- or was Absolute paid
21 the $15,000 that was budgeted?
22 A  I believe that we were compensated for that. And we
23 would also be seeking money that was paid to Coffman,
24 withheld from our contract by Brechan, as a back charge
25 for overages for Coffman, as a result of the work not

Page 11

1  being completed by August 30th.
2  Q  And what activity did Absolute do that -- again,
3  focus on activities here. How does this back-charge issue
4  relate to Absolute's activities in relation to the claims
5  Absolute's asserting against Brechan and Safeco?
6  A  I'm asserting that you have a breach of warranty,
7  plans and specifications, or superior knowledge regarding
8  the welds, whereby Swalling was compensated for additional
9  work at a reduced holiday-testing criteria, which
10 shortened the amount of time that they had to perform the
11 work, but added to the amount of time that I would run
12 into performing the work, and that relates to
13 Mr. Hardenbergh being on the job for a longer period of
14 time as a result of your client not disclosing the
15 defective-weld situation. They go hand in hand.
16 Q  So for activities, again, I'm still trying to make a
17 list, we have additional labor for cutting and grinding,
18 repairing coatings over the welds, work that you did on
19 Phase 1 of the project, repair work -- oh, that's still
20 for Phase 1. And the money that Coffman -- money that
21 Brechan back charged you in relation to Coffman's time.
22 Is there any other activity that Absolute performed that
23 it's seeking additional compensation for in this lawsuit?
24 A  Can I refer to Mr. Lembke's report?
25 Q  Do you have Mr. Lembke's report handy?

Page 12

1  A  The original?
2      MR. ELISON: I don't have the first one. I
3  just have the recent one.
4      THE WITNESS: I need the first one.
5      MR. ELISON: I don't have a copy of it.
6      THE WITNESS: I need to say, everything that
7  Mr. Lembke incorporated into his first report, I have
8  reviewed it; I agree with it. Absolute agrees with it.
9  Any items -- additional items listed in there.
10 BY MR. NIST:
11 Q  You mentioned something about the plans and
12 specifications, and you thought that they were defective.
13 That's what Absolute is contending?
14 A  I'm contending that your client breached a warranty
15 of plans and specifications.
16 Q  Is Absolute contending that Brechan drafted the plans
17 and specifications for this project?
18 A  I'm contending that it was a design/build project and
19 you were responsible for it. Or Brechan was.
20     Do you mind if I you for Brechan?
21 Q  You can say me. That's fine.
22     MR. ELISON: It's probably clearer for the
23 record if you say Brechan.
24     THE WITNESS: Brechan was ultimately responsible
25 for the actions of their subcontractor or subcontractors

Page 13

1  that wrote the plans and specifications.
2  BY MR. NIST:
3  Q  I don't think that answered my question. Is Absolute
4  contending that Brechan actually authored the plans and
5  specifications that were used in the Phase 2 project?
6  A  I would say they participated in authoring them.
7  Q  What facts are you aware of that would make Absolute
8  aware that Brechan had authored the plans and
9  specifications for the Phase 2 project?
10 A  Documents that were retrieved from this office during
11 our production. I can't name them specifically.
12 Q  Would it be fair to say that Brechan's role in the
13 plans and specifications was limited to reviewing what
14 Coffman had done?
15 A  I have seen documents where Mr. Oliver was opining on
16 how things ought to be, and Mr. Holmstrom opined on
17 certain aspects, and where Mr. Holmstrom and Mr. Stears
18 and Mr. Brown were conferring on changes in the
19 specifications. So whether that constitutes authorship, I
20 don't know if that -- that requires me to make a legal
21 conclusion or not, but I would say they participated.
22 Q  And Coffman is a design professional. Drafting these
23 plans and specifications is what they do; is that correct?
24 A  Yes.
25 Q  And Absolute isn't aware of any facts that would

```
 1                    REPORTER'S CERTIFICATE

 2          I, SUSAN J. WARNICK, RPR, and Notary Public in

 3   and for the State of Alaska do hereby certify:

 4          That the witness in the foregoing proceedings was

 5   duly sworn; that the proceedings were then taken before me

 6   at the time and place herein set forth; that the testimony

 7   and proceedings were reported stenographically by me and

 8   later transcribed under my direction by computer

 9   transcription; that the foregoing is a true record of the

10   testimony and proceedings taken at that time; and that I

11   am not a party to nor have I any interest in the outcome

12   of the action herein contained; that signature was

13   requested.

14          IN WITNESS WHEREOF, I have hereunto subscribed my

15   hand and affixed my seal this 20th day of April,

16   2006.

17

18                              _____
                                 SUSAN J. WARNICK,
19                               Registered Professional Reporter
                                 Notary Public for Alaska
20

21
     My Commission Expires:  April 8, 2010
22

23

24

25
```