Terry R. Marston, *pro hac vice,* terry@mhf-law.com
Jami K. Elison, *pro hac vice,* jamie@mhf-law.com
Jesse P. Elison, *pro hac vice,* jessee@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington  98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska  99501
Telephone:  (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.<br><br>Defendants. | Case No.: A03-0199CV (RRB)<br><br>**PLAINTIFF ABSOLUTE'S MOTION TO DISMISS OR CAP CERTAIN CLAIMS ALLEGED BY DEFENDANT EMERCO, INC.** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>Counterclaimant/Third-party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, et al.,<br><br>Cross-defendants/Third-party Defendants. | |

|   |   |
|---|---|
| THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | ) ) ) |
| Defendants. | ) ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Counterclaim Plaintiff, | ) ) |
| vs. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Counterclaim Defendant. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Plaintiff/Cross-claimant, | ) ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) ) |

PLAINTIFF ABSOLUTE'S MOTION TO DISMISS OR CAP CERTAIN CLAIMS ALLEGED BY
DEFENDANT EMERCO, INC.
Case No. A03-0199CV (RRB)-- 2

## I. RELIEF REQUESTED

Plaintiff Absolute Environmental Services, Inc. moves for relief under FRCP 56 and requests this Court dismiss, or cap, certain counterclaims alleged by Defendant Emerco, Inc, as follows: (1) dismiss claim for Interference/Delays; (2) dismiss claims duplicative of relief included in claim for full payment for work completed; (3) cap labor cost related to gray paint claim; and (4) dismiss claims for speculative profits on Fuel Tanks N12 and N60.

## II. INTRODUCTION

Discovery concluded July 3, 2006. Trial begins October 2, 2006. Defendant Emerco, Inc.[1] ("Emerco") presented several damage claims against AESI that lack a basis in law or fact. Such claims should be dismissed.

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy, and inexpensive determination of every action."

Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548 (1986).

## III. ISSUES

1. Emerco claimed damages for interference and delay, a form of economic damage that must be established by qualified expert opinion. When Plaintiff utilized discovery to ask Emerco to identify its damages, Emerco assigned $0 to interference and delay and Emerco never produced an expert opinion that could support such a claim at trial.

   **Issue: Should this Court dismiss Emerco's wholly unsupported claims for interference and delay?**

---

[1] Throughout this motion defendant will be referred to as Emerco. The various identifications of Emerco, Forrest J. McKinley, and Imperial Industrial Coatings will be contested at trial. However, the counterclaims moved on were attributed to Emerco in the Answer and Counterclaim so in the interest of consistency AESI will use that convention throughout this motion.

2. Although Emerco claims it is entitled to full payment for work completed, Emerco also separately alleges multiple additional claims that cannot stand independently because they are obvious duplications of Emerco's claim for full payment:[2]

(i) In addition to its claim for full payment, Emerco also seeks affirmative relief for deductions from Emerco's billings;
(ii) In addition to its claim for full payment, Emerco also seeks affirmative relief for amounts it claims are due to cover mobilization expenses; and
(iii) Although the contract price would have covered profits, Emerco also seeks lost profits in addition to payment of the agreed upon contract price.

**Issue: Recognizing that Emerco can proceed to trial on its claim for payment for work performed, should this Court dismiss Emerco's multiple claims seeking duplicative relief?**

3. Emerco claims damages for extra work it alleges resulted from the existence on the project of a substance referred to as gray paint. Emerco testified to the possible extent of these damages and the amount sought by Emerco should be capped by that testimony.

**Issue: Should this Court cap Emerco's damage claim related to gray paint to the amount established in discovery?**

4. Emerco claims lost profits for different projects, naming the Coating Fuel Tanks N12 & N60. Emerco never had a contract for these projects.

**Issue: Should this Court dismiss Emerco's claim for lost profits on projects that Emerco never contracted to perform?**

## IV.   EVIDENCE RELIED UPON

This motion relies on and incorporates the pleadings and filings of record and the accompanying Declaration of Terry R. Marston, with exhibits thereto.

## V.   FACTS

On December 18, 2002, Absolute Environmental Services, Inc. ("AESI") accepted a contract proposed by Brechan Enterprises, Inc. to perform construction services on the Kodiak Cargo Wharf Pile Coating project (the "Project"). In January 2003, AESI entered a subcontract

---

[2] AESI disputes but does not move to dismiss or summary judgment Emerco's claim for payment for work completed.

agreement with Emerco retroactive to the December 18, 2002 date. AESI and Emerco contracted to perform work related to the application of coating materials underneath the wharf.

The largest disputes in this lawsuit are between AESI, Brechan, and Coffman. There are also disputes between AESI and Emerco. This motion selects certain claims by Emerco that lack a genuine basis in law or fact and seeks dismissal of those claims.

While working on the Project, Emerco alleges that it encountered a gray paint substance that increased the amount of required work by Emerco. Ex. 1 (pp.11-12) to Marston Decl. Emerco alleges that the gray paint was a differing site condition for which Emerco should receive additional compensation. In this motion, AESI makes no representations regarding the accuracy of Emerco's allegations regarding gray paint. Emerco's representative, Tom Puett, testified in discovery about the amount of labor costs that Emerco might have incurred as a result of the gray paint.

```
Q    That is Exhibit 14?
A    It's a calculation of time to remove gray coatings from a single pile.
Q    And there's a reference to a wage rate, 24.28. What's that?
A    That was the wage of the person that was working on that pile when the
work was being done.
Q    Do you recall who that was?
A    Don't recall.
Q    And benefits, 11.19?
A    Yes.
Q    So it looks as though you're preparing a wage—what I'm trying to think
of here—a burdened wage rate of $35.47; is that right?
A    Yes.
Q    And then you multiply that by .55 which equates to 33 minutes out of an
hour?
A    Yes.
Q    So that's .55 hours?
A    Yes.
Q    And so it's—you get $19.50 to remove the gray coat on one pile?
A    Yes.
                                    ***
```

PLAINTIFF ABSOLUTE'S MOTION TO DISMISS OR CAP CERTAIN CLAIMS ALLEGED BY
DEFENDANT EMERCO, INC.
Case No. A03-0199CV (RRB)-- 5

> Q   So if you had 118 piles that you encountered that had that problem, then in terms of labor you're talking about $19.50 times 118 piles, correct?
> A   Well, that's the labor just to do the work.

Ex. 6 to Marston Decl. If the gray paint existed on every pile, and this motion makes no representation as to the accuracy of that statement, then the total labor cost would have been $2,301 ($19.50 x 118).

Emerco contests certain backcharges that were assessed by AESI during the course of construction. Ex. 1 (p.16) to Marston Decl. AESI is prepared to prove the validity of backcharges at trial. Again, for purposes of this motion it must be noted that Emerco claims full payment for work performed and resolution of that claim will necessarily resolve disputes about backcharges. There is no independent claim pertaining to backcharges and there is a risk of confusion in allowing Emerco to go forward with multiple such duplicative claims.

Emerco suggests that it was entitled to be paid for mobilization. Ex. 1 (p.15) to Marston Decl. The contract provides no support for that contention. Ex. 2 to Marston Decl. The parties negotiated a contract price and did not provide any separate or distinct payment for Emerco's mobilization. In any event, it is again true that the resolution of the dispute over payment will necessarily resolve any dispute over mobilization payments.

Emerco claims it is entitled to lost profits for completely different projects, the Coating Tanks referred to as N12 and N60. Ex. 1 (p.14) to Marston Decl. Emerco never obtained a contract for Coating Tanks N12 and N60 and its claim for lost profits is purely speculative.

Emerco suggests it is entitled to economic damages for lost profits on the cargo wharf project that is the subject of this litigation. To the extent that Emerco is making a contention about profits on work performed, again the dispute over payment for work performed will

necessarily resolve this issue. To the extent that Emerco is requesting profits on work it did not complete, that claim fails because Emerco chose to terminate the contract. Ex. 5 to Marston Decl.

Emerco was hired to apply a specified coating product under the wharf. Emerco never completed its work under the subcontract with AESI. On August 4, 2003 Special Polymer Coatings ("SPC"), the coating manufacturer, decertified Emerco's applicators leaving Emerco wholly unable to perform its required work. *See* Ex. 3 to Marston Decl. AESI sent a cure notice to Emerco requiring that they obtain certification and resume working on the Project. *See* Ex. 4 to Marston Decl. Emerco elected to terminate the contract. *See* Ex. 5 to Marston Decl. Emerco never cured the decertification problem and never resumed work.

AESI performed Emerco's remaining work either by self-performing the work or else by subcontracting with new firms. By the completion of the project AESI had incurred substantial losses at the hands of Brechan and its design contractor Coffman Engineers, Inc. A portion of AESI's project loss is attributable to Emerco. It serves the interest of a fair trial to be clear and accurate about theclaims at issue between AESI and Emerco. Several of Emerco's claims should now be summarily dismissed.

## VI. AUTHORITY

FRCP 56 authorizes summary judgment on claims without a genuine basis in law or fact. The law is well established:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548 (1986).

\*\*\*

> An important function of summary judgment is to eliminate factually unsupported claims. Ewing v. State Farm Mut. Auto. Ins. Co., 6 F.Supp.2d 1281, 1286 (D.N.M. 1998).
>
> ***
>
> A primary purpose of summary judgment is to isolate and eliminate factually unsupported claims or defenses. David Tunick, Inc. v. Kornfeld, 838 F.Supp. 848, 849 (S.D.N.Y. 1993).

**1. This Court should dismiss Emerco's wholly unsupported claims for interference and delay.**

On August 2, 2004, Emerco responded to interrogatories regarding damages. Ex. 1 to Marston Decl. Emerco was asked to identify damages attributable to interference/delays, identify the individual who calculated this aspect of damages, and identify the method used to quantify damages. Emerco responded as follows:

> (e) Unknown at present; to be determined.
> (f) Unknown at present; to be determined.
> (g) Unknown at this time; analysis to be performed.

Ex. 1 (pp.17-18) to Marston Decl. The discovery cutoff and the deadline to disclose expert witness reports passed on July 3, 2006. Emerco never produced any evidence to support a claim for interference/delay damages.

In addition, Emerco never identified an expert to testify on interference/delay damages. Interference/delay damages are a form of economic loss that results from losses in productivity. These types of damages must be established by expert opinion:

> Subcontractor could not recover from contractor on claim that designer's decision to require large amount of overtime work resulted in loss of labor efficiency and further expansion of subcontractor's costs in the absence of expert testimony to support claim.

Havens Steel Co. v. Randolph Engineering Co., 613 F.Supp. 514, 540 (D.C.Mo. 1985) (expert was required to establish labor inefficiency and no expert established the claim).

> The fatal defect in plaintiff's case was its failure to adduce any evidence by experts in commercial office construction about the reasonableness of the delay. This court has held that 'when the subject dealt with is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman, its clarification calls for the use of expert testimony.'

Lenkin-N Ltd. Partnership v. Nace, 568 A.2d 474, 477-78 (D.C. 1990) (quoting District of Columbia v. Davis, 386 A.2d 1195, 1200 (D.C. 1978). Emerco has no expert to establish interference or delay damages.

**2. Recognizing that Emerco can proceed to trial on its claim for payment for work performed, this Court should dismiss Emerco's separate claims seeking duplicative relief.**

As discussed earlier in this motion, Emerco has articulated aspects of its general claim for payment for work completed as though they are independent claims. That is inaccurate and confusing. Emerco seeks compensation for all the work it performed. The resolution of the factual dispute over whether Emerco is entitled to damages for work performed will necessarily resolve individual components of payment such as backcharges, mobilization, and lost profits. Emerco has not articulated any theory that would constitute a "special damage;" instead, Emerco has duplicated elements of its general damage claim and erroneously presented them as independent claims:

> Recoverable special damages are those 'that are within the proximate cause limits, that can be proven with a reasonable degree of certainty, and that do not duplicate elements of damage awarded under the general damages headings'

Alaska Const. Equipment, Inc. v. Star Trucking, Inc., 128 P.3d 164, 167 (Alaska 2006). This Court should dismiss Emerco's duplicated claims and avoid any confusion and additional expense that might otherwise arise or be incurred. Emerco's rights are fully protected by its general damage claim.

**3. This Court should cap Emerco's damage claim for labor costs related to gray paint to the amount established in discovery.**

Emerco seeks additional compensation for the cost of removing gray paint which Emerco claims was a differing site condition on the Project. In response to interrogatories from AESI, Emerco suggested that the gray paint claim could be quantified at $92,029.21. Ex. 1 (pp.11-12) to Marston Decl. As quoted earlier in this motion, in deposition Emerco's representative explained that the labor costs related to gray paint equaled no more than $2,301. AESI requests that this Court deem the matter admitted and cap damages for labor costs associated with gray paint at no more than $2,301 ($19.50 x 118).

**4. This Court dismiss Emerco's claim for lost profits on projects that Emerco never contracted to perform.**

This court can summarily dismiss Emerco's claim for lost profits on projects referred to as Fuel Tanks N12 & N60. It is undisputed that Emerco never obtained a contract to work on those projects. The request for lost profits is purely speculative. It is well established that a plaintiff has to prove its damages to a "reasonable certainty." See State v. Northwestern Const. Inc., 741 P.2d 235, 237 (Alaska 1987) (citing Native Alaskan Reclamation & Pest Control v. United Bank Alaska, 685 P.2d 1211, 1223 (Alaska 1984)). As a matter of law, Emerco's claims for lost profits on N12 & N60 should be dismissed.

## VI.   CONCLUSION

Plaintiff AESI requests this Court dismiss claims alleged by Emerco that lack a genuine basis in law or fact. No evidence was ever produced to substantiate delay/interference damages and no expert has been disclosed to testify to such damages at trial; Emerco will pursue its primary claim for payment for work performed at trial but duplicative claims restating individual

components of the same claim should be dismissed; Emerco's claim for labor costs related to the gray paint should be capped consistent with evidence produced in discovery; and, finally, there is no basis for Emerco to seek purely speculative profits from Projects that Emerco never contracted to perform so those claims should also be dismissed.

DATED this 4th day of August, 2006.

MARSTON HEFFERNAN FOREMAN, PLLC

By _____
Terry R. Marston II, WSBA No. 14440
Jami K. Elison, WSBA No. 31007
Attorneys for Plaintiff Absolute Environmental Service, Inc.