James B. Stoetzer, ASBA No. 7911130
Peter C. Partnow, ASBA No. 7206029
LANE POWELL PC
301 West Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907.277.9511
Facsimile: 907.276.2631

Attorneys for Coffman Engineers, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation,<br><br>    Defendants. | Case No. A03-0199CV (RRB)<br><br>**DECLARATION OF JERRY HARDENBERGH IN SUPPORT OF COFFMAN'S MOTIONS FOR SUMMARY JUDGMENT** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>    Counterclaimaint/Third-Party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al.,<br><br>    Cross-Defendants/Third-Party Defendants. | |

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,

        Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.

        Defendants.

---

BRECHAN ENTERPRISES, INC., an Alaska corporation,

        Counterclaim Plaintiff,

v.

ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,

        Counterclaim Defendant.

---

BRECHAN ENTERPRISES, INC., an Alaska corporation,

        Third-Party Plaintiff,

v.

COFFMAN ENGINEERS, INC, a Washington Corporation.

        Third-Party Defendant.

---

ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation,

        Plaintiff/Cross-Claimant,

v.

COFFMAN ENGINEERS, INC, a Washington Corporation.

        Third-Party Defendant.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Declaration of Jerry Hardenbergh in Support of Coffman's Motions for Summary Judgment**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. A03-0199 CV (RRB))  Page 2 of 9

I, Jerry Hardenbergh hereby declare and state under oath as follows:

1. I am an employee of Coffman Engineers, Inc., third party defendant and cross-claim defendant in this lawsuit. I make this declaration on personal knowledge. In connection with my employment as a Corrosion Technologist for Coffman Engineers, I design, inspect, monitor and troubleshoot cathodic protection systems and provide coating inspection services. In addition, I also provide construction management and technical support during implementation of construction projects. Other duties also include corrosion analysis, inspection of piping and storage tanks, non-destructive testing data analysis, welding inspection, coating specification development, and contractor oversight. I have been employed by Coffman in the same position for over seven years.

2. Prior to working for Coffman I worked for Corrpro Companies as a Corrosion Technologist in connection with the Trans Alaska Pipeline. Prior to that time I worked for Morrison Knudsen as a Quality Control Inspector at the Valdez Marine Terminal. My quality control inspection duties for Morrison Knudsen related to welding and coatings in an aggressive marine environment. Prior to working for Morrison Knudsen I worked for Law Engineering in Jacksonville, Florida as a Quality Control Inspector and Engineering Technician. In that role, I performed destructive and non-destructive testing of weldments and coatings in conjunction with coating and welding inspection. While at Law Engineers I obtained certification as a welding inspector through the American Welding Society. During the last 20 years I also worked as a Quality Control Inspector relating to coatings and weldments for other companies, including Conam Constructors, Arctic Slope Inspection Services, Arctic Slope Consulting Group, Inc., OceanTech, Veco Operations, Inc., and the State of Alaska, Department of Natural Resources. In those jobs, I performed welding inspection and general coating inspection, (i.e., surface preparation inspection, including surface cleanliness and profile inspection, coating thickness inspection and holiday testing).

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

3.   The discipline of corrosion engineering can be divided into two separate and distinct branches: cathodic protection and coatings. Cathodic protection relates to the practice of applying an electrical current to metal in order to prevent oxidation from occurring on the metal. Coatings application relates to the practice of applying coatings to metal in order to protect the metal from corrosive elements in the environment. While both cathodic protection and coating application have the same ultimate goal, and are often used in conjunction with one another, there is no real overlap between these two branches of the corrosion engineering discipline. Cathodic protection involves such things as the analysis of the level of electrical current required to protect a metal structure, variations in the soil or water electrolyte, types of electrical shielding if present, the type, size, amount, placement and location of sacrificial or impressed current anodes and if impressed current is needed, the type and size of an electrical power source must be analyzed. Coatings on the other hand, involves the analysis of the appropriate coating to be utilized depending on such factors as the type and nature of the environment in which the subject structure exists, the type and nature of corrosive elements to which the metal structure will be exposed, the appropriate coating to be applied given the nature of the environment and the corrosive elements present in that environment, and the level of quality of the coating application in order to meet the owner's requirements for the particular application.

4.   In 2001, Coffman was hired by the engineering firm of Tryck Nyman and Hayes ("TNH") in connection with planned renovations to the United States Coast Guard ("USCG") cargo wharf in Kodiak, Alaska. Those renovations included the removal of the existing coatings and application of new coatings on the steel support structure under the cargo wharf. Coffman contracted with TNH to prepare the coating specification and to perform quality assurance work. In connection with the coatings, the USCG required that the specification be written so as to provide corrosion protection that would, in conjunction with cathodic protection and a coating system, provide the

**Declaration of Jerry Hardenbergh in Support of Coffman's Motions for Summary Judgment**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. A03-0199 CV (RRB))   Page 4 of 9

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

wharf's structure an additional 25 years of useful life. This requirement had a substantial effect on the specification for the coating application. This is especially true given the marine environment in which the cargo wharf is situated. The vast majority of the wharf is located over salt water. Additionally, certain elevations of the steel members are in the tidal zone, meaning that they are subject to immersion in salt water twice daily as a result of the tide. Other parts of the steel members are subject to inundation by the salt water as a result of waves and wind.

5.  Because of the extremely harsh conditions of the environment in which the cargo wharf is located, a very durable industrial coating was required. The coating ultimately selected was manufactured by Specialty Polymers Coatings USA, Inc. ("SPC"). The selected product was known as a 100% solids "plural component" coating, which means that the two separate components that make up the coating, which was applied by the means of a specialized pump, are actually drawn into the pump from separate containers and mixed in the supply hose just prior to reaching the nozzle in the process of application. Given these conditions and the USCG's 25-year requirement, it was also important that the number of "holidays" be minimized. A "holiday" is a defect in the coating, and can be in the form of a pinhole in the coating or a situation in which the coating is not applied in the proper thickness. It is easy to envision the consequences of holidays in an environment such as that in which this cargo wharf exists: constant immersion and/or inundation by salt water would result in extensive corrosion, which would damage not only the coatings but also the underlying steel members. The Coffman specification required that the completed coatings be tested for holidays using a high voltage holiday detector which was to be set at a voltage level of 100 volts per mil of <u>actual thickness</u> of the coating. During Phase II of the project, however, that standard was relaxed: all high voltage holiday testing was performed at 4000 volts, which is equal to 100 volts per mil at the <u>specified minimum thickness</u> to which the coatings were to be applied (40 mils). Imperial, however, was applying coatings at an average thickness of approximately 60 mils. Based on the 100

**Declaration of Jerry Hardenbergh in Support of Coffman's Motions for Summary Judgment**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. A03-0199 CV (RRB))    Page 5 of 9

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

volt per mil criteria, the testing voltage could have been set at 6000 volts. This would most likely have resulted in additional holidays being identified.

6. The coating application for the cargo wharf was separated into two phases. Brechan Enterprises, Inc. ("Brechan") was the general contractor on both Phase I and Phase II. On Phase I, the coating application subcontractor was Swalling Construction Company ("Swalling"). Swalling's work was performed during the 2001 construction season. During the coating application work, it became apparent that the welds on the H-pile steel members that were to be coated were in very poor condition. My conclusion in this regard is based on my extensive experience and training as a nationally certified "senior" welding inspector (SCWI). It was ultimately determined by the USCG that the conditions of the welds constituted a differing site condition which required additional, unanticipated work for which Swalling should receive compensation.

7. As a result of the condition of the welds on Phase I, Coffman was asked to provide the USCG with options for completing the coating application under the circumstances without compromising or reducing the 25-year life requirement. Of the three options Coffman provided, the USCG elected to proceed with the process which allowed the contractor to cut off or otherwise remove non-structural members and to utilize caulking or stripe coating on welded areas as an alternative to performing seal welding on those areas. This option constituted a relaxation of the original specification, and was incorporated into the contract documents through Modification No. 5.

8. For Phase II of the project, Brechan entered into a subcontract with Absolute Environmental Services, Inc. ("Absolute") for the coating application. Absolute then subcontracted that work to Imperial Industrial Coatings ("Imperial"). Additionally, Coffman was requested to prepare a revised specification incorporating the changes made in Modification 5. Coffman's revised coating specification was dated November 26, 2002.

**Declaration of Jerry Hardenbergh in Support of Coffman's Motions for Summary Judgment**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. A03-0199 CV (RRB))    Page 6 of 9

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

9.  In April 2003, Coffman entered into a contract with Brechan for the performance of quality assurance ("QA") work for Phase II. In general, the QA work involves reviewing the work of the contractor Quality Control Inspector, performing oversight inspections and/or performing tests as deemed necessary relating to the application of the coatings.

10. As part of the specification, Imperial was required to obtain certification from SPC for the application of its plural component industrial coating. Prior to commencing the coating application, or the surface preparation for that application, Imperial received training from an SPC representative, who certified a number of Imperial employees for the application of its product.

11. Approximately two months into the surface preparation and coating application work, SPC revoked its certification of Imperial. I was informed that the revocation of the certification was the result of Imperial's poor workmanship, complete disregard for quality and refusal to follow SPC's guidelines, recommendations and requirements, including but not limited to adding thinner to the SPC material directly violating the manufacturer's recommendations and requirements. After Imperial left the job, Absolute was required to finish the surface preparation and coating application work, and to repair most of the work that had been previously performed by Imperial.

12. During Phase II of the project, I never received any complaints from anyone, including employees and representatives of Imperial and Absolute, regarding the condition of the welds on Phase II. In fact, I never even heard about any complaints ever being made about the condition of the welds. This did not surprise me, since the condition of the welds on the Phase II areas of the wharf were vastly better than the conditions on Phase I. As noted above, I have extensive experience and training in observing and inspecting weldments. Furthermore, I was under the wharf virtually every day I was on this job during both Phase I and Phase II. As part of the surface preparation sequence, I observed very closely the weld conditions on both Phase I and on Phase II. Based on my observation and my extensive experience regarding welds and welding

**Declaration of Jerry Hardenbergh in Support of Coffman's Motions for Summary Judgment**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. A03-0199 CV (RRB))   Page 7 of 9

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

inspection, it was obvious that the condition of the welds for the Phase II of the portion were greatly improved over the conditions in Phase I. Consequently, it did not surprise me that no complaints were made by anyone, including Absolute and Imperial, regarding the weld conditions on Phase II, and no claim was ever made during the job that additional work was required to repair or replace defective or omitted welds in order to achieve the holiday free finish in accordance with the standard set in the specification. Imperial's project manager, Tom Puett, does have the knowledge and experience to know what a defective weld looks like and how a defective weld would adversely affect the integrity of the coating. Despite this knowledge, Mr. Puett never complained to me about weld conditions.

13. It is my understanding that Absolute now claims that Coffman should have included in the revised specification a description of the condition of the welds found on Phase I of the project. Ignoring for the moment the fact that we discussed the Phase I conditions with Absolute and Imperial personnel at the February 2003 pre-construction meeting at Coffman's offices, the fact is that the weld conditions that were found on Phase I did not exist on Phase II.

14. I am unaware of any other person who was under the wharf to observe weld conditions on both phases of the project. Although I was under the dock on an almost daily basis during Phase I, I never saw any employees or representatives of Absolute or Imperial down there during Phase I.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED at Anchorage, Alaska this 4th day of August, 2006.

By /s/ Jerry R. Hardenbergh
Jerry Hardenbergh

**Declaration of Jerry Hardenbergh in Support of Coffman's Motions for Summary Judgment**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. A03-0199 CV (RRB))   Page 8 of 9

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

I certify that on August 4, 2006, a copy
of the foregoing was served by mail on:

{Click F11}

_____

011680.0076/1315722.1

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Declaration of Jerry Hardenbergh in Support of Coffman's Motions for Summary Judgment**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. A03-0199 CV (RRB))      Page 9 of 9