8/2/04

it To Cloo? 7/1/04



1   ERIC J. BROWN, ESQ.
    JERMAIN DUNNAGAN & OWENS, P.C.
2   3000 A. Street, Suite 300
    Anchorage, Alaska 99503-4097
3   Telephone: (907) 563-8844
    Facsimile: (907) 563-7322
4
    PATRICK J. DUFFY, III, ESQ.
5   WILLIAM R. BAERG, ESQ.
    MONTELEONE & McCRORY, LLP
6   725 S. Figueroa Street, Suite 3200
    Los Angeles, California 90017-5446
7   Telephone: (213) 612-9900
    Facsimile: (213) 612-9930
8
    Attorneys for Defendant and
9   Cross-Complainant EMERCO, INC.

10          IN THE UNITED STATES DISTRICT COURT

11             FOR THE DISTRICT OF ALASKA

12  ABSOLUTE ENVIRONMENTAL SERVICES,     )
    INC., an Alaskan Corporation,        )
13                                        )
    Plaintiff,                           )
14                                        )
    v.                                    )
15                                        )
    FORREST J. McKINLEY and "JANE DOE"   )
16  McKINLEY, and the marital community  )
    property thereof d/b/a/ "Imperial    )
17  Industrial Coatings" and EMERCO,     )
    INC., a California Corporation d/b/a/ )
18  Imperial Industrial Coatings,        )
                                          )
19  Defendants.                          )     WRITTEN RESPONSE OF
                                          )     DEFENDANT EMERCO, INC.
20  EMERCO, INC., a California Corporation )    D/B/A IMPERIAL INDUSTRIAL
    d/b/a Imperial Industrial Coatings, and the )  COATINGS TO PLAINTIFF'S
21  United States for the Use and Benefit of )   FIRST SET OF
    EMERCO, Inc.,                        )     INTERROGATORIES TO
22                                        )     DEFENDANT EMERCO, INC.
    Counter-Claimant/Third Party Claimant, )    D/B/A IMPERIAL INDUSTRIAL
23                                        )     COATINGS
    v.                                    )
24                                        )
    ABSOLUTE ENVIRONMENTAL SERVICES,     )
25  INC., an Alaskan Corporation, et al., )    CASE NO. A-03-0199
                                          )     Civil (RRB)
26  Cross-Defendants/Third Party Defendants. )

27                                              Ex. ___1___ Date 11-1-04
                                                Witness Pull
28                                              S. WARNICK  907-258-7100

EXHIBIT G
PAGE 1 OF 20

1 PROPOUNDING PARTY:      ABSOLUTE ENVIRONMENTAL SERVICES, INC.

2 RESPONDING PARTY   :     EMERCO, INC., dba IMPERIAL INDUSTRIAL

3                                          COATINGS

4 SET NUMBER              :     ONE

5

6 **INTERROGATORY NO. 1**

7 Identify each entitlement theory you are relying upon as a basis for your

8 damage claim(s) in this action (e.g., non-payment; changes in the work;

9 differing site conditions; interference; delay; conversion; goods bought and

10 sold; misrepresentation; etc.)

11 **ANSWER:**

12 Responding party, defendant Emerco, Inc., dba Imperial Industrial Coatings

13 ("IIC"), relies on theories of (a) Differing Site Condition/Misrepresentation; (b)

14 Non-Payment; (c) Changes in the Work/Extra Work; (d) Conversion/Goods

15 Sold and Delivered; (e) Lost Profits; and (f) Interference/Delay.

16 **INTERROGATORY NO. 2**

17 For each entitlement theory identified in response to the proceeding

18 interrogatory, provide the following information:

19      (a)    The material events upon which the claim is based;

20      (b)    The dates of the identified events;

21      (c)    Each person with knowledge of the material events;

22      (d)    Each document pertaining to the event;

23      (e)    The portion of your total damages (in dollars) attributable to this

24 claim item;

25      (f)    The identity of the individual(s) who calculated this aspect of

26 your damages; and

27      (g)    The method used to quantify the damages.

28

EXHIBIT     6
PAGE   2   OF  20

1  __ANSWER:__

2  **Changes in the Work/Extra Work**

3  _Failure of Absolute Environmental Services ("AES") to Remove CP (Spec._

4  _Sections 1.7 to 1.7.6._

5      (a)    IIC's subcontract and attachments show its scope of work as

6  being piles (bents) 13,14, and 15 of 2A and 17 through 33 of 2B. IIC's

7  scope letter dated September 16, 2002, attachment II, set forth the

8  following exclusions from its work: welding, structural repairs, removal of

9  termite grounds, removal of CP circuit headers, removal of rectifier cable

10  bonds, and items 1.7 through 1.7.6 of the specifications.

11      It transpired that Absolute Environmental Services neglected to remove

12  the CP as specified. ICC was scheduled to start productive work on 4-2-03.

13  At the site meeting with Brechan Enterprises ("Brechan"), AES, the United

14  States Coast Guard ("USCG"), Local Electric ("Local"), Coffman Engineering

15  ("Coffman") and IIC, it was learned that AES had failed to remove the CP

16  excluded from IIC's contract. Although this issues was discussed at the pre-

17  construction meeting, it was not reflected in any meeting minutes but is

18  noted in Jerry Hardenbergh's dailies. At the site meeting, Chris Lynch, Todd

19  Elmore, Jason Peterson, Tom Puett, George Kontra, Charlie Jerling, Matt

20  Holmstrom, Jim Houck, David Olson, Jason Peterson, Paul Agostine, and

21  Jerry Hardenbergh went under the Wharf at bents 13 to 15 and Mr. Puett

22  directed all the parties to the CP and advised them that they were supposed

23  to have been removed. AES thereafter ordered IIC to proceed with blasting

24  with CP in place even though it was excluded from the IIC contract.

25      (b)    April 2, 2003 through August 5, 2003.

26      (c)    Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George

27  Kontra, Charlie Jerling, Matt Holmstrom, Jim Houck, David Olson, Jason

28

EXHIBIT 6

PAGE 3 OF 20

1   Peterson, Paul Agostine Jerry Hardenbergh.

2       (d)     IIC's contract and attachments (IIC 000001-000009); the pre-

3   construction meeting agenda dated April 2, 2003.

4       (e)     $7,476.32.

5       (f)     Tom Puett.

6       (g)     Labor costs for IIC to perform the work, calculated as follows:

7   11 days, 4 hours a day, 3 men = 32 regular hours, 12 overtime hours.

8   Jason 32 hrs x $32.57 = $1,042.24

9        12 ot   x  $44.25 = $ 531.00

10  Paul  32 hrs x $43.91 = $1,405.12

11       12 ot x   $61.35 =  $ 736.20

12  David  32 hrs x $35.56 = $1,137.92

13       12 ot   x  $48.82 = $584.84

14  Total $5,437.32 + 25% overhead of $1,359.33 + 10% profit of $679.67

15  = $7,476.32.

16  *Failure of AES to Removal Non-Structural Steel (Spec section 1.7 to 1.7.6).*

17      (a)     IIC's subcontract and attachments show its scope of work as

18  being piles (bents) 13,14, and15 of 2A and 17 through 33 of 2B. IIC's

19  scope letter dated September 16, 2002, attachment II set forth the following

20  exclusions from its work: welding, structural repairs, removal of termite

21  grounds, removal of CP circuit headers, removal of rectifier cable bonds, and

22  items 1.7 through 1.7.6 of the specifications.

23      It transpired that Absolute Environmental Services neglected to remove

24  the non-structural steel (26 removed).  ICC was scheduled to start

25  productive work on 4-2-03. At the site meeting with Brechan Enterprises

26  ("Brechan"), AES, the United States Coast Guard ("USCG"), Local Electric

27  ("Local"), Coffman Engineering ("Coffman") and IIC, it was learned that AES

28

EXHIBIT  C
PAGE  4  OF  20

1  had failed to remove the non-structural steel excluded from IIC's contract.

2  Although this was discussed at the pre-construction meeting, it was not

3  reflected in any meeting minutes.  At this meeting, Tom Puett and Matt

4  Holstrom as well as the other parties listed in (c) went under bent 13 to 15

5  and Mr. Puett directed Mr. Holstrom to the non-structural steel and advised

6  him that it was supposed to be removed.  Thereafter, AES ordered IIC to

7  remove the non-structural steel or coat over them, even though it was not in

8  the IIC subcontract.

9       (b)    April 2, 2003 through August 5, 2003.

10      (c)    Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George

11  Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry Hardenbergh.

12      (d)    IIC's contract and attachments (IIC 000001 to 000009); the pre-

13  construction meeting agenda dated April 2, 2003.

14      (e)    $47,305.69.

15      (f)    Tom Puett.

16      (g)    Labor and material costs for IIC to perform this work, calculated

17  as follows:  Labor:  1 hour per pile x 3 men x 118 pile x Painter rate $43.91

18  = $16,544.14 plus 25% overhead $3,886.03 and 10% profit of $1,943.00

19  totals $21,373.19.  Extra paint materials: 8 Liters SPC 1864 per pile x 118

20  piles = 944 liter $16,400 kit x 1.15 kits, totals $18,860.00.  25%

21  Overhead = $4,715.00.  10% Profit = $2,357.50.  The total of all these

22  figures is $47,305.69 for bents 13 - 15 A-Q;  16 - 20  A-H; and  21 - 23  I-

23  Q .

24  *Failure of AES to Stripe Coat Welds and Caulking*

25      (a)    IIC's contract and attachments show its scope of work as being

26  piles (bents) 13,14, and15 of 2A and 17 through 33 of 2B.  IIC's scope

27  letter dated September 16, 2002, attachment II set forth the following

28

RESPONSE OF DEFENDANT EMERCO, INC. DBA IMPERIAL INDUSTRIAL COATINGS<br>
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES<br>
Page 5

EXHIBIT ___G___

PAGE _5_  OF _20_

1   exclusions from its work: welding, structural repairs, removal of termite

2   grounds, removal of CP circuit headers, removal of rectifier cable bonds, and

3   items 1.7 through 1.7.6.

4        It transpired that Absolute Environmental Services neglected to stripe

5   coat and caulk the welds.  ICC was scheduled to start productive work on 4-

6   2-03. At the site meeting with Brechan Enterprises ("Brechan"), AES, the

7   United States Coast Guard ("USCG"), Local Electric ("Local"), Coffman

8   Engineering ("Coffman") and IIC, it was learned that AES would not stripe

9   coat and caulk the welds, even though this item was excluded from IIC's

10  subcontract.  Although this was discussed after the pre-construction

11  meeting, it was not reflected in any meeting minutes.  At this meeting, Tom

12  Puett and Jason Peterson went under the wharf at bent 13 to 15 and Mr.

13  Puett notified Mr. Peterson that the welds had to be stripe coated and

14  caulked and advised AES that it was supposed to be performed prior to

15  coating.  Thereafter, AES ordered IIC to stripe coat and caulk the welds,

16  even though it was not part of IIC's subcontract.

17       (b)   April 2, 30, May 2, 8, 11, June 6, 12, 17, 18, 21, 22, 24, and

18  July 15, 2003.

19       (c)   Jason Peterson, Tom Puett; work performed by Josh Bellville

20  ("Josh"), Mario Dix ("Mario"), Jason Tenderella ("Jason"), David Rohner

21  ("David"), Paul Pederson ("Paul"), Steve McKinley ("Steve").

22       (d)   IIC's contract and attachments (IIC 000001 to 000009); the pre-

23  construction meeting agenda dated April 2, 2003; IIC 001397, 001342,

24  001404, 001407, 001419, 001434, 001416, 001452, 001536, 001554,

25  001556, 001527.

26       (e)   $29,898.64.

27       (f)   Tom Puett.

28

EXHIBIT ___G___

PAGE __6__ OF __20__

1    (g)    Labor costs to stripe coat and caulk the welds at bents 13-15 A-

2    Q, 16-20 A-H, and 21-23 I-Q, calculated as follows:

3    7-15-03

4    Josh    8 hrs x $54.47  =  $435.76

5    Dave    8 hrs x $35.56  =  $284.48

6    Bob     8 hrs x $35.56  =  $284.48

7    Mario   8 hrs x $31.20  =  $249.60

8                               $1,254.32

9    6-24-03

10   Josh    8 hrs x $54.47 = $435.76

11           2 ot  x $80.48 = $160.96

12   Paul    8 hrs x $43.91 = $351.28

13           2 ot  x $61.35 = $122.70

14   Dave    8 hrs x $35.56 = $284.48

15           2 ot  x $48.82 = $ 97.70

16   Jason   8 hrs x $32.57 = $260.56

17           2 ot  x $44.25 = $ 88.50

18                            $1,801.88

19

20   6-22-03

21   Josh    12 ot x $80.48 = $965.76

22   Paul    12 ot x $61.35 = $736.20

23   Jason   12 ot x $44.25 = $531.00

24                            $2,232.96

25   6-21-03

26   Josh    10 ot x $80.48 = $804.48

27   Paul    10 ot x $61.35 = $613.50

28

RESPONSE OF DEFENDANT EMERCO, INC. DBA IMPERIAL INDUSTRIAL COATINGS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES
Page 7

EXHIBIT 6
PAGE 7 OF 20

1    Dave   10 ot x $48.82 = $488.20

2    Jason  10 ot x $44.25 = $442.50

3                          $2,348.68

4

5    6-17-03

6    Josh  8 hrs x  $54.47 = $435.76

7          2 ot   x  $80.48 = $160.96

8    Paul  8 hrs x  $43.91 = $351.28

9          2 ot   x  $61.35 = $122.70

10   David 8 hrs x $35.56 = $284.48

11         2 ot   x $48.82 = $ 97.64

12   Jason 8 hrs x $32.57 = $260.56

13         2 ot   x $44.25 = $ 88.50

14                          $1,801.88

15

16   6-12-03

17   Josh   8hrs x $54.47 = $435.76

18          8 ot  x $80.48 = $643.84

19   Paul   8 hrs x $43.91 = $351.28

20          8 ot  x $61.35 = $490.80

21   Jason 8 hrs x $32.57 = $260.56

22         8 ot   x $44.25 = $354.00

23                          $2,536.24

24

25   6-18-03

26   Josh   10 ot x $80.48 = $804.80

27   Paul   10 ot x $61.35 = $613.50

28

RESPONSE OF DEFENDANT EMERCO, INC. DBA IMPERIAL INDUSTRIAL COATINGS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES
Page 8

EXHIBIT  G
PAGE  8  OF 20

1     Jason10 ot x $44.25 = $442.50

2               $1,860.80

3

4     6-6-03

5     Paul 8 hrs x $43.91 = $351.28

6        4 ot x $61.35 = $245.40

7     Jason 8 hrs x $32.57 = $260.56

8        4 ot   x $44.25 = $177.00

9               $1,034.24

10

11    5-8-03

12    Josh   8 hrs x $54.47 = $435.76

13         2 ot x $80.48 = $168.96

14    Paul   8 hrs x $43.91 = $351.28

15         2 ot   x $61.35 = $122.70

16    Jason 8 hrs x $32.57 = $260.56

17         2 ot  x $44.25 = $88.50

18               $1,427.76

19

20    5-2-03

21    Josh   8 hrs x $54.47 = $435.76

22         3 ot  x $80.48 = $241.44

23    Paul   8 hrs x $43.91 = $351.28

24         3 ot   x $61.35 = $184.05

25    Jason 8 hrs x $32.57 = $260.56

26        3 ot x $44.25 = $132.75

27               $1,605.84

28

EXHIBIT G
PAGE 9 OF 20

1      4-30-03

2      Josh    8 hrs x  $54.47 = $435.76

3              2 ot   x  $80.48 = $168.96

4      Paul    8 hrs  x $43.91 = $351.28

5              2 ot   x  $61.35 = $122.70

6      Jason   8 hrs  x  $32.57 = $260.56

7              2 ot   x $44.25 =   $88.50

8                              $1,427.76

9

10     5-11-03 (Caulking)

11     Josh   10 ot x $80.48 = $804.80

12     Steve 10 ot x $50.56 = $505.60

13     Paul   10 ot x $61.35 = $613.50

14     Dave   10 ot x $48.82 = $488.20

15                            $2,412.10

16     These figures total $21,744.46, plus 25% overhead of $ 5,436.12,

17     and 10% profit of $2,718.06, for a total of $29,898.64.

18     *Failure to Remove Conduit*

19          (a)    IIC's contract and attachments show its scope of work with AES

20     was for work at piles (bents) 13, 14, 15 of 2A and 17 through 33 of 2B.

21     IIC's scope letter dated September 16, 2002, attachment II, set forth the

22     following exclusions from its work: welding, structural repairs, removal of

23     termite grounds, removal of CP circuit headers, removal of rectifier cable

24     bonds, and items 1.7 through 1.7.6 of the specifications.  Nevertheless, AES

25     directed IIC to remove conduits, including conduit at bent 21-23 Pile I - Q,

26     which were not part of IIC's subcontract.  IIC performed the work, submitted

27     invoices, but was not paid.

28

EXHIBIT _____
PAGE _10_ OF _20_

1      (b)     August 2003.

2      (c)     Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George

3 Kontra, Matt Holmstrom, Jim Houck, David Olson, Jason Peterson, Jerry

4 Hardenbergh.

5      (d)     IIC 000114-000115.

6      (e)     $850.00.

7      (f)     Tom Puett.

8      (g)     Invoice 174, dated 8/1/03 for $850.00.

9 *Ordering IIC to Perform Non-IIC Subcontract Work at Bent 12-13*

10     (a)     IIC's contract and attachments show its scope of work with AES

11 was for work at piles (bents) 13, 14, 15 of 2A and 17 through 33 of 2B,

12 and excluded work for items 1.7 through 1.7.6 of the specifications.  The

13 subcontract between IIC and AES did not include bent 12-13.  Nevertheless,

14 on the first day of the job, April 2, 2003, Jason Peterson ordered IIC to

15 perform work at bent 12-13.

16     (b)     April 2, 2003 through August 5, 2003.

17     (c)     Tom Puett, Jason Peterson.

18     (d)     IIC 000001 to 000009; 000096 to 111100; 000714 to

19 000719; 000546, 000596 to 000617.

20     (e)     $29,202.64.

21     (f)     Tom Puett.

22     (g)     This is based on labor, equipment and material costs all as set

23 forth in the daily logs and Q.C. reports and in IIC Invoice 176, dated 8/5/03.

24 **Differing Site Condition/Misrepresentation/Extra Work**

25 *Undisclosed Gray Paint*

26     (a)     The specifications for the Cargo Wharf Project did not indicate

27 the existence of gray paint beneath the existing coal tar epoxy, and neither

28

EXHIBIT G
PAGE 11 OF 20

1   AES, Coffman, Brechan or the USCG disclosed to IIC the existence of the

2   gray paint.  The existence of the gray paint could not have been known to

3   IIC from a site inspection or at any time prior to the removal of the single

4   coating of coal tar epoxy that had been represented to IIC by AES/Coffman

5   as the only coating IIC would be obligated to remove.  On the first day of

6   water blasting, IIC discovered this differing/changed condition shortly after

7   the start of water blasting. Representatives from AES and Brechan did not

8   come to inspect the condition until on or about May 28, 2003.  AES ordered

9   IIC to remove the gray paint, which IIC did.  IIC submitted an invoice to AES

10  for this work, but it has not been paid.

11          (b)    April 2003 through August 5, 2003.

12          (c)    Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, Forrest

13  McKinley, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry

14  Hardenbergh, Joshua Belville, Paul Pederson, David Rohmer, Jason

15  Tenderella, and Lt. Andrew Brown

16          (d)    IIC 000096 through 000115, 000714 through 000716,

17  000717, 000718, 000719, 000546, 000600, 000596, 000597, 000598,

18  000600 through 000617, 001269 through 001592.

19          (e)    $92,029.21.

20          (f)    Tom Puett.

21          (g)    Days of actual work noted on Q.C. report and Daily Logs, and

22  invoice dated August 5, 2003 (IIC 000101 through 000113).

23  **Lost Profits**

24  *Lost Profits Due on Cargo Wharf Project*

25          (a)    On August 7, 2003, AES escorted IIC off the project site, which

26  prevented IIC from completing the Cargo Wharf Project.  As a result, IIC was

27  not able to realize its profit from the work that remained to be complete.

28

1    (b)   April 2, 2003 through August 7, 2003.

2    (c)   Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, Forrest

3    McKinley, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry

4    Hardenbergh.

5    (d)   IIC 000096 through 000690, 003626-003628.

6    (e)   $130,952.06.

7    (f)   Tom Puett.

8    (g)   Actual job costs for original contract work was $264,384.79.

9    This is based on the following calculation:

10   Total Job Costs    $454,859.51

11   Less extra work   $      850.00    Conduit removal

12                     $ 92,029.21    Gray coating

13                     $ 29,202.64    Bent 12-13

14                     $   7,476.32    non-removal of CP

15                     $ 47,305.69    non-removal of non structural

16                     $ 29,898.64    Stripe coat/caulking

17                     $248,097.01    Total original job cost for contract work

18   Although the existing coating removal was at 52% complete, the completed

19   coating removal and coating application was 47% complete. Thus, 47% of

20   the total contact price of $772,123.00 is $362,897.81.   As noted above,

21   IIC's total original job costs were $248,097.01. Deducting those original job

22   costs from the contract amount due for completing 47% of the work

23   ($362,897.81), results in $114,800.80 for profit on that 47% of the work

24   completed. Thus, IIC is entitled to 32% profit on the remaining contract

25   balance. The remaining contract balance was $409,225.19. Thus, 32% of

26   that figure is $130,952.06 in lost profits for the Cargo Wharf Project.

27

28

EXHIBIT  G
PAGE 13 OF 20

1  _Lost Profits Due for Coating Tanks N 12 and N 60_

2  (a)    AES requested IIC to re-write portions of the specifications of

3  Tanks N 12 and N 60, which are used for jet fuel storage, in order to

4  facilitate the use of coating in a humid environment. IIC ultimately selected

5  Wasser material, which was going to be supplied by Polar Supply. IIC was

6  also requested to give AES a price to do the work either in the Fall of 2003

7  or the Summer 2004. IIC's price of $374,226.00 was given approval in

8  July 2003 by Jason Peterson, who had obtained approval from Matt

9  Holstrom of Brechan. IIC is informed and believes AES made use of IIC's

10  specifications but did not permit IIC to perform the work, which IIC believes

11  was completed in 2004 by others using the equipment of IIC which was

12  taken by AES.

13  (b)    January through February 2003.

14  (c)    Tom Puett, David Olson, Matt Holstrom, Jason Peterson.

15  (d)    IIC 001024 to 001268.

16  (e)    $119,752.32.

17  (f)    Tom Puett.

18  (g)    The damages are calculated based on the profit of 32% actually

19  obtained by IIC for the Cargo Wharf project. $374,226.00 x 32% =

20  $119,752.32.

21  **Non-Payment**

22  _AES Failed to Pay IIC the Full Amount Due for Completed Original Contract_

23  _Work_

24  (a)    IIC performed 47% of the total original contract work, but has

25  not been paid the full 47% of the total contract price since AES terminated

26  the contract and escorted IIC off the project site.

27  (b)    April 2, 2003 through August 7, 2003.

28

RESPONSE OF DEFENDANT EMERCO, INC. DBA IMPERIAL INDUSTRIAL COATINGS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES
Page 14

EXHIBIT G
PAGE 14 OF 20

1    (c)    Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, Forrest
2  McKinley, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry
3  Hardenbergh.

4    (d)    IIC 000074 to 000094; 000683 to 000690.

5    (e)    $116,309.68.

6    (f)    Tom Puett.

7    (g)    The total original contract work completed was 47%, or
8  $362,897.81.  AES only paid IIC $246,588.13 for this work.  This leaves a
9  balance due of $116,309.68 for original contract work.

10  *AES Failed to Pay IIC the Full Amount Due for Mobilization.*

11    (a)    IIC's agreement with Matt Holstrom of Brechan and Todd Elmore
12  of AES for mobilization was that the material and equipment IIC delivered to
13  the job site would be paid from invoices at time of delivery at the Cargo
14  Wharf.  AES, however, unilaterally deducted 20% of the amount due for
15  "demobilization."  In addition, IIC's mobilization monies were further reduced
16  when Brechan directly paid Polar Supply $50,815 for materials without IIC's
17  authorization.

18    (b)    April 2003.

19    (c)    Tom Puett, David Olson, Matt Holstrom, Todd Elmore.

20    (d)    IIC 000074 - 78 (Invoice 162).

21    (e)    $91,763.88.

22    (f)    Tom Puett.

23    (g)    IIC's invoice No. 162 was reduced as follows:  $ 204,743.94
24  was the agreed amount due for mobilization, but AES deducted $40,948.15
25  for demobilization, and $50,815 was deducted to pay Polar Supply, leaving
26  $91,763.88.

27

28

EXHIBIT    G
PAGE 15 OF 20

1  *AES Makes Improper Deductions From IIC's Billings*

2       (a)    IIC's invoice No. 164 was reduced by $12,000.00 for UHP

3  Waterblaster that IIC had to share with AES causing additional set up time

4  and delay. IIC was willing to pay 50% of $12,000.00 rental rate under the

5  joint use forced upon IIC by AES. IIC's invoice No.168 was reduced by

6  $15,879.63 for "inspection" by AES with no valid basis. IIC was

7  backcharged for anode and CP damage in the amount of $15,000.00 that

8  was to be removed by others (because it was excluded from IIC/AES

9  contract).

10      (b)    June 2003.

11      (c)    Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George

12  Kontra, Matt Holmstrom, Jim Houck, David Olson, Jason Peterson, Jerry

13  Hardenbergh.

14      (d)    IIC 000079 to 000092.

15      (e)    $42,879.63.

16      (f)    Tom Puett

17      (g)    Monies due IIC for invoices 164, 168 are as follows:

18             Invoice 164   UHP Waterblaster   $ 6,000.00

19             Invoice 168   Inspection         $ 15,879.63

20             Invoice 168   Anode/CP           $ 15,000.00

21             Invoice 168   UHP Waterblaster   $ 6,000.00

22             Total                            $42,879.63

23  **Conversion/Good Sold and Delivered**

24      (a)    On August 7, 2003, AES ordered IIC off the Cargo Wharf Project

25  job site and seized and exercised control over certain goods and property

26  over the property of IIC. Immediately thereafter, IIC demanded that AES

27  return the property and goods, which were itemized in a letter dated August

28

EXHIBIT  G
PAGE 16 OF 20

1    7, 2003 to David Olson. IIC notified AES that unless the property were

2    returned by 5:00 p.m. on August 8, 2003, that the property would be

3    deemed converted and AES would thereby be agreeing to purchase the

4    property at the prices listed in the August 7, 2003 letter. AES did not return

5    the goods and property.

6          (b)    August 6 to 8, 2003.

7          (c)    Tom Puett, Josh Belville, Tom Puett, Forrest McKinley, Dave

8    Olson, Matt Holstrom, Chris Lynch, Jerry Hardenbergh, Jason Peterson,

9    Todd Elmore, Dan Yell, Keith McCloud.

10          (d)    IIC 000001 - 002482; IIC 000116 to 000225; IIC 002666 to

11    002668, 002672 to 002678.

12          (e)    $518,320.00, or alternatively the sum of $771,626.91.

13          (f)    Tom Puett.

14          (g)    The total amount of Purchase Orders for the property in question

15    is set forth in IIC-000116 to IIC-000225 total $561,183.85, plus overhead

16    of 25% is $140,295.81, equals $701,479.06, plus profit of 10% of

17    $70,147.91, totals $771,626.91. IIC is informed and believes that some of

18    the material were used to complete the project by AES. This is the cost that

19    IIC anticipates AES would have incurred had AES rented or purchased said

20    goods on Kodiak Island. Alternatively, the cost of $518,320 is based on

21    estimates furnished by Tom Puett at the time of the conversion and set forth

22    in the August 7, 2003 letter.

23    Interference/Delays

24          (a)    Throughout the project, the inspector Jerry Hardenbergh of

25    Coffman Engineers, disrupted and interfered with IIC's performance of its

26    subcontract work by over-inspecting IIC's work, imposing requirements on

27    IIC's work that were not required by law of contract, including but not

28

EXHIBIT    G
PAGE   17   OF   20

1  limited to the improper employment of SSPC PA 2 testing standards, the

2  High Voltage Holiday Testing, Adhesion Testing; failing to provide

3  certificates of calibration of his testing equipment prior to administering tests

4  on IIC's work; requiring additional grinding, and failing to show up at

5  scheduled inspections.  Moreover, AES was supposed to help IIC move

6  scaffolds, set up containment, and operate equipment for all phases of the

7  work, but after bents 13-15, AES failed to supply adequate personnel.

8      (b)    April 2, 2003 through August 5, 2003.

9      (c)    Jerry Hardenbergh, Tom Puett, Dave Olson, Jason Peterson.

10     (d)    IIC.001269 - 001592; 002361-002482.

11     (e)    Unknown at present; to be determined.

12     (f)    Unknown at present; to be determined.

13     (g)    Unknown at this time; analysis to be performed.

14

15  DATED: August 2, 2004              MONTELEONE & McCRORY LLP

16                                     Attorneys for Emerco, Inc.

17

18                              By  _____

19                                     WILLIAM R. BAERG, ESQ.
                                       CSBN 167399
20                                     WSBN 23052

21

22

23

24

25

26

27

28

EXHIBIT  G

PAGE 18 OF 20

Aug-02-04 09:34A Montone & McCrory     213 F 9930     P.01

# V E R I F I C A T I O N

STATE OF CALIFORNIA  )
            )ss.
COUNTY OF RIVERSIDE  )

   I have read the foregoing **WRITTEN RESPONSE OF EMERCO**,
**INC. D/B/A IMPERIAL INDUSTRIAL COATINGS TO PLAINTIFF'S FIRST SET**
**OF INTERROGATORIES TO DEFENDANT EMERCO, INC. D/B/A IMPERIAL**
**INDUSTRIAL COATINGS** and know its contents,

   I am a Project Manager of Emerco, Inc., a party to this
action, and am authorized to make this verification for and on
its behalf, and I make this verification for that reason.

   The matters stated in the foregoing document are true
of my own knowledge except as to those matters which are stated
on information and belief, and as to those matters I believe them
to be true.

   Executed on ___8-2___, 2004, at Riverside,
California.  I declare under penalty of perjury under the laws of
the United States that the foregoing is true and correct.


    TOM PUETT
    Type/Print Name      Signature _Tom Puett_

1

## SERVICE LIST

2

3    Attorneys for Absolute Environmental Services, Inc.
     Lawrence Pederson
4    Paul J. Nangle & Associates
     Kerry Building, 101 Christensen Drive
5    Anchorage, AK 99501

6
     Richard R. Roland, Esq.
7    Marston Heffernan Foreman
     Anderson Park Building
8    16880 NE 79th Street
     Redmond, WA 98052-4424
9

10
     Attorneys for Coffman Engineers, Inc.
11   James B., Stoetzer
     Brewster H. Jamieson
12   Lane Powell Spears & Lubersky, LLP
     301 W. Northern Lights Blvd., Suite 301
13   Anchorage, AK 99503

14

15   Attorneys for Brechan Enterprises, Inc. and SafeCo Insurance Company
     Michael E. Kreger
16   Perkins Coie, LLP
     1029 West Third Avenue, Suite 300
17   Anchorage, AK 99501

18

19   Attorneys for Specialty Polymer Coating USA, Inc.
     Robert J. Dickson
20   Atkinson Conway & Gagnon
     420 "L" Street, Suite 500
21   Anchorage, AK 99501-1989

22

23   Co-Counsel for Emerco, Inc. and Forrest McKinley
     ERIC J. BROWN, ESQ.
24   JERMAIN DUNNAGAN & OWENS, P.C.
     3000 A. Street, Suite 300
25   Anchorage, Alaska 99503-4097

26

27

28

EXHIBIT ___G___
PAGE _20_ OF _20_