# Absolute v. Emerco

# Deposition of Forrest E. McKinley, Vol. II

# March 9, 2005



Phone: (206)287-9066
Fax: (206)287-9832
Email: info@buellrealtime.com
Internet: www.buellrealtime.com

Exhibit 11

```
 1  Q.    And the copy that you produced to us doesn't
 2  have your signature on it.  Instead, it has a stamp that
 3  says "taxpayer's copy."
 4        Did you sign the original that was submitted to
 5  the IRS?
 6  A.    Yes.
 7  Q.    And below that same stamp on the second page of
 8  Exhibit 4 is the statement "prepared from information
 9  submitted by taxpayer without verification."
10        Do you see that?
11  A.    Yes.
12  Q.    Is your tax preparer's stamp accurate, in that
13  they prepared this return for you based on information
14  you submitted without their verifying it?
15  MR. DUFFY:  I'm going to object to that as a
16  compound question.
17  A.    We gave them the information we had available.
18  Q.    And when you did so, did you attempt to be
19  thorough?
20  A.    Yes.
21  Q.    And this is the return for tax year 2003; is
22  that right?
23  A.    Yes.
24  Q.    It's your contention that following Imperial's
25  termination of the subcontract that Imperial sold
```

```
 1      Absolute some equipment, correct?
 2   A.    False.
 3   Q.    What is improper about that statement?
 4   A.    I don't know how to answer that.
 5   Q.    Why did you say my statement was false?
 6   A.    Nothing was sold to Absolute.
 7   Q.    Do you contend that Absolute stole property
 8   from you?
 9   MR. DUFFY:  I'm going to object to that as
10   calling for a legal conclusion, but you can answer it if
11   you can.
12   A.    Absolute kept the equipment, the property.
13   Q.    In your opinion, was Absolute's keeping that
14   property wrongful?
15   A.    Yes.
16   Q.    Why was it wrongful?
17   A.    It was wrongful.
18   Q.    Why?
19   A.    It was not their property.
20   Q.    Did that ever change?
21   A.    Not to my --
22   MR. DUFFY:  Wait.  I'm going to object to that
23   as calling for a legal conclusion.
24   You can answer if you can.
25   Q.    Go ahead.
```

Page 328

```
 1   A.    What was the question?
 2   Q.    Did that ever change?
 3   A.    No, I don't believe so.
 4   Q.    Do you have any interest in getting the
 5   property back?
 6   A.    In its entirety, in the shape it was in, yes.
 7   Q.    Is that because you believe that it's yours?
 8   A.    I believe it belongs to Emerco.
 9   Q.    What makes you believe it belongs to Emerco?
10   MR. DUFFY:  Objection; calling for a legal
11   conclusion, but you can answer.
12   A.    I believe it belongs to Emerco.
13   Q.    On what facts do you base your belief that the
14   equipment retained by Absolute after your termination of
15   the contract belongs to Emerco?
16   MR. DUFFY:  Objection; calls for a legal
17   conclusion, but you can answer.
18   A.    I just believe that.
19   Q.    Did Emerco buy it?
20   A.    Yes.
21   Q.    Did Emerco pay for it?
22   A.    Yes.
23   Q.    Do you have cancelled checks that reflect the
24   payments that Emerco made for that equipment?
25   A.    Yes.
```

```
1    Q.    Would those checks be written on Emerco's own
2    checking account?
3    MR. DUFFY:  If you know.
4    A.    I'm not sure where they -- I'm not sure.
5    Q.    Is it possible that those checks may have been
6    written by either FJM or Develcon instead of Emerco?
7    A.    I'm not sure.
8    Q.    So does that mean that the possibility exists?
9    MR. DUFFY:  Objection; calls for speculation.
10   Q.    Can you not rule out that possibility?
11   A.    I'm not sure.
12   Q.    If we were to -- well, do you have any invoices
13   or bills of sale from any of the companies that sold that
14   equipment to Emerco?
15   MR. DUFFY:  Objection; compound, assumes facts
16   not in evidence that anybody sold it to Emerco, but you
17   can answer if you can.
18   A.    I'm not sure.
19   Q.    Let me back up, then.  You said Emerco bought
20   the equipment, right?
21   A.    I'm not sure of that statement.  She would have
22   to read it back.
23   Q.    I will restate it for you.
24   Did Emerco buy that equipment itself?
25   A.    I'm not sure.  I would have to go to the
```

Page 330

```
 1    records.
 2    Q.    Did Emerco pay for that equipment itself?
 3    A.    I'm not sure.
 4    Q.    Who acted on behalf of Emerco in purchasing
 5    that equipment?
 6    A.    Myself.
 7    Q.    How did you make the purchases?
 8    A.    We'd have to go to the records.
 9    Q.    Do you recall having visited any vendors of the
10    equipment?
11    A.    No.
12    Q.    Do you recall having telephoned any vendors in
13    the course of purchasing or for the purpose of purchasing
14    that equipment?
15    A.    I'm not sure at this time.
16    Q.    Do you recall having submitted any orders
17    online for that equipment?
18    A.    I'm not sure at this time.
19    Q.    Do you recall having faxed any orders in for
20    that equipment?
21    A.    I'm not sure at this time.
22    Q.    May I conclude then that you don't have any
23    recall at this time of exactly how you made the equipment
24    purchases?
25    A.    Yes.
```

Page 331

```
1   Q.   What records would you look at in order to
2   answer those questions?
3   A.   Various records.
4   Q.   Can you list the ones for me that you can think
5   of?
6   A.   Not at this time.
7   Q.   Is that because you can't think of any at this
8   time?
9   A.   My memory doesn't go that clear that far back.
10  Q.   Do you know whether you received any bill of
11  sale for the equipment you purchased?
12  A.   No, not at this time.
13  Q.   Do you know whether you received any invoice or
14  statement from the vendors from whom you purchased the
15  equipment?
16  A.   Not at this time.
17  Q.   Do you recall when you purchased the equipment?
18  A.   Not at this time.
19  Q.   Do you recall what year you purchased the
20  equipment?
21  A.   No.
22  Q.   Absolute requested that you produce
23  documentation establishing the value of that equipment,
24  and the only thing we received is Imperial Industrial
25  Coatings' purchase orders.
```

Page 332

```
 1   Are you aware of any other documentation that
 2   exists to establish what that equipment was purchased for
 3   or what its value is?
 4   A.    No.
 5   Q.    Who drafted those purchase orders?
 6   A.    I think several people.
 7   Q.    Were you one of them?
 8   A.    Yes.
 9   Q.    Was Mr. Puett one of them?
10   A.    Yes.
11   Q.    Who else?
12   A.    I'm not sure.
13   Q.    Who would you think is on the list of possible
14   candidates?
15   A.    I'm not sure at this time.
16   Q.    Are you confident that it was more than you and
17   Mr. Puett?
18   A.    I'm not sure.
19   Q.    Were those purchase orders drafted as a joint
20   effort?
21   A.    I'm not sure about that.
22   Q.    Do you recall Mr. Puett having drafted any of
23   those purchase orders that you had no participation in?
24   A.    I'm not sure.
25   Q.    Did you draft any purchase orders that Mr.
```

Page 333

```
1    A F F I D A V I T

2

3

4    STATE OF CALIFORNIA            )

5                                   )  ss

6    COUNTY OF SAN BERNARDINO        )

7

8         I have read my within deposition, and the

9    same is true and accurate, save and except for changes

10   and/or corrections, if any, as indicated by me on the

11   "CORRECTIONS" flyleaf page hereof.

12

13

14

15              FORREST J. McKINLEY (VOLUME II)

16

17

18

19         SUBSCRIBED AND SWORN TO before me this

20       day of         , 2005.

21

22

23              NOTARY PUBLIC in and for the

24              State of California,

25              residing at                           .
```

Page 404

# CERTIFICATE

STATE OF WASHINGTON  )
                     ) ss
COUNTY OF KING       )

I, JOLENE C. HANECA, a Certified Shorthand Reporter and Notary Public in and for the State of Washington, do hereby certify that the foregoing transcript of the deposition of _Forrest E. McKinley, vol II_ having been duly sworn, on _March 9_, 2005, is true and accurate to the best of my knowledge, skill and ability.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this ___ day of _August_, 2006.

_Jolene C. Haneca_
JOLENE C. HANECA, RPR, CCR

My commission expires:
March 28, 2010



BUELL
REALTIME REPORTING, LLC
Leaders in Realtime Technology

Phone: 206.287.9066

p 10/10