

Sent To Client 8/6/04

Mailed 8/2/04

RECEIVED

AUG - 5

...TON HEFFERNAN FOREMAN

1  ERIC J. BROWN, ESQ.
   JERMAIN DUNNAGAN & OWENS, P.C.
2  3000 A. Street, Suite 300
   Anchorage, Alaska 99503-4097
3  Telephone: (907) 563-8844
   Facsimile: (907) 563-7322
4
   PATRICK J. DUFFY, III, ESQ.
5  WILLIAM R. BAERG, ESQ.
   MONTELEONE & McCRORY, LLP
6  725 S. Figueroa Street, Suite 3200
   Los Angeles, California 90017-5446
7  Telephone: (213) 612-9900
   Facsimile: (213) 612-9930
8
   Attorneys for Defendant and
9  Cross-Complainant EMERCO, INC.

10                IN THE UNITED STATES DISTRICT COURT

11                    FOR THE DISTRICT OF ALASKA

12  ABSOLUTE ENVIRONMENTAL SERVICES,    )
    INC., an Alaskan Corporation,       )
13                                      )
    Plaintiff,                          )
14                                      )
      v.                                )
15                                      )
    FORREST J. McKINLEY and "JANE DOE"  )
16  McKINLEY, and the marital community )
    property composed thereof d/b/a/ "Imperial )
17  Industrial Coatings" and EMERCO, INC., a  )
    California Corporation d/b/a/ Imperial )
18  Industrial Coatings,                )
                                        )
19  Defendants.                         )   **WRITTEN RESPONSE OF**
    _____)   **DEFENDANT EMERCO, INC.**
20  EMERCO, INC., a California Corporation )  **D/B/A IMPERIAL INDUSTRIAL**
    d/b/a Imperial Industrial Coatings, and the )  **COATINGS TO PLAINTIFF'S**
21  United States for the Use and Benefit of )  **FIRST SET OF**
    EMERCO, Inc.,                       )   **INTERROGATORIES TO**
22                                      )   **DEFENDANT EMERCO, INC.**
    Counter-Claimant/Third Party Claimant, )  **D/B/A IMPERIAL INDUSTRIAL**
23                                      )   **COATINGS**
      v.                                )
24                                      )
    ABSOLUTE ENVIRONMENTAL SERVICES,    )   CASE NO. A-03-0199
25  INC., an Alaskan Corporation, et al., )  Civil (RRB)
                                        )
26  Cross-Defendants/Third Party Defendants. )
                                        )
27  _____)

28

| | | |
|---|---|---|
| PROPOUNDING PARTY: | | ABSOLUTE ENVIRONMENTAL SERVICES, INC. |
| RESPONDING PARTY | : | EMERCO, INC., dba IMPERIAL INDUSTRIAL COATINGS |
| SET NUMBER | : | ONE |

**INTERROGATORY NO. 1**

Identify each entitlement theory you are relying upon as a basis for your damage claim(s) in this action (e.g., non-payment; changes in the work; differing site conditions; interference; delay; conversion; goods bought and sold; misrepresentation; etc.)

**ANSWER:**

Responding party, defendant Emerco, Inc., dba Imperial Industrial Coatings ("IIC"), relies on theories of (a) Differing Site Condition/Misrepresentation; (b) Non-Payment; (c) Changes in the Work/Extra Work; (d) Conversion/Goods Sold and Delivered; (e) Lost Profits; and (f) Interference/Delay.

**INTERROGATORY NO. 2**

For each entitlement theory identified in response to the proceeding interrogatory, provide the following information:

    (a) The material events upon which the claim is based;
    (b) The dates of the identified events;
    (c) Each person with knowledge of the material events;
    (d) Each document pertaining to the event;
    (e) The portion of your total damages (in dollars) attributable to this claim item;
    (f) The identity of the individual(s) who calculated this aspect of your damages; and
    (g) The method used to quantify the damages.

**ANSWER:**

**Changes in the Work/Extra Work**

*Failure of Absolute Environmental Services ("AES") to Remove CP (Spec. Sections 1.7 to 1.7.6.*

(a) IIC's subcontract and attachments show its scope of work as being piles (bents) 13, 14, and 15 of 2A and 17 through 33 of 2B. IIC's scope letter dated September 16, 2002, attachment II, set forth the following exclusions from its work: welding, structural repairs, removal of termite grounds, removal of CP circuit headers, removal of rectifier cable bonds, and items 1.7 through 1.7.6 of the specifications.

It transpired that Absolute Environmental Services neglected to remove the CP as specified. ICC was scheduled to start productive work on 4-2-03. At the site meeting with Brechan Enterprises ("Brechan"), AES, the United States Coast Guard ("USCG"), Local Electric ("Local"), Coffman Engineering ("Coffman") and IIC, it was learned that AES had failed to remove the CP excluded from IIC's contract. Although this issues was discussed at the pre-construction meeting, it was not reflected in any meeting minutes but is noted in Jerry Hardenbergh's dailies. At the site meeting, Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George Kontra, Charlie Jerling, Matt Holmstrom, Jim Houck, David Olson, Jason Peterson, Paul Agostine, and Jerry Hardenbergh went under the Wharf at bents 13 to 15 and Mr. Puett directed all the parties to the CP and advised them that they were supposed to have been removed. AES thereafter ordered IIC to proceed with blasting with CP in place even though it was excluded from the IIC contract.

(b) April 2, 2003 through August 5, 2003.

(c) Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George Kontra, Charlie Jerling, Matt Holmstrom, Jim Houck, David Olson, Jason

Peterson, Paul Agostine Jerry Hardenbergh.

  (d) IIC's contract and attachments (IIC 000001-000009); the pre-construction meeting agenda dated April 2, 2003.

  (e) $7,476.32.

  (f) Tom Puett.

  (g) Labor costs for IIC to perform the work, calculated as follows: 11 days, 4 hours a day, 3 men = 32 regular hours, 12 overtime hours.

Jason 32 hrs x $32.57 = $1,042.24
   12 ot  x  $44.25 = $ 531.00
Paul   32 hrs x $43.91 = $1,405.12
   12 ot x   $61.35 = $ 736.20
David  32 hrs x $35.56 = $1,137.92
   12 ot x  $48.82 = <u>$584.84</u>

<u>Total</u> $5,437.32 + 25% overhead of $1,359.33 + 10% profit of $679.67 = $7,476.32.

<u>*Failure of AES to Removal Non-Structural Steel (Spec section 1.7 to 1.7.6).*</u>

  (a) IIC's subcontract and attachments show its scope of work as being piles (bents) 13,14, and15 of 2A and 17 through 33 of 2B. IIC's scope letter dated September 16, 2002, attachment II set forth the following exclusions from its work: welding, structural repairs, removal of termite grounds, removal of CP circuit headers, removal of rectifier cable bonds, and items 1.7 through 1.7.6 of the specifications.

  It transpired that Absolute Environmental Services neglected to remove the non-structural steel (26 removed). ICC was scheduled to start productive work on 4-2-03. At the site meeting with Brechan Enterprises ("Brechan"), AES, the United States Coast Guard ("USCG"), Local Electric ("Local"), Coffman Engineering ("Coffman") and IIC, it was learned that AES

had failed to remove the non-structural steel excluded from IIC's contract. Although this was discussed at the pre-construction meeting, it was not reflected in any meeting minutes. At this meeting, Tom Puett and Matt Holstrom as well as the other parties listed in (c) went under bent 13 to 15 and Mr. Puett directed Mr. Holstrom to the non-structural steel and advised him that it was supposed to be removed. Thereafter, AES ordered IIC to remove the non-structural steel or coat over them, even though it was not in the IIC subcontract.

    (b)    April 2, 2003 through August 5, 2003.

    (c)    Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry Hardenbergh.

    (d)    IIC's contract and attachments (IIC 000001 to 000009); the pre-construction meeting agenda dated April 2, 2003.

    (e)    $47,305.69.

    (f)    Tom Puett.

    (g)    Labor and material costs for IIC to perform this work, calculated as follows: Labor: 1 hour per pile x 3 men x 118 pile x Painter rate $43.91 = $16,544.14 plus 25% overhead $3,886.03 and 10% profit of $1,943.00 totals $21,373.19. Extra paint materials: 8 Liters SPC 1864 per pile x 118 piles = 944 liter $16,400 kit x 1.15 kits, totals $18,860.00. 25% Overhead = $4,715.00. 10% Profit = $2,357.50. The total of all these figures is $47,305.69 for bents 13 - 15 A-Q; 16 - 20 A-H; and 21 - 23 I-Q.

*Failure of AES to Stripe Coat Welds and Caulking*

    (a)    IIC's contract and attachments show its scope of work as being piles (bents) 13, 14, and 15 of 2A and 17 through 33 of 2B. IIC's scope letter dated September 16, 2002, attachment II set forth the following

exclusions from its work: welding, structural repairs, removal of termite grounds, removal of CP circuit headers, removal of rectifier cable bonds, and items 1.7 through 1.7.6.

It transpired that Absolute Environmental Services neglected to stripe coat and caulk the welds. ICC was scheduled to start productive work on 4-2-03. At the site meeting with Brechan Enterprises ("Brechan"), AES, the United States Coast Guard ("USCG"), Local Electric ("Local"), Coffman Engineering ("Coffman") and IIC, it was learned that AES would not stripe coat and caulk the welds, even though this item was excluded from IIC's subcontract. Although this was discussed after the pre-construction meeting, it was not reflected in any meeting minutes. At this meeting, Tom Puett and Jason Peterson went under the wharf at bent 13 to 15 and Mr. Puett notified Mr. Peterson that the welds had to be stripe coated and caulked and advised AES that it was supposed to be performed prior to coating. Thereafter, AES ordered IIC to stripe coat and caulk the welds, even though it was not part of IIC's subcontract.

(b) April 2, 30, May 2, 8, 11, June 6, 12, 17, 18, 21, 22, 24, and July 15, 2003.

(c) Jason Peterson, Tom Puett; work performed by Josh Bellville ("Josh"), Mario Dix ("Mario"), Jason Tenderella ("Jason"), David Rohner ("David"), Paul Pederson ("Paul"), Steve McKinley ("Steve").

(d) IIC's contract and attachments (IIC 000001 to 000009); the pre-construction meeting agenda dated April 2, 2003; IIC 001397, 001342, 001404, 001407, 001419, 001434, 001416, 001452, 001536, 001554, 001556, 001527.

(e) $29,898.64.

(f) Tom Puett.

1  (g) Labor costs to stripe coat and caulk the welds at bents 13-15 A-
2  Q, 16-20 A-H, and 21-23 I-Q, calculated as follows:
3      7-15-03
4      Josh   8 hrs x $54.47 = $435.76
5      Dave  8 hrs x $35.56 = $284.48
6      Bob    8 hrs x $35.56 = $284.48
7      Mario 8 hrs x $31.20 = $249.60
8                              $1,254.32
9      6-24-03
10     Josh   8 hrs x $54.47 = $435.76
11               2 ot  x $80.48 = $160.96
12     Paul   8 hrs x $43.91 = $351.28
13               2 ot  x $61.35 = $122.70
14     Dave  8 hrs x $35.56 = $284.48
15               2 ot  x $48.82 = $ 97.70
16     Jason 8 hrs x $32.57 = $260.56
17               2 ot x $44.25 = $ 88.50
18                           $1,801.88
19
20     6-22-03
21     Josh   12 ot x $80.48 = $965.76
22     Paul   12 ot x $61.35 = $736.20
23     Jason  12 ot x $44.25 = $531.00
24                           $2,232.96
25     6-21-03
26     Josh   10 ot x $80.48 = $804.48
27     Paul   10 ot x $61.35 = $613.50
28

1  | Dave   10 ot x $48.82 = $488.20
2  | Jason  10 ot x $44.25 = $442.50
3  |                         $2,348.68
4  |
5  | 6-17-03
6  | Josh  8 hrs x $54.47 = $435.76
7  |       2 ot  x $80.48 = $160.96
8  | Paul  8 hrs x $43.91 = $351.28
9  |       2 ot  x $61.35 = $122.70
10 | David 8 hrs x $35.56 = $284,48
11 |       2 ot  x $48.82 = $ 97.64
12 | Jason 8 hrs x $32.57 = $260.56
13 |       2 ot  x $44.25 = $ 88.50
14 |                         $1,801.88
15 |
16 | 6-12-03
17 | Josh   8hrs x $54.47 = $435.76
18 |        8 ot x $80.48 = $643.84
19 | Paul   8 hrs x $43.91 = $351.28
20 |        8 ot x $61.35 = $490.80
21 | Jason 8 hrs x $32.57 = $260.56
22 |        8 ot  x $44.25 = $354.00
23 |                         $2,536.24
24 |
25 | 6-18-03
26 | Josh   10 ot x $80.48 = $804.80
27 | Paul   10 ot x $61.35 = $613.50
28 |

Jason10 ot x $44.25 = $442.50
$1,860.80

6-6-03

Paul  8 hrs x $43.91 = $351.28
       4 ot x $61.35 = $245.40
Jason 8 hrs x $32.57 = $260.56
       4 ot x $44.25 = $177.00
$1,034.24

5-8-03

Josh   8 hrs x $54.47 = $435.76
       2 ot x $80.48 = $168.96
Paul   8 hrs x $43.91 = $351.28
       2 ot x $61.35 = $122.70
Jason  8 hrs x $32.57 = $260.56
       2 ot x $44.25 = $88.50
$1,427.76

5-2-03

Josh   8 hrs x $54.47 = $435.76
       3 ot x $80.48 = $241.44
Paul   8 hrs x $43.91 = $351.28
       3 ot x $61.35 = $184.05
Jason  8 hrs x $32.57 = $260.56
       3 ot x $44.25 = $132.75
$1,605.84

4-30-03

Josh  8 hrs x $54.47 = $435.76

        2 ot  x $80.48 = $168.96

Paul  8 hrs  x $43.91 = $351.28

        2 ot   x $61.35 = $122.70

Jason  8 hrs  x $32.57 = $260.56

        2 ot   x $44.25 =  $88.50

                              $1,427.76

5-11-03 (Caulking)

Josh   10 ot x $80.48 = $804.80

Steve 10 ot x $50.56 = $505.60

Paul   10 ot x $61.35 = $613.50

Dave  10 ot x $48.82 = $488.20

                              $2,412.10

These figures total $21,744.46, plus 25% overhead of $ 5,436.12, and 10% profit of $2,718.06, for a total of $29,898.64.

*Failure to Remove Conduit*

(a)    IIC's contract and attachments show its scope of work with AES was for work at piles (bents) 13, 14, 15 of 2A and 17 through 33 of 2B. IIC's scope letter dated September 16, 2002, attachment II, set forth the following exclusions from its work: welding, structural repairs, removal of termite grounds, removal of CP circuit headers, removal of rectifier cable bonds, and items 1.7 through 1.7.6 of the specifications. Nevertheless, AES directed IIC to remove conduits, including conduit at bent 21-23 Pile I - Q, which were not part of IIC's subcontract. IIC performed the work, submitted invoices, but was not paid.

  (b) August 2003.

  (c) Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jason Peterson, Jerry Hardenbergh.

  (d) IIC 000114-000115.

  (e) $850.00.

  (f) Tom Puett.

  (g) Invoice 174, dated 8/1/03 for $850.00.

*Ordering IIC to Perform Non-IIC Subcontract Work at Bent 12-13*

  (a) IIC's contract and attachments show its scope of work with AES was for work at piles (bents) 13, 14, 15 of 2A and 17 through 33 of 2B, and excluded work for items 1.7 through 1.7.6 of the specifications. The subcontract between IIC and AES did not include bent 12-13. Nevertheless, on the first day of the job, April 2, 2003, Jason Peterson ordered IIC to perform work at bent 12-13.

  (b) April 2, 2003 through August 5, 2003.

  (c) Tom Puett, Jason Peterson.

  (d) IIC 000001 to 000009; 000096 to 111100; 000714 to 000719; 000546, 000596 to 000617.

  (e) $29,202.64.

  (f) Tom Puett.

  (g) This is based on labor, equipment and material costs all as set forth in the daily logs and Q.C. reports and in IIC Invoice 176, dated 8/5/03.

**Differing Site Condition/Misrepresentation/Extra Work**

*Undisclosed Gray Paint*

  (a) The specifications for the Cargo Wharf Project did not indicate the existence of gray paint beneath the existing coal tar epoxy, and neither

AES, Coffman, Brechan or the USCG disclosed to IIC the existence of the gray paint. The existence of the gray paint could not have been known to IIC from a site inspection or at any time prior to the removal of the single coating of coal tar epoxy that had been represented to IIC by AES/Coffman as the only coating IIC would be obligated to remove. On the first day of water blasting, IIC discovered this differing/changed condition shortly after the start of water blasting. Representatives from AES and Brechan did not come to inspect the condition until on or about May 28, 2003. AES ordered IIC to remove the gray paint, which IIC did. IIC submitted an invoice to AES for this work, but it has not been paid.

(b) April 2003 through August 5, 2003.

(c) Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, Forrest McKinley, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry Hardenbergh, Joshua Belville, Paul Pederson, David Rohmer, Jason Tenderella, and Lt. Andrew Brown

(d) IIC 000096 through 000115, 000714 through 000716, 000717, 000718, 000719, 000546, 000600, 000596, 000597, 000598, 000600 through 000617, 001269 through 001592.

(e) $92,029.21.

(f) Tom Puett

(g) Days of actual work noted on Q.C. report and Daily Logs, and invoice dated August 5, 2003 (IIC 000101 through 000113).

**Lost Profits**

*Lost Profits Due on Cargo Wharf Project*

(a) On August 7, 2003, AES escorted IIC off the project site, which prevented IIC from completing the Cargo Wharf Project. As a result, IIC was not able to realize its profit from the work that remained to be complete.

1  (b) April 2, 2003 through August 7, 2003.
2  (c) Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, Forrest McKinley, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry Hardenbergh.
5  (d) IIC 000096 through 000690, 003626-003628.
6  (e) $130,952.06.
7  (f) Tom Puett.
8  (g) Actual job costs for original contract work was $264,384.79. This is based on the following calculation:

| | | |
|---|---|---|
| Total Job Costs | $454,859.51 | |
| Less extra work | $    850.00 | Conduit removal |
| | $ 92,029.21 | Gray coating |
| | $ 29,202.64 | Bent 12-13 |
| | $  7,476.32 | non-removal of CP |
| | $ 47,305.69 | non-removal of non structural |
| | $ 29,898.64 | Stripe coat/caulking |
| | $248,097.01 | Total original job cost for contract work |

Although the existing coating removal was at 52% complete, the completed coating removal and coating application was 47% complete. Thus, 47% of the total contact price of $772,123.00 is $362,897.81. As noted above, IIC's total original job costs were $248,097.01. Deducting those original job costs from the contract amount due for completing 47% of the work ($362,897.81), results in $114,800.80 for profit on that 47% of the work completed. Thus, IIC is entitled to 32% profit on the remaining contract balance. The remaining contract balance was $409,225.19. Thus, 32% of that figure is $130,952.06 in lost profits for the Cargo Wharf Project.

*Lost Profits Due for Coating Tanks N 12 and N 60*

(a) AES requested IIC to re-write portions of the specifications of Tanks N 12 and N 60, which are used for jet fuel storage, in order to facilitate the use of coating in a humid environment. IIC ultimately selected Wasser material, which was going to be supplied by Polar Supply. IIC was also requested to give AES a price to do the work either in the Fall of 2003 or the Summer 2004. IIC's price of $374,226.00 was given approval in July 2003 by Jason Peterson, who had obtained approval from Matt Holstrom of Brechan. IIC is informed and believes AES made use of IIC's specifications but did not permit IIC to perform the work, which IIC believes was completed in 2004 by others using the equipment of IIC which was taken by AES.

(b) January through February 2003.

(c) Tom Puett, David Olson, Matt Holstrom, Jason Peterson.

(d) IIC 001024 to 001268.

(e) $119,752.32.

(f) Tom Puett.

(g) The damages are calculated based on the profit of 32% actually obtained by IIC for the Cargo Wharf project. $374,226.00 x 32% = $119,752.32.

**Non-Payment**

*AES Failed to Pay IIC the Full Amount Due for Completed Original Contract Work*

(a) IIC performed 47% of the total original contract work, but has not been paid the full 47% of the total contract price since AES terminated the contract and escorted IIC off the project site.

(b) April 2, 2003 through August 7, 2003.

    (c)    Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, Forrest McKinley, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jerry Hardenbergh.

    (d)    IIC 000074 to 000094; 000683 to 000690.

    (e)    $116,309.68.

    (f)    Tom Puett.

    (g)    The total original contract work completed was 47%, or $362,897.81. AES only paid IIC $246,588.13 for this work. This leaves a balance due of $116,309.68 for original contract work.

*AES Failed to Pay IIC the Full Amount Due for Mobilization.*

    (a)    IIC's agreement with Matt Holstrom of Brechan and Todd Elmore of AES for mobilization was that the material and equipment IIC delivered to the job site would be paid from invoices at time of delivery at the Cargo Wharf. AES, however, unilaterally deducted 20% of the amount due for "demobilization." In addition, IIC's mobilization monies were further reduced when Brechan directly paid Polar Supply $50,815 for materials without IIC's authorization.

    (b)    April 2003.

    (c)    Tom Puett, David Olson, Matt Holstrom, Todd Elmore.

    (d)    IIC 000074 - 78 (Invoice 162).

    (e)    $91,763.88.

    (f)    Tom Puett.

    (g)    IIC's invoice No. 162 was reduced as follows: $204,743.94 was the agreed amount due for mobilization, but AES deducted $40,948.15 for demobilization, and $50,815 was deducted to pay Polar Supply, leaving $91,763.88.

### *AES Makes Improper Deductions From IIC's Billings*

(a) IIC's invoice No. 164 was reduced by $12,000.00 for UHP Waterblaster that IIC had to share with AES causing additional set up time and delay. IIC was willing to pay 50% of $12,000.00 rental rate under the joint use forced upon IIC by AES. IIC's invoice No.168 was reduced by $15,879.63 for "inspection" by AES with no valid basis. IIC was backcharged for anode and CP damage in the amount of $15,000.00 that was to be removed by others (because it was excluded from IIC/AES contract).

(b) June 2003.

(c) Chris Lynch, Todd Elmore, Jason Peterson, Tom Puett, George Kontra, Matt Holmstrom, Jim Houck, David Olson, Jason Peterson, Jerry Hardenbergh.

(d) IIC 000079 to 000092.

(e) $42,879.63.

(f) Tom Puett

(g) Monies due IIC for invoices 164, 168 are as follows:

| | | |
|---|---|---|
| Invoice 164 | UHP Waterblaster | $ 6,000.00 |
| Invoice 168 | Inspection | $ 15,879.63 |
| Invoice 168 | Anode/CP | $ 15,000.00 |
| Invoice 168 | UHP Waterblaster | $ 6,000.00 |
| Total | | $42,879.63 |

### **Conversion/Good Sold and Delivered**

(a) On August 7, 2003, AES ordered IIC off the Cargo Wharf Project job site and seized and exercised control over certain goods and property over the property of IIC. Immediately thereafter, IIC demanded that AES return the property and goods, which were itemized in a letter dated August

7, 2003 to David Olson. IIC notified AES that unless the property were returned by 5:00 p.m. on August 8, 2003, that the property would be deemed converted and AES would thereby be agreeing to purchase the property at the prices listed in the August 7, 2003 letter. AES did not return the goods and property.

    (b)    August 6 to 8, 2003.

    (c)    Tom Puett, Josh Belville, Tom Puett, Forrest McKinley, Dave Olson, Matt Holstrom, Chris Lynch, Jerry Hardenbergh, Jason Peterson, Todd Elmore, Dan Yell, Keith McCloud.

    (d)    IIC 000001 - 002482; IIC 000116 to 000225; IIC 002666 to 002668, 002672 to 002678.

    (e)    $518,320.00, or alternatively the sum of $771,626.91.

    (f)    Tom Puett.

    (g)    The total amount of Purchase Orders for the property in question is set forth in IIC-000116 to IIC-000225 total $561,183.85, plus overhead of 25% is $140,295.81, equals $701,479.06, plus profit of 10% of $70,147.91, totals $771,626.91. IIC is informed and believes that some of the material were used to complete the project by AES. This is the cost that IIC anticipates AES would have incurred had AES rented or purchased said goods on Kodiak Island. Alternatively, the cost of $518,320 is based on estimates furnished by Tom Puett at the time of the conversion and set forth in the August 7, 2003 letter.

**Interference/Delays**

    (a)    Throughout the project, the inspector Jerry Hardenbergh of Coffman Engineers, disrupted and interfered with IIC's performance of its subcontract work by over-inspecting IIC's work, imposing requirements on IIC's work that were not required by law of contract, including but not

limited to the improper employment of SSPC PA 2 testing standards, the High Voltage Holiday Testing, Adhesion Testing; failing to provide certificates of calibration of his testing equipment prior to administering tests on IIC's work; requiring additional grinding, and failing to show up at scheduled inspections. Moreover, AES was supposed to help IIC move scaffolds, set up containment, and operate equipment for all phases of the work, but after bents 13-15, AES failed to supply adequate personnel.

(b) April 2, 2003 through August 5, 2003.

(c) Jerry Hardenbergh, Tom Puett, Dave Olson, Jason Peterson.

(d) IIC.001269 - 001592; 002361-002482.

(e) Unknown at present; to be determined.

(f) Unknown at present; to be determined.

(g) Unknown at this time; analysis to be performed.

DATED: August 2, 2004        MONTELEONE & McCRORY LLP
                             Attorneys for Emerco, Inc.


                             By _____
                                WILLIAM R. BAERG, ESQ.
                                CSBN 167399
                                WSBN 23052