Terry R. Marston, *pro hac vice,* terry@mhf-law.com
Jami K. Elison, *pro hac vice,* jamie@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.<br><br>Defendants. | Case No.: A03-0199CV (RRB)<br><br>**ABSOLUTE'S OPPOSITION TO SAFECO'S MOTION FOR SUMMARY JUDGMENT** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>Counterclaimant/Third-party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, et al.,<br><br>Cross-defendants/Third-party Defendants. | |

| | |
|---|---|
| THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) |
| vs. | )<br>) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | )<br>)<br>) |
| Defendants. | )<br>) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | )<br>)<br>) |
| Counterclaim Plaintiff, | ) |
| vs. | )<br>) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | )<br>)<br>) |
| Counterclaim Defendant. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | )<br>)<br>) |
| Third-Party Plaintiff, | ) |
| vs. | ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | )<br>)<br>) |
| Third-Party Defendant. | )<br>) |
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation, | )<br>)<br>) |
| Plaintiff/Cross-claimant, | ) |
| vs. | )<br>) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | )<br>)<br>) |
| Third-Party Defendant. | )<br>) |

## I. OPPOSITION AND RELIEF REQUESTED

Plaintiff Absolute Environmental Services, Inc. requests this Court deny Safeco's motion for summary judgment and award to Plaintiff the fees incurred in opposing Safeco's motion, a motion containing representations that should not have been made to this Court under FRCP 11.

## II. ISSUES

1. Miller Act claims must be filed "one year after the day on which the last of the labor was performed;" this lawsuit was filed on June 22, 2005. Whether work "as part of the contract" is measured by final completion, substantial completion, or otherwise, project records confirm Absolute performed 634 labor-hours on the project from July through December of 2004, was paid for that work, and that Phase II completion occurred at that time, not November 2003. Should the Court <u>deny</u> Safeco's motion to dismiss the Miller Act claim?

2. Under FRCP 11, representations to the Court must be based upon a reasonable factual inquiry and must have evidentiary support. Safeco's motion to dismiss contends that 634 labor-hours should be ignored; but, the payment records and other contemporaneous documents wholly refute Safeco's mischaracterization of the substantial contract work performed by Absolute. Should this Court award Absolute the fees incurred in opposing this motion from Safeco?

## III. FACTS

Absolute Environmental Services, Inc. ("AESI") is a "first-tier" subcontractor with payment rights secured by the Miller Act, 40 U.S.C. § 3133.[1] Under the Act, Absolute's claim must be brought "no later than one year after the day on which the last of the labor was performed or material supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).

Absolute demobilized for the first time on November 22, 2003 for its winter shutdown and did not complete its work under the contract until December, 2004. Only then did inspection reports address acceptance under the project specifications, and only then did Brechan issue final payment to Absolute. *See* accompanying Decl. of Dave Olson re. Safeco's Motion. For work

---

[1] As a first-tier subcontractor, it is undisputed that the 90-day pre-claim notice requirement is inapplicable.

performed under the contract, final payment issued to Absolute on December 2, 2004 in the amount of $35,436.75. Ex. L to Olson Decl.

Absolute disputes the majority of the factual claims made by Safeco. Safeco fails to present the course of performance that clearly refutes Safeco's characterization of other events. Absolute provides those facts here. Attached for the convenience of the Court as Appendix A to this brief is a timeline depicting events and dates put forth and documented below.

Phase I of the Cargo Wharf project commenced on or about July 17, 2001. *See* Ex. A to Olson Decl. Swalling Construction Companying, Inc. ("Swalling") was the subcontractor to Brechan on Phase I. All production on Phase I stopped on November 5, 2001. Coffman's engineer Jerry Hardenbergh issued a weekly summary report. *See* Ex. B to Olson Decl. The project was neither completed nor accepted at that time. This sequence of events would occur again in 2003 when Absolute demobilized for its own winter shutdown.

The winter shutdown for Phase I lasted five months. Work resumed on or about May 1, 2002. Mr. Hardenbergh issued a daily summary report confirming that fact. *See* Ex. C to Olson Decl. The Phase I work was completed on June 15, 2002. In contrast to his November 2001 inspection report, on June 15, 2002, Mr. Hardenbergh issued a daily summary report that expressly spoke to completion and acceptance, stating: "All coating work is complete through bent 12 and is acceptable in accordance with project specifications." Ex. D to Olson Decl.

Phase II, Absolute's portion of the work, commenced on April 2, 2003. Ex. E to Olson Decl. By that time Swalling was no longer the subcontractor to Brechan. Instead, Absolute had been brought onto the job after a series of confidential negotiations between Brechan, Coffman (the corrosion engineer), and the Coast Guard. These communications expressly addressed the defective condition of welds and the expensive repairs that would be required to complete the

project. The necessity of these weld repairs is critical to understand the work required during Phase II and is the essence of most of the claims at issue in this lawsuit.[2]

Performing surface preparation and meeting a holiday-free standard for applied coatings were parts of the contract work of Absolute. *See* Olson Decl. Absolute was not able to fulfill this contract obligation until December 2004. Because of the nature of existing defective conditions, predating Absolute's participation on the project, major portions of the <u>base</u> contract work constituted repair work. *See* Olson Decl.

Absolute originally anticipated completing its work on Phase II by the end of August 2003. But latent defective site conditions delayed Absolute's completion. Because of this delay Absolute incurred extended job site and home office overhead expenses. Absolute's expert, Mr. Lembke, performed an analysis of delays and delay damages pertaining to this period of time. Absolute was able to demobilize much of its equipment on November 22, 2003, but was <u>not</u> able to finish its work until a full year later. Mr. Lembke's comments about completion and delays pertained only to a particular expense level analysis and on their face do not speak to, nor establish, the proposition that Safeco now presents. *See* Olson Decl.

As he had done during Phase I, Mr. Hardenbergh issued another daily report at the time prior to the winter shutdown on Phase II. Ex. F to Olson Decl. The inspection was only a visual inspection. He did not perform testing and did not verify compliance with project specifications. *Id.* The inspection was not made at the request of the Coast Guard. *Id.* In stark contrast to his previous inspection report at the conclusion of Phase I, Mr. Hardenbergh said nothing about work

---

[2] This issue will be thoroughly documented in briefing responsive to the motion filed by Brechan and Safeco pertaining to superior knowledge. In the interest of space and economy, Absolute will not duplicate its discussion of that issue here; instead, Absolute incorporates by reference its responsive briefing that will be filed with the Court on the superior knowledge issue.

being "acceptable" or in "accordance with project specifications." *Id.* Nothing about that interim inspection suggests that Absolute's contract work was deemed complete, that Absolute's contract work was acceptable, or that Absolute could bill and receive final payment at that early date.

To the contrary, as of November 2003 substantial additional contract work was still required of Absolute. The winter shutdown again lasted approximately 5 months. As requested by Brechan, and still subject to Brechan's direction, Absolute said it was able to resume work under the contract and could return to the site in May of 2004. However, Brechan instructed Absolute to wait until Mr. Hardenbergh, its quality assurance inspector, would be available before resuming work. *See* Safeco's Motion, p. 5 (citing Elmore Dep. (Ex. G)); Ex. H to Olson Decl.

As instructed by Brechan, Absolute returned to the site in July 2004. From July until December 2004, Absolute performed substantial <u>base</u> contract work in order to meet the holiday-free contract requirements. Given the failure of Brechan and Coffman to disclose the actual conditions of the site, this work can be described in large part as "repair work" because much of the work involved repairing the surfaces of weld areas. *See* Olson Decl.

Absolute expended 634 labor-hours to the project during this period of time—all of which was expended within 12 months of the date it brought suit against Safeco under the Miller Act. Ex. I to Olson Decl. Absolute billed for this contract work. <u>Brechan paid Absolute for this contract work</u>. Ex. L to Olson Decl.

Phase II was eventually completed and accepted in December 2004. Mr. Hardenbergh issued a final inspection report. Ex. J to Olson Decl. This time, in contrast to the November 2003 report, but clearly comparable to the June 2002 report regarding Phase I completion, Mr. Hardenbergh spoke about Absolute's work as being <u>acceptable</u> and in accordance with <u>project specifications</u>:

>During the <u>October 2004 final inspection</u>, a warranty inspection list generated with 143 individual items. ... After all coating repairs were completed in accordance with the project specifications; a follow-up inspection was performed in December 2004. After a thorough visual inspection and holiday testing of all 142 coating repair areas in accordance with the project specifications, <u>the coating system appears acceptable</u> and is providing adequate corrosion protection.

Ex. J to Olson Decl (emphasis added). This is the final inspection report for Phase II; the interim November 2003 report clearly was not.

For Phase II, labor was last performed under the contract by Absolute and was accepted in December 2004. Absolute was last paid under the contract in December 2004. Absolute timely commenced a lawsuit alleging Miller Act claims on June 22, 2005, easily within the 1-year period required by the statute.

## IV. AUTHORITY

Under any analysis, this Court must find that Absolute was performing work under the contract "as part of the contract" as late as December 2004. Whether work is "part of the contract" is the critical test. *See U.S. for the Use and Benefit of Austin v. Western Elec. Co.*, 337 F.2d 568, 572 (9th Cir. 1964). If there is a question of fact on that issue, Safeco's motion must still be denied. FRCP 56.

Without defining its terms, Safeco implies that legal concepts of "completion" and "acceptance" are useful tests for whether work is being performed as "part of the contract" or as later "warranty" work.[3] There are cases where those tests were useful, but none match the facts here.

---

[3] Safeco's intermittent, and undefined, use of "punch-list" or "warranty" work does not change the analysis. The question remains whether work was performed as part of the contract.

ABSOLUTE'S OPPOSITION TO SAFECO'S MOTION FOR SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 7

Here, the course of performance clearly establishes the facts at issue on this motion. In *Larsen v. Municipality of Anchorage*, 993 P.2d 428, 435 (Alaska 1999), the court explained that "the course of performance or special usage... may be of considerable value in deciding what the contract means." The court relied on Restatement 2d Contracts section 202(4) and (5) which reads:

> (4) Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.
>
> (5) Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.

Here, the course of performance clearly establishes that no legally significant completion or acceptance occurred in 2003.

Despite the clear factual record, Safeco seizes upon a winter shutdown and a comment by Mr. Lembke addressing an unrelated issue to concoct an argument that lacks a sound basis in fact. Safeco's motion is based on a word game: Safeco first contends that a winter demobilization must mean completion and acceptance, and second, that "repair work" equates to warranty work. Each premise fails.

Summary judgment must be denied when there are genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Legal terms such as "completion" and "warranty work" must be given the appropriate technical meaning and not determined by deposition testimony or self-serving subjective characterizations. *Minges Creek, L.L.C. v. Royal Ins. Co. of America*, 442 F.3d 953, 956 (6th Cir. 2006). Safeco failed to meet its burden. And, under any analysis there are genuine issues of fact precluding summary judgment.

1. **Project documents confirm that Absolute performed substantial work as part of the contract up until December 2004; therefore, the June 22, 2005 lawsuit was timely commenced.**

Safeco relies on a number of cases with holdings addressing "warranty work" performed <u>after</u> completion and acceptance of the work. *See* Safeco's Motion, pp. 8-9. As a necessary premise for its motion to dismiss, Safeco implies that completion and acceptance occurred on the Cargo Wharf in November 2003. This is false. Safeco submits no evidence demonstrating compliance with contract provisions governing completion and acceptance. The contract documents specify criteria that govern notifications pertaining to completion of work:

> Pre-Final Inspection: Prior to requesting a Final Inspection, the Contractor shall request a Pre-Final Inspection. The request shall be made in writing, electronic mail requests are authorized, 10 calendar days prior to the anticipated date of the Pre-Final Inspection. The Pre-Final Inspection will be conducted at least seven (7) calendar days prior to the final inspection date with the Government inspector, the contractor's quality control representative, the contractor's project manager, and any technical experts or other parties as deemed necessary by the Government.

Ex. M to Olson Decl, (3.07.2).

> Final inspetion, punch list, acceptance and cleanup of the project site will be completed before the delivery order due date.
> Final inspection and acceptance of the work will be by the Contracting Officer or his authorized representative.

Ex. N to Olson Decl. (E.4). There was no completion or acceptance in November 2003 pursuant to contract documents, whether substantial or final. Safeco's motion fails to substantiate completion of the work; consequently, the cases it relies upon are all inapplicable.

Safeco also fails to submit evidence supporting its implication that the substantial amount of work performed by Absolute from July through December of 2004 was mere "warranty work." Safeco fails to undertake a critical analysis regarding the nature of the work performed:

> Even without the added push of the rigors of a summary judgment motion, some of the list of 'deficiencies' obviously fall on the side of omissions of subcontract terms, rather than mere corrections and repairs ... since there were omissions, the original subcontract was not yet completed despite the subcontractor's depositional statement, and the statute had not yet begun to run until the disputed date.

*U.S. for the Use and Benefit of Luis A. Cabrera, S.E., v. Sun Engineering Enterprises, Inc.*, 817 F.Supp. 1009 (D. Puerto Rico 1993) (tolling the statute of limitations while uncertainty remains as to the date of full performance of the contract). Under that analysis, the work performed by Absolute clearly continued to toll the running of the limitations period while omitted work was being completed.

Courts that decline to toll the running of the limitations period under the Miller Act based on a finding that work was "warranty work" consistently do so <u>only</u> when then later performed work was insubstantial or already billed and paid for:

> [Contractor] had completed his work by January 1954, and it is most significant that a year and a half later two hours of labor were performed on June 9, 1955, and eight hours of labor on June 20, 1955, without charge, followed by a carefully worded formal notice on June 22, 1955.

*U.S. for Use of McGregor Architectural Iron Co. v. Merritt-Chapman*, 185 F.Supp. 381, 383 (D.C.Pa. 1960). Here, Absolute performed 634 additional labor-hours, not 8. Safeco relies on *T & A Painting, Inc. v. U.S.*, 673 F.Supp. 994, 996 (N.D.Cal. 1987) for the proposition that "Miller Act payment bond obligations apply only to work performed under the original contract and not to subsequent work to repair defects." However, subsequent payment to the contractor proves that work was still under the contract:

> The terms of the standard form surety agreement provide that <u>after payment has been made</u> by the contractor, the <u>surety's obligations are terminated</u>.

*Id.* (emphasis added). In *U.S. for Use of State Elec. Supply Co. v. Hesselden Const. Co.*, 404 F.2d 774 (10th Cir. 1968) the court affirmed the trial court's finding that the delivery of a pedestal was for warranty work and not under the contract. The court found it critical that the items had already been billed:

> The evidence in the record shows that the original contract required three complete pedestals. The invoice of November 4, 1964 shows that three pedestals were furnished and were billed as complete... The evidence, therefore, substantiates the trial court's findings that the final pedestal was merely a replacement part for a lost or damaged piece included in the original invoice.

*Id.* at 776. Given the <u>fact</u> of Brechan's final payment in Decemeber 2004 to Absolute, it is apparent that Safeco never had a legitimate basis for its motion. At the very least, it is beyond cavil that there are material issues of fact about the date of completion and the nature of the work performed that preclude summary judgment.

The primary case relied upon by Safeco confirms that questions of whether work is "warranty work" or, conversely, "billable work" performed under the contract forecloses summary judgment:

> A determination as to whether there is a genuine issue of fact involves three related questions: (1) is 'substantial completion' the proper test as to when the last of the labor is performed or materials supplied; (2) were any of the so-called 'punch list' items performed and furnished on or after December 7, 1960, and if so, were they required to complete the subcontract of the plaintiff Austin; and (3) are plaintiffs bound by the notice given by the plaintiff Austin in December 14, 1960?

*U.S. for the Use of Austin v. Western Elec. Co.*, 337 F.2d 568 (9th Cir. 1964). As a starting proposition, the court confirmed: "The Miller Act 'is entitled to a liberal construction and application." *Id.* Acknowledging that rights under the Miller Act must be protected, the court conducted a careful analysis as to what actually happened, as opposed to accepting how events were subsequently characterized:

> Attached to 'Declaration of Barney Austin in Opposition to Motion for Summary Judgment' as an exhibit is a 'punch list', dated October 13, 1960, containing some 60 items, and sent to Austin by Burns & Roe on October 20. The letter of transmittal called it a 'punch list of work covered by your contract' and stated that the work must be completed by October 26, 1960. In other words, it was not a list submitted after completion of the work and limited to corrections and repairs.
>
> Appellees concede that there is a dispute as to the last date 'upon which the punch list items were completed', but contend that the dispute is immaterial because the punch list items were in the nature of corrections of minor defects, not necessary to 'substantial completion' of the plaintiff's contract. Many of the items in the punch list, however, appear to be work required for the 'completion of the project'. Others obviously were in the nature of corrections, repairs and cleanup.
>
> Appellees rely heavily upon the notice prepared, signed and verified by Austin's attorney and mailed to the prime contractor on or about December 14, 1960. This notice reads in pertinent part: 'You and each of you will please take notice that on or about the 25th day of October, 1960, Barney Austin *** complete the furnishing of labor, material and services upon a certain project, known as Project Mercury.

*Id.* at 573-74. This holding, relied upon by Safeco, ultimately <u>reversed the district court for having reached the conclusion urged by Safeco</u>:

> Viewing the evidence as a whole and the inferences which may be drawn therefrom in the light most favorable to the plaintiff we cannot say that there is no genuine issue of fact with respect (1) to whether work was performed on or after December 7, 1960, and (2) whether any work which may have been performed on or after that date was required to complete the subcontract of the plaintiff Austin.

*Id.* at 575. Under the primary authority relied upon by Safeco, this Court should deny Safeco's motion.

ABSOLUTE'S OPPOSITION TO SAFECO'S MOTION FOR SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 12

2. **<u>Safeco's motion contains multiple representations that fail to meet the requirements imposed by FRCP 11; therefore, this Court should award Absolute its fees incurred in opposing Safeco's motion.</u>**

FRCP 11 provides:

> **(b) Representations to Court.** By presenting to the court… a pleading… after an inquiry reasonable under the circumstances,—
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>     (3) the allegations and other factual contentions have evidentiary support or…

Safeco's motion to dismiss Absolute's Miller Act claim is presented for an improper purpose to increase the cost of litigation, it lacks evidentiary support, and its representations were not based on a reasonable inquiry:

> The Rule's relevant portion unambiguously states that a party who signs a pleading or other paper without first conducting a reasonable inquiry shall be sanctioned, and there is nothing in the Rule's full text that detracts from this plain meaning.

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 534, 111 S.Ct. 922, 923 (1991) (upholding sanctions awarded after finding that there was no basis in fact for the copyright infringement action and request for a temporary restraining order). The Court can issue sanctions *sua sponte* pursuant to Rule 11. *United Nat. Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001).

## V. CONCLUSION

Safeco's motion is brazenly unsubstantiated. Absolute's payment rights on this federal project are secured by the Miller Act. Contractors who cannot collect a judgment from a surety can face severe challenges in collecting from a contractor whose corporate structure effectively insulates it from liability. Absolute's Miller Act claims are demonstrably timely; Safeco's motion to dismiss fails to meet the requirements of CR 11. Knowing that the contract work was not

completed for another year, knowing when Absolute was last paid, and knowing when the contract work was accepted, Safeco presents an argument based on nothing. Faced with the fact that Absolute performed no less than 634 labor-hours of work within twelve months (from July until December of 2004) of its filing suit, being familiar with existing caselaw distinguishing repair work under the base contract from warranty work performed after project completion, Safeco pretends both that the project was completed and that the massive amount of work performed and only later paid for must have been "warranty" work. "Repairs" is not a synonym for "warranty." Because this motion was brought without a good faith basis, Safeco's motion fails. This Court should deny the motion and award Absolute the fees incurred in opposing it.

DATED this 16th day of August, 2006.

MARSTON HEFFERNAN FOREMAN, PLLC

By _____
Terry R. Marston II, WSBA No. 14440
Jami K. Elison, WSBA No. 31007
Jesse P. Elison, WSBA No. 36914
Attorneys for Plaintiff Absolute Environmental Service, Inc.

# CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury, under the laws of the State of Washington that I am now and at all times herein mentioned, a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below, a true and correct copy of the following:

1. ABSOLUTE'S OPPOSITION TO SAFECO'S MOTION FOR SUMMARY JUDGMENT;
2. Dave Olson's Declaration in Support of Opposition;
2. [Proposed] ORDER DENYING SAFECO'S MOTION FOR SUMMARY JUDGMENT

were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| James B. Stoetzer<br>Lane Powell Spears Lubersky<br>1420 Fifth Avenue, Suite 4100<br>Seattle, WA 98101<br>*Atty for Coffman* | Jacob Nist<br>Perkins Coie, LLP<br>1029 West Third Avenue, Suite 300<br>Anchorage, AK 99501<br>*Atty for Brechan and Safeco* |
| Robert J. Dickson<br>Atkinson, Conway & Gagnon, Inc.<br>420 L Street, Suite 500<br>Anchorage, AK 99501<br><br>*Atty for Specialty Polymer Coatings* | Peter Partnow<br>Lane Powell Spears Lubersky<br>301 W. Northern Lights Boulevard<br>Suite 301<br>Anchorage, Alaska 99503<br>*Atty for Coffman* |
| Eric J. Brown, Esq.<br>Jermain Dunnagan & Owens, P.C.<br>3000 A Street, Suite 300<br>Anchorage, AK 99503-4097<br>*Atty for Forrest McKinley and Emerco* | Mr. William Baerg<br>Patrick Duffy<br>Monteleone & McCrory, LLP<br>725 South Figueroa Street, Suite 3750<br>Los Angeles, CA 90017-5446<br>*Atty for Forrest McKinley and Emerco* |

SIGNED at Redmond, Washington this 16 day of ~~April~~ August, 2006.

_____
Kristy L. Martyn

ABSOLUTE'S OPPOSITION TO SAFECO'S MOTION FOR SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 15