ERIC J. BROWN, ESQ.
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A. Street, Suite 300
Anchorage, Alaska 99503-4097
Telephone: (907) 563-8844
Facsimile: (907) 563-7322 (ebrown@jdolaw.com)

PATRICK J. DUFFY, III, ESQ.
WILLIAM R. BAERG, ESQ.
MONTELEONE & McCRORY, LLP
725 S. Figueroa Street, Suite 3200
Los Angeles, California 90017-5446
Telephone: (213) 612-9900
Facsimile: (213) 612-9930 (baerg@mmlawyers.com)

Attorneys for Defendant Forrest J. McKinley and
Defendant and Counter-Claimant EMERCO, INC.,
dba Imperial Industrial Coatings

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaskan Corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>FORREST J. McKINLEY and "JANE DOE" McKINLEY, and the marital community property composed thereof d/b/a/ "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation d/b/a/ Imperial Industrial Coatings,<br><br>*Defendants.* | CASE NO. A-03-0199 Civil (RRB)<br><br>**CROSS-CLAIMANT EMERCO, INC., DBA IMPERIAL INDUSTRIAL COATINGS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR CAP CERTAIN CLAIMS** |
| EMERCO, INC., a California Corporation d/b/a Imperial Industrial Coatings, and the United States for the Use and Benefit of EMERCO, Inc.,<br><br>*Counter-Claimant/Third Party Claimant,*<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaskan Corporation, et al.,<br><br>*Cross-Defendants/Third Party Defendants.* | |

| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of ABSOLUTE ENVIRONMENTAL SERVICES, INC., and Alaska corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>Counterclaim Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>COFFMAN ENGINEERS, INC., a Washington corporation,<br><br>Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.

## **INTRODUCTION**

The Motion of Absolute Environmental Services, Inc. ("Absolute") to dismiss or cap certain claims under Federal Rule of Civil Procedure 56 must be denied. Reduced to its substance, Absolute asks the court to substitute Absolute's anticipated areas of cross-examination in place of a jury trial. Although the Motion complains that cross-claimant Emerco, Inc., dba Imperial Industrial Coatings ("Emerco" or "Imperial") is "seeking duplicative relief," the Motion never fully articulates the areas of purported duplication. As to the issues of capping

certain claims, the Motion is devoid of any undisputed facts that would entitle Absolute to a judgment of dismissal as a matter of law. Moreover, the Motion and accompanying order are so vague and uncertain that it is impossible to determine what specific relief would be granted even if the Motion were granted.

## II.
## LEGAL ARGUMENT AND DISPUTED FACTS

For purposes of a motion for summary judgment, the burden of establishing that there is no genuine issue of material fact lies with the moving party and resolution of all doubts should be resolved in favor of the party opposing the motion. *British Airways Board v. Boeing Company*, 585 F.2d 936, 951 (9th Cir. 1978). Because summary judgment is a drastic device, cutting off a party's right to present its case to a jury, the moving party bears a heavy burden of demonstrating the absence of any triable issue of material fact. *Nationwide Life Insurance Co. v. Bankers Leasing Association, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999). In this case, Absolute has failed to meet its heavy burden of establishing that there are no triable issues of fact entitling it to summary judgment.

1.  **Absolute's Interference with Imperial's Work is a Breach of Contract, Excusing Imperial's Performance, But Imperial Does Not Seek "Delay" Damages.**

As set forth in its interrogatory responses attached as Exhibit 1 to the Declaration of Terry Marston, Imperial seeks damages against Absolute for breach of contract. These breaches consisted of, among other things, Absolute's failure to remove cathodic protection and non-structural steel, its failure to stripe coat welds and caulking, and for its failure to remove conduit. As set forth in the written interrogatory responses, Imperial also seeks damages against Absolute for ordering (but not paying for) extra work in connection with coating bent 12-13, for the extra costs incurred in removing undisclosed gray paint underneath the existing coatings, for lost profits on the Cargo Wharf project and work performed on tanks N 12 and N 60, and for failing

to pay for original contract work and mobilization. Imperial also contends Absolute improperly made deductions from payments, and that Absolute seized $518,320 worth of equipment and materials belonging to Imperial. During the job, Absolute also breached the contract with Imperial in that Absolute's inspector disrupted Imperial's performance of its work by over-inspection at some times, and failing to show up for scheduled inspections at other times, imposing extra-contractual and legal requirements on Imperial's work, using improper testing standards, and failing to furnish personnel support. *See* Exhibit 1 to Declaration of Terry R. Marston.

As noted in the accompanying declaration of Ralph Thomas Puett at paragraph 5, Imperial was not on the job site for a duration longer than scheduled. Hence, Imperial does not contend it incurred construction "delay damages" consisting of extended home office or field office overhead expenses occasioned by owner or prime contractor caused delays. Nevertheless, the conduct of Absolute and its agents during the performance phase of the Project was an impediment to Imperial's performance, and hence, excuses any alleged non-performance by Imperial.

There is no basis for summary judgment because no cause of action is disposed of by Absolute's Motion.

## 2.  There Are No Multiple Claims Seeking Duplicative Relief.

The portion of Absolute's Motion to "dismiss Emerco's separate claims seeking duplicative relief," is both perplexing and baseless. Absolute asks this court to dismiss the "duplicated elements" of Imperial's damages claim, but fails to identify in its Motion where the duplication exists based on undisputed facts. Without any basis in fact, Absolute claims in its Motion that "*In addition* to its claim for full payment, Emerco also seeks affirmative relief for deductions from Emerco's billings. . . . [and] for amounts it claims are due to cover mobilization expenses; and . . . also seeks lost profits in addition to payment of the agree upon contract price." (Emphasis added) *See* Motion at page 4. The assertion that by pleading alternative theories of recovery, or that by articulating the individual components of its claim, Imperial is somehow

seeking double recovery is false and without any evidentiary support, much less undisputed evidentiary support. If Absolute is actually concerned that Imperial is seeking compensation for all of the individual components of its claim, and well as the grand total of its claim, then Absolute's the remedy is not to seek a motion for summary judgment, but to draft a verdict form that clarifies for the jury that it is not allowed to double the amount of money damages it awards Imperial.

### 3. Damages for Removal of Gray Paint Should Not Be Capped to Blaster Costs.

During the performance phase of the Project, Imperial encountered a differing site condition. This differing site condition consisted of a layer of gray paint beneath the existing coal tar epoxy coating that Imperial had contracted to remove. This undisclosed condition cost an additional $92,029.21 to remove. Imperial prepared and served Absolute with an invoice for this extra work, which invoice included a worksheet showing the calculations justifying the costs. *See* Exhibit 1 to Declaration of Puett. As noted on page 12 of the written interrogatory responses attached as Exhibit 1 to the Declaration of Terry R. Marston, this amount, and the documents substantiating the amount, were identified over 2 years ago in written discovery.

In an effort to cap this $92,029.21 claim to $2,301, however, Absolute has presented a snippet of the deposition testimony of Mr. Puett. The snippet of deposition testimony focused on a single component of the total cost to remove the gray coating: The blast operator's wages. Inexpiably, Absolute neglected to present to this court all of the evidence that Imperial provided in discovery to support the $92,029.21 in costs. As Mr. Puett testified at his deposition, there were also extra pot tender operator costs, and extra clean-up and disposal costs. In addition, there are set up costs, extra equipment and material costs, and overhead and profit on the added costs. *See* Declaration of Puett at ¶ 8; Exhibit 6 to Declaration of Terry R. Marston.

Absolute's attempt to cap the $92,029.21 in costs to remove the gray paid to $2,301 in wages paid to the blast operator is based on an incomplete presentation of facts, and the Motion should therefore be denied.

**4. Imperial is Entitled to Recover Lost Profits on the N12 and N60 Fuel Tank Project.**

Absolute argues Imperial should not be permitted to litigate its claim for lost profits on the N12 and N60 fuel tank project on the grounds that Imperial never obtained a contract, and because the request for lost profits is "purely speculative." Absolute is wrong on both counts. First, there is a triable issue of fact as to the existence of a contract. Absolute has produced no evidence that there was no contract; it is merely an argument of counsel contained in a brief. In contrast, Imperial has presented evidence of a contract in its interrogatory responses, attached as Exhibit 1 to the declaration of Terry R. Marston, at page 14. The interrogatory responses state that Jason Peterson (Absolute's vice president) approved Imperial's contract price of $374,226 to perform the tank project, and that Imperial drafted the project specifications. Absolute, however, ultimately did not permit Imperial to perform the work, but used the specifications drafted by Imperial. The interrogatory responses attached to the declaration of Mr. Marston further set forth the manner in which Imperial has calculated its lost profits to be $119,752.32, which is 32% of the contract price of $374,226. Lost profits are an appropriate category of damages for the N12 and N60 fuel tank project and have been reasonably calculated. Hence, the Motion should be denied.

## III.

## CONCLUSION

For the foregoing reasons, Imperial respectfully requests the Motion to dismiss or cap certain claims be denied, and that Absolute not be permitted to substitute its anticipated areas of cross-examination for a trial.

DATED: August 19, 2006

MONTELEONE & McCRORY LLP

Attorneys for Emerco, Inc., dba Imperial Industrial Coatings

By _____
WILLIAM R. BAERG, ESQ.
CSBN 167399
WSBN 23052