ERIC J. BROWN, ESQ.
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A. Street, Suite 300
Anchorage, Alaska 99503-4097
Telephone: (907) 563-8844
Facsimile: (907) 563-7322 (ebrown@jdolaw.com)

PATRICK J. DUFFY, III, ESQ.
WILLIAM R. BAERG, ESQ.
MONTELEONE & McCRORY, LLP
725 S. Figueroa Street, Suite 3200
Los Angeles, California 90017-5446
Telephone: (213) 612-9900
Facsimile: (213) 612-9930 (baerg@mmlawyers.com)

Attorneys for Defendant Forrest J. McKinley and
Defendant and Counter-Claimant EMERCO, INC.,
dba Imperial Industrial Coatings

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaskan Corporation,<br><br>*Plaintiff,*<br><br>v.<br><br>FORREST J. McKINLEY and "JANE DOE" McKINLEY, and the marital community property composed thereof d/b/a/ "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation d/b/a/ Imperial Industrial Coatings,<br><br>*Defendants.* | CASE NO. A-03-0199 Civil (RRB)<br><br>**DECLARATION OF RALPH THOMAS PUETT IN SUPPORT OF CROSS-CLAIMANT EMERCO, INC., DBA IMPERIAL INDUSTRIAL COATINGS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS OR CAP CERTAIN CLAIMS** |
| EMERCO, INC., a California Corporation d/b/a Imperial Industrial Coatings, and the United States for the Use and Benefit of EMERCO, Inc.,<br><br>*Counter-Claimant/Third Party Claimant,*<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaskan Corporation, et al.,<br><br>*Cross-Defendants/Third Party Defendants.* | |

| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of ABSOLUTE ENVIRONMENTAL SERVICES, INC., and Alaska corporation, | ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation, | ) ) ) |
| Defendant. | ) ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Counterclaim Plaintiff, | ) ) |
| v. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, | ) ) ) |
| Counterclaim Defendant. | ) ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| COFFMAN ENGINEERS, INC., a Washington corporation, | ) ) ) |
| Third-Party Defendant. | ) ) |

I, Ralph Thomas Puett, declare under penalty of perjury under the laws of the United States of America as follows:

1. I am the project manager and director of quality control for plaintiff, Imperial Industrial Coatings (hereinafter "Imperial"), and have personal knowledge of all matters stated herein. I make this affidavit in support of Imperial's opposition to the motion to dismiss or cap claims ("motion") filed by Absolute Environmental Services, Inc., ("Absolute").

2. The project that is the subject of this lawsuit generally consisted of removing coal tar epoxy coatings from a U.S. Coast Guard wharf and applying new coatings. The project was

known as "Cargo Wharf Pile Coating Phase II," (hereinafter "Project"), located on Kodiak Island, Alaska. I first learned of the Project in 2001 while attending a Structural Steel Painting Council seminar in Houston, Texas. There, I met David Olson and Jason Peterson, who represented themselves to me as the president and vice president, respectively, of Absolute. In 2001, I was working for Techno Coatings, a coatings contractor located in Anaheim, California, and I advised Mr. Olson of that fact. Mr. Olson told me of the Project, and said that his company, Absolute, had already committed itself to Brechan on other U.S. Coast Guard base contracts and would like to bid the Project. He asked me if I would be interested in bidding the job. In late 2001, I flew to Alaska at Mr. Olson's expense to look at the Project job site. Shortly after that visit, I left Techno Coatings and worked for Long Painting in Washington State for a brief period of time.

       3.     In May, 2002, I began my employment with Imperial. In a telephone call, I told Mr. Olson and Mr. Peterson I was now employed by Imperial, a blasting and coating contractor, located in Riverside County, California, and we discussed bidding the Project. Mr. Olson said he needed my coating experience to qualify for the work and to estimate the cost to perform the work and wanted Imperial to bid the job with Absolute. After I discussed the Project with the president of Imperial, Forrest McKinley, he agreed to bid the job.

       4.     Between May 2002 and September 2002, Absolute's vice-president, Jason Peterson, and I negotiated and prepared budget estimates for bidding the Project. Mr. Peterson told me Absolute needed a final price negotiated with Brechan prior to mid-October 2002. Ultimately, sometime in or near October 2002, on behalf of Imperial, I submitted a price quote to Absolute to perform the work for the Project in the sum of $772,123.00. Between October 2002 and February 2003, the contract terms, including the schedule, were negotiated and finalized.

       5.     I worked at the Project job site from April 2003, through August 2003, until just prior to Absolute locking Imperial and its staff out of the job site on August 7, 2003, and escorting Imperial's staff off the base. Imperial was not on the job site for a duration longer than anticipated in the original schedule.

       6.     Because of the narrow construction schedule, it was discussed between me and Jason Peterson specifically that the pre-fabrication of the coffer dams and other materials in

1  California was crucial to the Project's timely completion. Because the equipment was
2  prefabricated, it was able to be quickly assembled on the wharf and the on site work was able to
3  begin immediately. In my conversations with Dave Olson and Jason Peterson, they agreed that if
4  Imperial purchased materials and pre-constructed the coffer dams and rigging in California, and
5  delivered these items to Alaska, along with all the other materials, then upon delivery of said
6  items to Kodiak, Alaska, Absolute was supposed to pay for mobilization in the amount of
7  $204,743.74 as "materials on hand." As it turned out, Absolute did not pay all that was
8  promised. Moreover, instead of paying Imperial the full amount due, Brechan directly paid
9  $50,815 to Polar Supply Company, Inc., one of Imperial's material suppliers, over my objections
10 which I voiced on behalf of Imperial.

11       7..     Shortly after I voiced Imperial's objections to the unilateral decision to make a
12 direct payment to Imperial's supplier out of the mobilization payment, plus the unilateral
13 decision to pay $40,948.15 less than what was promised for mobilization (on top of the amount
14 deducted to pay Imperial's supplier), and after I informed Brechan and Absolute that the wharf
15 was not ready to be coated due to their failure to pre-remove cathodic protection devices, wiring
16 and conduit, non-structural steel, and other failures to prepare the site, I noticed a drastic change
17 in the way Brechan and Absolute approached the Project, and particularly their attitude toward
18 Imperial. The inspector hired by Brechan never approved Imperial's work, and never approved
19 Imperial's means and methods of work, even though the same quality, means and methods of the
20 work had been accepted both before we were on the job, and after we were removed from the
21 job. The Brechan-hired inspector also employed inappropriate and non-industry standard test
22 methods to evaluate our work. The Brechan-hired inspector, Coffman Engineers, refused to
23 acknowledge differing conditions and recommend necessary change orders, and used testing
24 equipment for which he failed to provide calibration certificates from the manufacturer. There
25 are many other examples of arbitrary and capricious conduct undertaken by Brechan's inspector
26 which appeared to be solely designed to fabricate a reason to terminate Imperial's contract.

27       8.     During the performance phase of the Project, Imperial encountered a differing site
28 condition. This differing site condition consisted of a layer of gray paint beneath the existing

coal tar epoxy coating that Imperial had contracted to remove. This undisclosed condition cost an additional $92,029.21 to remove. Imperial prepared and served Absolute with an invoice for this extra work, which invoice included a worksheet showing the calculations justifying the costs. A true and correct copy of this invoice and worksheet are attached hereto as Exhibit 1. At my deposition on November 1, 2003, I was asked about the costs to remove the gray paint. I recall at one point Mr. Marston asked me about the wages paid to the blast operator. However, as I testified at my deposition, there were also extra set up costs, pot tender operator costs, extra clean-up and disposal costs, extra equipment and material costs. In addition, there is overhead and profit on the added costs.

9. Ultimately, on or about August 7, 2003, the company which manufactured the coating materials used on the job sent a brief note which terminated my certification and Imperial's corporate certification to apply its products. No valid reasons were given for the termination. Even though the individuals who were actually applying the coatings were, and remained, certified, Absolute used the de-certification as an excuse to seize all of Imperial's equipment, including equipment being furnished under rental agreements, and locked Imperial out of the job site and escorted its staff off of the job site.

10. On August 7, 2003, Imperial declared Absolute in default of its contract. Also on August 7, 2003, Imperial served Absolute with a notice of conversion which itemized the property seized by Absolute and located at the job site, valued at $518,320, demanding payment thereof by August 8, 2003. No payment was ever made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 19th day of August, 2006, in Grand Terrace, California.

RALPH THOMAS PUETT

# Exhibit 1

*IMPERIAL INDUSTRIAL COATINGS*
*21813 PICO ST. UNIT D*
*GRAND TERRACE, CA 92313-5818*
*909-783-1284  909-779-2997 fax*

Invoice No. 175

# INVOICE

**Customer**

Name: Absolute Environmental Services, Inc.
Address: P.O. Box 112807
City: Anchorage    State: AK    ZIP: 99511-2897
Phone: 907-346-4490

**Misc**

Date: 8/5/03
Order No.: 130
Rep:
FOB:

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
|  | USCG Cargo Wharf Pile Coating Phase II, ISC Kodiak, AK 33-S01171 Task 643P92 |  |  |
|  | Gray Coating Removal with U.H.P. Waterblaster |  |  |
| 1 | Total Due for Equipment and Labor | $ 92,029.21 | $ 92,029.21 |
|  | SubTotal |  | $ 92,029.21 |
|  | Shipping |  |  |

**Payment**: Check

Comments: Net 30 Days
Name:
CC #:
Expires:

Tax Rate(s):

**TOTAL** $ 92,029.21

Office Use Only

Exhibit 1  p. 1 of 2

IIC-003641

| INV.# | | | | | Date | 8/4/03 |
|---|---|---|---|---|---|---|

# OUR COST

| Location | Cargo Wharf Pile Coating Phase 11 | | | | | |
|---|---|---|---|---|---|---|
| Description | Gray Coating Removal With UHP Water Blaster | | | Job# | | 130 |

| | | | | | | BILLING |
|---|---|---|---|---|---|---|
| Material | | | | | | |
| Tax | | | | | | 0.00 |
| Labor | | | | | | 29049.73 |
| Food | 11 Days X 5 Men | 55 HRS | 30.00 | | | 1650.00 |
| Hotel | 11 Days X 5 Men | 55 HRS | 36.66 | | | 2016.30 |
| Boats QTY 2 | W/Motor | 11 | 50.00 | | | 550.00 |
| | W/O Motor | 11 | 25.00 | | | 275.00 |
| EQUIP TOTALS | Float, Dryer, Comp, Container, Blaster, Pump, | | | 3% Small Tools | | 19330.65 |
| Sub Total | | | | | | 52871.68 |
| Overhead | | | | | | 13217.92 |
| Profit | | | | | | 6608.96 |
| **Total Mat.&Equip.** | | | | | | 92029.21 |

| St. Time Labor | Name | Hrs | | Total | | |
|---|---|---|---|---|---|---|
| | Joshua | 56 | 54.47 | 3050.32 | | |
| | Paul | 64 | 43.91 | 2810.24 | | |
| | Dave | 64 | 35.56 | 2275.84 | | |
| | Jason | 64 | 32.57 | 2084.48 | | |
| | Steve | 64 | 34.53 | 2209.92 | | |
| Float | Flat Rate | | | | 4000.00 | 4000.00 |
| Dryer | Josh Hrs | 113.5 | | | 9.89 | 1122.52 |
| 1300 - Comp | Josh Hrs | 113.5 | | | 50.75 | 5760.13 |
| 3% Small Tools X Labor | | | | | | 871.50 |

| Overtime Labor | Name | Hrs | | Total | Unit | Total |
|---|---|---|---|---|---|---|
| | Joshua | 57.5 | 80.48 | 4627.60 | | |
| | Paul | 58.5 | 61.35 | 3588.98 | | |
| | Dave | 58.5 | 48.82 | 2855.97 | | |
| | Jason | 58.5 | 44.25 | 2588.63 | | |
| | Steve | 58.5 | 50.56 | 2957.76 | | |

| Container X 4 | Josh Hrs | 113.5 | | | 1.96 | 889.84 |
|---|---|---|---|---|---|---|
| Sand Blaster | Josh Hrs | 113.5 | | | 0.76 | 86.26 |
| Spray Pump | Josh Hrs | 113.5 | | | 65.00 | 7377.50 |

| Total Labor | | | | 29049.73 | | |
|---|---|---|---|---|---|---|

IIC-003642

EXHIBIT 1 p. 2 of 2