1  Terry R. Marston, *pro hac vice,* terry@mhf-law.com
   Jami K. Elison, *pro hac vice,* jamie@mhf-law.com
2  Jesse P. Elison, *pro hac vice,* jessee@mhf-law.com
   MARSTON HEFFERNAN FOREMAN, PLLC
3  16880 N.E. 79th Street
   Redmond, Washington 98052
4  (425) 861-5700

5  PAUL J. NANGLE & ASSOCIATES
   Kerry Building
   101 Christensen Drive
6  Anchorage, Alaska 99501
   Telephone: (907) 274-8866
7

8  Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

9                UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>Plaintiff,<br>vs.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.<br><br>Defendants. | Case No.: A03-0199CV (RRB)<br><br>**ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>Counterclaimant/Third-party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al.,<br><br>Cross-defendants/Third-party Defendants. | |

ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS
ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES
Case No. A03-0199CV (RRB)-- 1

| | |
|---|---|
| 1 | THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, )<br>)<br>)<br>)<br>) |
| 2 | |
| 3 | |
| 4 | Plaintiff, )<br>) |
| | vs. ) |
| 5 | ) |
| 6 | SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. )<br>)<br>) |
| 7 | Defendants. )<br>) |
| 8 | |
| 9 | BRECHAN ENTERPRISES, INC., an Alaska corporation, )<br>)<br>) |
| 10 | Counterclaim Plaintiff, ) |
| 11 | vs. )<br>) |
| 12 | ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, )<br>)<br>) |
| 13 | Counterclaim Defendant. ) |
| 14 | BRECHAN ENTERPRISES, INC., an Alaska corporation, )<br>) |
| 15 | |
| 16 | Third-Party Plaintiff, )<br>) |
| | vs. ) |
| 17 | COFFMAN ENGINEERS, INC, a Washington Corporation. )<br>)<br>) |
| 18 | Third-Party Defendant. )<br>) |
| 19 | |
| 20 | ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation, )<br>)<br>) |
| 21 | Plaintiff/Cross-claimant, ) |
| | vs. ) |
| 22 | ) |
| 23 | COFFMAN ENGINEERS, INC, a Washington Corporation. )<br>)<br>) |
| 24 | Third-Party Defendant. )<br>) |
| 25 | |
| 26 | |

ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS
ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES
Case No. A03-0199CV (RRB)-- 2

## I. OPPOSITION AND RELIEF REQUESTED

Plaintiff Absolute Environmental Services, Inc. ("AESI") requests this Court deny Coffman's motion and reject Coffman's attempt to AESI the opportunity to present evidence of its business devastation damages to the jury.

## II. ISSUES

1. It is the right of the jury to reasonably determine the amount of damages to award. Coffman seeks to eliminate the entire category of business devastation damages based on an argument that the $2.28 business valuation should not go to the jury because there is no evidence establishing its current business; however, there is evidence that demonstrates that Brechan and Coffman devastated AESI leaving it with zero business value. Must this Court deny Coffman's motion?

2. Evidence demonstrates that Brechan and Coffman were solely responsible for the devastation of AESI's business. Without presenting any evidence that business devastation damages were caused by something else, Coffman seeks a purely advisory ruling that damages may be allocated to other entities. Should this court deny Coffman's alternative request as being not ripe, and leave the issue for proper resolution through jury instructions?

## IV. FACTS

Coffman's motion argues that, although an expert business valuation has been prepared, AESI's business devastation damages would be "speculative." Specifically, Coffman alleges that "Absolute can provide no evidence for the 'other half' of the required calculation." Coffman's Motion, p.11. Coffman reaches that conclusion by rejecting in conclusory fashion that out-of-hand that AESI could have (and, in fact, has) no fair market value. Coffman also ignores the well-established law governing the "quantification" of damages once "entitlement" to damages has been established.

AESI disputes Coffman's essential factual allegation, that: "It [Absolute] maintains a place of business, employees, and a telephone number. ... Its current value is, <u>without dispute</u>,

something other than zero." (emphasis added) Coffman's Motion, p.9. Coffman provides no testimony or evidence to support this self-serving, wholly unsubstantiated, and patently false assumption. But based on that <u>assumption</u>, Coffman asks this Court to remove from the jury the entire category of damages referred to as business devastation.

Expert opinion from a qualified business valuator, Mr. Donovan Rulien, establishes that as of December 2003 AESI enjoyed a business value of $2.28 million. *See* Coffman's Motion, pp.4-5. However, the value of AESI has been depleted to "zero" (and, in fact, less) due to the Cargo Wharf Project. *See* accompanying Decl. of Dave Olson. AESI has zero operating capital, was forced to sell its primary places of business, has been unable to earn any revenues that exceed its expenses, and carries liabilities far in excess of its remaining assets. *Id.* AESI currently has a net worth of negative $1,800,000. *Id.* These facts demonstrate the existence of substantial evidence that Brechan and Coffman devastated ASEI's business value and provide a reasonable basis for a jury to determine the amount of damages that are due.

AESI was brought onto the Cargo Wharf Project after Brechan and Coffman participated in a series of confidential communications about the defective condition of welds and the expensive repairs that would be required of Brechan to complete the project. *See* accompanying Olson Decl.[1] Brechan and Coffman were deeply concerned about the enormous cost that would be incurred in completing the Project under the circumstances.[2]

---

[1] *See also* declarations submitted in response and opposition to Brechan and Safeco's Motion for Summary Judgment re. Nondisclosure, incorporated by reference herein.

[2] These facts are extensively addressed in the briefing incorporated by reference in fn. 1, *supra*, and in the interest of economy will not be duplicated here.

Given the scope of the problems and the financial capacity of AESI, it was entirely foreseeable that AESI would suffer a devastation of its business as a consequence of by the scheme orchestrated by Brechan and Coffman:

> The Cargo Wharf Project is one of the three largest projects ever performed by AESI. The Project represented approximately one-third of AESI's average total volume for a year. AESI completed the Cargo Wharf project only by exhausting all of its working capital and tapping all of its available credit. All the costs added to the project did not generate added income for AESI because Brechan refused to pay AESI the fair value of even the undisputed extra services it provided (e.g., the cost of performing the Phase I coating subcontractor's warranty work).

*See* accompanying Olson Decl (¶¶ 15). The foreseeable, happened:

> Since that time, AESI has been unable to independently generate sufficient income from operations to pay its bills (including those arising out of the Cargo Wharf Project) as they become due. As a result, AESI has been forced to borrow substantial sums …
>
> Contrary to Coffman's wishful thinking, there is no speculation involved in this business valuation. AESI's balance sheets and accounting statements show that it has been devastated by Brechan and Coffman's decision to escape the losses arising of the concealed defective conditions on the Project by bringing in AESI as the "new guy" (or more accurately, as their "fall guy"). The losses AESI suffered were the responsibility of Brechan and/or Coffman; not AESI which had nothing to do with the defective conditions, but which was made to bear the expense of correcting them.

*Id.* (¶¶ 16-17). AESI now pursues business devastation damages as a necessary part of redress:

> AESI cannot obtain an adequate remedy for the damages caused by Brechan and Coffman if it is denied the opportunity to present and prove to the jury the validity of its claims for business devastation damages.

*Id.* (¶18). Coffman moves to dismiss the entire category of business devastation damages, or, alternatively, have those damages allocated among others who did not cause this loss. The motion must be denied.

ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS
ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES
Case No. A03-0199CV (RRB)-- 5

## IV. AUTHORITY

Summary judgment must be denied if a dispute exists about Coffman's key factual allegation. FRCP 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Coffman claims that AESI must have some positive business value because it has employees and a telephone number. But this Court must deny Coffman's motion because AESI has presented reasonable evidence demonstrating that AESI has had zero business value. *See* accompanying Olson Decl.

By moving to dismiss an entire category of damages, Coffman seeks to deny AESI an adequate remedy at law. In *Johnson v. Alaska State Dept. of Fish & Game*, 836 P.2d 896 (Alaska 1991), the Alaska Supreme Court discussed the right to a remedy as a bedrock legal principle.

> The only remaining question is whether there is a reasonable basis upon which to calculate the extent to which lost opportunity caused lost profits. As we explained in *Williams*, we will not deny recovery unless the best available evidence on damages <u>provides 'no possibility of a reasonably proximate estimation'</u> of lost fishing profits. *Williams*, 643 P.2d at 996.

*Id.* at 910 (emphasis added). Further:

> Other courts have recognized the justness of a liberal approach to estimating loss of profits where the difficulty in proving their amount is directly caused by the defendant's wrongdoing... 'With respect to this kind of damage, of course there cannot be the absolute certainty possible in many plainer cases; but a wrongdoer <u>cannot entirely escape the consequences of his unlawful acts merely on account of the difficulty of proving damages</u>. He can do so only where there is no possibility of a reasonable proximate estimation of such damages, which is not the fact in the case at bar.'

*Williams v. Eckert*, 643 P.2d 991, 996 (Alaska 1982) (emphasis added) (quoting *Pacific Steam Whaling Co. v. Alaska Packers' Ass'n*, 138 Cal. 632, 72 P. 161 (1903). Likewise, Coffman may not escape the consequences of its unlawful acts "merely on account of the difficulty in proving [the amount] damages" once the existence of substantial damages has been proven.

Under Alaska law recovery of lost profits damages will not be denied unless the <u>best available evidence</u> on damages provides <u>no possibility</u> of reasonably proximate estimation of lost profits. *Johnson,* 836 P.2d at 910. Moreover: "The language of [AS 22.10.020(c)] is clearly intended to provide a litigant complete relief in an appropriate case." *Id.* at 914. Clearly, AESI has presented substantial evidence sufficient to withstand the applicable test: Whether "the best available evidence on damages provides no possibility of reasonably proximate estimation." AESI has presented sound evidence of the existence of substantial business devastation damages, causation of business devastation damages, and quantification of business devastation damages.

1. **It is the right of the jury to reasonably estimate the amount of damages it will allow, and AESI is entitled to present its evidence of business devastation for the jury's consideration.**

Coffman's motion does not contest (and, therefore, for purposes of this motion concedes) duty, breach, causation, and the fact of substantial damages. Alaska uses the liberal rule for damages "quantification" once proof of "entitlement" to damages has been established.

> Normally, where the plaintiff has shown actual loss of business profits during a period as a result of defendant's breach of contract, he should not be denied recovery merely because the exact amount of damages cannot be readily ascertained. The rule against recovery of uncertain damages is, therefore, generally directed against uncertainty with respect to the <u>cause of</u> rather than the <u>extent of</u> damages. However, some competent evidence as to the amount of damages must still be introduced.

*Dowling Supply and Equipment, Inc. v. City of Anchorage,* 490 P.2d 907, 909-10 (Alaska 1971) (citing 11 Williston on Contracts s 1345 at 231-240 (3d ed. 1968); 5 Corbin on Contracts ss 1021-1022 at 127-147 (1964)) (emphasis added). Further:

> Once the fact of damages has been proven to a reasonable probability, <u>the amount</u> of such damages, on the other hand, need only be proven to such a degree as to allow the finder of fact <u>to 'reasonably estimate</u> the amount to be allowed for [the] item [of damages].'

*Pluid v. B.K.*, 948 P.2d 981, 984 (Alaska 1997) (quoting *Henderson v. Breesman*, 77 Ariz. 256, 269 P.2d 1059, 1061-62 (1954)) (emphasis added). Moreover:

> Westward's argument is unpersuasive. Given ATWV's strong showing that Westward's breach caused AJV substantial actual harm, the lack of certainty as to AJV's margin of profit on its revenues has relatively minor importance: Once the <u>fact of damages</u> has been proven to a reasonable probability, <u>the amount of such damages</u>, on the other hand, need only be proven to such a degree as to allow the finder of fact to '<u>reasonably estimate</u> the amount to be allowed for [the] item [of damages].'

*Alaska Tae Woong Venture, Inc. v. Westward Seafoods, Inc.*, 963 P.2d 1055, 1061 (Alaska 1998) (emphasis added).

The courts clearly articulate the underlying interests of the common law to provide redress for injury:

> The goal of damage awards for breach of contract is to place the injured party in as good a position as he would have been if the contract had been fully performed. Thus, lost profits, if proven, may be recovered. An award cannot stand, however, if the amount is the result of speculation, although it is not necessary to prove lost profits with exactness <u>so long as actual loss of profits is shown</u> and the jury has a <u>reasonable basis</u> on which to compute its award.

*City of Whittier v. Whittier Fuel and Marine Corp.*, 577 P.2d 216, 222 (Alaska 1978) (disapproved on other grounds; cites *Dowling* and Williston and Corbin on Contracts) (emphasis added). Further:

> Once actual damages are shown and there is a reasonable basis for computing an award, a defendant's opportunity for pre-trial discovery of the evidentiary basis for the amount claimed, the right to cross-examine witnesses and to present evidence, as well as the judge's duty to instruct the jury on the issue of certainty provide adequate protection against speculative verdicts.

*Whittier Fuel* at 224. The Supreme Court in *Whittier Fuel* approved jury instructions at issue on appeal. Instruction 13 read:

> In all such cases where a party to an action asks for monetary damages, the burden is upon that party to show that he has been injured, and also, with

reasonable certainty and by the best measure that can be used under the circumstances, the amount of the compensatory damages which he claims. The plaintiff must prove his damages by a preponderance of the evidence.

Instruction 16 read:

> The law permits compensatory damages awarded for a breach of contract to include loss of profit when at the time of contracting, the parties knew, or could reasonably be supposed to have had in their contemplation, facts which ordinarily would lead a person to expect loss of profits if a breach of the contract occurred…

As a matter of law, only the "fact" or existence of substantial damages must be proved by a "preponderance of evidence:"

> Pluid contends that B.K. failed to show by a preponderance of the evidence that she would require this amount of therapy. This may be true. However, Pluid has misconceived the quantum of evidence necessary to support an award of damages. It is, of course, the law that the *fact* of damages must be proven by a preponderance of the evidence. 'To recover for future medical expenses one must prove to a reasonable probability that they will occur.' *Blumenshine v. Baptiste*, 869 P.2d 470, 473 (Alaska 1994) (citing *Maddocks v. Bennett*, 456 P.2d 453, 548 (Alaska 1969)). Once the fact of damages has been proven to a reasonable probability, the *amount* of such damages, on the other hand, need only be proven to such a degree as to allow the finder of fact to "reasonably estimate the amount to be allowed for [the] item [of damages]." *Id.* (citing *Henderson v. Breesman*, 77 Ariz. 256, 269 P.2d 1059, 1061-62 (1954)).

*Pluid v. B.K.*, 948 P.2d 981, 984 (Alaska 1997). Further:

> In *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684, 691 (1927) (citations omitted), the United States Supreme Court, quoting the court of appeals, held:
> 'The plaintiff had an established business, and the future profits could be shown by past experience. It was permissible to arrive at net profits by deducting from gross profits of an earlier period an estimated expense of doing business. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. <u>It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.</u>' <u>This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.</u>

*City of Palmer v. Anderson*, 603 P.2d 495, 500 (Alaska 1979) (emphasis added). Thus, Coffman's motion to dismiss, based on speculation that AESI currently has a positive business value, plainly conflicts with established Alaska law.

AESI is eligible to recover business devastation damages. In *Geolar Inc. v. Gilbert/Commonwealth, Inc. of Michigan*, 874 P.2d 937, 947 (Alaska 1994), the court addressed a claim for loss of value as an operating business:

> In order to award damages for the loss of the business, the jury was instructed that it must find that Homer Electric had reason to foresee the loss as a probable result of the breach at the time that the contract was made.

There, the party provided "no evidence from which the jury could properly determine any business devastation damages;" *id.* at 947. However, here AESI has provided competent evidence from which a jury could easily "reasonably estimate the amount to be allowed." *Pluid v. B.K.*, 948 P.2d 981, 984.

Coffman's motion is an impermissible attempt to invade the province of the jury. The jury will be instructed on damages, but it may not be deprived of the opportunity to provide a fair remedy nor from exercising its right to "reasonably estimate the amount [of damages] to be allowed." *See Pluid v. B.K.*, 948 P.2d 981, 984 (Alaska 1997) (quoting *Henderson v. Breesman*, 77 Ariz. 256, 269 P.2d 1059, 1061-62 (1954)). Existing evidence readily substantiates a reasonable basis for a jury to conclude that a business devastation award is appropriate, and to quantify the amount of that award. *See* accompanying Olson Decl.

2. **Coffman's alternative request for allocation is not substantiated by any evidence, is potentially confusing, and should be denied as premature, thus, leaving the parties to appropriately resolve the issue through jury instructions.**

AESI will present objective evidence to the jury upon which the jury can conclude that Brechan and Coffman are solely responsible for AESI's business devastation damages. *See* accompanying Olson Decl. Coffman's request that business devastation damages be allocated is based on the following unsubstantiated speculation: "Here parties, to whom damages might be allocated by the finder of fact, in addition to Coffman and Brechan, would include at least Imperial, SPC, and the Coast Guard." *See* Coffman's Motion, p.11. Coffman presents <u>no evidence</u> to establish that any of these companies or government agencies is responsible for AESI's business devastation. Consequently, Coffman is requesting a purely advisory, hypothetical opinion. The Court should deny that request as premature and leave the issue for proper resolution at the time jury instructions are ruled upon.

## V. CONCLUSION

Coffman's motion to deny AESI a complete remedy at law seeks to interfere with the right of the jury to quantify damages. Coffman's motion is contrary to applicable law and devoid of factual support. AESI, having established <u>entitlement to</u> damages (the fact of) is entitled to present its evidence of business devastation damages to the jury. The jury has the power under law to then "reasonably estimate the amount to be allowed." Coffman's motions should be denied.

DATED this 18th day of August, 2006.

MARSTON HEFFERNAN FOREMAN, PLLC

By _____
Terry R. Marston II, WSBA No. 14440
Jami K. Elison, WSBA No. 31007
Jesse P. Elison, WSBA No. 36914
Attorneys for Plaintiff Absolute Environmental Service, Inc.

# CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury, under the laws of the State of Washington that I am now and at all times herein mentioned, a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below, a true and correct copy of the following:

1. ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES
2. DECLARATION OF DAVE OLSON;
2. [Proposed] ORDER DENYING COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES

were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| James B. Stoetzer<br>Lane Powell Spears Lubersky<br>1420 Fifth Avenue, Suite 4100<br>Seattle, WA 98101<br>*Atty for Coffman* | Jacob Nist<br>Perkins Coie, LLP<br>1029 West Third Avenue, Suite 300<br>Anchorage, AK 99501<br>*Atty for Brechan and Safeco* |
| Robert J. Dickson<br>Atkinson, Conway & Gagnon, Inc.<br>420 L Street, Suite 500<br>Anchorage, AK 99501<br>*Atty for Specialty Polymer Coatings* | Peter Partnow<br>Lane Powell Spears Lubersky<br>301 W. Northern Lights Boulevard<br>Suite 301<br>Anchorage, Alaska 99503<br>*Atty for Coffman* |
| Eric J. Brown, Esq.<br>Jermain Dunnagan & Owens, P.C.<br>3000 A Street, Suite 300<br>Anchorage, AK 99503-4097<br>*Atty for Forrest McKinley and Emerco* | Mr. William Baerg<br>Patrick Duffy<br>Monteleone & McCrory, LLP<br>725 South Figueroa Street, Suite 3750<br>Los Angeles, CA 90017-5446<br>*Atty for Forrest McKinley and Emerco* |

SIGNED at Redmond, Washington this 18th day of August, 2006.

_____
Terry R. Marston

ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS
ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES
Case No. A03-0199CV (RRB)-- 12