**Jarrell, Amy (Perkins Coie)**

| | |
|---|---|
| **From:** | Brown, Andrew LT [ABrown@pacnorwest.uscg.mil] |
| **Sent:** | Thursday, February 07, 2002 2:25 PM |
| **To:** | 'Matt Holmstrom' |
| **Cc:** | Rendon, Paul LT; Bonney, Scott |
| **Subject:** | RE: 2nd Quarter Spend down |

Matt,

We are also looking at adding the 6 additional units to UGH Ph1 and at least the first 9 unit of UGH Ph2. I will get more info to you soon. I understand Ph2 work may not be feasible this construction season, but we want to be in position to award if needed in second quarter.

Andy

> -----Original Message-----
> **From:** Rendon, Paul LT
> **Sent:** Thursday, February 07, 2002 3:12 PM
> **To:** Brown, Andrew LT
> **Cc:** Repanich, Anita; Matt Holmstrom
> **Subject:** RE: 2nd Quarter Spend down
>
>
> Andy,
> not to "pass the buck", but please close the loop with Matt on these projects....i.e. your projects.
>
> thx,
>
>
> LT Paul E. Rendon
> Facilities Design & Construction Center Pacific
> Civil Engineer, Alpha Team
> Phone: (206) 220-7437
> Fax:     (206) 220-7391
>
>> -----Original Message-----
>> **From:** Matt Holmstrom [mailto:mholmstrom-bei@gci.net]
>> **Sent:** Thursday, February 07, 2002 2:58 PM
>> **To:** Rendon, Paul LT
>> **Cc:** Anita Repanich
>> **Subject:** RE: 2nd Quarter Spenddown
>>
>>
>> Paul - With the cargo wharf problems one of "my superiors" is concerned we're in trouble. I take from the grocery list below we're still in the game.
>>
>> With that BS out of the way...
>>
>> Bldg. 25 demo - any dimensions or info would assist us in preparing a proposal
>> Demo Nemetz, Ph. III - any word on whether or not the sheetrock is going to be abated and disposed as ACM?
>> Again, potential savings for you if we can avoid
>> Barracks 7/8 Windows - info...
>>
>> I'm out starting 3/8. Although I'll be in email and phone contact I want to have all of these wrapped up by 3/8. We can do it.

BEI18984
38599-0012



BEH4076
38000-0012

2/13/04 1300 TELECON (cont.)

RE: CLEAN (H) surface needs to define risk of if conditions in writing ⇒ we have problems too late

No

# WHY THIS WASN'T picked on ... site visits



— SIGNATURE
— COATING
— INSPECTION

FROM SURFACE, UNDER WELD FIT-UP
# TRY TO DO w/o ADDL H

NOTE: ADON R. SAID THEY WILL NOT DO FU II FOR WHAT THEY SAID THEY WOULD 68K WE TO CHANGE IN BONDING METHOD

YEH FROM MIKE A. → SPC COATING TO RIGHT APPLICATION FOR H PILE

DAN SPEAKS ATTENDS
1) CAULKING/STRIPING W/ COATING
2) NO ADDL WELD PREP (IE, NO SURFACE COATING)

PROBLEM (WELD) ?
QUANTITY # COST TO FIX

SWEEPING WELD

X PROPOSAL DUE FOR SURFACING 2/13 COATING

BEI4077
38999-0012

**Brechan Enterprises, Inc.**
**Meeting with Coffman Engineering and Swalling Construction**
**Company**
**February 8, 2002**

A meeting was held on Feb. 8, 2002 at Coffman Engineering offices at 800 F Street in Anchorage, between Brechan Enterprises, Inc., Coffman Engineering, and Swalling Construction Company.  The subject of the meeting was the US Coast Guard Cargo Wharf Maintenance contract. Attendees were as follows:

      For Brechan Enterprises, Inc.:
            Michael R. Martin, President
            William E. Oliver, Vice President
            Matt Holmstrom, IDIQ Project Manager (by phone from Kodiak)

      For Coffman Engineers:
            Harold L. Hollis, Vice President & General Manager
            C. Dan Stears, Cathodic Protection Specialist
            Jerry Hardenbergh, Quality Assurance Specialist

      For Swalling Construction Company:
            Mike Swalling, President
            Andrew Romine, Operations Manager
            *Mike Anderson, Project Manager*

The meeting opened with a problem statement by Dan Stears.  Stears stated that the quality of the welding on the cargo dock, and the amount of unwelded adjacent surfaces amounted to a change in conditions.  The condition was not detectable by normal inspection, and was not a condition you would normally expect.  The rough existing welds, and the voids between adjacent pieces of metal will cause pinholes in the finish of the protective coating.  Both Coffman and Swalling showed photos that demonstrated various rough beads and voids that would cause a less than ideal coating surface.   Swalling took the position that the condition of the welds, the quality control standard and the coating product were incompatible.

After considerable discussion, a consensus emerged that a twenty-five year life extension of the dock would be achieved even with the existence of pinholes in the coating surface, and the resultant staining that would occur. The remaining question is how much staining will be acceptable to the customer (the Coast Guard).  Various methods and degrees of surface

BEI8236
38599-0012

preparation were discussed, and it was decided that two alternate proposals should be forwarded to the Coast Guard.

The first proposal would be to clean the surfaces as per the surface preparation spec, and coat without further seal welding or any other procedure. This will result in no additional cost, but a certain number of pinholes, and staining.

The second proposal would include, after the surface preparation, those areas which will produce voids in the surface be caulked or 'strip painted'. This procedure should reduce the number of pinholes at a much more econonomical cost. Mike Anderson estimated that it should go four times as fast as welding. Swalling will prepare a proposal that they will have to Coffman by Monday, February 11. After a review of the proposals, Brechan will discuss the alternatives with the Coast Guard.

In further discussions, Swalling made it clear they have no interest in continuing into phase II of this work at the current rates. They believe that they are under no obligation to do so, in spite of their May 23, 2001 letter being a part of their current subcontract.

Resolution of outstanding billings from Swalling to Brechan was as follows:

Fuel pier coating test invoice of $7,100 has been submitted on the December 31 pay estimate to the Coast Guard, and Swalling will be paid upon receipt.

CP, conduit and insulation scaffolding invoice of $13,017.50 has been submitted on the December 31 pay estimate to the Coast Guard, and Swalling will be paid upon receipt.

CP scaffold installation billing of $16,706.25 has been rejected because if Swalling had met their schedule, they would have had that scaffolding in place. This delay was before Swalling ran into excessive seal welding on the H pile.

H pile weld repair billing of $37,383.50 has been rejected because it cannot be determined how much of this billing is applicable to excessive welding. In addition, there appear to be excessive material and equipment charges. Romine agreed to review this billing and come up with a more reasonable figure.

Cad welding invoice of $975 is considered to be part of the original contract.

The meeting adjourned about four pm.

BEI8237
38599-0012

**SWALLING
CONSTRUCTION
COMPANY, INC.**
AN EQUAL OPPORTUNITY EMPLOYER
GENERAL CONTRACTOR #AA179



SERVING ALASKA SINCE 1947

www.swalling.com
P.O. Box 101039
ANCHORAGE, ALASKA 99510-1039
TELEPHONE (907) 272-3461
FACSIMILE (907) 274-6002
LOCATED AT 235 F St.

Matt Holmstrom
Brechan Enterprises
2705 Mill Bay Road
Via Fax 907-487-2587

February 12, 2002

Re:        Kodiak Coast Guard Dock Facility Coatings

Subject:   Changed Condition

Gentlemen;

This correspondence is in response to your request during our meeting of February 8,
2002, to provide specifics (in writing) of the changed conditions encountered on the
referenced project. For the record it should be noted that Swalling, Brechan, and
Coffman have been discussing these changed conditions since early October, when the
condition of the existing H-Pile supported dock structure was first exposed after the sand
blasting was completed on the first two bents of the H-Pile structure. Swalling
encountered two differing site conditions on the referenced project. Following is a brief
discussion of these conditions.

**Increased Quantity of Seal Welds**
Specification section 09967 article 1.7.3.9 indicates that there will be an estimated 100
linear feet of seal welding required for the project. Swalling completed the contract
estimated 100 linear feet of seal welding between Bents 1 and 23 of the pipe section of
the structure. Swalling had completed the contract required seal weld repairs prior to
starting the H-Pile section of the dock. As the project records show the H-Pile section of
the dock has a considerable amount of metal-to-metal connections that are not welded.
These include, but are not limited to, previously installed scaffold-hanging brackets,
permanent structure angle brace to h-pile connections, pipe support brackets, picking
eyehole plugs, and permanent structure splice plates at h-pile splices. By specification
these connections are required to be seal welded.

**Poor Quality Existing Welds**
After the sand blasting was completed on the first two bents of the H-Pile portion of the
dock Swalling noticed that the welds on the H-Pile structure were of poor quality. The
welds were discontinuous, porous, and were heavily puddled. Additionally, a number of
the welds included multiple passes to allow for bad fit up between the structural members
when originally installed. We have no knowledge of whether the welds in their as-built
condition are structurally competent. We do have knowledge that the condition of the
welds propagates pinholes in the coating when applied. We believe this is due to the

BEI4429
38599-0012

irregularity and the porous condition of the welds. These conditions were not visible during our site investigation of the project. Additionally, as previously stated it would not be reasonable for Swalling to expect such poor visual quality welds on any marine structure, let alone a structure that was constructed for the U.S Government.

Swalling's contract was for coatings' removal and application of a new coating. Grinding of minor imperfections such as weld splatter, sharp edges, and metal scale that would inhibit the adhesion of the coatings are included in the original scope of the work. Repair of poor quality welds is not included in the original scope of the work and is not in our contract.

**Proposals**

As you are aware we have offered a number of proposals at the request of Brechan and Coffman relating to the changed condition discussed previously. In response to recommendations made by Coffman during our 2/8/02 meeting following are additional proposals for your review.

**Phase 1**

**Scope of Structural Steel Repairs**
- All sharp edges, slivers, and weld splatter will be ground smooth after sandblasting
- Existing welds, crevices, and steel defects, other than those listed above, will be caulked
  - Caulking materials will be compatible with coatings system
    - Coating manufacturer will guarantee compatibility of coating and caulking
    - Coating manufacturer and Swalling will not warranty application over unprepared steel surfaces per coatings manufactures recommendations.
- Quality control criteria will be to repair obvious or low milage spots
  - Milage to be determined by standard PA2, dry film thickness test
  - Bare spots will be determined by visual examination
  - No testing or repairs will be made for pin-hole type defects
- Schedule
  - We anticipate 10 weeks of work to complete the remainder of Phase 1, including the work scope change addressed above. This includes two weeks of scaffolding installation and 8 weeks of coatings work.
- Weld repairs directed by Brechan to repair such items as leaking metal to metal joints, broken or cracked weld conditions, etc. will be done on an hourly basis. Reimbursement will be $100/per man hour. This rate includes labor, equipment, materials, room and board, and overhead and profit. Weld repairs will only be completed by the written direction of Brechan Enterprises. Written directive constitutes agreement to pay Swalling per the previously discussed terms.

BEI4430
38599-0012

**Phase II**

In addition I have included a proposal to complete Phase II of the project. Repair criteria for Phase II will be as described above. The cost to complete Phase II of the referenced project is as follows:

| | |
|---|---|
| Original Proposal | $683,000 |
| Changed Condition · Caulking | 138,219 |
| Changed Coating Removal Method | 93,660 |
| Increased Coating Material Usage | 50,760 |
| Mobilization 3rd Year | 31,000 |
| Total Cost Phase II | $996,639 |

Our proposal to complete the work for Phase II is $996,639 Lump Sum. Weld repairs will be completed on the same basis as discussed for Phase I.

The estimate for Phase II is based on a 4 to 5 month work schedule, depending on weather, daylight, and temperature conditions that may affect productivity. If Phase II were accepted we would plan to continue work immediately after completion of Phase I. Due to the decreasing amount of work time available in late fall because of tidal, daylight, and temperature changes, we anticipate that completion of the work will not take place until spring, early summer of 2003. We propose that the mobilization costs for 2003 be an additive item if we are not able to complete the work required in Phase II in 2002.

As discussed in the February 8, 2002 meeting time is of the essence. We have considerable work to do to prepare for the upcoming work season. The earlier we have a direction to proceed with the repair work the better off the project will be and the earlier we can provide the dock facility to the Coast Guard for their unencumbered use.

This proposal is valid for 30 days.

Sincerely,
SWALLING CONSTRUCTION CO., INC.

Andrew Ronline
Operations Manager

cc:     Dan Stears, Coffman Engineers

BEI4431
38599-0012

## Jarrell, Amy (Perkins Coie)

| | |
|---|---|
| From: | John Daley [JohnD@tnh-inc.com] |
| Sent: | Tuesday, February 19, 2002 10:18 AM |
| To: | Matt Holmstrom |
| Cc: | Ted Trueblood; Mike Shoemaker; JOEZ.TNH@tnh-inc.com |
| Subject: | Kodiak Cargo Wharf |

Matt,

At your request, I sent a set of preliminary plans to Barry Still at
Lash. He should get them this week. We'll go over them, change a
few things, and get an "official" preliminary set out in a week or two.

In other news, the USCG is looking for a fairly senior project
manager who is experienced in construction for work in Kodiak.
The person will work with both the Base and FDCC. (This could be
your new boss on base? Is Scott Bonney leaving? Am I letting the
cat out of the bag?) Anyway, they have approached TNH about
providing someone. Do you know of anyone out there locally who
would fit this description? Please be discrete about this inquiry.

Cheers,

John Daley

BEI20350
38599-0012



BEI4484
38599-0012

2/3/02



ABSOLUTE   IS   $309,000± LESS THAN   SWALLING

FOR   BASE   CONTRACT   WORK.

OVF.·dee      1,533,000
              <600,000>   TO   SWALLING
              _____
AVAILABLE BALANCE FOR      933,000
ORIG. WHARF

WHAT   IF   WE   CANT   AGREE   ON   THS   ADDL   H-PILE
PREP...

BEI1032
38599-0012

### Jarrell, Amy (Perkins Coie)

| | |
|---|---|
| **From:** | Rendon, Paul LT [PRendon@pacnorwest.uscg.mil] |
| **Sent:** | Monday, February 25, 2002 2:27 PM |
| **To:** | mholmstrom-bei@gci.net |
| **Cc:** | Repanich, Anita |
| **Subject:** | LETTER OF CONCERN - CARGO WHARF UPGRADES PH I |
| **Importance:** | High |

Matt,

here's the file I was trying to send you earlier.  You should have one letter and 8 Enclosures.

<<Letter.of.Concern.25Feb02.zip>>

Again, our concerns are not with Brechan, but with Swalling and Coffman.

thx,

LT Paul E. Rendon
Facilities Design & Construction Center Pacific
Civil Engineer, Alpha Team
Phone:  (206) 220-7437
Fax:     (206) 220-7391

**BEI20352**
38599-0012

☒

Commanding Officer
Facilities Design and Construction
Center Pacific

915 Second Ave, Room 2664
Seattle, WA 98174-1011
Staff Symbol:
Phone: (206) 220-7400
FAX: (206) 220-7390

11000
25 Feb 2002

Mr. M. Martin
Brechan Enterprises, Inc.
2705 Mill Bay Road
Kodiak, AK 99615

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE –
PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

Dear Mr. Martin

The current status of the Cargo Wharf Maintenance project has us very concerned with regards
to project completion and potential increases to project costs. Our concerns mainly stem from
your coating contractors' slow progress during last summer's construction season, which has
resulted in a delay of project completion by one year. This delay will undoubtedly have negative
impacts on other projects we have planned for the Cargo Wharf area during this upcoming
construction season. Furthermore, we understand that your coating contractor has submitted a
claim to address a changed site condition, namely additional coating preparation work that was
allegedly misrepresented in the contract specifications by your Design team. For these reasons,
and others noted below, we request you present to us a proposal detailing the actions you plan to
take to address the slow progress of your coating contractor, as well as their claim of changed
site conditions. Your proposal should include a detailed schedule, manpower loading chart,
critical milestones, and critical paths. Also include your technical recommendations on how to
proceed with coating the remaining portion of the Original Cargo Wharf and still achieve a
useful life of 25 years.

Background:
On 20 March 2001, we entered into a Design-Build (DB) contract with your firm to recoat the
Cargo Wharf Extension (7,400 sf) and Original Cargo Wharf (10,400 sf) at $40/sf for a total of
17,800 sf, or $712,000.00. Other work items included repair/replacement of the Cathodic
Protection System and miscellaneous repairs to fender piling and under pier utilities, to name a
few. Subsequently, your firm entered into a subcontract with Tryck Nyman Hayes, Inc., and
Coffman Engineers, Inc., as your Design team, as well as Swalling Construction Company, Inc.,
as your coatings contractor. The subcontract you initiated with Swalling was for $850,000.00,
Enclosure (1), and included coating the Cargo Wharf Extension and Bents 1-15 on the Original
Cargo Wharf, Enclosure (2). This discrepancy in contract funds needs to be resolved between
Brechan Enterprises and Swalling Construction. We do not plan on increasing our $712,000.00
contracted amount for coatings work. Please advise how you plan to correct this discrepancy.
Enclosure (3) details the actual limits of coatings work for this contract, taking into account
Swallings upfront costs for mobilization and equipment & material purchases.

BEI20353
38599-0012

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE –
PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

Design-Build (DB) Philosophy:
As you may be aware, one of the advantages, to the owner, of a Design-Build contract is that the
responsibility, and associated risk, of completing the design and construction is transferred from
the owner to the prime contractor. It is the Design-Build teams' responsibility to complete all
necessary preliminary studies, site investigations, contract specifications and drawings,
construction activities, and to work together as a team to resolve design or construction issues
that may arise during the project. On the other hand, one of the advantages to the Design-Build
Contractor is that you have the flexibility to "re-design" the project if actual site conditions
warrant a different approach. Please be aware that the "re-design" must be proposed to and
approved by the owner before construction proceeds. More importantly, the "re-design" must
meet the owner's initial scoping requirements, and all efforts associated with the "re-design" and
construction will be at no cost to the owner.

Concerns:
- Coating Progress: As mentioned previously, our contract was to recoat the Cargo Wharf
  Extension and Bents 1-12 on the Original Cargo Wharf during the 2001 summer
  construction season. To date, you have completed the Cargo Wharf Extension and Bents
  1-2 on the Original Cargo Wharf (Note: there are still some outstanding items with this
  portion of the work). Also, Bents 3-5 on the Original Cargo Wharf are 50% complete.
  Bents 6-12 on the Original Cargo Wharf remain to be blasted, coated, and inspected for
  compliance with contract specifications.
  - According to Swalling's letter to Brechan dated 22 June 01, Enclosure (4), their
    schedule shows them mobilizing to Kodiak on 9-10 July 01. Review of the Daily
    Reports actually shows them mobilizing 7 calendar days later on 17 July 01,
    Enclosure (5).
  - Swalling's schedule also indicates blasting and painting of the Cargo Wharf
    Extension was to start on 16 July 01 and be complete by 10 Aug 01. Again, after
    review of the Daily Reports, Enclosure (6), it shows an actual start date on 02 Aug
    01, 13 days later excluding Holidays and weekends.
  - Lastly, Swalling's schedule shows them starting the Original Cargo Wharf section on
    10 Aug 01. Enclosure (7) shows them actually starting work on 04 Oct 01, 38 days
    later, excluding Holidays and weekends.

  Swalling attempts to explain the reasons for some of these delays in their letter to
  Brechan dated 11 Sep 01, Enclosure (8). We do not agree nor accept their reasons for the
  delays. Late arrival of critical equipment, ineffectiveness of the self-contained blasting
  unit, and changing blasting methods are all aspects of the job that fall under Swalling's
  responsibility to address and correct. Furthermore, once actual production rates were
  known for the Cargo Wharf Extension in Aug 01, it was Swalling's responsibility to plan
  out the remaining portion of the work, and increase personnel and equipment to improve
  production rates and get the project back on schedule. Swalling's letter presents a plan to
  improve the productivity of the remaining work, but it's evident that their plan was either
  insufficient or not implemented. Please advise us why Swalling's production was
  insufficient and how you will ensure the remaining work will be completed this
  construction season at no additional cost to the Government.

BEI20354
38599-0012

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE –
PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

- Changed Site Condition: We have been informed that Swalling claims a changed site
  condition exists with the Original Cargo Wharf H-Piles. In particular, Swalling claims
  additional preparation work is required due to the amount of metal to metal connections,
  and their associated fillet welds, that require "seal welding" before coating begins.
  Swalling claims the contract specifications for the seal welding effort were
  misrepresented and therefore they are due compensation for the additional preparation
  work. Paragraph 1.7.3.9 of the specification reads: "A number of the utility hangars and
  braces were welded to the piles with fillet welds on one side only of the member. All
  metal to metal connections shall be seal welded prior to coating. An estimated 100 feet
  of seal welding will be required. The Contractor or Applicator will seal weld prior to
  surface preparation as required in 3.2.1.2." Apparently, the amount of seal welding
  required is substantially more than 100 feet. Please advise why Coffman Engineers did
  not more accurately represent the amount of seal welding that would be required for this
  job. In addition, paragraph 1.1.3 of the specification reads: "The Applicator shall inspect
  the wharf prior to bid to determine existing conditions and quantities of surfaces to be
  recoated...", and paragraph 3.1.4 reads: "The Contract Drawings and Specifications do
  not purport to describe construction information in absolute detail. An Applicator site
  visit is required prior to bidding and starting work.". Please present information detailing
  the site inspections and site visits conducted by Swalling prior to bidding the work.
  While it is unfortunate that Coffman Engineers did not accurately measure the amount of
  seal welding required, we find it hard to believe that this alleged changed condition could
  not have been detected during proper site inspections by both Coffman Engineers during
  the design phase and Swalling Construction during bid preparation. We base this
  statement on information presented in the "United States Coast Guard Cargo Wharf and
  Fuel Pier Inspection" report, dated Sep 21 – Oct 02, 2000, which was provided to the
  Design-Build team. The report clearly references the "non-structural steel elements" on
  the Cargo Wharf that were "only welded on one side, not 100 percent", which "results in
  a small gap on one side of the connection into which moisture can penetrate. These areas
  are quick to rust and the weld can be attacked from the back (non-welded) side of the
  member." Furthermore, the report references, numerous times, the "poor quality welds"
  associated with the utility system attachments, as well as the water, sewer, and steam
  system hangars in which "Field welds were not 100 percent around the perimeter of the
  joint resulting in crevices left between the angle iron and the base metal". The report also
  provides photographs documenting this condition. This clearly indicates this was a
  known condition that the Design-Build team had knowledge of. For these reasons we do
  not agree with, nor accept, Swalling's claim that a changed site condition exists. Please
  advise us how you plan to address this issue for the remaining portion of work, and how
  you intend to hold Coffman Engineers and Swalling Construction responsible for these
  errors.
- Performance: As a result of Swalling's slow progress last summer, we had to extend the
  services of the Quality Assurance representative (Mr. Jerry Hardenbergh) by two months.
  We agreed to pay for only one month. We do not plan to pay for his services this
  construction season, but expect him to be on-site for the entire project. We believe
  Swalling should be held directly responsible for this expense this construction season, as
  it was their slow progress which has caused the delay in project completion. Our other
  concerns stem from our on-site Coast Guard inspector's observations of Swalling's

BEI20355
38599-0012

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE –
PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

performance. It has been revealed that Swalling did not provide adequate containment
for the blasting operations. There were many days when blasting grit could be seen in the
water and drifting away with the current. Please ensure adequate containment is provided
to capture 100% of the blasting material. It was also noted that Swalling provided
substandard scaffolding that was marginally safe, did not have the proper certified
coating inspection equipment until 24 Sep 01, and their CQC person arrived on the job
late. Please ensure this does not happen again this summer.

Technical Proposal:
Please prepare a technical proposal with recommendations on how you plan to proceed with
coating the remaining portion of the Original Cargo Wharf, and ensure project completion this
construction season. Your proposal should consider alternative coating systems and
methodologies (i.e.. "re-design"), as well as the pro's and con's of continuing with the present
coating system. It should also study the "seal welding" condition and recommend how you plan
to address this issue. We are open to new ideas and different approaches that will provide the
Wharf with an additional 25 years of useful life. Please note that your recommendations and
plans for continuing work should be at no additional cost to the Government.

Lastly, the award of this Design-Build contract was not based on a Low-Bid competition, but
rather on a Best Value for the Government. We fully expected to get a Design-Build team well
experienced in the work at hand, and fully knowledgeable of the critical aspects of this type of
construction. We understand Coffman Engineers recommended Swalling Construction as a
reputable firm, well skilled and qualified for the job. With that said, we do not understand why
Swalling's experience in this field of work did not adequately prepare them for this project.

We request you present your proposal with your Design-Build Team at our office in Seattle,
WA, or at another mutually agreeable location no later than 11 Mar 02. If you have any
questions, please feel free to contact me, or my Project Manager, LT Paul E. Rendon at (206)
220-7437.

Sincerely,

ANITA REPANICH
Contracting Officer

4

**BEI20356**
38599-0012

12/12/2001  13:13  9074872587    BU; ... ....; BRECHAN ... ..    PAGE 04
SENT BY: SWALLING CONSTRUCTION;
RECEIVED:  8/12/01  2:18PM;  ->SWALLING CONSTRUCTION; #025; PAGE 2

06/12/2001  01:16  9074872587    BRECHAN    PAGE 02



**BRECHAN ENTERPRISES, INC. / GENERAL CONTRACTORS**
2705 MILL BAY ROAD • KODIAK, ALASKA 99615

June 12, 2001

Mike Anderson, Project Manager
Swalling Construction Co., Inc.
P.O. Box 101059
Anchorage, AK 99510-1059

Subject: USCG Cargo Wharf Maintenance Project

Dear Mike:

This is in response to your proposal dated May 23, 2001, and follow up discussions regarding the basis of the proposal. We intend to offer Swalling the project with the following conditions:

1. Your scaffolding will be made available to C/P and electrical subs as you and I discussed.
2. The price of your proposal will be increased by $40,000 to $1,533,000. This price will be a lump sum price for the entire project, based on an estimated 40,000 sf of coating, and will not be negotiable.
3. Swalling will enter in to a subcontract this year for the amount of $850,000 to accomplish that work described in your letter dated June 7, 2001. Although the Coast Guard fully intends to accomplish the balance of the coating next year this is dependent on funding. We will enter into a subcontract next year for the balance of the contract, or $683,000, once funding is secured.
4. You will use the SPC coating spelled out in your proposal letter – NO EXCEPTIONS.
5. There will be no change orders unless mutually agreed upon by the design team and Brechan Enterprises.

If you have questions or require additional information please call me at 487-2223.  Otherwise please sign below.

_F. Michael Swalling_  Pres.
Swalling Co. agrees to the above conditions.

Sincerely,

BRECHAN ENTERPRISES, INC.

Matt Holmstrom, P.E.
Project Manager

BRECHAN ENTERPRISES, INC. / GENERAL CONTRACTORS • 2705 Mill Bay Road • Kodiak, Alaska 99615
(907) 486-3215 • Fax (907) 486-4889
Alaska Business License #001858 • Alaska Contractor's License #AA441
— We Are An Equal Opportunity Employer —

**ENCLOSURE(S)**

BEI20357
38599-0012

12/18/2001   09:15    9074872587
SENT BY: SWALLING CONSTRUCTION;    907 274 6002;    BRECHAN    SEP-20-01  5:18PM;    PAGE  82
FAX NO. :    Aug. 30 2001 07:26AM  P2

JOB NO.: 00 32010

ACCOUNT CODE: _____

DATE: 7/1/01

## SUBCONTRACT
### (SHORT FORM)

This agreement is made this ___ day of ___ JUly ___ 200(, and effective the ___ day of

JUly ___ 2001 by and between ___ Brechan Enterprises, Inc. ___ (Contractor) and

Swalling Construction Co., Inc. (Subcontractor) to perform the Work identified in Article 2
in accordance with the Project's Contract Documents.

PROJECT: USCG Cargo Wharf Maintenance Project
OWNER: USCG FDCC PAC
ARCHITECT:
CONTRACTOR: Brechan
SUBCONTRACTOR: Swalling

### ARTICLE 1

CONTRACT PAYMENT. The Contractor agrees to pay Subcontractor for satisfactory performance of Subcontractor's Work

the sum of Eight Hundred Fifty Thousand + __/100 ___ Dollars (s 850,000.00)

Progress payments, less retainage of _____ %, shall be made to Subcontractor for Work satisfactorily performed
no later than seven (7) days after receipt by Contractor of payment from Owner for Subcontractor's Work. Final payment
of the balance due shall be made to Subcontractor no later than seven (7) days after receipt by Contractor of final pay-
ment from Owner for Subcontractor's Work. These payments are subject to receipt of such lien waivers, affidavits, war-
ranties and guarantees required by the Contract Documents or Contractor.

### ARTICLE 2

SCOPE OF WORK. Subcontractor agrees to commence Subcontractor's Work herein described upon notification by Con-
tractor, and to perform and complete such Work in accordance with Contract Documents and under the general direc-
tion of Contractor in accord with Contractor's schedule. This shall include all work necessary or incidental to complete the:

PILE COATING ON THE CARGO WHARF EXTENSION / ORIGINAL CARGO WHARF

Work for the Project as more particularly, though not exclusively specified in CONTRACT DOCUMENTS

PREPARED BY TRYCK NYMAN HAYES, INC. AND IN ACCORDANCE

WITH SWALLING PROPOSAL DATED MAY 23, 2001 AND WITH HOUSTON

LETTER DATED JUNE 12, 2001 ### ARTICLE 3

SCHEDULE OF WORK. Time is of the essence. Subcontractor shall provide Contractor with any requested scheduling
information of Subcontractor's Work. The Schedule of Work, including that of this Subcontract shall be prepared by Con-
tractor and may be revised as the Work progresses.

Subcontractor recognizes that changes may be made in the Schedule of Work and agrees to comply with such changes
without additional compensation.

Subcontractor shall coordinate its work with all other contractors, subcontractors, and suppliers on the Project so as not
to delay or damage the r performance, work, or the Project.

BEI20358
38599-0012

12/18/2001  89:16   9074872587                         BRECHAN                      PAGE  83
SENT BY: SWALLING CONSTRUCTION;                907 274 6002;     SEP-20-01  5:17PM;    PAGE 2/2

## ARTICLE 4

CHANGES. Contractor, without nullifying this Agreement, may direct Subcontractor in writing to make changes to Subcontractor's Work. Adjustment, if any, in the contract price or contract time resulting from such changes shall be set forth in a Subcontract Change Order pursuant to the Contract Documents.

## ARTICLE 5

FAILURE OF PERFORMANCE. Should Subcontractor fail to satisfy contractual deficiencies within three (3) working days from receipt of Contractor's written notice, then the Contractor, without prejudice to any right or remedies, shall have the right to take whatever steps it deems necessary to correct said deficiencies and charge the cost thereof to Subcontractor, who shall be liable for payment of same, including reasonable overhead, profit and attorneys fees.

## ARTICLE 6

INSURANCE. Prior to the start of Subcontractor's Work, Subcontractor shall procure and maintain in force for the duration of the Work, Worker's Compensation Insurance, Employer's Liability Insurance, Comprehensive General Liability Insurance and all insurance required of Contractor under the Contract Documents. Contractor, Owner and Architect shall be named as additional insureds on each of these policies, except for Worker's Compensation.

## ARTICLE 7

INDEMNIFICATION. To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect, Architect's consultants, and Contractor from all damages, losses, or expenses, including attorneys fees, from any claims or damages for bodily injury, sickness, disease, or death, or from claims for damage to tangible property, other than the Work itself. This indemnification shall extend to claims resulting from performance of this Subcontract and shall apply only to the extent that the claim or loss is caused in whole or in part by any negligent act or omission of Subcontractor or any of its agents, employees, or subcontractors. This indemnity shall be effective regardless of whether the claim or loss is caused in some part by a party to be indemnified. The obligation of Subcontractor under this Article shall not extend to claims or losses that are primarily caused by the Architect, or Architect's consultant's performance or failure to perform professional responsibilities.

## ARTICLE 8

WARRANTY. Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and agrees to satisfy same without cost to Owner or Contractor for a period of one (1) year from the date of Substantial Completion of the Project or per Contract Documents, whichever is longer.

## ARTICLE 9

SPECIAL PROVISIONS. [insert any special provisions required by this Subcontract.

In witness whereof, the parties have executed this Agreement under Seal, the day and year first written above.

Swalling Construction Co., Inc.                    BRECHAN ENTERPRISES
SUBCONTRACTOR (FIRM NAME)                          CONTRACTOR (FIRM NAME)

William Grelling, Pres                    MATT HOUSSIAN, PROJECT MANAGER
BY (TYPE OF NAME & SIGN / TITLE TITLE)             BY (TYPE & SIGN) NAME & SIGNATURE) TITLE

Subcontractor's Federal Tax ID Number  92-0013188

BEI20359
38599-0012

# SWALLING
# CONSTRUCTION
# COMPANY, INC.
AN EQUAL OPPORTUNITY EMPLOYER
GENERAL CONTRACTOR #AA179

SERVING ALASKA SINCE 1947

www.swalling.com
P.O. Box 191099
ANCHORAGE, ALASKA 99510-1099
TELEPHONE (907) 272-8461
FACSIMILE (907) 274-8002
LOCATED AT 238 F St

Matt Holstrom                                    July 11, 2001
Brechan Enterprises
2705 Mill Bay Road
Via Fax 907-487-2587

**Re:**  Kodiak Coast Guard Dock Facility Coatings

Gentlemen;

We have reviewed your proposed subcontract for the referenced work and would like to have the
following items included or changed as is appropriate:

Work Area
- Cargo Wharf Extension Grid 1 thru 23
- Original Cargo Wharf Grid 1 thru 15

Contract Documents Received
- Section 09967 "Coating of Steel Waterfront Structures"
- Drawings entitled "Cargo Wharf Maintenance at US Coast Guard ISC Kodiak" dated
  5/8/01 – 65% Drawings for bidding purposes
- Drawings entitled "Cargo Wharf Maintenance at US Coast Guard ISC Kodiak" dated
  6/21/0` – 100% Drawings hand delivered at pre-construction meeting on June 27, 2001

Exclusions:
- All electrical, cathodic, mechanical, and structural work, including demolition except for
  the removal and reinstallation of portions of the cathodic protection system for purposes
  of installation of the coatings on the pipe pile dock section.
- Third party inspection
- CQC Manager
- Bond
- Lay down area for equipment and materials within ¼ mile of project site
- Off season storage for construction equipment and materials
- Fresh water supply for power washing
- Permits and fees for same

If you have any questions or need additional information please contact me.

Sincerely,
SWALLING CONSTRUCTION CO., INC.

Mike Andersen
Project Manager
NACE Certificated Coatings Inspector #3661

**ENCLOSURE(2)**

BEI20360
38599-0012

|  | Value | Subtotal |
|---|---|---|
| **Mobilization** | | |
| Scaffold Materials and Fabrication | $130,000 | |
| Mobilize Equipment and Materials | $117,000 | |
| | | $247,000 |
| **Pipe Pile Section: 7,400 sf** | | |
| Install Scaffold/Contain Piles | $90,000 | |
| Blast and Paint | $117,250 | |
| | | $207,250 |
| **Yr 2001 H-Pile Section: 12,800 sf (Bent 1-15)** | | |
| Install Scaffold/Contain Piles | $150,000 | |
| Blast and Paint | $245,750 | |
| | | $395,750 |
| **Total Contract Value: 20,200 sf** | $850,000 | |

| **Coast Guard & Brechan Negotiated Costs** | |
|---|---|
| **Cargo Wharf Extension: 7,400 sf** | |
| **Original Cargo Wharf: 10,400 sf** | |
| **Total Contract Value: 17,800 sf * $40/sf** | $712,000 |

| **Adjusted Square Footage to be Recoated** | | |
|---|---|---|
| Swalling Total Contract Value: 20,200 sf | | $850,000 |
| Minus Swalling Mobilization Costs | - | $247,000 |
| | Subtotal | $603,000 |
| Swallings Cost to Recoat per Square Foot | | |
| $603,000 / 20,200 sf | $$ / sf = | $30 |
| Coast Guard Total Contract Value | | $712,000 |
| Minus Swalling Mobilization Costs | - | $247,000 |
| | Subtotal | $465,000 |
| Square Footage to be Recoated | | |
| $465,000 / $30sf | sf = | 15,500 |

| **Limits of Coatings Work** | sf = | 15,500 |
|---|---|---|
| Cargo Wharf Extension: 7,400 sf | - | 7,400 |
| | Subtotal | 8,100 |
| Original Cargo Wharf Bents: 1-11 = 7,598 | - | 7,598 |
| | Subtotal | 502 |
| Original Cargo Wharf Bent 12 (Piles Only) | - | 500 |
| | Subtotal | 2 |

| **Square Feet Coated To Date** | | |
|---|---|---|
| Cargo Wharf Extension | sf = | 7,400 |
| Original Cargo Wharf Bents 1-2 | sf = | 1,324 |
| Original Cargo Wharf Bents 3-5 at 50% | sf = | 1,026 |
| | Total = | 9,750 |
| | Remaining = | 5,750 |

**SWALLING CONSTRUCTION COMPANY, INC.**
AN EQUAL OPPORTUNITY EMPLOYER
GENERAL CONTRACTOR AAA179



SERVING ALASKA SINCE 1947

www.swalling.com
P.O. Box 101039
ANCHORAGE, ALASKA 99510-1039
TELEPHONE (907) 272-3481
FACSIMILE (907) 274-8002
LOCATED AT 205 F ST.

Matt Hulstrom                                June 22, 2001
Brechan Enterprises
2705 Mill Bay Road
Via Fax 907-487-2587

Re:    Kodiak Coast Guard Dock Facility Coatings

Gentlemen:

Following is our preliminary schedule for the coatings work for the referenced project:

| Description | Date |
|---|---|
| Anchorage Mobilization | 6/25-7/7 |

- Includes lead time required to procure specialized blasting and coating equipment

| Kodiak Mobilization | 7/9-7/10 |
|---|---|
| Initial Scaffold Installation | 7/11-7/15 |
| Blast and Paint Pipe Pile Dock Section | 7/16-8/10 |

- Blast and paint will start at the south end of the pier and work north. For planning purposes anticipate that the work will move at a relatively even pace from south to north.
- Anticipate scaffold installed on 5 pipe pile bents at any one time.

| Blast and Paint H Pile Dock Section | 8/10-10/1 |
|---|---|

- Blast and paint will start at the south end of the pier and work north. For planning purposes anticipate that the work will move at a relatively even pace from south to north.
- Anticipate approximately 2500 SF scaffold area (footprint of dock) at H-Pile portion of the dock at any one time.

If you have any questions or need additional information please contact me.

Sincerely,
SWALLING CONSTRUCTION CO., INC.

Mike Anderson
Project Manager
NACE Certificated Coatings Inspector #3661

**ENCLOSURE(4)**

BEI20362
38599-0012

**DAILY SUMMARY REPORT**

| **BRECHAN ENTERPRISES** | **CONTRACT NO:** | 32010 CG Task 007 |
|---|---|---|
| **LOCATION:** U.S. COAST GUARD ISC KODIAK KODIAK, ALASKA | **PROJECT TITLE:** | CARGO WHARF MAINTENANCE |
| **INSPECTOR:** Jerry R. Hardenbergh | **DATE:** | 17 JULY 2001 |

**GENERAL:**

Sub-contractors on site:

- Swalling Construction; Coating contractor.
- Local Electric; Electrical and "dry" Cathodic Protection contractor.

**COATINGS:**

- Swalling arrived on site today and began to mobilize and stage blasting and coating equipment.

*Outstanding Items:*
   o   None

**CATHODIC PROTECTION:**

- None

*Outstanding Items:*
   o   None

**NON-CONFORMANCE ITEMS:**

- None

**MISCELLANEOUS:**

- 

Signature:

**BEI20363**
38599-0012

**DAILY SUMMARY REPORT**

| **BRECHAN ENTERPRISES** | **CONTRACT NO:** | 32010 CG Task 007 |
|---|---|---|
| **LOCATION:** U.S. COAST GUARD ISC KODIAK  KODIAK, ALASKA | **PROJECT TITLE:** | **CARGO WHARF MAINTENANCE** |
| **INSPECTOR:** Jerry R. Hardenbergh | **DATE:** | 02 AUGUST 2001 |

### GENERAL:

Sub-contractors / visitors on site:
- Swalling Construction; Coating contractor.
- Local Electric; Electrical and "Dry" Cathodic Protection contractor.
- SPC coating representative, Rob Allistion is on-site today.
- Polar Supply representative, Tim Lawrence is on-site today.

### COATINGS:

- Verified coatings and abrasive blast media are stored in accordance with manufacture's recommendations.

- Mike Anderson with Swalling is on-site and will provide QC until their full time QC Inspector can arrive on the project.

- SPC representative and Polar Supply representative will be on-site until Friday to provide technical assistance for any of the coating equipment and coatings.

- Crew prepared 2 steel test plates coated with SP1864 coating system. These test plates will be tested and retained as part of the project documentation.

- Crews began pressure water wash on piles A-1, B-1, C-1. Surface testing indicated chloride contamination at < 3ppm. Acceptable to proceed to abrasive basting.

- Started vacuum abrasive blasting with steel grit then encountered problems with speed and efficiency of this equipment. Crew installed additional containment and switched to open air abrasive blasting with Green Diamond abrasive. Production increased with this technique.

- Crew completed abrasive blasting from elevation 119' down to elev. 113. Surface anchor profile was measured to be 4.1 mills. Ron Allistion conducted surface chloride testing and indicated < 31ppm with his test equipment. Ron then instructed the contractor to proceed to coating application.

- Coating application began and progressed very smoothly. The finished coat looked very good with no visually apparent defects. No holiday testing was performed at this time. 30 dry film thickness readings (DFT) were taken, results are as follows:
  - Minimum:     16.20
  - Maximum:     43.40
  - Average:     28.94

### Outstanding Items:
  - o  Project submittals not complete.

**BEI20364**
38599-0012

Daily Summary Report
USCG Kodiak Cargo Wharf Maintenance Project

## CATHODIC PROTECTION:

- None

***Outstanding Items:***
  - o   Material submittals are still not complete from Local Electric.

## NON-CONFORMANCE ITEMS:

- None

## MISCELLANEOUS:

- Coast Guard vessel "Spar" is having a ceremony all day August 3rd, no work will be performed on the cargo wharf that day.

## PHOTOGRAPHS:




| Surface chloride contamination test after pressure water wash. Note: Bresle cell patch on pile and Bresle chloride test kit. | Completed coating system on upper portion of pile A-1. |
|---|---|

Signature:

BEI20365
38599-0012

**DAILY SUMMARY REPORT**



| BRECHAN ENTERPRISES | | CONTRACT NO: | 32010 CG Task 007 |
|---|---|---|---|
| **LOCATION:** U.S. COAST GUARD ISC KODIAK KODIAK, ALASKA | | **PROJECT TITLE:** | CARGO WHARF MAINTENANCE |
| **INSPECTOR:** Jerry R. Hardenbergh | | **DATE:** | 04 October 2001 |

### General:

Sub-contractors / visitors on site:
- Swalling Construction, Coating contractor.

Weather Conditions at 12:53 PM:

| | |
|---:|---|
| **Wind** | from the ESE (110 degrees) at 17 MPH (15 KT) |
| **Visibility** | 6 mile(s) |
| **Sky conditions** | overcast |
| **Weather** | Light rain Mist |
| **Precipitation last hour** | A trace |
| **Temperature** | 51.1 F (10.6 C) |
| **Dew Point** | 46.9 F (8.3 C) |
| **Relative Humidity** | 85% |
| **Pressure (altimeter)** | 29.59 in. Hg |

### Coatings (Wharf Extension):

- No work performed. All piles have been coated. Only outstanding items remain to be completed.

#### Outstanding Items:
- o Grind off cad weld location and recoat same area on pile 6D. Coat with SPC 1864 SG.
- o Re-attach CP connection and recoat same area on pile 10D. Coat with SPC 1864 SG.
- o Re-attach CP connection and recoat same area on pile 14D. Coat with SPC 1864 SG.
- o Re-attach CP connection and recoat same area on pile 18C. Coat with SPC 1864 SG.
- o Re-attach CP connection and recoat same area on pile 22C. Coat with SPC 1864 SG.
- o Re-install sewer pipe insulation at pile 21A location.
- o NCR 01.
- o Repair coating holidays on bent 23.

### Coatings (Original Wharf):

- Abrasive blasting started on bent 1 (H-piles). Progress is slow while crew works out details. Crew quit work at 3:00 PM.

#### Outstanding Items:
- o None

BEI20366
38599-0012

Daily Summary Report
USCG Kodiak Cargo Wharf Maintenance Project
04 October 2001

**Cathodic Protection:**

- No work performed. Electrician was scheduled for today, however the crew did not show up.

***Outstanding Items:***
  o None

**Expansion Joint Repair:**

- Expansion joint repair is complete. 28-day compressive strength test results to follow.

**Under Pier Utilities:**

- Abandoned electrical conduit has been identified and is scheduled for removal in conjunction with rectifier new positive circuit install.

**Fender Pile & Related Work:**

- All new piles and pile framing is installed on west side of wharf extension in accordance with project specifications.

***Outstanding Items:***
  o 2 pile framing locations on east side of wharf extension were not repaired due to lack of materials.

**Sewer Pipe Insulation Jacket Repair:**

- Location "f" on project drawing C1 has been repaired. Awaiting scaffolding installation on the other locations before insulator returns to complete repairs.

**Non-Conformance Items:**

- NCR #01, Condition of coating not in compliance with paragraph 3.5.8.11 of the project specifications. Coating repair is required before acceptance. Further inspection will be conducted to define specific areas of repair. Testing to be performed on this area will include DFT, Holiday Testing, Hardness Testing and Adhesion Testing.

**Miscellaneous:**

- Swalling's project manager, Mike Andersen arrived on-site.
- Weekly project meeting conducted. See weekly meeting summary.

Signature: _____
        J.R. Hardenbergh

BEI20367
38599-0012



# SWALLING CONSTRUCTION COMPANY, INC.

AN EQUAL OPPORTUNITY EMPLOYER
GENERAL CONTRACTOR #AA175

www.swalling.com
P.O. Box 101039
ANCHORAGE, ALASKA 99510-1039
TELEPHONE (907) 272-8411
FACSIMILE (907) 274-6602
LOCATED AT 226 F ST.

Matt Holstrom
Brechan Enterprises
2703 Mill Bay Road
Via Fax 907-487-2587

September   , 2001

Re:          Kodiak Coast Guard Dock Facility Coatings

Subject:     Progress

Gentlemen:

This letter is in response to our conversation this morning of the Coast Guard's concerns over the progress of the work for the referenced project. As I indicated this morning we are well aware that our progress to date is not what we anticipated or planned. In an effort to explain the problems we have encountered to date I have reviewed our daily reports for the project and discussed the project with our field supervisors and Project Manager, Mike Andersen.

The first and probably the most significant event that occurred to delay the progress of the project was the late arrival of the specialized equipment required to do the work required for the project. Our original scheduled arrival date of the specialized equipment required for the project was 7/10/01. This date was based on approximated procurement and shipment dates provided by the various suppliers during our initial bid and proposal preparation. Our records indicate that the coatings application equipment arrived in Kodiak on 7/18/01 and one of the two-planned self-contained vacuuming sand blast units arrived on 7/25/01. According to our suppliers, the availability of the equipment had changed, been delayed, since the submittal of our original proposal. Essentially, the arrival of the equipment delayed the start of work until 7/25/01, 12 days later than our anticipated start of work.

The second delay was the ineffectiveness of the self-contained blasting unit. Although we were confident, based on the recommendations of the manufacturer and other industry representatives, that these units were the best tools for the project due to the environmental concerns of the project on-site testing proved that they were inadequate for the work required. Initial blasting with the self-contained units started on 7/28. The determination that the unit would not be effective was made on 8/2. A total of 5 days were lost in this process.

Through on-site testing, open air blasting was determined to be a viable method to remove the existing coatings. This required a change in our operational plan. Although the scaffolding constructed for the project was adequate for open air blasting, additional containment was required to contain the blast media. This required additional materials and personnel. Though our records do not address any specific delay the initial requirement for this work caused I believe a conservative estimate would be 2 days, which would put our actual production start of the project at 8/4/01, 18 days after our planned start.

Since the start of production work we have lost three working days due to high winds, three working days due to environmental conditions, and two (cumulative) days due to problems with

**ENCLOSURE(8)**

BEI20368
38599-0012



the coatings application equipment. These total 8 days of delay. Our original schedule showed duration of 24 days to complete the pipe pile portion of the project. The drawings indicate that there are 83 pipe piles between Bent 1 and 23, inclusive. Our production to complete this work was planned at approximately 3.5 piles per day, or roughly 1 bent per day. Our actual production to date, not including the delays listed above has been 52 piles in 27 working days or approximately 1.8 piles per day.

Following is a list of actions we intend to take to improve the productivity of the remaining work:

- The scaffolding (37.5' long) utilized for the 4-bent areas will be reconfigured to scaffold (25.0' long) the 3-bent areas. The materials removed from the 4-bent areas will be re-fabricated to make additional scaffold for the 3-bent areas. Additional personnel will be brought on to facilitate this work. We anticipate that this will allow more time and available work areas for the blasting and painting work.
  Increase the blasting personnel to three sand blasters. In conjunction with the additional work area available additional blasting and painting personnel will be on-site to increase the daily work out put.
- Additional manpower will be brought to site for scaffolding work required for other crafts. We request a plan of the required scaffolding to facilitate this effort.
  Additional replacement parts for the specialized coating equipment will be mobilized to site to minimize delays caused by equipment failure or parts fatigue.
  Dehumidification equipment will be utilized to progress the work as long as practical.

We anticipate that these steps will allow us to bring the productivity closer to what we planned. Extreme weather conditions will be out of our control. Work will continue until the weather and/or safety conditions do not allow the coatings work to continue.

As we discussed this morning Mike Andersen and I will be on site as soon as we are able to travel.

Sincerely,
SWALLING CONSTRUCTION CO., INC.

Andrew Romhic
Operations Manager

BEI20369
38599-0012