READ INSTRUCTIONS ON PAGE 2
PAGE 1 OF 1     PAGES

| DEPARTMENT OF TRANSPORTATION | PROCUREMENT REQUEST NO. |
|---|---|

**P**ROCUREMENT **R**EQUEST **P**ROCESS **R**APIDLY

| | |
|---|---|
| | DATE RECEIVED |
| | **14Mar02** |

| 1. NAME, PHONE NUMBER, AND ROUTING SYMBOL OF PERSON TO CONTACT | 2. TYPE OF REQUEST (Check one) |
|---|---|
| LT Paul E. Rendon, x7437 | A ☐ NEW REQUEST |

| 3. ORIGINATING OFFICE DATA | |
|---|---|
| FD&CC PACIFIC | B ☐ CHANGE TO PENDING PR NO. |

| 4. ADDITIONAL INFORMATION (Suggested supply sources, security data, etc.) | |
|---|---|
| Brechan Enterprises 2705 Mill Bay Road Kodiak, AK  99615 poc: Matt Holmstrom (907) 487-2223;  Fax#: (907) 487-2587 | C ☒ MODIFICATION TO CONTRACT OR ORDER NO.  501643XX0- |

**5. APPROVALS**

| APPROVING OFFICIALS | ROUTING SYMBOL (B) | DATE (C) | INTERNAL ROUTING | | 6. CONSIGNEE AND DESTINATION |
|---|---|---|---|---|---|
| | | | INITIALS (D) | ROUTING SYMBOL (E) | FD&CC Pacific |
| (1) AUTHORIZED REQUISITIONER LT Paul E. Rendon | PM | 14MAR02 | | | |
| (2) ACCOUNTING CERTIFICATION OFFICER Jerald Johnson | ATL | | | | 7. DATE(S) REQUIRED |
| (3) CDR Carl Uchytil | P&M | | | | 19 March 2002 |
| (4) | | | | | 8. GOVERNMENT FURNISHED PROPERTY ☐ YES ☐ NO (If "YES" see par. 8 of Instructions on page 2.) |

**9. DESCRIPTION OF ITEMS OR SERVICES**

| ITEM NO. (A) | ITEM OR SERVICE (Include Specifications and Special Instructions) (B) | QTY (C) | UNIT (D) | ESTIMATED COST | |
|---|---|---|---|---|---|
| | | | | UNIT (E) | AMOUNT (F) |
| 001 | Modification to Task Order #007 | 01 | job | $100,000.00 | $100,000.00 |
| | Change Order due to Change in Scope with regards to seal welding and "stripe caulking". | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | A/L | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | | | | | $0.00 |
| | AFC43 Project # 33-S01047 LUFS Code: O | | | | $0.00 |

**10. ACCOUNTING DATA**

NEGOTIATED $ 90,000.00 02 APR 02 PWR

| SYSTEMS DATA | CHECK APPLICABLE QUARTER | TOTAL |
|---|---|---|
| | ☐ 1ST  ☒ 2ND  ☐ 3RD  ☐ 4TH | GOV'T EST $100,000.00 |

| AGY | DIST TY | APPN CODE | LIM CODE | AFC CODE | ALC | PROGRAM ELEMENT | COST CENTER | OBJECT CLASS | DOCUMENT NUMBER | | | PROJECT | ACCOUNTING AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | TYPE | FY | P.R. NUMBER | SUFFIX | |
| 2 | | | | | O | | | | 21 | | | | |
| 2 | | | | | O | | | | 21 | | | | |
| 2 | | | | | O | | | | 21 | | | | |

FORM DOT F 4200.1.2CG  (Rev. 2-94)
PREVIOUS EDITIONS ARE OBSOLETE

DTCG50-01-D-643XX0
Task Order 0007
Modification 0005
Page 2 of 2

A.  This modification compensates the Contractor for the changes listed in item #1 below, and also clarifies the scope changes for this Task Order as listed in item #2 below:

1.  Additional Surface Prep, up to and including Bent 12
    Additional QA
    **Total = $90,000.00**

2.  Regarding Brechan letter dated March 15, 2002, to Ms. Anita Repanich, Contracting Officer:
    a)  The following enclosures were provided for *informational purposes only* and are not to be construed as a part of their proposal:
        i)   Letter from Swalling dated Dec. 21, 2001
        ii)  Letter from Swalling dated Feb. 12, 2002
    b)  Enclosure titled "Memorandum from Coffman dated Feb. 27, 2002" is a part of this modification with the following exceptions (Note: The Coast Guard's Construction Inspector (CI) and/or Brechan's independent Quality Assurance (Q/A) representative shall determine and identify/mark which members are structural or abandoned non-structural).
        i)    Structural members with poor quality or defective welds shall be prepared (i.e. abrasive blast cleaned, **seal welded**, inspected, etc...), coated, tested, and warranted in accordance with the original contract specifications Section 09967 "Coating of Steel Waterfront Structures", dated March 2001.
        ii)   Structural members with good quality or non-defective welds shall be prepared (i.e. abrasive blast cleaned, **"stripe coated"** or **caulked**, inspected, etc...), coated, tested, and warranted in accordance with the original contract specifications Section 09967 "Coating of Steel Waterfront Structures", dated March 2001.
        iii)  **Abandoned** non-structural members such as utility supports and unused angle clips may be removed if determined to be cost effective and increase overall worker productivity.
        iv)   Non-structural members such as utility supports with poor quality or defective welds shall be prepared (i.e. abrasive blast cleaned, **"stripe coated"** or **caulked**, inspected, etc...), coated, and tested in accordance with the original contract specifications Section 09967 "Coating of Steel Waterfront Structures", dated March 2001, but not warranted in accordance with the contract specifications.

i, iii + iv or pul of Coffman 1/r.?

B.  There will be **No Time and Materials** (T&M) work for the remaining phase of this project, unless authorized by the Contracting Officer.

C.  The remaining phase of this project will complete all coatings up to and including Bent 12.

D.  Performance period is extended to **01 July 2002**.

E.  Total task value changed    FROM:    $1,412,803.00
                                 TO:      $1,502,803.00

F.  This agreement constitutes full, complete and final settlement of any and all claims for equitable adjustment in the form of monetary and/or time relief which the contractor may have and which may arise in the future, either directly or indirectly, from this supplemental agreement.

USCG-200257



**BRECHAN ENTERPRISES, INC / GENERAL CONTRACTORS**
2705 MILL BAY ROAD • KODIAK, ALASKA 99615

March 15, 2002

Ms. Anita Repanich
Contracting Officer
USCG FD&CC PAC
915 Second Ave., Room 2664
Seattle, WA 98174-1011

Subject: Task Order # 0007; DTCG50-01-D-643XXO
           Cargo Wharf Maintenance Phase 1; Project # 33-S01047

Dear Ms. Repanich:

Please consider this our response to your letter dated February 25, 2002, regarding pile coating concerns. We too are concerned about the progress and changed condition issues. Our primary focus has always been, and will continue to be, delivering a high quality product to you, the customer, while attempting to minimize impacts to the tenants.

**Background:**
Before we address the technical issues I believe it important to correct for the record how the Design-Build team was formed. Specifically, when Brechan was assigned the project, the engineering firm of Tryck Nyman Hayes (TNH) was already selected. Brechan did enter into an agreement with TNH. TNH selected Coffman Engineers to be the coatings designer. Brechan has no relationship with Coffman. Lastly, and probably most important, is that Swalling Construction was not part of the Design-Build team during development of the coating specifications. Although Swalling attended an initial meeting with Brechan, TNH and Coffman to discuss the project, they were not included in development of the specifications. Rather the specifications were developed first, and then Swalling, along with five other coating subs, were asked for price quotes.

In hindsight, according to our Project Manager, this process was a mistake. The safest and least risk approach for us would have been to select the coating sub early on in the specification development. In that way the coating sub would have had ownership in the specification. In our estimation costs would have been considerably higher if this approach would have been pursued. As you know budget concerns were in the forefront from the beginning of the project. Brechan, in partnership with you, did everything we could to maximize the square footage of coating applied while staying within the budget.

**Technical Proposal for surface preparation on the Original Cargo Wharf, bents 6 - 12:**
We have consulted with Coffman Engineers, and Swalling Construction, in efforts to identify reasons for delays and changed conditions and further to identify solutions to complete the project.

A letter from Coffman Engineers is attached which details reasons for the changed conditions. Additionally the letter contains three options for moving ahead. Two letters from Swalling Construction are also attached which detail approach, schedule and costs associated with each of the three options.

BEI4990
38599-0012

The additional application costs involved in each option are as follows:

| | |
|---|---|
| Option 1 – 100% seal weld | $ 129 ,000.00 |
| Option 2 – stripe caulk | $   50,000.00 |
| Option 3 – no seal weld or stripe caulk | $        0.00 |

**Brechan recommends proceeding with Option 2 at a cost of $50,000.00.**

**Additional surface preparation work on Original Cargo Wharf, bents 1 – 5:** Swalling has provided us a detailed list of costs associated with this effort, totaling $37, 384. They have agreed to accept $30,241.95 as full payment for that work.

**Additional QA costs:** We understand your position regarding additional costs associated with Jerry Hardenbergh being on site. However , we are prepared to share these costs with Swalling and Coffman. In a meeting with Harold Hollis of Coffman, he showed us some of the unbilled prep time Jerry has in this project. In addition he agreed to credit the project $9,000.00. As I told you and Paul during our phone conversation yesterday, I am convinced that Swalling is seriously negative on this project. Despite that fact, they have reduced their additional billings by about $24,800. The point is Coffman and Swalling are sharing the pain.  We ask your consideration for costs to date as well as anticipated costs to complete work this year. We anticipate approximately $50,000 will be needed this year, if we continue the same level of QC support from Jerry. Year 2001 QA costs total $97,882.74, after Coffman's credit.

Total additional costs to complete the project under option 2 are as follows:

| | |
|---|---|
| Surface prep, bents 6 – 12 | $39,000.00 |
| Surface prep, bents 1 – 5 | $30,000.00 |
| Demob | $11,000.00 |
| Additional QA | $10,000.00 |
| **Work Total** | **$90,000.00** |

Supporting information is attached.

Sincerely,
**BRECHAN ENTERPRISES, INC.**

Bill Oliver
Vice President

Enclosures:
Letter from Swalling dated Dec. 21, 2001
Letter from Swalling dated Feb. 12, 2002
Memorandum from Coffman dated Feb. 27, 2002

03/25/2002 10:47 FAX 9074884889    BRECHAN ENTERPRISES INC → DTQ:Matt/George    Case 3:03-cv-00199-RRB    Document 254-13    Filed 08/18/2006    Page 5 of 22    @001

SENT BY: SWALLING CONSTRUCTION;                907 274 6002;                MAR-18-02 10:42AM;                PAGE 1/1



**SWALLING
CONSTRUCTION
COMPANY, INC.**
AN EQUAL OPPORTUNITY EMPLOYER
GENERAL CONTRACTOR #AA179

SERVING ALASKA SINCE 1947

www.swalling.com
P.O. Box 101039
ANCHORAGE, ALASKA 99510-1039
TELEPHONE (907) 272 8461
FACSIMILE (907) 274-6002
LOCATED AT 235 F ST

William Oliver
Brechan Enterprises
2705 Mill Bay Road
Via Fax 907-486-4889

March 18, 2002

Re:        Kodiak Coast Guard Dock Facility Coatings

Subject:   2002 Completion Schedule

Gentlemen;

Following is our proposed schedule for completion of the referenced project. This schedule is based on the reduced scope of work (15,500 SF/Bent 12) and the use of caulking to repair welds and seal metal-to-metal connections not welded. It is our understanding that the inspection criteria for these caulking repairs will be visual inspection for bare spots only and no pinhole holiday detection or repairs will be done at these areas.

| | |
|---|---|
| April 12   April 30 | Scaffolding |
| May 1 – June 15 | Coatings (including caulking work) |
| June 9 - June 15 | Remove Scaffolding and Demob |

This schedule is based on having two series of low tides to set the initial scaffolding and three series of low tides to complete the coatings work. We will work all of the tides, weather and sea conditions permitting, however a portion of the work requires low tidal activity to complete. The removal of scaffolding and demob activities will be contingent on completing the coatings work and may require an additional series of low tides. All coatings areas affected by the removal of scaffolding are scheduled to be complete by June 15.

As previously stated we have a significant amount of preparatory work to do and request a notice to proceed as soon as possible.

Sincerely,
SWALLING CONSTRUCTION CO., INC.

Andrew Romine
Operations Manager

| Post-It® Fax Note | 7671 | Date 3/25 | # of pages 1 |
|---|---|---|---|
| To Matt | | From Bill | |
| Co./Dept. | | Co. | |
| Phone # | | Phone # | |
| Fax # | | Fax # | |

BEI4446
38599-0012

_CARGO PIER_

8:01                                                                    H A

(ABC) — SPOKE W/ NEIL P.

START AFTER 7/4    WORK THRU MID-SEPT.

6  10's — BASIS OF

~~SPLIT STAFFS WORKW~~

EMAIL ⇒    AL BOUDREAU    ———  ———

(ABSOLUTE)    CALLED  DAVE OLSON    830-9113 (CELL)    LEFT MSG

6/1/01  SPOKE W/ LAWRENCE RADCLIFFE
        ROBISON  PRESIO                              4.5 M ±
        SWAMING   A  KNOWN ⇒ FAVORABLE     ~~1,443,800~~  1,583,1k
        ABC        A  H ⇒ NOT AS FAVORABLE    1,466,425
        ABSOLUTE   UNKNOWN                            1,249,136

6/2/01  FROM  DAVE OLSON ...) NO OVERWATER EXPERIENCE
                          2) NO HEARTBURN IF NOT SELECTED

7/25/01 CALLED  ALASKA INSULATION   TERRY — (563-4125) ext. ★25
        RE: S/S JACKET REPAIR

8/1/01

        TERRY WORKING ON IT  8/1/01

POTENTIAL COATING SUB

BEI1031
38599-0012

H A  3/24/02

# Brechan Enterprises/General Contractors
# 2705 Mill Bay Road, Kodiak, Alaska, 99615
### FAX: 907/487-2587

# FAX TRANSMITTAL SHEET

**DATE:** _____ 3/25/02 _____

**TO:** _____ COFFMAN _____

**Attention:** _____ DAN SNEAPS / JERRY H. _____

**FROM:** _____ MAT H. _____

***NOTE:*** ___ ATTACHED ARE : ___

1) BRECHAN LTR TO USCG

2) USCG QUESTIONS — PLEASE REVIEW QUESTIONS

   WE ARE ON HOLD W/ THIS UNTIL
   QUESTIONS ARE ANSWERED.

This fax consists of ___ 16 ___ page(s) including this cover.

Please call (907) 487-2223 or 487-2238 if you do not receive all sheets.
Thank you.

BEI4415
38599-0012

QUESTIONS WE SHOULD BE ASKING OURSELVES BEFORE WE AGREE TO ANYTHING WITH BRECHAN.

1.  What was in the original scope of work? What level of surface preparation was specified? Required?

2.  How did we monitor/ decide when there was enough surface preparation? Have we looked at the records? Can we verify the amount of welding? Time for sandblasting? Time for grinding? They are referring to time per bent with the new proposal.

3.  Who determined whether welding was required? How did we monitor the welding?

THE FOLLOWING QUESTIONS PERTAIN TO THE LETTERS FROM BRECHAN AND SWALLING

1. What role did TNH have with the Brechan task? Did we force Brechan to use TNH? What is the contractual relationship between Brechan, TNH, and Coffman?

2. Who developed the specifications that Swalling used to bid the project? Did we review them?

4.  Brechan said they did everything they could to maximize the coating per sq ft per $. What did they do? And did we know?

5.  What is the basis of the $30,000 additional costs for bents 1–5? Do we have a breakout of the costs and were we able to verify these?

6.  What is in the original contract for surface preparation for bents 6–12? How does this compare with Brechan's request for an additional $39K?
    a. Swalling proposes using a different coating. Does the coating cost less then in original contract? Ltr states preparation time. What does the manufacture recommend and how is this less then the original coating?
    b. Swalling's proposal is based on 5 hrs "grinding or rewelding defective welds per bent" how do we know this is enough? Next Swalling letter says it will cost an additional $100 hr to brechan for weld repairs..pay extra and come out of 5 hrs?
    c. Why are we paying for additional scaffolding?
    d. Letter says cost based on 3200 LF of caulking. Where does this come from? How do we know it is not too much or is enough? Original contract called for 100 LF of welding, difference seems huge.
    e. Added 24 days to the contract. We reduce preparation time/eliminate welding and still pay for more time?
    f. Says we maintain 25 year warranty but contractor is not responsible for holidays at connections or pin-hole problems. How do you determine what is in warranty?

7.  Swalling letter says 128K additional for phase 1. Yet Brechan's letter asks for either $69K, 39K or 80 K additional? How do these compare? Why should we pay $11K for demobilization?

SUMMARY QUESTIONS:

At this stage not sure what we would be contracting for in option 2, the caulking option.

Swalling says 5 hours of bent grinding/rewelding are in their proposal. What level of sandblasting is in their proposal?
Who determines if 5 hrs Is enough? What happens if more is needed?
When and who determines if welding or caulking is required? How do you measure verify LF of caulking?
What is our cost of welding? Brechan's is 100 per manhour.
Is the 25 year warranty enforceable?

BEI4416
38599-0012

03/25/02   11:06 FAX  206 220 7591          FD&CC PACIFIC                    @003/003

Looks like we are stepping into a time and material contract or totally voiding any warranty consideration.

I don't care what we do. But what ever we do we must make sure that everyone understands and puts the understanding in writing.

Also after we have answered the above questions step back and consider whether finishing the contract to the level of funds currently available is a better alternative.  Make a documented business decision...Could we adequately define the work effort and be better off advertising separately? Or are we better off continuing as proposed?

Also must document in the contract file why we made the decision we did...much of the answers to the above questions should be included in the contract file documentation.

## ADDITIONAL NOTES ON COFFMAN'S LETTER

Para 3 alludes to fact that 100LF welding couldn't be known until area on H piles had been sandblasted.  Swalling letter of 12 Feb states the 100 LF was used up on the pipe piles... whole discussion and observation on sight, questions creditability of this letter? For instance they even question need to caulk welds but then go on to lay basis to discount any ability to enforce warranty? Remember the office speak is this is a performance contract to achieve 25 year warranty.

Coffman's discussion of option 2 state's grinding and stripe caulking provides a cost effective method of minimizing the amount of coating defects that would result from adverse smooth surfaces.

Regardless of the option selected there will be some coating defects, corrosion, and coating disbondment of the defects and staining of the adjacent coating in the future.

Raises the issue of what constitutes a warranty failure and would it be recoverable by the Coast Guard.

LEVEL OF SANDBLASTING ?

HARDENBERGH -

BEI4417
38599-0012



BEI4080
36990-0012

## Jarrell, Amy (Perkins Coie)

| | |
|---|---|
| **From:** | Mike [mrmartin@gci.net] |
| **Sent:** | Wednesday, March 27, 2002 3:03 PM |
| **To:** | mboivin@pacnorwest.uscg.mil |
| **Cc:** | mholmstrom-bei@gci.net; fandrinc@gci.net |
| **Subject:** | Cargo Pier / Partnering |



Marty Boivin.doc
(20 KB)

1

**BEI19049**
38599-0012

March 27, 2002

TO: Martin Boivin

FROM: Michael Martin

RE: Cargo Pier / Partnering

Dear Marty,

I want to thank you for taking the time to meet with Matt, Bill, and me in regard to how best to deal with the Cargo Pier issues. Since then, I have met with both Coffman and Swalling at executive level. I have been assured by both Harold Holles (Coffman), and Mike Swalling, that we will meet the quality standards for a twenty-five year life. I can tell you that I was very firm with both of them on my expectations for the completion of this contract in regards to quality, no more change orders/conditions, and that the contract is finished in a timely manner. I explained to them that their reputations and ours are at jeopardy.

Marty, you mentioned the need for all of us to "tighten our ships up". I believe that you were correct in that assessment. We (BEI) have had many meetings since that discussion, and are making adjustments to our processes. It is our full intent to make sure that any work done for you will be done with the "best value" concept in mind. What that means to me; we get you good subcontractors at the best value, make sure they do top quality work in a timely manner, and with the least inconvience to our customer. That's a mouth full, but, nonetheless, attainable.

I think, and hope that you agree, that we need to have our final partnering session in mid-April or early May. There have been personnel changes, contract issues, and communication breakdowns. I believe the partnering sessions have been helpful in the success the IDIQ-JOC contract, and believe the sessions will help us continue our success on future contracts.

Respectfully,

Mike


Cc:    Bill Oliver
       Matt Holmstrom

**From:** Stears, Dan [Stears@alaska.coffman.com]
**Sent:** Thursday, March 28, 2002 1:37 PM
**To:** 'Matt Holmstrom'
**Cc:** 'John Daley'; Hardenbergh, Jerry; Radcliffe,

**Subject:** FW: CARGO WHARF PHASE I

Matt,

As we have discussed before, until you blast the surface and can see what is under the existing coating and corrosion products it is difficult to determine the amount of structural seal welding that would be required. I personally do not feel comfortable with guessing the amount.

Since Swalling has done various cost estimates, they may be able to give you a best guess estimate.

Dan

-----Original Message-----
**From:** Matt Holmstrom [mailto:mholmstrom-bei@gci.net]
**Sent:** Thursday, March 28, 2002 10:27 AM
**To:** Dan Stears; Jerry Hardenbergh
**Subject:** FW: CARGO WHARF PHASE I

Dan/Jerry - For our information can you roughly estimate the amount of seal welding on structural members we're going to do?  Matt
-----Original Message-----
**From:** Rendon, Paul LT [mailto:PRendon@pacnorwest.uscg.mil]
**Sent:** Thursday, March 28, 2002 10:05 AM
**To:** Locher, Steven; Repanich, Anita; mholmstrom-bei@gci.net; fandrinc@gci.net
**Subject:** CARGO WHARF PHASE I

here is a draft of the modification....please read and provide me your comments.  Would like to close this out by today.

<<18.Mod#5.Scope.Clarifications.28Mar02.doc>>

thx,

LT Paul E. Rendon
Facilities Design & Construction Center Pacific
Civil Engineer, Alpha Team
Phone: (206) 220-7437
Fax:    (206) 220-7391

BEI6529
38599-0012

9/28/04

## Jarrell, Amy (Perkins Coie)

| From: | Repanich, Anita [ARepanich@pacnorwest.uscg.mil] |
|---|---|
| Sent: | Tuesday, April 02, 2002 3:49 PM |
| To: | 'Matt Holmstrom' |
| Subject: | RE: JOC EVAL |

1. Yes, and you can believe people are very interested in it. Only the number 1.05 is public record though, your price proposal is not. I would have to have your permission to release that...I won't bother asking.
2. Ketchikan was the highest factor, that's why we used it. I think Bill developed your coefficient, and a fine job he did. If he were to develope a new coefficient today, it maynot be that number, based on his actual experience. At that time he was speculating. If the number drops, bad for you, that's one of the risks in proposing. If it goes up, good for you. We don't know what the most current means book will look like either.
3. Means should reflect Davis Bacon. The means uses local union labor rates and Davis Bacon pretty much updates based on newly negotiated union rates. It probably a few months behind. I get updates about every 2 - 4 weeks during the summer months. You stay with the one that is in effect at the start of each option year only because there would be too many changes.

I know you hate that coefficient. I can use the Davis Bacon if I go sole source for a JOC...you don't want me to do that..but I did just get asked my another 8a native Alaskan firm to do just that...they are so helpful...
The purpose of the coefficient is to level the pricing field for you guys during proposal time. The FAR requires I look at only two things when I compete, the price and quality (past performance). How else can I evlauate your price? I wouldn't want to base the award on competition of a project....whoever lowbid that first project would get 10Mil worth of work that year. If I use Davis Bacon it's same same for everybody.
The coefficient gives me a pricing mechinism that I use throughout the contract. It's not much of one, the means is only a pricing tool. It's the best the Gov has come up with. Every JOC/SABER that is not a multiple award contract, uses a coefficient.
But the good news is you know more about your coefficient than anyone else does. Other proposers will use your 1.05 coefficient just because you have and are making it work. But they will have to provide me rational for their coefficient, like you did, and I will assess a risk rating to that number. All the other proposers close to your number got a high risk rate with that number. you got a low-med rate and that was only because it seemed so low I couldn't believe you could do it, but Bill's rational was all there, no holes in it. That risk rating was pure subjective on my part. I was asked about your risk rating from Brown and Root on it too....they also thought it was too good to be true.
We should talk more about the coefficient...I want you to understand it....I'll dig out the original selection and we'll do some "what if's" . Your coefficient will be very important in this competition. That's why I've insisted on keeping it. I'm getting allot of questions about it, from your competitors, and the validity of it, my answer is "All of Brechan's proposals are presented in the means format, with coefficient, as required by the contract".

-----Original Message-----
**From:** Matt Holmstrom [mailto:mholmstrom-bei@gci.net]
**Sent:** Tuesday, April 02, 2002 10:39 AM
**To:** Repanich, Anita; Rendon, Paul LT
**Subject:** RE: JOC EVAL


Anita - we have generated a few questions. Hopefully you can answer:
1. regarding the coefficient...is our 1.05 public record?
2. Re: the Ketchikan factor. Does this number have to based on the latest version of the Means book? The reason for asking is that as you know the number dropped this year, which certainly doesn't reflect the reality of doing business in Kodiak.
3. We've talked off and on about using actual Davis-Bacon labor rates rather than the Means labor rates. Is there any possibility this can be done for the new solicitation.

I'm sure our team will have more questions as time goes on. Is this format of submitting questions acceptable to you?

Thanks. Matt

**BEI19059**
38599-0012

-----Original Message-----[Repanich, Anita]
**From:** Repanich, Anita [mailto:ARepanich@pacnorwest.uscg.mil]
**Sent:** Tuesday, April 02, 2002 7:09 AM
**To:** 'Matt Holmstrom'; Rendon, Paul LT
**Cc:** Repanich, Anita
**Subject:** RE: JOC EVAL

When I say make it a good one I'm saying don't under rate yourself.  You do a incredible job and when I say that your response is "well, we're getting there".....your too hard on yourself.
Paul can probably comment to this as an evaluator but when I have evaluated I find comments too be helpful. There is always a range of numbers we use for each evaluation rating, like acceptable, superior..and within each of those ratings is a range of numbers that makes you a low superior or a high superior.  It's those comments that usually move you from one end or the other within rating.  Brechan's most relevant experience will be this project.
 Past experience was marginal/weak on the last evaluation.  I believe your past performance is really high and if you provide us with the quality of proposal you did on the last competition you will rate very high.  I believe some of your competition will also.....that brings us to that darn coefficient.  I've been getting some calls/questions/speculations about Brechan and their coefficient from your competitors.
The plan is to synopsis the requirement on 15 April, Post it to the internet for people to download on 1 May.  Then I could have a preproposal conference on the 15th of May (I'd like to tie the partnering trip in with it) and receive proposals 1 June.  Evaluate and be ready to award mid June.
I have the debrief comments from last time and can send them to you.  I want to be sure everyone understands how the coefficient will come into play too.




-----Original Message-----
**From:** Matt Holmstrom [mailto:mholmstrom-bei@gci.net]
**Sent:** Tuesday, April 02, 2002 7:16 AM
**To:** Rendon, Paul LT
**Cc:** Repanich, Anita
**Subject:** RE: JOC EVAL


Good morning - I'm taking a "deep breath".  When you mention making it a good one.  Does this mean more detail?  I was brief in the first 6-month eval.  However, if helpful to Brechan Enterprises, I will expand.

Thank you for the advice on our proposal preparation.  Could you give me a rough idea when the solicitation will come out?  I will call you later this morning...after a dentist appointment.

Thanks.  Matt

-----Original Message-----
**From:** Rendon, Paul LT [mailto:PRendon@pacnorwest.uscg.mil]
**Sent:** Monday, April 01, 2002 2:45 PM
**To:** 'mholmstrom-bei@gci.net'
**Cc:** Repanich, Anita
**Subject:** RE: JOC EVAL


we are available to discuss the "Best Value" process at any time.....

LT Paul E. Rendon
Facilities Design & Construction Center Pacific
Civil Engineer, Alpha Team
Phone: (206) 220-7437

BEI19060
38599-0012

Fax:    (206) 220-7391

-----Original Message-----
**From:**  Repanich, Anita
**Sent:**  Monday, April 01, 2002 3:41 PM
**To:**    Rendon, Paul LT; 'mholmstrom-bei@gci.net'
**Subject:**    RE: JOC EVAL

this is the eval that will be used for you guys in the recompete of the JOC.  I am going to ask for 3 maybe 5 past performance references and limit it to one reference from each contract.  Sometimes people use 3 different task orders from the same contract.  I want wider experience.

Make this one a good one Matt.  It will be used as your most relevant one.
There is nobody that has a better chance that a incumbent contractor if he is performing high.  We're getting high quality, great service and a fair price.  It might be helpful for us to review your debrief on the last selection.  I believe you will have a new set of competition this time so it might also be good to review how we select.  We're going for 5 years and 10Mil a year and I'm going to make it a small business set aside which means only small business like yourself can propose.  I'd like to see you guys back in there on the next round but there is something's that you guys have to do in the way of your proposal to make that happen.  I cannot tell you how to prepare your proposal but want to be sure you understand the process.

Anita

-----Original Message-----
**From:**  Rendon, Paul LT
**Sent:**  Monday, April 01, 2002 2:59 PM
**To:**    mholmstrom-bei@gci.net
**Cc:**    Repanich, Anita
**Subject:**    JOC EVAL

Matt,
you got it right.  Use the same eval as last time.  Here it is just in case you don't have it.  Anita said we could use some of the same comments from the 6-month eval if they still apply.

 << File: 06.Brechan.6.Month.Performance.Rating.16Oct01.doc >>

## LT Paul E. Rendon

Facilities Design & Construction Center Pacific
Civil Engineer, Alpha Team
Phone:  (206) 220-7437
Fax:    (206) 220-7391

4

**BEI19061**
38599-0012



U.S. Department
of Transportation

**United States
Coast Guard**

# Memorandum

---

Subject: ISC KODIAK JOB ORDER CONTRACT (JOC): TASK       Date: 02 April 2002
ORDER # 007, MODIFICATION #005

From: LT Paul E. Rendon, Project Manager                Reply to    LT Paul E. Rendon,
                                                        Attn. of:   Project Manager
To:   Anita Repanich, Contracting Officer                           (206) 220-7437

Ref:  (a) DTCG50-00-C-643XX0, Brechan Enterprises, Inc.

1. The following questions and answers provides justification for proceeding with Modification #
   005.

   From Steve Locher e-mail dated 28 March 2002 (Enclosure 1):
   • Is proposal based on SPC coating or Sherwin Williams (SW)? Proposal is based on SPC
     Coating system, NOT Sherwin Williams coating. Swalling did not stock up on SW coating,
     due to contract award was based on SPC coating. If CG wishes to proceed with SW coating,
     the CG would need to reimburse Swalling for the extra materials.
   • If the SW product reduced the price of stripe coating, would the CG realize that savings?
     This is not a SW product, so the CG will not realize any savings.
   • If SW product reduces prep work, would CG realize that savings? This is not a SW product,
     so the CG will not realize any savings
   • Will agree with prep work described in Swalling's 12 Feb 02 Letter. Swalling's 12 Feb 02
     letter supercedes their 21 Dec 01 letter. 12 Feb 02 letter could be a part of any modification
     but 21 Dec 01 letter is not. $90K covers all prep work through bent 12 except for weld
     repair. Incorrect. $90K covers all prep work AND weld repairs for structural members only.
   • Remove abandoned utility hangars and unused angle clips instead of seal welding, caulking,
     and coating. If this is determined to be cost effective, Swalling will complete this work.
   • Grinding of these cut off items would be part of the prep work in #2. Correct. $90K includes
     grinding of these cut off items.
   • Perform weld repair on structural welds only. Correct. $90K includes this work.
   • Only structural weld repairs will be a T&M extra based on ## LF of repairs at $100/hour.
     Incorrect. There will be no T&M work on this remaining portion of the project. $90K
     includes structural weld repairs.
   • Jerry H. to monitor T&M on weld repairs and coordinate needed weld repairs on structural
     members with COR. There will be no T&M on this remaining portion of the project (i.e.
     Bents 1-12 of the Original Cargo Wharf). QA (Jerry Hardenbergh) and/or COR/CI will
     identify/coordinate structural weld repairs.

- Why is demobilization cost being billed again?  During subcontract award with Swalling, in order to reduce the overall cost on the first phase of this project (i.e. Cargo Wharf Extension & Original Cargo Wharf, Bents 1–12), Swalling moved a portion of the demobilization costs from the first phase (FY01) to the second phase (FY02).  Since the second phase will not be completed by Swalling, they need to include this demobilization costs in the first phase.
- CP will be mostly done.  Jerry Hardenbergh's time will be shared between the Coatings and Shoretie project.  Correct.

Jerry Johnson's questions dated 28 March 2002 on Steve Locher's e-mail (Enclosure 1):
- What level of surface prep is proposed?  The level of surface preparation will be in accordance with the original contract specifications Section 09967 "Coating of Steel Waterfront Structures", dated March 2001.
- Bottom Line: $90K mod will cover <u>All</u> surface prep work, including blasting, grinding, caulking and removal of unneeded appurtenances.  Correct, except if removal of unneeded appurtenances is determined to be NOT cost effective, Swalling will not remove.  If removal of unneeded appurtenances is determined to be cost effective, Swalling will complete this work.
- Only additional cost will be weld repair for structural members, which should be minimal, per Coffman Memo (Option 2 on page 2).  Incorrect.  $90K includes all weld repairs for structural members.
- What warranty will we end up with?  Full warranty for structural members.  No warranty for non-structural members.
- What QC approach is Brechan recommending?  Brechan recommends using Jerry Hardenbergh again, but not to the same level of attendance as last year, which was 7 days a week 10 hours a day.  Will need to reduce his time on-site to be cost-effective, yet allow him to accurately monitor Swallings workmanship.
- Are we willing to share in this cost?  Yes, but need to reach agreement on time on-site.
- Brechan is responsible for quality of finished product.  We want coating thickness & bond strength tests.  Quality checks and testing requirements will continue in accordance with the original contract specifications Section 09967 "Coating of Steel Waterfront Structures", dated March 2001.

2.  See Enclosure 2 for questions from the Executive Director and subsequent answers from the Project Manager.

3.  If you have any questions or comments, please call me at the phone number provided above.


*Paul E Rendon*

P. E. RENDON

2

**Locher, Steven**

| | |
|---|---|
| **To:** | Paul Rendon; Anita Repanich |
| **Subject:** | FW: Cargo Wharf Phase 1 - Brechan Letter dtd 3/15/02 |

*— WHAT LEVEL OF*
*SURFACE PREP IS PROPS:*

Summary of my questions on BEI's proposal based on yesterday's meeting:

1. Is proposal based on SPC coating or ~~Sherwin Williams~~? If the SW product reduced the price of stripe coating, would CG realize that savings? If SW product reduces prep work, would CG realize that savings?

2. Will agree with prep work discribed in swalling's 2/12/02 letter. Swalling 2/12/02 letter superceeds their 12/21/01 letter. 2/12/02 letter could be part of any modification but 12/01 ltr is not. $90K covers all prep work through bent 12 except for weld repair.

3. Remove abandon utility hangars and unused angle clips instead of seal welding, caulking, and coating. Grinding of these cut off items would be part of the prep work in #2. Perform weld repair on structural welds only. Only structural weld repairs will be a T&M extra based on ___LF of repairs at $100/hr. Jerry H. to monitor T&M on weld repairs and coordinate needed weld repairs on structural members with COR.

4. Why is demobilization cost being billed again?

5. CP will be mostly done. JH's time will be shared between the Coatings and Shore Tie project.

-----Original Message-----

| | |
|---|---|
| **From:** | Locher, Steven |
| **Sent:** | Wednesday, March 20, 2002 3:27 PM |
| **To:** | Repanich, Anita |
| **Cc:** | Rendon, Paul LT |
| **Subject:** | Cargo Wharf Phase 1 - Brechan Letter dtd 3/15/02 |

1. I previously made comments on Coffman's memorandum. I have inserted that email. I agree with Coffman's recommendation for option 2 as a technical solution. I recommended resolving the SF issue. I believe Paul has got that under control, but you would need to verify with him.

Kodiak Cargo Wharf -
Draft Pro...

2. In Coffman's letter, they discussed an alternate coating system. Since option 2 is stripe coating we should probably get a clarification on whether this is an alternate system and what type of caulk is being proposed. Additionally, I had a discussion with the Sherwin Williams rep last week and he had recommendations concerning stripe coating with his product. His product may be a less expensive stripe coat solution, and I would ask that this be investigated by the DB (JOC) before we agree on the cost of option 2.

3. The numbers presented in the Brechan letter must be somehow interrelated, but their not rationalized within the text. Follow-up correspondence explaining the relationship between additional application costs and total costs of option 2 should be received before modifying the contract.

4. The letter makes metion to Coffman and Swalling absorbing project costs, but does not clearly quantify.
SL

*Steven R. Locher, P.E.*
USCG FDCC PAC
915 2nd AVE. # 2664
Seattle, WA. 98174-1011
FAX(206)220-7391
PH (206)220-7382

*— BOTTOM LINE: $90k MOD WILL COVER ALL SURFACE PREP WORK,*
*INCLUDING ~~GR~~ BLASTING, GRINDING ~~AND~~ CAULKING, AND REMOVAL OF*
*UNNEEDED APPURTENANCES, ONLY ADDITIONAL COST WILL BE*
*WELD REPAIR FOR STRUCTURAL MEMBERS, WHICH SHOULD BE MINIMAL*
*PER COFFMAN MEMO (OPTION 2 ON PAGE 2).*
*— WHAT WARRANTY WILL WE END UP WITH?*
*— WHAT QC APPROACH IS BRECHAN RECOMMENDING? ARE WE WILL-*
*TO SHARE IN THIS COST? BRECHAN IS RESPONSIBLE FOR QUALITY OF*

**ENCLOSURE(1)**

QUESTIONS WE SHOULD BE ASKING OURSELVES BEFORE WE AGREE TO ANYTHING WITH BRECHAN.

1. What was in the original scope of work? Coast Guard's original scope of work required 25 years of useful life. What level of surface preparation was specified? As specified by the manufacturer with a minimum cleanliness standard of NACE No. 2/SSPC-SP10 (near white blast), as per Coffman Engineers (Designer). Required? Yes.
2. How did we monitor/ decide when there was enough surface preparation? Independent QA (Jerry Hardenbergh) hired by Brechan, and recommended by Coffman Engineers, performed angular tooth profile tests of the depth recommended by the manufacturer, per specification Section 09967 "Coating of Steel Waterfront Structures". Have we looked at the records? No, but they are available from Jerry Hardenbergh. Can we verify the amount of welding? Yes. This would require Jerry Hardenbergh reviewing his records and field verifying welding locations and amounts (LF). Time for sandblasting? Yes. This would require auditing Brechan's & Swallings payroll accounts for sandblasting hours. Time for grinding? Yes. This would require auditing Brechan's & Swallings payroll accounts for grinding hours. They are referring to time per bent with the new proposal. Incorrect. New proposal does not include T&M. New proposal is a firm fixed price of $90K.
3. Who determined whether welding was required? Swalling in conjunction with Jerry Hardenbergh. How did we monitor the welding? Jerry Hardenbergh (QA) inspected.

THE FOLLOWING QUESTIONS PERTAIN TO THE LETTERS FROM BRECHAN AND SWALLING

1. What role did TNH have with the Brechan task? TNH was a subcontractor to Brechan. Did we force Brechan to use TNH? No. But we recommended Brechan to use TNH. It was logical. What is the contractual relationship between Brechan, TNH, and Coffman? Brechan is the prime contractor, TNH is a subcontractor to Brechan, Coffman is a subcontractor to TNH.
2. Who developed the specifications that Swalling used to bid the project? Coffman Engineers developed the specifications as the Designer. Did we review them? Yes, and we provided comments.
3. Brechan said they did everything they could to maximize the coating per sq ft per $. What did they do? Competitively bid the project. Received at least 3 bids. And did we know? Yes. This occurred after Task Order award.
4. What is in the original contract for surface preparation for bents 6-12? As specified by the manufacturer with a minimum cleanliness standard of NACE No. 2/SSPC-SP10 (near white blast), as per Coffman Engineers (Designer). How does this compare with Brechan's request for an additional $39K? Reasonable. Structural members will be seal welded per original spec. Non-structural members may be removed if abandoned, or caulked if in use.

   a. Swalling proposes using a different coating. Incorrect. The Swalling letter that this statement refers to was provided for informational purposes only and does not apply. Swalling will be using the same coating system that has been used all along, and will be using a caulking product, in lieu of seal-welding, that will be provided by the same manufacturer as the coating system, so the two products are compatible. Does the coating cost less then in original contract? N/A. Swalling will be using the same coating system. Ltr states preparation time. What does the manufacture recommend and how is this less then the original coating? Swalling will follow the Manufacturer's recommendations for applying the caulking product. Seal welding will be performed on structural members with bad quality or defective welds.
   b. Swalling's proposal is based on 5 hrs "grinding or rewelding defective welds per bent" how do we know this is enough? This statement is irrelevant as there will be no T&M work on the remaining phase of this project. $90K covers all grinding and/or rewelding per modification agreement. Next Swalling letter says it will cost an additional $100 hr to brechan for weld repairs..pay extra and come out of 5 hrs? This statement is irrelevant as there will be no T&M work on the remaining phase of this project
   c. Why are we paying for additional scaffolding? The Swalling letter that this question refers to was provided for informational purposes only and does not apply.
   d. Letter says cost based on 3200 LF of caulking. Where does this come from? The Swalling letter that this question refers to was provided for informational purposes only and does not apply.
   How do we know it is not too much or is enough? The Swalling letter that this question refers to was provided for informational purposes only and does not apply.
   Original contract called for 100 LF of welding, difference seems huge.

**ENCLOSURE(2)**

e. Added 24 days to the contract. We reduce preparation time/eliminate welding and still pay for more time? The Swalling letter that this question refers to was provided for informational purposes only and does not apply.

f. Says we maintain 25 year warranty but contractor is not responsible for holidays at connections or pin-hole problems. How do you determine what is in warranty? Structural members will be under warranty. Non-structural members will not be under warranty.

5. Swalling letter says 128K additional for phase 1. The Swalling letter that this question refers to was provided for informational purposes only and does not apply. Yet Brechan's letter asks for either $69K, 39K or 80 K additional? Brechan's total request is for $90K and is for work as described in the modification. How do these compare? N/A. Why should we pay $11K for demobilization? During subcontract award with Swalling, in order to reduce the overall cost on the first phase of this project (i.e. Cargo Wharf Extension & Original Cargo Wharf, Bents 1–12), Swalling moved a portion of the demobilization costs from the first phase (FY01) to the second phase (FY02). Since the second phase will not be completed by Swalling, they need to include this demobilization costs in the first phase.

## SUMMARY QUESTIONS:

At this stage not sure what we would be contracting for in option 2, the caulking option. See modification for contract agreements.

Swalling says 5 hours of bent grinding/rewelding are in their proposal. What level of sandblasting is in their proposal? In accordance with the original contract specifications Section 09967 "Coating of Steel Waterfront Structures", dated March 2001

Who determines if 5 hrs Is enough? The Swalling letter that this question refers to was provided for informational purposes only and does not apply. What happens if more is needed? The Swalling letter that this question refers to was provided for informational purposes only and does not apply.

When and who determines if welding or caulking is required? QA (Jerry Hardenbergh) and/or COR/CI. How do you measure verify LF of caulking? The Swalling letter that this question refers to was provided for informational purposes only and does not apply.

What is our cost of welding? Brechan's is 100 per manhour. The Swalling letter that this question refers to was provided for informational purposes only and does not apply.

Is the 25 year warranty enforceable? Yes.

Looks like we are stepping into a time and material contract or totally voiding any warranty consideration. Incorrect. This mod is a firm-fixed price for $90K. Warranty applies for structural members.

I don't care what we do. But what ever we do we must make sure that everyone understands and puts the understanding in writing. Done.

Also, after we have answered the above questions step back and consider whether finishing the contract to the level of funds currently available is a better alternative. Make a documented business decision...Could we adequately define the work effort and be better off advertising separately? No. Or are we better off continuing as proposed? Yes.

Also must document in the contract file why we made the decision we did...much of the answers to the above questions should be included in the contract file documentation. Done.

## ADDITIONAL NOTES ON COFFMAN"S LETTER

Para 3 alludes to fact that 100LF welding couldn't be known until area on H piles had been sandblasted. Swalling letter of 12 Feb states the 100 LF was used up on the pipe piles... whole discussion and observation on sight, questions creditability of this letter? For instance they even question need to caulk welds but then go on to lay basis to discount any ability to enforce warranty? Remember the office speak is this is a performance contract to achieve 25 year warranty.

Coffman's discussion of option 2 state's grinding and stripe caulking provides a cost effective method of minimizing the amount of coating defects that would result from adverse smooth surfaces.

Regardless of the option selected there will be some coating defects, corrosion, and coating disbondment of the defects and staining of the adjacent coating in the future.

Raises the issue of what constitutes a warranty failure and would it be recoverable by the Coast Guard.



**BRECHAN ENTERPRISES, INC / GENERAL CONTRACTORS**
2705 MILL BAY ROAD • KODIAK, ALASKA 99615

April 3, 2002

Mr. Andy Romine
Swalling Construction Company, Inc.
P O Box 101039
Anchorage, Alaska 99510-1039

Re:    Kodiak Cargo Wharf Maintenance Subcontract

Dear Andy:

FD&CC has accepted our proposal which was based on the agreement Swalling and
Brechan came to on March 12, 2002. Unfortunately, they cannot decide whether this mod
requires the expenditure of 2001 dollars, or 2002 dollars, so they have not issued the mod.

In spite of this, we have a project to complete, we have agreed on the modification of the
contract between the two of us, and we have the approval of the owner. Therefore,
consider this letter notice to proceed with the schedule you provided in your most recent
letter. If you have any questions, please let me know.

Very Truly Yours,
**Brechan Enterprises, Inc.**

W. E. Oliver
Vice President

cc: Matt Holmstrom

PHONE: 907.486.3215 • FAX: 907.486.4889
ALASKA BUSINESS #001858 • ALASKA CONTRACTORS #AA441
We Are An Equal Opportunity Employer

BEI4443
38599-0012