1  Terry R. Marston, *pro hac vice,* terry@mhf-law.com
   Jami K. Elison, *pro hac vice,* jamie@mhf-law.com
2  MARSTON HEFFERNAN FOREMAN, PLLC
   16880 N.E. 79th Street
3  Redmond, Washington  98052
   (425) 861-5700

4
   PAUL J.  NANGLE & ASSOCIATES
   Kerry Building
5  101 Christensen Drive
   Anchorage, Alaska  99501
6  Telephone:  (907) 274-8866

7

   Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.
8
                     UNITED STATES DISTRICT COURT
9                    FOR THE DISTRICT OF ALASKA

10 ABSOLUTE ENVIRONMENTAL                  )
   SERVICES, INC., an Alaska Corporation,  )   Case No.: A03-0199CV (RRB)
11                                         )
                                           )
          Plaintiff,                       )
12                                         )
          vs.                              )
13                                         )  **DECLARATION OF DAVE OLSON IN**
   FORREST J. MCKINLEY, an individual,     )  **SUPPORT OF ABSOLUTE'S**
14 d/b/a "Imperial Industrial Coatings" and )  **OPPOSITION TO COFFMAN'S MOTION**
   EMERCO, INC., a California Corporation,  )  **FOR PARTIAL SUMMARY JUDGMENT**
   d/b/a Imperial Industrial Coatings, BRECHAN )
15 ENTERPRISES, INC., an Alaska corporation; )
   and SAFECO INSURANCE COMPANY OF         )
16 AMERICA, a Washington Corporation.       )
                                           )
17        Defendants.                      )
   _____
18 EMERCO, INC., a California corporation d/b/a)
   Imperial Industrial Coatings, and the States for )
   Use and Benefit of EMERCO, INC.,        )
19                                         )
   Counterclaimant/Third-party Claimant,   )
20                                         )
                                           )
21 v.                                      )
                                           )
22 ABSOLUTE ENVIRONMENTAL SERVICES )
   INC., an Alaska corporation, et al.,    )
23                                         )
   Cross-defendants/Third-party Defendants. )
24                                         )
   _____

25
                                                    Appendix A
                                                    Page1 of 7
26

DECLARATION OF DAVE OLSON IN SUPPORT OF ABSOLUTE'S OPPOSITION TO COFFMAN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 1

THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,

     Plaintiff,

  vs.

SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.

     Defendants.

        )
        )
        )

BRECHAN ENTERPRISES, INC., an Alaska corporation,

     Counterclaim Plaintiff,

  vs.

ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,

     Counterclaim Defendant.

BRECHAN ENTERPRISES, INC., an Alaska corporation,

     Third-Party Plaintiff,

  vs.

COFFMAN ENGINEERS, INC, a Washington Corporation.

     Third-Party Defendant.

ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation,

     Plaintiff/Cross-claimant,

  vs.

COFFMAN ENGINEERS, INC, a Washington Corporation.

     Third-Party Defendant.

DECLARATION OF DAVE OLSON IN SUPPORT OF ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 2

I, David Olson, being first duly sworn, declare and say as follows:

1.    I am the president of Absolute Environmental Services, Inc. ("AESI"), the Plaintiff in this matter.  I am the sole shareholder of Absolute Environmental Services, Inc.  I have personal knowledge of the facts set out below.

2.    I have personal knowledge of AESI's profit and loss status.  I have personal knowledge of AESI's account balances.  I have personal knowledge that AESI has a negative net worth at present.  And I have first-hand knowledge of who, and what, caused AESI to lose all of its net worth.

3.    While I am not an expert on business valuation, no expert opinion is required to establish when a company such as mine, AESI, has continuing fair market value at all.  Mr. Rulien established that the value of AESI as of December 31, 2003 was $2.28 million.  Without testifying as to what AESI's value was at that time, I am competent to state that given the massive amount of debt it now carries, AESI has no fair market value.

4.    Brechan and Coffman destroyed AESI's net worth.  AESI is worth nothing as a going concern any longer.

5.    AESI's current net worth is a <u>negative</u> $1.8 million dollars (-$1,800,000).  AESI's liabilities far exceed its remaining assets.  Attached hereto as **Exhibit A** is a true and correct copy of AESI's "balance sheet" as of July 31, 2006.  Attached hereto as **Exhibit B** is a true and correct copy of AESI's 2006 "profit & loss" statement through July 31, 2006.

6.    Although AESI once possessed a substantial net worth, the concerted actions of Brechan and Coffman devastated that net worth.  Brechan and Coffman, and they alone, are responsible for the devastation of AESI as an independently viable (and marketable business). AESI possessed ample financial capacity to absorb normal business risks.  (For example, AESI could have easily absorbed losses arising out of the defective performance and eventual abandonment of the work by its subcontractor on the Cargo Wharf Project, Imperial Industrial Coatings.)  What AESI was not capable of withstanding was cost overruns exceeding one million dollars that were willfully imposed on it by Brechan and Coffman.  These losses were solely attributable to the latent defective site conditions that both Brechan and Coffman were only too aware of.  However, these were latent defective conditions each of them chose not to share their knowledge of with AESI.

7.     This is no case of the straw that broke the camel's back.  Absolute was financially robust and experienced no other financial losses in the time period pertinent to this lawsuit and to the destruction of the value of its business. The Cargo Wharf project (and, specifically, the latent defects and the knowledge of them possessed by both Brechan nor Coffman, which knowledge was shared with AESI by neither.) Therefore, the only possible cause for AESI's monumental losses was this project.  To emphasize this point, neither Coffman nor Brechan has provided this Court with any evidence of defective performance by AESI, nor of any other financial adversity suffered by Absolute during this time to account the losses it suffered.

8.     Coffman and Brechan have alleged to this Court that AESI is relying upon a total cost claim to establish the amount of the damages it is due for additional costs incurred on the project and to prove that those costs were "caused" by Brechan and  Coffman.  These allegations are both false.  Absolute has deducted from its increased cost of performance those costs that are not attributable to the conduct of Brechan or Coffman rendering its claim a significantly less disfavored form of claim known as a "modified total cost"  claim.

9.     It has been alleged that Absolute may not use even a modified total cost claim because the underlying estimates were either lost or unreasonable.  While it is true that AESI's estimate for the self-performed portion of its work was lost, that omission was remedied by AESI's construction consultant who prepared its claim, Mike Lembke.  Mr. Lembke used a highly favored "measured mile" approach to determine the reasonable expenses of AESI's self-performed work and excluded those amounts from the claim he prepared for AESI.  Mr. Lembke agrees that the "estimate" that Imperial claims to have relied upon to price its portion of the work was seriously flawed – but only in its methodology and execution – he has no quarrel with the sufficiency of the amount of Imperial's bid.  However Imperial arrived at is bid price, its price was identical to the bid prices calculated by SCCI, the preceding coatings subcontractor, and to the cost estimates prepared by the Coast Guard's own estimator who prepared the government estimate.  If the price is correct – even if the method of arriving at that price is not – there is no prohibition against using the bid price in a total cost or modified total cost claim.

DECLARATION OF DAVE OLSON IN SUPPORT OF ABSOLUTE'S OPPOSITION TO COFFMAN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 4

10.    Brechan and Coffman claim that AESI should be barred from using a modified total cost claim damage quantification methodology because we did not contemporaneously track added costs as they were being incurred on the project. Their position is nonsense. The basis of AESI's claim is that we were unaware at the time the work was being performed why the holidays were appearing, and therefore had no way of knowing that the additional costs we were incurring were due to weld defects that we were neither informed of or had the expertise to recognize. In fact, in retrospect, I am absolutely certain that our inexperience in the field of coatings is exactly why we were sought out by Brechan to perform this work. We as a subcontractor were the least likely to discover Brechan's scheme to dodge financial losses arising out of the defective and omitted welds discovered in Phase I. At the time, we performed the work, we simply knew that we were obligated to provide a holiday-free coating and that the only way we were able to achieve this result was by taking the extraordinarily expensive steps of cutting off all non-structural steel and grinding all welds on the surfaces to be coated. We were under no obligation to perform such expensive work, though, but for the holiday-free coating requirement in the specification. AESI is aware of no more reliable method of quantifying its damages in light of the fact that only Brechan and Coffman were aware of the defects and neither bothered to inform AESI about them. Certainly, had they done so, we could have provided such records. But after having been deliberately kept in the dark, producing contemporaneous records of costs is not an option. (Absolute actually did request access to project records for Phase I which, had they been provided, would have alerted AESI to the existence and nature of the weld problems providing AESI with the opportunity to maintain contemporaneous records.

11.    AESI's proof of "causation" of the substantial damages it is claiming for is established by a wealth of individual sources of proof of causation.

12.    There were defective and omitted welds

   a.    The project record for Phase I is rife with documentation of the enormity of the weld problems encountered there.

   b.    The problems with holidays only occurred in unusual quantities in the vicinity of the welds, especially the splice plate zone between elevations 116'-119'.

   c.    Mike Anderson, project manager of SCCI, Phase I contractor, said the weld problems and the resulting holidays never improved between Bents 1-12.

DECLARATION OF DAVE OLSON IN SUPPORT OF ABSOLUTE'S OPPOSITION TO COFFMAN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 5

d. Mike Anderson, the project manager for the Phase I contractor, said that the holiday problems with the welds occur even when the weld defects were not plainly visible

e. Anderson testified that Brechan and Coffman agreed to forego high voltage holiday testing of welds in exchange for a substantial price reduction for additional surface preparation by SCCI

f. Jerry Hardenbergh claims the weld problems miraculously disappeared once AESI and Imperial started work at Bent 13; he has no photographs or test documentation to substantiate this fortuitous turn of events for Brechan and Coffman.

g. The photographs of the locations of holiday proliferation on Phase II exactly coincides with the location of holiday proliferation documented in Phase I work performed by SCCI.

h. Coffman admitted that the defective welds constituted a changed condition for which SCCI was entitled to additional compensation for not only additional surface preparation, but the cost of major modification of welds by grinding.

13.     Defective and omitted welds caused holidays.

14.     It was not only foreseeable that Brechan and Coffman's conduct would devastate AESI's business value, evidence demonstrates that it was actually orchestrated. Brechan invited AESI to replace Swalling on the Coast Guard Wharf project. The scheme of bringing a new contractor onto the job was developed during a series of confidential communications between Brechan, Coffman, and the Coast Guard. Attached hereto as **Exhibit C** is a true and correct copy of an email where the Coast Guard itself initiated the proposal to bring on a "new guy."

15.     The Cargo Wharf Project is one of the three largest projects ever performed by AESI. The Project represented approximately one-third of AESI's average total volume for a year. AESI completed the Cargo Wharf project only by exhausting all of its working capital and tapping all of its available credit. All the costs added to the project did not generate added income for AESI because Brechan refused to pay AESI the fair value of even the undisputed extra services it provided (e.g., the cost of performing the Phase I coating subcontractor's warranty work).

16.     Since that time, AESI has been unable to independently generate sufficient income from operations to pay its bills (including those arising out of the Cargo Wharf Project) as they

DECLARATION OF DAVE OLSON IN SUPPORT OF ABSOLUTE'S OPPOSITION TO COFFMAN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 6

become due.  As a result, AESI has been forced to borrow substantial sums.  Attached hereto as **Exhibit D** are true and correct copies of promissory notes issued by AESI to me personally for loans I have been forced to provide the company to keep it from closing its doors.  Attached hereto as **Exhibit E** are true and correct copies of cancelled checks relating to the promissory notes.  AESI has no more credit.  AESI has already sold business assets and I have personally had to sell investment properties to obtain the funds necessary to keep the company afloat through the end of trial.

17.    Contrary to Coffman's wishful thinking, there is no speculation involved in this business valuation.  AESI's balance sheets and accounting statements show that it has been devastated by Brechan and Coffman's decision to escape the losses arising of the concealed defective conditions on the Project by bringing in AESI as the "new guy" (or more accurately, as their "fall guy"). The losses AESI suffered were the responsibility of Brechan and/or Coffman; not AESI which had nothing to do with the defective conditions, but which was made to bear the expense of correcting them.

18.    AESI cannot obtain an adequate remedy for the damages caused by Brechan and Coffman if it is denied the opportunity to present and prove to the jury the validity of its claims for business devastation damages.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this ___day of August, 2006 at Grangeville, Idaho.

Dave Olson

DECLARATION OF DAVE OLSON IN SUPPORT OF ABSOLUTE'S OPPOSITION TO COFFMAN'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. A03-0199CV (RRB)-- 7