CONTRACTING ACTIVITY: USCG FD&CC PACIFIC

DATE: 12-Feb-01

CONTRACT NUMBER: DTCG50-01-D-643XX0

PROJECT NUMBER: 33-J00042

PROCUREMENT DESCRIPTION: Cargo pier upgrades

CONTRACTOR: Brechan Enterprises

**NON PRE PRICED WORK**

| Item | Contractor's Proposal | | Government Estimate | Revised Scope GE | | Negotiated Amount | |
|---|---|---|---|---|---|---|---|
| Proj Scope and Design | 65140 | | 40970 | | | 56889 | |
| Cathodic Protection Work | 197300 | | 93015 | | 51313 | 166215 | |
| Pile and Related Work | 720240 | | 622557 | | 166215 | 771120 | |
| coating area | 15860 SF | | 9444 SF | 19000 SF | 821520 | 17800 SF | |
| coating cost | $44/SF | | $36/SF | $40/SF | | $40/SF | |
| Under Pier Utilities | | | | | | | |
| Metal Work | 4300 | | 126360 | | 4515 | | 4515 |
| Concrete Work | 10400 | | 44619 | | 10920 | | 10920 |
| Design Field Services | 17500 | | 66982 | | 18375 | | 18375 |
| Construction Field Services | 7660 | | 29241 | | 31468 | | 11319 |
| | 105360 | | 29102 | | 31468 | | 45549 |
| | 1127900 | | 1052846 | | 1135794 | $ | 1,084,902.00 |

| Construction Fee | | |
|---|---|---|
| Design Fee | $ | 971,145.00 |
| Engineering/CCSS FSS | $ | 43,638.00 |
| | $ | 70,119.00 |
| | $ | 1,084,902.00 |



U.S. Department
of Transportation

United States
Coast Guard

Commanding Officer
Facilities Design and Construction
Center Pacific

915 Second Ave, Room 2664
Seattle, WA 98174-1011
Staff Symbol:
Phone: (206) 220-7400
FAX: (206) 220-7390

11000
25 Feb 2002

Mr. M. Martin
Brechan Enterprises, Inc.
2705 Mill Bay Road
Kodiak, AK 99615

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE – PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

Dear Mr. Martin

The current status of the Cargo Wharf Maintenance project has us very concerned with regards to project completion and potential increases to project costs. Our concerns mainly stem from your coating contractors' slow progress during last summer's construction season, which has resulted in a delay of project completion by one year. This delay will undoubtedly have negative impacts on other projects we have planned for the Cargo Wharf area during this upcoming construction season. Furthermore, we understand that your coating contractor has submitted a claim to address a changed site condition, namely additional coating preparation work that was allegedly misrepresented in the contract specifications by your Design team. For these reasons, and others noted below, we request you present to us a proposal detailing the actions you plan to take to address the slow progress of your coating contractor, as well as their claim of changed site conditions. Your proposal should include a detailed schedule, manpower loading chart, critical milestones, and critical paths. Also include your technical recommendations on how to proceed with coating the remaining portion of the Original Cargo Wharf and still achieve a useful life of 25 years.

Background:
On 20 March 2001, we entered into a Design-Build (DB) contract with your firm to recoat the Cargo Wharf Extension (7,400 sf) and Original Cargo Wharf (10,400 sf) at $40/sf for a total of 17,800 sf, or $712,000.00. Other work items included repair/replacement of the Cathodic Protection System and miscellaneous repairs to fender piling and under pier utilities, to name a few. Subsequently, your firm entered into a subcontract with Tryck Nyman Hayes, Inc., and Coffman Engineers, Inc., as your Design team, as well as Swalling Construction Company, Inc., as your coatings contractor. The subcontract you initiated with Swalling was for $850,000.00, Enclosure (1), and included coating the Cargo Wharf Extension and Bents 1-15 on the Original Cargo Wharf, Enclosure (2). This discrepancy in contract funds needs to be resolved between Brechan Enterprises and Swalling Construction. We do not plan on increasing our $712,000.00 contracted amount for coatings work. Please advise how you plan to correct this discrepancy. Enclosure (3) details the actual limits of coatings work for this contract, taking into account Swallings upfront costs for mobilization and equipment & material purchases.

Exhibit D
Page 2 of 6

BEI4100
38599-0012

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE – PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

Design-Build (DB) Philosophy:
As you may be aware, one of the advantages, to the owner, of a Design-Build contract is that the responsibility, and associated risk, of completing the design and construction is transferred from the owner to the prime contractor. It is the Design-Build teams' responsibility to complete all necessary preliminary studies, site investigations, contract specifications and drawings, construction activities, and to work together as a team to resolve design or construction issues that may arise during the project. On the other hand, one of the advantages to the Design-Build Contractor is that you have the flexibility to "re-design" the project if actual site conditions warrant a different approach. Please be aware that the "re-design" must be proposed to and approved by the owner before construction proceeds. More importantly, the "re-design" must meet the owner's initial scoping requirements, and all efforts associated with the "re-design" and construction will be at no cost to the owner.

Concerns:
- Coating Progress: As mentioned previously, our contract was to recoat the Cargo Wharf Extension and Bents 1-12 on the Original Cargo Wharf during the 2001 summer construction season. To date, you have completed the Cargo Wharf Extension and Bents 1-2 on the Original Cargo Wharf (Note: there are still some outstanding items with this portion of the work). Also, Bents 3-5 on the Original Cargo Wharf are 50% complete. Bents 6-12 on the Original Cargo Wharf remain to be blasted, coated, and inspected for compliance with contract specifications.
    - According to Swalling's letter to Brechan dated 22 June 01, Enclosure (4), their schedule shows them mobilizing to Kodiak on 9-10 July 01. Review of the Daily Reports actually shows them mobilizing 7 calendar days later on 17 July 01, Enclosure (5).
    - Swalling's schedule also indicates blasting and painting of the Cargo Wharf Extension was to start on 16 July 01 and be complete by 10 Aug 01. Again, after review of the Daily Reports, Enclosure (6), it shows an actual start date on 02 Aug 01, 13 days later excluding Holidays and weekends.
    - Lastly, Swalling's schedule shows them starting the Original Cargo Wharf section on 10 Aug 01. Enclosure (7) shows them actually starting work on 04 Oct 01, 38 days later, excluding Holidays and weekends.

Swalling attempts to explain the reasons for some of these delays in their letter to Brechan dated 11 Sep 01, Enclosure (8). We do not agree nor accept their reasons for the delays. Late arrival of critical equipment, ineffectiveness of the self-contained blasting unit, and changing blasting methods are all aspects of the job that fall under Swalling's responsibility to address and correct. Furthermore, once actual production rates were known for the Cargo Wharf Extension in Aug 01, it was Swalling's responsibility to plan out the remaining portion of the work, and increase personnel and equipment to improve production rates and get the project back on schedule. Swalling's letter presents a plan to improve the productivity of the remaining work, but it's evident that their plan was either insufficient or not implemented. Please advise us why Swalling's production was insufficient and how you will ensure the remaining work will be completed this construction season at no additional cost to the Government.

2

BEI4101
38599-0012

Exhibit D
Page 3 of 6

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE – PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

- **Changed Site Condition:** We have been informed that Swalling claims a changed site condition exists with the Original Cargo Wharf H-Piles. In particular, Swalling claims additional preparation work is required due to the amount of metal to metal connections, and their associated fillet welds, that require "seal welding" before coating begins. Swalling claims the contract specifications for the seal welding effort were misrepresented and therefore they are due compensation for the additional preparation work. Paragraph 1.7.3.9 of the specification reads: "A number of the utility hangars and braces were welded to the piles with fillet welds on one side only of the member. All metal to metal connections shall be seal welded prior to coating. An estimated 100 feet of seal welding will be required. The Contractor or Applicator will seal weld prior to surface preparation as required in 3.2.1.2." Apparently, the amount of seal welding required is substantially more than 100 feet. Please advise why Coffman Engineers did not more accurately represent the amount of seal welding that would be required for this job. In addition, paragraph 1.1.3 of the specification reads: "The Applicator shall inspect the wharf prior to bid to determine existing conditions and quantities of surfaces to be recoated...", and paragraph 3.1.4 reads: "The Contract Drawings and Specifications do not purport to describe construction information in absolute detail. An Applicator site visit is required prior to bidding and starting work.". Please present information detailing the site inspections and site visits conducted by Swalling prior to bidding the work. While it is unfortunate that Coffman Engineers did not accurately measure the amount of seal welding required, we find it hard to believe that this alleged changed condition could not have been detected during proper site inspections by both Coffman Engineers during the design phase and Swalling Construction during bid preparation. We base this statement on information presented in the "United States Coast Guard Cargo Wharf and Fuel Pier Inspection" report, dated Sep 21 – Oct 02, 2000, which was provided to the Design-Build team. The report clearly references the "non-structural steel elements" on the Cargo Wharf that were "only welded on one side, not 100 percent", which "results in a small gap on one side of the connection into which moisture can penetrate. These areas are quick to rust and the weld can be attacked from the back (non-welded) side of the member." Furthermore, the report references, numerous times, the "poor quality welds" associated with the utility system attachments, as well as the water, sewer, and steam system hangars in which "Field welds were not 100 percent around the perimeter of the joint resulting in crevices left between the angle iron and the base metal". The report also provides photographs documenting this condition. This clearly indicates this was a known condition that the Design-Build team had knowledge of. For these reasons we do not agree with, nor accept, Swalling's claim that a changed site condition exists. Please advise us how you plan to address this issue for the remaining portion of work, and how you intend to hold Coffman Engineers and Swalling Construction responsible for these errors.

- **Performance:** As a result of Swalling's slow progress last summer, we had to extend the services of the Quality Assurance representative (Mr. Jerry Hardenbergh) by two months. We agreed to pay for only one month. <u>We do not plan to pay for his services this construction season, but expect him to be on-site for the entire project.</u> We believe Swalling should be held directly responsible for this expense this construction season, as it was their slow progress which has caused the delay in project completion. Our other concerns stem from our on-site Coast Guard inspector's observations of Swalling's

3

BEI4102
38599-0012

Exhibit D
Page 4 of 6

SUBJ: DTCG50-01-D-643XXO; TASK ORDER #0007, CARGO WHARF MAINTENANCE – PHASE I (PROJECT SERIAL NUMBER: 33-S01047)

performance. It has been revealed that Swalling did not provide adequate containment for the blasting operations. There were many days when blasting grit could be seen in the water and drifting away with the current. Please ensure adequate containment is provided to capture 100% of the blasting material. It was also noted that Swalling provided substandard scaffolding that was marginally safe, did not have the proper certified coating inspection equipment until 24 Sep 01, and their CQC person arrived on the job late. Please ensure this does not happen again this summer.

Technical Proposal:
Please prepare a technical proposal with recommendations on how you plan to proceed with coating the remaining portion of the Original Cargo Wharf, and ensure project completion this construction season. Your proposal should consider alternative coating systems and methodologies (i.e.. "re-design"), as well as the pro's and con's of continuing with the present coating system. It should also study the "seal welding" condition and recommend how you plan to address this issue. We are open to new ideas and different approaches that will provide the Wharf with an additional 25 years of useful life. Please note that your recommendations and plans for continuing work should be at no additional cost to the Government.

Lastly, the award of this Design-Build contract was not based on a Low-Bid competition, but rather on a Best Value for the Government. We fully expected to get a Design-Build team well experienced in the work at hand, and fully knowledgeable of the critical aspects of this type of construction. We understand Coffman Engineers recommended Swalling Construction as a reputable firm, well skilled and qualified for the job. With that said, we do not understand why Swalling's experience in this field of work did not adequately prepare them for this project.

We request you present your proposal with your Design-Build Team at our office in Seattle, WA, or at another mutually agreeable location no later than 11 Mar 02. If you have any questions, please feel free to contact me, or my Project Manager, LT Paul E. Rendon at (206) 220-7437.

Sincerely,

*Anita Repanich*
ANITA REPANICH
Contracting Officer

**Swallings Construction Company, Inc., Costs**

| | Value | Subtotal |
|---|---|---|
| **Mobilization** | | |
| Scaffold Materials and Fabrication | $130,000 | |
| Mobilize Equipment and Materials | $117,000 | |
| | | $247,000 |
| **Pipe Pile Section: 7,400 sf** | | |
| Install Scaffold/Contain Piles | $90,000 | |
| Blast and Paint | $117,250 | |
| | | $207,250 |
| **Yr 2001 H-Pile Section: 12,800 sf (Bent 1-15)** | | |
| Install Scaffold/Contain Piles | $150,000 | |
| Blast and Paint | $245,750 | |
| | | $395,750 |
| **Total Contract Value: 20,200 sf** | | **$850,000** |

**Coast Guard & Brechan Negotiated Costs**

Cargo Wharf Extension: 7,400 sf

Original Cargo Wharf: 10,400 sf

Total Contract Value: 17,800 sf * $40/sf — **$712,000**

**Adjusted Square Footage to be Recoated**

| | | |
|---|---|---|
| Swalling Total Contract Value: 20,200 sf | | $850,000 |
| Minus Swalling Mobilization Costs | | − $247,000 |
| | Subtotal | $603,000 |
| Swallings Cost to Recoat per Square Foot | | |
| $603,000 / 20,200 sf | $$ / sf = | $30 |
| Coast Guard Total Contract Value | | $712,000 |
| Minus Swalling Mobilization Costs | | − $247,000 |
| | Subtotal | $465,000 |
| Square Footage to be Recoated | | |
| $465,000 / $30sf | sf = | 15,500 |

| **Limits of Coatings Work** | sf = | **15,500** |
|---|---|---|
| Cargo Wharf Extension: 7,400 sf | − | 7,400 |
| | Subtotal | 8,100 |
| Original Cargo Wharf Bents: 1-11 = 7,598 | − | 7,598 |
| | Subtotal | 502 |
| Original Cargo Wharf Bent 12 (Piles Only) | − | 500 |
| | Subtotal | 2 |

**Square Feet Coated To Date**

| | | |
|---|---|---|
| Cargo Wharf Extension | sf = | 7,400 |
| Original Cargo Wharf Bents 1-2 | sf = | 1,324 |
| Original Cargo Wharf Bents 3-5 at 50% | sf = | 1,026 |
| | Total = | 9,750 |
| | Remaining = | 5,750 |

BEI0948
38599-0012

**ENCLOSURE(3)**

Exhibit D
Page 6 of 6