Terry R. Marston, *pro hac vice*, terry@mhf-law.com
Jami K. Elison, *pro hac vice*, jamie@mhf-law.com
Jesse P. Elison, *pro hac vice*, jessee@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,

Plaintiff,

vs.

FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.

Defendants.

EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,

Counterclaimant/Third-party Claimant,

v.

ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al.,

Cross-defendants/Third-party Defendants.

Case No.: A03-0199CV (RRB)

**ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION FOR SUMMARY JUDGMENT ON ABSOLUTE'S NEGLIGENT DESIGN, DIFFERING SITE CONDITION, CONSTRUCTIVE CHANGE, COVENANT OF GOOD FAITH AND FAIR DEALING, IMPLIED CONTRACT AND EQUITY CLAIMS**

| | |
|---|---|
| THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>Plaintiff,<br>vs.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.<br><br>Defendants. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation,<br><br>Counterclaim Plaintiff,<br>vs.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>Counterclaim Defendant. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation,<br><br>Third-Party Plaintiff,<br>vs.<br><br>COFFMAN ENGINEERS, INC, a Washington Corporation.<br><br>Third-Party Defendant. | ) |
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation,<br><br>Plaintiff/Cross-claimant,<br>vs.<br><br>COFFMAN ENGINEERS, INC, a Washington Corporation.<br><br>Third-Party Defendant. | ) |

ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION FOR SUMMARY JUDGMENT ON ABSOLUTE'S NEGLIGENT DESIGN, DIFFERING SITE CONDITION, CONSTRUCTIVE CHANGE, COVENANT OF GOOD FAITH AND FAIR DEALING, IMPLIED CONTRACT AND EQUITY CLAIMS
Case No. A03-0199CV (RRB)-- 2

## I. OPPOSITION AND RELIEF REQUESTED

Plaintiff Absolute Environmental Services, Inc. ("AESI") requests this Court deny Brechan's motion for summary judgment on AESI's negligent design, differing site condition, constructive change, covenant of good faith and fair dealing, implied contract and equity claims.

## II. ISSUES

1. Brechan argues that claims for negligent design should be dismissed because such claims are properly presented against design professional and Brechan generally acts as a building contractor. Brechan accepted a design-build contract, meaning Brechan assumed design responsibilities. Should the Court deny Brechan's motion on this issue?

2. Ignoring the course of dealing both on this Project and with AESI, Brechan argues that differing site condition claims arise only when contracts expressly allow that remedy, otherwise, the contractor included that risk in its bid. AESI did not include that risk in its bid, Brechan paid Swalling for differing site conditions under the same contract it executed with AESI, and Brechan has a course of dealing with AESI confirming that, if Brechan requires AESI to waive equitable compensation for differing site conditions, it does so expressly. Should the Court deny Brechan's motion on this issue?

3. Confusing differing site condition with constructive change, Brechan argues that this Court should dismiss the constructive change claim as duplicative. If it was the same it should not be dismissed for the reasons presented above; however, Brechan is wrong because constructive change is conceptually distinct entitlement theory and remains a valid cause of action. Should the Court deny Brechan's motion on this issue?

4. Ignoring that the breaches of good faith and fair dealing were implicit to the formation of the contract, and ignoring that the effect of the bad dealings continued throughout the performance of the contract, Brechan argues that this Court should dismiss AESI's claims for breach of the covenant of good faith and fair dealing based on an argument that a contract was not yet formed so no duty was owed. Should the Court deny Brechan's motion on this issue?

5. Although genuine issues of material fact exist as to whether the additional work was captured by the specifications within the scope of the original contract, Brechan argues that AESI's implied contract and quantum meruit claims should be dismissed on summary judgment. Should the Court deny Brechan's motion on this issue?

6. Although equitable remedies are inherently questions of fact improper for summary judgment, Brechan argues that this Court should dismiss AESI's requests for equitable relief on summary judgment. Should this Court deny Brechan's motion on this issue?

7. Although genuine issues of material fact support AESI's claim for breach of warranty of plans and specifications, Brechan requests dismissal of this claim on summary judgment. Should this Court deny Brechan's motion on this issue?

## III. FACTS

AESI disputes defendant's alleged facts and factual interpretations. This opposition brief is based on the pleadings and filings of record, including affidavits, declarations, and exhibits submitted in opposition to other motions. To avoid duplication of lengthy factual narratives, AESI incorporates by reference and for its factual recitation relies primarily on the Declaration of Olson re. Motions for Summary Judgment.

## IV. AUTHORITY

1. **Brechan accepted a design-build contract, meaning Brechan assumed design responsibilities**.

Brechan cites *State v. Transamerica Premier Ins. Co.*, 856 P.2d 766, 772-774 (Alaska 1993), for the proposition "that only a design professional may be sued in tort for negligent design." Brechan's Motion, 4. *Transamerica* distinguished its holding from *Moloso v. State*, 644 P.2d 205 (Alaska 1982) where "the plans an specifications that the employer used were its own, and thus the employer was in fact both the owner and the architect for the project." 644 P.2d at 216." *Transamerica* at 773. Brechan is more like the owner in *Moloso* than the State in *Transamerica* because Brechan's contract with the United States Coast Guard was a "design build" where Brechan assumed the responsibility of both design and construction of the project. A "design build" shifts the liability of both design and performance to the contractor. Moreover,

to this date, Brechan is the only logical author of a critical design document, "Mod 5" as neither Brechan nor its design professional Coffman Engineers has admitted to being its actual author.

2. **Brechan paid Swalling for differing site conditions under the same contract it executed with AESI and has a course of dealing with AESI confirming that if Brechan requires AESI to waive equitable compensation for differing site conditions it does so expressly.**

Brechan argues that the absence of a differing site condition clause equates to an absence of entitlement to an equitable adjustment for additional costs incurred as a result of differing site conditions. Without any citation to evidence, Brechan presents its assumption that AESI included that risk in its bid price. That is factually incorrect. *See* Dave Olson Decl. re. Motions for Summary Judgment.

As a matter of fact, AESI did not include the risk of differing site conditions in its bid. As a matter of fact, Brechan requires AESI to expressly waive its right to such entitlement when Brechan requires AESI to do so. *See* Dave Olson Decl. re. Motions for Summary Judgment. In *Larsen v. Municipality of Anchorage*, 993 P.2d 428, 435 (Alaska 1999), the court explained that "the course of performance or special usage... may be of considerable value in deciding what the contract means." The court relied on Restatement 2d Contracts section 202(4) and (5) which reads:

> (4) Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.
>
> (5) Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.

In addition to the course of dealing between AESI and Brechan, Brechan's dealings on this same Project confirm that the expectation of the parties and industry practice was to allow equitable compensation for differing site conditions. Brechan paid Swalling for differing site conditions related to latent defective welds and surface problems, and Brechan entered the same subcontract agreement with AESI. *See* Dave Olson Decl. re. Motions for Summary Judgment. Summary judgment is inappropriate.

3. **Constructive change is a conceptually distinct entitlement theory and remains a valid cause of action.**

Brechan presumes that the entitlement theory of "constructive change" is duplicative of the entitlement theory for "differing site condition." Brechan's Motion, p.10. It is not. Our courts consistently recognize "constructive change" as an independent and viable entitlement theory.

In *J.F. Allen Co. and Wiley W. Jackson Co. v. U.S.*, 25 Cl.Ct. 312, 314 (1992), the plaintiff claimed an imposition which "constituted a constructive change, or breach of contract." The imposition was a "section-skipping requirement." *Id.* The dispute arose out of a contract with the United States Corps of Engineers (Corps). *Id.* In its complaint the plaintiff alleged:

> [C]ontrary to paragraphs 5.1 and 5.1.2 of Section 20 of the plaintiff's contract with the Corps, authorized representatives of the Corps...issued orders prohibiting simultaneous drilling and grouting... which constituted a constructive change or, alternatively, a breach of contract, entitling the plaintiff to recover for the increased costs and lost profits associated with this alleged change in the drilling sequence... because of the low grout take, which occurred in performance of the contract, the plaintiff is entitled to equitable adjustment, pursuant to the Differing Site Conditions and Variations in Quantity clauses in the contract.

*Id.*

ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION FOR SUMMARY JUDGMENT ON ABSOLUTE'S NEGLIGENT DESIGN, DIFFERING SITE CONDITION, CONSTRUCTIVE CHANGE, COVENANT OF GOOD FAITH AND FAIR DEALING, IMPLIED CONTRACT AND EQUITY CLAIMS
Case No. A03-0199CV (RRB)-- 6

The claim of constructive change and Differing Site Conditions were not equivalents. Constructive Change amounted to section-skipping, not differing site conditions. Nor are the claims duplicative in this instance. The constructive change in this instance amounted to a breach of contract because of hidden conditions withheld that significantly increased costs associated with the work not unlike the arduous demands placed on the plaintiff in *J.F. Allen*. Key to constructive change analysis is that the change can be "express or constructive change." *Id.* at 320. It was not express in this case, but because Brechan expected AESI to perform work on hidden welds it was a constructive change. In *J.F. Allen*, the court did not deny the existence of constructive change but denied on the grounds of an inadequate affidavit. *Id.* at 325. Here, applying the same analysis, summary judgment must be denied. *See* Dave Olson Decl. re. Motions for Summary Judgment.

4. **Breaches of good faith and fair dealing were implicit to the formation of the contract and the effect of the bad dealings continued throughout the performance of the contract**.

With regard to Absolute's cause of action based on a violation of Good Faith and Fair Dealing, Brechan cites *O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 526 (Alaska 1988) for the proposition that "it is well-established Alaska law that a prerequisite to such a claim is that there must be an actual contract in place between two parties before there can be any breach of the covenant." Brechan's Motion, 12. In *O.K. Lumber*, a third party claimant sued an insurance company for breach of good faith and fair dealing. *Id.* at 525. Similarly in *Revelle v. Marston*, 898 P.2d 917, 927 (Alaska 1995), also cited in Brechan's Motion at 12, the claimant at no time had a contractual relationship with defendants who were sued on basis of a violation of good faith and fair dealing. *Revelle* at 927. Both cases are distinguishable from this case because Absolute did have a contract with Brechan. The failure to disclose conditions

occurred during the formation of the contract. Failure to disclose information can be a basis of a violation of good faith and fair dealing. See *R.S.M. Inc. v. Alliance Capital Management Holdings L.P.*, 790 A.2d 478, 499 f. 31. (Del.Ch.2001) ("One could conceive of the General Partner's failure to disclose all material facts as a violation of the partnership agreement's implied covenant of good faith and fair dealing").

5. **Genuine issues of material fact exist as to whether the additional work was captured by the specifications within the scope of the original contract**.

Brechan recites to black-letter law regarding equitable relief being unnecessary when there is an adequate remedy at law and argues that all the additional work was captured by the original contract specifications. *See* Brechan's Motion, pp.12-15. There are genuine issues of material fact about what was captured by the specifications. *See* Dave Olson Decl. re Motions for Summary Judgment.

6. **Equitable remedies are inherently questions of fact improper for summary judgment**.

Our courts routinely regard the appropriateness of equitable relief as a question of fact, not a question for summary judgment. "In equitable remedies given for fraud, accident, or mistake, it is the facts as found that give the right to relief." *Wasatch Min. Co. v. Crescent Min. Co.*, 148 U.S. 293, 298, 13 S.Ct. 600 (1893). Brechan's conduct is squarely at issue in this lawsuit. Summary judgment is not proper when a party's conduct is at issue in the determination of whether that conduct was reasonable because the determination is a factual one. In *Sherrill v. Federal-Mogul Corp. Retirement Programs Committee*, 413 F.Supp.2d 842, 867 (E.D.Mich. 2006), the court concluded that the question of the defendant's conduct was "one that is inherently factual in nature" and while "Defendants would like the Court to, as matter of law, dismiss plaintiff's claims against them. The Court, however, declines to usurp the province of

the trier of fact." The court continued: "It is well established that federal policy favors jury decisions of disputed fact questions." *See, e.g., Atl. & Gulf Stevedores, Inc. Ellerman Lines, Ltd.*, 369 U.S. 355, 360 82 S.Ct. 780, 7 L.Ed 798 (1962) (noting that the Seventh Amendment fashioned the policy favoring the jury resolving factual disputes); *Coopersville Co-Operative Creamery Co. v. Lemon*, 163 F. 145 (6th Cir. 1908) ("it is the peculiar province of a jury to determine disputed questions of fact."). *Id.* Applying the same principles, this Court should deny summary judgment here.

**7. <u>Genuine issues of material fact support AESI's claim for breach of warranty of plans and specifications.</u>**

Brechan argues that Absolute cannot recover on its Breach of Implied Warranty of the Adequacy of the Specification because the "holiday-free" specification was a performance specification and not a design specification. Brechan relies on *Blake Constr. Co. v. United States*, 987 F.2d 743, 745 (Fed. Cir. 1993). Brechan, 16-17. The key phrase from the quotation Brechan cites from *Blake* is that with respect to <u>Design specifications</u>:

> The contractor has no discretion to deviate from the specifications, but is 'required to follow them as one would a road map.'

This describes the "holiday-free" requirement on the Cargo Wharf Project. Absolute was not left to its own discretion to employ a method to prepare and coat the surface of weld areas, clearly distinguishing the "holiday-free" requirement from being a performance specification. *See* Dave Olson Decl. re. Motions for Summary Judgment.

*Blake* is helpful on explaining the difference between design and performance specifications. In *Blake*, an electrical subcontractor had to install electrical conduits. *Id.* at 744. The initial specifications included drawings with the conduits overhead and included a clause that "'All feeder locations are diagrammatic. Contractor shall relocate feeders as per existing

conditions and shall coordinate with other trades.'" *Id.* The electrical subcontractor installed the conduits underground. *Id.* The Navy issued a stop order and directed the subcontractor to install the conduits overhead. After completion the contractor on the subcontractor's behalf sued the Navy and the Claims Court held the contractor was entitled to $1,679.260.

The Federal Circuit reversed the Claims Court. Blake argued before the Federal Court that the specifications were performance specifications because the feeders system was to be installed "in a manner which avoids conflict with the other trades." *Id.* at 745. Blake further argued the contract gave him "discretion to employ the means it deemed best to achieve this goal, including underground installation" and the specifications "did not provide a 'road map' characteristically associated with a design specification." *Id.*

The Federal Circuit clarified that "the mere fact that a specification cannot be followed precisely does not, in and of itself, indicate that it is 'performance' and not 'design.'" *Id.* at 746.

> Were this true, any specification intended to be a design specification would be transformed into a performance specification if it were faulty.

*Id.* (emphasis added). The court continued:

> This is nonsensical; common sense dictates that the contractor does not acquire unfettered discretion to complete the contract in any manner it sees fit, just because one aspect of the specification might be defective.

*Id.* The court continued with language that is clearly applicable here:

> More generally, the problem with both of Blake's arguments is that the distinction between design and performance [with Brechan quoted at length at Brechan's Motion 16-17] specifications is not absolute, and does not dictate the resolution of this case.
>
> ***
>
> [The] labels merely help the court discuss the discretionary elements of a contract. It is the obligations imposed by the specification which determine the extent to which it is 'performance' or 'design,' not the other way around.

*Id.* The Blake court concluded that the specifications were design specifications because the contract specified the electrical conduits overhead and did not provide the parties with freedom to choose performance. *Id.* at 747. Similarly, a "Holiday-free" requirement was a design specification and Absolute acted under strict guidelines not its own discretion.

Genuine issues exist about the remainder of Brechan's arguments wherein Brechan suggests that AESI did not reasonably rely on the specifications, did not adhere to the design, that the design did not cause additional work pertaining to reliance, or that the design was not defective. *See* Dave Olson Decl. re. Motions for Summary Judgment. Brechan's motion fails.

## V. CONCLUSION

Brechan moves for summary judgment on seven separate entitlement theories. On several issues Brechan has not presented an accurate recital of applicable law as discussed above. In any event, there are genuine issues of material fact about each issue. Brechan's motion must be denied.

DATED this 21st day of August, 2006.

MARSTON HEFFERNAN FOREMAN, PLLC

By ____________________
Terry R. Marston II, WSBA No. 14440
Jami K. Elison, WSBA No. 31007
Jesse P. Elison, WSBA No. 36914
Attorneys for Plaintiff Absolute Environmental Service, Inc.

# CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury, under the laws of the State of Washington that I am now and at all times herein mentioned, a resident of the State of Washington, over the age of 18 years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On the date given below, a true and correct copy of the following:

1. ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES
2. ~~DECLARATION OF DAVE OLSON~~;
2. [Proposed] ORDER DENYING COFFMAN'S MOTION FOR SUMMARY JUDGMENT TO DISMISS ABSOLUTE'S CLAIM OF BUSINESS DEVASTATION DAMAGES

were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| James B. Stoetzer<br>Lane Powell Spears Lubersky<br>1420 Fifth Avenue, Suite 4100<br>Seattle, WA 98101<br>*Atty for Coffman* | Jacob Nist<br>Perkins Coie, LLP<br>1029 West Third Avenue, Suite 300<br>Anchorage, AK 99501<br>*Atty for Brechan and Safeco* |
| Robert J. Dickson<br>Atkinson, Conway & Gagnon, Inc.<br>420 L Street, Suite 500<br>Anchorage, AK 99501<br>*Atty for Specialty Polymer Coatings* | Peter Partnow<br>Lane Powell Spears Lubersky<br>301 W. Northern Lights Boulevard<br>Suite 301<br>Anchorage, Alaska 99503<br>*Atty for Coffman* |
| Eric J. Brown, Esq.<br>Jermain Dunnagan & Owens, P.C.<br>3000 A Street, Suite 300<br>Anchorage, AK 99503-4097<br>*Atty for Forrest McKinley and Emerco* | Mr. William Baerg<br>Patrick Duffy<br>Monteleone & McCrory, LLP<br>725 South Figueroa Street, Suite 3750<br>Los Angeles, CA 90017-5446<br>*Atty for Forrest McKinley and Emerco* |

SIGNED at Redmond, Washington this 21st day of August, 2006.

[signature]
~~Terry R. Marston~~
Krasty L. Martin

ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION FOR SUMMARY JUDGMENT ON ABSOLUTE'S NEGLIGENT DESIGN, DIFFERING SITE CONDITION, CONSTRUCTIVE CHANGE, COVENANT OF GOOD FAITH AND FAIR DEALING, IMPLIED CONTRACT AND EQUITY CLAIMS
Case No. A03-0199CV (RRB)-- 12