```
 1              UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF ALASKA
 3
 4  ABSOLUTE ENVIRONMENTAL
    SERVICES, INC. an Alaska corporation,
 5
              Plaintiff,
 6
         vs.
 7
    FORREST J. MCKINLEY, an individual,
 8  d/b/a "Imperial Industrial Coatings"
    and EMERCO, INC., a California
 9  Corporation, d/b/a Imperial Industrial
    Coatings,
10
              Defendant.
11  _____
12  Case No. A03-0199 CV (RRB)
13
14
15
16
              DEPOSITION OF RALPH THOMAS PUETT
17
              Taken November 1, 2004
18            Commencing at 9:45 a.m.
19      Volume I - Pages 1 - 163, inclusive
20
21
              Taken by the Plaintiff
22                      at
                   PERKINS, COIE
23          1029 W. Third Av., Suite 300
                Anchorage, AK  99501
24
25
```

Exhibit 1
Page 1 of 7

```
 1   BY MR. MARSTON:
 2   Q    I'm also handing you Exhibit 5.
 3             Looking at Exhibit No. 3, which is a court
 4   pleading entitled, Notice of Deposition upon Oral
 5   Examination to Emerco, Inc., pursuant to FRCP 30(b)(6).
 6   And drawing your attention to the second page of that
 7   document where Emerco, Inc., has been requested to provide
 8   for examination a witness knowledgeable in certain areas.
 9             Is it your testimony that you have been
10   designated by Emerco, Inc., to testify on its behalf in
11   response to this notice of deposition?
12   A    No.
13   Q    Have you seen Exhibit 3 before?
14   A    No.
15   Q    Can you tell me what the circumstances of your being
16   here today are?
17   A    A witness for Imperial Industrial Coatings.
18   Q    Who is your employer?
19   A    Imperial Industrial Coatings.
20   Q    What is Imperial Industrial Coatings?
21   A    It's a coatings company.
22   Q    Is it a sole proprietorship?
23   A    I don't know that.
24   Q    Is it a corporation?
25   A    I don't know that.
```

Exhibit 1
Page 2 of 7

Page 5

```
 1   A    In this document before me.
 2   Q    Have you seen it on any other occasions in the past?
 3   A    Yes.
 4   Q    When was the first time that you saw that?
 5   A    I don't know.
 6   Q    Is it your belief that you are employed by a company
 7   named Emerco, Incorporated?
 8   A    No.
 9   Q    Have you ever been employed by a company named
10   Emerco, Incorporated?
11   A    No.
12   Q    When did you first learn -- strike that.
13           Did Mr. McKinley request you to appear and
14   testify today?
15   A    No.
16   Q    Who asked you to appear and testify today?
17   A    Bill Baerg.
18   Q    And Mr. Baerg is an attorney?
19   A    Yes, sir.
20   Q    Is Mr. Baerg representing you personally in this
21   litigation?
22   A    I don't understand that question.
23   Q    Do you have an attorney that is representing you
24   personally with respect to any issue pertaining to the
25   wharf project in Kodiak, Alaska?
```

Exhibit 1
Page 3 of 7

Page 8

```
 1   Q    Did you read it?
 2   A    No.
 3   Q    Have you ever read Exhibit 5 prior to a few moments
 4   ago when I handed it to you?
 5   A    No.
 6   Q    When did Mr. Baerg request you to appear and testify
 7   today?
 8   A    I don't remember that date.
 9   Q    How long ago?
10   A    I don't know.
11   Q    Did he explain to you why he was asking you to come
12   testify?
13   A    Yes.
14   Q    What did he explain to you?
15   A    I was requested because supposedly I was the most
16   knowledgeable person about the project.
17   Q    And by "the project," you mean what?
18   A    Cargo wharf, Phase 2.
19   Q    On Kodiak Island?
20   A    Yes.
21   Q    Do you believe that you are the person most
22   knowledgeable about that project?  Strike that.
23        If I understand your testimony correctly, what
24   you're telling me is that you do not believe you were ever
25   employed by a corporation name Emerco, Incorporated; is
```

Exhibit 1   Page 11
Page 4 of 7

```
 1    that right?
 2    A    Yes.
 3    Q    And you never mentioned or told David Olson that you
 4    were employed by a company called Emerco, Incorporated?
 5    A    No.
 6    Q    And during the entirety of the project, wharf project
 7    in Kodiak, you did not believe that you were employed by
 8    Emerco, Incorporated?
 9    A    Yes.
10    Q    But it's your testimony that you don't know whether
11    Imperial Industrial Coatings is a corporation, or is a
12    limited liability company, or is a sole proprietorship; is
13    that right?
14    A    That's correct.
15    Q    Or is in fact any other type of a business entity?
16    A    I don't understand that question.
17    Q    You never inquired as to the nature of the company
18    you were employed by.  Is that a fair statement?
19    A    I don't know that I had to inquire.
20    Q    Forrest McKinley hired you?
21    A    Yes.
22    Q    Was it your understanding that Forrest McKinley was
23    personally responsible for paying your salary?
24    A    That was my understanding.
25    Q    So to recap what we've just discussed:  It's your
```

Exhibit  1    Page 12
Page  5  of  7

```
 1   signing the verification?
 2   A    Yes.
 3   Q    And, to the best of your knowledge and belief, all
 4   the information contained there is true?
 5   A    Yes.
 6   Q    I want to ask you again about that signature page.
 7   The second paragraph reads, "I am a project manager of
 8   Emerco, Inc., a party to this action, and am authorized to
 9   make this verification for and on its behalf, and I make
10   that verification for that reason."  Do you see that?
11   A    Yes.
12   Q    Did you see that language before you signed the
13   document?
14   A    Yes.
15   Q    And is that statement a true statement?
16   A    No.
17   Q    Why did you sign this document and declare it to be
18   truthful if in fact you recognized that there was an
19   untruthful statement within it?
20   A    I told Bill Baerg at the time that I was employed by
21   Imperial Industrial Coatings.  He left this language in
22   here.  And it didn't really matter to me.  He said it
23   didn't make a difference.
24   Q    But you knew it was there and you objected to it to
25   Mr. Baerg and, based upon his assurance that it didn't
```

Exhibit / Page 6 of 7　　Page 39

```
 1   make any difference, you went ahead and signed it, even
 2   though that statement is a false statement?
 3   A    That's correct.
 4   Q    Were you asked by Imperial to quantify Imperial's
 5   damage claim against Absolute?
 6   A    No.
 7   Q    Have you made an effort to quantify Imperial's damage
 8   claim against Absolute?
 9   A    No.
10   Q    Would you object if I characterized the content of
11   Exhibit 2 as being a description of Imperial's --
12             MR. BROWN:  This is 1.
13             MR. MARSTON:  I'm just having a dickens of a
14   time with that.  Excuse me.
15   BY MR. MARSTON:
16   Q    Exhibit 1 as being a description of the
17   quantification of Imperial's/Absolute -- or damage claim
18   against Absolute?
19   A    No.
20   Q    Does Imperial have a damage claim against Absolute?
21   A    Yes.
22   Q    And has anybody quantified that damage claim other
23   than you?
24   A    Yes.
25   Q    Who?
```



Exhibit 7
Page 7 of 7

Page 40