## Jarrell, Amy (Perkins Coie)

**From:** Stears, Dan [Stears@alaska.coffman.com]
**Sent:** Thursday, January 03, 2002 3:34 PM
**To:** 'Matt Holmstrom'
**Cc:** Hardenbergh, Jerry
**Subject:** RE: cargo pier H pile prep costs

Matt,

All things considered, I think the proposal is reasonable if they agree to the 5 items that I listed below. Note: Please change #4 to read "Visible defects (pinholes) at the connections will be repaired." (Remove the word no). Feel free to forward my comments to the USCG after you correct #4.

Dan

-----Original Message-----
From: Matt Holmstrom [mailto:mholmstrom-bei@gci.net]
Sent: Thursday, January 03, 2002 10:55 AM
To: Stears, Dan
Subject: RE: cargo pier H pile prep costs


Dan - thanks for the quick response. Jerry H. called me yesterday afternoon and we had a good visit. Are you saying that Swalling's cost for Option 2 is fair & reasonable? Jerry mentioned something about Swalling sharpening their pencil. I'm going with what you recommend. However, like we discussed previously, the Coast Guard wants to know the add'l cost for the entire wharf. Last correspondence I received from Swalling, Mike A., was that they'll have those costs by 1/11. I would like to forward your comments below to Scott Bonney, Steve Locher and Paul Rendon if ok with you. Thanks again. Matt

-----Original Message-----
From: Stears, Dan [mailto:Stears@alaska.coffman.com]
Sent: Wednesday, January 02, 2002 10:31 PM
To: 'Matt Holmstrom'; Hardenbergh, Jerry
Cc: Radcliffe, Lawrence; 'John Daley'
Subject: RE: cargo pier H pile prep costs


Matt,

The original RFP called for "Designs shall extend the life of the facility, be feasible and practical, and shall repair design deficiencies identified in the report. Determine practical elevations for extent of repairs. Determine practical construction techniques for coating removal and recoating of existing structures".

The project coating specification that we developed was intended to coat as much of the pile as feasibly possible (lowest practical elevation) and provide a finished product that had minimal defects (no such thing as a defect free coating).

As Swalling has identified, the original cargo wharf portion of the facility has several areas that require extensive grinding and welding to produce a minimal defect coating system. Most, but not all, of these areas are between elevations 116 and 119. These change of conditions were not readily

3

identifiable until the existing corrosion products and coating system were removed.

Option 2, of the Swalling proposal, offers a cost effective method for addressing the change of conditions. This method will not produce a defect free coating, however the number of defects and the location of the defects should be minimized. The rate of corrosion in the atmospheric and splash zones (above elevation 114) is significantly less than in the tidal zone (approximately elevation 107 to 114). Some corrosion at the defects and staining of the adjacent coating is likely to occur in the future. This approach will provide more of a commercial grade coating appearance rather than a showroom appearance.

In keeping with the "spirit" of the original RFP (feasible and practical), I recommend proceeding with Option 2 of the Swalling proposal. However, the following items should be clarified and required:

1. All welds in the tidal zone shall be cleaned, ground and sealed.

2. The estimated 3200 lf of caulking work was developed by Swalling. I recommend that the change in scope state that caulking is acceptable only above elevation 116 and all other areas that would normally have been seal welded will be caulked. I personally do not feel comfortable with limiting it to 3200 lf.

3. The manufacturer must guarantee, in writing, the compatibility of the caulking with the coating system.

4. I recommend the statement "No holidays (pinholes) at connections will be repaired" be modified to read "No visible defects (pinholes) at the connections will be repaired." This will eliminate obvious or larger bare metal spots from being exposed to the environment.

5. The Swalling proposal does not cover Bents 1-5, your mark-up and additional costs to you to have Jerry on site. These should all be covered in your proposal to the USCG.

I also feel the rectifier work should be included in this project rather than the electrical upgrade project.

Dan


-----Original Message-----
From: Matt Holmstrom [mailto:mholmstrom-bei@gci.net]
Sent: Wednesday, January 02, 2002 8:56 AM
To: Dan Stears; Jerry Hardenbergh
Subject: cargo pier H pile prep costs


Dan/Jerry - I need your recommendations/comments on Swalling's proposal ASAP. The Coast Guard is anxiously awaiting our PLAN. I need your comments, even if they're draft form, by tomorrow at 1400 - my meeting time with Scott Bonney. Thanks. Matt

## Jarrell, Amy (Perkins Coie)

**From:** Stears, Dan [Stears@alaska.coffman.com]
**Sent:** Friday, January 04, 2002 5:56 PM
**To:** 'Matt Holmstrom'
**Cc:** Radcliffe, Lawrence; Hardenbergh, Jerry
**Subject:** FW: USCG Cargo Pier H Pile Coating Costs



Swalling H pile prep
dtd 1.4.0...

Matt,

I made my corrections in the attached letter.

Dan

-----Original Message-----
From: Matt Holmstrom [mailto:mholmstrom-bei@gci.net]
Sent: Friday, January 04, 2002 4:15 PM
To: Stears, Dan
Cc: Hardenbergh, Jerry; Radcliffe, Lawrence
Subject: RE: USCG Cargo Pier H Pile Coating Costs


Dan - I've attached a letter from me to Swalling I'd like to send them. I
used your comments as the meat of the letter. Let me know your comments and
I'll send the letter off. Thanks. Matt

-----Original Message-----
From: Stears, Dan [mailto:Stears@alaska.coffman.com]
Sent: Friday, January 04, 2002 3:06 PM
To: 'Matt Holmstrom'
Cc: Hardenbergh, Jerry; Radcliffe, Lawrence
Subject: USCG Cargo Pier H Pile Coating Costs


Matt,

The following is a revised version of what I sent you previously. Most of
it is the same, however numbers 1, 2 and 4 were further clarified for you.
Hopefully this one will clear up everything.

The original RFP called for "Designs shall extend the life of the facility,
be feasible and practical, and shall repair design deficiencies identified
in the report. Determine practical elevations for extent of repairs.
Determine practical construction techniques for coating removal and
recoating of existing structures".

The project coating specification that we developed was intended to coat as
much of the pile as feasibly possible (lowest practical elevation) and
provide a finished product that had minimal defects (no such thing as a
defect free coating).

As Swalling has identified, the original cargo wharf portion of the facility
has several areas that require extensive grinding and welding to produce a
minimal defect coating system. Most, but not all, of these areas are
between elevations 116 and 119. These change of conditions were not readily
identifiable until the existing corrosion products and coating system were

1

removed.

Option 2, of the Swalling proposal, offers a cost effective method for addressing the change of conditions. This method will not produce a defect free coating, however the number of defects and the location of the defects should be minimized. The rate of corrosion in the atmospheric and splash zones (above elevation 114) is significantly less than in the tidal zone (approximately elevation 107 to 114). Some corrosion at the defects and staining of the adjacent coating is likely to occur in the future. This approach will provide more of a commercial grade coating appearance rather than a showroom appearance.

In keeping with the "spirit" of the original RFP (feasible and practical), I recommend proceeding with Option 2 of the Swalling proposal. However, the following items should be clarified and required:

1. All welds in the tidal zone shall be cleaned, ground and sealed. This work is exclusive of the 10 man-hours per cell surface preparation requirement that Swalling proposed.

2. The estimated 3200 lf of caulking work was developed by Swalling. I recommend that the change in scope state the following: Caulking is acceptable only above elevation 116. Most welds and crevices, above elevation 116, that would normally have been seal welded will be caulked. Some seal welding, above elevation 116, may be required as part of the 10 man-hours per cell surface preparation requirement. I personally do not feel comfortable with limiting caulking to 3200 lf.

3. The manufacturer must guarantee, in writing, the compatibility of the caulking with the coating system.

4. I recommend the statement "No holidays (pinholes) at connections will be repaired" be modified to read "Holidays (coating defects) at the connections will typically not be repaired, however visible holidays (visible bare metal areas) at the connections will be repaired." Testing may indicate there is a holiday (possibly not the specified coating thickness), however no visible bare metal is exposed. This will eliminate obvious bare metal spots from being exposed to the environment.

5. The Swalling proposal does not cover Bents 1-5, your mark-up and additional costs to you to have Jerry on site. These should all be covered in your proposal to the USCG.

I also feel the rectifier work should be included in this project rather than the electrical upgrade project.

Dan

January 4, 2002

Andy Romine, Operations Manager
Swalling Construction Co., Inc.
P.O. Box 101039
Anchorage, AK 99510-1039

Subject:  USCG Cargo Wharf Maintenance Project;
          **Additional H Pile Prep and Coating Costs**

Dear Andy:

Please consider this in response to your letter dated December 21, 2001. Brechan Enterprises and Coffman Engineers have reviewed your letter and recommend proceeding with Option # 2 with the following additions and changes to the "Terms and Conditions":

1. All welds in the tidal zone shall be cleaned, ground and sealed. This work is exclusive of the 10 man-hours per cell surface preparation requirement that Swalling proposed.

2. In reference to the 3rd Swalling Term and Condition regarding the 3200 lf of caulking work estimated by Swalling. Change this to read: "Caulking is acceptable only above elevation 116. Most welds and crevices, above elevation 116, which would normally have been seal welded will be caulked. Some seal welding, above elevation 116, may be required as part of the 10 man-hours per cell surface preparation requirement.

3. The manufacturer must guarantee, in writing, the compatibility of the caulking with the coating system.

4. In reference to the 6th Swalling Term and Condition – Replace the sentence "No holidays (pinholes) at connections will be repaired" with "Holidays (coating defects) at the connections will typically not be repaired. However visible holidays (visible bare metal areas) at the connections will be repaired." Testing may indicate there is a holiday (possibly not the specified coating thickness), however this methodology will eliminate obvious bare metal spots from being exposed to the environment.

I understand this proposal is for bents 6 – 15 only, and according to Mike Andersen, you will be forwarding costs for bents 16 – 33 by January 11. If these proposed revisions and clarifications are acceptable let me know and I will forward our proposal to the Coast Guard. If you have questions or require additional information please call me at 487-2223.

Sincerely,

**BRECHAN ENTERPRISES, INC.**



BEI20320
Ex 33, Page 5 of 6
38599-0012

Matt Holmstrom, P.E.
Project Manager

Ex 33, Page 6 of 6
38599-0012