**SWALLING CONSTRUCTION COMPANY, INC.**
AN EQUAL OPPORTUNITY EMPLOYER
GENERAL CONTRACTOR #AA179



SERVING ALASKA SINCE 1947

www.swalling.com
P.O. Box 101039
ANCHORAGE, ALASKA 99510-1039
TELEPHONE (907) 272-3461
FACSIMILE (907) 274-6002
LOCATED AT 235 F ST.

Matt Holmstrom
Brechan Enterprises
2705 Mill Bay Road
Via Fax 907-487-2587

February 12, 2002

Re:      Kodiak Coast Guard Dock Facility Coatings

Subject: Changed Condition

Gentlemen;

This correspondence is in response to your request during our meeting of February 8, 2002, to provide specifics (in writing) of the changed conditions encountered on the referenced project. For the record it should be noted that Swalling, Brechan, and Coffman have been discussing these changed conditions since early October, when the condition of the existing H-Pile supported dock structure was first exposed after the sand blasting was completed on the first two bents of the H-Pile structure. Swalling encountered two differing site conditions on the referenced project. Following is a brief discussion of these conditions.

**Increased Quantity of Seal Welds**
Specification section 09967 article 1.7.3.9 indicates that there will be an estimated 100 linear feet of seal welding required for the project. Swalling completed the contract estimated 100 linear feet of seal welding between Bents 1 and 23 of the pipe section of the structure. Swalling had completed the contract required seal weld repairs prior to starting the H-Pile section of the dock. As the project records show the H-Pile section of the dock has a considerable amount of metal-to-metal connections that are not welded. These include, but are not limited to, previously installed scaffold-hanging brackets, permanent structure angle brace to h-pile connections, pipe support brackets, picking eyehole plugs, and permanent structure splice plates at h-pile splices. By specification these connections are required to be seal welded.

**Poor Quality Existing Welds**
After the sand blasting was completed on the first two bents of the H-Pile portion of the dock Swalling noticed that the welds on the H-Pile structure were of poor quality. The welds were discontinuous, porous, and were heavily puddled. Additionally, a number of the welds included multiple passes to allow for bad fit up between the structural members when originally installed. We have no knowledge of whether the welds in their as-built condition are structurally competent. We do have knowledge that the condition of the welds propagates pinholes in the coating when applied. We believe this is due to the

irregularity and the porous condition of the welds. These conditions were not visible during our site investigation of the project. Additionally, as previously stated it would not be reasonable for Swalling to expect such poor visual quality welds on any marine structure, let alone a structure that was constructed for the U.S Government.

Swalling's contract was for coatings' removal and application of a new coating. Grinding of minor imperfections such as weld splatter, sharp edges, and metal scale that would inhibit the adhesion of the coatings are included in the original scope of the work. Repair of poor quality welds is not included in the original scope of the work and is not in our contract.

**Proposals**

As you are aware we have offered a number of proposals at the request of Brechan and Coffman relating to the changed condition discussed previously. In response to recommendations made by Coffman during our 2/8/02 meeting following are additional proposals for your review.

**Phase 1**

### Scope of Structural Steel Repairs
- All sharp edges, slivers, and weld splatter will be ground smooth after sandblasting
- Existing welds, crevices, and steel defects, other than those listed above, will be caulked
  - Caulking materials will be compatible with coatings system
    - Coating manufacturer will guarantee compatibility of coating and caulking
    - Coating manufacturer and Swalling will not warranty application over unprepared steel surfaces per coatings manufactures recommendations.
- Quality control criteria will be to repair obvious or low milage spots
  - Milage to be determined by standard PA2, dry film thickness test
  - Bare spots will be determined by visual examination
  - No testing or repairs will be made for pin-hole type defects
- Schedule
  - We anticipate 10 weeks of work to complete the remainder of Phase 1, including the work scope change addressed above. This includes two weeks of scaffolding installation and 8 weeks of coatings work.
- Weld repairs directed by Brechan to repair such items as leaking metal to metal joints, broken or cracked weld conditions, etc. will be done on an hourly basis. Reimbursement will be $100/per man hour. This rate includes labor, equipment, materials, room and board, and overhead and profit. Weld repairs will only be completed by the written direction of Brechan Enterprises. Written directive constitutes agreement to pay Swalling per the previously discussed terms.

BEI4430
38599-0012

Ex 45, Page 2 of 3

**Phase II**

In addition I have included a proposal to complete Phase II of the project. Repair criteria for Phase II will be as described above. The cost to complete Phase II of the referenced project is as follows:

| | |
|---|---|
| Original Proposal | $683,000 |
| Changed Condition - Caulking | 138,219 |
| Changed Coating Removal Method | 93,660 |
| Increased Coating Material Usage | 50,760 |
| Mobilization 3rd Year | 31,000 |
| Total Cost Phase II | $996,639 |

Our proposal to complete the work for Phase II is $996,639 Lump Sum. Weld repairs will be completed on the same basis as discussed for Phase I.

The estimate for Phase II is based on a 4 to 5 month work schedule, depending on weather, daylight, and temperature conditions that may affect productivity. If Phase II were accepted we would plan to continue work immediately after completion of Phase I. Due to the decreasing amount of work time available in late fall because of tidal, daylight, and temperature changes, we anticipate that completion of the work will not take place until spring, early summer of 2003. We propose that the mobilization costs for 2003 be an additive item if we are not able to complete the work required in Phase II in 2002.

As discussed in the February 8, 2002 meeting time is of the essence. We have considerable work to do to prepare for the upcoming work season. The earlier we have a direction to proceed with the repair work the better off the project will be and the earlier we can provide the dock facility to the Coast Guard for their unencumbered use.

This proposal is valid for 30 days.

Sincerely,
SWALLING CONSTRUCTION CO., INC.

Andrew Ronline
Operations Manager

cc:   Dan Stears, Coffman Engineers

BEI4431
38599-0012

Ex 45, Page 3 of 3