Michael E. Kreger
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)
mkreger@perkinscoie.com

Attorneys for Defendants Brechan Enterprises, Inc.
and Safeco Insurance Company of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

ABSOLUTE ENVIRONMENTAL
SERVICES, INC., et al.,

      Plaintiffs,

v.

FORREST J. MCKINLEY, et al.,

      Defendants.

Case No. 3:03-cv-0199-RRB

### REPLY ON BRECHAN'S MOTION FOR
### SUMMARY JUDGMENT – NONDISCLOSURE
### (Docket No. 214)

      Brechan's motion on superior knowledge and fraudulent nondisclosure identified the necessary elements of Absolute's claims. Absolute did not dispute the elements it needed to establish. Under the undisputed law, AESI must show not only that Brechan knew there may be poor weld conditions such as Swalling encountered, but that Brechan knew that the revision to the specification's method of prepping and coating welds would be of no significance. See Motion at 27-32,

*PERKINS COIE LLP*
*1029 West Third Avenue, Suite 300*
*Anchorage, Alaska 99501*
*(907) 279-8561 / Facsimile (907) 276-3108*

citing <u>Granite Construction Co. v. United States</u>, 24 Cl. Ct. 735; <u>American Ship Building Co. v. United States</u>, 654 F.2d 75, 80 (1981) and <u>Intercontinental Manufacturing Co. v. United States</u>, 4 Cl. Ct. 591, 598-99 (1984).

The same "state of mind" element is necessary for relief in tort: To survive summary judgment, "Absolute must demonstrate its ability to establish each of the following points with admissible proof: (1) that during contract negotiations, Brechan <u>knew</u> that Absolute would encounter undisclosed conditions that would impose significant unexpected costs on Absolute's performance of the subcontract; (2) that Absolute (and its subcontractor, Imperial) were unaware of these conditions and costs; (3) that Brechan <u>knew</u> that Absolute/Imperial was unaware of these conditions and costs; (4) that Brechan <u>knew</u> Absolute/Imperial could not identify these conditions and costs unless Brechan told Absolute about them; and (5) that Brechan <u>knew</u> that Absolute would not enter into the subcontract if it was aware of these conditions and costs." <u>See</u> Motion, at 40-43.[1]

Brechan's motion and opening brief establish that the specification for Phase II was modified and, as modified, provided weld preparation and coating methods which were not available under the original specification for Phase I. The motion establishes that Absolute acknowledged that its scope of work included these revised methods. In response, Absolute did not offer evidence that

---

[1] <u>See also</u> Motion at 39: "'[A] duty to disclose arises only when a defendant has <u>actual knowledge</u> of both the undisclosed information and the fact that the plaintiff is proceeding in ignorance of facts basic to the transaction; it is not enough to show that the defendant <u>should have known</u> the information or its importance to the plaintiff.' *McElhannon v. Ford*, 73 P.3d 827, 831 (N.M. App. 2003) (emphasis added).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Brechan knew that the weld issues encountered in Phase I <u>had not been addressed</u> by the revisions to the specification.

None of Absolute's assertions go to its burden to establish this critical element. Brechan submits Absolute has ignored this burden because it can't be carried. The burden can't be carried because the Coast Guard and Brechan requested a modification to the specification used for Phase II to avoid the issues that arose during Phase I. <u>See</u> Motion, at pp. 5-7 (Facts, Paragraphs 2, 3, 5, and 6). The specification in Absolute's contract (as Absolute recognized prior to contracting) allowed for stripe coating and caulking of defective welds and for the removal altogether of non-structural steel that might otherwise have defective welds. <u>See</u> Motion, at page 8 setting out the Specification at Section 1.7.3.6 and at pp 8-9 (Facts 9 and 10) (Absolute's recognition of the coating requirements for defective welds).

Brechan put in place a revised specification for Phase II that changed the methods the contractor used to prepare any defective welds for coating. There is no evidence that Brechan or Coffman "knew" that despite the revisions, the Swalling claim in Phase I would re-occur in Phase II.

1.  **Absolute's Response Does Not Generate Disputed Issues of Material Fact.**

Absolute's assertions do not set forth disputed material facts. The "evidence" offered by Absolute is the eight page "Second Declaration of Dave Olson."[2] The declaration is divided, at paragraph 9, in two sections. Paragraphs 1

---

[2] A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data. <u>Taylor v. List</u>, 880 F.2d 1040,

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

through 8 contain the facts which Mr. Olson argues "substantiate AESI's claim of superior knowledge" See Second Olson Declaration, Docket 258, at ¶ 9. Paragraphs 10 through the end, while they apparently go to issues thought "more offensive," are not advertised as going to issues related to the motions for summary judgment on nondisclosure and deceit.

### a.   Mr. Olson's Declaration at Paragraphs 1-8 Does Not "Substantiate" the Claim for Superior Knowledge.

Mr. Olson's allegations at paragraphs 1-8 do not address the elements which it is necessary for Absolute to prove. The assertion at paragraph 3 of Mr. Olson's Second Declaration that information about actual conditions was vital to Absolute does not claim that Brechan, even assuming it had information about Bents 13-33, recognized that the information was vital to Absolute.

Similarly, as to paragraph 7, Mr. Olson testifies that he believes Brechan and Coffman knew "AESI lacked knowledge of the actual conditions of the welds and other latent problems with surface conditions." This also does not go to Absolute's burden. It is not enough under the case law, for example, the holding

---

1045 (9th Cir. 1989); F.T.C. v. Publishing Clearing House, Inc., 104 F.3d 1168 (9th Cir. 1997). Notwithstanding Mr. Olson's statement that he has "personal knowledge," Mr. Olson's declaration does not show affirmatively that he is competent to testify regarding the matters set forth in his declaration. See Federal Rule of Civil Procedure 56(e). Nothing in Mr. Olson's declaration indicates how or why he would have personal knowledge of the events related, other than his own review of discovery during this lawsuit. The declaration has Mr. Olson's conclusions about the events and the significant events about which he has no personal knowledge nor claims to have personal knowledge. Even if Mr. Olson's declarations went to the issues, they would not be sufficient under FRCP 56(e) to avoid summary judgment. Cf. Toro Co. v. Krouse, Kern and Co., 644 F. Supp 986, 988-89 (ND IN. 1986) (analyzing FRCP 56(e)).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

in <u>Granite</u>, to assert that Brechan knew it was in a better position than Absolute to predict whether there would be defective welds under the coatings in Bents 13-33. Absolute has to show that Brechan had a duty to disclose its knowledge, and failed such a duty. Under <u>Granite</u>, Brechan only had such a duty to disclose its knowledge about the possibility of poor welds if that information was perceived as vital information, that is, if "<u>it knew</u>" that the situation would re-occur despite the revised specification. Absolute hasn't offered any proof on that. Again, the specification was changed for Phase II and provided methods to deal with any defective welds which might be encountered. In short, the allegation about what Brechan "knew" about Absolute's actual knowledge of site conditions does not go to anything Brechan knew about the revision to the specification.

Paragraph 4 in Mr. Olson's declaration is also not material to an element of its burden of proof. The reasonableness of Absolute's investigation is not an element of the breach of the implied duty to disclose superior knowledge. One of the elements of a superior knowledge claim is that Absolute must show that they couldn't discover from any other source what Brechan knew. The information that Swalling had encountered bad welds, and the information that a modification to the subcontract specification occurred, was available from several sources (e.g., Swalling, Coffman, the United States Coast Guard). Brechan's position is undisputed.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Brechan does not contend that Absolute should have discovered "defective welds."[3]  What is important and undisputed, however, is that Absolute did "investigate and discover" that <u>there could</u> be defective welds in its scope.  It is undisputed that Absolute recognized, prior to contracting, that it had the responsibility to caulk or stripe coat defective welds:

> So my understanding is that for some reason these welds needed additional coating or caulking put on them prior to the coating.  That was my understanding.  I didn't know an exact reason why, though, at that point.

Brechan's motion at page 9 Fact # 10, <u>citing</u> Ex. 4, Peterson Dep. at 118-120.

The point is not whether Absolute's site investigation was unreasonable or would have revealed the (presumed) defective welds; the point is that it is undisputed that Absolute <u>got the message</u>:  It knew there may be defective welds and knew these welds "needed additional coating or caulking put on them prior to coating."  Brechan is not liable to Absolute if Absolute didn't ask the reasons why any defective welds were to be stripe coated or caulked prior to coating.

### b.    Paragraphs 10-25 of Mr. Olson's Declaration Are Not Material to Any Issue Raised by the Claims or the Motion.

With respect to the remaining paragraphs 10-25 of Mr. Olson's declaration, Absolute does not contend that these statements are offered to rebut facts material to Brechan's motion.  A review of them indicates they do not go to

---

[3] There is no evidence that anyone discovered any defective welds in Phase II.  Mr. Schilling's testimony, cited in the Motion at 18 (Fact 36) that there was nothing atypical about the welds, continues undisputed.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

issues of nondisclosure of information known by Brechan to be vital to understand the work. For that reason, those paragraphs need not be considered.

Brechan also respectfully submits that these paragraphs fail to meet the requirements of Rule 56(e) and objects to them in that they fail to set forth facts which "show affirmatively that the affiant is competent to testify to the matters stated therein." F.T.C. v. Publishing Clearing House, Inc., supra, at 4. Rather than indicia of competency, what one finds in those paragraphs are Mr. Olson's beliefs regarding some events about which he neither has, nor claims to have, personal knowledge. Again, although inadmissible under FRCP 56(e), the court need not rule on the admissibility of the statements in order to grant Brechan's motion, since these statements are not offered as, nor pertinent to, an element of Absolute's claims of nondisclosure in tort or contract.[4]

**c.    Other Unrebutted Arguments.**

Brechan argued at pp. 34-35 that Absolute was put on notice of possible defective welds by the emails and by the specification itself, and that placing the

_____

[4] Brechan also objects to Mr. Marston's timeline narrative. It is not admissible evidence. Mr. Marston does not assert that he has personal knowledge of the events spotted on the timeline.

More important, Absolute does not claim that the documents referenced in the timeline relate to its burden or put at issue any of the facts introduced in paragraphs 1-49 of Brechan's motion. The court is not required to look through the haystack of documents to find a needle. See Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1029 (9th Cir 2001). This is particularly true here, where Absolute has not even asserted that there is a disputed issue to be found in the haystack.

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. BRECHAN, et al.
Case No. 3:03-cv-0199-RRB             - 7 -             [38599-0012/AA062350.017]

subcontractor on notice shifts any "superior knowledge" burden to the subcontractor to inquire about the information. Absolute made no response.

Brechan argued at p. 47 that AESI did not rely on any alleged representation or omission about the condition of the welds. This also was unrebutted.

## 2.   AESI Does Not Rebut Brechan's Entitlement to Judgment as a Matter of Law.

Absolute does not discuss or take issue with either the Alaska law of superior knowledge as set out in <u>Morrison-Knudsen</u>, or the federal common law. Absolute attaches <u>Appeal of Piedmont Painting Contractors</u>, 1998 W.L. 97787 (IBCA), 98-1 BCA ¶ 88052 (1998) and asserts, without analysis, that this decision has "an accurate discussion of applicable legal principles and rules." Upon examination, there is no discussion of legal principles in <u>Piedmont</u>. No court or board has cited <u>Piedmont</u>. The Board's decision does not set out or discuss the elements of the doctrine of superior knowledge, nor did the Board hold that the government had breached an implied duty to disclose superior knowledge in its decision. Its decision was that, for any of several possible reasons, "the government was as much at fault in this matter as the contractor and there is adequate precedent for converting a default termination into one for its own convenience." <u>See</u> <u>Piedmont</u> at 1998 Westlaw at 9, <u>citing</u> <u>Masco, Inc.</u>, 97-1 BCA ¶ 28,631 (burden of proof in terminations for default).

Not only is there nothing about legal principles in <u>Piedmont</u>, the facts in that case are not on point. Although the board suggested that it may have used the "superior knowledge" doctrine, among others, to convert the termination for

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

default to convenience, there are no findings about what the owner actually knew but which the contractor lacked. Instead, the findings go to the impossibility of performance: "It was clear to the Board that major rehabilitation work was needed in both cases, regardless of which contractor did the work." Id.

Aside from Piedmont, Absolute cites four superior knowledge decisions: Morrison-Knudsen Company v. State of Alaska, Helene Curtis Industries v. United States, Aerodex v. United States, and J. A. Jones Construction v. United States. It offers no analysis of the significance of those decisions. As presented by Absolute, they "stand" merely for the modest proposition that there is a common law doctrine of superior knowledge under which contractors may recover. That doesn't help Absolute prove any of the elements necessary in the law to recover under the doctrine.

The remainder of Absolute's opposition at pages 5, 6 and 7 also fails to take issue with the motion. Absolute asserts that summary judgment is not appropriate where the reasonableness of a party's conduct is at issue. See Response, at 5, citing Lissau v. Southern Food Service, Inc., 159 F.3d 177 (4th Cir. 1998). This misstates Brechan's argument. The reasonableness of Absolute's investigation is not at issue. Absolute conflates the reasonableness of a site investigation with the element of the doctrine of superior knowledge which requires the owner to be the only source of the undisclosed information. Brechan does not have the burden to show that Absolute was unreasonable, for example, in assuming that Imperial had the caulking and stripe coating "covered." The element Absolute must prove is that Brechan knew that its vital information was unavailable to Absolute. Absolute does not offer evidence to show that this

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ffffffffff

eeee

information was not available to it, much less that Brechan knew it was unavailable.

Absolute's homage to the province of the trier of fact is also not persuasive. <u>Sherrill v. Federal Mogol Corp. et al.</u>, 413 F. Supp 2d 842, 867 (E.D. Mich 2006) was a decision on a motion to dismiss. The court recognized the factual record had not been developed and that it was only considering the allegations in the complaint. 413 F. Supp 2d at 856, n.13 and 868. Absolute asserts no lack of capacity to develop facts in this case.

Finally, Absolute relies upon <u>Eckholt v. American Business Information, Inc.</u>, 873 F. Supp. 510 (D. Kansas 1994) to propose that Absolute's claims in contract under the doctrine of superior knowledge or in tort under nondisclosure cannot be decided by summary judgment. Opposition at 7. A reader might assume from the excerpt from <u>Eckholt</u> that the case was in the <u>Helene Curtis-Granite Contractors</u> line of decisions regarding "superior knowledge" about job conditions. It is not. The case has no relevance to the issues and it does not change the standards for summary judgment set out in <u>Celotex</u> and applied in <u>GAF Corp. v. United States</u>, 19 Cl. Ct. 490, 497 (1990); aff'd 932 F.2d 947 (Fed. Cir. 1991), <u>cert. denied</u>, 502 U.S. 1071 (1992), <u>cited</u> at Motion, p. 25.

## CONCLUSION

Absolute brought this lawsuit against Imperial after Imperial left the jobsite. Absolute alleged it incurred huge costs to perform Imperial's abandoned job and to re-do the work Imperial left behind. Absolute subsequently learned about the presence of "defective" welds in Phase I and now asserts, despite the revisions to the specification for treating any defective welds, that the

information was not available to it, much less that Brechan knew it was unavailable.

Absolute's homage to the province of the trier of fact is also not persuasive. <u>Sherrill v. Federal Mogol Corp. et al.</u>, 413 F. Supp 2d 842, 867 (E.D. Mich 2006) was a decision on a motion to dismiss. The court recognized the factual record had not been developed and that it was only considering the allegations in the complaint. 413 F. Supp 2d at 856, n.13 and 868. Absolute asserts no lack of capacity to develop facts in this case.

Finally, Absolute relies upon <u>Eckholt v. American Business Information, Inc.</u>, 873 F. Supp. 510 (D. Kansas 1994) to propose that Absolute's claims in contract under the doctrine of superior knowledge or in tort under nondisclosure cannot be decided by summary judgment. Opposition at 7. A reader might assume from the excerpt from <u>Eckholt</u> that the case was in the <u>Helene Curtis-Granite Contractors</u> line of decisions regarding "superior knowledge" about job conditions. It is not. The case has no relevance to the issues and it does not change the standards for summary judgment set out in <u>Celotex</u> and applied in <u>GAF Corp. v. United States</u>, 19 Cl. Ct. 490, 497 (1990); aff'd 932 F.2d 947 (Fed. Cir. 1991), <u>cert. denied</u>, 502 U.S. 1071 (1992), <u>cited</u> at Motion, p. 25.

## CONCLUSION

Absolute brought this lawsuit against Imperial after Imperial left the jobsite. Absolute alleged it incurred huge costs to perform Imperial's abandoned job and to re-do the work Imperial left behind. Absolute subsequently learned about the presence of "defective" welds in Phase I and now asserts, despite the revisions to the specification for treating any defective welds, that the

nondisclosure of details about the Swalling job gives rise to a claim against Brechan. After thorough and far reaching discovery, Absolute has not carried its burden under Celotex to establish elements necessary to this claim.

Based on the evidence introduced in this matter, and for the reasons set forth in Brechan's motion and in this reply, the court should grant Brechan's motion and dismiss Absolute's claims against Brechan in tort based on alleged non-disclosure and in contract for breach of an implied duty to disclose "superior knowledge."

DATED at Anchorage, Alaska, this 28th day of August, 2006.

PERKINS COIE LLP
Attorneys for Defendant
Brechan Enterprises, Inc.


By   /s/ Michael E. Kreger
     Michael E. Kreger
     Alaska Bar No. 8311170
     James N. Leik
     Alaska Bar No. 8111109
     Perkins Coie LLP
     1029 W. Third Avenue, Suite 300
     Anchorage, Alaska  99501
     (907) 279-8561
     (907) 276-3108 (Facsimile)
     Email:  mkreger@perkinscoie.com

I hereby certify that on August 28, 2006, the foregoing has been served by electronic mail on Robert J. Dickson, Peter C. Partnow, William R. Baerg, Terry R. Marston II, James B. Stoetzer, and Eric J. Brown.

   /s/ Michael E. Kreger
      Michael E. Kreger

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108