Peter C. Partnow, ASBA No. 7206029
James B. Stoetzer, ASBA No. 7911130
Lane Powell LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Tel: 907-277-9511
Fax: 907-276-2631
PartnowP@LanePowell.com

Attorneys for Third-Party Defendant
Coffman Engineers, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>                        Plaintiff,<br><br>v.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington corporation,<br><br>                        Defendants. | Case No. 3:03-cv-00199-RRB<br><br>**COFFMAN'S REPLY TO ABSOLUTE'S OPPOSITION TO COFFMAN'S MOTION FOR SUMMARY JUDGMENT AND DISMISSAL OF <u>ABSOLUTE'S NEGLIGENCE CLAIMS</u>** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>  Counterclaimant/Third-Party Claimant,<br><br>    v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al.,<br><br>  Cross-Defendants/Third-Party Defendants. | |

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

| | |
|---|---|
| THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>         Plaintiff,<br><br>v.<br><br>SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.<br><br>         Defendants. | |
| BRECHAN ENTERPRISES, INC., an Alaska corporation,<br><br>         Counterclaim Plaintiff,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>         Counterclaim Defendant. | |
| BRECHAN ENTERPRISES, INC., an Alaska corporation,<br><br>         Third-Party Plaintiff,<br><br>v.<br><br>COFFMAN ENGINEERS, INC, a Washington Corporation.<br><br>         Third-Party Defendant. | |
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation,<br><br>         Plaintiff/Cross-Claimant,<br><br>v.<br><br>COFFMAN ENGINEERS, INC, a Washington Corporation.<br><br>         Third-Party Defendant. | |

**Coffman's Reply To Absolute's Opposition To Coffman's Motion For Summary Judgment and Dismissal of a Absolute's Negligence Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* **(Case No. 3:03-cv-00199-RRB)**     **Page 2 of 14**

## I. INTRODUCTION

Third party defendant and cross-defendant Coffman Engineers Inc. ("Coffman") submits this brief in reply to the opposition of plaintiff Absolute Environmental Services Inc. ("Absolute") to Coffman's Motion for Summary Judgment Dismissal of Absolute's Negligence Claims.[1] Absolute has failed to provide any legal or factual basis for the denial of this motion. Coffman's motion should be granted and Absolute's negligence claims against it dismissed.

## II. ARGUMENT AND AUTHORITY

A.  **Absolute Has Not Opposed Coffman's Motion for Dismissal of Any Absolute Claims Relating to or Arising from Coffman's Inspection and/or Quality Assurance Work.**

In its motion at pages 22 and 23, Coffman requested that in the event that Absolute's negligence claims against it are not dismissed in their entirety, partial summary judgment should be entered dismissing Absolute's claims to the extent that they are based on or arise out of allegations that Coffman negligently performed its inspection and/or quality assurance ("QA") work. As

---

[1] On August 25, 2006, four days after Absolute's materials in opposition to Coffman's motions were due, Absolute filed the Declaration of David Olson Regarding Motions for Summary Judgment (docket number 288). As explained in the motion of defendant Brechan Enterprises Inc. ("Brechan") to strike that declaration, and in Coffman's joinder in that motion, that declaration was untimely and filed without the leave of this Court as required by D.Ak. LR 7.1(h)(2). Absolute's failure to comply with this local rule mandates that Mr. Olson's declaration and its exhibits be stricken and not considered as part of the record. In the reply briefs relating to its three summary judgment motions, Coffman will not address the untimely Olson declaration. If, however, the Court allows that declaration and exhibits to become part of the record, Coffman hereby requests that it be provided the opportunity to respond to that declaration and to object to the many misstatements, mischaracterizations and unsupported representations contained therein.

Additionally, on August 23, 2006, two days after its opposition submittal was due in connection with the present motion, Absolute filed what it called a "replacement brief" (Docket No. 281) in an apparent attempt to "replace" the opposition brief it had filed in connection with this motion on August 21, 2006 under Docket No. 272. Coffman hereby objects to Absolute's "replacement brief" and moves this Court for an order striking that brief. This reply brief will relate to and address only Absolute's original, timely filed opposition brief (Docket No. 272); however, if this Court considers the "replacement brief" (Docket No. 281) to be part of the record on this motion, Coffman requests that it be provided the opportunity to address that brief.

LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

previously pointed out, Absolute's current retained expert, Jeremy Hailey, testified at his deposition that he agrees with the conclusion reached by Absolute's original retained expert, Skip Vernon, that Coffman's QA and inspection work was in compliance with industry standards and that there were no problems with Coffman's inspections. As also noted in Coffman's motion, Absolute admitted in response to Request for Admissions that Coffman's QA work comported with normally accepted industry standards for field coating QA.

Absolute has made no attempt to oppose or refute this aspect of Coffman's motion. Consequently, in the event that this Court denies Coffman's motion to dismiss all of Absolute's negligence claims against Coffman, an order on partial summary judgment should be entered dismissing any negligence claims that are based on or arise from Coffman's inspection and/or QA work.

B.  **The *Mattingly* Case Does Not Govern or Control the Economic Loss Rule as That Rule Applies to the Present Case.**

In its opposition to Coffman's motion, Absolute does not dispute that its damages constitute purely economic loss, or that it was not in contractual privity with Coffman. Rather, Absolute argues that *Mattingly v. Sheldon Jackson College*, 743 P.2d 356 (1987), where economic loss was allowed, is "governing authority." Absolute is in error. *Mattingly* is factually distinguishable and inapposite to the present case. In fact, glaringly absent from Absolute's opposition is any discussion of the factual scenario underlying that decision.

In *Mattingly*, the plaintiff was involved in a drain cleaning, sewage pumping and fire protection system business. In the course of that business, plaintiff was hired by the defendant to clean a drain pipe on defendant's property. The plaintiff's son and two other employees were sent to clean that pipe. However, the defendant's employees who excavated and braced the trench for the

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.2762631

purpose of exposing the subject drain pipe performed their work negligently, resulting in the collapse of the trench and the physical injury of plaintiff's three employees.

Thereafter, the plaintiff sued the defendant and alleged causes of action for willful, reckless and negligent interference with plaintiff's contractual relations with its employees and its customers. Under these narrow circumstances, the Court held that the plaintiff could recover economic damages arising from the defendant's alleged negligent interference with its ability to conduct its business.

There is no similarity between the facts underlying *Mattingly* and those of the present case, where Absolute, a subcontractor to the design build contractor, Brechan, seeks damages in the form of increased construction costs arising from an allegedly defective specification prepared by Coffman. The Alaska Supreme Court's holding in *Mattingly* does not address the fact situation presented herein.

However, two Alaska cases have been decided since the issuance of the *Mattingly* decision that squarely addresses third party tort claims against design professionals for purely economic loss. The first of those cases was *State v. Transamerica Premier Insurance Company*, 856 P.2d 766 (Alaska 1993). In that case, the general contractor and its surety sought tort damages for economic loss from the State of Alaska arising from allegedly erroneous plans and specifications produced by the architect hired by the State. The contractor claimed that it incurred so many extra costs in completing the project that its business collapsed. Both the contractor and surety sought to recover in tort for these economic losses. The trial court granted summary judgment in favor of the State dismissing the surety's tort claims for economic loss, but allowed the surety to return to an administrative hearing for the determination of any contract claim it might have for such damages. Id. at 771. In affirming the trial court's decision, the Alaska Supreme Court discussed a contractor's remedy for extra costs arising from allegedly defective plans and specifications:

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

> When providing plans and specifications to a contractor, an owner makes an implied warranty that they will be sufficient for their particular purpose [citation omitted]. If defective specifications caused the contractor to incur extra costs in performing the contract, then the contractor may recover those costs that result from the breach of the implied warranty.

Id. at 772.

The Court also discussed the project owner's remedies in such a situation:

> Furthermore, <u>a project owner</u> may sue a design professional in tort for economic losses arising from the professional's malpractice, despite the existence of a contractual relationship between the parties. [Emphasis added.]

Id. at 772.

The Court went on to hold at page 773:

> Therefore, even if the owner negligently provides defective plans and specifications, which cause economic loss to the contractor in the course of performance, the contractor's action for the owner's breach is in contract, not tort.

Thus, under *State v. Transamerica*, <u>a project owner</u>, not a third party contractor, has available to it tort claims against a design professional for economic losses.

Absolute, no doubt, will argue that despite the above quoted language, the Alaska Supreme Court's decision in *Transamerica* does not specifically preclude or exclude third party contractor claims against design professionals for economic losses. However, a year after that decision the Court decided *City of Dillingham v. CH2M Hill Northwest Inc.*, 873 P.2d 1271 (Alaska 1974). In that case, the contract between the City and its engineer, CH2M Hill, contained an indemnification provision and limitation of liability clause. The City's general contractor on a sewage treatment facility commenced an action against the City alleging that differing site conditions had resulted in increased cost of construction. The City, in turn, filed a third party complaint against CH2M Hill for breach of contract, breach of the duty of care and breach of fiduciary duty.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

In holding that the limitation of liability clause between the engineer and the City was void under AS 45.45.900, the Court in footnote 12 at pages 127-128 acknowledged that while some courts allow third party recovery in tort for economic losses arising from a design professional's negligence, such is not the law in Alaska:

> Were we to allow third parties a tort action against a design professional for economic losses, a judicially created exemption to AS 45.45.900 for limitation of liability clauses conceivably could create an inequitable situation, in which a design professional's liability for negligence could depend merely upon a plaintiff's fortuitous choice of defendants.

Id. at 128.

This language reinforces the holding in *State v. Transamerica*, supra, that third party tort claims against design professionals for economic losses, such as Absolute's negligence claims in this action, are not recognized in Alaska. Consequently, contrary to Absolute's argument, the *Mattingly* decision is not "controlling authority," and is inapplicable to this motion. The economic loss rule as it relates to third party claims against design professionals for economic losses remains viable, and Absolute's negligence claims against Coffman should be dismissed on that basis.

C. **Hailey's Contradictory Declaration Does Not Alter the Fact That He Is Not Qualified to Testify to the Standard of Care Applicable to Coffman Nor the Purported Breach of That Standard.**

As noted in Coffman's opening brief, Absolute's current liability expert, Jeremy Hailey, opines in his written report that the specification prepared by Coffman for the application of a plural component industrial coating in the marine environment with tidal and splash zones failed to meet the standard of care. As Coffman also points out, Mr. Hailey lacks virtually any experience in writing coating specifications, particularly with regard to specifications in marine environments and for plural component coatings.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511   Facsimile 907.276.2631

In its attempt to overcome the deficiencies in its expert's qualifications, Absolute first attempts to minimize Mr. Hailey's lack of expertise or experience in writing coating specifications by stating at page 4 of its brief: "[H]ardly anyone does that anyway." However, Absolute relies primarily on contradictory representations and statements both in its brief and in Mr. Hailey's declaration to attempt to deflect this motion. For example, Absolute contends at page 4 of its opposition brief that "Mr. Hailey has read thousands of specifications." Absolute studiously avoids describing for the Court exactly what types of specifications he has read. His deposition testimony, excerpts of which have been previously provided to the Court, reveals that he may well have read thousands of specifications relating to <u>cathodic protection</u>; however, his experience in "reviewing and reading" <u>coating</u> specifications is minimal, and his experience in <u>writing</u> coating specifications is almost nil. This fact is not altered by the declaration submitted by Mr. Hailey in opposition to this motion, much of which is contradictory to his deposition testimony. Such contradictory testimony in his declaration is insufficient to create factual issues or to defeat Coffman's motion.

Examples of the contradictory statements in Mr. Hailey's declaration include his representation in paragraph 2 that he has "completed several projects that involve the preparation, editing and issuance of coating specifications for a variety of structures," and in paragraph 6 in which he states that he has "written many coating specifications and conducted coating inspections on numerous different types of jobs."[2] A review of his sworn deposition testimony reveals that this is plainly not the case.

Mr. Hailey's education, background, training, experience and qualifications were addressed at pages 24 through 42 of his deposition. Those pages were attached to the declaration of counsel

---

[2] Again, Mr. Hailey's experience regarding coating <u>inspections</u> is irrelevant since Absolute has admitted that Coffman's QA work, which includes coating inspection, comported with industry standards.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

filed in support of this motion. Mr. Hailey's work experience since his graduation from Washington State University with a degree in agricultural engineering can be summarized as follows:

- He worked for Premier Cathodic Protection from 1994 to 1996. He performed no coatings work on that job. His cathodic protection work was performed on above ground storage tanks and buried pipelines. He did not draft any coating specifications while working for this employer. Hailey Deposition, pages 24 through 26.

- Mr. Hailey's next employer, for the latter part of 1996, was Intermountain Corrosion in Tacoma, Washington. While employed there, he worked on one project and did coating inspection, although he was not a certified coating inspector. He wrote no specifications. Hailey Deposition, pages 27 through 31.

- Mr. Hailey was next employed by Corrpro, first in Mukilteo, Washington, then in Anchorage. He worked for Corrpro from 1996 through 2001. While in the Mukilteo office, he did not work on any projects over water, nor did he write any coating specifications. Upon moving to the Anchorage Corrpro office, he was involved primarily in cathodic protection. He did not draft any coating specifications, although he did review, revise and update coating specifications. He performed no projects that involved underwater exposures or exposures to tidal zones. In his deposition, he did not recall any major projects he was involved with that involved marine coatings while employed by Corrpro in Alaska. Hailey Deposition, pages 32 through 38.

- Since leaving Corrpro, Mr. Hailey has had his own business, but has not prepared any coating specifications for projects in marine environments. He reviewed a coating specification for repair work on ballast water tanks at the Valdez Terminal. He spent less than a month on that project. Hailey Deposition, pages 38 through 41.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

**Coffman's Reply To Absolute's Opposition To Coffman's Motion For Summary Judgment and Dismissal of a Absolute's Negligence Claims**
*Absolute Envtl. Servs., Inc. v. Forrest McKinley, et al.* (Case No. 3:03-cv-00199-RRB)   Page 9 of 14

This deposition testimony reveals that Mr. Hailey is merely contradicting himself when he contends in his declaration that he has "written many coating specifications," and that he has expertise in coatings. It is well established that merely submitting a declaration that contradicts earlier sworn testimony is insufficient to avoid entry of summary judgment. *Silas v. Babbitt*, 96 F.3d 355, 358 (9th Cir. 1996).

Moreover, Mr. Hailey states at paragraph 9 of his declaration as follows:

> While I have not completed coating inspection on the structural support members of a cargo wharf, and have not developed a coating specification utilizing a plural component coating for a cargo wharf, this does not indicate that my experience in coating specifications and holiday testing is deficient. . . . Not having completed work specifically on a cargo wharf in Kodiak, Alaska should not render my opinions on the quality of the coating specification null and void.

Mr. Hailey makes these statements in his declaration despite his acknowledgement in paragraph 3 of his declaration at:

> **Knowledge concerning protective coatings and protective coating inspection for the field of Corrosion Engineering is derived from field experience and hands-on training provided by qualified organizations in the coating and coating inspection industry.**

Thus, by Mr. Hailey's own acknowledgment, "field experience" and "hands-on training" are paramount in developing an expertise in coatings and coating specifications. Mr. Hailey further acknowledges in his deposition that he has almost no field experience <u>or</u> hands-on training relating to writing coating specifications, particularly with regard to marine environments and structures exposed to tides and splash zones.

Mr. Hailey also complains in paragraph 5 of this declaration that Coffman has failed to identify why it thinks that his lack of "field experience" and "hands-on training" regarding writing coating specifications for marine environments involving tidal and splash zones is relevant to the

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

question of his expertise. The fact is Mr. Hailey answered that question himself in his deposition, in which the following exchange took place:

> Q: Well, a tank, was the tank – was the work that you were describing on the outside of the tank or the inside of the tank?
>
> A: It was the interior of the tank.
>
> Q: So, for example, there was no UV exposure?
>
> A: That is correct.
>
> Q: Does that make a difference?
>
> Mr. Marston: Objection. Vague with respect to what issue.
>
> A: A difference with respect to what?
>
> Q: Well, tell me what the differences are between any other kind of coating.
>
> MR. MARSTON: Objection. No – objection. Vague. No identification of any kind of coating, much less one to compare with another.
>
> MR. STOETZER: I understand that you've offered him as an expert, and I am trying to learn, the jury will try to learn what he knows about coating, and so I am asking him to describe – I'll try the question a different way.
>
> MR. MARSTON: Okay.
>
> Q: Based on your experience, is there a difference between the design criteria for the inside of a water tank on the one hand and, a, oh, let's say a marine structure that is immersed in salt water and exposed to tidal action and otherwise exposed to the elements of the outside.
>
> A: Yes, there would be a difference.
>
> Q: So what are those differences?
>
> A: The robustness of the coating would probably – would probably require a more robust coating on the marine structure than you would inside the water tank.
>
> It would need to be more abrasive-resistant in order to retain its physical properties when subjected to outside influences, such as wind, waves, debris and the water.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631

Hailey Deposition, page 40, line 25 through page 42, line 7.

      Thus, by Mr. Hailey's own admission in his deposition, the design criteria for a project in a marine environment with tidal and splash zones, with which he has no experience, is substantially different from the design criteria for the interior of a water tank, with which he has experience. Further, and again by Mr. Hailey's own admission, field experience and hands-on training are the primary tools for obtaining expertise and knowledge concerning protective coatings. Mr. Hailey has almost no field experience or hands-on training regarding specifications for the type of coatings utilized on the Kodiak cargo wharf in an environment similar to that in which the cargo wharf exists.

      Mr. Hailey's declaration, in fact, only further establishes his lack of knowledge, experience, training and expertise in writing specifications for the application of coatings in marine environments. In the absence of this expertise, his testimony should be stricken and disallowed, and Absolute's negligence claims against Coffman dismissed.

### D.    The Case Law Cited by Absolute is Inapplicable to This Motion.

      Absolute essentially ignores the case authority cited in Coffman's motion, and instead elects to discuss federal case law that relates to deficiencies in the assumptions or underpinnings of an expert witness's opinion. See, e.g., *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2nd 1385 (D.Kan. 1998). While Coffman certainly does not accept the assumptions on which Mr. Hailey bases his purported opinions, those assumptions are not the issue in this motion. Rather, the issue is whether Mr. Hailey's scant experience, knowledge and training in connection with writing coating specifications for projects such as the Kodiak Cargo Wharf excludes him from testifying as an expert with regard to this subject. Coffman has established that Mr. Hailey lacks the necessary expertise to offer opinions in this regard, and the case law cited by Coffman in its opening brief mandate his exclusion as an expert witness and the dismissal of Absolute's negligence claims against Coffman.

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.2762631

It should also be noted that Absolute contends at page 9 of its opposition that Coffman accepts "the standard of care [Hailey] establishes [and] the method he uses to establish it." This astounding statement is simply untrue. The primary basis of this aspect of Coffman's motion is the fact that Mr. Hailey is not even qualified to "establish" the standard of care applicable to Coffman, let alone opine that this standard of care was breached.

### III.  CONCLUSION

Contrary to Absolute's argument, the *Mattingly* case does not control the issue of the applicability of the economic loss rule to the present case. Rather, that issue is controlled by the Alaska Supreme Court's decisions in *State v. Transamerica Premier Insurance Co. supra,* and *City of Dillingham v. CH2M Hill Northwest, Inc.*, supra. *Transamerica* confirms that only project owners may sue design professionals in tort for purely economic loss arising from allegedly defective plans and specifications. The holding in *City of Dillingham* confirms that Alaska does not recognize third party tort claims against design professionals for purely economic loss. Consequently, the economic loss rule requires the dismissal of Absolute's negligence claims against Coffman.

Furthermore, Absolute has failed to produce any evidence to rebut the fact that its retained liability expert, Mr. Hailey, does not possess the necessary knowledge, training, education and experience to testify as an expert witness regarding the propriety of the coating specification prepared by Coffman in connection with the Kodiak Cargo Wharf project. Mr. Hailey should be precluded from testifying as an expert, and Absolute's negligence claims against Coffman should be dismissed on these grounds as well.

Finally, regardless of the Court's rulings on the issues described above, Coffman is entitled to entry of an order on partial summary judgment dismissing Absolute's negligence claims to the extent they arise or relate to Coffman's quality assurance or coating inspection work. Absolute has offered

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511 Facsimile 907.276.2631

no resistance or opposition to this aspect of Coffman's motion, and Coffman is entitled to entry of partial summary judgment as requested.

DATED this 31st day of August, 2006.

LANE POWELL LLC
Attorneys for Coffman Engineers, Inc.

By  s/ Peter C. Partnow
    Peter C. Partnow, ASBA No. 7206029
    301 W. Northern Lights Blvd., Suite 301
    Anchorage, Alaska 99503-2648
    Tel:  907-277-9511
    Fax:  907-276-2631
    Email:  PartnowP@LanePowell.com

I certify that on August 31, 2006, a copy of the foregoing was served electronically on the following:

William R. Baerg, baerg@mmlawyers.com
Eric J. Brown, ebrown@jdolaw.com
Robert J. Dickson, acgecf@acglaw.com
Patrick J. Duffy, duffy@mmlawyers.com
Jami K. Elison, jamie@mhf-law.com
Michael E. Kreger, mkreger@perkinscoie.com
Terry R. Marston, terry@mhf-law.com
James B. Stoetzer, stoetzerj@lanepowell.com

and by mail on:

Paul J. Nangle, Paul J. Nangle & Associates
101 Christensen Dr, Anchorage, AK 99501

 s/Peter C. Partnow

**LANE POWELL LLC**
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone 907.277.9511  Facsimile 907.276.2631