Michael E. Kreger
James N. Leik
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)
mkreger@perkinscoie.com

Attorneys for Defendants Brechan Enterprises, Inc.
and Safeco Insurance Company of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>       Plaintiff,<br>v.<br><br>FORREST J. MCKINLEY, et al.,<br><br>       Defendants. | Case No. 3:03-cv-0199-RRB |

**BRECHAN'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY BY MICHAEL LEMBKE AND MOTION FOR SUMMARY JUDGMENT (Docket No. 218)**

In its motion at Docket 218, Brechan sought exclusion of damages testimony by Michael Lembke, and summary judgment based upon plaintiff's failure to prove causation of damages. In response, Absolute was obligated to advance admissible evidence sufficient to demonstrate the admissibility of Lembke's testimony, and sufficient to meet its burden of proving causation.

Absolute has not met its burden. Instead, Absolute presents an irrelevant discussion about the requirements for proof of the amount of damages.

Absolute's response—or lack of response—demonstrates its inability to prove that the damages it claims were caused by Brechan. This is an essential element of Absolute's case, and Absolute's inability to meet its burden entitles Brechan to summary judgment.

I. **Absolute Has Not Met Its Burden of Showing that Michael Lembke's Testimony is Admissible**

Brechan moved to exclude Michael Lembke's testimony because his methodology is not reliable, and because he uses an impermissible "total cost" approach even though Absolute cannot meet the stringent requirements for using that method of proving damages. Absolute's opposition brief does not address Brechan's motion to exclude Lembke's testimony. However, Absolute has submitted a declaration from Lembke and copies of his reports and related revisions and errata.

Lembke's declaration and attached exhibits add nothing new. He has not demonstrated any reliable analysis to establish a causal link between Brechan's conduct and the damages that he has assigned to Brechan.

In his declaration, Lembke asserts that "contrary to Brechan's assertions, I have performed many analyses," and he submits a list of things he's done. But Brechan did not criticize him for the <u>amount</u> of "analysis" he did, but for its lack of reliability in proving that the asserted damages were caused by any breach by Brechan. Lembke's list of his "analyses" does not address, much less satisfy, this deficiency. He states that he has audited costs incurred by Absolute (paragraph

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB    - 2 -    [38599-0012/AA062360.006]

4a), but simply cataloging the costs says nothing about what caused them. Similarly, his audit of AESI's overhead, his "measured mile" analysis, his analysis of Absolute's costs for Phase I repairs, and his report on the quantity of steel do not analyze causation, and he makes no claim that they do.

The only "analysis" submitted with Lembke's declaration that pertains to causation of damages consists of the same reports that Brechan discussed in its opening brief, at pages 3-6. As Brechan stated there, and as Lembke does not dispute, these reports do not analyze causation of Absolute's costs. Lembke simply compared Absolute's planned costs with its actual costs, and made nominal adjustments that are not based on any meaningful causation analysis. Then he added profit and overhead, and split the costs three ways among Imperial, Coffman and Brechan. This is not causation "analysis."

Specifically, Lembke's nominal adjustments are not meaningful in terms of accounting for causation. On a project on which he says Absolute's total costs were $1.8 million, and its "excess costs" were over $1.2 million, he only found $964.80 in additional costs caused by Absolute, and the only reason he attributed these costs to Absolute was because Imperial's daily reports attributed these costs to Absolute. Lembke Dec. Ex. C, p. 1. Plainly, he did not engage in any real "analysis" concerning causation. He just engaged in a mechanical task of looking for documents where Imperial made a notation that a cost was Absolute's fault, and he found $964.80. He also made an adjustment for $33,267 for Absolute's legal bills, $22,862 for backcharges accepted by Absolute, and $48,818 for the cost of an inspector hired by Absolute. Id. But the fundamental problem is that he did no analysis whatsoever to determine how much of the remaining "excess

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

costs" were caused by Brechan's conduct. He simply assigned the whole amount ($1.2 million) to the defendants, and then made an arbitrary division of these damages between Imperial, Brechan and Coffman, concluding that Brechan and Coffman should pay 85% of the total.

In his declaration, Lembke makes no effort to explain or justify his division of the claim between Imperial (15%) and Coffman Brechan (85%). As Brechan stated in its opening brief, Lembke admitted that it would be "very difficult" and "extremely complex" to divide the costs between Imperial, Coffman and Brechan. Instead of conducting this difficult analysis, he simply split the damages based on the square footage of work done by Imperial before it left the project. But the square footage of work done by Imperial is not a valid basis for assigning causation of damages. Brechan Opening Brief at 9-14. Neither Absolute's brief nor Lembke's declaration responds to this point. In his declaration, Lembke does not even attempt to explain any direct causal relationship between Brechan and Coffman's conduct, and the 85% of excess costs he has assigned to them.[1] And, the reports and analyses he has attached to his declaration do not provide any analysis that supports the conclusion that 85% of the excess costs were caused by Brechan and Coffman. Thus, there is no basis in

---

[1] "As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the Court must assure that the methods are adequately explained (citing Ninth Circuit cases) . . . Under Rule 702, the proffered expert must establish that reliable principles and methods underlie the particular conclusions offered." United States v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002)

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB                     - 4 -                     [38599-0012/AA062360.006]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

the record for concluding that Brechan and Coffman's conduct caused 85% of the excess costs, other than the impermissible reason that Lembke says so.[2]

Despite a specific challenge to demonstrate the reliability of Mr. Lembke's opinions on damages, Absolute has not done so. It has simply restated his opinions. His testimony is inadmissible under Evidence Rules 402, 403 and 702, and it should be excluded.

## II. Brechan is Entitled to Summary Judgment Based on Absolute's Failure to Prove Causation of Damages

Brechan moved for summary judgment because Absolute is unable to prove an essential element of its tort and contract claims, causation of damages. See Brechan's Opening Brief at 15-16. Instead of addressing the requirements for proving causation, Absolute devotes most its brief to quoting Alaska cases about the nature of proof regarding the amount of damages. But the issue raised by this motion is not Absolute's failure of proof regarding the *amount* of damages. Rather, it is Absolute's failure of proof regarding *causation* of damages.

Alaska cases make it clear that the flaw in the total cost method is not that this method fails to prove the *amount* of damages with sufficient specificity. Instead, the total cost method is disfavored and rarely used (and then only with strict evidentiary prerequisites) because it fails to prove *causation*. This point is

---

[2] "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it'". Advisory Committee Note to 2000 Amendment to Rule 702. See also Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995) (on remand) ("We've been presented with only the expert's qualifications, his conclusions and his assurances of reliability. Under Daubert, that's not enough"); United States v. Hermanek, 289 F.3d 1076, 1094 (9th Cir. 2002).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

abundantly clear in the Alaska Supreme Court's first decision on this subject, Fairbanks North Star Borough v. Kandik Construction, where the court criticized the total cost method because of its lack of proof of causation, and reversed the verdict because the total cost evidence and instruction permitted the jury to impose damages without proof of causation. 795 P.2d 793, 798-99 (Alaska 1990).[3]

In its subsequent total cost cases, the Alaska Supreme Court made it clear that the reason total cost proof is not allowed is that it does not meet the plaintiff's burden of proof on causation. In Conam Alaska v. Bell Lavalin, Inc., 842 P.2d 148 (Alaska 1992), the Supreme Court explicitly rejected an argument similar to Absolute's. There, the Court acknowledged that the plaintiff's total cost proof did provide the jury with a numerical reference for deciding the amount of damages, but the verdict had to be reversed because the total cost method did not satisfy the plaintiff's burden of proof on causation. Id. at 155, 157. "There are two aspects to damages. The first is causation, that is, the evidence must prove that the loss was caused by the tort. . . . [T]he policy disfavoring the total cost approach is based on the lack of proof of proximate cause." Id. at 155. And, in Geolar, Inc. v. Gilbert/Commonwealth, Inc., the court reiterated that "the flaw in the total cost method is that 'it assumes that the defendant's breach was the cause of all of the

---

[3] "In this case, the court refused to give the jury any specific instruction which would have enabled the jury to limit the award of damages to those proximately flowing from the Borough's breach of contract. We believe that the evidence combined with the jury instructions permitted the jury to impose liability on the Borough far in excess of the damages proximately resulting from its breach of contract . . . " Kandik, 795 P.2d at 799.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB          - 6 -          [38599-0012/AA062360.006]

extra cost.'" 874 P.2d 937, 944 (Alaska 1994). See also 874 P.2d at 945 ("the basic flaw with the use of the total cost method is that it assumes causation").

In a variation on the same theme, Absolute contends that "Alaska courts authorize plaintiff's [sic] to go to a jury with a total claim analysis and do not disturb a jury verdict afterward if there was a reasonable basis for finding that the jury had other evidence upon which to consider its damage award." Absolute Brief at 6. In support of this argument, Absolute cites Municipality of Anchorage v. Frank Coluccio Construction Co., 826 P.2d 316 (Alaska 1992).

Absolute's analysis is wrong. The Alaska cases addressing total cause proof consistently indicate that total cost or modified total cost proof will not support a verdict, unless plaintiff satisfies the four threshold requirements for total cost proof. In Frank Coluccio Construction, the Supreme Court concluded that the plaintiff had not met the requirements for using a total cost method, or even a modified total cost method. Thus, a verdict based on these methods could not stand. But, there was no reversible error, because at trial the plaintiff had proved its damages using an actual cost method. 826 P.2d at 326-27. The Supreme Court made it clear, however, that if the plaintiff had persisted in trying to prove its claim with a modified total cost method, and had not proved its actual costs at trial, the verdict would have been reversed, because plaintiff's modified total cost evidence could not support a verdict: "Had the jury heard only FCCC's modified total cost theory and returned a verdict in the amount indicated by that theory . . . reversal would be mandated." Id. at 327.

Here, Absolute's sole method of proving its alleged damages is a total cost or modified total cost method. At trial, Absolute will not prove actual costs

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

attributable to the alleged breach. To the contrary, Absolute's expert witness on damages says that it cannot do so, due to Absolute's failure to keep cost records. Lembke Dec. ¶ 5a. Therefore, there is, and will be, no fallback basis for a valid jury award. The failure of Absolute's total cost proof equates to a complete failure of proof of causation, and grounds for summary judgment.

Other Alaska cases indicate that total cost proof cannot support a verdict, unless plaintiff establishes all four required elements. In Kandik Construction, the Supreme Court held that a verdict based solely on total cost proof had to be reversed. Id. at 798-800. Similarly, in Conam Alaska, the Supreme Court held that the plaintiff's expert's testimony failed to establish causation, for reasons similar to the flaws in total cost proof (and similar to the proposed proof here). As a result, "cause remained too speculative to submit the issue of damages arising from professional negligence to a jury." 842 P.2d at 157. And, in Geolar Inc., the Court reversed a verdict in favor of plaintiff, because the jury had not been instructed that it could not award damages based on total cost proof unless it found all four of the "total cost" prerequisites. 874 P.2d at 945.

The common theme in all of these decisions is that total cost or modified total cost proof can only establish causation if plaintiff is able to prove all four required elements. "This test governs both the admissibility of evidence of total cost calculations and the application of the total cost method by the finder of fact." Id. at 945. Thus, the trial court makes a threshold evaluation of whether the plaintiff has sufficient admissible evidence to support all four required elements for proving damages using a total cost method. Id. "In making this determination, the trial court should closely examine the proffered evidence to insure that each

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

element of the test can be satisfied." Id. If (as here), the plaintiff cannot meet this burden, the plaintiff's damage proof is excluded, and the claim fails. If plaintiff demonstrates sufficient admissible evidence to support a total cost method, the claim can go to the jury, but with instructions telling the jury that in order to award damages based on a total cost approach, the plaintiff must establish all four elements. In addition, the jury must be instructed that it cannot award damages unless the plaintiff proves causation. Id. Here, Absolute cannot get past the first step. It has not come forward with admissible evidence sufficient to prove the four prerequisites for proving its damages with a total cost method. Therefore, the Court must grant summary judgment.

### III. Absolute Is Unable to Satisfy the Threshold Requirements for Admission of Damages Testimony Based on Lembke's "Total Cost" Approach

In its brief, Brechan demonstrated that Lembke's proposed testimony does not meet the four requirements for proving causation using a "total cost" methodology. Absolute responds by arguing that Lembke's method is not "total cost", but "modified total cost". Absolute is wrong in characterizing Lembke's method as "modified total cost", but this ultimately does not matter, because the same four threshold requirements apply to both total cost and modified total cost proof of damages. Absolute has not met its burden on summary judgment of showing that it can establish these four elements. Therefore, Lembke's damages testimony must be excluded, and summary judgment granted.

#### A. Lembke Used a Total Cost Method

Absolute argues that Lembke used a "modified" total cost method. Absolute's argument directly contradicts its responses to Interrogatories, dated

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB         - 9 -         [38599-0012/AA062360.006]

May 22, 2006. Absolute answered these interrogatories <u>after</u> Lembke issued his last revisions and errata to his report, and <u>after</u> his deposition taken on May 17, 2006, so the interrogatory answers reflected the latest information about Lembke's damages calculations. In those responses, Absolute stated (twice) that it was using a "Total Cost" method to determine its damages with respect to the labor and materials on this project.[4]

Setting Absolute's sworn statement aside, Lembke's damages calculation does not fit the definition of a "Modified" Total Cost method. "In order to justify a modified total cost award, '[t]he contractor must adequately separate the additional costs for which it is responsible." <u>Northrop Grumman Corp. v. United States</u>, 47 Fed.Cl. 20, 92 (2000) (quoting <u>Neal & Co. v. United States</u>, 36 Fed. Cl.

---

[4] INTERROGATORY NO. 4: For all labor identified in Interrogatory No. 3, above, identify the portion of your total damages (in dollars) attributable to this claim item, the identity of the individual(s) who calculated this aspect of your damages, and the method used to calculate damages.

ANSWER: See Mike Lembke Report; Mike Lembke, David Olson, and Don Rulien; Total Cost.

. . .

INTERROGATORY NO. 6: For all materials identified in Interrogatory No. 5, above, identify the portion of your total damages (in dollars) attributable to this claim item, the identity of the individual(s) who calculated this aspect of your damages, and the method used to calculate damages.

ANSWER: See Mike Lembke Report; Mike Lembke and David Olson; Total Cost.

Absolute's Responses to Safeco's Discovery Requests, May 22, 2006 (Ex. A hereto).

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

600, 638 (1996)). Lembke has not done so. He made a nominal adjustment of $964.80 (on a $1 million contract), based on daily reports from Imperial in which Imperial claimed that Absolute interfered with Imperial's performance. Lembke Dec. Ex. C, p. 1. Lembke has made no other adjustments to reflect any responsibility for additional costs by Absolute.

### B. Even if Lembke's Method is a "Modified" Total Cost Method, Absolute Must Satisfy the Four Threshold Requirements

In any event, even if Lembke's damage calculation can be fairly described as a "modified" total cost method, this does not change the requirements that Absolute must meet in order to present its damages calculations, nor the result on this motion. Even the "modified" total cost method is highly disfavored, and therefore it can be used only if the plaintiff establishes the same four threshold requirements that govern use of the total cost method.

This point is demonstrated by Geolar, Inc. The Alaska Supreme Court indicated that when the plaintiff used a modified total cost approach, the trial court had to determine before trial whether the plaintiff had sufficient evidence to prove the four threshold requirements for use of the total cost method. 874 P.2d at 945. Moreover, the Supreme Court held that if the plaintiff had enough evidence to make a prima facie case proving these four threshold elements, and the modified total cost claim was presented at trial, the trial court had to instruct the jury that it could not award damages using the modified total cost method unless it found all four elements. Id. Thus, Geolar plainly establishes that even when a modified total cost approach is used, the plaintiff must satisfy all four elements—first, in a threshold determination by the trial court (as sought here, through this summary

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB                    - 11 -                    [38599-0012/AA062360.006]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

judgment motion) and in jury instructions.  See also Propellex Corp. v. Brownlee, 342 F.3d 1335, 1339 (Fed. Cir. 2003) (under a modified total cost approach, "Propellex still had the burden of proving the four requirements for a total cost recovery"); Raytheon Co. v. White, 305 F.3d 1354, 1365-66 (Fed. Cir. 2002).[5] Therefore, even if this Court accepts Absolute's newly-found characterization of Lembke's method as a "modified" total cost method, the analysis here is the same: Absolute must show that it can prove all four threshold requirements for proving its damages using a total cost method.  Absolute has not met this burden.

### C. Absolute Has Not Come Forward with Sufficient Admissible Evidence to Meet Its Burden on the Four Total Cost Elements.

Under Celotex, Brechan's motion for summary judgment requires Absolute, as the party with the burden of proof, to present admissible evidence sufficient to meet the requirements for proving causation of damages using a total cost approach.  Absolute has not met its burden.  Absolute's Opposition brief does not even discuss the requirements for presenting total cost proof.  Absolute submitted a declaration from its retained expert, but the information in his declaration does not satisfy Absolute's burden on these points with admissible evidence.

---

[5] The same point is implicit in the Alaska Supreme Court's decision in Frank Coluccio Construction.  Prior to trial, plaintiff proposed to prove its damages using a modified total cost method.  The Supreme Court said that to use the modified total cost approach, plaintiff had to satisfy the four-part test.  Since plaintiff could not meet one of the four elements, no verdict could rest on total cost proof.  The plaintiff's verdict was affirmed only because at trial, the plaintiff came forward with proof of actual costs.  826 P.2d at 326-27.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB                - 12 -                [38599-0012/AA062360.006]

It bears repeating that a contractor proposing total cost proof must demonstrate its ability to prove all four elements. Thus, if the Court concludes that Absolute is unable to prove any one of these four elements, it cannot use a total cost or modified total cost method to prove its damages. See, e.g., Frank Coluccio Construction, 826 P.2d at 325 ("The burden of proving that each prong is met is on the contractor", finding failure on one of the four elements); Geolar, 874 P.2d at 945 ("the trial court should closely examine the proffered evidence to insure that each element of the test can be satisfied." (emphasis added)).

First, Absolute is required to show that it would be impossible or highly impractical to prove the actual costs allegedly caused by Brechan's breach. Absolute's brief does not address this requirement. In Lembke's declaration, he discusses a topic called "Nature of the Loss." Lembke Dec. ¶ 5a. Within this discussion, he has a single sentence that seems to address this requirement. In this sentence, he concedes that Absolute did not keep any actual cost records necessary to preparation of an accurate claim. Lembke states that without discrete time card coding, meaningful cost accounting, and meaningful daily reports, "no better method is available to determine with any reasonable degree of accuracy, other than a reasonable estimate based on examination and analysis of the project records." Lembke Dec. at ¶ 5a.

This single sentence is Absolute's sole effort to meet its burden on this point, and it fails. To the contrary, this sentence supports one of Brechan's points: i.e., that Absolute did not keep records that track its actual costs, and therefore it is impossible for Lembke or anyone else to determine what costs Absolute incurred due to the alleged breaches by Brechan. But neither this declaration nor anything

else in the record raises any dispute about the fact that Absolute <u>could have</u> kept records tracking its costs. Absolute does not deny that it could have kept cost records, and it has not given any legitimate reason for its failure to do so. Consequently, Absolute has not met its burden on this requirement. "[W]hen such records could have been kept, and where the contractor does not provide a legitimate reason for its failure to keep the records, the total cost method of recovery is not available to the contractor." <u>Propellex</u>, 342 F.3d at 1340-42 (citing cases).[6]

        <u>Second</u>, Absolute must prove that its estimate was realistic. In its opening brief, Brechan pointed out why Absolute cannot establish that its estimate was realistic. Brechan's Opening Brief at 24-28. First, everyone at Absolute denies that they had any role in preparing Absolute's estimate. So there is no one who can—or will, as indicated by the lack of any declaration on this point—testify about how Absolute prepared its estimate, and why it was reasonable. In opposition, Absolute does not contest this point. Second, there is no written record of how Absolute prepared its estimate, because Absolute lost this record. Again, in opposition, Absolute does not contest this point. So, there is no witness and no written record that the fact-finder can use to conclude that Absolute's estimate was reasonable. As a result, Absolute cannot meet its burden. <u>Youngdale & Sons Constr. Co. v. United States</u>, 27 Fed. Cl. 516 (1993).

---

[6] If contractors were excused from proof of causation by their own failure to keep records, contractors would be encouraged <u>not</u> to keep track of their costs, so that at the end of the day they could, like Absolute, beg ignorance of their own costs and use a total cost method.

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB          - 14 -          [38599-0012/AA062360.006]

As its sole response on this point, Lembke says that Absolute's estimate was comparable to the government's estimate for Phase I of the project and for Swalling's bid on Phase I. But that does not mean that Absolute's estimate was also reasonable. To the contrary, Lembke has already stated his opinion that Absolute's estimate was not reasonable. It is undisputed that in preparing its estimate, Absolute relied on Imperial's estimate.[7] Lembke concluded that Imperial's estimate was "defective in that not all cost elements were accounted for; the quantity takeoff conflicts with the engineer's estimate and other IIC records; proper costs of SPC material was not used in the bid calculation; the bid contains mathematical errors; and the degree of difficulty of the work was not addressed." Lembke Report at 22 [Ex. 5 to Brechan Opening Brief]. Absolute's other expert, Mr. Vernon, reached the same conclusion. See Brechan Opening Brief at 27-8. Absolute cannot overcome its own admissions and conclusions on this point.

Moreover, Lembke's new opinion that Absolute's estimate was reasonable is not reliable and not admissible under Rule 702. His new opinion is not supported by any analysis in his Rule 26 reports. His entire analysis of this point apparently consists of the nine lines of text in paragraph 5b of his declaration. He has not done an independent analysis of the project to determine what would have been a realistic estimate by Absolute. Instead, he just divided Absolute's estimate by 24,500 square feet, and concluded that the price per square feet is close to estimates made by the Coast Guard and Swalling for Swalling's work on the first portion of the dock. But in making this comparison, he ignores pertinent

---

[7] Olson Dep. at 253:17- 258:04 (Ex. 7 to Brechan's Opening Brief).

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB            - 15 -                     [38599-0012/AA062360.006]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

variables. For one, he assumes that Absolute's bid was for 24,500 square feet. Lembke says that in fact, the square footage was 31,393 square feet. Lembke Dec., ¶ 5c (Docket 269). With that adjustment, Absolute's bid per square foot was significantly lower than Swalling's estimate or the Coast Guard's estimate. Moreover, Absolute concedes that it had never done a project like this before. Second Declaration of Dave Olson in Support of Absolute's Motion for Summary Judgment – Nondisclosure, ¶ 16 (Docket 258). If Absolute was making a realistic bid, Absolute would have accounted for this fact. Lembke's disregard of these variables makes his analysis unreliable, and an insufficient basis for meeting its burden on this element.

Third, Absolute must show that its actual costs were reasonable. The only evidence or argument that Absolute advances on this point is stated in paragraph 5c of Lembke's declaration. Lembke says that that Absolute's costs were reasonable. He bases this on a comparison with projected prices for Swalling's work on Phase I. Dec. at 5c. But there is a basic flaw in his comparison. The premise for his comparison is his statement that Absolute "performed to the same specification" as Swalling. However, it is undisputed that Swalling and Absolute did <u>not</u> "perform to the same specification." For Phase II (Absolute's work), the specifications were changed, to make the work easier and less costly. <u>See</u> Ex. 10 (Specification) and Ex. 28 (Anderson Dep. at 55) to Brechan and Safeco's Motion for Summary Judgment – Nondisclosure (Docket 214). Since Absolute performed to different specifications, it is not valid to compare its costs with Swalling's.

Fourth, Absolute must show that it was not responsible for any of the additional costs. It has not done so.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB                - 16 -                [38599-0012/AA062360.006]

For this purpose, of course, Absolute is responsible for the conduct of its subcontractor, Imperial. To meet its burden in a claim against Brechan, Absolute must show that neither Absolute nor its subcontractor, Imperial, was responsible for any of the additional costs. It cannot do so. To the contrary, in his declaration, Absolute's retained expert explicitly states that Absolute's subcontractor, Imperial—not Brechan—bore substantial responsibility for Absolute's excess costs. He acknowledges that Imperial's internal problems affected its ability to perform the work, and that this factor affected the work simultaneously and continuously from very early in the project to the time of Imperial's departure from the site. Lembke Dec. at ¶ 5a.

Similarly, in his declaration Lembke does not claim that Brechan's alleged breach was the *sole* cause of Absolute's excess costs. He only claims that work to correct and recoat defective welds (i.e., the extra work that Absolute blames on Brechan and Coffman) was a "*major* cost factor" in the areas where Absolute did its work. Lembke Dec. at ¶ 5d (page 6). The total cost method attributes all of the extra costs to the defendants, and therefore to use this method, the plaintiff must show that the defendants were responsible for all of the extra costs. By acknowledging that the defendants' conduct was only a "*major* cost factor" with respect to Absolute's excess costs, Lembke concedes that Absolute cannot meet its burden on this element.

## CONCLUSION

Absolute must prove that its claimed damages were caused by the breaches that it alleges. On summary judgment, under the Celotex standard, Absolute had the burden to demonstrate that it can prove causation. It has not met

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB             - 17 -             [38599-0012/AA062360.006]

this burden. Absolute and its retained expert concede that they cannot determine the actual costs caused by the alleged breaches. In that vacuum, Mr. Lembke computed Absolute's total costs, and then he arbitrarily assigned a portion of the total costs to Brechan. This is not a reliable or admissible method for determining damages proximately caused by any breach. The Court should grant Brechan's motion for summary judgment.

DATED at Anchorage, Alaska on August 31, 2006.

**PERKINS COIE** LLP
Attorneys for Defendant
Brechan Enterprises, Inc.


By   /s/ Michael E. Kreger
     Michael E. Kreger
     Alaska Bar No. 8311170
     James N. Leik
     Alaska Bar No. 8111109
     Perkins Coie LLP
     1029 W. Third Avenue, Suite 300
     Anchorage, Alaska  99501
     (907) 279-8561
     (907) 276-3108 (Facsimile)
     Email:  mkreger@perkinscoie.com


I hereby certify that on August 31, 2006, the
foregoing was served electronically on Robert J.
Dickson, Peter C. Partnow, William R. Baerg, Terry
R. Marston II, James B. Stoetzer, and Eric J. Brown.

  /s/ Michael E. Kreger
     Michael E. Kreger

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

**ABSOLUTE v. MCKINLEY, et al.**
Case No. 3:03-cv-0199-RRB                - 18 -                [38599-0012/AA062360.006]