Michael E. Kreger
James N. Leik
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)
mkreger@perkinscoie.com

Attorneys for Brechan Enterprises Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>Plaintiff,<br><br>v.<br><br>FORREST J. MCKINLEY, et al.,<br><br>Defendants. | Case No. 3:03-cv-0199-RRB |

**BRECHAN ENTERPRISES' MOTION IN LIMINE
TO EXCLUDE EVIDENCE REGARDING
BRECHAN'S CONTRACTS AND RELATIONSHIPS
WITH THE COAST GUARD**

Defendant Brechan Enterprises, Inc. ("Brechan") moves to exclude evidence relating to alleged contractual wrongdoing involving Brechan and the United States Coast Guard.

Relevant evidence in this case pertains to four basic issues that should be the guideposts for admission of evidence:

- What did the contract require Absolute to do on Phase II of the Cargo Wharf project?

- What work did Absolute actually perform on Phase II of the Cargo Wharf project?

- Is Absolute entitled to additional payment from Brechan or Coffman for the work it did?

- If so, how much?

Instead of focusing on these issues, Absolute's recent submissions indicate that it wants to introduce inflammatory and irrelevant evidence to support some or all of the following allegations:

- That Brechan paid another contractor $3 million not to compete with it for construction work on Kodiak Island;

- That Brechan was thereafter motivated to recover its $3 million from the Coast Guard by "substantially overcharging the government for the work it was to perform under its construction contracts." [Olson Dec., Doc. 258 ¶ 13;

- That Brechan improperly obtained its initial Job Order Contract ("JOC") from the Coast Guard through a "low-ball" bid;

- That Brechan thereafter received improper or illegal treatment by the Coast Guard to increase its profits on Phase I of the Cargo Wharf project (Task Order 7);

- That Brechan also received improper or illegal treatment by the Coast Guard in the award of a second five-year JOC contract in 2002, resulting in a contract that was unusually profitable for Brechan; and

- That Brechan overcharged the Coast Guard for its work on Phase II of the Cargo Wharf contract.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB     - 2 -     [38599-0001/AA062500.022]

Brechan vigorously denies each of these allegations. But the point of this motion is that these allegations are not relevant to the lawsuit before the Court and are inadmissible under FRE 402 and 404(b). Even if these charges had some marginal relevance to the real issues in the case, this marginal relevance is greatly outweighed by the prejudice of these inflammatory charges, and the amount of time, documents and witnesses that will be required to address these disparate points. Therefore, the Court should exclude argument and evidence on these points.

I.   **Absolute Intends to Introduce Evidence, or Make Arguments, Regarding Alleged Wrongdoing in Brechan's Contractual Relationships with the U.S. Coast Guard.**

There can be no doubt that Absolute wants to flood the jury with claims that Brechan committed a range of bad or criminal acts in its dealings with the Coast Guard. Absolute's intent is demonstrated by the following allegations that have recently appeared in Absolute's pleadings, witness list, and declarations:

- *That Brechan paid another contractor $3 million not to compete with it for construction work on Kodiak Island.*[1]

  > "A government fraud scheme was initiated with the execution of a $3 million non-compete agreement." Marston Dec., Doc. 286, ¶ 12.

  > David Olson is expected to testify about "Absolute's discovery that Brechan had paid a competitor on Kodiak Island $3,000,000 to not compete with it for construction

---

[1] Absolute's statement that Brechan paid $3 million for an agreement not to compete is patently false. It is undisputed that the $3 million payment was for the purchase of <u>all assets</u> of A-K Construction. Incidental to the purchase of these assets, Brechan obtained an agreement by the individual sellers not to compete.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB                - 3 -                [38599-0001/AA062500.022]

work on Kodiak Island for a period of seven years, despite having signed non-collusion certifications in its later JOC contracts." Absolute Witness List, Doc. 312 at p. 4.

See also D. Olson Dec., Doc. 258, ¶ 12

- ***That Brechan was thereafter motivated to recover its $3 million from the Coast Guard by "substantially overcharging the government for the work it was to perform under its construction contracts." [Olson Dec., Doc. 258, ¶ 13.***

"Brechan's business dealings with the Coast Guard are fraught with impropriety." Absolute's Reply re Mtn to Compel, Doc. 278 at 3.

"Discovery in this lawsuit has demonstrated multiple financial improprieties in Brechan's business deals with the Coast Guard." Marston Dec., Doc 279, ¶ 4.

"Discovery in this lawsuit has demonstrated multiple instances of financial wrong-doing in Brechan's contracts with the Coast Guard. It is Absolute's belief . . . that Brechan pursued a purposeful scheme to defraud the government through its contracts with the United States Coast Guard . . . when it paid its only competitor $3 million dollars to not compete for Coast Guard work on the Island. . . . A government fraud scheme was initiated with the execution of a $3 million non-compete agreement." Marston Dec., Doc. 286, ¶ 11-12.

"The evidence clearly suggests that Brechan's method of recouping its investment was by defrauding the USCG and the tax payers of this country." Olson Dec., Doc. 288-1 ¶ 3.

Coast Guard documents will "demonstrate Brechan's exaggerated profit margins on United States' Coast Guard projects". Absolute Motion to Compel, Doc. 223 at p. 4.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

- *That Brechan improperly obtained its initial Job Order Contract ("JOC") from the Coast Guard through a "low-ball" bid.*

    "On or about January 2, 2001 Brechan was the successful bidder for a Job Order Contract ("JOC") with the United States Coast Guard ("USCG") to provide construction services for a base year with three option years. The JOC Contract once awarded was a sole-source noncompetitive construction contract for multiple projects at Integrated Support Command ("ISC") Kodiak for the USCG. Brechan obtained the award for the JOC contract with a "coefficient factor" bid of 5%. . . . The 5% coefficient factor was unrealistically low given the fact that it was supposed to include all items listed on page 8 of 9, COEFFICIENT ¶ (a). . . . In essence, Brechan "bought" the JOC contract with its low-ball 5% bid to assure itself that it would be in a position to both exclusively contract with the USCG on Kodiak and to guarantee itself an opportunity to recoup its $3 million investment in the non-compete agreement with AK Construction." Olson Dec., Doc. 288-1 at ¶ 3.

- *That Brechan thereafter received improper or illegal treatment by the Coast Guard to increase its profits on Phase I of the Cargo Wharf project (Task Order 7).*

    David Olson will testify that "the Coast Guard's project management team, "Alpha Team," was willfully disregarding the requirements of its contract with Brechan permitting Brechan to overcharge for work performed, was paying Brechan additional expenses the Coast Guard was not responsible for, was paying such amounts secretly in violation of orders from Coast Guard superiors. . . ." Absolute Witness List, Doc. 312 at p. 4.[2]

---

[2] Absolute – trying to make its accusations seem credible – also needs to impugn the United States Coast Guard contracting officers and their support staff as "conspirators." This adds another layer of accusation against a non-party and potential prejudice to Brechan.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB          - 5 -          [38599-0001/AA062500.022]

"Brechan's relationship . . . with the Alpha team enabled it to obtain compensation for charges it was not entitled to under the terms of its contract with the Coast Guard. The A-Team simply disregarded the contract terms and agreed to whatever terms it felt would facilitate getting the work done and its customer, the Coast Guard, satisfied—irrespective of what it eventually cost the government to achieve that." Olson Dec., Doc. 258 ¶ 14.

Anita Repanich, FDCC Contracting Officer is expected to testify that "[t]he Coast Guard's project management team, "Alpha Team," was willfully disregarding the requirements of its contract with Brechan permitting Brechan to overcharge for work performed, was paying Brechan additional expenses the Coast Guard was not responsible for, was secretly paying such amounts in violation of orders from Coast Guard superiors, and was illegally giving Brechan preferential treatment in evaluation of its proposals submitted in the competitive bidding for the second JOC contract." Absolute Witness List at 10.

See generally Olson Dec., Doc. 288-1 ¶¶ 17-19 (referring to a "conspiratorial discussion" between USCG and Brechan and a "conspiratorial proposal" by USCG"; Olson Dec., Doc. 288-1 ¶ 24 ("bold deception" of upper Coast Guard management by Mr. Rendon and Ms. Repanich at the Coast Guard); Olson Dec., Doc. 288-A ¶ 30 (Ms. Repanich and Brechan were conspiring to deceive USCG).

- ***That Brechan also received improper or illegal treatment by the Coast Guard in the award of a five-year JOC contract in 2002, resulting in a contract that was unusually profitable for Brechan.***

    Brechan "could not afford to jeopardize the extraordinary—in fact—illegal helpful assistance it was obtaining from Anita Repanich—or her 'upper management' in particular—on the eve of award of the second JOC contract . . . " Marston Dec., Doc. 279 at ¶ 36.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

David Olson will testify that "the Coast Guard's project management team, "Alpha Team," . . . was illegally giving Brechan preferential treatment in evaluation of its proposals submitted in the competitive bidding for the second JOC contract." Absolute Witness List at p. 4.

"On April 1 and 2 [2002], Repanich and Rendon of FDCC exchanged emails with Matt Holmstrom of Brechan. The subject of these emails was advice to Brechan on how to win the upcoming 5 year 50 million dollar JOC contract. At a minimum, Repanich and Rendon coached Holmstrom how to beat the competition. Repanich specifically mentions Brechan's coefficient of 1.05 and how suspect its competitors were about the figure." Olson Dec., Doc 288-1, ¶ 34.

- ***That Brechan overcharged the Coast Guard for its work on Phase II of the Cargo Wharf contract.***

On Cargo Wharf Phase II, "BEI was able to inflate the direct cost portion of the work to be done by my firm and thereby obtain a $120,000 unearned "bonus" for itself at the expense of the U.S. Government." Olson Dec., Doc 258, ¶ 13.

"On the second page of Brechan's [Phase II] proposal, Brechan stated that the coating cost for Phase II with markups was $1,249,982 when in fact it should have been $1,115,352. Brechan stole $134,630 from the government by exaggerating what it would be paying Absolute." D. Olson Dec., Doc 288-1 ¶ 45.

## II. The Proposed Testimony is Inadmissible

### A. Arguments and Testimony Regarding Brechan's Financial Relationship with the Coast Guard Are Irrelevant

The real issues in this case relate to Absolute's performance on Phase II of the Contract, and any entitlement it may have to additional compensation for its work. In response to Brechan's and Coffman's motions to dismiss Absolute's

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB   - 7 -   [38599-0001/AA062500.022]

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

claims, Absolute explained: "Absolute's claims against Brechan are based on the legal doctrine of superior knowledge and evidence that Brechan had actual knowledge about concealed defective site conditions and failed or declined to disclose that information to Absolute." Pl. Opp. to Motion to Dismiss, November 29, 2005, at 4.

During a trial setting conference, counsel for Absolute explained its claims as follows:

> Mr. Marston: The essence of our claim against Brechan is that they were aware of a significant undisclosed condition on the contract. And that they failed to disclose that prior to the time so we could incorporate that into our bid.
>
> That's it.
>
> In the documentation submitted to the court it was stated that we had ten different claims. Well, you know how Pleadings work? You have ten different theories of recovery, but it's all identifying the same operative facts and all talking about the same damages. And the entire question boils down to: did they, in fact, know about the existence of this situation, and did they disclose it?
>
> So that's not going to be something that's going to take lengthy periods of time of discovery.

See Docket 172, Declaration of P. Partnow in Support of Coffman Engineer's Motion to Reset Trial Date, at Exhibit 5, pp. 11-12 (Transcript of September 15, 2005 Trial Setting Conference, remarks of Mr. Marston).

Although Absolute pled a detailed "bill of particulars" and listed numerous legal theories in its complaint, Absolute's complaint did not allege or imply that Absolute was suing Brechan because it presented improper claims for payment to the Coast Guard; realized an improper or "exaggerated" profit; or

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB        - 8 -        [38599-0001/AA062500.022]

defrauded the taxpayers. Absolute has no right to assert such claims, and has not done so. To permit Absolute to conduct the trial as though this was a qui tam action would put Brechan in the position of defending its conduct against unasserted claims and on matters which have no bearing on the proofs in Absolute's case.

In light of the scope of the claims in this case, the proposed testimony about Brechan's relationship with the Coast Guard does not meet the relevance test in Rules 402 and 401. Evidence is admissible only if it is relevant. Fed. R. Evid. 402. In turn, Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence." (emphasis added). The claims identified above do not have any bearing on Absolute's right to additional compensation for its work on Phase II of the Cargo Wharf contract.

For example, suppose that Absolute could prove that Brechan eliminated competition for Coast Guard contracts on Kodiak Island, and obtained unusually profitable contracts from the Coast Guard. If proven, this fact would not make it any more or less likely that Brechan owed more money to Absolute for the work that it did on Phase II of the Cargo Wharf contract. Similarly, suppose that Absolute could prove that Brechan and Coast Guard officials conspired so that Brechan escaped from threatened losses on the Phase I contract, or even that it made "too much" money on the Phase I contract. If proven, this would not make it any more likely that Brechan owed money to Absolute for its work on the separate contract for Phase II of the Cargo Wharf project. And, suppose that Absolute

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

could prove its untrue charge that the Coast Guard paid Brechan more money than it should have on the Phase II contract. Again, if that could be proved, it would not make it any more likely that Brechan owes Absolute more money for its work on the subcontract. The proffered evidence (to the extent that it even exists) is simply not relevant to the issues in this case. Coefficient determinations, contractor payment processes, and the Coast Guard's duty to the American public will not help to determine whether Brechan had knowledge of or a duty to disclose defective welds and latent site conditions.

If Absolute intends to show that Brechan defrauded the United States, and therefore it is likely it also defrauded Absolute, the evidence is prohibited by FRE 404(b): "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b) recognizes that evidence of other bad acts may be admissible for other reasons, such as to show motive or intent. But if evidence of other bad acts is to be admitted on that rationale, the proponent must satisfy a four-part test: "(1) there must be a sufficient <u>degree of evidence</u> for the jury to find that the other acts were in fact committed; (2) the other acts may only be introduced to prove a <u>material issue</u> in the case; (3) the other acts must not be too remote in time to the conduct charged; (4) the other acts must be sufficiently similar to the charged conduct when they are being introduced to show intent." <u>United States v. DeSalvo</u>, 41 F.3d 505, 509 (9th Cir. 1994) (internal citations omitted); <u>see also</u> <u>Duran v. City of Maywood</u>, 221 F.3d 1127, 1132-33 (9th Cir. 2000). Aside from the timing element, the allegations of Absolute do not satisfy any element of this test.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB         - 10 -                    [38599-0001/AA062500.022]

A full scale trial-within-a-trial would be required for a jury to be able to conclude that the other acts were in fact committed. See Duran, 221 F.3d at 1133 (upholding the exclusion of evidence in part based on the number of witnesses and experts that would be required to establish the likelihood of the other alleged acts). A similar evidentiary issue was addressed in a Tenth Circuit case, Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186 (10th Cir. 1997). The contractor sought to present evidence of a lien dispute between owner and another contractor in order to prove that the owner's motive was to extract price concessions. Id. at 1193. The Tenth Circuit upheld exclusion of the evidence and held that proving the alleged bad act "could have lead to a side trial that would distract the jury from the main issues in the case." Id. at 1194.

B.  **The Proposed Evidence is Inadmissible Under Federal Rule of Evidence 403.**

Even if Absolute could somehow establish that its evidence of the negotiations and agreement were relevant to Absolute's claims under Rule 402 and not prohibited by Rule 404(b), the evidence would still be barred by Federal Rule of Evidence 403, as its prejudicial impact greatly outweighs any possible probative value. Duran, 221 F.3d at 1133 ("Even if all four conditions [for admissibility] under Rule 404(b) are met, the evidence may still be excluded if under Rule 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.").

Absolute's charges involve allegations of fraud against the federal government. These allegations are highly prejudicial. Trial courts in this state and other United States District Courts have applied FRE 403 to exclude less

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB         - 11 -         [38599-0001/AA062500.022]

accusatory and complex issues. Cf. J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp., 31 F.3d 1259, 1269 (3rd Cir. 1994) (excluding testimony that organization engaged in a large-scale scheme to "defraud prospective franchisees"). In Fairbanks North Star Borough v. Kandik Construction, Inc. & Assoc., 795 P.2d 793 (Alaska 1990), vacated in part on other grounds 823 P.2d 632 (1991), the Alaska Supreme Court upheld the exclusion of business records under Rule 403. There the business records suggested that the construction company falsified payroll records. Id. at 800. The court held that "the probative value of the evidence was outweighed by the danger of prejudice, confusion of the issues and waste of time."

This testimony should also be excluded under FRE 403 on grounds of confusion. Federal contracting procedures are complex. If Absolute is allowed to make these inflammatory accusations about Brechan's relationship with the Coast Guard, the jury will have to hear complex testimony about the Coast Guard's contracting and budgeting procedures—not just for the contract at issue here, but for all of the Coast Guard contracts that fall within the broad scope of Absolute's allegations. The court and the jury will become entwined in complex federal procurement processes, practices and procedures, statutory authorizations of warrants to contracting officers, federal procurement issues regarding best value contracting in the negotiation of delivery orders under IDIQ contracts, and other

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB         - 12 -         [38599-0001/AA062500.022]

equally highly-specialized, distracting, potentially prejudicial and clearly irrelevant matters.[3]

Finally, if testimony on these subjects is permitted, the trial will be greatly expanded in scope, and therefore in time. If Brechan is accused of fraud in its contract relationship with the Coast Guard, it has a right to respond. Thus, it will be entitled to explain the following subjects, and more: the terms of Brechan's purchase of AK Construction, and the assets that it obtained for its $3 million payment; the rationale for Brechan's bid on the first JOC contract in 2001; the Coast Guard's evaluation of Brechan's proposal and rejection of competing bids; the basis for all payments to Brechan in Phase I of the Cargo Wharf contract; the basis for Brechan's proposal for the second JOC contract; and the basis for the Coast Guard's decision to award the second JOC contract to Brechan. Evidence on these subjects will vastly expand the scope and time required for this trial. The Court can avoid this result by prohibiting Absolute's proposed argument and evidence on these irrelevant and inadmissible matters.

---

[3] In Douglas v. Anderson, 656 F.2d 528, 535 (9th Cir. 1981), the court upheld the exclusion of accounting practices in an employment discrimination action. Plaintiff sought to submit evidence of the different accounting standards that his employer applied to certain funds. The court recognized that the exclusion was appropriate under both Rule 402 and Rule 403 of the Federal Rules of Evidence. The court recognized that admitting evidence regarding accounting practices "could [result] in substantial confusion and waste of time on a collateral matter." Id.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB   - 13 -   [38599-0001/AA062500.022]

## CONCLUSION

For the foregoing reasons, Brechan asks the Court to grant its motion in limine.

DATED at Anchorage, Alaska on September 8, 2006.

**PERKINS COIE** LLP
Attorneys for Defendant
Brechan Enterprises, Inc.

By  /s/ Michael E. Kreger
     Michael E. Kreger
     Alaska Bar No. 8311170
     James N. Leik
     Alaska Bar No. 8111109
     Perkins Coie LLP
     1029 W. Third Avenue, Suite 300
     Anchorage, Alaska  99501
     (907) 279-8561
     (907) 276-3108 (Facsimile)
     Email:  mkreger@perkinscoie.com

I hereby certify that on September 8, 2006, the foregoing was served electronically on Robert J. Dickson, Peter C. Partnow, William R. Baerg, Terry R. Marston II, James B. Stoetzer, and Eric J. Brown.

 /s/ Michael E. Kreger
     Michael E. Kreger

**PERKINS COIE** LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. MCKINLEY, et al.
Case No. 3:03-cv-0199-RRB                - 14 -                [38599-0001/AA062500.022]