1    problem that they were having trouble making the

2    coatings adhere hard to the weld.

3            THE COURT:  So you're saying they

4    should have known because -- what -- what's

5    the -- what -- what's your point?  What are

6    you -- what's the point of this?

7            MR. PARTNOW:  The point of that is

8    from -- regardless of whether the first line

9    subcontractor, Absolute, had asserted a claim

10   against Brechan or against Coffman in the

11   original phase of the case, the whole issue of

12   undisclosed conditions was in that lawsuit, that

13   the -- you know, the -- you know, the argument --

14           THE COURT:  You're saying that it

15   wasn't a surprise?

16           MR. PARTNOW:  That's correct, Your

17   Honor.

18           THE COURT:  That's just the

19   opposite of what counsel just indicated.

20           MR. PARTNOW:  Right.

21           THE COURT:  Okay.

22           MR. PARTNOW:  Okay.  We are here

23   today, in January of -- 27th of 2006, making the

24   argument we would have made to you in May of 2005

25   when Mr. Marston filed his motion to add parties

EXHIBIT ___1___
PAGE _26_ OF _75_

1    before Your Honor, his unopposed motion, which,

2    Your Honor, as a matter I believe of routine, at

3    least you're not demonstrating a real crisp

4    recollection of that --

5                    THE COURT:  No.  I could tell it

6    was routine.  I'll tell you it was routine.  A

7    stipulated order?

8                    MR. PARTNOW:  And, of course,

9    because the only people who cared, Mr. Nist and

10   his client and Coffman and us, weren't there.  We

11   didn't know it was happening.  We were sitting

12   off in our offices doing other things.  Mr. Nist

13   got his surprise in June of this year when all of

14   a sudden this case, which they had been dismissed

15   out of with prejudice -- and Mr. Marston is

16   correct, they did not sign the dismissal with

17   prejudice, but it was served on all the parties,

18   and it was -- and it was an order that was signed

19   by Your Honor in, I believe, February of 2005 and

20   served on all the parties that Brechan was

21   dismissed with prejudice, we were dismissed with

22   prejudice.

23                   THE COURT:  Docket 74 and 75, I've

24   looked at it carefully.

25                   MR. PARTNOW:  Okay.  So Brechan

EXHIBIT ___1___
PAGE _27_ OF _75_

1    gets served with this lawsuit that they thought

2    they were out of.  Within the time provided by

3    the rules, they come back and say, We didn't do

4    anything wrong, but if we did, we blame our

5    designer.  And they come back and they sue

6    Coffman.

7                    Coffman gets the thing and within

8    the time provided by the rules says, Wait a

9    minute, you can't bring us, it's improper.  And

10   this is where we filed our motion.  And this goes

11   back to the fact that when the original lawsuit

12   was filed in -- after the original lawsuit was

13   filed in August of 2003 and the -- there was

14   cross claims and everything, by December of 2003,

15   all the players that you hear about or don't hear

16   about were in the lawsuit.

17                    In February of 2004, you -- Your

18   Honor issues a pretrial order.  One of the things

19   says when do you have to add claims or parties,

20   and the order says April 1, 2004.  No claims or

21   parties are -- are added.  We're all there.

22                    Meanwhile, discovery is going on,

23   and as Mr. Marston indicated, part of the

24   discovery was Imperial requested and was given

25   all the documents that Brechan had that related

EXHIBIT ___1___
PAGE _28_ OF _75_

1  to Phase 1, which Mr. Marston points out to Your

2  Honor this morning they just stashed away and

3  didn't -- didn't even look at, even though they

4  had, you know, started in -- in July 6th of 2004,

5  they had all the documents.  Even if this was an

6  issue, and we're not trying to avoid summary

7  judgment issues, they had -- but they had in

8  their possession the documents that would have

9  referred to whatever happened to Swalling on

10  Phase 1.

11            And in -- in August of 2004,

12  everybody has Exhibits 1 to our motion, the

13  response from Imperial where they say all of the

14  stuff that was wrong with the project that led to

15  their bid being lower than it should have been

16  and why they're entitled to more money than they

17  received and -- and so on and so forth.  The

18  discovery goes on.  There's lots of paper

19  discovery, depositions occur, and ultimately the

20  various witnesses come forward.  And it becomes

21  quite evident that there is no -- there are no

22  claims against the -- in terms of what's being

23  served in the lawsuit against Brechan or against

24  Coffman.  We get dismissed with prejudice out of

25  the lawsuit.

EXHIBIT  1
PAGE  29 OF  75

1          Then, Your Honor, signs this

2    routine order.  All the stuff comes out.  We get

3    the stuff, and -- and our motion basically says,

4    wait a minute, you issued an order in February of

5    2004 that said new claims can only be added after

6    April 1st for good cause.  There isn't good

7    cause, and, furthermore, we're significantly

8    prejudiced by having these claims asserted

9    against us.  And so we -- we -- we filed our

10    motion on that basis.

11          Brechan, in response to our motion,

12    comes back and said -- says two things.  First

13    they say, well, you know, come to think of it,

14    Coffman is right, and Absolute can't bring their

15    claims against us either, but you could only

16    grant Coffman's motion for Coffman if you also

17    grant it to us, Brechan.  It's not fair to let

18    Coffman out but to keep Brechan in.  And we

19    opposed that motion by saying, well, Brechan is

20    probably right, they ought -- they ought to be

21    let out of the case too, but if they waived

22    they're rights by sitting on them or did whatever

23    and for some reason that they procedurally can't

24    get out, that's not Coffman's fault.  We -- we

25    didn't know that Brechan had been sued until

EXHIBIT ___1___
PAGE __30_ OF _75_

1    Brechan sued us.  We acted as soon as we could

2    have known once the process server showed up and

3    said, somebody is trying to get you back into

4    this lawsuit again.

5             Meanwhile, even if Brechan gets the

6    bad news from Mr. Marston in -- in June of 2004,

7    another four months, five months, November, the

8    last day under the new pretrial order when claims

9    can be added, Absolute asserts the claims --

10   direct claims against Coffman.  And so we then

11   file essentially the same motion that we filed

12   against the Brechan attempt to bring us in as a

13   third-party back again, Absolute for their

14   attempt to pursue these direct claims directly

15   against Coffman.

16             So basically, today, there are two

17   motions.  There is our motion vis-a-vis the

18   Brechan attempt to bring us in, and there is our

19   motion against -- well, three motions, I

20   supposed.

21             THE COURT:  I have  three up here.

22             MR. PARTNOW:   -- against the

23   Absolute attempt to bring us in and then

24   Brechan's motion against Absolute's attempt to

25   bring them in.

EXHIBIT    1
PAGE 31 OF 75

Page 32

1          Now, my belief, Your Honor, is if

2     we were sit -- standing here in front of you in

3     May of 2005, when Absolute filed their motion, we

4     would have pointed out to you, You signed an

5     order in February which said the claims should

6     have been brought in April, and here we are in

7     May, it's late, Absolute has the obligation to

8     show -- you know, they didn't -- they didn't

9     comply with the order.  So, in order to file

10    late, under rule fif- -- fif- -- 16, they have to

11    have good cause.  And --

12              THE COURT:  So, you say they do

13    have?

14              MR. PARTNOW:  What the -- the thing

15    is they don't have good cause and we're

16    prejudiced and this is what we have pointed out

17    in our motion.

18              THE COURT:  And I think they say

19    they do have a good cause and you're not

20    prejudiced.

21              MR. PARTNOW:  Right.  Right.

22              THE COURT:  Is that it?  Okay.

23              MR. PARTNOW:  Yeah, you said that

24    well-diagramed, Your Honor.

25              (Laughter)

EXHIBIT ___1___
PAGE _32_ OF _75_

```
 1              MR. PARTNOW:  And in ter- -- and
 2    I'll try -- I guess try to -- well, they say one
 3    more thing.  They -- they in -- they say, well, I
 4    think if I understand the opposition correctly,
 5    they said, well, you could have made this
 6    argument in May to Coffman and to Brechan if you
 7    had been a party to the lawsuit, but you weren't
 8    a party to the lawsuit, and, therefore, even
 9    though we -- we blew one by the judge and -- and
10    filed this unopposed motion that now since we're
11    showing up even a year later, your -- you -- that
12    basically if we -- if we're a little late in
13    terms of bringing claims and you are still
14    around, you can complain about it, but if we're
15    really late bringing the claim so that you're
16    gone, then you don't have anything to say about
17    it.  That -- and I don't believe that that's the
18    way it works, that's the way the rules work, that
19    to say that somehow we've lost our right to
20    complain about the violation of the pretrial
21    order that existed at the time that we were in
22    the lawsuit, now that there is an attempt to
23    bring us back into the lawsuit, I think is -- it
24    turns the rules on its head.
25              THE COURT:  Well, there's --
```

EXHIBIT ____I____

PAGE __33_ OF _75_

Page 34

1    there's a couple of issues here.  There's --

2    because a lot of people want to bring you back,

3    not just Absolute.

4              MR. PARTNOW:  Well, no, there's

5    only one other -- Brechan wants to bring us back,

6    but they only want to bring us back if they're

7    brought back.  They don't -- they don't make any

8    new claims against us.  They're just saying, if

9    we did something wrong --

10             THE COURT:  Well, didn't they

11   already dismiss you with prejudice?

12             MR. PARTNOW:  Imperial is the one

13   who dis- -- dismissed us and Brechan, and

14   Imperial hasn't -- isn't --

15             THE COURT:  Okay.

16             MR. PARTNOW:  In fact, they can't

17   try to bring claims against us --

18             THE COURT:  Right.

19             MR. PARTNOW:  -- because they've

20   dismissed us with prejudice.

21             THE COURT:  Right.  Right.  Okay.

22   Okay.  Go ahead.

23             MR. PARTNOW:  Okay, Your Honor.

24   So, again, I think procedurally to say that we

25   don't have, that somehow we can't raise the

EXHIBIT ____1____
PAGE __34__ OF __75__

1    argument that we're raising now, I think, turns

2    the rules on its head.  And so, you know, the

3    issues that Your Honor has to look at is:  Was

4    the attempt to bring these claims late?  And I

5    don't think that there -- there is no question,

6    you know, we're after April 1st of 2004.  They're

7    way late.  And then this late, you know, is

8    there -- is there good cause, or are we

9    prejudiced?

10                THE COURT:  Well, is there any

11   dispute that they're late?

12                MR. PARTNOW:  Mr. Marston argues

13   that we can't raise the issue because the -- the

14   pretrial order that you issued in 2004 is gone

15   because they -- all the stuff started happening

16   and you've issued a new pretrial order so that

17   the -- the claim that they filed against us in

18   November of 2005 would be timely under the new

19   pretrial order if none of this -- all this stuff

20   that's happened, and --

21                THE COURT:  Okay.

22                MR. PARTNOW:  -- he wants to drop

23   the curtain and say, we should have complained

24   about it in 2004 before -- you know, while the

25   other pretrial order was in existence.  And I say

EXHIBIT ___1___

PAGE _35_ OF _75_

Page 36

 1    I was the old downstream salmon --

 2                    THE COURT:  I'm -- I, frankly, am

 3    beyond that.  I'm -- I'm on two and three.  I'm

 4    on good cause and prejudice.

 5                    MR. PARTNOW:  Okay.  Thank you,

 6    Your Honor.

 7                    Okay.  The essence of their good

 8    cause argument is, you know -- is essentially the

 9    argument that we didn't know.  It wasn't until we

10    saw this piece of paper that we knew that the

11    reason why we had a million-dollar cost overrun

12    was something that had happened with Swalling.

13                    And on its face, Your Honor, that's

14    simply an absurd argument.  The whole Swalling

15    thing and the whole superior knowledge,

16    undisclosed condition is your bigger bid.  You

17    say I'm going to do -- I'm going to Sheetrock

18    behind the bar, Your Honor.  I'm going to paint.

19    I make a bid to come in and paint your courtroom,

20    and I'm standing here, and I say it's going to

21    cost me so much to paint there, and you give me

22    the contract.  And I come walking over the first

23    day, and I find, Oh, my goodness, there is no

24    Sheetrock down below the bench.  I assumed that

25    whole wall was Sheetrocked.  There is no way for

1    me to see from here that there is no Sheetrock

2    there, and my bid didn't include Sheetrocking

3    that little area there.  So, since that was

4    something I didn't know and couldn't know, and

5    you know it because you can just turn around and

6    see it, you have to pay me some more money

7    because my bid didn't include doing that.

8                    THE COURT:  But you could have

9    walked up and looked.

10                   MR. PARTNOW:  Well, in this

11   circumstance, you -- basically, you can't get a

12   look because you're under the dock and the tide

13   is coming up.  So that the problem with -- with

14   Swalling did or didn't have in Phase 1, and I

15   think everybody is in agreement, they didn't know

16   whatever existed there was there until they

17   actually got in and started doing the work.

18                   It's similar to the argument that

19   Imperial has made in Phase 2, without talking to

20   the substance of whether they're right or they're

21   wrong, based that they're assumption was that

22   there is one coat of paint and when they got

23   there, there was a second coat underneath the

24   first coat, and it took up a lot longer to scrape

25   it off and so on and so forth.  They got in

EXHIBIT ___1___
PAGE __37__ OF __75__

1    there, they do the work, they're scrubbing away.

2    The problem with the welds, we get in there, we

3    look at the welds, and, my goodness, these welds

4    are bad.  We have all this other stuff we have to

5    do in order to be able to do the coating.

6                    MR. MARSTON:  I have to place an

7    objection.  There is no evidence in the record to

8    support the statement that counsel just made.

9                    THE COURT:  Oh, I'm still focusing

10    on good cause.  One of the --

11                    MR. PARTNOW:  The prob- -- the

12    argue- -- I'm -- the argument I'm making is that

13    when you come in and you make an argument that

14    there was a condition there that you could not

15    and did not know about, you know about it when

16    you do the work.

17                    THE COURT:  Okay.  But I'm focusing

18    on whether there is good cause, not with regard

19    to the work itself --

20                    MR. PARTNOW:  Right.

21                    THE COURT:  -- but with regard to

22    the litigation.  I'm focusing on -- on the issue

23    of whether or not there is good cause for the --

24    Absolute not to have known and to -- that this

25    information was missing.  Do they -- is there

EXHIBIT    1
PAGE  38  OF  75

1    good cause for them to be -- come back in?

2    That's what we're focusing on.

3              MR. PARTNOW:  No, there is not good

4    cause for three reasons.  And there is not good

5    cause because they had the documents in their

6    possession.

7              THE COURT:  Okay.  That's --

8    that's --

9              MR. PARTNOW:  There is not good

10   cause because they basically believe they knew

11   that they had suffered some sort of economic --

12   some sort of damage, something that cost them

13   more than it was going to and they -- they --

14   they were -- were on discovery notice to look at

15   the things that would have caused this.  It's

16   like if I'm in an airplane crash and I sue the

17   airline and then five years later I sue the

18   person who manufactured the -- the plane and say,

19   Gee, it never occurred to me that there might be

20   a defect in the plane, when you have the injury,

21   particularly given all the pleadings there, they

22   were on notice.

23             THE COURT:  Okay.  So -- so, to put

24   it in context, though, basically you've been let

25   out, now you're back in, you say let me out

1    again, there was never good -- there is no good

2    cause to bring me back in.

3                    MR. PARTNOW:  Right.

4                    THE COURT:  They should have -- if

5    they had this information, they should have known

6    about it.  They're saying there is good cause.

7    So I'm -- that's the issue I have to focus on?

8                    MR. PARTNOW:  Yes, Your Honor.

9                    THE COURT:  In that context?

10                   MR. PARTNOW:  Yes, Your Honor.

11                   THE COURT:  And then they have

12   their argument, you have your argument.

13                   MR. PARTNOW:  Right.

14                   THE COURT:  That's so -- that's --

15   I'm not really getting into the -- how the doc.

16   looked or anything like that, so --

17                   (Simultaneously speaking)

18                   MR. PARTNOW:  Okay.  You then

19   the -- the other side of that issue is -- there

20   is the issue is there good cause and there is

21   also the issue of prejudice.

22                   THE COURT:  And that's the next

23   issue, yes.

24                   MR. PARTNOW:  Right.  You have the

25   issue of prejudice.  First of all, to the extent

Page 41

```
 1    that they're -- they got out there and they

 2    allegedly -- if there allegedly was some sort of

 3    a problem --

 4                   THE COURT:  With regard to

 5    prejudice, whether or not you are prejudiced --

 6                   MR. PARTNOW:  Yes.

 7                   THE COURT:  -- by having this delay

 8    in being let out and then coming back in late,

 9    has that done some kind of irreparable harm to

10    you or something of that nature?

11                   MR. PARTNOW:  The prejudice of

12    having this claim brought against us in November

13    of 2005 as opposed to sometime before April of

14    2004.  And the point -- our point in that is,

15    first of all, had the claim been brought at a

16    time when the work was actually going on, we

17    could have observed the -- the alleged

18    conditions.  We could have observed, you know,

19    what was being done.  You know, there could have

20    been film.  There could have been notes, what --

21    you know, what...

22                       Secondly, there was a lot of

23    discovery that was done while we were in the

24    case.  There were no witnesses who were

25    specifically deposed about any of these supposed
```

EXHIBIT ____ 1

PAGE __41__ OF _75_

1    issues because they weren't issues.  We now are

2    faced with -- we would have to go back and

3    basically redo some or all of the discovery that

4    was done.  Not only was there discovery done when

5    we were in the case, after we were out of the

6    case, discovery continued, and we weren't even --

7    we had no involvement in that discovery.

8              Thirdly, we've had witnesses who

9    have left employment or not -- no longer

10   available, either to -- to Brechan or to Coffman,

11   to address issues that might come up.  And

12   another point, and a point that was brought up in

13   Brechan, I assume Mr. Nist will do it, is to the

14   extent that the -- the contractor, Brechan, has a

15   problem that there was -- if there was something

16   that wasn't supposed to be there, in terms of

17   they're saying, well, our sub had a problem, and

18   it caused us more money and to turn back to the

19   owner and say, we -- you know, we have a cost

20   overrun that you're responsible for, Coast Guard

21   is the owner, they've lost that right because

22   they closed out the documents.  That contract is

23   done and closed, and there are all these

24   provisions about when claims have to be raised

25   and final payment and -- and had any of these

EXHIBIT ___1___

PAGE __42_OF _75_

Page 43

1    matters been raised at a time when it was

2    possible, even as -- assuming for the sake of

3    argument that there is any substance to the

4    merits of the things which we, of course,

5    strongly disagree, there's -- there's no relief

6    on the other side because of the unexcused

7    failure to have raised the -- the -- these

8    matters in a timely fashion, Your Honor.

9                THE COURT:  Okay.  Who is next?

10   Thank you, appreciate that.

11               MR. NIST:  I guess that would be

12   me, Your Honor.

13               THE COURT:  All right.

14               MR. NIST:  And I think I'm going to

15   take advantage of the --

16               THE COURT:  You can take -- all

17   right.  Very well.  You want to draw your own?

18               MR. NIST:  I think so.

19               THE COURT:  Okay.

20               THE CLERK:  Can you put on the

21   traveling mic.?

22               THE COURT:  Traveling mic.

23               MR. NIST:  Oh, thanks.

24               MR. PARTNOW:  So it's

25   (inaudible) -- would have hung on to it.

```
 1                    (Laughter)
 2                    MR. NIST:  Your Honor -- is this
 3      working?
 4                    Okay.  Typically when -- what
 5      happens with these kinds of disputes --
 6                    THE COURT:  Okay.  Now, you're
 7      focusing on the issues that I'm concerned about
 8      with today, right?
 9                    MR. NIST:  I think so, Your Honor.
10                    THE COURT:  Okay.  All right.
11      Good.
12                    MR. NIST:  Is that, you know, we
13      have Imperial and then as a subcontractor to
14      Absolute, we'll call them the second tier.  And I
15      apologize for my handwriting.  And then we have
16      Absolute, or first tier.  And then we have
17      Brechan --
18                    A SPEAKER:  Excuse me, Your Honor.
19      Can I walk around this way?
20                    THE COURT:  Sure.  Have this --
21                    MR. NIST:  Which is the prime --
22                    THE COURT:  However you're
23      comfortable.
24                    MR. NIST:  And then we have the
25      Coast Guard --
```

EXHIBIT _____ |

PAGE __44__ OF _75_

Page 45

```
 1                    THE COURT:  Are you -- is this
 2      Phase 1 or Phase 2, or does it matter?
 3                    MR. NIST:  Well, this is Phase 2.
 4                    THE COURT:  Okay.
 5                    MR. NIST:  Imperial, Absolute,
 6      Brechan, Coast Guard, which is the owner.
 7                    THE COURT:  Right.
 8                    MR. NIST:  Now, typically what
 9      would have happened in 2003, if Absolute thought
10      any of Imperial's claims had merit is that they
11      would say -- or Imperial would bring a claim
12      against Absolute because it had a contract with
13      Absolute.  Absolute would bring a claim against
14      Brechan because it had this contract with
15      Brechan.  And then Brechan would bring its claim
16      against the Coast Guard.  And if they thought
17      their designer screwed up, they would bring it
18      against the -- Coffman.
19                    THE COURT:  Okay.
20                    MR. NIST:  But that's not what
21      happened here.  Imperial asserted a bunch of
22      claims, including, well, it had change
23      conditions.  This is back in the fall of 2003.
24      Imperial asserted that it had -- there was a
25      change in conditions, which if that was true it
```

Page 46

1    could assert a claim against Absolute, and then

2    Absolute could assert a claim against Brechan,

3    and then Brechan could go to the owner and go to

4    Coffman.  But, again, that's not what happened

5    here.  And this is back in the fall of 2003, when

6    Imperial asserted these claims.

7                Absolute said, No, we're not going

8    to sue Brechan, and chose not to sue Brechan for

9    Imperial's claims until -- oh, I don't even know

10   if they're asserting the claim for -- Imperial's

11   claims until today or not.  And this kind of

12   relates to a subset.  It's not just Absolute --

13   and it's unclear from the pleadings whether

14   Absolute is now trying to assert a claim against

15   Brechan, more than a year after the pretrial

16   order said that you have to assert the claims

17   against Brechan or not.  Essentially, this is the

18   way for Absolute to back-door any Imperial --

19   claims against -- that should have been

20   brought -- or that were brought by Imperial in

21   2003 and pass them upstream to Brechan now.

22                So that relates to a portion

23   about -- (inaudible) claim.

24                (Speaking simultaneously)

25                A SPEAKER:  (Inaudible.)

EXHIBIT ___1___
PAGE __46_ OF _75_

```
 1                    THE COURT:  Okay.  He wanted to
 2       know who's speaking.
 3                    MR. NIST:  Oh, I'm sorry.  This is
 4       Mr. Nist for Brechan Enterprises.  I'm talking to
 5       the ceiling like that's going to matter.
 6                    Okay.  And now in the -- just as a
 7       time line here, we have the fall of '03, and
 8       that's when we have Absolute, as the plaintiff,
 9       and suing Imperial, as the defendant and then
10       Imperial counter claiming against Absolute and
11       Imperial adding Coffman, Brechan -- and when I
12       say Brechan, I'm including it's surety, SAFECO,
13       who we also represent -- and then SPC, which I
14       don't think has anything to do with this motion
15       today.
16                    And during this time period, and
17       again in the fall of 2003, we all get together.
18       We all bang out a pretrial order.  Absolute is
19       still doing work on -- or is still doing work on
20       the project after Imperial is not working on the
21       project anymore, and everything is going along.
22       And we participate in about a year and a half of
23       litigation, produce a bunch of documents,
24       including documents related to Phase 1, this
25       so-called Swalling claim, and which was -- and
```

1    you know, if you look through those documents,

2    it's -- it's pretty clear.  Swalling asserted a

3    claim based on this new theory that Absolute's

4    asserting.

5                    Now, Imperial's claims -- claims of

6    changed conditions don't have anything to do with

7    Absolute's claims of changed conditions.  They're

8    completely different claims -- or completely

9    different theories.  It's the same -- completely

10   different factual basis underlying their

11   theories.

12                   A SPEAKER:  Thank you.

13                   MR. NIST:  So everything goes by.

14   We -- there is a -- there is a -- we get

15   dismissed from the lawsuit.  Coffman gets

16   dismissed from the lawsuit.  And Absolute, at

17   some point in the ball game, decides it -- well,

18   it's going to review the documents that Brechan

19   produced back when it was still in the lawsuit.

20   And that's where all this -- all this came into

21   play.

22                   A SPEAKER:  Those court documents,

23   disclosed there.

24                   MR. NIST:  Now, there is no

25   question under ninth circuit law that you have to

Page 49

1      show good cause.  That's the Johnson versus

2      Mammoth Mountain case, and that's a higher

3      standard than Rule -- Rule 15.  There is also no

4      question under Johnson that it's -- there's

5      claims that -- if you don't review documents that

6      have been provided to you by the other side that

7      that is their election and that doesn't cause --

8      that doesn't constitute good.

9                    THE COURT:  You're saying you have

10     to show good cause in order to bring a --

11                   MR. NIST:  A (inaudible) --

12                   (Simultaneously speaking.)

13                   THE COURT:  --party back in

14     litigation who's previously been released.  Is

15     that what you're talking about?

16                   MR. NIST:  Well, in -- in order to

17     bring something -- bring a party back after the

18     first pretrial -- or after the deadline --

19                   THE COURT:  Right.

20                   MR. NIST:  -- for the pretrial

21     order.

22                   THE COURT:  Right.

23                   MR. NIST:  And that -- that's

24     pretty clear.  Now, the -- I think the -- where

25     this gets a little tricky and different is that

EXHIBIT ____1____

PAGE __49__ OF __75__

Page 50

1    there isn't -- you know, we haven't found any

2    cases and nobody else has cited to any other

3    cases where somebody has been dismissed from a

4    lawsuit.  And then we were dismissed in, I see,

5    about February of '05.  And then I think they've

6    moved to bring us back in in May of '05.

7              And there isn't any cases where

8    somebody has been dismissed from the lawsuit and

9    then another party who couldn't have brought a

10   claim to begin with -- I guess that's -- may be

11   what's in dispute here because they wouldn't be

12   able to show good cause, has -- there has been a

13   break here, and there's -- for the few months

14   period of time, somebody has just been dismissed

15   from the lawsuit and then are -- get -- get

16   brought back in.  And, you know, Brechan and

17   Coffman aren't able to -- aren't able to

18   challenge it.  And so our mechanism is to have --

19   challenge it this way.  And, again, it's strange,

20   it's not something that comes up a lot.

21              However, the Johnson --

22              THE COURT:  Well, it's not come up

23   in fif- -- 14 years that I've been doing this.

24   That's -- that's --

25              MR. NIST:  And I haven't seen it

EXHIBIT    1

PAGE  50  OF  75