IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENT SERVICES, INC., an Alaska Corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>FORREST J. MCKINLEY, <u>et</u> <u>al.</u>,<br><br>            Defendants. | Case No. 3:03-CV-0199-RRB<br><br><br>**ORDER REGARDING**<br>**PENDING MOTIONS** |

## I.    INTRODUCTION

Before the Court, and on the eve of what will likely be a particularly complex jury trial, are nine ripe motions.  While some of the motions are dispositive (there are motions for summary judgment and/or dismissal within the group), thereby demanding the Court's immediate attention, others are not.  Notwithstanding, the Court has diligently labored over each of the nine motions, as well as the numerous references contained therein and the voluminous documents attached thereto, and on September 14, 2006, heard oral argument with respect to each of the same.  Having done so, the Court is now prepared to announce its findings.

## II.  FACTS

"This case arises out of the design for and implementation of renovations to the United States Coast Guard ("USCG") cargo wharf in Kodiak, Alaska."[1]  Defendant and Third-Party Plaintiff Brechan Enterprises, Inc. ("Brechan") "was the general contractor to the USCG for that project.  Part of the renovation included the removal of existing coatings and application of new coatings on the wharf's steel support members."[2] Third-Party Defendant Coffman Engineers, Inc. ("Coffman") "was hired by Brechan's sub-consultant, Tryck Nyman Hayes ("TNH"), to prepare the coating specification and perform [quality assurance ("QA")] services."[3]

"In connection with this project, the USCG required that the coating specification be written so as to provide corrosion prevention that . . . would provide the wharf's structure an additional 25 years of useful life."[4]  "[T]o meet this standard, it was necessary that the coating applied meet a 'holiday free' standard, meaning that no holes or surface penetrations below a

---

[1]    Docket 222 at 3.

[2]    Id.

[3]    Id. (citation omitted).

[4]    Id. at 4.

stated testing standard would be allowed to remain."[5]  "The testing standard in the specification was identical to that prescribed by the manufacturer of the coating material . . . ."[6]  "This standard was extremely important on the Kodiak wharf, where the steel members are constantly exposed in a marine, salt water environment."[7]

The project was divided into two phases.  "Phase I involved a wharf extension which was supported by circular support piles as well as the first portion of the original wharf . . . , while Phase II involved the completion of the original wharf."[8]

> On Phase I, Swalling Construction Company ("Swalling") was the coating application subcontractor to Brechan.  During the Phase I work on a portion of the original dock, Swalling encountered differing site conditions in the form of defective and omitted welds on the H-pile support steel members.  It was ultimately determined that Swalling was entitled to additional compensation for the additional work necessitated by these differing site conditions.  Additionally, the coating specification was relaxed to allow the applicator the choice of stripe coating, caulking, or removing (grinding) non-structural steel rather than seal welding connections.  These changes were incorporated

---

[5]     Id. (footnote and citation omitted).

[6]     Id. n.1.

[7]     Id.

[8]     Id.

into the Phase I contract documents through
Modification 5 to Phase I.[9]

After Brechan selected a subcontractor to perform Phase
II, Brechan and the USCG asked Coffman to prepare a revised coating
specification – for Phase II – that would incorporate the changes
made in Modification 5.[10] "Coffman issued the final revised coating
specification for Phase II dated November 26, 2002."[11]

Brechan subcontracted the Phase II coating work to
Plaintiff Absolute Environmental Services, Inc. ("Absolute"), who
in-turn subcontracted the coatings application to Imperial
Industrial Coatings ("Imperial"), a coating subcontractor.[12]

> The project specifications required that the
> coatings applicator (Imperial) be certified by
> the manufacturer of the coatings material,
> Special Polymer Coatings U.S.A., Inc. ("SPC").
> Although Imperial's applicators were certified
> by SPC in Kodiak at the start of Phase II, SPC
> revoked Imperial's certification in early
> August, 2003[,] as a result of Imperial's
> failure to comply with SPC's recommendations
> and requirements in conjunction with the
> coating application. Thereafter, Absolute,
> using its own forces, repaired much of the
> coating that Imperial had already applied and

---

[9]    Id. at 4-5 (citation omitted).

[10]    Id. at 5.

[11]    Id.

[12]    The Court notes "the parties [have] agreed to refer to
Absolute's subcontractor as 'Imperial' and reserve the dispute over
the true identity of the contractor to the time of trial."
Docket 229 at 3 n.1.

completed the remainder of the coating application.[13]

Absolute filed suit in 2003, against Imperial and its owner, i.e., Forrest McKinley, "alleging Imperial breached its contract and seeking approximately $1.2 million in damages. Imperial counterclaimed and added claims against Brechan and Safeco."[14]  In February 2005, "Imperial dismissed its claims with prejudice against Brechan, Safeco, and Coffman . . . ."[15]

In May 2005,

> Absolute moved for leave to add Brechan and Safeco back into the case.  At that time Absolute argued: "newly discovered evidence has disclosed that Brechan possessed vital information regarding concealed conditions of the work that it failed to disclose to Plaintiff and Defendants at the time each was estimating and submitting its prices for the subcontract work out of which this lawsuit arises."[16]

Inasmuch as "[n]one of the remaining parties opposed . . . leave was granted.  Brechan brought a third-party complaint

---

[13]   Docket 222 at 5 (internal citation omitted).

[14]   Docket 214 at 4.

[15]   Id.

[16]   Id. (citation omitted).  "As to Safeco, Absolute allege[s] that Safeco [is] the Miller Act payment bond surety and that, as Brechan's surety, Safeco [is] liable for all amounts claimed against Brechan."  Id. (citation omitted).

against Coffman, and Absolute also filed a complaint against Coffman."[17]

## III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.[18]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[19]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[20]  All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[21]  However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed

---

[17]    Id.

[18]    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

[19]    Id. at 323-325.

[20]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-9 (1986).

[21]    Id. at 255.

factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[22]

## IV. DISCUSSION

Below, the Court chronologically addresses each of the nine ripe motions presently before it.

### A. Docket 214 is DENIED.

Before the Court, at Docket 214, are Defendants Brechan and Safeco with a Motion for Summary Judgment Re Disclosure. In essence, Defendants argue, as a matter of law, that Absolute is <u>not</u> entitled to relief for claims based on nondisclosure, either in contract or law.[23] The motion is opposed at Docket 225.

The Court notes:

> The doctrine of "superior knowledge" is primarily a creature of federal common law and frequently an alternative pleading to a differing site condition claim. The claim occasionally is raised in private contracts, and is analogized to misrepresentation, concealment, or deceit. Federal common law decisions often set out a four-part test: A contractor claiming superior knowledge must produce specific evidence that it: (1)

---

[22]    <u>Id.</u> at 248-9.

[23]    Relevant to the Motion for Summary Judgment at Docket 214,

> Absolute's claims against Brechan are based on the legal doctrine of superior knowledge and evidence that Brechan had actual [knowledge] about concealed defective site conditions and failed or declined to disclose that information to Absolute.

Docket 214 at 5 (citation omitted).

undertook to perform without vital knowledge
of a fact that affects performance costs or
direction; (2) the government was aware the
contractor had no knowledge of and had no
reason to obtain such information; (3) any
contract specification supplied mislead the
contractor, or did not put it on notice to
inquire; and (4) the government failed to
provide the relevant information.    Other
federal decisions, perhaps more succinctly,
provide that the owner breaches a duty of
disclosure where the information withheld was
"not only vital to successful performance but,
more importantly, was information of a
character which the Government knew or should
have known the contractor was neither aware of
nor reasonably likely to become so."[24]

Alaska's standard for an owner's duty to disclose is not dissimilar.[25]

Having thoroughly reviewed the relevant pleadings with respect to this matter, and because all evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant,[26] the Court concludes issues of material fact remain as to whether Brechan disclosed certain details known to be "vital" to Absolute's performance.  The Court further concludes that there is sufficient evidence to argue that Brechan may have known that Absolute was unaware of and/or could not obtain the information it

---

[24]   Id. at 25-26 (footnote and internal citations omitted).

[25]   See Morrison-Knudsen Co., Inc. v. State, 519 P.2d 834 (Alaska 1974).

[26]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

thought it needed concerning the prior project, i.e., Phase I. Consequently, it is possible that Absolute may prevail on a claim for failure to disclose "superior knowledge."

Furthermore, inasmuch as it appears, following oral argument, that Brechan may have had actual knowledge of undisclosed information, it is further possible that Absolute may prevail on its tort claim for non-disclosure.

As a result, the Court concludes Brechan and its surety, i.e., Safeco, are not entitled to summary judgment dismissing Absolute's claim for breach of an implied contract duty to disclose superior knowledge and/or for nondisclosure or concealment in tort.

**B.    Docket 216 is GRANTED.**

At Docket 297 is Coffman with a Motion for Partial Summary Judgment Dismissing Claim by Absolute for Business Devastation Damages.  The motion is opposed at Docket 252.

In its November 14, 2005, cross-claim against Coffman, Absolute asserts that damages allegedly attributable to Coffman include "business devastation."[27]  Absolute makes a similar damage claim against Defendant Brechan.[28]

Citing <u>Geolar, Inc. v. Gilbert/Commonwealth Inc. of Michigan</u>, 874 P.2d 937, 947 (Alaska 1994), Coffman argues that "[b]ecause Absolute has no competent witness or other evidence from

---

[27]    Docket 216 at 3.

[28]    <u>Id.</u>

which the jury could reasonably determine any business devastation damages, partial summary judgment dismissing Absolute's business devastation claim should be granted."[29]  Because the Court agrees, Defendants' motion at Docket 216 is hereby **GRANTED**.

**C.    Docket 218 is DENIED without prejudice.**

Before the Court, at Docket 218, are Defendants Brechan and Safeco with a Motion to Exclude Damages Testimony by Michael Lembke and Motion for Summary Judgment.  The motion is opposed at Docket 268.

Pursuant to Federal Rules of Evidence 402, 403, and 702,

> [D]efendants Brechan . . . and Safeco . . . move to exclude the testimony of [Absolute's] retained witness Michael Lembke regarding [P]laintiff's damages, and pursuant to Federal Rule of Civil Procedure 56, [D]efendants move for summary judgment because [P]laintiff [is] unable to meet [its] burden of proving damages, which is an essential element of [its] claims.[30]

"Under Federal Rule of Evidence 702, the trial court must ensure that expert testimony is not only relevant, but reliable."[31]

---

[29]    Id.

[30]    Docket 218 at 1-2 (footnote omitted).

[31]    Id. at 6 (citing United States v. Prime, 431 F.3d 1147, 1152 (9th Cir. 2005)).  Indeed, "[d]istrict courts have a general 'gatekeeping' duty to ensure that proffered expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" U.S. v. Jawara, --- F.3d ----, 2006 WL 2640532, *13 (9th Cir. 2006)(citation omitted).

To guide this evaluation, Rule 702 specifically requires that the proponent of expert testimony demonstrate that: 1) the testimony is based on sufficient facts or data; 2) the testimony is the product of reliable principles and methods; and 3) the witness has applied the principles and methods of reliably to the facts of the case.[32]

Because the determination as to whether Absolute's retained witness, i.e., Michael Lembke, meets Rule 702 standards cannot be made in a vacuum, the Court concludes a pre-trial <u>Daubert</u> hearing regarding the same is necessary and/or appropriate. [33] Consequently, Brechan and Safeco's Motion to Exclude Damages Testimony by Michael Lembke at Docket 218 is hereby **DENIED** without prejudice. And, as a consequence, the Motion for Summary Judgment at Docket 218 is also **DENIED** without prejudice. During the pretrial conference on Thursday, September 21, 2006, the parties shall advise the Court as to how they would like to proceed with respect to this matter.

C. **Docket 219 is GRANTED.**

At Docket 219, Defendants Brechan and Safeco are before the Court with a Motion for Partial Summary Judgment to Dismiss Absolute's "Business Devastation" Claim and Motion in Limine to

---

[32]    <u>Id.</u> at 6-7 (footnote omitted).

[33]    <u>See</u> Fed. R. Civ. P. 702; <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993); and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999).

Exclude Testimony Concerning Alleged Business Devastation. Absolute opposes the motion at Docket 263.

Pursuant to Federal Rules of Evidence 402, 403, and 702, Brechan and Safeco "move to exclude testimony of [Absolute's] retained experts Michael Lembke and Donovan Rulien regarding Absolute's alleged 'business devastation.'"[34]   In particular, Brechan and Safeco argue "[n]either witness has analyzed the claim and neither witness has admissible testimony on the subject."[35] "Brechan also moves for partial summary judgment dismissing any claim by Absolute for business devastation damages, as there is no admissible testimony to support the claim."[36]

Because the Court concludes: (1) Absolute's retained experts have <u>not</u> analyzed its claim for business devastation and have not formed any opinion supporting the claim; and (2) Absolute's post-discovery effort to rely on previously unproduced evidence and previously unexpressed opinions is improper,[37] Brechan and Safeco's Motion at Docket 219 is hereby **GRANTED**.

---

[34]    Docket 219 at 1.

[35]    <u>Id.</u> at 2.

[36]    <u>Id.</u>

[37]    "[O]n June 9, 2006, Brechan also took Absolute's deposition, pursuant to Rule 30(b)(6).   At this deposition, Absolute's president, David Olsen, testified that he had no knowledge concerning Absolute's current value."  Docket 299 at 2 (citation omitted).  "Absolute is bound by that testimony . . . ." <u>Id.</u> at 8.

D.  **Docket 222 is DENIED.**

Also before the Court is Third-Party Defendant Coffman's Motion for Summary Judgment Dismissal for Absolute's Negligence Claims at Docket 222.  The motion is opposed at Docket 272.

In essence, Coffman argues: (1) because no contract exists or existed between Coffman and Absolute, Absolute's negligence claims against Coffman should be dismissed; and/or (2) in the absence of competent expert testimony regarding these issues, Absolute's negligence claims against Coffman must fail.

While the question is a close one, the trend within the courts appears to favor third party liability for design contractors under the facts of this case.  Therefore, Third-Party Defendant Coffman's Motion for Summary Judgment Dismissal for Absolute's Negligence Claims at Docket 222 is hereby **DENIED**.

With regard to the issue of expert testimony on this matter, the Court concludes a pre-trial <u>Daubert</u> hearing regarding the sufficiency of Absolute's proposed expert is required.  As a consequence, during the pretrial conference on Thursday, September 21, 2006, the parties shall advise the Court as to how they would like to proceed with respect to the same.

E.  **Docket 224 is DENIED.**

At Dockets 224 and 320, Third-Party Defendant Coffman moves for summary judgment against Absolute regarding Absolute's negligent and fraudulent misrepresentation claims.  The motion is opposed at Docket 271.

To begin,

> Absolute alleges misrepresentation claims based on its contention that Coffman failed to include in the Phase II specifications a detailed description of the poor condition of the welds encountered during Phase I of the project, on which Absolute was not involved.[38]

Notwithstanding, Coffman argues that:

> Because the weld conditions in Phase II were substantially better than the conditions encountered in Phase I, the alleged misrepresentations do not relate to a material fact, and cannot form the basis for Absolute's negligent and fraudulent misrepresentation claims[39];

whereby, those claims should be dismissed.  In addition, Coffman argues "Absolute's fraudulent misrepresentation claim should be dismissed due to the fact that Absolute can provide no competent evidence that any alleged misrepresentations made by Coffman were intentional."[40]

Absolute opposes and argues,

> Applying governing law regarding the correct burdens of proof for claims of negligent and fraudulent misrepresentation, and assuming that the elements are those generally outlined in Coffman's motion, Coffman's motion must be denied in light of the evidence of record.[41]

The Court agrees.

-------------------

[38]    Docket 224 at 3.

[39]    Id.

[40]    Id.

[41]    Docket 271 at 5 (citation omitted).

Because the "[e]xistence of a fraudulent intent is <u>a question of fact</u>, often proven by circumstantial evidence,"[42] Third-Party Defendant Coffman's Motion for Summary Judgment Against Absolute Regarding Negligent and Fraudulent Misrepresentation Claims at Docket 224 is hereby **DENIED**.

**F.    Docket 225 is GRANTED IN PART and DENIED IN PART.**

At Docket 225 are Defendants Brechan and Safeco with a Motion for Summary Judgment on Absolute's Negligent Design, Differing Site Condition, Constructive Change, Covenant of Good Faith and Fair Dealing, Implied Contract and Equity Claims.  The motion is opposed at Docket 270.

Brechan and Safeco move for summary judgment on seven of Absolute's common law claims.  In particular, Brechan argues that the following seven claims – brought by Absolute – fail as a matter of law: (1) negligent design; (2) differing site conditions; (3) constructive change; (4) implied warranty of good faith and fair dealing; (5) implied contract and quantum meruit; (6) equitable theories; and (7) warranty of plans and specifications.  Brechan and Safeco are partially correct.

**1.**    Absolute's negligent design claim is precluded under Alaska law because Brechan was not a design professional.

---

[42]    <u>Id.</u> (quoting <u>Gabaig v. Gabaig</u>, 717 P.2d 835, 838 (Alaska 1986))(emphasis added).

2.    Absolute's differing site conditions claim fails because there was not an agreement for Absolute to receive additional compensation because of differing site conditions.

3.    Absolute's constructive change claim is merely a restatement of its differing site conditions claim and, therefore, fails for the same reason as No. 2 above.

4.    Absolute's breach of the covenant of good faith and fair dealing claim fails because, <u>at the time the alleged breach occurred</u>, i.e., pre-contract, there was no contract between Absolute and Brechan to perform the work at issue in this dispute.[43]

5.    Absolute's implied contract, quantum meruit, and equities claims remain, however, as part of its overall claim for relief.

6.    Issues of material fact exist also with respect to Absolute's warranty of plans and specifications claim.

_____

[43]    Although not authoritative, the Court notes the following is particularly helpful with respect to this matter:

While an obligation of good faith and fair dealing is implicit in the performance of a contract, even if not stated, this principle presupposes the formation of a contract and is therefore inapplicable during the courtship dance phase of contract formation.

Docket 292 at 9 (<u>quoting</u> <u>Hutchins v. Zoll Medical Corp.</u>, 430 F. Supp. 2d 24 (D. Mass. 2006))(internal quotations omitted).  The Court does not address, however, whether or not there was a breach of the covenant of good faith and fair dealing following the privity of contract.

Consequently, Defendants Brechan and Safeco's Motion for Summary Judgment on Absolute's Negligent Design, Differing Site Condition, Constructive Change, Covenant of Good Faith and Fair Dealing, Implied Contract and Equity Claims at Docket 225 is hereby **GRANTED IN PART** (negligent design, differing site conditions, constructive change, and breach of the covenant of good faith and fair dealing) and **DENIED IN PART** (implied contract, quantum meruit, equities, and warranty of plans and specifications claims).

**G.    Docket 227 is DENIED.**

Before the Court, at Docket 227, is Plaintiff Absolute with a Motion to Dismiss or Cap Certain Claims Alleged by Defendant Imperial.  The Motion is opposed at Docket 249.

Absolute moves for relief under Fed. R. Civ. P. 56 and requests the Court dismiss, or cap, certain counterclaims alleged by Imperial as follows: (1) dismiss claims for interference and/or delays; (2) dismiss claims duplicative of relief included in claim for full payment for work completed; (3) cap labor cost related to gray paint claim; and (4) dismiss claims for speculative profits on Fuel Tanks N12 and N60.[44]

Imperial opposes at Docket 249 and argues: (1) Absolute's interference with Imperial's work is a breach of contract, excusing Imperial's performance, but Imperial does not seek "delay" damages; (2) there are no multiple claims seeking duplicative relief (notwithstanding, an accounting may be necessary to determine who

---

[44]    Docket 227 at 3.

owes whom for what); (3) damages for removal of gray paint should not be capped to blaster costs (Imperial argues Absolute's attempt to cap the $92,029.21 in costs to remove the gray paint to $2,301 in wages paid to the blast operator is based on an incomplete presentation of facts, and the motion should therefore be denied.); and (4) there is a triable issue of fact as to the existence of a contract; whereby, Imperial may be entitled to recover lost profits on a fuel tank project.[45]  The Court agrees.

Consequently, Absolute's Motion to Dismiss or Cap Certain Claims Alleged by Defendant Emerco, Inc. at Docket 227 is hereby **DENIED**.

### H.    **Docket 229 is DENIED.**

Before the Court is Plaintiff Absolute with a Motion for Summary Judgment to Dismiss Claim of Goods Sold and Delivered at Docket 229.  The motion is opposed at Docket 250.

Absolute moves the Court for an order of summary judgment dismissing the "goods sold and delivered" counterclaim of Imperial; or, failing that, an order capping the claim of Imperial for the alleged "sale" of equipment to a maximum amount of $78,959.50.[46] In opposition, Imperial argues that:

> Whatever procedural irregularities might exist, [Absolute's] motion should not succeed for a fundamental reason: It is predicated upon determinations of genuine and material

---

[45]    Docket 249 at 3-6.

[46]    Docket 229 at 3.

issues of disputed fact – an incursion into
matters reserved for the jury.[47]

Because factual disputes are "apparent in [Absolute's] Motion

. . . ,"[48] the Court agrees.

Indeed,

The lawyer's legal brief posits that the
subject equipment was retained by the moving
party because it needed to complete the
construction work. The sworn testimony in the
declaration is far different – stating that
the moving party "retained the equipment as
security for losses [it] foresaw . . . ."[49]

Moreover, there is a genuine issue of fact as to the amount of

damages sought. To-wit: Imperial estimates its damages at $518,320

in the counterclaim, while Absolute argues the damages should be

capped at $79,859.[50] The competing evidence must be weighed by the

jury, not the Court, on a motion for summary judgment.[51]

As a consequence, Absolute's Motion for Summary Judgment

to Dismiss Claim of Goods Sold and Delivered at Docket 229 is

hereby **DENIED**.

---

[47]    Docket 250 at 2.

[48]    Id. at 3.

[49]    Id. (citation omitted).

[50]    Id. at 6.

[51]    Moreover, and perhaps most troubling, there appears to be
a genuine issue of material fact as to whom actually owns the
equipment at issue.

**V.    CONCLUSION**

Based upon the aforesaid, and for additional reasons more carefully articulated in the parties' relevant pleadings, **Docket 214** is **DENIED**, **Docket 216** is **GRANTED**, **Docket 218** is **DENIED** without prejudice, **Docket 219** is **GRANTED**, **Docket 222** is **DENIED**, **Docket 224** is **DENIED**, **Docket 225** is **GRANTED IN PART** and **DENIED IN PART**, **Docket 227** is **DENIED**, and **Docket 229** is **DENIED**.

ENTERED this 19th day of September, 2006.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE