**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

ABSOLUTE ENVIRONMENTAL )
SERVICES, INC., AN ALASKA )
CORPORATION, )
            PLAINTIFF, )
    VS. ) NO. A03-0199CV (RRB)
FORREST J. MCKINLEY, ET AL., )
            DEFENDANTS. )

DEPOSITION OF MARK S. SCHILLING

FEBRUARY 14, 2005

REPORTED BY:
SHERYL WILLIAMS
CSR NO. 7453

*Seijas Court Reporters*

A Professional Corporation
1260 Huntington Drive, Suite 107, South Pasadena, California 91030
(626) 799-0810 ~ Fax (626) 799-5565

Exhibit D
Page 1 of 12

1   A.   WHAT WOULD YOU HAVE ME DO?

2   Q.   I'D LIKE YOU TO LOOK AT PAGE 1, PARAGRAPH ONE AND
3   IDENTIFY THOSE PROPOSITIONS WHICH ARE EXPRESSIONS OF YOUR
4   OPINIONS AS OPPOSED TO STATEMENTS OF FACTS THAT YOU
5   OBSERVED.

6   A.   THOSE ARE FACTUAL OBSERVATIONS.

7   Q.   SAME QUESTION WITH RESPECT TO THE SECOND
8   PARAGRAPH.

9   A.   THOSE ARE ALL FACTUAL OBSERVATIONS.

10  Q.   THIRD PARAGRAPH.

11  A.   THOSE ARE FACTUAL OBSERVATIONS WITH POSSIBLE
12  EXCEPTION OF THE SENTENCE, "AS NOTED IN THE OCTOBER 21,
13  2003 REPORT, THE SPECIFICATION DID NOT EMPOWER THE
14  INSPECTOR TO DEMAND THAT THE COATING TEST HOLIDAY FREE."
15  THAT'S NOT A FACTUAL OBSERVATION. THAT'S MY OPINION OR
16  INTERPRETATION OF PROJECT DOCUMENTS.

17  Q.   FOURTH PARAGRAPH.

18  A.   I'M NOT DONE WITH THIS ONE YET. JUST PARDON ME.
19  "MANY OF THE REPAIRS WERE DONE IN HASTE." OBVIOUSLY THAT'S
20  NOT A FACTUAL OBSERVATION BECAUSE I COULD NOT OBSERVE THE
21  TIME IT TOOK. WHAT I BELIEVE I SAW WAS WORK THAT WAS
22  PERHAPS SLOPPILY, QUICKLY DONE, BUT I DID NOT ACTUALLY SEE
23  THE HASTE.

24  Q.   WHAT I'M GOING TO DO IS GO THROUGH THIS IN A
25  TWO-PHASE PROCESS. FIRST IS TO ASK YOU TO IDENTIFY THE

1  OPINIONS. THEN I'D LIKE TO COME BACK AND DISCUSS THE BASIS
2  FOR YOUR OPINIONS. AND I THINK IF WE DID IT THAT WAY, IT
3  WOULD MAKE IT A MORE EXPEDITIOUS DEPOSITION TODAY. FOR THE
4  TIME BEING NOW MY QUESTION IS ONLY PLEASE IDENTIFY THE
5  OPINIONS IN THE SUCCESSIVE PARAGRAPHS.
6      A.  OKAY. "I DON'T BELIEVE THAT I'VE EVER BEEN ON A
7  JOB WHERE I'VE SEEN THIS MANY INSPECTION MARKINGS NOR HAVE
8  I SEEN SO MANY THAT WERE SIMPLY PAINTED OVER." THAT'S AN
9  OPINION.
10         THE LAST SENTENCE IN THE FOURTH PARAGRAPH COULD
11 BE CALLED AN OPINION. I WOULD REFER TO IT AS A SURMISE.
12 "ENVIRONMENTAL CONTROL INSIDE THE CONTAINMENT AREAS LOOKS
13 TO HAVE BEEN GOOD THROUGHOUT THE JOB" BECAUSE I FOUND
14 LITTLE EVIDENCE OF WATER DAMAGE DURING COATING APPLICATION.
15     Q.  FIFTH PARAGRAPH.
16     A.  FIFTH PARAGRAPH DOESN'T REALLY HAVE ANY CONTENT
17 EXCEPT FOR THE SENTENCE, "THE RESULTS NEED SOME
18 INTERPRETATION." THAT'S OBVIOUSLY MY OPINION.
19     Q.  THE SIXTH PARAGRAPH.
20     A.  UNDER THE SUBHEADING "ADHESION TESTING," THE LAST
21 TWO SENTENCES SHOULD BE CLASSIFIED AS OPINION.
22     Q.  BEGINNING WITH "PROJECT MANAGEMENT"?
23     A.  "PROJECT MANAGEMENT DECIDED THAT THE COATING
24 NEEDED TO TEST OUT AT A MINIMUM OF 1,900 PSI."
25 SPECIFICALLY I DO NOT KNOW HOW THAT WAS AGREED TO WHETHER

53

SEIJAS COURT REPORTERS



Exhibit 2
Page 3 of 12

```
 1                UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF ALASKA
 3
 4   ABSOLUTE ENVIRONMENTAL      )
     SERVICES, INC., AN ALASKAN  )
 5   CORPORATION,                )
                                 )
 6              PLAINTIFF,       )
                                 )
 7        VS.                    )  NO. A-03-0199
                                 )
 8   FORREST J. MCKINLEY AND     )
     "JANE DOE" MCKINLEY, ETC.,  )
 9   ET AL.,                     )
                                 )
10              DEFENDANTS.      )
     _____)
11                               )
     AND RELATED CROSS-ACTIONS.  )
12   _____)
13
14
15            THE DEPOSITION OF MARK S. SCHILLING, TAKEN ON
16      BEHALF OF THE DEFENDANTS, AT 725 SOUTH FIGUEROA
17      STREET, SUITE 3200, LOS ANGELES, CALIFORNIA, AT 9:05
18      A.M., MONDAY, JUNE 5, 2006, BEFORE SHERYL WILLIAMS,
19      CERTIFIED SHORTHAND REPORTER NO. 7453, PURSUANT TO
20      NOTICE.
21
22
23
24
25
```

1

```
 1        A.   I BELIEVE I AT ONE TIME OR ANOTHER USED A SHORE
 2   BAROMETER TO CHECK HARDNESS IN A FEW PLACES.  THAT WAS VERY
 3   LIMITED.  HAD NO REASON TO BELIEVE THERE WAS A PROBLEM.
 4   DON'T EVEN KNOW IF I RECORDED IT.  IF I DID, THAT WOULD
 5   HAVE BEEN IN MY 2003 REPORT.  THERE MIGHT BE SOME DATA IN
 6   THERE.
 7        MR. KREGER:  I CAN BARELY HEAR YOU, MR. SCHILLING.
 8        MR. STOETZER:  HE'LL SPEAK UP.
 9        MR. KREGER:  THANK YOU.
10        Q.   BY MR. STOETZER:  I'VE BEEN ASKING YOU THIS LAST
11   SERIES OF QUESTIONS FOLLOWING A COMMENT THAT YOU MADE THAT
12   YOU COULD NOT UNDERSTAND WHY THERE WERE SUCH EXTENSIVE
13   PAINT MARKINGS OF AREAS NEEDING FURTHER ATTENTION, BUT IF I
14   UNDERSTAND YOUR TESTIMONY, THIS WAS BASED LARGELY ON VISUAL
15   INSPECTION.  YOU DID NO HIGH VOLTAGE INSPECTION.  YOU MAY
16   HAVE MADE KNIFE CUTS IN A COUPLE OF AREAS INVOLVING ONLY A
17   COUPLE OF SQUARE INCHES.  THAT YOU DIDN'T DO MUCH LFT.  DO
18   YOU THINK YOU DID ENOUGH TO SUPPORT AN OPINION ABOUT
19   WHETHER OR NOT EXTENSIVE MARKINGS SHOULD HAVE BEEN MADE ON
20   AREAS TO BE REPAIRED?
21        THE WITNESS:  PARDON ME.  COULD YOU JUST READ BACK THE
22   LAST TWO SENTENCES.
23        (THE QUESTION WAS READ.)
24        THE WITNESS:  THAT'S WHERE I GOT CONFUSED.  THE DFTS
25   AND THE KNIFE CUTS HAVE ALMOST NOTHING TO DO WITH THE
```


Exhibit D
Page 5 of 12

```
 1   AMOUNT OF MARKINGS THAT WERE MADE.  THAT'S SOMETHING THAT
 2   IS READILY VISIBLE.  AND I BELIEVE I TESTIFIED TO THAT THAT
 3   WHEN DOING SOMETHING LIKE HOLIDAY TESTING IN ACCORDANCE
 4   WITH NACE RP0 188, WHICH IS WHAT THE SPECIFICATION
 5   REFERENCES, THERE'S A PIECE OF THAT NACE RECOMMENDED
 6   PRACTICE THAT SPEAKS TO HOW HOLIDAY INDICATIONS SHOULD BE
 7   MARKED.  THEY SHOULD BE MARKED WITH SOMETHING THAT'S
 8   COMPATIBLE OR SOMETHING THAT IS EASILY REMOVED.  AND MY
 9   PRIOR TESTIMONY IS WHEN YOU HAVE A FEW PINHOLES AND YOU
10   TAKE A CAN OF SPRAY PAINT, YOU'VE GOT A VERY SMALL PROBLEM
11   BUT A VERY LARGE MARKER.  AND SO THE ANSWER TO YOUR
12   QUESTION IS THE KNIFE CUTS AND THE DFTS AND HOLIDAY TESTING
13   HAVE NOTHING TO DO WITH BEING ABLE TO SEE MARKER PAINT ON
14   THE JOB.  A LOT OF MARKER PAINT FOR SMALL PROBLEMS.
15         MR. STOETZER:  I'LL MOVE TO STRIKE AS NONRESPONSIVE.
16         Q.  THE QUESTION THAT I ASKED IS WHETHER OR NOT YOU
17   HAD DONE SUFFICIENT TESTING -- THIS IS NOW AFTER THE FACT
18   OF COURSE -- TO SUPPORT AN OPINION THAT THERE WAS EXTENSIVE
19   MARKING OF DEFECTS?
20         A.  AND THE ANSWER IS AGAIN SEEING THE MARKING FOR
21   DEFECTS IS NOT DIRECTLY CONNECTED TO DOING THE TESTING OR
22   THE TESTING THAT YOU ITEMIZED -- KNIFE CUTS, ADHESION
23   TESTING AND HIGH VOLTAGE TESTING.  IT'S VISUAL.  IT'S NOT
24   TESTING.  IT'S VISUAL, AND MY PHOTOGRAPHS SHOW THAT.
25         Q.  SO YOU BELIEVE THAT AN INSPECTION CAN BE DONE ON
```


Exhibit D
Page 6 of 12

1  A VISUAL BASIS ONLY?
2       A.  NO, I DID NOT SAY THAT. I SAID THAT ONE CAN SEE
3  THE AMOUNT OF VISUAL MARKINGS. TESTING IS NOT REQUIRED,
4  NOT MUCH TESTING IS REQUIRED TO SEE HOW SOMEONE TOOK A
5  SPRAY CAN OF ORANGE FLUORESCENT PAINT AND DID THIS
6  (INDICATING). I DON'T NEED TO TEST TO SEE THAT. IT'S
7  MANIFEST IN THE PHOTOS.
8       Q.  I DON'T DOUBT THAT YOU CAN SEE THE SPRAY PAINT.
9  I'M WONDERING ABOUT HOW YOU KNOW WHAT WAS RIGHT AND WRONG
10 WITH THE COATING WITHIN THE AREA THAT WAS SPRAY PAINTED IF
11 YOU DID NOTHING MORE MOST OF THE TIME THAN SIMPLY VISUALLY
12 OBSERVE IT?
13      A.  I THINK IF YOU LOOK AT MY PHOTOS, YOU WILL
14 UNDERSTAND MY COMMENT.
15      Q.  AND ARE YOU REFERRING AS WELL TO PHOTOS IN
16 EXHIBIT 24, THE FEBRUARY 12 PHOTO ASSESSMENT?
17      A.  YES. AS WELL AS THE REPORT FROM 2004 THAT WAS
18 THE FIRST CONDITION ASSESSMENT.
19      Q.  CAN YOU THUMB THROUGH EXHIBIT 24 FOR ME. THIS
20 WAS PRODUCED TO ME IN BLACK AND WHITE SO THAT MAY PRESENT
21 SOME DILEMMAS. MAYBE YOU HAVE A COLOR COPY OF YOUR REPORT.
22      A.  IT WILL PRESENT SOME DILEMMAS BECAUSE IT'S THE
23 COLOR THAT'S IMPORTANT.
24      Q.  TO SAVE TIME, DO YOU HAVE A COLOR COPY OF YOUR
25 REPORT?


Exhibit D
Page 7 of 12

1    A.    I HAVE IT DIGITALLY.

2    MR. STOETZER:  COUNSEL, DO YOU HAVE A COLOR COPY?

3    MR. BAERG:  NO.

4    THE WITNESS:  IN THIS PHOTO, FOR EXAMPLE, YOU CAN SEE
5    THAT THERE IS ORANGE PAINT IN HERE.

6    Q.    BY MR. STOETZER:  DO YOU HAVE THAT DISC HANDY?

7    A.    YES.

8    Q.    THIS COULD TAKE A BUNCH OF TIME.  MAYBE YOU HAVE
9    A COLOR COPY IN ONE OF YOUR NOTEBOOKS?

10    A.    NO.  THIS IS THE REPORT FROM 2004.  YOU'RE
11    LOOKING AT THE ONE FROM --

12    Q.    I WANT TO DIRECT YOUR ATTENTION TO THE CURRENT
13    REPORT.  SO I'M JUST RANDOMLY FLIPPING HERE.  I'M NOT
14    SEEING A LOT OF RED PAINT ON WHAT I'VE SCROLLED THROUGH SO
15    FAR.  LET ME COME AROUND TO WHERE YOU ARE.  SEE IF WE CAN
16    GET ON THE SAME PAGE LITERALLY AND FIGURATIVELY.

17    MR. KREGER:  IT WOULD BE HELPFUL IF YOU COULD CALL OUT
18    BY PHOTO NUMBER TOO.

19    MR. STOETZER:  WE'LL TRY TO DO THAT.  RIGHT NOW WE'RE
20    JUST TRYING TO GET ORIENTED.

21    Q.    I TAKE IT IN 2-05 IT WOULD BE TOTALLY DIFFERENT,
22    NEW PHOTOS?

23    A.    YES.

24    I BELIEVE THAT THIS PHOTO IS THIS TEST AREA.

25    Q.    AT A LATER TIME?


Exhibit D
Page 8 of 12

```
 1      A.   NEW PHOTO, SAME LOCATION.
 2      Q.   JUST TO GET ORIENTED HERE, WE'RE LOOKING AT PHOTO
 3 NO. 14 TO THE FEBRUARY 2005 REPORT.  FOR EASE I'M GOING TO
 4 JUST REFER TO THE COATING ASSESSMENT REPORT AND PHOTO
 5 SURVEY AS THE 2005 REPORT OR THE '05 REPORT.
 6           SO AT THE MOMENT JUST TO GET ORIENTED, WE'RE
 7 LOOKING AT PHOTO NUMBER -- ACTUALLY, THE LEGEND SAYS
 8 "PHOTOS 14 AND 15," AND THIS IS A HORIZONTAL SQUARED
 9 TUBULAR BETWEEN PILES 14 AND 15K.  THIS AREA LOOKS THE SAME
10 AS IT DID DURING THE JULY 2004 SITE INSPECTION.
11           THERE IS SOME REDNESS VISIBLE.  DO YOU SEE THAT
12 ON BOTH PHOTOS?
13      A.   ORANGE.
14      Q.   ORANGE.  WHAT DO YOU BELIEVE THAT IS?
15      A.   ORANGE SPRAY PAINT.
16      Q.   AND IS THAT SPRAY PAINT UNDER COATING OR OVER
17 COATING?
18      A.   CLEARLY ON TOP OF COATING AND UNDER COATING.
19      Q.   SO THIS WOULD BE AN EXAMPLE WHERE THE APPLICATOR
20 HAS SPRAYED OVER RED PAINT?
21      A.   ORANGE PAINT.
22      Q.   ORANGE PAINT.  EXCUSE ME.
23      A.   I BELIEVE ORIENTING MYSELF ON THIS PHOTO, A SWATH
24 OF ORANGE PAINT WAS MADE AROUND THE TUBULAR WITH THE
25 INSTRUCTIONS OF COATING FROM THE STRIPE OVER.
```

```
 1      Q.   TO THE LEFT?
 2      A.   TO ADD EXTRA THICKNESS.  THAT'S WHAT YOU'RE
 3 SEEING HERE.  IT LOOKS LIKE A FIRST COAT, AND THIS IS THE
 4 REPAIR COAT THAT WAS SO DESIGNATED BY THE ORANGE PAINT.
 5      Q.   COMPARING THAT TO THE EARLIER REPORT SINCE
 6 THERE'S A KNIFE STUCK IN WHAT APPEARS TO BE THE HOLE IN THE
 7 COATING IN THE '05 REPORT, IT WOULD APPEAR THAT A REPAIR
 8 WAS REQUIRED; CORRECT?
 9      A.   I'M NOT SURE I UNDERSTOOD YOUR POINT.  WHAT I WAS
10 SAYING IS THAT IT APPEARS TO ME THAT WHAT WAS DONE HERE IS
11 A SWATH OF ORANGE PAINT AROUND THE TUBULAR DESIGNATING THAT
12 THIS AREA SHOULD BE FIXED FOR SOME REASON.  THIS LOOKS TO
13 HAVE BEEN ORIGINAL COATING THAT WAS NOT REPAIRED.  THIS
14 LOOKS TO BE THE REPAIR COAT WITH THAT SPOT BEING OBVIOUSLY
15 OVER ORANGE PAINT.  AS YOU CAN SEE, I SCRAPED IT HERE.  THE
16 COATING WAS LOOSE.  KNOCKED OFF SOME REPAIR.  THIS LOOKS
17 LIKE ORIGINAL COATING.  THAT'S THE TROUBLE WITH THE PHOTO.
18 YOU DON'T GET THE IDEA THAT THIS DESIGNATED REPAIR I
19 BELIEVE FROM THIS POINT OVER TO THE END OF THE SQUARED
20 TUBING.
21      Q.   JUST FOR THE RECORD I'M GOING TO SUMMARIZE A
22 LITTLE BIT OF WHAT YOU SAID.  THERE IS IN THE CENTER OF
23 THIS PHOTO WHAT APPEARS TO BE AN ORANGE SHADOW THAT
24 ACCORDING TO THE WITNESS IS A DEMARCATION LINE THAT
25 INDICATES TO HIM THAT TO THE LEFT OF THAT LINE THERE WAS A
```

```
 1   CONTINUOUS REPAIR MADE, TO THE RIGHT OF THE LINE ORIGINAL
 2   COATING WAS LEFT INTACT.
 3        MR. KREGER:  ARE YOU ON 16 NOW INSTEAD OF 14 AND 15?
 4        MR. STOETZER:  NO.
 5        MR. KREGER:  ARE YOU ON 15 OR 14?
 6        MR. STOETZER:  IF SAYS 14 AND 15.  LET ME SCROLL UP.
 7   YOU'VE GOT TO BEAR WITH ME.  I'M ON A LAP TOP HERE.
 8        Q.   MAYBE THE WITNESS CAN HELP ME.  IF THERE ARE TWO
 9   PHOTOS HERE, IS THAT 14 AND THIS IS 15?  I BELIEVE WE'VE
10   BEEN TALKING ABOUT NO. 15.
11        A.   THIS IS A SEPARATE PHOTO.  THIS IS FROM A FURTHER
12   DISTANCE.  SEE THE STRIPE?  SEE THE AREA THAT'S MISSING?
13        Q.   YES.
14        A.   SEE THE SCRATCH FROM THE KNIFE CUT?  THIS IS FROM
15   A DISTANCE.  THIS IS FROM CLOSER UP.  IT'S THE SAME SPOT
16   JUST --
17        Q.   SAME SPOT, TWO PHOTOS.  THE DISTANCE PHOTO IS 14.
18   THE CLOSE UP IS 15.  THAT COMPARES TO PHOTOS 22 AND 23 IN
19   THE EARLIER REPORT.
20             SO WE GOT INTO THIS EXERCISE BECAUSE I ASKED YOU
21   IF YOU COULD IDENTIFY IN EXHIBIT 24, YOUR CURRENT SURVEY
22   PHOTOGRAPH REPORT, WHERE YOU THINK THERE WAS EXCESSIVE RED
23   PAINT.  EXCUSE ME.  ORANGE.  IF I EVER SAY RED, I MEAN
24   ORANGE.  IS THERE A CONVENIENT WAY TO DO THAT OR IS IT A
25   FACT THAT THERE WAS PROBABLY LESS ORANGE PAINT TO BE
```

```
 1   OBSERVED IN 2-05 THAN YOU MIGHT HAVE OBSERVED IN 2005 SAY?
 2      A.   I WOULD SAY IN 2005 MY COMMENT IS THAT IF YOU GO
 3   BACK TO THE EARLIER PORTIONS OF THE JOB, WHICH IS WHAT
 4   WE'RE LOOKING AT NOW, THIS WAS ORANGE FLUORESCENT SPRAY
 5   PAINT.  BACK IN THIS TIME AND IN THIS PORTION OF THE JOB,
 6   AREAS A AND B, ORANGE AND GREEN FLUORESCENT SPRAY PAINT.
 7   MOVING INTO THIS REPORT INTO C, D AND E, YOU GET MORE OF
 8   WHAT WE SAW EARLIER THAT WE DISCUSSED, BLACK MARKER AND
 9   BLUE MARKER.  SO YOU HAVE TWO DIFFERENT, AT LEAST TWO
10   DIFFERENT KINDS OF SPRAY PAINT, AND THEN YOU HAVE AT LEAST
11   THREE DIFFERENT COLORS OF MARKER BECAUSE THERE'S SOME RED.
12      Q.   WHO USED THE VARIOUS COLORS IF YOU KNOW?
13      A.   YOU ASKED ME THAT EARLIER, AND MY ANSWER WAS I DO
14   NOT KNOW.
15      Q.   I THINK WE'VE DONE ENOUGH FOR THE MOMENT ON
16   COLOR.  LET'S JUST TRY TO GO TO THE REPORT ITSELF.  FEEL
17   FREE TO REFER TO THE COMPUTER COPY IF THAT WILL BE HELPFUL.
18   I WANT TO LEARN MORE ABOUT THE OPINIONS THAT YOU HAVE THAT
19   YOU'LL BE EXPRESSING AT TRIAL.
20           LET'S LOOK AT YOUR NARRATIVE FIRST IN 25.  THE
21   FIRST PARAGRAPH WE'VE ALREADY DISCUSSED.
22           IN THE SECOND PARAGRAPH YOU STATE THAT THIS WAS A
23   VISUAL ASSESSMENT ONLY AS THE COAST GUARD DISALLOWED
24   DESTRUCTIVE TESTING AND COLLECTION OF COATING SAMPLES.  HAD
25   YOU BEEN ALLOWED FREE REIGN, WHAT WOULD YOU HAVE DONE BY
```