Terry R. Marston, *pro hac vice*, terry@mhf-law.com
Jami K. Elison, *pro hac vice*, jamie@mhf-law.com
Jesse P. Elison, *pro hac vice*, jessee@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>Plaintiff,<br>vs.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.<br><br>Defendants. | Case No.: A03-0199CV (RRB)<br><br>**ABSOLUTE'S OPPOSITION TO MOTIONS IN LIMINE OF COFFMAN ENGINEERING** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>Counterclaimant/Third-party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, et al.,<br><br>Cross-defendants/Third-party Defendants. | |

ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION IN LIMINE TO RESTRICT DAVID
OLSON'S TESTIMONY
Case No. A03-0199CV (RRB)-- 1

| | |
|---|---|
| THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | ) ) ) |
| Defendants. | ) ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Counterclaim Plaintiff, | ) |
| vs. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Counterclaim Defendant. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) |
| Third-Party Plaintiff, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Plaintiff/Cross-claimant, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) ) |

ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION IN LIMINE TO RESTRICT DAVID OLSON'S TESTIMONY
Case No. A03-0199CV (RRB)-- 2

## I. RELIEF REQUESTED

Plaintiff Absolute Environmental Services, Inc. ("AESI") requests this Court deny Coffman's motions *in limine*.

## II. OPPOSITION

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable than it would be without the evidence." FRE 401.

Circumstantial evidence is admissible and, as this Court has already noted, "[e]xistence of a fraudulent intent is a question of fact, often proved by circumstantial evidence." Order Regarding Pending Motions, p.15 (Docket No. 339).

"Evidence of contemporaneous cashing of stolen checks was properly admitted as probative of appellant's intent and knowledge." *United States v. Rosenstein*, 434 F.2d 640, 641 (2nd Cir. 1970) (contemporaneous acts were not charged in the indictment but were properly admitted to show intent).

"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." FRE 406.

FRE 404(b) expressly provides that evidence of other acts is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident." Moreover:

> Evidence is not 'other acts' evidence within the scope of Rule 404(b) if it is inextricably intertwined with the crime charged. [] Evidence is 'inextricably intertwined' if it 'constitutes a part of the transaction that serves as the basis for the

criminal charge' or 'was necessary to ... permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.

*United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir. 2002) (citations omitted).

### 1. Evidence from Phase I of the Kodiak Cargo Wharf Project.

As this Court is aware from having studied almost a dozen motions for summary judgment, evidence from Phase I of the Cargo Wharf Project is "inextricably intertwined" with the claims at issue in this lawsuit.

> Evidence that is 'inextricably intertwined' with the evidence used to prove a crime charged is not 'extrinsic' under the FRCP Rule 404(b) ... Such evidence is considered 'intrinsic' and is admissible 'so that the jury may evaluate all the circumstances under which the defendant acted.

*See United States v. Royal*, 972 F.2d 643, 647 (5th Cir. 1992).

During Phase I, Brechan obtained superior knowledge of the actual wharf conditions and also the obstacles and expense involved in meeting a holiday-free acceptance criteria. Absolute pursues claims for violation of the doctrine of superior knowledge and this Court has already ruled that there is sufficient evidence to proceed to trial on that claim. Order, Docket No. 339. Absolute's fraud claims arise because Brechan and Coffman misrepresented facts and knowledge they had obtained during Phase I. Again, this Court has already ruled that there is sufficient evidence to proceed to trial on those claims as well. *Id.* Based on the new knowledge it had obtained, the Phase I subcontractor, Swalling, provided a price for continuing its work into Phase II work. The projected price per square foot is almost identical to the actual costs incurred by Absolute during Phase II. *See* Declaration of Michael K. Lembke in Support of Opposition to Brrechan's Motion to Exclude, ¶5(c) (Docket No. 269). The conditions encountered and lessons learned on Phase I are probative of what Brechan and Coffman knew and expected for Phase II, the immediately adjacent portion of the same wharf.

Without presenting evidence to support the contention, Brechan and Coffman argue that Phase II was substantially different than Phase I; hence, evidence from Phase I should be excluded. If that was ever true, then there was never a reason to terminate Swalling, the experienced subcontractor that had already mobilized to the site. The only reason that Absolute was brought onto this Project was because Brechan and Coffman foresaw that the Phase I problems would continue into Phase II and they needed a "new guy" to absorb the cost of those problems. *See* Declaration of David Olson in Support of Absolute's Oppositions to Summary Judgment Motions, ¶19, Docket No. 288. Evidence at trial will show that Phase I conditions also existed on Phase II. *Id.* This Court must deny Coffman's motion to exclude evidence from Phase I.[1]

## 2. Expert opinions of Hailey, Schilling or Vernon.

Without pointing to any specifics, Coffman requests exclusion of expert opinions which "go beyond opinions stated in respective expert reports" or "are based on documents or other factual information which was within the scope of initial disclosures." Coffman's Motion, p.5. Both requests are overbroad, not ripe, and must be denied. FRE 703 expressly authorizes an expert to present an opinion based on facts or data presented for the first time at trial.

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert <u>at or before the hearing</u>.

(emphasis added). To rule otherwise would create an injustice because an opposing party could present new facts or data while simultaneously preventing the expert from expressing an opinion.

---

[1] Because the issue are similar, Absolute incorporates by reference its arguments contained in Oppositions to Brechan's motions in limine regarding the Coast Guard and "loss exposure."

ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION IN LIMINE TO RESTRICT DAVID OLSON'S TESTIMONY
Case No. A03-0199CV (RRB)-- 5

Coffman has identified no grounds to argue that an abuse occurred in the discovery process and its motion to exclude testimony is clearly not ripe. Our federal courts allow adjustments to opinion testimony when the underlying conclusions remain the same, when the theory has not changed:

> The appellants argue that they were surprised by the change in the theory and tha the district judge erred in refusing to exclude the testimony of the experts at trial.
> ***
> [The expert] agreed that the words "steering mechanism" were imprecise but insisted that his conclusions remained the same.
>   We believe that any discrepancy in the theory is largely semantic, and accordingly conclude that the district judge did not abuse his discretion in admitting the testimony.

*Robinson v. Bump*, 894 F.2d 758, 763-64 (5th Cir. 1990). To artificially restrict opinion testimony to a rote recounting of prior testimony is unrealistic because the reality is that as long as an opinion was fairly disclosed and remains within the scope of the disclosed opinion, opinions will often adjust or incorporate additional information as time passes.

> It is not unusual for experts to make change in their opinions and revise their analyses and reports frequently in preparation for, and sometimes even during a trial.

*Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F.3d 15, 22 (1st Cir. 1994). Coffman's motion should be denied.

### 3. Expert opinions of Lembke or Rulien.

Coffman repeats the same argument with respect to Lembke and Rulien. Absolute incorporates the response provided immediately above.

### 4. Imperial evidence regarding damages.

To the extent that Coffman requests that Imperial should not be allowed to "make arguments regarding damage theories beyond those which it previously disclosed," (Coffman's Motion, p. 6), Absolute joins in the motion. To the extent that Coffman requests that Imperial be prevented from presenting new arguments about damages in terms of dollars, Absolute joins the

motion. To the extent that Coffman requests that Imperial should not be allowed to testify about unanticipated defects or missing welds, that request must be denied because that issue is probative of other issues in this lawsuit. If Imperial has first hand knowledge about unanticipated defects or missing welds, they should <u>not</u> be prevented from providing that knowledge at trial, regardless of what claims Imperial is itself pursuing.

**5. Costs or attorney fees incurred in litigation.**

Absolute has filed a motion for reconsideration of the Court's order dismissing Absolute's business devastation claims. Evidence of costs and litigation and fees incurred are relevant components of a business devastation claim. However, subject to the motion for reconsideration, and with one additional proviso, Absolute does not intend to present evidence of costs or attorney fees incurred in litigation to the jury. Provided that fees as allowed under contract provisions (there is no contract entitlement as between Absolute and the moving party in this motion, Coffman) will be determined by this Court after entry of verdict, and at that time no party will be deemed to have waived its right to equitable indemnification of attorney fees for having not presented evidence of costs and fees during the trial itself, Absolute otherwise has no objection to keeping costs and attorney fees incurred in litigation away from the jury.

**6. Financial dealings of Dave Olson.**

The financial dealings of Dave Olson are relevant to the business devastation claim that will be subject to a pending motion for reconsideration, and would also be relevant during the post-trial quantification proceeding in the event a punitive damage award is allowed by the jury. However, subject to the claim for business devastation, and without waiving any right to present such evidence at a post-trial proceeding, Absolute does not intend to introduce evidence of the financial dealings of individuals to the jury during the trial.

**7. Hearsay, except as permitted by FRE 803 or 804.**

Coffman candidly acknowledges that given the claims at issue "it may be difficult for the Court to issue a blanket ruling prior to trial" on broadly presented requests for exclusion. Coffman's Motion in Limine, p.8. Coffman argues in the abstract that Dave Olson may not present testimony based on hearsay, testimony that is not based on his personal knowledge. This argument is substantially similar to the motion presented by Brechan (Docket No. 322), Brechan's Motion in Limine Regarding David Olson's Testimony. In the interest of economy:

> This opposition expressly incorporates by reference the arguments and evidence contained, and referenced, in the Opposition Brief (Docket No. 362) to Brechan's Motion in Limine Regarding David Olson's Testimony.

Coffman identifies no particular testimony it seeks to exclude and requests nothing more than a ruling that the evidence rules are, in fact, the evidence rules. Coffman has not articulated any enforceable order that would be of any use at trial and the motion should be denied. Objections can be handled with specific motions in limine, with objections at trial, or through voir dire of witnesses during trial.

**8. 25-year life expectancy, of the wharf or the coating product?**

Coffman seeks to exclude evidence on what might appear at first to be an insignificant point: Whether the requirement of a 25-year service life in Brechan's contract with the Coast Guard for the Cargo Wharf Maintenance project ("Task Order 0007") refers to the service life of the *coating* to be applied to the piles, or to the service life of the *piles* themselves. However, the issue is more significant than would be immediately apparent (a conclusion supported by the fact of this motion to exclude evidence of it).

Evidence supports a finding that the coating was to last for 25 years. *See* Ex. A to accompanying Elison Decl. (email from Coast Guard's Project Engineer to Brechan during the design of the project).[2] If the jury finds that the coating was required to last 25 years and that Coffman changed the acceptance standard by issuing "Addendum One"[3] (imposing a stringent, holiday-free, acceptance standard) shortly after the Project Engineer's email to Brechan, then a jury could reasonably conclude that it was Coffman's professional opinion that a holiday-free acceptance standard was necessary to achieve the 25-year service life required. This is a significant issue for trial because Coffman will likely attempt to argue that Absolute performed too much work in attempting to meet the acceptance criteria for the coatings when all that was really necessary was a coating that would maintain a 25 year life for the piles. In other words, despite all the time, effort and expense that went into testing and accepting the coating product, according to Coffman all that was actually required was a 25-year life expectancy for the piles.

The evidence related to the 25 year life expectancy will also show that Coffman, later in Phase I, demonstrated its willingness to dispense with the holiday-free standard when an unexpected proliferation of holidays at welded connections exposed its client Brechan to major financial losses if required to meet the standard. *See* Ex. B to Elison Decl. Evidence will further show that Coffman even went so far as to expressly state its willingness to take direction from Brechan regarding what "professional" opinions it would offer to the Coast Guard. *See* Ex. C to Elison Decl. Bear in mind that Brechan had <u>no</u> corrosion engineering qualifications and was revising Coffman's draft recommendations solely to protect its own financial interests. Brechan's CFO, Bill Oliver, had been provided with a draft of a Coffman Memorandum discussing the

---

[2] "The *coating* should last 25 years with reasonable touch-up repairs." Exhibit D to Elison Decl. (emphasis added).
[3] "Addendum 1," Exhibit E to Elison Decl. (emphasis added).

holiday problems encountered over welded areas on Phase I. The memorandum was being prepared in response to Brechan's instruction to Coffman to "paint a clear picture and present a persuasive argument for revising the specs. The CG wants *the long-term coating life*, and doesn't want to pay additional money." *Id*. (emphasis added).[4] Oliver's revision eliminated the two of the three options Coffman was offering to the Coast Guard and, significantly, Option Two that was its own recommendation. After receiving Oliver's revisions, Stears asked that he review earlier emails he thought were significant, but reassured Oliver that he, Stears, would make any directions Oliver directed the next day. *Id*.

This evidence, which is evidence pertaining to the 25 year life expectancy issue, is probative of both fraud and professional negligence by Coffman. This demonstrated willingness on the part of Coffman to subordinate its professional judgment and its conduct to the financial interests of Brechan is of the utmost importance to Absolute's fraud claim. Because without Coffman's willingness to cooperate, Brechan would not have been able to accomplish it. Under FRE 404(b), Coffman's willingness to cooperate with Brechan to deceive the Coast Guard is probative of whether Coffman would likewise have been willing to cooperate with Brechan to deceive Absolute when Brechan's efforts to obtain the Coast Guard's consent to eliminate the holiday-free standard proved ultimately unsuccessful – leaving Brechan in search of an alternative method to escape the massive losses arising out of the holidays at the H-Pile welds.

For these reasons, Coffman's motion must be denied.

---

[4] If Coffman had any hesitation about following Brechan's instructions, Brechan's next sentence in that same email likely helped Coffman overcome it: "I also want to mention that the CG has raised the issue of how this alleged

**9. Coast Guard issues.**

Regarding evidence pertaining to the Coast Guard, Brechan has filed a substantially similar motion in limine. (*See* Docket No. 321). In the interest of economy, Absolute will file a single brief in opposition to both requests for exclusion. Accordingly:

> <u>This opposition expressly incorporates by reference the arguments and evidence contained, and referenced, in the document titled Absolute's Opposition to Brechan Enterprises' Motion in Limine to Exclude Evidence Regarding Brechan's Contracts and Relationships With the Coast Guard.</u>

**10. Punitive damages.**

Alaska law authorizes AESI to seek punitive damages from Coffman, and authorizes Absolute to do so at this time.[5]

> One occasion for the assertion of punitive damages would have been in the proposed jury instructions as required by the scheduling order.

*Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 611 (Alaska 2003). Absolute timely submitted proposed jury instructions on September 22, 2006 and they included designations of the Alaska Civil Pattern Jury Instructions pertinent to punitive damages (Docket No. 361). If Coffman is arguing about "fair notice," that argument clearly fails under Alaska law.[6]

---

change of condition and [sic] should have been addressed in [Coffman's] initial design." Exhibit F to Elison Decl.

[5] Brechan raised the same issue during the September 21, 2006 pretrial conference with the Court. There is no formal motion pending with respect to Brechan, but the legal authority presented in this brief justifies Absolute's requests for punitive damages against Coffman and also against Brechan.

[6] Because Alaska law holds that a proposed jury instruction meets the needs of "fair notice," Absolute will not present a detailed explanation for the timing of the assertion of punitive damages and will instead note, as has been documented in other briefs and declarations, that the majority of the documents demonstrating "bad motive" or "reckless indifference" on the part of Brechan and Coffman were not produced to Absolute until late July 2006 (batch of over 2000 documents produced simultaneously with Coast Guard concession to discovery).

A request for punitive damages is <u>not</u> a cause of action and there is <u>no</u> requirement that punitive damages be plead:

> The North Carolina Supreme Court has held that a plaintiff <u>need not explicitly plead punitive damages</u> in order to recover them, though the pleading must "fairly apprise[] opposing parties of facts which will support an award of punitive damages ..." The Oregon Supreme Court has similarly commented that "exemplary damages are so <u>intimately connected with general damages</u> that if the general allegations are sufficient to show the wrong complained of was inflicted with malice or oppression or other like circumstances, the complaint will be sufficient to authorize the infliction of punitive or exemplary damages."
> We <u>agree with the approach taken by these authorities</u>.

*Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 611 (Alaska S.Ct. 2003)(emphasis added).

Under Alaska law, "the complaint should, at a minimum, allege conduct that meets the legal standard for the award of punitive damages." *Id.* at 612. AS 09.17.020 provides the legal standards:

> (b) The fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct (1) was outrageous, including acts done with malice or bad motives; or (2) evidenced reckless indifference to the interest of another person.

Consistent with AS 09.17.020(b), Absolute plead facts upon which a jury may conclude that Coffman acted with bad motives or was at least recklessly indifferent to the interest of Absolute. This Court has already determined that sufficient facts exist to allow Absolute to proceed to trial on fraud claims which involve bad motives or reckless indifference. Consistent with that previous ruling, this Court should deny Coffman's motion to exclude and allow the jury to determine entitlement to punitive damages.

Whether the jury awards punitive damages will depend on whether they find the evidence to be "clear and convincing" (AS 09.17.020(b)), but it is beyond question that the underlying claims are the type upon which Alaska law authorizes Absolute to request punitive damages.

Absolute plead causes of action for "intentional and/or fraudulent misrepresentations." (Absolute's Cross-Claim, ¶ 33). Setting a much lower bar than that, Alaska courts have found a breach of contract a sufficient basis for punitive damages when the "reasons articulated" to explain the breach "did not provide a reasonable explanation." *United States v. CNA Financial Corp.*, 381 F.Supp.2d 1088, 1099 (D.Alaska 2005) (upholding punitive damages against insurer that breached duty to defend and failed to provide a reasonable explanation for its conduct). In a recent breach of contract case also involving misrepresentation claims, the Alaska Supreme Court gave full approval to an award of punitive damages:

> A large punitive damage award is necessary to provide the incentive for victims to seek compensation and to reduce the efficacy of [defendant's] scheme.

*Casciola v. F.S. Air Service, Inc.*, 120 P.3d 1059, 1069 (Alaska 2005). That case "involved intentional deceit and involved a series of misrepresentations." The Court explained: "This finding was correct given the undisputed evidence at trial that [defendant's] actions were not part of an isolated incident but were emblematic of a larger pattern of fraud." *Id.* at 1068. Likewise, Absolute has collected and will present evidence of patterns of fraud and intentional deceit.

Coffman seeks to prejudice Absolute's proof of "bad motive" and "reckless indifference" by arguing that evidence pertaining to similar conduct should be excluded. Under FRE 404(b) and FRE 406, that request must be denied. There will not be a "trial within a trial" because under FRE 406 the evidence of "routine business practice of an organization" is relevant "whether corroborated or not and regardless of the presence of eyewitnesses." Under FRE 404(b), although not admissible to prove that the conduct happened, such evidence is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Coffman's second argument, that punitive damage calculations have not been presented yet, misses the point entirely because under AS 09.17.020(c) a separate proceeding is required to determine the quantification of punitive damages. Moreover, certain discovery is not even conducted "until after the fact finder has determined that an award of punitive damages is allowed." AS 09.17.020(e).

Coffman's request for exclusion of arguments and evidence on punitive damages did not cite the controlling Alaska statute or a single judicial authority. That is because under Alaska law Absolute is clearly entitled to proceed to trial with its request for punitive damages and the evidence in support of that request, whether or not corroborated and regardless of the presence of eyewitnesses. This Court should deny Coffman's motion.

**11. Evidence that Coffman Failed to Perform its Field Services (QA Work) Properly.**

Coffman's request for exclusion is much broader than the premise upon which it bases the request. Coffman is not being sued for negligent performance of its field services, that much is true. However, it does not follow that evidence of Coffman's filed services may be excluded because those facts pertain to several other viable causes of action. Evidence will show that Coffman deliberately disregarded field obligations on Phase I in an effort to cover-up the fact that the holiday-free acceptance standard was not being met. Ex. G to Elison Decl. This evidence, and evidence of changes in testing patterns during Phase II, are relevant to the accumulation of costs of performance. How Coffman performed its QA work is an element of Absolute's fraud claims against Coffman, and this Court should deny Coffman's request to exclude that evidence.

### III. CONCLUSION

Coffman's motions in limine, with a few minor exceptions as indicated above, should be denied.

1  DATED this 25th day of September, 2006.

2  MARSTON HEFFERNAN FOREMAN, PLLC

4  By s/Jami K. Elison
    Terry R. Marston II, WSBA No. 14440
5   Jami K. Elison,   WSBA No. 31007
    Jesse P. Elison, WSBA No. 36914
6   Attorneys for Plaintiff Absolute Environmental
    Service, Inc.

8  I hereby certify that on the date given a copy of the forgoing was electronically filed with the Clerk of Court using the CM/ECF system and was served electronically on the following:

William R. Baerg, Patrick J. Duffy
Eric J. Brown
Robert J. Dickson
Michael E Kreger, Jacob Nist
James B. Stoetzer, Peter C. Partnow

s/Jami K. Elison

ABSOLUTE'S OPPOSITION TO BRECHAN'S MOTION IN LIMINE TO RESTRICT DAVID
OLSON'S TESTIMONY
Case No. A03-0199CV (RRB)-- 15