Terry R. Marston, *pro hac vice,* terry@mhf-law.com
Jami K. Elison, *pro hac vice,* jamie@mhf-law.com
Jesse P. Elison, *pro hac vice,* jessee@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, <br><br> Plaintiff, <br> vs. <br><br> FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. <br><br> Defendants. | Case No.: A03-0199CV (RRB) <br><br> **NOTICE—ABSOLUTE'S MEMORANDUM REGARDING DOCUMENTS PRODUCED BY COAST GUARD** |

| | |
|---|---|
| 1   EMERCO, INC., a California corporation d/b/a | ) |
|     Imperial Industrial Coatings, and the States for | ) |
| 2   Use and Benefit of EMERCO, INC., | ) |
| | ) |
| 3   Counterclaimant/Third-party Claimant, | ) |
| | ) |
| 4   v. | ) |
| | ) |
| 5   ABSOLUTE ENVIRONMENTAL SERVICES | ) |
| 6   INC., an Alaska corporation, et al., | ) |
| | ) |
| 7   Cross-defendants/Third-party Defendants. | ) |
| | ) |

| | |
|---|---|
| THE UNITED STATES OF AMERICA *for* | ) |
| *the use and benefit of* ABSOLUTE | ) |
| ENVIRONMENTAL SERVICES, INC., an | ) |
| Alaska Corporation, | ) |
| | ) |
|         Plaintiff, | ) |
|    vs. | ) |
| | ) |
| SAFECO INSURANCE COMPANY OF | ) |
| AMERICA, a Washington Corporation. | ) |
| | ) |
|         Defendants. | ) |
| | ) |

| | |
|---|---|
| BRECHAN ENTERPRISES, INC., an Alaska | ) |
| corporation, | ) |
| | ) |
|         Counterclaim Plaintiff, | ) |
|    vs. | ) |
| | ) |
| ABSOLUTE ENVIRONMENTAL | ) |
| SERVICES, INC., an Alaska Corporation, | ) |
| | ) |
|         Counterclaim Defendant. | ) |

NOTICE—ABSOLUTE'S MEMORANDUM REGARDING DOCUMENTS PRODUCED BY COAST GUARD
Case No. A03-0199CV (RRB)-- 2

| | |
|---|---|
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | )<br>)<br>) |
| Third-Party Plaintiff, | ) |
| vs. | )<br>) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | )<br>)<br>) |
| Third-Party Defendant. | )<br>) |
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation, | )<br>)<br>) |
| Plaintiff/Cross-claimant, | ) |
| vs. | )<br>) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | )<br>)<br>) |
| Third-Party Defendant. | )<br>) |

Documents produced by the United States Coast Guard are probative of facts material to Absolute's claims against Brechan and also against Coffman. FRE 401 and 402. Attached hereto as Appendix A is an email sent to counsel that lists the documents produced by the Coast Guard that Absolute intends to admit during trial for reasons explained in this memorandum.

As this Court is aware, Absolute's claims against Brechan include superior knowledge, non-disclosure, and intentional misrepresentation (fraud). Absolute must present proof of Brechan's actual knowledge for each of those claims. Brechan will deny knowledge of conditions affecting Phase II, and Absolute will necessarily rely on circumstantial evidence. This Court has already ruled: "Existence of a fraudulent intent is a question of fact, often proved by circumstantial evidence." Order Regarding Pending Motions, p. 15 (Docket No. 339).

It is commonplace for subcontractors pursuing claims against a prime contractor to present project evidence obtained from the project owner. On the Cargo Wharf project (Phase I

NOTICE—ABSOLUTE'S MEMORANDUM REGARDING DOCUMENTS PRODUCED BY COAST GUARD
Case No. A03-0199CV (RRB)-- 3

and Phase II), Brechan's financial "motive, opportunity, intent, preparation, and plan" (*see* FRE 404(b)) is inextricably related to Brechan's prime contract with the United States Coast Guard. Coast Guard communications about the same project, the project on which Absolute lost over $1 million dollars, are reasonable, relevant, and revealing sources of material evidence.

Absolute is pursuing claims against Coffman for negligence and misrepresentation. The standard of care is not established in a vacuum and the actual knowledge possessed by the professional must be considered when analyzing whether the professional breached its standard of care. *See* Moloso v. State of Alaska, 644 P.2d 205, 216-217 (Alaska 1982) (considering prior knowledge part of standard of care in holding that engineers negligently prepared plans and specifications).

Again, as is also the case with Brechan, Coast Guard discussions of the Cargo Wharf Project are probative of the knowledge element of misrepresentations claims. Coffman's participation in Brechan's scheme whether willingly (to appease the customer) or under coercion (to avoid becoming the target) makes them inextricably intertwined in the issues discussed by the Coast Guard. The Coast Guard communications discuss Brechan suing Coffman, reduction of work scope for Brechan, whether to terminate Swalling, hiring a "new guy," how to protect Brechan from litigation with Coffman, possible payment of additional money, relaxing the acceptance criteria, and how to remove contract work from Phase I and place it in Phase II. These documents clearly demonstrate that the Coast Guard, which had no contract with Swalling, was injecting itself into Brechan's subcontractual relationships.

Brechan and Coffman relaxed enforcement of the acceptance criteria. Absolute is entitled to establish that fact by showing Coast Guard documents regarding the acceptance criteria. Having deceived the Coast Guard this way, Brechan, with the assistance of Coffman,

NOTICE—ABSOLUTE'S MEMORANDUM REGARDING DOCUMENTS PRODUCED BY COAST
GUARD
Case No. A03-0199CV (RRB)-- 4

had painted itself in a corner with respect to pricing on Phase II. Because Brechan had completed Phase I at a certain price per foot, it could not change that price on Phase II without explaining what had happened on Phase I, which Brechan could not do. Absolute is entitled to present evidence demonstrating what would motivate Brechan to take advantage of Absolute, conduct which would otherwise seems inexplicable, and therefore unbelievable.

Brechan had a very real motive to defraud Absolute. Brechan was exposed to the same $1,000,000 loss eventually suffered by Absolute. Brechan was contractually obligated to provide the Coast Guard with a coating system that would last 25 years. To achieve that, its engineer, Coffman, specified a holiday-free coating system. Brechan was told that its Phase I construction cost could not exceed $1,000,000. In order to achieve that, Coffman drafted the Phase I specifications in a way that limited the painting subcontractor's responsibility for performing seal welding to 100 linear feet.

Brechan then discovered that there was an enormous amount of seal welding to be performed on the Original Cargo Wharf that it would have to pay its subcontractor for. Shortly thereafter, Brechan discovered that an unusually large number of persistent holidays appeared in all welded areas and that cutting, grinding, and caulking these areas did <u>not</u> solve the problem – holidays continually appeared. Brechan tried unsuccessfully to get the Coast Guard to (1) eliminate the holiday-free standard and also (2) pay for the additional costs it would incur in even meeting a relaxed holiday acceptance standard that permitted the occurrence of some holidays.

The Coast Guard rejected Brechan's proposal to eliminate the holiday-free standard and refused to pay more than $100,000 for added surface preparation. Swalling refused to perform the remainder of Phase I work under the holiday-free standard for $100,000. Nor would it agree

to warrant repairs made by stripe coating or caulking. To perform the additional surface preparation required due to the holiday problems, Swalling quoted a total price of $265,000 for the first Phase and an extra $313,000 for the second Phase or $716,564 total – an amount $600,000 greater than the Coast Guard was willing to pay.

Phase I and Phase II are intertwined. Brechan, with Coffman's involvement, saw an opportunity and developed a plan involving Phase I and Phase II, and that plan involved Absolute. Phase I and Phase II are inextricably intertwined and clearly admissible under FRE 404(b) because Absolute can present evidence of "intent, opportunity, and plan." *See* authorities cited in Absolute's Opposition to Brechan's Motion in Limine to Restrict David Olson's Testimony, p.3-4. Brechan intended to handle its Phase I problems by moving them into Phase II and then passing them off onto Absolute. Brechan was aided in this successful effort by the Coast Guard's project management team and by Coffman.

Evidence has already established that a portion of Swalling's Phase I work (Bents 13-15) was inexplicable carved out and moved to Absolute's contract for Phase II. Evidence has already established that during performance of Phase I, Brechan requested and obtained a price from Swalling for the work that became the Phase II work, a price that was significantly increased by the discovery of the latent holiday problems. Changes to the specifications, prepared by Coffman, resulted only because Brechan discovered concealed conditions and anticipated that they would continuCoffman would only have changed the project specifications to include language applicable to defective welds if the common expectation was that the same problems would continue on into Phase II; otherwise, there was no reason for the change. Likewise, the only plausible reason for Brechan's termination of Swalling's contract is that Brechan expected the Phase I conditions to continue into Phase II. Otherwise, it would have

NOTICE—ABSOLUTE'S MEMORANDUM REGARDING DOCUMENTS PRODUCED BY COAST
GUARD
Case No. A03-0199CV (RRB)-- 6

made economic sense to keep Swalling on the Project. Brechan and Coffman allege that Phase II was different than Phase I, but the evidence reveals the contrary. The Phase I information, and specifically the Coast Guard's documents on the subjects discussed in this brief, is probative of many material facts on the litigation arising from performance of Phase II work.

Regardless of whether Coast Guard declarants are available or unavailable, the documents produced by the United States Coast Guard, a public office, in response to a Freedom of Information Act (FOIA) request, are admissible under the Federal Rules of Evidence.

As argued in court prior to opening statements, these documents are not excluded as hearsay because they are admissible as public records under FRE 803(8). Furthermore, most are probative of existing state of mind (intent, plan, motive, design) and therefore admissible under FRE 803(3). Many are statements against interest because they could subject the Coast Guard personnel involved to disciplinary action from the Coast Guard as well as being, at times, contrary to the Coast Guard's pecuniary interests admissible under FRE 804(b)(3). And, finally, the documents are the most probative evidence Absolute possesses of the Coast Guard's influence and impact on Brechan's management of its loss exposure on the Cargo Wharf project and problems rendering them admissible under FRE 807.

After the jury was dismissed on October 4, 2006, Brechan and Coffman stated that their objections to admission of documents produced by the Coast Guard are based on relevance, either under FRE 402 or 403. The documents are probative of material facts, are "inextricably intertwined" with the claims arising from the Coast Guard Cargo Wharf project, and are necessary to explain to the jury how and why Brechan could have engaged in actions so divorced from common standards of ethical conduct. The evidence is admissible under FRE 402, 404(b), and even 406.

1  DATED this 4th day of October, 2006.

2                                         MARSTON HEFFERNAN FOREMAN, PLLC

3

4  By _____s/Jami K. Elison_____
    Terry R. Marston II, WSBA No. 14440
5   Jami K. Elison,  WSBA No. 31007
   Attorneys for Plaintiff Absolute Environmental
6  Service, Inc.

7  I hereby certify that on the date given a copy of the
   forgoing was served electronically on the following:
8
   William R. Baerg, Patrick J. Duffy
9  Eric J. Brown
   Robert J. Dickson
   Michael E Kreger, Jacob Nist
10 James B. Stoetzer, Peter C. Partnow

11 s/Jami K. Elison               .

NOTICE—ABSOLUTE'S MEMORANDUM REGARDING DOCUMENTS PRODUCED BY COAST GUARD
Case No. A03-0199CV (RRB)-- 8