Terry R. Marston, *pro hac vice,* terry@mhf-law.com
Jami K. Elison, *pro hac vice,* jamie@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES) INC., an Alaska Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, <br><br> Defendant. <br> ——————————————————— <br> EMERCO, INC., a California corporation d/b/a) Imperial Industrial Coatings, and the States for ) Use and Benefit of EMERCO, INC., <br><br> Counterclaimant/Third-party Claimant, <br><br> v. <br><br> ABSOLUTE ENVIRONMENTAL SERVICES) INC., an Alaska corporation, et al., <br><br> Cross-defendants/Third-party Defendants. <br> ——————————————————— | Case No.: A03-0199CV (RRB) <br><br><br> **PLAINTIFF'S FRCP 50 MOTIONS TO DISMISS SPECIFIC DAMAGE CLAIMS BY IMPERIAL** |

## I.  RELIEF REQUESTED

Plaintiff Absolute Environmental Services, Inc. ("Absolute") moves this Court to dismiss with prejudice Imperial's claims (1) for lost profits on tanks N12 and N60; (2) compensation for goods sold and delivered; and (3) differing site condition compensation for the gray paint.

## II.  ISSUES

1.  <u>N12 and N60.</u>  For Imperial to avoid directed verdict dismissing its claim of breach of contract seeking lost profits from Absolute for the coating project referred to as "Tanks N-12 & N-60," Imperial must have presented evidence that it made an <u>offer</u> to Absolute including a price and description of the scope of work it was offering to perform; Absolute's <u>acceptance</u> of that offer; and the existence of <u>consideration</u>. Furthermore, Imperial would also have had to, at a minimum, tender performance of the work for Tanks N12 and N60.  Imperial rested without presenting such evidence. Absolute's motion for directed verdict should be granted and Imperial's suit against Absolute for breach of contract and lost profits for Tanks N-12 and N-60 should be dismissed with prejudice.

2.  <u>"Goods sold and delivered."</u>  For Imperial to avoid a directed verdict dismissing its equitable claim for "goods sold and delivered," Imperial must have presented evidence that other relief was not available, and upon showing that other relief was not available, Imperial must further present evidence that a sale can implied as a matter of law, evidence of items sold and delivered, and competent evidence establishing a basis upon which the jury can determine the fair market value of the goods in question.  Imperial rested its case without presenting evidence to explain why it has failed to retrieve its goods, never identified the goods that are the subject

of its claim, and never presented any competent evidence upon which a jury could determine fair market value. Absolute's motion for directed verdict should be granted and Imperial's claim for "goods sold and delivered" should be dismissed with prejudice.

3. Gray Paint. For Imperial to avoid a directed verdict dismissing its differing site condition claim for removal of gray coatings, Imperial must have presented evidence that its subcontract included a "differing site condition" clause. Imperial rested without presenting such evidence. Furthermore, this Court has already ruled that the contract form used by both Absolute and Imperial does not include a differing site condition clause. Absolute's motion for directed verdict should be granted and Imperial's suit against Absolute for removal of gray coatings should be dismissed with prejudice.

### III.  FACTS

As presented at trial Imperial claims, depending on which testimony is considered, to have completed somewhere between 41% and 47% of its project work. Imperial's contract was for $772,123. The project cost reports submitted into evidence by Absolute show that Imperial received direct payments of $246,588.13 and no less than $160,000 was paid to vendors of Imperial on Imperial's behalf.[1]  In total, at least $406,588 was paid to Imperial on its $772,000 contract.[2]  In other words, 52% of the contract price was paid for

---

[1] The admitted job cost reports show that Absolute, among other payments, issued direct payments to at least the following vendors of Imperial in the following amounts:  Polar Supply Co, Inc. ($50,815 and another approx. $35,000); Sponge Jet Pmt. ($18,927); NLB ($24,000); Blast Coat Systems (approx. $10,000); Sunset Ladders and Scaffolding (approx. $12,000); Kodiak Rental Center (approx. 3,000).

[2] See A248.

something less than 47% of the contract work. Unlike Absolute, Imperial presented no evidence of actual cost records and, unlike Absolute, no evidence of any actual losses on the project. Yet Imperial wants to ask the jury for $971,745 from Absolute.

There is evidence that during better times Tom Puett (Imperial) and Jason Peterson (Absolute) had preliminary discussions about performing additional coating projects. The two of them discussed projects referred to as N12 and N60 (projects that had not been awarded yet) and reviewed some draft specifications. Mr. Puett testified at trial that he understood that Imperial might obtain that work, that is, if Absolute obtained the work from Brechan and decided to subcontract it out, that is, if the Coast Guard issued a Task Order for that work. There was no testimony of anything other than preliminary explorations, no offer, no acceptance, and no consideration. There was also no testimony about whether the contract was performed, when, by whom, under what specifications, under what terms, or at what cost and profit.

On August 6, 2003 Imperial was decertified by the product manufacturer. On August 7, 2003 Imperial terminated its contract with Absolute, making it virtually certain that the two companies would not team up for future projects. Under the contract between Absolute and Imperial it was within Absolute's rights to "take whatever steps it deems necessary to correct said deficiencies" and ensure completion of the Cargo Wharf project following the default by Imperial.[3] With that contractual authorization, Absolute took possession of materials and equipment that Imperial had stored on site.

---

[3] A48 (Art. 5).

On the same day it terminated its contract Imperial's counsel also sent a Notice of

Conversion letter listing equipment and materials and adding prices that were never offered

to be reasonable market prices.[4]  On the very next day Absolute responded:

> I also received a letter from your attorney claiming that we have
> "converted" your supplies. We have no such intention. I can't verify that
> the materials he listed in his letter are actually on site, but I certainly do
> dispute the values he claims for them. The prices he lists are grossly
> overstated. We will be taking steps to complete a documented inventory
> of all materials and supplies you have on site, and, when that is
> completed, we will provide you with a copy. At that time, we will
> contact you to make arrangements <u>for your picking up those materials that
> are not needed by us to complete your work</u>.[5]

Imperial's claim that goods were sold and delivered was a sham from the beginning, but

Imperial entrenched itself in that position by refusing to retrieve its goods. Imperial decided

to commit itself to the pricing suggested in its counsel's letter by affirmatively waiving the

conversion claim.[6]

Paint materials were used in the completion of the project thereby mitigating

Absolute's damage claim against Imperial. All remaining materials and equipment are

available, and have long been available, for retrieval by Imperial. But Imperial has

deliberately refused to retrieve the materials and equipment. During trial Imperial never

identified the items that are subject to its supposed goods sold and delivered claim.

Imperial never presented market pricing for the goods, and never established anyone as

competent to establish fair market pricing.

---

[4] *See* A342 (admitted under different number).

[5] A348.

[6] Answer of Forrest J. McKinley to First Amended Complaint and Answer and Counterclaim of Emerco, para. 38.

Absolute took possession of materials and equipment undoubtedly owned by Mr. Forrest McKinley or one of his business entities. Imperial has never established ownership and the record shows that there are no known assets for Emerco, the company claiming the materials and equipment under the fiction of "goods sold and delivered." There is no evidence that a sale occurred, or that a sale should be implied to have occurred.

> Q. It's your contention that following Imperial's termination of the subcontract that Imperial sold Absolute some equipment, correct?
> A. False.
> Q. What is improper about that statement?
> A. I don't know how to answer that.
> Q. Why did you say my statement was false?
> A. Nothing was sold to Absolute.
> ...
> Q. Do you have any interest in getting the property back?
> A. In its entirety, in the shape it was in, yes.
> Q. Is that because you believe that it's yours?
> A. I believe it belongs to Emerco.[7]

Testimony during trial established that Absolute used paint materials taken from Imperial's stock to complete the project and, therefore, damages were mitigated and Imperial's liability reduced. All other unused materials and equipment have long been available for retrieval by Imperial. Imperial, or Emerco, or Mr. McKinley, wants it back, and they can have it back anytime they make arrangements to retrieve it.

Imperial seeks compensation for costs related to the gray paint that Imperial alleges to be a compensable differing site condition, but Imperial's contract does not contain a contract clause entitling Imperial to compensation for differing site conditions. Therefore, Absolute moves for dismissal of that distinct claim item.

---

[7] A386, trans. pp. 327-28.

Imperial rested its case-in-chief without presenting a prima facie case for entitlement to damages for the gray paint differing site condition, without showing that any equitable relief was necessary with regard to material and equipment that can be retrieved by Imperial once they decide to do so, and without showing any entitlement to lost profits on the projects referred to as Tanks N12 and N60.

## IV. AUTHORITY

Fed.R.Civ.P. 50 provides:
**(a) Judgment as a Matter of Law.**
(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled t the judgment.

1.  Lost profits on unrelated projects referred to as Tanks N12 and N60

Imperial presented evidence that Mr. Puett participated in discussions about Tanks N12 and N60 and reviewed preliminary specifications, but nothing more. There is no evidence that the N12 and N60 projects were performed, when, by whom, under what terms, under what specifications, at what cost, and for what profit, if any. Counsel for Imperial started to question Mr. Puett on this subject, but a hearsay objection was sustained and the inquiry stopped when Mr. Puett started by saying that he heard something around the Wharf about those projects. No further testimony was introduced about Tanks N12 and N60.

Mr. Puett's testimony indicated only that Imperial might pick up the work. Lacking evidence of offer, acceptance or consideration, Imperial's purely speculative claim for lost profits on Tanks N12 and N60 must be dismissed. Absolute previously moved for summary judgment on this issue (part of relief requested per Docket #227). Imperial has had its day in court and there is no reason for further time, testimony, jury instruction, or jury deliberation on this issue. Dismissal of Imperial's claim for lost profits under FRCP 50 is clearly appropriate.

2. "Goods sold and delivered" claim.

There is no need for any equitable relief in connection with the materials and equipment that have either already been incorporated into the project or remain available for retrieval by Imperial. It is well established that when there are remedies and no harm, equitable remedies are not available. "[E]quitable relief is available only when there is no adequate remedy at law." *Donnybrook Bldg. Supply. Inc. v. Interior City Branch, First Nat. Bank of Anchorage*, 798 P.2d 1263, 1268 (Alaska 1990). Here, there are adequate remedies preventing Imperial's forced attempt to utilize "goods sold and delivered." Goods used mitigate losses, remaining goods can be returned, and any complaints about condition of the returned goods can be subsequently addressed and resolved.

Imperial plead "goods sold and delivered." Because it is an equitable form of relief it is incumbent on Imperial to put into evidence the fair market value of the goods it claims were "sold and delivered."[8] Having rested its case, Imperial never identified the goods and never put into evidence a basis for the jury to reach a conclusion about fair market value.

---

[8] *See* Docket #229 (prior motion for summary judgment on goods sold and delivered claim).

Imperial relied entirely on a letter from counsel with prices affixed to descriptions of equipment. That is completely inadequate. There was no testimony to establish that the goods listed are actually the goods "sold and delivered" and no testimony to establish that the prices are reasonable market prices. On that ground alone, this Court can dismiss the goods sold and delivered claim. In fact, this Court previously ruled that testimony from Dave Olson failed to establish fair market value and dismissed Absolute's claim for business devastation. Imperial's failure of proof was more glaring because, unlike Mr. Olson, Imperial did not even purport to establish fair market value.[9]

Finally, equitable relief is inappropriate when there is no harm to relieved, or when other remedies are adequate. It is also axiomatic that to receive equity a party must give equity. "The complainants are at equity. They seek an equitable remedy. In order to succeed they must do equity." *Donald v. Rhoads*, 5 F. Supp. 37, 38 (N.D. Tex. 1933). Here, Absolute took possession of materials and equipment that were used in part to mitigate damages for Imperial. No remedy is necessary for that. As to the materials and equipment that were not used, they are all available to be retrieved. "The essence of equity jurisdiction has been its flexibility to tailor each decree to the necessities of the specific case." *Libutti v. U.S.*, 178 F.3d 114, 121 (2nd Cir. 1999) (holding that equitable remedies within discretion of trial court). No further remedy is necessary. And given Imperial's

---

[9] Imperial made the mistake of relying on the letter from counsel because Imperial had blended distinct legal theories and as a result was pursuing a remedy it never plead, "accounts stated" as opposed to "goods sold and delivered." While "goods sold and delivered" is an equitable remedy under which the Court or jury conclude that a contract can be implied as a matter of law, "accounts stated" is a contract implied-in-fact. *See Sunnyside Valley Irrigation District v. Roza Irrigation District*, 124 Wash.2d 312, 316 (1994). Due to that critical distinction, an "accounts stated" claimant may be allowed to submit a bill of sale with prices included and later argue that the prices are binding, but a "goods sold and delivered" claimant may not. Imperial never plead a claim for "accounts stated." On that ground, this Court can dismiss Imperial's claim because the claim is being argued as a claim that was never plead.

deliberate refusal to reclaim its materials and equipment, and sham "sale" denied by its own principal, no further equitable relief would be appropriate.

      3.  "Differing Site Condition" claim for gray paint.

Imperial claims that the gray paint constituted a compensable differing site condition. There are factual disputes, for example, about whether the condition was hidden, but this motion does not require the Court to rule on any factual issues. Imperial failed to establish any entitlement to compensation for differing site conditions.

Imperial used the same contract form with Absolute that Absolute used with Brechan, and this Court previously ruled: "Absolute's differing site condition claim fails because there was not an agreement for Absolute to receive additional compensation because of differing site conditions."[10]    Likewise, Imperial has no legal entitlement to differing site condition compensation and its gray paint claim must be dismissed.[11]

## V.  CONCLUSION

Plaintiff Absolute Environmental Services, Inc. ("Absolute") moves for dismissal under FRCP 50 of three specific damage claims by Imperial. Imperial rested its case with no evidence to establish entitlement for lost profits on Tanks N12 and N60; no evidence to support the goods sold and delivered claim (no evidence of market pricing, or of sale, or of ownership, and no explanation for its refusal to retrieve its materials and equipment). As this Court has previously

---

[10] Docket #339 (p.16) granting differing site condition part of Docket #225.

[11] *See* Brechan's Motion for Summary Judgment, pp.6-8 (Docket #225). *See accord, Green Constr. Co. v. Kansas Pwer & Light Co.*, 717 F. Supp. 738, 742 (D. Kan. 1989); *Pinkerton and Laws Co., Inc. v. Roadway Exp., Inc.*, 650 F. Supp. 1138, 1146 (N.D. Ga. 1986); *Eastern Tunneling Corp. v. Southgate Sanitation Dist.*, 487 F. Supp. 109, 113 (D. Col. 1979).

1 | ruled with regard to Absolute, Imperial also lacks any right to claim compensation for the gray

2 | paint differing site condition. Those three claims must be dismissed.

3

4 | RESPECTFULLY SUBMITTED this 8th day of November, 2006.

5 | MARSTON HEFFERNAN FOREMAN, PLLC

6

7 | By s/Jami K. Elison
Terry R. Marston II, WSBA No. 14440

8 | Jami K. Elison, WSBA No. 31007
Attorneys for Plaintiff Absolute Environmental Service, Inc.

9

10 | I hereby certify that on the date given a copy of the
forgoing was electronically filed with the Clerk of

11 | Court using the CM/ECF system and was served
electronically on the following:

12

William R. Baerg, Patrick J. Duffy

13 | Eric J. Brown
Robert J. Dickson

14 | Michael E Kreger, Jacob Nist
James B. Stoetzer, Peter C. Partnow

15 | s/Jami K. Elison          .

16

17

18

19

20

21

22

23

24

25

26