ERIC J. BROWN, ESQ.
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A. Street, Suite 300
Anchorage, Alaska 99503-4097
Telephone: (907) 563-8844
Facsimile: (907) 563-7322 (ebrown@jdolaw.com)

PATRICK J. DUFFY, III, ESQ.
WILLIAM R. BAERG, ESQ.
MONTELEONE & McCRORY, LLP
725 S. Figueroa Street, Suite 3200
Los Angeles, California 90017-5446
Telephone: (213) 612-9900
Facsimile: (213) 612-9930
(duffy@mmlawyers.com)
(baerg@mmlawyers.com)

Attorneys for Defendant and
Cross-Complainant EMERCO, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaskan Corporation,<br><br>　　Plaintiff,<br><br>　v.<br><br>FORREST J. McKINLEY and "JANE DOE" McKINLEY, and the marital community property composed thereof d/b/a/ "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation d/b/a/ Imperial Industrial Coatings,<br><br>　　Defendants.<br><br>AND RELATED CROSS-ACTIONS | CASE NO. A-03-0199 Civil (RRB)<br><br>**OPPOSITION OF EMERCO, INC., DBA IMPERIAL INDUSTRIAL COATINGS TO PLAINTIFF'S MOTION TO DISMISS SPECIFIC DAMAGE CLAIMS** |

1. **INTRODUCTION.**

　　Since judgment as a matter of law under Federal Rule of Civil Procedure 50 deprives a party opposing the motion of a determination of the facts by a jury, it should be granted cautiously and sparingly, and is a highly disfavored motion. *U.S. ex rel. Yesudian v. Howard University* (1998) 153 F.3d 731, 332 U.S.App.D.C. 56; *Honce v. Vigil* (10th Cir. 1993) 1 F.3d

1085. In determining whether the evidence presented at trial is sufficient to withstand a motion for judgment as a matter of law, the district court is not free to weigh the parties' evidence, or to pass on the credibility of witnesses or to substitute its judgment of facts for that of the jury. Instead, it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences that may be drawn from the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). Under this standard, Absolute's motion for judgment as matter of law should be dismissed on all grounds.

2. **LEGAL ARGUMENT.**

   A. **Imperial's Claim for Lost Profits on Tanks N12 and N60 is not Subject to a Motion for Judgment, but Must be Decided by the Jury.**

As noted above, judgment as a matter of law under FRCP 50 cannot be granted if there is a genuine dispute of material facts and if evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Tate v. Government Employees Ins. Co.*, (11th Cir. Ala. 1993) 997 F.2d 1433; *Tierney v. Black Bros. Co.* (M.D.Fla. 1994) 852 F.Supp. 994. Notwithstanding this strict legal standard, Absolute asks this Court to substitute its own judgment of facts for that of the jury. Evidence was presented to support a contract on the Tanks N12 and N60 job. Tom Puett testified that in February 2002, before the contract was signed, he and Jason Peterson of Absolute agreed that if Imperial would do the cost estimating for Tanks N12 and N60, that Imperial would be given that work. Mr. Puett further testified that in accordance with these mutual promises Imperial did the estimating work, and documents substantiating and constituting the work Imperial performed were admitted into evidence. Absolute's attempt to characterize this work product at "preliminary discussions," is contrary to the evidence. Evidence was presented that Imperial performed its obligations, and that Absolute reneged on its side of the agreement.

Alaska Civil Pattern Jury Instruction 24.01A provides, "A definition of a contract is set out in the Restatement (Second) of Contracts at § 1: <u>A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way</u>

recognizes a duty." The Alaska Supreme Court has ruled repeatedly that: "Where the existence of an oral contract and the terms thereof are the points in issue and the evidence is conflicting, it is for the trier of facts to determine whether the contract did in fact exist, and if so, the terms thereof." *Nordin Constr. Co. v. City of Nome*, 489 P.2d 455, 459 (Alaska 1971), *L.E. Spitzer Co. v. Barron*, 581 P.2d 213, 216 (Alaska 1978). Hence, since evidence of a contract was presented, the motion for judgment must be denied and the claim must be submitted to the jury for determination.

B. **There is no Basis for Dismissing Imperial's Claim Against Absolute for the Value of the Converted Property.**

Absolute's motion to dismiss outright Imperial's claim for the value of the property Absolute admits to converting is remarkable for its failure to cite any supporting legal authority, other than platitudes about parties seeking equity doing equity. There is no legal authority cited for the notion that Imperial was required to present testimony (expert or otherwise) as to the value of the converted property beyond the evidence that was presented at trial. The reason no legal authority is cited for this novel position is because none exists. In fact, the law in Alaska is that, once the victim of a conversion waives the tort of conversion and elects to sue the tortfeasor under an implied contract for the sale of the converted property, the damages are measured any number of ways including the price the goods cost the victim, the market value at the point of conversion, or any other means to ensure just compensation. *See Felder v. Reeth* 34 F.2d 744, 97 A.L.R. 244, 5 Alaska Fed. 432 (9th Cir. 1929); *Gackstetter v. State* 618 P.2d 564, 567 (Alaska 1980) ("[F]air market value is not the end in itself, but merely a means to achieve the goal of just compensation."); Alaska Civil Pattern Jury Instruction 27.02, "Comment" and cases cited therein.

In this case, evidence was presented as to the just compensation for the converted property in the form of Tom Puett's testimony and interrogatory responses. Moreover, the sale price was fixed by a letter itemizing the property purchased at the prices stated. By failing to return the property, Absolute agreed to the prices stated. In footnote 9 of its motion for judgment, Absolute acknowledges that the letter from Imperial's counsel dated August 7, 2003

created an implied in fact contract under an "accounts stated" theory, but claims that theory cannot be advanced because Imperial allegedly never made such a claim. This is without merit. Imperial's Answer of Forrest J. McKinley to First Amended Complaint and Answer and Counter-Claim for Breach of Contact, Conversion, Tortious Interference and Conspiracy, and on Payment Bond (Miller Act) clearly and unambiguously stated at paragraph 38: ". . . ABSOLUTE agreed to pay IMPERIAL the property and goods at the prices set forth in the August 7, 2003 letter, which price totals $518,320." The argument that Imperial cannot proceed on an "accounts stated" theory because the words "accounts stated" was not written in the counter-claim impermissibly exalts form over substance, and violates the federal principle of notice pleading. The pleadings need only give fair notice of the pleader's claim or defense so that opposing parties can respond, undertake discovery and prepare for trial See FRCP 8(a); *Conley v. Gibson* 355 U.S. 41, 47-48, 78 S.Ct. 99, 103. Pleadings are construed liberally in favor of the pleader. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1069).

Finally, Absolute's risible assertion that whatever remains of the converted property can be returned, "and any complaints about condition of the returned goods can be subsequently addressed and resolved . . ." should be rejected. There is no basis for Absolute to suggest that a subsequent lawsuit is an appropriate course of action.

### C. The Mandatory Differing Site Condition Clause was Incorporated and a Part of the Subcontract between Absolute and Imperial.

The Subcontract agreement between Imperial and Absolute contains what is known in the parlance of federal construction contracts as a "flow down clause," which as a matter of law incorporates by reference all provisions of the prime contract into the subcontract. They are designed to **protect the government's rights and interests** and to otherwise promote its procurement and socioeconomic policy. See Arnavas & Ruberry, GOVERNMENT CONTRACT GUIDEBOOK (1987), Part VI, "Subcontracting," at 21-8, citing Briefing Papers #85-5 (Hoe, Oliver & Abbott, "Flow-Down Clauses In Subcontracts"), May 1985. *See also*, Bastianelli, Ness & West, FEDERAL GOVERNMENT CONSTRUCTION CONTRACTS (American Bar Association 2003), Ch. 24, "Subcontracting," p. 563.

The Subcontract agreement between Absolute and Imperial contains a flow down clause in several locations of the Subcontract agreement: "This agreement is made this 18 day of December 2002, and effective the 18th day of December 2002, by and between Absolute Environmental Services (Contractor) and Imperial Industrial Coating [sic] (Subcontractor) to perform the Work identified in Article 2 *in accordance with the Project's Contract Documents*." The Project is identified as ***IDIQ MultiTrade Construction Contract DTCG50-01-D-643J55.*** Article 1 provides, "The Contractor agrees *to pay* Subcontractor for satisfactory performance of Subcontractor's Work . . . ." Article 2 further provides, "Subcontractor agrees to commence Subcontractor's Work herein described upon notification by Contractor, ***and to perform and complete such Work in accordance with Contract Documents*** . . . ." Clearly, the language of these clauses entitled Imperial to perform and be paid pursuant to the Contract Documents, which consist of all upper tier contracts and their terms.

In order to discourage contractors (and subcontractors) from including contingency factors in their prices – ***and thus increasing the cost of government construction*** – the government has developed a contract clause which substantially shifts the risk of subsurface or unknown site conditions to the government. This clause is known as the "Differing Site Conditions" clause and provides for an equitable adjustment in the contract price and time for performance in the event a differing site condition is encountered during the work. *Foster Constr. C.A. v. United States*, 435 F.2d 873, 887 (Ct. Cl. 1970). The Court of Claims has stated that the clause assures contractors that they "will have no windfalls and no disasters." *Id.*

The inclusion of the Differing Site Condition clause is mandatory in fixed price federal contracts such as the one involved in this case. F.A.R. 36.502, 52.236-2. Hence, the Differing Site Conditions clause, which was included in order to protect the U.S. Coast Guard from high construction costs, was part of the Contract Documents which were incorporated into the Subcontract Agreement by way of the flow down clause. In construction contracts, a contract's reference to the prime contract's plans and specifications (i.e., "contract documents") is sufficient to bind the prime contract's contract administration and payment clauses on the subcontractor. *See e.g. Westinghouse Electric Supply Co. v. Fidelity and Deposit of Maryland* 560 F.2d 1109

(3d. Cir. 1977). Inasmuch as the Differing Site Condition clause is a payment clause, it is incorporated into a subcontract that must be performed pursuant to the Contract Documents.

Absolute's motion to dismiss Imperial's claim for the cost to remove the gray paint on the grounds that Absolute lost a motion for summary judgment is without merit. Absolute suggests Imperial should be penalized by Absolute's failure to adequately brief this Court in its own opposition to Brechan's motion for summary judgment on the Differing Site Condition clause. Brechan's motion for summary judgment was not directed toward Imperial, and the order granting the motion in favor of Brechan and against Absolute is not binding on Imperial. Absolute has cited not authority that supports this argument. An argument without authority should not be the basis of a motion for judgment.

In a supplemental brief filed and served by Absolute at 8:34 a.m. the morning of November 9, Absolute cites several cases which purports to bolster its argument that the Differing Site Condition clause is not part of the Subcontract Agreement. Upon reviewing the authorities cited, it is clear why Absolute sandbagged the filing and service of its supplemental brief: The authorities are not what they purport to be and are easily debunked. The case of *Trippe Manfg. Co. V. Niles Audio Corp.* 401 F.3d 529 (3rd Cir. 2005) refused to enforce an arbitration clause against a party who had not signed an arbitration agreement – it had nothing to do with construction contracts with standard flow down clauses. The unreported Illinois district court case of *United States of America v. F.E. Moran, Inc.* is not only lacking in any binding legal authority, and not properly cited in a brief, but it is clear that the flow down clause referenced in that contract was clear in that it was only incorporating the F.A.R. provisions listed in Exhibit B to the subcontract. This is in contrast to the broad language of the flow down clause contained in the Subcontract agreement between Imperial and Absolute. From these fact-specific cases interpreting narrow contract language, Absolute makes the sweeping, unsupported, and legally unsound assertion that unless each and every F.A.R. provision is identified in a subcontract, they do not apply. Absolute is wrong.

Finally, the motion directed against Imperial's gray paint claim is misguided if Absolute believes its attempt to eliminate the Differing Site Condition clause will eliminate the gray paint

claim. Like Absolute, Imperial's gray paint claim alternatively relies on the failure of the prime contractor to disclose its superior knowledge of the job's site conditions.

**3.    CONCLUSION.**

For the foregoing reasons, Imperial respectfully requests the motion for judgment be denied with prejudice, and that the foregoing issues be determined by the jury.

DATED: November 9, 2006                MONTELEONE & McCRORY LLP

Attorneys for Emerco, Inc., dba Imperial Industrial Coatings and Forrest J. McKinley

By 
PATRICK J. DUFFY III
WILLIAM R. BAERG

## CERTIFICATE OF SERVICE BY ECF

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I certify that on November 9, 2006, a copy of the foregoing was served by ECF on:

Eric J. Brown, ebrown@jdolaw.com
Robert J. Dickson, acgecf@acglaw.com
Patrick J. Duffy, duffy@mmlawyers.com
Jami K. Elison, jamie@mhf-law.com
Michael E. Kreger, mkreger@perkinscoie.com
Terry R. Marston, terry@mhf-law.com
Peter C. Partnow, PartnowP@LanePowell.com
James B. Stoetzer, StoetzerJ@LanePowell.com

and by facsimile on:

Paul J. Nangle
Paul J. Nangle & Associates
101 Christensen Dr.
Anchorage, AK 99501
FAX NO.:    (907) 279-1794

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on November 9, 2006, at Los Angeles, California.

*[signature]*
SALLIE RASPA