ERIC J. BROWN, ESQ.
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A. Street, Suite 300
Anchorage, Alaska 99503-4097
Telephone: (907) 563-8844
Facsimile: (907) 563-7322 (ebrown@jdolaw.com)

PATRICK J. DUFFY, III, ESQ.
WILLIAM R. BAERG, ESQ.
MONTELEONE & McCRORY, LLP
725 S. Figueroa Street, Suite 3200
Los Angeles, California 90017-5446
Telephone: (213) 612-9900
Facsimile: (213) 612-9930
(duffy@mmlawyers.com)
(baerg@mmlawyers.com)

Attorneys for Defendant and
Cross-Complainant EMERCO, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaskan Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FORREST J. McKINLEY and "JANE DOE" McKINLEY, and the marital community property composed thereof d/b/a/ "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation d/b/a/ Imperial Industrial Coatings,<br><br>    Defendants.<br><br>AND RELATED CROSS-ACTIONS | CASE NO. A-03-0199 Civil (RRB)<br><br>**POCKET BRIEF OF EMERCO, INC., DBA IMPERIAL INDUSTRIAL COATINGS RE:**<br><br>**DIFFERING SITE CONDITION CLAUSE AND PASS-THROUGH CLAIM** |

1. **Whether the Contract Language in the Imperial/Absolute Subcontract Agreement Contained a Differing Site Condition Clause is a Matter for the Jury to Determine.**

    Whether the language in the Subcontract Agreement between Imperial and Absolute (and likewise in the subcontract agreement between Absolute and Brechan) contained a Differing Site Condition clause pursuant to its numerous references to the "Contract Documents," of the IDIQ

MultiTrade Construction Contract DTCG50-01-D-643J55, is an issue appropriately submitted to the jury. *See, Lost Valley Timber v. Power City Const. Inc.* 809 F.2d (9th Cir. 1987). *Lost Valley Timber* involved the construction of a power line for the Alaska Power Authority. The subcontractor maintained that the extra work it performed was not covered by the provisions in the subcontract or prime contract. The subcontract agreement, however, made several general references to the prime contract. However, the language was not unambiguous as to what clauses were being incorporated. **Therefore, the Court of Appeals ruled, where there are conflicting inferences that can be drawn from the language of the subcontract as to what clauses are being incorporated, the issue is appropriately submitted to the jury for determination.** *Id.* at 594.

The Differing Site Condition clause is a payment clause; it provides a means to pay the contractor for the extra costs incurred to perform work caused by the discovery of differing site conditions. Brechan freely admits that its contract with the U.S. Coast Guard contained a Differing Site Condition clause. [Docket No. 225, p. 7, fn. 4]. The Differing Site Condition Clause was incorporated into the Subcontract Agreement between Absolute and Imperial by way of the references to the Contract Documents. In addition to the contract provisions set forth in Imperial's Opposition to Motion to Dismiss [Docket No. 479], the following payment language also appeared in the Subcontract Agreement at Article 4: "Adjustments, if any, in the contract price or contract time resulting from changes shall be set forth in a Subcontract Change Order pursuant to the Contract Documents." **This is a clear representation that a changes in payment to the lump sum contract will be made pursuant to the provisions of the Contract Documents of the IDIQ MultiTrade Construction Contract DTCG50-01-D-643J55 – i.e., the Differing Site Conditions Clause.** To the extent Absolute's contention that the Subcontract Agreement is ambiguous as to whether it incorporates the Differing Site Condition clause has merit, then it is – at the very least – an issue for the jury to determine.[1]

---

[1] This Court granted Brechan's motion for summary judgment on Absolute's differing site condition claim. [Docket No. 339]. However, Absolute may move for reconsideration. FRCP 59(e), 60(b); *School Dist. No. 1J, Multnomah Co. v. AcandS, Inc.*, 5 F.3d 1255 (9th Cir 1993).

2.  **A Contractor is Liable to a Subcontractor for Breach of the Implied Warranty of the Correctness of the Plans and Specifications and for the Owner's Misrepresentations of Site Conditions.**

In this case, Absolute furnished the plans and specifications to Imperial, which plans and specifications affirmatively represented that "The existing coating is a coal tar epoxy." [Exhibit A-248, Subcontract Agreement, Article 9, Attachment V, Section 09967, Part 1.1.3]. As the evidence has shown, this was not only an incorrect representation of the site conditions (the existing coating also consisted of a concealed layer of gray paint), but it was an affirmative concealment of superior knowledge of the project's true site conditions by Brechan.

It is a well settled legal doctrine that by furnishing plans and specifications to the contractor, the owner impliedly warrants their correctness and if they are incorrect, the owner has breached the warranty. *United States v. Spearin* (1918) 248 U.S. 132; *Laburnum Construction Corp. v. United States* (1963) 163 Ct.Cl. 339; *Souza & McCue Construction Co. v. Superior Court* (1962) 57 Cal.2d 508; *Welch v. State* (1983) 139 Cal.App.3d 546.

Absolute suggests that where the owner of a construction project knowingly furnishes misleading plans and specifications to the prime contractor, and as a result the prime contractor is damaged, then the prime contractor can recover damages, but the prime contractor's subcontractors who are equally damaged by the misleading plans and specifications somehow cannot recover their losses. The reason Absolute's position is counterintuitive to the maxim, "For every wrong there is a remedy," [Cal. Civil Code § 3523] is because its position is wrong.

When a contractor furnishes the public entity's plans and specifications for a project to its subcontractor, the contractor becomes liable to the subcontractor for breach of the implied warranty of correctness of the plans and specifications. *Centex Construction Co. v. James*, 374 F.2d 921, 924 (8th Cir. 1967) (In finding a contractor liable for breach of the implied warranty of correctness to its subcontractor the court noted, "It is well settled that where one party furnishes plans and specifications for a contractor to follow in a construction job, he impliedly warrants their sufficiency for the purpose in view."). Similarly, where a public entity has superior knowledge of adverse conditions and knowingly conceals those conditions in the plans and

1  specifications it furnishes to its prime contractor, a subcontractor who is damaged by the non-
2  disclosure may properly bring an action against the prime contractor, who in turn may sue the
3  public entity on behalf of the subcontractor as a "pass-through" claim. *Howard Contracting, Inc.*
4  *v. G.A. MacDonald Construction Co.*, 71 Cal.App.4th 38, 83 Cal.Rptr.2d 590 (1998). In other
5  words, the prime contractor stands in the shoes of the misrepresenting owner. Accordingly, the
6  jury may properly determine Imperial's claim for additional compensation based on the
7  concealed gray paint.

9  DATED: November 13, 2006                MONTELEONE & McCRORY LLP
10                                          Attorneys for Emerco, Inc., dba Imperial Industrial
                                            Coatings and Forrest J. McKinley

14                                          By _____
15                                             PATRICK J. DUFFY III
                                               WILLIAM R. BAERG

# CERTIFICATE OF SERVICE BY ECF

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I certify that on November 13, 2006, a copy of the foregoing was served by ECF on:

Eric J. Brown, ebrown@jdolaw.com
Robert J. Dickson, acgecf@acglaw.com
Patrick J. Duffy, duffy@mmlawyers.com
Jami K. Elison, jamie@mhf-law.com
Michael E. Kreger, mkreger@perkinscoie.com
Terry R. Marston, terry@mhf-law.com
Peter C. Partnow, PartnowP@LanePowell.com
James B. Stoetzer, StoetzerJ@LanePowell.com

and by facsimile on:

Paul J. Nangle
Paul J. Nangle & Associates
101 Christensen Dr.
Anchorage, AK 99501
FAX NO.:     (907) 279-1794

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on November 13, 2006, at Los Angeles, California.

_____
SALLIE RASPA