Terry R. Marston, *pro hac vice,* terry@mhf-law.com
Jami K. Elison, *pro hac vice,* jamie@mhf-law.com
MARSTON HEFFERNAN FOREMAN, PLLC
16880 N.E. 79th Street
Redmond, Washington  98052
(425) 861-5700

PAUL J.  NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska  99501
Telephone:  (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation.<br><br>Defendants. | Case No.: A03-0199CV (RRB)<br><br><br><br><br>**OBJECTIONS TO PROPOSED JURY INSTRUCTIONS AND ABSOLUTE'S PROPOSED ALTERNATIVE INSTRUCTIONS** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>Counterclaimant/Third-party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al.,<br><br>Cross-defendants/Third-party Defendants. | |

| | |
|---|---|
| THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | )<br>)<br>)<br>)<br>) |
| Plaintiff,<br>vs. | )<br>) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | )<br>) |
| Defendants. | )<br>) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | )<br>) |
| Counterclaim Plaintiff,<br>vs. | )<br>) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | )<br>) |
| Counterclaim Defendant. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | )<br>) |
| Third-Party Plaintiff,<br>vs. | )<br>) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | )<br>)<br>) |
| Third-Party Defendant. | )<br>) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | )<br>) |
| Plaintiff/Cross-claimant,<br>vs. | )<br>) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | )<br>)<br>) |
| Third-Party Defendant. | )<br>) |

OBJECTIONS TO PROPOSED JURY INSTRUCTIONS AND ABSOLUTE'S PROPOSED
ALTERNATIVE INSTRUCTIONS
Case No. A03-0199CV (RRB)-- 2

Absolute objects to proposed jury instructions on the topics indicated below and submits the following proposed alternative instruction for those topics:

Contract, Terms, Implied, "Doctrine of Superior Knowledge"

A party hiring a contractor must disclose vital information in its possession not otherwise available to the contractor at the time of bidding. If a party hiring a contractor occupies so uniquely-favored a position with regard to the information at issue that no ordinary bidder in the plaintiff's position could reasonably acquire that information without resort to the party hiring the contractor, a failure to disclose such knowledge constitutes a breach of contract.

Where resort to the party hiring the contractor is the only reasonable avenue for acquiring the information, the party hiring the contractor must disclose, and may not claim as a defense either the contractor's failure to make an independent inquiry or exculpatory language in the contract documents.

*Morrison-Knudsen Co. v. State*, 519, P.2d 834, 841 (Alaska 1974). Bednar, et al, *Construction Contracting*, Government Contracts Program, George Washington University, Washington, D.C. pp. 567-68 (1991).

Contract, Terms, Implied, "Warranty of Plans & Specifications"

The implied warranty of specifications allocates the risk to the party providing the specifications when the specifications it furnishes are not suitable for their intended purpose. As the provider of the specifications, the party providing them impliedly warrants their adequacy for the use intended.

"Prescriptive" specifications describing a method of performance or particular processes that a contractor is to follow are warranted by the party providing them. Implied warranties of specifications generally arise out of provisions dealing with the details of the work.

"Performance" specifications detail the performance characteristics of the end product and are distinguished from design specifications, which dictate contactor performance. There is no implied warranty if the specification provides only for the attainment of end results.

This implied warranty of specifications attaches to the furnished specifications even though the party providing them does not actually prepare the specifications. The party providing them is liable when it obtains the specifications from an architect or engineer of its own and provides them to the contractor.

The implied warranty of specifications extends to each specified alternate method of performance. Thus, if the contractor selects from among alternative methods in the specification, the owner will be liable if the alternative chosen does not accomplish the desired results.

Although performance to defective specifications may in some cases be literally impossible, a finding of impossibility or commercial impracticability is not a necessary element of the implied warranty of specifications.

*See, e.g., Northern Corporation v. Chugach Elec. Assoc.*, 523, P.2d 1243 (Alaska 1974).

Exculpatory Provisions

 Exculpatory provisions will not be enforced when the government fails to disclose to the contractor specific information in its possession.

Bednar, et al, *Construction Contracting*, Government Contracts Program, George Washington University, Washington, D.C. pp. 487-88 (1991).

Quantification, quantification using the best means available under the circumstances

The contractor generally proves costs by submitting the best available evidence under the circumstances.

Without a contractual requirement to segregate costs, the contractor will not be prejudiced if its accounting records are not in sufficient detail to determine the costs of a change.

*Keco Industries, Inc*. ASBCA 15061, 72-1 BCA ¶ 9450 (1972); Bednar, et al, *Construction Contracting*, Government Contracts Program, George Washington University, Washington, D.C. pp. 706 (1991).

<u>Brechan's Affirmative Defenses to Claims of Absolute</u>

The party claiming the benefit of the adjustment has the burden of proof to establish the amount of the price adjustment. To fulfill this burden, a party must show the reasonableness of the claimed costs and its causal connection to the event on which the claim is based. The standard in determining whether this burden has been met is the "preponderance of the evidence" test.

The burden is on the claimant to show that he has suffered damages as a result of the Owner's conduct and to furnish a rational basis for the Court to estimate those damages. The standard of proof is satisfied if a reasonable basis for the amount's computation is established.

A claimant need not prove his damages with absolute certainty or mathematical exactitude. It is sufficient if he furnishes the court with a reasonable basis for computation, even though the result is only approximate. Yet this leniency as to the actual mechanics of computation does not relieve the contractor of its essential burden of establishing the fundamental facts of liability, causation and resultant injury.

*Wunderlich Contracting v. U.S.*, 351 F. 2d 956 (Ct. Cl. 1965); *WRB Corp. V. U.S.*, 183 Ct. Cl. 409 (1968). Bednar, et al, *Construction Contracting*, Government Contracts Program, George Washington University, Washington, D.C. p. 702 (1991).

<u>Coffman's Affirmative Defenses to Claims of Absolute; Failure to mitigate.</u>

Actual costs incurred are presumed to be reasonable. Therefore, the burden is on the party challenging actual costs to prove by a preponderance of the evidence that they were not reasonable. Normally, a contractor has great discretion in performing the work. For this reason, costs will not be deemed unreasonable, unless the contractor has abused its discretion.

*Bruce Corporation v. U.S.*, 324 F. 2d 516 (Ct. Cl. 1963). Bednar, et al, *Construction Contracting*, Government Contracts Program, George Washington University, Washington, D.C. p. 704 (1991).

Total Cost Method

    The total cost method will not be used if there is another, more reliable method available to establish the cost. The four safeguards of the total cost method are proof that (1) the nature of the particular losses makes it impossible or highly impracticable to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs were reasonable; and (4) it was not responsible for the added expenses.

*Wunderlich Contracting v. U.S.*, 351 F. 2d 956 (Ct. Cl. 1965); *WRB Corp. V. U.S.*, 183 Ct. Cl. 409 (1968).

<u>Jury Verdict Method</u>

If competent but conflicting evidence is introduced, the trier of fact can use a "jury verdict" to arrive at the adjustment amount. This is a figure which in the view of the trier of the fact is fair in the light of all of the facts of the case, or, put another way, is supported by consideration of the entire record.

*Johnson, Drake, & Piper, Inc.*, ASBCA 9824, 65-2 BCA ¶ 4868 (1965). *Joseph Pickard's Sons Co. v. U.S.*, 532 F.2d 739 (Ct. Cl. 1976). Bednar, et al, *Construction Contracting*, Government Contracts Program, George Washington University, Washington, D.C. p. 714 (1991).

Absolute's Claims Against Brechan

Absolute alleges that Brechan caused it substantial damages by breaching its contract duties to Absolute in one or more of the following ways:

- by failing to pay Absolute its contract price after it completed the work on the Cargo Wharf (by back-charging Absolute on the Cargo Wharf and other unrelated Brechan projects);

- by failing to inform Absolute about the existence of site conditions Brechan knew of that were material to the cost of the work and that were not visible to a contractor performing a normal pre-bid site visit;

- by providing Absolute with plans and specifications that would not result in acceptable work under the specification's acceptance criteria when the work was performed in accordance with those specifications;

- by providing Absolute with plans and specifications that were incapable of being performed in the manner specified;

- by breaching a duty to Absolute which, in turn, resulted in Absolute breaching a similar duty owed to Imperial; and

- by failing to pay for the costs Absolute incurred at Brechan's request in repairing Swalling's Phase I work.

Absolute's Claims Against Coffman

Absolute alleges that Coffman caused it substantial damages by failing to exercise reasonable care as a corrosion engineer when preparing the Phase II Cargo Wharf specifications in one or more of the following ways:

- by preparing specifications that failed to inform Absolute about the existence of known site conditions materially effecting the cost of the work that would not be visible during a standard pre-bid site visit, or

- by preparing specifications that Coffman knew or should have known would not produce work that met the required acceptance criteria when performed according to the specifications, or

- by preparing specifications that required the work to be performed in a manner that could not be done?

<u>Absolute's Claims Against Imperial</u>

Absolute alleges that Imperial caused it substantial damages by breaching contract duties to Absolute in one or more of the following ways:

- by failing to perform quality control (QC) duties as specified, or
- by failing to timely perform its work in accordance with the project schedule, or
- by failing to possess a certification by the coating manufacturer to apply the specified coating products, and/or
- by failing to complete the work.

Imperial's Claims Against Absolute

Imperial alleges that Absolute caused it substantial damages by breaching contract duties to Imperial in the following ways:

- by failing to pay the full amount Imperial charged for work on the Cargo Wharf Project;
- by failing to pay Imperial profit for the portion of the Cargo Wharf project that Imperial did not perform after it terminated its subcontract with Absolute;
- by failing to pay Imperial additional compensation for allegedly deficient removal of cathodic protection cables;
- by failing to provide Imperial with additional compensation to remove gray paint;
- by failing to provide Imperial with additional compensation to coating bracing between Bents 12 and 13;
- by failing to provide Imperial with additional compensation for removal of non-structural steel;
- by failing to provide Imperial with additional compensation for stripe coating and caulking;
- by failing to pay Imperial profit on the N/12 & N/60 fuel tank coating project that it did not perform; and
- by failing to pay Imperial for materials and equipment at the prices stated in a letter to Absolute dated August 7, 2003 from Imperial's attorney, William Baerg.

<u>Brechan's Claims Against Absolute</u>

Brechan alleges that Absolute caused it to sustain substantial damages by breaching a contract clause requiring Absolute to reimburse legal fees incurred by Brechan defending itself from claims for bodily injury or property damage arising out of the negligence of Absolute.

<u>Damage Awards; Separation of Awards for Breaches of Contract and for Breaches of Other Duties, Such as Negligence.</u>

The Court, rather than you the jury, is responsible for assuring that any party to whom you make a damage award does not under alternative legal theories recover a damage award exceeding the actual amount of the losses claimed for.

Therefore, when determining amounts of damage awards for breaches of contract, the amount of the award for all breaches of contract may not exceed the total amount of damages claimed by the party to whom the award is made. However, no reduction or offsets to an award for breach of contract should be made based on any amounts awarded for breach of non-contractual (tort) duties.

Likewise, when determining amounts of damage awards for breaches of non-contractual (tort) duties, the amount of the award for all such breaches may not exceed the total amount of damages claimed by the party to whom the award is made. However, no reduction or offsets to an award for breaches of non-contractual (tort) duties should be made for amounts awarded for breach of contract.

DATED this 14th day of November, 2006.

MARSTON HEFFERNAN FOREMAN, PLLC

By s/Jami K. Elison                         .
  Terry R. Marston II, WSBA No. 14440
  Jami K. Elison,   WSBA No. 31007
  Attorneys for Plaintiff Absolute Environmental Service, Inc.

I hereby certify that on the date given a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system and was served electronically on the following:

William R. Baerg, Patrick J. Duffy
Eric J. Brown
Robert J. Dickson
Michael Kreger, Jacob Nist
James B. Stoetzer, Peter C. Partnow

s/ Jami K. Elison                         .

OBJECTIONS TO PROPOSED JURY INSTRUCTIONS AND ABSOLUTE'S PROPOSED
ALTERNATIVE INSTRUCTIONS
Case No. A03-0199CV (RRB)-- 16