1   ERIC J. BROWN, ESQ.
    JERMAIN DUNNAGAN & OWENS, P.C.
2   3000 A. Street, Suite 300
    Anchorage, Alaska 99503-4097
3   Telephone: (907) 563-8844
    Facsimile: (907) 563-7322 (ebrown@jdolaw.com)
4
    PATRICK J. DUFFY, III, ESQ.
5   WILLIAM R. BAERG, ESQ.
    MONTELEONE & McCRORY, LLP
6   725 S. Figueroa Street, Suite 3200
    Los Angeles, California 90017-5446
7   Telephone: (213) 612-9900
    Facsimile: (213) 612-9930
8   (duffy@mmlawyers.com)
    (baerg@mmlawyers.com)
9
    Attorneys for Defendant and
10  Cross-Complainant EMERCO, INC.

11

12                  **IN THE UNITED STATES DISTRICT COURT**

13                    **FOR THE DISTRICT OF ALASKA**

14   ABSOLUTE ENVIRONMENTAL SERVICES,   )   CASE NO. A-03-0199 Civil (RRB)
     INC., an Alaskan Corporation,        )
15                                         )   **MOTION FOR NEW TRIAL OR IN**
              Plaintiff,                   )   **THE ALTERNATIVE MOTION FOR**
16                                         )   **ORDER TO ALTER OR AMEND**
      v.                                   )   **JUDGMENT**
17                                         )
     FORREST J. McKINLEY and "JANE DOE"    )   **[FRCP 59]**
18   McKINLEY, and the marital community property )
     composed thereof d/b/a/ "Imperial Industrial )
19   Coatings" and EMERCO, INC., a California )
     Corporation d/b/a/ Imperial Industrial Coatings, )
20                                         )
              Defendants.                  )
21   _____)
                                           )
22   AND RELATED CROSS-ACTIONS             )
     _____)

23

24                           **INTRODUCTION**

25          Comes now defendant and cross-claimant Emerco, Inc., dba Imperial Industrial

26   Coatings ("Imperial") and moves the Court for an order granting a new trial on the claims

27   asserted by Imperial against plaintiff and cross-defendant Absolute Environmental Services, Inc.

28   ("Absolute") and on the claim for damages Absolute sought against Imperial in this action,

1 | pursuant to Federal Rule of Civil Procedure 59.  This motion is made on the grounds that the
2 | verdict was against the clear weight of the evidence, including evidence that was not
3 | controverted; and was tainted by the prejudicial conduct of counsel during trial.  Alternatively,
4 | Imperial moves this Court to correct the Jury Verdict to conform to the undisputed evidence
5 | and to enter a judgment in this matter that conforms to the undisputed evidence as set forth in
6 | this motion.

7

8 | **BACKGROUND**

9 | *A.    Facts Pertaining to Prejudicial Conduct of Counsel*

10 | Trial of this action commenced on October 2, 2006.  Imperial, a California corporation,
11 | was represented by attorney Patrick J. Duffy.  Absolute, an Alaska corporation, was
12 | represented by attorney Terry R. Marston.  At the outset of the trial the Court ordered that no
13 | mention of the locale of Mr. Duffy's law office or that he was a Los Angeles or California
14 | lawyer should be disclosed to the jury.  Notwithstanding that order, a few days later counsel for
15 | plaintiff and cross-defendant, Terry Marston, displayed to the jury two letters written by Mr.
16 | Duffy's office at the time of the Cargo Wharf contract lock-out/termination with the name and
17 | address of Mr. Duffy's law firm displayed even though Mr. Duffy had given Mr. Marston
18 | copies of the exhibits with that information deleted.  Thereafter, Peter C. Partnow, attorney for
19 | defendant Coffman Engineers, Inc., displayed Imperial's answers to interrogatories to the jury
20 | which included Mr. Duffy's name and his law firm's name and address at the top of the page.
21 | At the end of the trial, Mr. Marston questioned Mr. Forrest J. McKinley (president of Imperial)
22 | about visiting Mr. Duffy's office in Los Angeles.  There were various other references to
23 | Mr. Duffy and his law firm's locale during the trial.  During closing argument, Mr. Martson
24 | even ridiculed the dollar amount of Imperial's claims by prejudicially referring to them as
25 | having "Beverly Hills" prices.  Clearly, the intent of Mr. Marston's comments during trial and
26 | closing argument was to "home-town" Imperial, that is, to prejudice the jury against Imperial –
27 | a southern California company – in favor of Absolute, a local Alaska company.  There was no
28 | / / /

1  way Mr. Duffy could object to any of these actions as it would only have served to increase the
2  focus on the prejudicial nature of the proffers.

3  **B.    *Facts Establishing Imperial's Undisputed Damages***

4          During the trial Imperial offered evidence that it had earned $116,309.68 for contract
5  work performed above the amount it was paid on the project. The only counter evidence
6  offered by Absolute was the testimony of David Olson (Absolute's president) that he did not
7  believe Imperial had credited the direct $50,000.00 payment made by defendant Brechan
8  Enterprises, Inc., ("Brechan") to the paint supplier, SPC, against that sum. In final argument,
9  Mr. Marston presented Absolute's calculation of the amount Imperial was unpaid for contract
10 work as being $50,000.00. Accordingly, there was undisputed evidence that Imperial was
11 owed at least $50,000.00 for unpaid contract work. In addition, it was undisputed that Imperial
12 earned $850.00 for removal of certain conduits, but was not paid for the work. Brechan also
13 admitted that it owed Absolute $850.00 for the conduit removal.

14         The contract (Exhibit 1-248) clearly identified that Imperial's work began at Bent 13.
15 Notwithstanding that fact, it is undisputed that Imperial was directed to paint the cross-bracing
16 between Bent 12 and Bent 13. Imperial presented evidence that it earned $29,202.64 for this
17 work. There was no counter evidence presented by Absolute on damages. The only "defense"
18 to this claim was the testimony of Mr. Olson that Mr. Tom Puett (Imperial's employee) agreed
19 to trade this work for a jacket bearing Absolute's company logo. Mr. Olson not only admitted
20 that the asserted trade is not reflected in any letter or other document discussing the dispute
21 between the parties, but he admitted he never gave or tendered the jacket to Mr. Puett.

22         The evidence was undisputed that Absolute/Brechan were required to remove the
23 cathodic protection wires and anodes out of Imperial's way, but that they failed to do so despite
24 demand of Imperial that they do so at the outset of the project and the promise that the work
25 would be done. The added costs for Imperial of $7,476.32 in dealing with this interference
26 were also undisputed by any party.

27         No evidence was presented in support of the contention (Verdict issues 33 and 34) that
28 Imperial materially failed to perform its quality control functions on the project. The only

1    evidence presented was that Absolute sent letters contending such was the case, but no evidence

2    was presented on the issue by Absolute. The only person who might have offered such evidence

3    was Mr. Olson who admitted he had no percipient knowledge on the issue, but relied on

4    hearsay information from the job site in sending the "notice to cure" letters.  Such information

5    was not received in evidence for the truth of the matters asserted.  On the contrary, Imperial

6    presented evidence without rebuttal, including the expert testimony of Mr. Mark Schilling, that

7    it did comply with the contract's quality control requirements.

8        Finally, all elements necessary to establish Absolute's liability for the conversion/forced

9    sale of Imperial's materials and equipment (Jury Instruction No. 49) were proved by

10    uncontroverted evidence, including the fact that there was no contract provision permitting

11    Absolute to hold and use Imperial's property for completion as exists in some contracts.  To

12    wit, Imperial established through uncontroverted evidence that (1) Imperial owned or had the

13    right to possess the property; (2) Absolute interfered with Imperial's right to possess the

14    property; (3) Absolute's act or omission was intentional; and (4) Absolute's act or omission was

15    the legal cause of Imperial's loss.  Hence, the liability of Absolute was established and there

16    was not a scintilla of evidence to support the jury's verdict to the contrary.  With respect to the

17    amount of damages, although Imperial presented evidence that the equipment and materials

18    seized by Absolute in August 2002 was valued at $518,123, the undisputed minimum value of

19    the materials and equipment taken by Absolute from Imperial was $78,959.50, as reflected in

20    the testimony and report of Absolute's retained expert Michael Tope of Alaska Equipment

21    Appraisers (Trial Exhibit A-369).

22    *C.    Facts Refuting Breach of Contact Allegations Against Imperial*

23        The jury's finding on Jury Verdict Question 1, which asked whether Imperial failed to

24    perform its obligations under the Absolute/Imperial cargo wharf subcontract, was answered in

25    the affirmative by the jury.  The jury's finding on Jury Verdict Question 1 is both inconsistent

26    with its other findings and is against the weight of the evidence and the law, and should be

27    reversed.

28    / / /

1    Jury Instruction No. 33 required the jury to find that "The coating applicators performed

2    their work in accordance with the prescribed methods and in a workmanlike manner," in order

3    to find in favor of Absolute on its claims against Brechan. Hence, by finding in favor of

4    Absolute against Brechan (*see* Jury Verdict Questions 11 and 19), the jury necessarily found

5    that Imperial performed its work in accordance with the prescribed methods and in a

6    workmanlike manner. Accordingly, the jury's findings against Imperial are inconsistent with

7    the findings in favor of Absolute, and are against the weight of the evidence and must be

8    reversed.

9    Moreover, Jury Instruction Nos. 25 and 40 provide that a party is not in breach of

10    contract for failing to perform if there was a legal excuse for that failure, or if the party seeking

11    damages failed to mitigate its losses. The weight of the evidence presented at trial established

12    that Imperial was excused from performance by virtue of the improper revocation of its coating

13    certificate by SPC and by Absolute's unreasonable refusal to permit Imperial to continue

14    working on the project.

15    With respect to the decertification by SPC, there is no gainsaying that it was both

16    improper and ineffective as to Imperial. Charlie Mathias, an SPC representative, admitted

17    during his testimony that painters are certified, **not** companies (such as Imperial). Therefore,

18    so long as Imperial had employees who were still certified (which it did), then Imperial could

19    continue to perform the coating work. Further, substantial evidence supported the finding that

20    the decertification was without basis; SPC's president Rob Alliston admitted during his

21    testimony that he sent Mr. Mathias out to the job site to inspect the work as a precursor to

22    decertification – before observing the means, methods or quality of the work. In other words,

23    it was a *fait accompli*. Mr. Mathias, on the other hand, contradicted Mr. Alliston's testimony

24    and claimed he decertified "Imperial" because he had an argument with one of its employees.

25    Under either diametrically-opposed factual scenario, decertification was improper.

26    David Olson, Absolute's president, following receipt of the decertification notice from

27    SPC, unilaterally and without discussing the decertification notice with Imperial, issued an

28    unreasonably short 24-hour notice to cure providing that unless Imperial was re-certified by

1   SPC, Absolute would complete Imperial's work. Absolute did not act in good faith, refused to

2   speak with Tom Puett about the basis for the decertification (Mr. Olson testified he had been

3   unwilling to speak to Mr. Puett for the past several weeks) and made no effort to mitigate its

4   damages or meet with Imperial and SPC. Absolute locked Imperial off and prevented Imperial

5   from completing the work, or providing Imperial with a reasonable opportunity to resolve the

6   decertification dispute with SPC. Absolute was clearly looking for a way to kick Imperial off

7   the job and it used what should have been a minor and curable dispute with SPC as a subterfuge

8   to terminate Imperial.

9

10                                    **ARGUMENT**

11          A new trial may be granted where the verdict is against the weight of the evidence or

12   that for other reasons, such as the misconduct of opposing counsel, the trial was not fair. *See*

13   *generally*, Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2805.

14   Federal Rule of Civil Procedure 59(a) provides that a new trial may be granted to all or any of

15   the parties and on all or part of the issues in an action in which there has been a trial by jury for

16   any of the reasons for which new trials have been granted in actions at law in the courts of the

17   United States. A motion for new trial must be filed no later than 10 days after entry of

18   judgment. FRCP 59(b); *Tillman v. Association of Apartment Owners of Ewa Apartments*,

19   234 F.3d 1087, 1089 (9th Cir. 2000). Filing a motion for new trial before entry of judgment

20   satisfies the time requirement. *Larez v. City of Los Angeles*, 946 F.2d 630, 636 (9th Cir. 1991).

21   Unlike a motion for judgment as a matter of law, a motion for a new trial does not have to be

22   preceded by a motion prior to the submission of the case to the jury. *Freund v. Nycomed*

23   *Amersham*, 347 F.3d 752 (9th Cir. 2003). District Courts also have power to "alter or amend"

24   a judgment by motion under Rule 59(e). Hence, where a general contractor prevailed on a

25   motion for a new trial on the issue of damages awarded to a subcontractor for delay, conversion

26   and unjust enrichment claims, the contractor was entitled to elect between a new trial or a

27   reduced judgment that omitted the flawed awards. *MacQuesten General Contracting, Inc. v.*

28   *HCE, Inc.*, 296 F.Supp. 37 (S.D.N.Y. 2003).

1    The rule governing new trial motions has a less stringent standard than the rule

2   governing motions for judgment as matter of law in two significant respects: (1) a new trial may

3   be granted even if there is substantial evidence supporting the jury's verdict; and (2) the trial

4   judge is free to weigh evidence and need not view it in a light most favorable to the verdict

5   winner. FRCP 50, 59(a). Indeed, the trial judge has a duty to set aside a verdict even though

6   it is supported by substantial evidence, if the judge "is of the opinion that the verdict is against

7   the clear weight of the evidence. . . ." *Gill v. Rollins Protective Services Co.*, 773 F.2d 592,

8   594 (4th Cir. 1985). There is no verbal formula to explain this concept. All that can be said is

9   that a verdict should be set aside where, after giving full respect to the jury's findings, the

10   judge "is left with the definite and firm conviction that a mistake has been committed by the

11   jury." *Landes Construction Co., Inc. v. Royal Bank of Commerce*, 833 F.2d 1365, 1371-1372

12   (9th Cir. 1987). The trial court does not presume the verdict is correct; nor need it view the

13   evidence in the light most favorable to the party in whose favor the verdict was reached. *Id.* at

14   1371.

15    In addition, prejudicial misconduct by opposing counsel is grounds for a new trial. A

16   new trial may be ordered where opposing counsel committed misconduct at trial that made it

17   reasonably probable that the verdict was influenced by prejudicial statements. *Tesser v. Board*

18   *of Education of City School Dist. of City of New York*, 370 F.3d 314, 321 (2nd Cir. 2004).

19    In this case, as noted above, the evidence conceded by Absolute was that Imperial was

20   entitled to damages totaling $166,488.46 (contract balance, conduit removal, bents 12/13 work,

21   removal of cathodic protection, and value of goods and materials). In addition, the sum

22   awarded to Absolute for quality control services ($48,818.70) was not supported by the

23   evidence and was in fact against the clear weight of the evidence. Given the findings of the

24   jury against the other defendants (Brechan and Coffman), and the evidence adduced at trial as

25   noted above, the most reasonable explanation for the resulting jury verdict against Imperial was

26   the bias that Absolute's attorney encouraged the jury to harbor against the out-of-town

27   company, Imperial in favor of the local company, Absolute.

28   / / /

**CONCLUSION**

For the foregoing reasons, Imperial respectfully requests that this Court order a new trial on the damages claimed by Imperial against Absolute and the quality control damages Absolute sought against Imperial. Alternatively, Imperial requests the Court to correct the jury verdict to conform to the evidence and enter judgment accordingly as follows:

Jury Question No. 1 – No

Jury Question No. 3 – Yes

Jury Question No. 4 – Yes

Jury Question No. 9 – Yes

Jury Question No. 10 – Yes

Jury Question No. 22 – $0

Jury Question No. 33 – No.

Jury Question No. 34 – $0

Jury Question No. 35 – $87,528.96

Jury Question No. 37 – $78,959.32

DATED: December 29, 2006          MONTELEONE & McCRORY LLP

                                 Attorneys for Emerco, Inc., dba Imperial
                                 Industrial Coatings

                                 By _____
                                      PATRICK J. DUFFY III
                                      WILLIAM R. BAERG

1

**CERTIFICATE OF SERVICE BY ECF**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

   I certify that on January 3, 2007, a copy of the foregoing was **served by ECF** on:

Eric J. Brown, ebrown@jdolaw.com                    Patrick J. Duffy, duffy@mmlawyers.com

4

Peter C. Partnow, PartnowP@LanePowell.com            James B. Stoetzer, StoetzerJ@LanePowell.com

Michael E. Kreger, mkreger@perkinscoie.com           Jami K. Elison, jamie@mhf-law.com

5

Terry R. Marston, terry@mhf-law.com

**and by facsimile on**:      Paul J. Nangle, Paul J. Nangle & Associates  [FAX NO.:  (907) 279-1794]

6

I declare under penalty of perjury under the laws of the United States that the above is true and correct.  Executed on

7

January 3, 2007, at Los Angeles, California.

8

9

_Sallie Raspa_

10

                    SALLIE RASPA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28