Michael E. Kreger
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561
(907) 276-3108 (Facsimile)
mkreger@perkinscoie.com

Attorneys for Defendants Brechan Enterprises, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>    Plaintiff,<br>v.<br><br>FORREST J. MCKINLEY, et al.,<br><br>    Defendants. | Case No. 3:03-cv-0199-RRB |

**MOTION TO ESTABLISH THE PENAL SUM OF THE BOND ISSUED BY SAFECO INSURANCE COMPANY OF AMERICA**

Safeco Insurance Company of America ("Safeco"), by and through its attorneys, Perkins Coie LLP, hereby moves to establish the penal sum of the bond.

# I. INTRODUCTION

## A. Plaintiff's Claims

This claim arises out of a federal construction project in Kodiak, Alaska. The United States Coast Guard ("USCG") contracted with Brechan Enterprises, Inc. ("Brechan") to, in part, remove the existing coatings off a cargo wharf and apply new coating so that the wharf would not rust (hereinafter the "Project"). Complaint for Damages and Restitution against Brechan Enterprises and Safeco Ins. Co. of America, at ¶4 (June 22, 2005), Docket No. 104 (hereinafter the "Absolute Complaint"). Pursuant to the Miller Act, 40 U.S.C. § 3133(a)(2), Brechan obtained a payment bond from Safeco. Safeco's only interest or potential liability in this lawsuit is as the surety for Brechan.

## B. Absolute Sued Safeco Under the Miller Act on June 22, 2005

Absolute sued both Brechan and Safeco on June 22, 2005, alleging that it is entitled to additional compensation for work it performed on the Project. There is a single cause of action pled against Safeco – a claim under the Miller Act, 40 U.S.C. § 3133. The Miller Act provides that the action must be brought in the "name of the United States" for the use and benefit of the subcontractor (in this case Absolute). 40 U.S.C. § 3133(b)(3)(A). Therefore, although the United States is technically the plaintiff asserting claims against Safeco, Absolute is the real party in interest. In an effort to lessen any confusion throughout this motion, Safeco will refer to the plaintiff as Absolute. Absolute alleges that Brechan had actual knowledge of "material latent defective conditions" about which it had a

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

duty, but failed, to notify Absolute. Absolute Complaint at ¶ 105, Docket No. 104. In its complaint, Absolute set forth numerous legal theories against Brechan and a Miller Act cause of action against Safeco. Absolute did not allege any wrongdoing on the part of Safeco.

Per agreement of the parties and the Court, the issues regarding the penal sum of the bond and the limits of Safeco's derivative liability were bifurcated from the jury trial.

## II. ARGUMENT

### A. The Miller Act

Absolute has asserted a claim against Safeco under the Miller Act payment bond issued to Brechan, as principal, for the Project. The bond protects persons having a direct relationship with the principal or subcontractors of the principal who have "furnish[ed] labor, material, or both in the prosecution of the work provided for in the contract" identified in the payment bond. See e.g. Payment Bond 6165609, attached hereto as Exhibit 1. The Miller Act provides:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material *for which the claim is made may bring a civil action on the payment bond for the amount unpaid* at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

40 U.S.C. §3133(b)(1) (emphasis added). By the terms of the Miller Act and the bond issued on the Project, Absolute's sole remedy against Safeco is limited to unpaid amounts owing for labor and materials.

### B. Liability is Limited to the Penal Sum of the Bond

The "penal sum of the bond is that definite amount that is generally on the face of the bond and is normally based on the underlying contract amount." Schwartzkopf, Practical Guide to Construction Contract Surety Claims § 7.01(A) (2d ed. 2006). The Miller Act requires that a payment bond issued thereunder equal the total contract amount, or if that amount is impractical, the contracting officer is to set the amount of the payment bond. 40 U.S.C. § 3131(b)(2). The obligation of a surety is "created solely by the bond and is limited thereby and by the equities growing out of the suretyship relation. In any suit upon the bond, at least against the surety, the nominated penalty [i]s to be the limit of recovery." American Surety Co. of N.Y. v. Westinghouse Elec. Mfg. Co., 296 U.S. 133, 136-37 (1935). See also Covenant Mutual Ins. Co. v. Able Concrete Pump, 609 F.Supp. 27, 31 (N.D. Cal. 1984); Schwartzkopf, Practical Guide to Construction Contract Surety Claims at § 7.01(A).

#### 1. The Penal Sum on the Face of the Bond Applicable to the Project is $100,000.

Brechan's contract with the USCG incorporated Federal Acquisition Regulation ("FAR") 52.228-15. That provision requires that "[t]he penal amount of payment bonds at the time of contract award shall be 100 percent of the original

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

contract price." 48 C.F.R. § 52.228-15(b)(2). The contract further states that, "for the purpose of determining the contract price, the guaranteed minimum of $100,000 will apply." Contract between Brechan and the USCG, Request for Proposals, attached hereto as Exhibit 2, at § I.1, p. 83-84 (2002). See also 48 C.F.R. § 28.102-2(a) ("'Original contract price' means . . . for indefinite-quantity contracts, the price payable for the specified minimum quantity."). The penal sum named on the face of the bond for the relevant contract, Safeco Bond Number 6165609, is $100,000.00. Ex. 1.

Exhibit A to Absolute's Complaint against Brechan and Safeco is not the bond applicable to the project at issue in this litigation. The bond attached as Exhibit A to Absolute's Complaint is Bond Number 6165609-0001 (attached hereto as Exhibit 3). As Bond Number 6165609-0001 states, it was applicable to contracts issued under Contract Number DTCG50-02-643J55, option year 1 ("option year one"). The contract date for option year one is March 19, 2003.

The United States' delivery order for the performance of the work that is at issue in this litigation is dated December 12, 2002 – more than three months prior to the start of option year one. Order for Supplies and Services, attached hereto as Exhibit 4. During this time, the bond applicable to Contract Number DTCG50-02-643J55 was Bond Number 6165609. Declaration of Guy P. Armfield, attached hereto as Exhibit 5, at ¶¶ 4-10.

Bond Number 6165609-0001 and Bond Number 6165609 are almost identical, with the only substantive difference being the contract period that the bonds were applicable to. Safeco (and counsel for Safeco) mistakenly believed

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

that Absolute had attached the bond applicable to the Project. However, this was not the case. The penal sum listed on the face of both bonds is $100,000.00. Exs. 1, 3.

### 2. The Penal Sum of Bond Numbers 6165609-0001 and 6165609 Never Increased.

Brechan and Safeco admitted in their answer that the bond applicable to the Project was attached to Absolute's Complaint. Nevertheless, Absolute filed a motion to compel the production of surety bonds and supplemental riders applicable to the Project. In response to this motion, Safeco diligently investigated and learned that although Safeco's internal accounting system indicated that Bond Number 6165609-0001 had a penal sum of $1,080,947.00, no riders to the bond were ever executed. Armfield Decl. at ¶¶ 11-19. Because of this investigation, Safeco also learned that Bond Number 6165609-0001 was inapplicable to the Project for the reasons stated above. Instead, Bond Number 6165609 was applicable. Armfield Decl. at ¶¶ 4-10.

It is commonly known that a signed rider must be issued to increase the limit of liability on a surety bond. While Safeco's internal tracking system indicated an increase in Brechan's total contract price with the USCG, Safeco did not issue any riders for Bond Number 6165609-0001 and Bond Number 6165609. Armfield Decl. at ¶¶ 4-16. Therefore, the penal sum of both bonds remained $100,000.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. McKINLEY et al.
Case No. 3:03-cv-0199-RRB                   - 6 -                   [38599-0012/12956587_1.DOC]
38599-0012/LEGAL12956587.1

### C. The Government Never Required Payment Bond Protection in Excess of $100,000.

The USCG had the authority to require additional payment bond protection beyond the $100,000 penal sum if the contract price increased. 48 C.F.R. § 52.228-15(b)(i). The FAR states:

> (i) The Government *may* require additional performance and payment bond protection if the contract price is increased. The increase in protection generally will equal 100 percent of the increase in contract price.
>
> (ii) The Government *may* secure the additional protection by directing the Contractor to increase the penal amount of the existing bond or to obtain an additional bond.

48 C.F.R. § 52.228-15(b) (emphasis added). While the contract price did increase, the USCG never exercised its authority under these regulations, and the payment bond amount on Bond Numbers 6165609-0001 and 6165609 never increased.

A Colorado court has held that, under certain circumstances, a payment bond's penal sum automatically increases when the contract amount for an indefinite delivery, indefinite quantity contract ("IDIQ") increases. United States for the use of B&M Roofing of Colorado, Inc. v. Amwest Surety Ins. Co., 961 F.Supp. 1441, 1444 (D.Colo. 1997). That case is readily distinguishable.

In Amwest, the court analyzed the bid, payment, and performance bonds issued by the surety (Amwest) to the contractor, AKM Associates, Inc. ("AKM") for AKM's contract with the United States. As in the instant case, the government contract at issue in Amwest was an IDIQ contract. Amwest asserted that its liability was limited to the penal sums listed on the face of the bonds it issued.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. McKINLEY et al.
Case No. 3:03-cv-0199-RRB                - 7 -                [38599-0012/12956587_1.DOC]
38599-0012/LEGAL12956587.1

The court found that Amwest could be liable for an amount greater than the penal sums listed on the bonds based upon language in the government contract. In particular, the contract clearly indicated that the "bidders" were responsible for determining their own total bonding liability. Id. at 1444. The court held that the term "bidder," as used in the contract, referred to both AKM and Amwest "because the bidding process [was] a joint effort" between the principal and the surety. Id. at 1444, fn.3. Further, the contract "unambiguously instruct[ed] AKM and Amwest that total bonding liability . . . is calculated by adding the total value of the delivery orders that have been placed." Id. at 1444. Although the court's holding was based in part on the fact that the contract at issue was an IDIQ contract, the determinative factor in holding that the penal sum of the bonds automatically increased with the addition of each delivery order was the language of the contract.

As in Amwest, the court in the present case should refer to the language of the bond and the contract to determine the penal sum of the bonds issued for the Project. The "Obligation" in the bond states that:

> We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For the payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. McKINLEY et al.
Case No. 3:03-cv-0199-RRB                - 8 -                [38599-0012/12956587_1.DOC]
38599-0012/LEGAL12956587.1

> of liability is indicated, the limit of liability is the full amount of the penal sum.

Ex. 1. The "above penal sum" – on both bonds – is $100,000.

The bonds in the instant case do not warn Safeco that its potential liability could exceed the penal sum of the bond. Likewise, the solicitation documents and the contract between Brechan and the USCG do not contain language similar to the contract in <u>Amwest</u>, informing Brechan and Safeco that they were responsible for determining their own total bonding liability. In fact, the contract language indicates exactly the opposite – that Brechan and Safeco *were not responsible* for determining bonding liability, and that the Government was the entity responsible for making that determination.

While FAR § 52.228-15 mentions that the level of payment bond protection may be required to be increased at the direction of the Government, this reference in no way placed Safeco on notice that it would be the party responsible for the increase. 48 C.F.R. § 52.228-15(b)(i). This is a reasonable interpretation in light of § 52.228(b)(ii), which states that the additional protection required by (i) may be achieved either by increasing the penal sum of the existing bond or by obtaining an additional bond. Had the Government required additional payment bond protection, Brechan could have opted to secure that protection from a surety other than Safeco.

The absence of the <u>Amwest</u> contract language is further reinforced by FAR § 52.228-2 (incorporated by reference into Brechan's contract with the USCG), which requires the contractor to furnish additional security required to protect those furnishing labor and materials "*if* ... [t]he contract price is increased

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. McKINLEY et al.
Case No. 3:03-cv-0199-RRB             - 9 -             [38599-0012/12956587_1.DOC]
38599-0012/LEGAL12956587.1

so that the penal sum of any bond becomes inadequate *in the opinion of the Contracting Officer*." Ex. 2 at § I.1, p. 83; 48 C.F.R. § 52.228-2(c) (emphasis added). This section again indicates that it was the responsibility of the USCG Contracting Officer to determine bonding requirements for the contract, not Brechan and Safeco.

In Bill Curphy Co. v. Elliott, 207 F.2d 103, 106 (5th Cir. 1953), the Fifth Circuit held:

> If appellant's contention that the surety's liability may exceed the sum stated on the face of the bond is correct, and it is not, it would be futile to state any amount of liability in the bond. This contention completely overlooks the well-established rule . . . that the sole object of stating the penalty in a bond is to fix the limit of the liability of the signers, and no recovery can be had on such bond against the principal or surety beyond the penalty named on the bond." (Citations omitted.)

The amount of liability stated on the face of the bond applicable to the Project at issue in this case is $100,000. There are no facts to support the extension of liability beyond the penal sum.

### III.   CONCLUSION

Based upon the above arguments, Safeco respectfully requests that the Court determine that the penal amount of the bond at issue in this case is $100,000.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

DATED: January 10, 2007.

> **PERKINS COIE LLP**
> Attorneys for Defendant
> Brechan Enterprises, Inc.
>
> By   /s/ Michael E. Kreger
>     Michael E. Kreger
>     Alaska Bar No. 8311170
>     Perkins Coie LLP
>     1029 W. Third Avenue, Suite 300
>     Anchorage, Alaska 99501
>     (907) 279-8561
>     (907) 276-3108 (Facsimile)
>     Email: mkreger@perkinscoie.com

I hereby certify that on January 10, 2007, the foregoing has been served by electronic mail on Peter C. Partnow, William R. Baerg, Terry R. Marston II, James B. Stoetzer, and Eric J. Brown.

 /s/ Michael E. Kreger
    Michael E. Kreger

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

ABSOLUTE v. McKINLEY et al.
Case No. 3:03-cv-0199-RRB
38599-0012/LEGAL12956587.1

- 11 -

[38599-0012/12956587_1.DOC]