Terry R. Marston, *pro hac vice*, terry@marstonelison.com
Jami K. Elison, *pro hac vice*, jami@marstonelison.com
MARSTON ELISON, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings,<br><br>Defendant. | Case No.: A03-0199CV (RRB)<br><br>**DECLARATION OF JAMI K. ELISON IN OPPOSITION TO EMERCO'S MOTION FOR NEW TRIAL DATE OR TO ALTER OR AMEND JUDGMENT** |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC.,<br><br>Counterclaimant/Third-party Claimant,<br><br>v.<br><br>ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al.,<br><br>Cross-defendants/Third-party Defendants. | |

DECLARATION OF JAMI K. ELISON IN OPPOSITION TO EMERCO'S MOTION FOR NEW TRIAL
DATE OR TO ALTER OR AMEND JUDGMENT
Case No. A03-0199CV (RRB)-- 1

|   |   |
|---|---|
| THE UNITED STATES OF AMERICA for the and benefit of ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | ) ) ) |
| Defendants. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Counterclaim Plaintiff, | ) |
| vs. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation, | ) ) ) |
| Counterclaim Defendant | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Third-Party Plaintiff, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Plaintiff/Cross-claimant, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |

DECLARATION OF JAMI K. ELISON IN OPPOSITION TO EMERCO'S MOTION FOR NEW TRIAL DATE OR TO ALTER OR AMEND JUDGMENT
Case No. A03-0199CV (RRB)-- 2

I, Jami K. Elison, declare as follows:

1. I am an attorney for Absolute Environmental Services, Inc. ("Absolute"), plaintiff in the above captioned action. I am competent to testify and base these declarations on personal knowledge.

2. I attended the trial and provide this Declaration based on events I observed and heard during the trial.

3. Defendant Emerco relies on the Declaration of Pat Duffy and not on citations to exhibits or the transcript. An offer of proof would refute Defendant Emerco's allegations. This Declaration is presented based on what an offer of proof, if requested, would support.

4. During opening statement Mr. Duffy revealed the California connections to the jury, at least once, and by my recollection twice. Throughout trial Mr. Duffy, Mr. Puett, and Mr. McKinley made no efforts to conceal the location of either their residences or where they retained legal representation. There were repeated statements by defendant Emerco about California, including specific testimony from Mr. Puett that he went to California when his wife was ill and while there he visited his attorney's law office. Emerco's lead argument that someone prejudiced them by disclosing California connections is wholly without merit.

5. Before trial Emerco produced many documents that contained the address for defense counsel's California law firm. The exhibit lists disclosed by Emerco made no effort to redact the address. Emerco complains that Coffman's counsel displayed Emerco's answer to interrogatories that included Mr. Duffy's name and his law firm's address in a header. This document was the only document that Emerco relied on for a supposed quantification of damages, with Mr. Puett explicitly relying on that document when questioned about the absence of any original cost records. Emerco made no effort to redact the address, no one called attention to the

address, and it is a strange turn of events for Emerco to suggest it was prejudiced by the document Emerco relied on. Emerco's argument fails.

6. During trial Emerco provided Absolute with two exhibits (letters from counsel for Emerco) that had redacted the local address. Absolute used an electronic exhibit list during trial and the redacted letters had not been linked to that list. When one such letter was introduced for admission to the jury, defense counsel objected and after a side-bar the exhibit that was used for purposes of examination was the redacted version. Following that event, defense counsel and defense witnesses later made repeated references to the California connections including the testimony referenced above when Mr. Puett told the jury he went to his lawyer's offices while visiting California inn early August 2003.

7. Emerco's motion ignores several reasonable grounds for the jury's conclusions. Emerco provided no evidence that it suffered any actual losses on the project. The jury could have believed the evidence and testimony that Emerco completed only 20-30% of its contract work and that Emerco was paid directly, or to vendors on its behalf, amounts considerably in excess of the contract work actually completed. Testimony and evidence supports the conclusion that Emerco was overpaid on the project and had no damages for which it was entitled to a positive recovery. The record clearly provides a substantive basis for the jury verdict. Having reached this conclusion, the jury was entitled to reject each of Emerco's specific arguments about damages because at the end of the day Emerco was not damaged on this project.

8. Further, Emerco's specific challenges regarding work performed between Bents 12-13 and conduit removal ignore evidence and testimony of record. It is true that the $850 conduit charges were not contested by Absolute and Absolute credited that amount against Absolute's project losses. Mr. Lembke testified on the stand that he deducted $850 from

Absolute's loss calculations. Both his reports show that to be factual. Emerco's suggestion that it was entitled to a positive recovery of $850 shows that Emerco has still failed to grasp that it was not sued for $850 because it was credited that amount.

9. Regarding work between Bents 12-13, Mr. Olson not only testified about the negotiations regarding coat but he further testified that the work between Bents 12-13 was included in Emerco's work scope, that Emerco knew where Swalling's work stopped and knew it at the time of bidding on the project and also at the time the project work was agreed to by Emerco. There was a substantial basis for the jury to find that as a matter of fact, and based on the parties' intent, the work between Bents 12-13 was part of Emerco's contract.

10. Emerco's argument about costs related to removal of cathodic protection also ignores the grounds upon which the jury was entitled to reach the verdict it reached. A factual question at trial was whether "removal" meant to remove from the work path by hanging the wires or physical removal from the structure and the jury was entitled to conclude that contract expectations were fulfilled and no breach occurred. More importantly, there were factual disputes about whether the cathodic protection wires and anodes caused any actual damage and the jury was within its right to conclude that Emerco was not damaged as a result of anything pertaining to cathodic protection, especially in the absence of contemporaneous documentation and in the face on contrary testimony from Coffman's inspector and other witnesses.

11. Evidence and testimony established that Emerco failed its quality control responsibilities. Emerco's witness Mr. Belleville testified that he had recorded early on in the project, in a daily report, that Coffman's inspector wanted Emerco to start fulfilling its own QC responsibilities. Former employees of Emerco, such as Paul Pederson, and former employees of Absolute, such as Dan Yell, joined Coffman's inspector in testifying that Emerco did not

adequately perform its QC responsibilities. Evidence established that Absolute corrected Emerco's work in many locations, including those where defects would have been caused by Emerco's defective performance. The jury was entitled to conclude that Absolute's hiring of KTA-Tator was caused by Emerco's QC failures.

12. Emerco argues that Absolute did not breach its contract with Brechan, therefore, Emerco's work must not have been defective. That is an obvious non sequitur. Absolute corrected, supplemented, and ultimately completed Emerco's work in order for Absolute to fulfill its contract obligations to Brechan. It was entirely consistent and logical for the jury to conclude that Emerco breached its contract obligations to Absolute, but Absolute did not breach its contract with Brechan.

13. Emerco's arguments about "conversion" are untenable because Emerco had no conversion claim. In its pleading, Emerco expressly waived any claim for conversion. A jury was entitled to find that Emerco failed to establish the legal and factual requirements necessary to pursue a claim for "goods sold and delivered." As pointed out in prior briefing and argument in court, the contract between Absolute and Emerco in fact authorizes Absolute to take necessary measures to complete the work following an abandonment of the project by Emerco and the use of Emerco's equipment and materials would be one such measure. Moreover, Emerco is not entitled to rely on the evidence presented by Mike Tope as such testimony was presented with an express reservation or rights given that a motion for summary judgment was pending and Emerco had failed to present any cognizable evidence to establish the value of the goods, as was Emerco's burden of proof, a burden Emerco failed to meet.

14. Based on the evidence and testimony presented, including many of the facts discussed in this declaration, the jury was entitled to reject Emerco's argument to it was excused

from performing its contract. Emerco had its day in court. The jury weighed the evidence. The jury verdict should not be disturbed.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 16th day of January, 2007, at Redmond, Washington.

s/Jami K. Elison
Jami K. Elison

I hereby certify that on the date given a copy of the forgoing was electronically filed with the Clerk of Court using the CM/ECF system and was served electronically on the following:

William R. Baerg, Patrick J. Duffy
Eric J. Brown
Robert J. Dickson
Michael E Kreger, Jacob Nist
James B. Stoetzer, Peter C. Partnow

s/Jami K. Elison