Michael E. Kreger, Alaska Bar No. 8311170
MKreger@perkinscoie.com
Jacob B. Nist, Alaska Bar No. 211051
JNist@perkinscoie.com
PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
Telephone:  907.279.8561
Facsimile:  907.276.3108

Attorneys for Defendant
Brechan Enterprises, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation,<br><br>Plaintiff,<br><br>v.<br><br>FORREST J. MCKINLEY, et. al,<br><br>Defendants. | Case No.: 3:03-cv-0199-RRB |

**RESPONSE OF BRECHAN ENTERPRISES, INC.
TO APPLICATION FOR PRE-JUDGMENT INTEREST**

## I.   INTRODUCTION

Absolute prevailed on a claim against Brechan for breach of contract and is entitled to prejudgment interest.  Under Alaska law, prejudgment interest on breach of contract claims accrues from the date the breach occurred.  The question presented is when did the breach of contract occur?

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-JUDGMENT INTEREST
Absolute v. McKinley, et al.                                       -1-
Case No. 3:03-cv-0199-RRB
38599-0012/LEGAL13104382.4

## II.   ARGUMENT

**A.   The Breach Of Contract Occurred On June 22, 2005, When Absolute Was Denied An Equitable Adjustment Of The Subcontract Price.**

### 1.   Summary of Argument

Absolute submitted its Request for Equitable Adjustment on May 6, 2005, seeking an adjustment of the subcontract price and time for performance as a result of changes to the subcontract work. The breach of contract occurred when Absolute was effectively denied an equitable adjustment under the subcontract. Absolute was denied the equitable adjustment no earlier than June 22, 2005, the date Absolute alleged that an administrative remedy under the subcontract had been exhausted.

### 2.   Absolute's Assumed Date for the Accrual of Interest is Not Based on the Claims Submitted to the Jury.

In its interest memorandum, Absolute assumes that the breach of contract occurred on December 12, 2002, the same date as the effective date of the execution of the subcontract. Docket 569, at p.4. Absolute's date for a breach of the subcontract is not consistent with the jury's instructions on liability.

### 3.   Performing More Work than Required In the Subcontract Was Not The Breach of Contract; the Contract Is Breached When A Price Adjustment Under the Contract Is Denied.

The legal theory on which the jury entered a verdict is that Absolute performed extra work under the subcontract, either because it encountered material conditions that required Absolute to perform extra work under the contract (Instruction 30, Para. 8) or because there was a defect in the specification that caused Absolute to incur extra costs in performing its subcontract. (Instruction 32). Both instructions are claims for extra work caused by changes in the subcontract. The subcontract between Absolute and Brechan allowed for such changes, but also required an equitable

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-
JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB                    -2-
38599-0012/LEGAL13104382.4

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

adjustment to the price and time when such changes occurred. It was not a breach of the subcontract for Absolute to perform more work than the subcontract initially required. The breach occurred when Absolute was denied the equitable adjustment to the contract price for the extra work it performed.

### 4. The Request for Equitable Adjustment Was Effectively Denied On June 22, 2005.

On May 6, 2005, Absolute delivered to Brechan a Request for Equitable Adjustment ("REA") of $1,129,399.83 in the subcontract price.[1] Trial Exhibit C-256, attached as Exhibit 1. Absolute requested a prompt decision on its REA. Id. at 3. Brechan acknowledged Absolute's written request for equitable adjustment under the subcontract on May 23, 2005, and advised Absolute of an anticipated written decision on Absolute's REA within 45 days. See Exhibit 2. On June 22, 2005, Absolute filed a lawsuit alleging it had complied with all conditions precedent, including, without limitation, "any administrative dispute resolution procedure required by the contract"[2] and seeking relief, among other things, for breach of contract.[3] June 22, 2005 is the earliest date the REA was denied.

The subcontract is silent on the time limit (or other procedures) for the resolution of requests for adjustment to the contract price or contract time under the Changes clause. Absolute subcontract, Trial Exhibit B-45, attached as Exhibit 3. Absolute's REA states: "No specific calendar date for approval of this request is required so as not to affect the schedule, though we do request your earliest possible

---

[1] The REA also requested an increase of 84 days in the contract's time for performance.

[2] Complaint, paragraph 116.

[3] Complaint, paragraph 106

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB                -3-
38599-0012/LEGAL13104382.4

reply." Id. at 3. In its Complaint, Absolute did not allege a date earlier than the date of the Complaint when the exhaustion of its administrative remedy under the contract occurred.

In the absence of a time stated in the subcontract or reached by subsequent agreement, a reasonable period of time for decision on Absolute's Request for Equitable Adjustment must pass prior to the exhaustion of the contractual claim for relief.[4] Absolute's averment on June 22, 2005 in the Complaint that any administrative remedy had been exhausted was made 47 days after the REA was submitted, and 30 days after Brechan acknowledged receipt of the REA. Absolute's averment of the exhaustion of its contractual remedy on June 22 is the earliest date there was a denial of the Request for Equitable Adjustment.[5]

**B.    Points And Authorities**

The subcontract between Absolute and Brechan contains a Changes clause which permitted change in the subcontractor's work without breaching the agreement, but with a subsequent adjustment of the contract time or contract price resulting from the change.

> Contractor, without nullifying this Agreement, may direct
> Subcontractor in writing to make changes to
> Subcontractor's Work. Adjustment, if any, in the contract

---

[4] Under the federal Contract Disputes Act, for comparison, the government has "a reasonable time" after the date the REA is certified and submitted to make a written decision or state a time for decision. After 60 days, the contracting officer must notify the contractor of the anticipated time of decision. 41 U.S.C. § 605(c)(2)-(3).

[5] Brechan answered the Complaint on July 14, 2005. Brechan denied the allegations that the contract had been breached (Answer, Docket 107 at ¶ 106) and that Absolute had exhausted its administrative remedy under the contract. Id. at ¶ 116. Brechan did not thereafter move to stay proceedings pending the publication of a separate decision on the REA. Brechan issued no separate denial of the REA.

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-
JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB                    -4-
38599-0012/LEGAL13104382.4

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

>price or contract time resulting from changes shall be set forth in a Subcontract Change Order pursuant to the Contract Documents.

Ex. 3, at Article 4.

Under the Changes clause, the contract can be expressly or constructively changed.[6] Extra work resulting from a breach of the implied warranty of plans or due to undisclosed material site conditions are constructive changes to the contract.[7]

When there is a constructive change to the contract, the remedy for a constructive change is an equitable adjustment to the contract price. Ervin and Associates, Inc. v. U.S., 59 Fed.Cl. 267, 293 n.26 (Fed. Cl. 2004) ("the remedy for a constructive change is equitable adjustment").

Where a contract allows for changes, but requires equitable adjustments for those changes, a breach of contract occurs when the relief available under the contract is denied. See Millgard Corp. v. McKee/Mays, 831 F.2d 88 (5th Cir. 1987). In Millgard Corp. v. McKee/Mays, the subcontractor made a request for an equitable adjustment against the contractor – alleging that there was an unexpected site condition that was not disclosed to the subcontractor. The subcontractor made this request for additional compensation in May 1980. Id. at 89-90. The contractor

---

[6] A "constructive change" occurs where a contractor performs work beyond the contract requirements, without a formal order under the Changes clause . . . to correct some condition attributable to the fault of the owner. See Philip L. Bruner & Patrick J. O'Connor, Jr., Construction Law, § 4.25 (2002).

[7] "[T]he doctrine [of constructive change] has been applied in five distinctive situations: 1. Contract interpretation disputed during performance; 2. Government interference or failure to cooperate; 3. Defective specifications [i.e., the Spearin doctrine]; 4. Misrepresentation or nondisclosure of superior knowledge; and 5. Acceleration." Philip L. Bruner & Patrick J. O'Connor, Jr., Construction Law, § 4.25 (2002) (emphasis added); see also John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts, 434 (3d ed. 1995) (defective specifications and government nondisclosure of information constitute constructive changes).

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB   -5-
38599-0012/LEGAL13104382.4

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

reviewed the request and denied it in June 16, 1980. Id. Because of a statute of limitations issue, the Fifth Circuit was required to decide when the breach of contract occurred. Id. at 90. Like Absolute in this case, the contractor argued that the contract was breached at the time of performed work beyond the scope of the contract. Id. at 90. However, the Fifth Circuit disagreed and held that the date of the contractual breach was the date that the request for equitable adjustment was denied.[8] Id. at 89-90. See also United States v. Utah Const. & Mining Co., 384 U.S. 394,403, n. 6 (1966) ("When the contract makes provision for equitable adjustment of particular claims, such claims may be regarded as converted from breach of contract claims to claims for relief under the contract.") citing Morrison-Knudsen Co. v. United States, 345 F.2d 833 (1965).[9] Cf. Municipality of Anchorage v. Frank Coluccio Const. Co.,

---

[8] The Fifth Circuit observed that the rule for recovery of prejudgment interest in Texas was no different. The cases cited by the Fifth Circuit panel for this proposition follow the general rule that "a right to recover under a contract accrues at the time performance is completed, *unless otherwise specified in the contract*…" Millgard, 831 F.2d at 90-91 (emphasis added) citing Irrigation Constr. Co. v. Motheral Contractors, Inc., 599 S.W.2d 336 (Tex. App. 1980); McDaniel v. Tucker, 520 S.W.2d 543 (Tex. App. 1975); Beck v. Lawler, 422 S.W.2d 816 (Tex. App. 1967). The holdings in those cases rested upon the reasoning that the breach occurred when payment became due under the contract, e.g. at the completion of performance. Millgard follows the same rule as in the cited prejudgment interest cases, and is an apt example of the procedure utilized when determining the date of a breach under a contract that requires a contractor to perform the changed work and then pursue an equitable adjustment. The logic is the same – the breach occurs when payment becomes past due under a contract. When it is "otherwise specified in the contract" by the presence of a "Changes/equitable adjustment" clause, payment becomes due upon the date the equitable adjustment is denied.

[9] On this federal project, it may also be noteworthy to compare this state law result on pre-judgment interest with the result under federal law when a contractor makes a claim against the government for extra work. Under the Contract Disputes Act, interest on the claim begins to accrue after the REA is submitted to the Contracting Officer. 41 USC § 411.

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB                    -6-
38599-0012/LEGAL13104382.4

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

826 P.2d 316, 328 (Alaska 1992) (dicta) (breach of contract occurred when equitable adjustment was denied)[10].

In <u>Power Constructors, Inc. v. Taylor and Hintze</u>, 960 P.2d 20, 36 (Alaska 1998) the Alaska Supreme Court upheld a trial court's ruling that interest accrued from the date when the contractor's claim was submitted to owner, not earlier during the contract when it began to perform extra work. <u>Power Constructors</u> was a legal malpractice case. In adjudicating the malpractice claim, the parties were required to put on the "case within the case" – the claim by Power Constructors, Inc. ("PCI") against a project engineer and project designer on a powerline project for the City of Seward. The jury found that PCI suffered increased construction costs as a result of the project engineer's negligence and misrepresentations concerning the availability of poles for a powerline constructed near Moose Pass. The court was required to determine the date prejudgment interest accrued on PCI's claim. <u>Id.</u>, at 36.

PCI argued that prejudgment interest should start to run on January 7, 1985, the date that it first suffered additional performance cost on the project as a result of the misrepresentation. <u>Power Constructors, Inc.</u>, 960 P.2d at 36. The trial court, however, calculated prejudgment interest from December 18, 1985, nearly a year later, after the project was complete and from the day when PCI submitted its cost overrun claim to the City of Seward. <u>Id</u>. The Supreme Court agreed. Several of the factors the Supreme Court cited in upholding the trial court's decision are also present here, including:

---

[10] In <u>Municipality of Anchorage v. Frank Coluccio Const. Co.</u>, 826 P.2d 316, 328 (Alaska 1992), the plaintiff contractor sought to recover as damages its attorneys' fees incurred in preparing the request for equitable adjustment it submitted to the Municipality. 826 P.2d at 328. The contractor was contractually required to file an administrative claim with the Municipality of Anchorage seeking an equitable adjustment. <u>Id</u>. In passing on the availability of its pre-litigation attorneys' fees, the Supreme Court noted that the denial of the request for equitable adjustment constituted the breach of contract for which the Municipality was held liable. <u>Id</u>

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB    -7-
38599-0012/LEGAL13104382.4

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

(1)  construction of the power line occurred over many months, and PCI incurred costs over the entire period of construction;

(2)  PCI's attempts to link specific cost increases to specific acts of negligence or misrepresentation were imprecise;

(3)  the construction related damages awarded by the jury were pegged to no particular event or expenditure.

Id. at 36.

## C. Errors in the Proposed Interest Calculation

Absolute's spreadsheet calculation for Brechan purports to calculate interest based on a running monthly calculation of what it describes as the "underpayment" of its incurred costs. It assumes a "quantum meruit" liability which disregards the subcontract and which was not submitted to the jury. Unlike the calculations for Imperial and Safeco, it is not based on the accrual date of a breach of contract. For that reason, Absolute's spreadsheet is not relevant. The spreadsheet itself lacks consistency and contains errors which make it un-useful.

### 1. Lack of Internal Consistency

Absolute asserted that it calculated principal and interest based on a monthly underpayment for the value of its work. As shown above, it is not correct to assume that the Changes clause in the contract was breached at the time extra work was performed. In any case, after the calculation for September 30, 2003, that incorrect theory and its math are no longer followed. The columns for "costs incurred" and "payments made" continue to show entries, but the math between those entries ("Cumulative Over/Under Payment") is no longer there. From October 1, 2003 forward, instead of the expected mathematical difference between costs and

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-
JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB          -8-
38599-0012/LEGAL13104382.4

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

payments, the spreadsheet places the number $639,268.50 (the verdict amount) in the "Underpayment" column. The inconsistency serves to highlight the lack of a legal basis for the purported method.

### 2. Other Errors in the Spreadsheet's Assumptions

Absolute does not include the trial exhibit that the calculation is derived from. Assuming the provenance of the numbers on the sheet, the "underpayment" calculation is skewed because it assumes that the payment was due when the costs were incurred, not after subcontractor invoicing and then seven days after payment on the contractor's invoice was paid by the owner. Cf. Subcontract, Ex. 3. Article 1 (progress payments made seven days after payment from owner for subcontractor's work). Second, Absolute's reported "Cumulative Payments" column in the calculation is imprecise and confusing: Absolute uses the figure of $862,062.81 as the final amount of cash it was paid under the subcontract. The subcontract price was $995,850.00. The jury was specifically asked to decide the unpaid contract balance. See Verdict, ¶ 31.[11] The jury's answer was $10,000.00. Absolute's cumulative payment amount and the unpaid contract price should match. They don't.

### 3. The Post-Judgment Interest Rate is Incorrect.

For the third time, Absolute has submitted an order to the Court that proposes a post-judgment interest rate of 9.25%. As has previously been briefed by Brechan at Docket 534, p. 6-7, this proposed post-judgment interest rate is incorrect. In federal court, the federal post-judgment interest rate controls – even if a cause of action is based upon state law. Northrop Corp. v. Triad Int'l Mktg., S.A., 842 F.2d 1154, 1155 (9th Cir. 1988); In re Cardelucci, 285 F.3d 1231 (9th Cir. 2002). Absolute's attempt

---

[11] Absolute claimed it was underpaid $96,588.26 on the contract. Verdict, ¶ 31.

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-
JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB              -9-
38599-0012/LEGAL13104382.4

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

to increase the post-judgment interest rate is still incorrect. The Clerk of Court is requested pursuant to Local Rule 58.1(e) to fill in the post judgment interest rate at the entry of judgment.

### III.   CONCLUSION

Prejudgment interest should be calculated from June 22, 2005, when Absolute's Request for Equitable Adjustment was effectively denied and the breach of the subcontract occurred. A form of order making that calculation is proposed.

DATED at Anchorage, Alaska on April 2, 2007,

> **PERKINS COIE LLP**
> Attorneys for Defendant
> Brechan Enterprises, Inc.
>
> By   /s/ Michael E. Kreger
>       Michael E. Kreger
>       Alaska Bar No. 8311170
>       Jacob B. Nist
>       Alaska Bar No. 0211051
>       Perkins Coie LLP
>       1029 W. Third Avenue, Suite 300
>       Anchorage, Alaska  99501
>       (907) 279-8561
>       (907) 276-3108 (Facsimile)
>       Email:  mkreger@perkinscoie.com

I hereby certify that on April 2, 2007, the foregoing has been served by electronic mail on William R. Baerg, Terry R. Marston II, Eric J. Brown, and Thomas A. Larkin.

   /s/ Michael E. Kreger
      Michael E. Kreger

**PERKINS COIE LLP**
1029 West Third Avenue, Suite 300
Anchorage, AK  99501-1981
907.279.8561 / Facsimile 907.276.3108

RESPONSE OF BRECHAN ENTERPRISES TO APPLICATION FOR PRE-JUDGMENT INTEREST
Absolute v. McKinley, et al.
Case No. 3:03-cv-0199-RRB                    -10-
38599-0012/LEGAL13104382.4