05-07-2005  14:49    From-BRECHAN ENT                    +19074864889        T-666  P.003/011  F-900
MAY-07-2005 12:53 FROM:                                  TO:+19074864889                P.3/11

## Absolute Environmental Services, Inc.

PO Box 112307 • Anchorage, AK 99511-2307 • Phone: (907) 346-4400 • Fax: (907) 346-4491

May 6, 2005

Brechan Enterprises, Inc.
Attn: Mike Martin
2705 Mill Bay Road
Kodiak, Alaska 99615

Re: **Kodiak Cargo Wharf Maintenance Project – Coatings**
    **Request for Equitable Adjustment**

Dear Mr. Martin:

Absolute hereby requests an equitable adjustment to its contract price to reflect its increased costs of performance on the above project. The basis of this request relates to situations for which Brechan Enterprises, as the design/build contractor, is responsible. Brechan was in possession of "Superior Knowledge" regarding concealed conditions it failed to disclose. The concealed conditions included "[1] the amount of poor welding and [2] lack of consideration for corrosion engineering design [at the time the wharf was first constructed]." The concealed conditions resulted in the unanticipated requirement of "an enormous amount of surface preparation" to correct defects that were "impossible to see without removing the old coatings and corrosion build up." The additional surface preparation required was "a lot more ... than anyone anticipated." (All quotations are from the attached Exhibit 1.)

Absolute was required by contract to provide a holiday-free coating system, but due "to the nature of this coating system, accessibility and surface conditions" it was "going to be difficult to achieve a holiday-free coating system at the H-Pile splice locations." Before Absolute submitted its bid of $995,850, Brechan knew that the *additional* cost of surface preparation would exceed "$500,000" even if the holiday-free requirement was relaxed (it was not). Nevertheless, Brechan failed to provide this crucial information to Absolute and its coating applicator so that the work could be properly priced.

Instead of disclosing the existence of the concealed conditions, Brechan allowed Absolute and its coatings applicator to estimate the cost of the work based on one set of project specifications and then later revised a key term in a later set of specifications. The revised term was the one relied upon by Swalling Construction, Absolute's predecessor on the wharf project, to obtain substantial additional compensation after encountering this condition. No explanation for the revision was ever provided to Absolute other than a cryptic statement in an email between Brechan and its engineering firm referencing "lessons learned." Whatever lessons Brechan and its design team had learned were never shared with Absolute.

Trick, Nyman, Hayes (TNH) was the engineering firm Brechan hired to design the Cargo Wharf Maintenance project. TNH subcontracted the corrosion protection

DEFENDANT'S
EXHIBIT
CASE NO.  A03-199 CV (RRB)
EXHIBIT NO.  C-256

Ex. 80  Date 2-13-06
Witness _____
S. WARNICK  907-258-7100

EXHIBIT  1
PAGE  1 of 9

C02560001

design work to Coffman Engineers. Instead of disclosing the existence of the enormous amount of additional surface preparation the project would require, Coffman simply deleted a prior statement instructing bidders to expect to encounter 100' of such defects and specified the stripe coating of all welds before spraying. Coffman later waived the stripe coating requirement after determining that, due to time restrictions imposed by the tides, there was insufficient time to stripe coat before spraying without losing the surface profile blast. Instead, the applicator was authorized to spray directly onto the existing welds yielding a proliferation of holidays that repeatedly had to be repaired at great expense and which consumed additional time and materials and delayed completion of the project. After Absolute's applicator terminated its subcontract, Absolute took over the tasks of surface preparation, coating application, and repair work. Absolute elected to cut off all nonstructural steel and grind down the welds for the remainder of the work. This was costly and labor-intensive work, but it ended up reducing the number of holidays encountered on the remainder of the project. Nevertheless, Absolute was forced to return time and again to perform holiday repairs at great expense even long after the project was substantially completed.

Absolute is entitled to an equitable adjustment, additional compensation, and or damages under theories of contract, tort, and equity. Among these theories are the following:

Breach of duty to disclose "Superior Knowledge" of material concealed conditions.

Breach of warranty of plans and specifications.

Negligent preparation of plans and specifications.

Negligent misrepresentation.

Differing site conditions

Constructive Change

Absolute is entitled to an equitable adjustment to its contract price, damages, and/or compensation in quantum meruit in the amount of $1,129,399.83, as shown on the attached Exhibit 2. This claim is not in conflict with the claim of Absolute against Forrest J. McKinley and Emerco, Inc, even though there is overlap in the amounts of the claimed dollars. Pending the outcome of many disputed factual and legal issues, it is not possible to confidently segregate all portions of these damages between those that are Brechan's responsibility and those that are the responsibility of Forrest J. McKinley and Emerco, Inc. That segregation must await the decision of a judge and jury.

Persons with knowledge of how these amounts were calculated are the following (all of whom may be contacted though Absolute).

David E. Olson, Anchorage, AK

Mike Lembke, Kirkland, WA

Dawni Haines, Anchorage, AK

This request for equitable adjustment is being raised at this time because it was only recently discovered by Absolute in the course of reviewing documents obtained by

EXHIBIT 1
PAGE 2 of 9
C02560002

05-07-2005  14:49  From-BRECHAN ENT                    +19074864889      T-866   P.005/011   F-900
MAY-07-2005 12:53 FROM:                              TO:+19074864889              P.5/11

IIC from the Coast Guard through a FOIA request and subsequently produced to Absolute. During that review, the 10/30/01 Hardenbergh memo attached as Exhibit 1 came to light. Since that time additional documents and witness interviews have corroborated the statements found there.

Absolute reserves the right to supplement this claim in the event IIC revises its claim to assert entitlement to an equitable adjustment itself for damages such as those stated here. Without suggesting the existing claims of IIC have any merit, Absolute reserves the right to pass-through to Brechan those claims as well. Absolute also reserves the right to pursue additional claims (e.g., business devastation), though not in this request for equitable adjustment.

AESI requests a time extension of 84 calendar days (to 11/22/03). Given that the project has already been completed there will be no need to incorporate changes into the construction schedule. For the same reason, no specific calendar date for approval of this request is required so as not to affect the schedule, though we do request your earliest possible reply.

ABSOLUTE ENVIRONMENTAL SERVICES, INC.

David E. Olson, Pres.
Authorized Representative

cc: Terry R. Marston II, Esq.

EXHIBIT 1
PAGE 3 of 9

C02560003

05-07-2005   14:50   From-BRECHAN ENT                        +19074864889      T-666   P.006/011   F-900
MAY-07-2005 12:53 FROM:                                        TO:+19074864889              P.6/11

# MEMORANDUM                                         COFFMAN ENGINEERS

| | | | |
|---|---|---|---|
| To | Scott Bonney | Date | 30 October 2001 |
| Company | USCG ISC Kodiak | Project | Cargo Wharf Maintenance Project |
| From | Jerry Hardenbergh | Location | USCG ISC Kodiak, AK |
| Subject | Surface Preparation prior to coating application. | Project No. | DTCG50-00-D-643XX0 |

On 10/04/01 Swalling Construction started abrasive blasting on the original wharf H-pile supports. During the surface preparation inspection, after abrasive blasting, a large number of surface defects became very apparent. The majority of those surface defects are almost impossible to see without removing the old coatings and corrosion build-up. Basically, there is a lot more surface preparation required, before coating application, than anyone had anticipated.

The surface defects being encountered include: weld spatter, poor weld workmanship, very rough weld profiles, weld undercutting, column splice run-off tabs and areas requiring seal welding. The following photos show typical surface defects:



After abrasive blasting, the coating contractor then begins repairing the surface defects by grinding, flame cutting, air-arc scarfing and seal welding. An amount of grinding is expected by any coating contractor, however the amount of poor welding and lack of consideration for corrosion engineering design has resulted in an enormous amount of surface preparation.

Page 1 of 3                                                    IIC - 019529

EXHIBIT 1
PAGE 4 of 9

C02560004

05-07-2005  14:50   From-BRECHAN EN:                        +19074864889           T-666  P.007/011  F-900

USCG Kodiak Cargo Wharf Maintenance Project
Surface Preparation prior to coating application
30 October 01

The following photos show surface preparation, which includes the grinding, cutting and seal welding mentioned earlier. Also shown is the "caulking" coating applied to weld areas and areas inside the H-pile web that are difficult to coat.



The coating contractor is having difficulties obtaining a holiday free coating system on the H-pile splice weld locations. The only areas that are not passing the holiday testing are the welded areas; splice plate locations in the upper elevations.

The contractor has tried numerous times to coat the holiday areas and has spent an excessive amount of time trying to obtain a holiday free coating. But do to the nature of this coating system, accessibility and surface conditions; it's going to be difficult to achieve a holiday free coating at the H-pile splice locations.

After many discussions about the surface preparation difficulties, Coffman Engineers has developed three options for the CG to choose from, considering that it is their structure and money involved.

Option 1; Includes additional manpower, equipment and time to spend on extensive surface preparation and stripe coating welds to achieve no coating holidays. Very expensive option, est. 500,000 to complete remainder of wharf.

Option 2; Includes additional manpower, equipment and little extra time for a moderate surface preparation to result in a minimal level of holidays to remain. This would require establishing an acceptance criterion. The coating contractor is formulating a cost for this option.

IIC - 013524

EXHIBIT 1
PAGE 5 of 9

C02560005

```
05-07-2005  14:50   From-BRECHAN ENT              +19074864889      T-666  P.008/011  F-900
MAY-07-2005 12:54 FROM:                           TO:+19074864889            P.8/11
```

USCG Kodiak Cargo Wharf Maintenance Project
Surface Preparation prior to coating application
30 October 01

**Option 3:** Includes no additional manpower, equipment and no extra time for a minimal surface preparation, resulting in a larger number of holidays. This would also require establishing an acceptance criterion. No additional cost.

Coffman Engineers would recommend option 2 surface preparation to be used. For the basis of recommending this option, we considered the following:

1. Location of splice. Above splash zone (most corrosive area), and is covered from rain and snow limiting the amount of moisture in contact with this area. There would most likely be some rust streaking after a few years.

2. Corrosion rates. The current corrosion found in this area is not excessive. There is no heavy pitting and appears to have sustained minimal steel loss.

3. New coating system. The surface preparation and new coating system that is being applied is most likely the best surface preparation and coating that this structure has ever had applied. The new coating has been achieving 2000-psi adhesion strengths and has held at 3500 psi on a sample plate. This coating is very difficult to disbond.

4. Similar applications. Most bridge and dock coating systems are not 100% holiday free. Typically a holiday free coating is required for immersion and not for atmospheric application.

With option 2 selected, we believe the CG cargo wharf coating system will still realize a 25-year life.

IIC - 013625

EXHIBIT 1
PAGE 6 of 9

C02560006

05-07-2005 14:51  From-BRECHAN ENT                    +19074864889       T-666  P.009/011  F-900
MAY-07-2005 12:54 FROM:                               TO:+19074869889              P.9/11

## AESI DAMAGES
### Brechan Enterprises, Inc.
Revised 5-5-05
AESI actual cost records, with appropriate adjustments, have been used to calculate its damages.

### 1. As-Planned Costs

| | | | |
|---|---:|---|---|
| A. AESI scope direct costs | $141,742.00 | Note 5; *Exhibit 8* | |
| B. Phase I warranty work | 0.00 | Note 6; *Exhibit 9* | Revision 1 |
| C. BC subcontract | 772,123.00 | | Revision 2 |
| **As-Planned Costs:** | **$913,865.00** | | |

### 2. Actual Costs Incurred

| | | | |
|---|---:|---|---|
| D. 2003 Vendors | $981,447.85 | Note 1; *Exhibit 3* | Revisions 3, 4 |
| E. 2003 Labor | 694,977.24 | Note 2; *Exhibits 4 & 5* | |
| F. 2004 Vendors | 132,908.49 | Note 3; *Exhibit 6* | |
| G. 2004 Labor | 24,089.98 | Note 4; *Exhibit 4 & 7* | |
| **Actual costs to date:** | **$1,833,423.56** | | |

### 3. Adjustments to Costs

| | | | |
|---|---:|---|---|
| Less as-planned costs | (913,865.00) | | |
| Less 2003-2004 legal costs | (33,267.14) | | |
| Less AESI interference | (964.80) | Note 7 | |
| Less conduit removal | 0.00 | Note 11 | |
| Less Accepted Backcharges | (522,862.44) | | Revision 5 |
| Less KTA-Tator Adjustment | (848,818.70) | | Revision 6 |
| | | | Revision 7 |
| **Total Adjustments:** | **($1,019,778.08)** | | |

### 4. Net Additional Costs     $813,645.48

### 5. Markups

| | | | |
|---|---:|---|---|
| 15.4% Overhead | 125,301.40 | Note 10; *Exhibit 11* | Revision 8 |
| Subtotal | $938,946.88 | | |
| 10% Profit | 93,894.69 | | |
| Subtotal | $1,032,841.57 | | |

### 6. Unpaid Task Order Balances    $96,558.26    Revision 9

### 7. Compensation due AESI    $1,129,399.83

May 06 05 01:22p   ABSOLUTE ENVIRONMENTAL   19073464491   p.8

EXHIBIT 1
PAGE 7 of 9

C02560007

05-07-2005 14:51 From-BRECHAN ENT +19074864889 T-666 P.010/011 F-900
MAY-07-2005 12:54 FROM: TO:+19074864889 P.10/11

## Revision Notes to AESI Damages

Brechan Enterprises, Inc.
Revised 5-5-05

**Revision 1:** Brechan owes AESI $42,980.54, plus markups, for work performed on Phase 1 warranty repairs. This work was ordered by Brechan and is not included in AESI's original work scope or subcontract. Reference Note 6 and Exhibit 9, attached.

**Revision 2:** Imperial Industrial Coatings subcontract with AESI.

**Revision 3:** The following 2003 invoices have been removed from Absolute's claim:

| | | |
|---|---|---|
| Kodiak Rental Center 7/21/03 | C172653-02 | $1,150.00 |
| Kodiak Rental Center 8/12/03 | C173417-04 | 1,872.00 |
| Polar Supply Co. Inc. 6/16/03 | 00087581 | 248.00 |
| Polar Supply Co. Inc. 6/18/03 | 0087896 | 101.74 |
| Polar Supply Co. Inc. 6/30/03 | 00089204 | 32,800.00 |
| Polar Supply Co. Inc. 7/03/03 | 00089725 | 1,053.20 |
| Polar Supply Co. Inc. 7/15/03 | 00090698 | 141.14 |
| Polar Supply Co. Inc. 7/18/03 | 00089980 | 103.86 |
| Polar Supply Co. Inc. 8/06/03 | 00093029 | 187.18 |
| Polar Supply Co. Inc. 8/15/03 | 00094042 | 106.79 |
| | Total | **$37,763.91** |

**Revision 4:** The following 2003 invoices have been removed from AEST's claim:

| | | |
|---|---|---|
| Coffman Engineers | 10/02/03 | $1,500.00 |
| Coffman Engineers | 11/10/03 | 1,500.00 |
| Coffman Engineers | 12/31/03 | 1,500.00 |
| Coffman Engineers | 12/31/03 | 750.00 |
| | Total | **$5,250.00** |

**Revision 5:** Removal of conduit ($850.00 additional) was excluded by AESI. No credit is due to Brechan for this scope of work.

**Revision 6:** The only backcharges AESI has accepted are Change Orders 1-3, totaling $22,862.4x.

**Revision 7:** KTA-Tator, Inc. costs have been credited to include all costs from KTA Tator's mobilization on June 27, 2003, to August 30, 2003, the original project completion date. Total costs for 120 calendar days = $92,987.96, or $774.90/CD. 63 CD

1

P.8  19073464491  ABSOLUTE ENVIRONMENTAL  May 06 05 01:52p

EXHIBIT 1
PAGE 8 of 9

C02560008

@ 5774.90 = **$48,818.70**. Reference AES002567-AES002574, Reference AES002576-AES002584 and AES002556-AES002566.

Revision 8: AESI actual overhead of 15.4% has been applied to all net additional costs incurred by AESI. Reference Notes 9 and 10, and *Exhibit 11*, attached.

Revision 9: Brechan owes AESI **$96,558.26** (net) in outstanding balances for work performed on the following task orders under the contract:
USCG Hangar II
Lake Louise Building
Sarichef Street Utilidor
Kodiak Barracks Rehab 1
Kodiak USCG Bunkers
Kodiak Barracks II
Squad Bay

2

## *Absolute Environmental Services, Inc.*

P.O. Box 112807 • Anchorage, AK 99511-2807 • Phone (907) 346-4490 • Fax (907) 346-4491

May 6, 2005

Brechan Enterprises, Inc.
Attn: Mike Martin
2705 Mill Bay Road
Kodiak, Alaska 99615

Re: <u>Kodiak Cargo Wharf Maintenance Project – Coatings</u>
Request for Equitable Adjustment

Dear Mr. Martin:

Absolute hereby requests an equitable adjustment to its contract price to reflect its increased costs of performance on the above project. The basis of this request relates to situations for which Brechan Enterprises, as the design/build contractor, is responsible. Brechan was in possession of "Superior Knowledge" regarding concealed conditions it failed to disclose. The concealed conditions included "[1] the amount of poor welding and [2] lack of consideration for corrosion engineering design [at the time the wharf was first constructed]." The concealed conditions resulted in the unanticipated requirement of "an enormous amount of surface preparation" to correct defects that were "impossible to see without removing the old coatings and corrosion build up." The additional surface preparation required was "a lot more ... than anyone anticipated." (All quotations are from the attached Exhibit 1.)

Absolute was required by contract to provide a holiday-free coating system, but due "to the nature of this coating system, accessibility and surface conditions" it was "going to be difficult to achieve a holiday-free coating system at the H-Pile splice locations." Before Absolute submitted its bid of $995,850, Brechan knew that the <u>additional</u> cost of surface preparation would exceed "$500,000" even if the holiday-free requirement was relaxed (it was not). Nevertheless, Brechan failed to provide this crucial information to Absolute and its coating applicator so that the work could be properly priced.

Instead of disclosing the existence of the concealed conditions, Brechan allowed Absolute and its coatings applicator to estimate the cost of the work based on one set of project specifications and then later revised a key term in a later set of specifications. The revised term was the one relied upon by Swalling Construction, Absolute's predecessor on the wharf project, to obtain substantial additional compensation after encountering this condition. No explanation for the revision was ever provided to Absolute other than a cryptic statement in an email between Brechan and its engineering firm referencing "lessons learned." Whatever lessons Brechan and its design team had learned were never shared with Absolute.

Trick, Nyman, Hayes (TNH) was the engineering firm Brechan hired to design the Cargo Wharf Maintenance project. TNH subcontracted the corrosion protection

EXHIBIT 1A
PAGE 1 of 3

design work to Coffman Engineers. Instead of disclosing the existence of the enormous amount of additional surface preparation the project would require, Coffman simply deleted a prior statement instructing bidders to expect to encounter 100' of such defects and specified the stripe coating of all welds before spraying. Coffman later waived the stripe coating requirement after determining that, due to time restrictions imposed by the tides, there was insufficient time to stripe coat before spraying without losing the surface profile blast. Instead, the applicator was authorized to spray directly onto the existing welds yielding a proliferation of holidays that repeatedly had to be repaired at great expense and which consumed additional time and materials and delayed completion of the project. After Absolute's applicator terminated its subcontract, Absolute took over the tasks of surface preparation, coating application, and repair work. Absolute elected to cut off all nonstructural steel and grind down the welds for the remainder of the work. This was costly and labor-intensive work, but it ended up reducing the number of holidays encountered on the remainder of the project. Nevertheless, Absolute was forced to return time and again to perform holiday repairs at great expense even long after the project was substantially completed.

Absolute is entitled to an equitable adjustment, additional compensation, and or damages under theories of contract, tort, and equity. Among these theories are the following:

Breach of duty to disclose "Superior Knowledge" of material concealed conditions.

Breach of warranty of plans and specifications.

Negligent preparation of plans and specifications.

Negligent misrepresentation.

Differing site conditions

Constructive Change

Absolute is entitled to an equitable adjustment to its contract price, damages, and/or compensation in quantum meruit in the amount of $1,129,399.83, as shown on the attached Exhibit 2. This claim is not in conflict with the claim of Absolute against Forrest J. McKinley and Emerco, Inc. even though there is overlap in the amounts of the claimed dollars. Pending the outcome of many disputed factual and legal issues, it is not possible to confidently segregate all portions of these damages between those that are Brechan's responsibility and those that are the responsibility of Forrest J. McKinley and Emerco, Inc. That segregation must await the decision of a judge and jury.

Persons with knowledge of how these amounts were calculated are the following (all of whom may be contracted though Absolute).

David E. Olson, Anchorage, AK

Mike Lembke, Kirkland, WA

Dawni Haines, Anchorage, AK

This request for equitable adjustment is being raised at this time because it was only recently discovered by Absolute in the course of reviewing documents obtained by

IIC from the Coast Guard through a FOIA request and subsequently produced to Absolute. During that review, the 10/30/01 Hardenbergh memo attached as Exhibit 1 came to light. Since that time additional documents and witness interviews have corroborated the statements found there.

Absolute reserves the right to supplement this claim in the event IIC revises its claim to assert entitlement to an equitable adjustment itself for damages such as those stated here. Without suggesting the existing claims of IIC have any merit, Absolute reserves the right to pass-through to Brechan those claims as well. Absolute also reserves the right to pursue additional claims (e.g., business devastation), though not in this request for equitable adjustment.

AESI requests a time extension of 84 calendar days (to 11/22/03). Given that the project has already been completed there will be no need to incorporate changes into the construction schedule. For the same reason, no specific calendar date for approval of this request is required so as not to affect the schedule, though we do request your earliest possible reply.

ABSOLUTE ENVIRONMENTAL SERVICES, INC.

David E. Olson, Pres.
Authorized Representative

cc: Terry R. Marston II, Esq.