Terry R. Marston, *pro hac vice,* terry@marstonelison.com
Jami K. Elison, *pro hac vice,* jami@marstonelison.com
Jesse P. Elison, *pro hac vice,* jesse@marstonelison.com
MARSTON ELISON, PLLC
16880 N.E. 79th Street
Redmond, Washington  98052
(425) 861-5700

PAUL J.  NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska  99501
Telephone:  (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation, <br><br> Plaintiff, <br> vs. <br><br> FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, <br><br> Defendant. <br> ─────────────────────────── <br> EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC., <br><br> Counterclaimant/Third-party Claimant, <br><br> v. <br><br> ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al., <br><br> Cross-defendants/Third-party Defendants. <br> ─────────────────────────── | Case No.: A03-0199CV (RRB) <br><br><br> **ABSOLUTE'S REPLY IN SUPPORT OF MOTION FOR PRE-JUDGMENT INTEREST** |

| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | ) ) ) |
| Defendants. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Counterclaim Plaintiff, | ) |
| vs. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Counterclaim Defendant | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Third-Party Plaintiff, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Plaintiff/Cross-claimant, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |

ABSOLUTE'S REPLY IN SUPPORT OF MOTION FOR PRE-JUDGMENT INTEREST
Case No. A03-0199CV (RRB)-- 2

In a 1917 essay entitled "The Divine Afflatus," H.L. Mencken wrote these often-quoted words, "There is always an easy solution to every human problem – neat, plausible, and wrong."  Brechan invites this Court to give-in to the temptation Mencken satirized, the temptation to adopt a "wrong" answer simply because it is an easier answer.  Brechan first offers several groundless criticisms of certain aspects of Absolute's interest calculation (referring to the calculation as a whole as "inconsistent" and "un-useful").  It then tempts the Court with an invitation to calculate interest using a much simpler method, one that is "neat, plausible, and wrong."

Brechan invites the Court to calculate the interest Absolute is due by applying the pre-judgment interest rate to the entire amount of the judgment against Brechan <u>from the date Brechan was sued</u>, rather than as the law requires <u>from the date of Brechan's breach</u>.  Absolute asks the Court to resist the temptation and decline Brechan's invitation.  Brechan's approach, though admittedly simpler, is simply wrong.  The Court can rely on Absolute's calculation because it is correct.  Absolute's calculation complies with the law.  Brechan's criticisms to the contrary are groundless.

### How and When Did Brechan Breach the Subcontract?

Everyone must accept now that Brechan breached its subcontract.  Everyone agrees that Absolute is entitled to prejudgment interest from the date of Brechan's breach.  The disagreement is over "when" the breach occurred:  either <u>when the contract was signed</u> (after which Absolute began to accumulate uncompensated losses in attempting to achieve a holiday-free coating) or much later <u>after Absolute</u> discovered what Brechan had been concealing, had requested compensation for its cost overruns, and <u>had been ("impliedly") denied that compensation by Brechan</u>.

The answer to "when" the breach occurred is answered by determining "what" duty Brechan breached. In a piece of revisionist history, Brechan attempts to undo its own motions for summary judgment in which it obtained the *dismissal* of Absolute's claims for "constructive change" and "differing site conditions." This it must do in order to recast the jury's verdict as a grant of an equitable adjustment for a "change" in the contract, rather than a willful failure to disclose the difficulty (if not impossibility) of the original contract work to obtain a beneficial price from the outset of the contract.

Brechan claims interest did not begin accruing until Absolute denied a request for equitable adjustment on June 22, 2005, rather than the date the parties signed their subcontract (without disclosure of Brechan's Superior Knowledge) on December 18, 2002. Brechan's argument depends on this Court concluding that "the breach" it was found liable for was a failure to provide Absolute with an equitable adjustment to its contract price for a "constructive change" arising out of a "differing site condition." However, this is demonstrably not the breach Brechan was found liable for. The jury was never presented claims of "constructive change" or "differing site conditions" because the Court *dismissed* these claims after Brechan's own motion for summary judgment (a motion and order that Brechan, oddly, seems to have now forgotten).

The jury found that Absolute suffered damages as a result of Brechan's breach of contract in failing to disclose its Superior Knowledge. The jury found that Brechan recognized the effect its breach would have on the cost of Absolute's performance and that Absolute would have made a different proposal if it had been aware of the vital information withheld. These facts remove this case from an analysis of whether contract provisions for changes and equitable adjustments are the proper bases to determine the date a breach of contract occurred and interest began accruing.

In this case, Brechan was found to have known of hidden conditions material to the cost of the work. During litigation, Brechan argued successfully that *there were no contract provisions for price adjustments for differing site conditions* and that Absolute *had no grounds to argue "constructive changes."* This Court relied on Brechan's representations regarding the contract's terms and dismissed Absolute's "differing site conditions" and "constructive change claims."

Brechan filed a Motion for Summary Judgment on Absolute's Claim of Constructive Change (Docket 225). In that motion, Brechan argued:

> The Court should grant summary judgment against Absolute on the 'differing site condition' claim because the contract between Absolute and Brechan did not have a differing site conditions clause. (Docket 225, 6)
>
> \* \* \*
>
> The Court should grant Brechan summary judgment on Absolute's "constructive change" claim because it is nothing more than a restatement of its differing site conditions claim. (Docket 225, 9).

(emphasis added). Brechan argued, "In the absence of a differing site condition clause, Absolute's differing site condition claim must fail." (Docket 225, 7). Further, Brechan argued against Absolute's "constructive change" claim on the basis that "[t]hese allegations [concealed or latent physical conditions] amount to no more than Absolute's differing site condition claim. … Absolute was obligated to perform its contract without adjustment to the contract price even if it encountered a differing site condition." (Docket 225, 10).

This Court granted Brechan's motions for summary judgment on these claims and dismissed Absolute's "constructive change" claims. (Docket 339). The Court's Order dismissing these claims read:

2. <u>Absolute's differing site conditions claim fails</u> because there was not an agreement for Absolute to receive additional compensation because of differing site conditions.

3. <u>Absolute's constructive change claim</u> is merely a restatement of its differing site conditions claim and, therefore, <u>fails for the same reason</u> as No. 2 above.

(emphasis added). This Court dismissed Absolute's constructive change claim and differing site conditions claim long ago. As such, they were never presented to the jury and could not have been the basis for the jury's determination that Brechan had breached the contract.

Now despite having prevailed suing the exact opposite arguments on its summary judgment motion, Brechan now argues that its subcontract with Absolute <u>did</u> include an agreement for additional compensation for extra work under a "constructive change" analysis.

Brechan relies on *Millgard Corp. v. McKee/Mays*, 831 F.2d 88 (5th Cir. 1987) where the damage award was based on the contract's "Concealed Conditions" clause[1]. The court there expressly relied on the presence of this clause as the basis for its decision that the breach accrued at the time the equitable adjustment was denied. According to the *Millgard* court, this was because <u>the contract</u> anticipated <u>differing site conditions</u>. Brechan discretely avoids citing *Millgard Corp.'s* critical acknowledgment that the presence of this provision was *material* to its holding:

> Contrary to the suggestion of [Defendant], <u>our holding does not imply that every breach of contract action accrues only upon the occurrence of demand</u>

---

[1] The Contract Provision read: "12.2 CONCEALED CONDITIONS 12.2.1 Should concealed conditions encountered in the performance of the Work below the surface of the ground or should concealed or unknown conditions in an existing structure be at variance with the conditions indicated by the Contract Documents, or should unknown physical conditions below the surface of the ground or should concealed or unknown conditions in an existing structure of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Contract, be encountered, the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within twenty days after the first observance of the conditions."

> and refusal. It should be clear that the requirements of the contract between these parties lead us to the conclusion, that under this contract, breach occurred when McKee determined not to accept Millgard's Change Order as falling within Article 12 [Concealed Conditions].

(Emphasis added). *Millgard Corp.* at fn.3, 91. Brechan's "about-face" literally contradicts the factual assertions it made to this Court to obtain the dismissal of Absolute's claims on summary judgment and upon which this Court's Order was based.

Brechan's citation to *Power Constructors, Inc. v. Taylor and Hintze*, 960 P.2d 20, 36 (Alaska 1998) is also misleading. Brechan argues that *Power Constructors* and Absolute's case are similar because in *Power Constructors* "damages awarded by the jury were pegged to no particular event or expenditure". (Docket 583, 8). As discussed below, Jury Instruction No. 31 clearly shows that in the present case the jury did decide that Brechan had Superior Knowledge and failed to disclose it at the time it contracted with Absolute.

*K&K Recycling*, the controlling Alaska law for this issue, holds that fundamental principles of contract law establish that the time of breach is the starting point to award prejudgment interest.

> 'When prejudgment interest begins to accrue is a question of law which we review applying our independent judgment.' Alaska Statute 09.30.070(b) states that prejudgment interest accrues from the day process is served on the defendant or the day the defendant received written notice that an injury occurred and that a claim might be brought for that injury. This statute applies 'only to actions for personal injury, death, or damage to property, and does not apply to claims for purely economic loss.' Rather, in contract cases, prejudgment interest runs from the date the claim accrues, unless that would result in an injustice. We cannot say that the date set by the superior court was incorrect as a matter of law. [citations omitted].
>
> 'A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.' Given the jury's conclusions, Seuffert's breaching conduct apparently began well before September 12. Seuffert engaged in a continuous course of conduct to impede K&K's performance of the contract starting at least in the summer of 1998, when he relocated his camp and blocked the access road with a berm. These

    actions constituted a breach of the covenant of good faith and fair dealing, even if K&K had not yet incurred damages from that breach. <u>A contract cause of action usually accrues at 'the time of the breach of the agreement, rather than the time that actual damages are sustained as a consequence of the breach.</u>' [citations omitted].

*K&K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 724-25 (2003).

  The jury returned a verdict against Brechan Enterprises on Absolute's claim of "superior knowledge." (Docket 509). Jury Instruction 31 **(Exhibit 1)** included no less than eight elements[2] to establish that Brechan had superior knowledge and that its failure to disclose that knowledge at the time it contracted with Absolute Environmental Services, Inc. caused Absolute to incur damages. The jury found that Brechan not only knew Absolute did not have vital information (JI No. 31, ¶ 4), but also an additional requirement that Brechan had the mental state of "recogniz[ing] that the disclosure of this information would be vital to Absolute to prepare a reasonable proposal for the next project" (JI No. 31, ¶ 3). The jury also found that Absolute would have made a different price proposal "had it been provided with the superior knowledge prior to entering into the subcontract with Brechan" (JI No. 31, ¶ 7).

  These added requirements to the conventional elements of a contract claim of "superior knowledge" also remove the jury's findings in this case from the "constructive change" analysis argued by Brechan in its Response concerning Pre-Judgment Interest (Docket 583). The higher standard to prove superior knowledge applied in this case created a greater burden for Absolute, but it also <u>established unassailable facts that the breach accrued at the time Brechan signed a contract with Absolute without disclosing vital information</u>. Alaska law provides for the

---

[2] These eight elements established a burden to prove facts beyond the traditional common law "breach of contract for non-disclosure of superior knowledge: (1) [the contractor] undert[ook] to perform without vital knowledge of a fact that affects performance costs or direction, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information." *Northrop Grumman Corp., Military Aircraft Division v. United States*, 63 Fed. Cl. 12, 15-16 (2004).

assessment of prejudgment interest from <u>the time the breach of contract accrued</u>. In this case, it is the time Brechan failed to disclose vital information that affected the price submitted by Absolute according to the findings of the jury.

### Is Absolute's Interest Calculation Based on an Impermissible "Quantum Meruit" Computation of the Value of Work Performed?

Brechan throws out a little construction law terminology here, *quantum meruit*, to make its argument sound a weightier than it is. Leaving aside its use of the phrase *quantum meruit* for the moment, Brechan is implying that there is something unusual or improper about the manner that Absolute determined the amount that interest should be applied to the excess costs incurred each month. What the spreadsheet does on a monthly basis is the same thing Absolute's expert, Michael Lembke did in his damage calculation at trial for the entirety of the project. He applied a mark-up for overhead and profit to Absolute's actual cost of performance. So, contrary to Brechan's claim, there is nothing unusual about Absolute's method of determining the monthly value of the work it performed – or, more precisely, the value of the portion of the work Absolute performed that Brechan was not paying for.

Regarding Brechan's use of the phrase *quantum meruit*, the term is simply the generic term used for any quantification of an injured party's loss under implied circumstances. (Black's defines it as meaning, "as much as is deserved.") A *quantum meruit* calculation could be based on a potentially infinite variety of means for determining what the reasonable value of the work performed is.

### Does Absolute's Interest Calculation "Skew" The Underpayment Calculation By Assuming Payments Were Due When The Costs Were Incurred?

It is difficult to avoid sarcasm when presented with this argument, but here goes: While a small portion of Absolute's claim was for the unpaid balance of its contract price, the vast

majority of Absolute's claim was for amounts *exceeding* what Brechan contracted to pay. This was because Absolute paid a million dollars <u>over</u> what it should have paid to complete the work because Brechan withheld vital knowledge in its possession (for the very purpose of keeping Absolute's contract price low). Therefore, the amount of the jury's verdict was <u>not</u> for untimely payment of the <u>contract price</u>; it was for costs <u>not included</u> in the contract price. As such, the jury's verdict amount was not subject to subcontract progress payment timing provisions. Nor were the amounts against which interest was charged to Brechan by Absolute in the spreadsheet the type that Absolute would have charged Brechan for during the project and which Brechan would, in turn, have billed to the government. So … unlike requests for monthly progress payments of the subcontract price, there is no issue with respect to these amounts that relate to when "payments were due" under the contract.

### **Is There an Inconsistency in the "Underpayment" Column after October 1, 2003, that "Serves to Highlight the Lack of a Legal Basis for [Absolute's] Purported Method"?**

Brechan claims the existence of an "inconsistency" in the "Underpayment" column of Absolute's interest calculation spreadsheet after October 1, 2003. This feigned "inconsistency" is nothing more than Absolute's restricting the amount of the underpayment it was experiencing to the amount the jury attributed to Brechan. To do otherwise would be to charge Brechan interest on amounts awarded against Coffman and Emerco. Therefore, Absolute's capping the principal amount against which interest would be applied at the amount of the jury's verdict against Brechan is not an "inconsistency" at all (much less something that "serves to highlight the lack of a legal basis for [Absolute's] purported method" – whatever that means). In truth, Brechan's argument only serves to highlight its own lack of candor to this Court – once again.

### Is the "Cumulative Payments" Column in Absolute's Interest Calculation Spreadsheet "Imprecise and Confusing"?

The amount of damages the jury awarded against Brechan is far beneath the amount of any discrepancy alleged by Brechan rendering this claimed issue immaterial. Notwithstanding this fact, there is still no merit to Brechan's complaint.

Brechan says it was confused because Absolute uses the figure of $862,062.81 as the amount it was paid by Brechan, rather than the subcontract price of $995,850, less the $10,000 underpayment awarded by the jury. Brechan misrepresents the jury's finding; <u>the jury did not find that Brechan paid Absolute $985,850</u>. Although the jury did state that Absolute had only been underpaid $10,000, there was no conflict in the evidence at trial that Brechan had only *actually paid* Absolute (whether by check or wire transfer) $862,062.81.

Brechan <u>did</u> claim credits (backcharges) against the amount it owed Absolute under the contract for the expenses it was incurring with Coffman to keep Jerry Hardenberg, the QA inspector, on site longer than it had budgeted for. Whether the jury's award to Absolute of all damages it requested *except* for the amount it requested as the unpaid balance of its contract price was deliberate or whether the jury's exception on this point was due to confusion originating with Brechan's claim of entitlement to backcharge Absolute for Coffman charges, we cannot say. However, for the purpose of this motion - regarding interest calculations - it is irrelevant. There was no dispute at trial – and none is offered in opposition to this motion today – that Brechan *actually* paid Absolute any amounts other than those Absolute identified on its spreadsheet.

### Did Absolute Identify the Trial Exhibit the Calculation was Derived From.

Absolute's interest calculation was based on the cost reports (labor and vendor) prepared by Absolute's bookkeeper Dawni Haines, and utilized by its damages expert Michael Lembke.

Dawni Haines testified at trial for the purpose of authenticating the financial records relied upon by Mr. Lembke to prepare his damages quantification. Plaintiff's Trial Exhibit Number 368. Portions of these records were also included in Mr. Lembke's 2004 expert opinion report.

### Is Absolute's Proposed Post-Judgment Interest Rate Incorrect?

Absolute's proposed post-judgment interest rate was incorrect. Absolute incorrectly suggested that the post-judgment interest should continue to accrue at the same rate as pre-judgment interest. Under Federal Rules, the Clerk will include the appropriate rate for post-judgment interest following entry of judgment; this will likely differ from the prejudgment rate. This error has no bearing on Absolute's calculation of prejudgment interest, which is accurate.

### Conclusion

Absolute Environmental Services, Inc. respectfully requests that this court make the interest award in accordance with detailed and accurate calculation Absolute provided the Court for this purpose. The criticisms of Brechan are unfounded.

DATED this 9th day of April, 2007.

**MARSTON ELISON, PLLC**

By s/Terry R. Marston_____
Terry R. Marston II, WSBA No. 14440
Jami K. Elison, WSBA No. 31007
Attorneys for Plaintiff Absolute Environmental Service, Inc.

I hereby certify that on the date given a copy of the forgoing was electronically filed with the Clerk of Court using the CM/ECF system and was served electronically on the following:

William R. Baerg, Patrick J. Duffy
Eric J. Brown
Robert J. Dickson
Michael E Kreger, Jacob Nist
James B. Stoetzer, Peter C. Partnow

1 | s/Terry R. Marston                .