Terry R. Marston, *pro hac vice,* terry@marstonelison.com
Jami K. Elison, *pro hac vice,* jami@marstonelison.com
Jesse P. Elison, *pro hac vice,* jesse@marstonelison.com
MARSTON ELISON, PLLC
16880 N.E. 79th Street
Redmond, Washington  98052
(425) 861-5700

PAUL J.  NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska  99501
Telephone:  (907) 274-8866

Attorney for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, ) ) ) | Case No.: A03-0199CV (RRB) |
| Plaintiff, ) | |
| vs. ) | |
| FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, ) ) ) ) ) | **REPLY DECLARATION OF TERRY R. MARSTON REGARDING MOTION FOR FEES** |
| Defendant. ) | |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for the Use and Benefit of EMERCO, INC., ) ) ) ) | |
| Counterclaimant/Third-party Claimant, ) ) | |
| v. ) | |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska corporation, et al., ) ) ) | |
| Cross-defendants/Third-party Defendants. | |

|   |   |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) ) |
| Plaintiff, vs. | ) ) ) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | ) ) ) |
| Defendants. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) |
| Counterclaim Plaintiff, vs. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Counterclaim Defendant. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) |
| Third-Party Plaintiff, vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) |
| Plaintiff/Cross-claimant, vs. | ) ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |

REPLY DECLARATION OF TERRY R. MARSTON REGARDING MOTION FOR FEES
Case No. A03-0199CV (RRB)-- 2

I, Terry R. Marston II declare as follows:

1.  I am an attorney for Absolute Environmental Services, Inc. ("Absolute"), plaintiff in the above captioned action. I am competent to testify and base these declarations on personal knowledge.

2.  It appears the Court has three levels of attorneys' fees it may award to Absolute: (a) ordinary attorneys' fees, (b) enhanced attorneys' fees, or (c) full attorneys' fees. Absolute submitted its record of attorney fees to accurately reflect the hours spent on this case in support of its requested enhancement of fees pursuant to Rule 82(b)(3). *See Andrus v. Lena*, 975 P.2d 54, 59 (Alaska 1999). Alaska Rules of Civil Procedure, Rule 82, entitles the Prevailing Party to attorney fees. The Rule recognizes that there are ordinary cases and there are extraordinary cases and provides different provisions for different types of cases. A full award is proper when the losing party had engaged in vexatious or bad faith conduct. *Garrison v. Dixon,* 19 P.3d 1229, 1234 (Alaska 2001). An enhanced award is proper when based on factors in Rule 82(b)(3). *International Seafoods of Alaska, Inc. v. Bissonette*, 146 P.3d 561, 573 (Alaska 2006) (trial court increased award based on work performed).

3.  The first step, as always, is to determine what the prevailing party's actual attorneys' fees were. That amount has already been submitted to this court in full detail. The second step is to determine which of those actual attorneys' fees were reasonably and necessarily incurred. Thus far, the reasonable and the necessity of the fees Absolute was forced to incur stand unassailed.

4.  This leaves only two determinations for the court's consideration regarding an award of attorneys' fees to Absolute: (1) Is this case one that merits only an ordinary award of

fees, an enhanced award of fees, or a full award of attorneys' fees; and, if the answer is the middle one, an enhanced award of fees how much.

5.     At this point there is little I can say that my client has not already in his own declaration detailing the ordeal he and his company have undergone in this litigation. Likewise, at the reply stage of this briefing, I am certain the Court is itself eager to stop reading and start deciding. Accordingly, I shall keep my comments here to the point.

6.     Rule 82 provides three levels of fee awards: ordinary, enhanced and full. An award of full attorneys' fees requires the court to make a finding that the litigation was marked by vexatious or bad faith conduct. This litigation certainly was, but having said that, I doubt the Court will see it that way. Though, I have never been a judge, it strikes me that the difficulty a judge faces in determining whether a party to a lawsuit was subjected to "vexatious or bad faith conduct" would be comparable to the difficulty faced by a referee at a water polo game who, though present, is incapable of appreciating the carnage taking place beneath the pool's turbulent waters. I will only belabor the point with two examples; one occurred nearly a year ago, the other just this month. Absolute requested Brechan to produce all of its correspondence, including emails, with the Coast Guard's contracting officer, Anita Repanich. All documents had presumably been produced. Absolute then sought the Coast Guard's copies of this same correspondence. The Coast Guard refused to produce it even after having served it with subpoenas from this Court. On the eve of the close of discovery, Absolute concluded that no further amount of negotiation would result in an amicable resolution of the Coast Guard's obstinacy. Absolute sued the Coast Guard in the Federal District Court in Seattle, Washington to compel it to honor the subpoena for documents issued out of this court. The Coast Guard finally

acquiesced and agreed to produce the entirety of its correspondence after the United States attorney for Washington counseled them as to the necessity of their doing so.

7.      Immediately after the Coast Guard sent up the white flag and promised to turn over all of its documents, Brechan transmitted by special overnight courier 2,000 pages of documents that Absolute had never seen before.  These documents consisted in very large part of email communications between Brechan and Anita Repanich regarding how they would work together to extricate Brechan from the losses it was facing due to difficulty encountered in phase 1 of the project obtaining a holiday-free coating.  the emails include extensive communication regarding replacing Swalling Construction with a "new guy" as a means of overcoming the refusal of FDCC's executive director's having vetoed issuing Brechan a change order.  It was Brechan's belated disclosure of these documents that enabled Absolute to put the final pieces of the 1,000-piece puzzle together – and confirm not only the Superior Knowledge that it had long since discovered, but the fraud that Brechan had deliberately perpetrated.  (The Coast Guard itself never produced its own copies of these documents, but there was not way for Brechan to have known that they would withhold them despite the subpoena and the lawsuit.)  Only after obtaining these documents and painstakingly assembling all the facts – which could only take place after the discovery cut-off given the late production of the documents – was Absolute in a position to assert with confidence that Brechan had engaged in a deliberate fraud in inducing Absolute to bid on the coating contract and to recognize that it had a case for punitive damages against Brechan.  However, it was this same delay, the same concealment of these crucial documents, until the late date of their finally being produced that resulted in two very expensive losses for Absolute. First, Absolute struggled blindly to make sense of what, until then, had seemed to be the inexplicable conduct of Brechan to take advantage of a long-time business associate (the revealed answer

being that Brechan could sacrifice its cozy and lucrative relationship with the FDCC or it could sacrifice its subcontractor, Absolute – it simply chose the latter).  The delay in the disclosure of this information delayed Absolute's conclusion of the preparation of the case while it attempted to piece the puzzle together with the odds and ends that were available prior to that time, rather than having the "big pieces" Brechan had chosen to withhold from discovery.  The second impact of this extraordinarily late disclosure was this Court's ruling that Absolute had failed to timely make a request for punitive damages, culminating in the Court's issuance of an order barring Absolute from seeking an award of punitive damages against Brechan from the jury.  A timely disclosure of these documents would have resulted in the assertion of a punitive damages claim months earlier.  Brechan's withholding of these crucial documents was vexatious and indicative of bad faith.

8.     The recent example of vexatious and bad faith conduct is simply evident in the specious arguments Brechan threw up in opposition to the meticulously prepared interest award calculation prepared by Absolute.  Nothing more need be said on this point, as it would be mere repetition of the arguments made in reply to Brechan's opposing memorandum.

9.     In closing, the case is the longest trial conducted by plaintiff's counsel and evidently presided over by Judge Beistline.  With one minor exception regarding a claim for unpaid contract balance, it was a proverbial home run" victory for the plaintiff Absolute.  This victory is all the more amazing given the amount and vigor of the opposition arrayed against Absolute.  The Court itself my recall having inquired, perhaps rhetorically, to counsel for plaintiff, "How do you expect to be able to explain these facts to a jury."  Perhaps it is best not to comment on our expectations because no rational person could have expected to be able to distill order out of all the chaotic facts in this case.  I can only say that with a tremendous amount of

hard work, it was done. Absolute should be awarded the highest level of attorneys' fees this court can in good conscience award. In this case, against great odds, the "good guy" prevailed.

10. I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 9th day of April, 2007, at Redmond, Washington.

                                         s/Terry R. Marston II
                                         Terry R. Marston II

---

I hereby certify that on the date given a copy of the forgoing was electronically filed with the Clerk of Court using the CM/ECF system and was served electronically on the following:

William R. Baerg, Patrick J. Duffy
Eric J. Brown
Robert J. Dickson
Michael E Kreger, Jacob Nist
James B. Stoetzer, Peter C. Partnow
Thomas A. Larkin

s/Terry R. Marston II                    .

---