Terry R. Marston, *pro hac vice,* terry@marstonelison.com
Jami K. Elison, *pro hac vice,* jami@marstonelison.com
Jesse P. Elison, *pro hac vice*, jesse@marstonelison.com
MARSTON ELISON, PLLC
16880 N.E. 79th Street
Redmond, Washington 98052
(425) 861-5700

PAUL J. NANGLE & ASSOCIATES
Kerry Building
101 Christensen Drive
Anchorage, Alaska 99501
Telephone: (907) 274-8866

Attorneys for Plaintiff ABSOLUTE ENVIRONMENTAL SERVICES, INC.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | Case No.: A03-0199CV (RRB) |
| Plaintiff, | |
| vs. | **PLAINTIFF ABSOLUTE'S MOTION FOR SUMMARY JUDGMENT AGAINST FORREST J. MCKINLEY AS AGENT OF UNDISCLOSED PRINCIPAL** |
| FORREST J. MCKINLEY, an individual, d/b/a "Imperial Industrial Coatings" and EMERCO, INC., a California Corporation, d/b/a Imperial Industrial Coatings, BRECHAN ENTERPRISES, INC., an Alaska corporation; and SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | |
| | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |
| EMERCO, INC., a California corporation d/b/a Imperial Industrial Coatings, and the States for Use and Benefit of EMERCO, INC., | |
| Counterclaimant/Third-party Claimant, | |
| v. | |
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska corporation, et al., | |
| Cross-defendants/Third-party Defendants. | |

| | |
|---|---|
| THE UNITED STATES OF AMERICA *for the use and benefit of* ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) |
| SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation. | ) ) ) |
| Defendants. | ) ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Counterclaim Plaintiff, | ) |
| vs. | ) ) |
| ABSOLUTE ENVIRONMENTAL SERVICES, INC., an Alaska Corporation, | ) ) ) |
| Counterclaim Defendant. | ) |
| BRECHAN ENTERPRISES, INC., an Alaska corporation, | ) ) ) |
| Third-Party Plaintiff, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |
| ABSOLUTE ENVIRONMENTAL SERVICES INC., an Alaska Corporation, | ) ) |
| Plaintiff/Cross-claimant, | ) |
| vs. | ) ) |
| COFFMAN ENGINEERS, INC, a Washington Corporation. | ) ) ) |
| Third-Party Defendant. | ) |

PLAINTIFF ABSOLUTE'S MOTION FOR SUMMARY JUDGMENT AGAINST FORREST J.
MCKINLEY AS AGENT OF UNDISCLOSED PRINCIPAL
Case No. A03-0199CV (RRB)-- 2

## RELIEF REQUESTED

Plaintiff Absolute Environmental Services, Inc. ("Absolute") respectfully moves the Court for an order of summary judgment finding Forrest J. McKinley jointly liable for the judgment entered against Emerco, Inc. There is no genuine issue of fact over whether McKinley signed the subcontract with Absolute without first disclosing the existence and identity of the *principal* Emerco, Inc. for which he as *agent* was signing the contract. Given this fact and the law that holds the agent of an undisclosed (or only partially disclosed) principal jointly liable with the principal, Absolute is entitled to judgment as a matter of law against Forrest McKinley personally as the agent of an undisclosed principal.

## FACTS

Absolute Environmental Services, Inc. is an Alaska corporation with its principal place of business being in Anchorage. Forrest J. McKinley is upon information and belief a resident of Riverside, California. Emerco, Inc. is a California corporation with its principal place of business being in Grand Terrace, California.

Absolute was presented with an opportunity to perform as a subcontractor to Brechan Enterprises, Inc. on Phase II of the Kodiak Cargo Wharf Renovation project. Absolute's president, David Olson, contacted Tom Puett, an acquaintance of his, regarding subcontracting to Absolute for a portion of the work on the project. Puett held himself out as being an experienced coatings contractor. In response to Absolute's inquiry, Puett mentioned that he had left his previous employer and had begun working for "Imperial Industrial Coatings." Puett expressed interest in the Kodiak project and later submitted a proposal for the work on behalf of Imperial Industrial Coatings.

After coming to terms, the agreement between Absolute and Imperial was formalized in a written subcontract. See, Declaration of David E. Olson, Exhibit A. The parties to the contract were identified in the document as "Absolute Environmental Services, Inc." and "Imperial Industrial Coatings." *Id*. Nothing in the subcontract mentioned "Emerco, Inc." or stated that "Imperial Industrial Coatings" was a fictitious business name for a corporation actually named Emerco, Inc.

After Olson's signature was placed on the subcontract on behalf of Absolute, it was transmitted to McKinley for his counter-signature. McKinley signed for Imperial Industrial Coatings as, "Forrest J. McKinley, Pres." The fully executed contract was returned to Absolute by Imperial on March 4, 2003. *Id*.

<u>At no time prior to the signing of the contract between Absolute and "Imperial Industrial Coatings" was the existence of a corporation named Emerco, Inc. ever disclosed to, or otherwise known by, Absolute Environmental Services</u>. See, Declarations of David Olson and of Jason Peterson.

Despite numerous communications with Olson and Absolute's estimator, Peterson, before the subcontract was signed, Tom Puett never informed them that "Imperial Industrial Coatings" was a fictitious business name for a corporation named "Emerco, Inc." Puett later admitted in sworn deposition testimony that he himself was not aware of Emerco's existence until after the project, and only learned of its existence during the subsequent lawsuit. Declaration of Terry R. Marston II, Exhibit A., Excerpts of Puett deposition transcript, Volume I. When it was brought to Puett's attention that he had previously signed interrogatory answers on behalf of Emerco, Inc., he again denied any knowledge of Emerco, Inc. and stated that he had signed the interrogatories on behalf of "Emerco, Inc." only because he had been instructed to do so by

McKinley's attorneys. *Id*. at pp. 38:6 – 40:3. *Without knowing of Emerco's existence, much less its relationship to Imperial, Tom Puett could not have disclosed Emerco's existence and identity to Absolute before the subcontract was signed.*

At his own deposition, Forrest McKinley was asked if he could account for Mr. Puett's ignorance of Imperial Industrial Coatings' being a fictitious business name for Emerco, Inc. until after the lawsuit was filed. McKinley responded, "I don't believe that it ever came up in conversation or any paper that passed over his desk. He was the estimator. He was not in the position." Marston Declaration, Exhibit C., Excerpts of McKinley deposition transcript, volume II, p. 359, ll. 19-21.

McKinley also volunteered at his deposition that communications with Absolute were all handled by Puett. Marston Declaration, Exhibit B., Excerpts of McKinley deposition transcript, volume I, p. 93, line 16. He testified that he had only met David Olson once before Imperial's role in the project ended. Marston Declaration, Exhibit B., Excerpts of McKinley deposition transcript, volume I, p. 92, lines 12-18. Their meeting occurred in the course of a pre-contract visit to the Kodiak project when, accompanied by Puett, he stopped in Anchorage to meet David Olson. At no time during their meeting did McKinley ever mention "Emerco, Inc." or that "Imperial Industrial Coatings" was a fictitious business name for a that corporation. *See*, Declarations of Olson and Peterson.

On June 15, 2007, this Court entered a judgment upon the verdict of the jury dismissing the claims of Emerco, Inc. against Absolute and granting judgment to Absolute on its claims against Emerco, Inc. in the amount of $382,646.96. Marston Declaration, Exhibit D, Judgment entered against Emerco, Inc. and Exhibit E, Clerk's cost bill entered against Emerco.

# ISSUE

UNDER ALASKA LAW, AN AGENT WHO SIGNS A CONTRACT ON BEHALF OF AN UNDISCLOSED, OR PARTIALLY DISCLOSED, PRINCIPAL IS HIMSELF LIABLE WITH THE PRINCIPAL FOR THE OBLIGATIONS UNDERTAKEN.  FORREST J. MCKINLEY SIGNED A CONTRACT WITH ABSOLUTE ENVIRONMENTAL SERVICES WITHOUT DISCLOSING THAT HE WAS SIGNING ON BEHALF OF A CORPORATION NAMED EMERCO, INC.  FORREST J. MCKINLEY MUST BE FOUND JOINTLY AND SEVERALLY LIABLE WITH EMERCO, INC. AS THE AGENT FOR AN UNDISCLOSED PRINCIPAL.

# APPLICABLE LAW

### A. SUMMARY JUDGMENT SHOULD BE GRANTED WHEN THERE ARE NO MATERIAL ISSUES OF FACT REQUIRING TRIAL.

Summary judgment is proper and required when, as here, there are no disputed material facts and one party is entitled to judgment as a matter of law.

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).  The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact.  *Celotex Corp. Catrett*, 477 U.S. 317, 323 (1986).

### B. AGENCY IS AN AFFIRMATIVE DEFENSE PLACING THE BURDEN OF PROOF ON THE PARTY SEEKING TO USE IT TO AVOID LIABILITY.

The party seeking the affirmative defense of being an agent bears the burden to prove "all necessary facts to exonerate him from personal liability."  *Southwestern Bell Media, Inc. v. Trepper*, 784 S.W.2d 68, 72 (Tex.App. 1989).

**C. AN AGENT WHO SIGNS A CONTRACT FOR AN UNDISCLOSED (OR PARTIALLY DISCLOSED) PRINCIPAL IS JOINTLY LIABLE FOR THE CONTRACT OBLIGATIONS ALONG WITH THE PRINCIPAL.**

**1. Restatement (Second) of Agency: Disclosed, partially disclosed, and undisclosed principals are defined in the Restatement as follows:**

The Alaska Supreme Court in *Jensen v. Alaska Valuation Service, Inc.*, 688 P.2d 161 (1984) explained how liability attaches *to an agent* at the time a contract is formed:

> **Disclosed, partially disclosed,** and **undisclosed** principals are defined in the Restatement as follows:
>
> (1) If, at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is *acting for a principal* and *of the principal's identity*, the principal is a **disclosed principal**.
>
> (2) If the other party has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a **partially disclosed principal**.
>
> (3) If the other party has no notice that the agent is acting for a principal, the one for whom he acts is an **undisclosed principal**.
>
> Restatement (Second) of Agency § 4 (1958).

*Jensen*, 688 P.2d at 163 fn.1 (1984) (emphasis added).

**2. An Agent Who Makes A Contract For An Undisclosed or Partially Disclosed Principal Will Be Liable As A Party To The Contract.**

Generally agents of a corporation are not liable for the corporation's actions. However, if an agent does not disclose his or her agency (the role as an agent) and fails to disclose the principal (its identity), then personal liability will attach to the agent.

> Although officers of a corporation will not ordinarily be held personally liable for contracts they make as agents of the corporation, they must disclose their agency and the existence of the corporation before they will be absolved from liability. *McCluskey Commissary, Inc. v. Sullivan*, 96 Idaho 91, 524 P.2d 1063, 1065 (1974); 314 W. Fletcher, Cyclopedia of the Law of Private Corporations § 1120, at 183 (rev. ed. 1975). An agent who makes a contract for an undisclosed or partially disclosed principal will be liable as a party to the contract. Restatement (Second) of Agency, §§ 321, 322 (1958). Thus, Jensen can avoid liability only if his use of corporate checks disclosed the existence of Arthur Jensen, Inc. and Jensen's intention to the contract on its behalf.

*Jensen v. Alaska Valuation Service, Inc.*, 688 P.2d 161, 162-63 (Alaska 1984).

A signature on the contract can potentially disclose agency and the principal. See *Givner v. United States Hoffman Machinery Corp.*, 49 Ohio App. 410, 413, 197 N.E. 354 (1935)(determining there was no disclosure of agency or principal when J. Givner signed "only his own name."). "An agent is liable for a contract he or she enters into unless the principal is disclosed at the time contract is formed." *Jensen* at 165. "[T]o avoid personal liability, disclosure of the principal must be made at the time of the contracting ...." *Commercial Coin Laundry Sys. v. Enneking*, 766 N.E.2d 433, 440 (Ind.Ct.App. 2002).

### 3. There Is <u>No Duty To Inquire</u> Into The Identity Of A Principal When A Third-Party Contracts With One He Knows Is Acting As An Agent.

> [A] third party acts at his peril when he knows the other is acting as an agent, but he fails to inquire into *the extent* of the agent's delegated authority. <u>There is no similar rule regarding *knowledge of the identity* of the principal.</u> 3 C.J.S. Agency section 412, at 259 (1973).

*Mullen v. Christiansen*, 642 P.2d 1345, 1350 fn. 5 (Alaska 1982) (emphasis added).

"It is the agent's duty to disclose the principal's identity in order to avoid personal liability…" *Detroit Pure Milk Co. v. Patterson*, 138 Mich.App. 475, 480 (1985). "[T]he agent will be liable <u>even if</u> the third party is aware that an agency relationship exists, so long as the agent <u>fails to disclose the principal's identity</u>." *Tarolli Lumber Co., Inc. v. Andreassi*, 399 N.Y.S.2d 739, 59 A.D.2d 1011 (4th Dep't 1977) (emphasis added).

It is firmly established that the duty of disclosure requires a *full disclosure* of the principal's identity. "[W]hen an agent completely fails to make the disclosures or makes partial or inaccurate disclosures, the result is the same." *Odyssey Travel Center, Inc. v. RO Cruises,*

*Inc.*, 262 F.Supp.2d 618, 624 (D.Md. 2003). "Moreover, an agent is held liable when the purported principal disclosed is nonexistent, fictitious, or legally incompetent." *Id*.

> A trade name inadequately discloses the fact of agency or the identification of the true principal. See *Lachmann* at 785. Even though by signing as president, Trepper may have fulfilled his first duty, he, nevertheless, failed in his second duty because he did not disclose his true principal. Failing to fulfill both of his duties necessary to avoid personal liability, Trepper assumed personal liability when he signed the contract.

*Trepper*, 784 S.W.2d at 72.

### 4. A Foreign Corporation May Not Transact Business In The State Until It Has Been Issued A Certificate Of Authority By The Commissioner.

The State of Alaska requires foreign corporations to obtain a certificate of authority in order to transact business in Alaska.

> A foreign corporation may not transact business in this state until it has been issued a certificate of authority by the commissioner. A foreign corporation may not be issued a certificate of authority to transact business in this state that a corporation organized under this chapter is not permitted to transact. A foreign corporation may not be denied a certificate of authority because the laws of the state or country under which it is organized governing its organization and internal affairs differ from the laws of this state.

AS 10.06.705. Authorization of Foreign Corporation.

### D. THERE CAN BE NO CREDIBLE DISPUTE (1) THAT FORREST MCKINLEY SIGNED THE SUBCONTRACT WITH ABSOLUTE AND (2) THAT HE DID SO WITHOUT FIRST DISCLOSING THAT HE WAS ACTING ON BEHALF OF EMERCO, INC.

McKinley and Puett used the name "Imperial Industrial Coatings" whenever referring to their company. Neither McKinley nor Puett ever informed Absolute's representatives to the existence of a company named Emerco, Inc., or to any intent on their part to be understood as acting only as agents for that corporation. Puett not only never mentioned Emerco, Inc. to Absolute, he could not have. Puett himself was not aware of Emerco, Inc. until long after

Imperial abandoned the project. Puett testified under oath that he first learned of Emerco, Inc., during the lawsuit when he was asked to sign interrogatory answers on behalf of the corporation.

**TOM PUETT NEVER DISCLOSED THE IDENTITY OF EMERCO, INC.**

Absolute noted a deposition for "Emerco's" most knowledgeable employee on phase II of the cargo wharf project pursuant to FRCP 30(b)(6). Tom Puett was designated to speak on behalf of the corporation. However, at the commencement of the deposition, Mr. Puett testified that he had no knowledge of "Emerco" and only knew that Forrest J. McKinley was his employer.

> Q. Can you tell me what the circumstances of your being here today are?
> A. A witness for Imperial Industrial Coatings.
> Q. Who is your employer?
> A. Imperial Industrial Coatings.
> Q. What is Imperial Industrial Coatings?
> A. It's a coatings company.
> Q. Is it a sole proprietorship?
> A. I don't know that.
> Q. Is it a corporation?
> A. I don't know that.
> Q. Is it a limited liability company?
> A. I don't know that.
> Q. Are you familiar with the terms that I'm using?
> A. Yes.
>
>                                       \*      \*      \*
>
> Q. What is your title?
> A. Project Manager.
>
>                                       \*      \*      \*
>
> Q. Is it your belief that you are employed by a company named Emerco, Incorporated?
> A. No.
> Q. Have you ever been employed by a company named Emerco, Incorporated?
> A. No.
>
>                                       \*      \*      \*
>
> Q If I understand your testimony correctly, what you're telling me is that you do not believe you were ever employed by a corporation name Emerco, Incorporated; is that right?
> A. Yes.

    Q.  And you never mentioned or told David Olson that you were employed by a company called Emerco, Incorporated?
    A.  No.
    Q.  And during the entirety of the project, [the] wharf project in Kodiak, you did not believe that you were employed by Emerco, Incorporated?
    A.  Yes.

Marston Declaration, Exhibit A.

## FORREST MCKINLEY NEVER DISCLOSED THE EXISTENCE OR IDENTITY OF EMERCO, INC.

McKinley admits that he spoke with Absolute's Dave Olson only once for one hour before the subcontract was signed. He also testified that his project manager Tom Puett not only accompanied him at all of his meetings, but was principally responsible for handling the negotiations as well. McKinley never mentioned the existence of Emerco, Inc. to any of Absolute's personnel.

    Q.  How many days did you visit Absolute's office?
    A.  I believe two times.
    Q.  Was Mr. Olson there on both occasions?
    A.  No.
    Q.  Was Mr. Puett there on both occasions?
    A.  Yes.
    Q.  Was Mr. Olson there on the first occasion?
    A.  I'm not -- I'm not sure if it was the first day or second day.
    Q.  He was there on one of the two days?
    A.  One of the two days.
    Q.  But only one of the two days?
    A.  Yes.
    Q.  And what length of time did you meet with Mr. Olson in particular on the day that you did meet with him?
    A.  Probably less than an hour.
    Q.  What topics did you cover while you met with Mr. Olson?
    A.  Nothing really specific on the job. It was done with Todd and Jason.
    Q.  Do you recall anything about what issues you covered during your hour with Mr. Olson?
    A.  No, not within the hour with Mr. Olson.
    Q.  Do you recall anything else that you covered while you were at Absolute's office on either one of those two days other than reviewing the specifications and the general conditions of the contract and your work plan?

      A.   The work plan, the amount of work that they were supposed to perform, and the renting of the high-pressure water blaster.

Marston Declaration, Exhibit B.

## CONCLUSION

An agent is liable for damages if the agent fails to disclose both (1) the fact of his agency and (2) the identity of his principal. By their own admissions under sworn testimony, neither the McKinley's project manager Tom Puett nor McKinley himself disclosed the existence or identity of the purported principal, Emerco, Inc. Because he failed to fully disclose the fact and identity of Emerco, Inc., the law holds Forrest J. McKinley personally liable for the breaches of contract committed by the principal for whom he was acting as agent. McKinley is therefore liable for the full amount of Absolute's damages previously proven on the merits at trial of this case.

Summary judgment is appropriate and necessary here because there are no genuine issues of material that would require a resolution at trial and because Absolute is entitled to a judgment on the undisputed facts as a matter of law. The real principal, Emerco, Inc., was not disclosed at the time Forrest J. McKinley entered into the contract with Absolute. Forrest J. McKinley is personally liable as the an agent of an undisclosed principal for Absolute's damages proven at trial and awarded by this court in its Final Judgment in the amount of $382,646.96.

Given these facts, there is no just cause for further delay in the <u>final</u> entry of final judgment in this case.

DATED this 25th day of July, 2007.

                MARSTON ELISON, PLLC

                By <u>s/Terry R. Marston II</u>
                   Terry R. Marston II, WSBA No. 14440
                   Jami K. Elison,   WSBA No. 31007

Jesse P. Elison, WSBA No. 36914
Attorneys for Plaintiff Absolute Environmental Service, Inc.

I hereby certify that on the date given a copy of the forgoing was electronically filed with the Clerk of Court using the CM/ECF system and was served electronically on the following:

William R. Baerg, Patrick J. Duffy
Eric J. Brown
Robert J. Dickson
Michael E Kreger, Jacob Nist
James B. Stoetzer, Peter C. Partnow
Thomas A. Larkin

s/Terry R. Marston II                    .