UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

ABSOLUTE ENVIRONMENTAL        )
SERVICES, INC., AN ALASKA     )
CORPORATION,                  )
                              )
         PLAINTIFFS,          )
                              )
    VS.                       )    NO. A03-0199CV (RRB)
                              )
FORREST J. MCKINLEY, ET AL.,  )
                              )
         DEFENDANTS.          )
_____)


        THE DEPOSITION OF FORREST J. MCKINLEY, TAKEN

ON BEHALF OF THE PLAINTIFF, AT 725 SOUTH FIGUEROA STREET,

SUITE 3200, LOS ANGELES, CALIFORNIA, AT 9:08 A.M.,

WEDNESDAY, FEBRUARY 9, 2005, BEFORE SHERYL WILLIAMS,

CERTIFIED SHORTHAND REPORTER NO. 7453, PURSUANT TO

SUBPOENA.

SEIJAS COURT REPORTERS

```
 1   APPEARANCES:
 2   FOR PLAINTIFF:
 3   MARSTON HEFFERNAN FOREMAN, PLLC
     BY:  TERRY R. MARSTON, II, ESQ.
 4   ANDERSON PARK BUILDING
     16880 N.E. 79TH STREET
 5   REDMOND, WASHINGTON 98052
     (425) 861-5700
 6
     FOR DEFENDANTS:
 7
     MONTELEONE & MCCRORY, LLP
 8   BY:  WILLIAM R. BAER, ESQ.
     725 SOUTH FIGUEROA STREET
 9   SUITE 3200
     LOS ANGELES, CALIFORNIA 90017
10   (213) 612-9900
11   FOR DEFENDANT SPECIALTY POLYMER COATINGS:
     (VIA TELEPHONE)
12
     ATKINSON, CONWAY & GAGNON, INC.
13   BY:  ROBERT J. DICKSON, ESQ.
     420 L STREET
14   SUITE 500
     ANCHORAGE, ALASKA 90501
15   (907) 276-1700
16
     ALSO PRESENT:   DAVID OLSON
17
18
19
20
21
22
23
24
25
```

SEIJAS COURT REPORTERS

1                           I N D E X

2    WITNESS                 EXAMINATION                    PAGE

3    FORREST MCKINLEY        BY MR. MARSTON                 4, 54

4                            BY MR. DICKSON                 4

5

6

7

8

9                            EXHIBITS

     PLAINTIFF'S                                            PAGE
10

       40       COPY OF BANK OF AMERICA VISA
11              BUSINESS CARD                               202

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SEIJAS COURT REPORTERS

1    LOS ANGELES, CALIFORNIA, WEDNESDAY, FEBRUARY 9, 2005
2                              9:08 A.M.
3
4                        FORREST J. MCKINLEY,
5    CALLED AS A WITNESS ON BEHALF OF THE DEFENDANT, HAVING BEEN
6    ADMINISTERED AN OATH IN ACCORDANCE WITH C.C.P. SECTION
7    2094, WAS EXAMINED AND TESTIFIED AS FOLLOWS:
8
9                             EXAMINATION
10   BY MR. MARSTON:
11        Q.   WOULD YOU PLEASE STATE YOUR COMPLETE LEGAL NAME.
12        A.   FORREST JAMES MCKINLEY.
13        Q.   WHAT IS YOUR RESIDENTIAL ADDRESS?
14        A.   I USE 1186 CENTER STREET IS THE OFFICE, BUT IT'S
15   62771 NICOLETTE.
16        Q.   IS THAT IN RIVERSIDE?
17        A.   RIVERSIDE, CALIFORNIA.
18        Q.   WITH THAT I'M GOING TO TURN THE QUESTIONING OVER
19   FOR CONVENIENCE TO MR. BOB DICKSON WHO IS CALLING INTO THIS
20   DEPOSITION, AND HE CAN INTRODUCE HIMSELF.
21        GO AHEAD, BOB.
22                             EXAMINATION
23   BY MR. DICKSON:
24        Q.   MR. MCKINLEY, THIS IS BOB DICKSON.  I REPRESENT
25   SPECIALTY POLYMER COATINGS, A DEFENDANT IN THIS LAWSUIT.

SEIJAS COURT REPORTERS

# Annotation Report

## MSJ; Agent's Liability for Undisclosed Principal
### Forrest J. McKinley, Volume I - Deposition Excerpts

**Created by** TRM
**Creation date** Jul 24, 2007
**Project** absolute-mckinley70
**Sort order** Transcript, Location

## McKinley, Forrest J. - Vol. 1
89:21-90:23
**Issues:**   29 McKinley Motion
**User:** terry

```
89:21        Q.    HOW MANY TIMES HAVE YOU SPOKEN WITH MR. OLSON IN
   22   YOUR LIFE?
   23        A.    FIRST TIME WAS IN A MEETING IN HIS OFFICE IN
   24   ANCHORAGE AND MAYBE TWO PHONE CONVERSATIONS.
   25        Q.    IS THE MEETING THAT YOU HAD IN HIS OFFICE IN
90: 1   ANCHORAGE THE ONE THAT YOU WERE DESCRIBING TO MR. DICKSON?
    2        A.    AS PRIOR TO THE JOB?
    3        Q.    YES.
    4        A.    YES.
    5        Q.    IS THAT THE ONLY TIME OTHER THAN TODAY THAT YOU
    6   HAVE BEEN FACE TO FACE WITH MR. OLSON?
    7        A.    THAT'S THE ONLY TWO TIMES I'VE SEEN MR. OLSON.
    8        Q.    WHAT WAS THE PURPOSE OF YOUR VISIT TO ABSOLUTE'S
    9   OFFICE IN ANCHORAGE THE TIME THAT YOU MET WITH HIM THERE?
   10        A.    TO GO OVER THE JOB PRIOR TO BID, AND WE WENT OUT
   11   AND VIEWED THE PROJECT.
   12        Q.    WITH MR. OLSON?
   13        A.    NO.
   14        Q.    HOW LONG WERE YOU AT MR. OLSON'S OFFICE?
   15        A.    THREE HOURS MAYBE.
   16        Q.    WHO ELSE WAS PRESENT?
   17        A.    TODD ELMORE AND THE -- WHAT WAS HIS NAME?
   18   JASON PETERSON I BELIEVE.
   19        Q.    WAS MR. PUETT PRESENT?
   20        A.    YES.
   21        Q.    WHAT DID YOU COVER WHILE YOU WERE THERE?
   22        A.    GOING OVER THE CONTRACT PRIOR TO GOING OUT AND
   23   LOOKING AT THE PROJECT.
```

## McKinley, Forrest J. - Vol. 1
91:24-93:16
**Issues:**   29 McKinley Motion
**User:** terry

```
91:24        Q.    HOW MANY DAYS DID YOU VISIT ABSOLUTE'S OFFICE?
   25        A.    I BELIEVE TWO TIMES.
92: 1        Q.    WAS MR. OLSON THERE ON BOTH OCCASIONS?
    2        A.    NO.
    3        Q.    WAS MR. PUETT THERE ON BOTH OCCASIONS?
    4        A.    YES.
    5        Q.    WAS MR. OLSON THERE ON THE FIRST OCCASION?
    6        A.    I'M NOT -- I'M NOT SURE IF IT WAS THE FIRST DAY
    7   OR SECOND DAY.
    8        Q.    HE WAS THERE ON ONE OF THE TWO DAYS?
    9        A.    ONE OF THE TWO DAYS.
   10        Q.    BUT ONLY ONE OF THE TWO DAYS?
   11        A.    YES.
   12        Q.    AND WHAT LENGTH OF TIME DID YOU MEET WITH MR.
   13   OLSON IN PARTICULAR ON THE DAY THAT YOU DID MEET WITH HIM?
   14        A.    PROBABLY LESS THAN AN HOUR.
   15        Q.    WHAT TOPICS DID YOU COVER WHILE YOU MET WITH MR.
```

```
     16  OLSON?
     17       A.   NOTHING REALLY SPECIFIC ON THE JOB.  IT WAS DONE
     18  WITH TODD AND JASON.
     19       Q.   DO YOU RECALL ANYTHING ABOUT WHAT ISSUES YOU
     20  COVERED DURING YOUR HOUR WITH MR. OLSON?
     21       A.   NO, NOT WITHIN THE HOUR WITH MR. OLSON.
     22       Q.   DO YOU RECALL ANYTHING ELSE THAT YOU COVERED
     23  WHILE YOU WERE AT ABSOLUTE'S OFFICE ON EITHER ONE OF THOSE
     24  TWO DAYS OTHER THAN REVIEWING THE SPECIFICATIONS AND THE
     25  GENERAL CONDITIONS OF THE CONTRACT AND YOUR WORK PLAN?
93:   1       A.   THE WORK PLAN, THE AMOUNT OF WORK THAT THEY WERE
      2  SUPPOSED TO PERFORM, AND THE RENTING OF THE HIGH PRESSURE
      3  WATER BLASTER.
      4       Q.   SO SUBSEQUENT TO YOUR MEETING WITH MR. OLSON YOU
      5  COMMUNICATED WITH HIM, BUT ON YOUR SUBSEQUENT
      6  COMMUNICATIONS IT WAS ONLY IN CORRESPONDENCE OR VIA
      7  TELEPHONE; WAS THAT RIGHT?
      8       A.   RIGHT.
      9       Q.   WHEN WAS THE FIRST TIME THAT YOU SPOKE TO MR.
     10  OLSON VIA TELEPHONE?
     11       A.   SPECIFIC DATES I DON'T HAVE.  WE'D HAVE TO GO TO
     12  THE PHONE LOGS.
     13       Q.   DO YOU HAVE PHONE LOGS?
     14       A.   NO.  BUT THERE'S PHONE RECORDS OF PHONES TO
     15  ALASKA.  THAT WOULD BE THE ONLY WAY I WOULD KNOW.
     16  EVERYTHING WAS DONE BASICALLY THROUGH TOM.
```

## McKinley, Forrest J. - Vol. 1
93:20-22
Issues:    29 McKinley Motion
User: terry

```
93:20        Q.   DO YOU RECALL ANY TELEPHONE CONVERSATIONS YOU HAD
     21  WITH MR. OLSON?
     22       A.   ONE OF THEM MIDWAY THROUGH THE JOB.
```

## McKinley, Forrest J. - Vol. 1
97:4-9
Issues:    29 McKinley Motion
User: terry

```
97:   4      Q.   DO YOU RECALL ANY OTHER TELEPHONE CONVERSATIONS
      5  YOU HAD WITH MR. OLSON?
      6       A.   I RECALL ONE CONVERSATION HE CALLED.  THE LAST
      7  CONVERSATION HE CALLED WAS WHEN HE REFERRED TO A SPILL.
      8       Q.   A SPILL OF MATERIALS INTO THE BAY?
      9       A.   YES.
```