Westlaw.

248 Cal.App.2d 292 Page 1
248 Cal.App.2d 292, 56 Cal.Rptr. 365
**(Cite as: 248 Cal.App.2d 292)**

J & J Builders Supply v. Caffin,
Cal.App. 1967.

Court of Appeal, Second District, Division 5, California.
J & J BUILDERS SUPPLY, a California corporation, Plaintiff and Respondent,
v.
Ron CAFFIN and Lawrence Jeffrey, Defendants and Appellants.
**Civ. 29087.**

Feb. 1, 1967.

Action by corporate supplier of building materials against former individual masonry contractor and another individually and as copartners to recover debt allegedly arising from delivery of building materials at their request. The Superior Court of Los Angeles County, William E. Fox, J., entered judgment for the plaintiff against the defendants individually and as copartners, and they appealed. The Court of Appeal, Hufstedler, J., held that if former individual contractor who had been supplier's customer for about a year was acting as agent for corporate contractor when he introduced his ' new partner' to supplier's officers and told them he wanted to discontinue his account and start with a new account, he was personally liable on the indebtedness for acting as agent of undisclosed principal when credit was extended, and that failure of his purported partner to deny statements of partnership coupled with purported partner's admission to supplier's officer seeking to collect the bill that he had held himself out to supplier as a partner and extension of credit by supplier to the defendants in fictitious name which each led supplier to believe to be their firm name were sufficient to sustain liability of purported partner as an ostensible partner.

Affirmed.
West Headnotes
**[1] Appeal and Error 30 930(1)**

30 Appeal and Error
    30XVI Review
        30XVI(G) Presumptions
            30k930 Verdict
                30k930(1) k. In General. Most Cited Cases

Reviewing court was required to view evidence most favorably to verdict winner.

**[2] Corporations 101 431**

101 Corporations
    101XI Corporate Powers and Liabilities
        101XI(B) Representation of Corporation by Officers and Agents
            101k431 k. Undisclosed Agency for Corporation. Most Cited Cases
If former individual masonry contractor who had been corporate supplier's customer for about a year was acting as agent for corporate contractor when he introduced his " new partner" to supplier's officers and told them he wanted to discontinue his account and start with a new account, he was personally liable on the indebtedness for acting as agent of undisclosed principal when credit was extended.

**[3] Principal and Agent 308 145(4)**

308 Principal and Agent
    308III Rights and Liabilities as to Third Persons
        308III(B) Undisclosed Agency
            308k145 Liabilities of Undisclosed Principal
                308k145(4) k. Election to Hold Principal or Agent. Most Cited Cases
Where one deals with another believing the other to be a principal and subsequently learns that the other was an agent of an undisclosed principal, the first may recover if at all, from the other or from the undisclosed principal.

**[4] Principal and Agent 308 146(1)**

308 Principal and Agent
    308III Rights and Liabilities as to Third Persons
        308III(B) Undisclosed Agency
            308k146 Liabilities of Agent of Undisclosed Principal
                308k146(1) k. In General. Most Cited Cases
If a person would excuse himself from responsibility on ground of agency, he must show that he disclosed his principal when making the contract and that he acted on principal's behalf, so as to enable party with whom he deals to have recourse to principal in case agent had authority to bind him.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

248 Cal.App.2d 292                                                                                                                         Page 2
248 Cal.App.2d 292, 56 Cal.Rptr. 365
**(Cite as: 248 Cal.App.2d 292)**

**[5] Corporations 101 ⚿431**

101 Corporations
    101XI Corporate Powers and Liabilities
        101XI(B) Representation of Corporation by Officers and Agents
            101k431 k. Undisclosed Agency for Corporation. Most Cited Cases
Corporate contractor's filing of certificate stating that it was doing business under fictitious name of a masonry firm was not the performance of former individual masonry contractor's duty to disclose to corporate supplier the name of his principal when he told supplier's officers that he wanted to discontinue his own account and start with account in the firm name, and filing of the certificate thus was immaterial to liability of individual contractor for materials furnished for firm's account. West's Ann.Civ.Code, § 2466.

**[6] Corporations 101 ⚿431**

101 Corporations
    101XI Corporate Powers and Liabilities
        101XI(B) Representation of Corporation by Officers and Agents
            101k431 k. Undisclosed Agency for Corporation. Most Cited Cases
Constructive notice to corporate supplier of contents of corporate contractor's certificate stating that it was doing business under fictitious name of masonry firm was not substitute for actual notice by former individual masonry contractor to supplier of corporate contractor's capacities when individual contractor asked officers of supplier to discontinue his account and start with account in name of the firm. West's Ann.Civ.Code, § 2466.

**[7] Names 269 ⚿10**

269 Names
    269k8 Mode of Conferring or Acquiring
        269k10 k. Assumed Names. Most Cited Cases
The statute providing for filing of fictitious business name certificates is designed to make available to the public, and especially to creditors, the identities of persons so doing business to benefit creditors, not estop creditors who do not rely on the record nor to shield persons doing business under fictitious names against creditors who do not avail themselves of information in the records. West's Ann.Civ.Code, § 2466.

**[8] Partnership 289 ⚿43**

289 Partnership
    289I The Relation
        289I(B) As to Third Persons
            289k43 k. Individuals Transacting Business in Firm or Corporate Name. Most Cited Cases
Former individual masonry contractor who obtained credit from corporate supplier by holding out himself and another as copartners doing business under fictitious name of masonry firm could not be heard to say, when sued for balance due for materials furnished pursuant to the account, that the firm was not the fictitious name under which he was doing business but was the fictitious name in which a corporation was doing business or that supplier should not have taken representation of copartnership seriously.

**[9] Partnership 289 ⚿63**

289 Partnership
    289II The Firm, Its Name, Powers, and Property
        289k63 k. The Firm as a Distinct Entity. Most Cited Cases
A partnership is not a legal entity apart from exceptional circumstances.

**[10] Partnership 289 ⚿136**

289 Partnership
    289IV Rights and Liabilities as to Third Persons
        289IV(A) Representation of Firm by Partner
            289k136 k. Use of Firm Name. Most Cited Cases

**Partnership 289 ⚿161**

289 Partnership
    289IV Rights and Liabilities as to Third Persons
        289IV(A) Representation of Firm by Partner
            289k161 k. Individual Act or Interest as Creating Individual Liability. Most Cited Cases
When former individual masonry contractor represented himself as partner to corporate supplier's officers to whom individual contractor had made request that his own account be discontinued and that account in firm name of partnership be established, individual contractor pledged his own unlimited liability to respond to supplier for debts incurred by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

248 Cal.App.2d 292                                                                                              Page 3
248 Cal.App.2d 292, 56 Cal.Rptr. 365
**(Cite as: 248 Cal.App.2d 292)**

him or his partner within scope of partnership, and the representation of partnership, even if disbelieved, did not diminish or enlarge personal liability he assumed in obtaining credit for himself.

[11] Partnership 289 ⚿34

289 Partnership
   289I The Relation
      289I(B) As to Third Persons
         289k33 Estoppel by Holding Out as Partner
           289k34 k. In General. Most Cited Cases
When it is contended that defendant is an ostensible partner, the question is whether his acts and conduct were sufficient to lead creditor to believe that he was copartner and assumed responsibility as such.

[12] Partnership 289 ⚿218(3)

289 Partnership
   289IV Rights and Liabilities as to Third Persons
      289IV(D) Actions by or Against Firms or Partners
         289k218 Trial
           289k218(3) k. Questions for Jury. Most Cited Cases
The question whether acts and conduct of alleged ostensible partner were sufficient to lead creditor to believe that purported partner was copartner and assumed responsibility as such is one of fact to be determined from all evidence presented.

[13] Partnership 289 ⚿46

289 Partnership
   289I The Relation
      289I(C) Evidence
         289k45 Admissibility
           289k46 k. In General. Most Cited Cases
Unauthorized declarations of individual outside presence of second individual are not admissible to establish ostensible partnership between the two.

[14] Partnership 289 ⚿49

289 Partnership
   289I The Relation
      289I(C) Evidence
         289k45 Admissibility
           289k49 k. As Against Partners. Most Cited Cases
Declarations of partnership by former individual masonry contractor in presence of ostensible partner who remained silent while former contractor asked corporate supplier's officers to cancel his account and establish one for the partnership were admissible as adoptive admissions of ostensible partner, in action by supplier to recover balance allegedly due for supplies furnished pursuant to the account.

[15] Partnership 289 ⚿35

289 Partnership
   289I The Relation
      289I(B) As to Third Persons
         289k33 Estoppel by Holding Out as Partner
           289k35 k. Acts and Conduct Constituting Holding Out. Most Cited Cases
Failure of former individual masonry contractor's alleged partner to deny statements of partnership in his presence by individual contractor when he asked officers of corporate supplier to discontinue his account and open one in name of partnership firm, purported partner's later admission to supplier's officer seeking to collect unpaid balance of firm's account that purported partner had held himself out to supplier as partner, and extension of credit in fictitious name which each had led supplier to believe to be firm name of copartnership were sufficient to sustain liability of purported partner as ostensible partner.

**\*\*367 \*293** Lever, Anker & Israel, Beverly Hills, for defendants and appellants.
David G. Jackson, Arcadia, for plaintiff and respondent.
HUFSTEDLER, Associate Justice.
Plaintiff, J & J Builders Supply, sued defendants, Caffin and Jeffrey, individually and as copartners doing business as Perry Masonry, to recover a debt alleged to have arisen from plaintiff's delivery to the defendants of building materials at their request. After a judgment in favor of plaintiff against the defendants, individually and as copartners, for $5,851.91, defendants appeal, contending that the evidence was insufficient to support the judgment.

In September of 1963 Jeffrey and Caffin met with the president and secretary-treasurer of the plaintiff's corporation. Jeffrey, a masonry contractor, had been a customer of plaintiff's **\*294** for a year or so before the meeting and had always paid his bills promptly. Jeffrey brought Caffin into the plaintiff's office and introduced him to the plaintiff's officers, stating in Caffin's presence: ' This is my new partner **\*\*368** \* \*

248 Cal.App.2d 292     Page 4
248 Cal.App.2d 292, 56 Cal.Rptr. 365
**(Cite as: 248 Cal.App.2d 292)**

* (W)e are going to go into a new business, and I want to discontinue Larry Jeffrey's account and start with Perry Masonry. * * * (We are) going to go out after tract work and operate on a larger scale * * * We are going to do a lot of work, and (Caffin) has got a lot of money, is going to throw a lot of money into the business.' Caffin said nothing. Plaintiff opened an account under the name ' Perry Masonry' and began delivering masonry materials to homesites shortly after that conversation. Invoices addressed to Perry Masonry were paid by checks bearing the printed name ' Perry Masonry' and, in very small type, the additional words ' a division of the Adnuel Fireplace Corp.' Plaintiff's officers never observed the small type. When plaintiff stopped receiving payment for the materials shipped, it cut off credit. Plaintiff's secretary-treasurer, Duncan, went to see the defendants at their office to collect the unpaid balance of the account and at that time had a conversation with both of them. Caffin told him that he was not liable, adding, ' It's a corporation, so I am not personally responsible.' Duncan said, ' Well, you told me you were partners.' To which Caffin replied, ' I, well, I always call anybody that I go in business with my partner no matter what the deal is.'

Before the first conversation with defendants, plaintiff knew that Caffin and Jeffrey had participated in forming a corporation called ' Adnuel Fireplace Corp.' (hereinafter Adnuel) to manufacture fireplace throats some time in 1963, but plaintiff believed that Adnuel and Perry Masonry were entirely separate companies. Plaintiff had done some business with Adnuel, but plaintiff never delivered materials to be used in manufacturing fireplace throats to Adnuel nor to Perry Masonry. All of the materials which are the subject of the debt were materials sent to tracts for use in residential construction. Defendants never told the plaintiff that any of the masonry materials were being purchased for or by Adnuel. Defendants made no claim that Adnuel was the principal until after plaintiff cut off credit and pressed the defendants for payment of the debt. The sole basis upon which the defendants contend that plaintiff had any prior notice of their claim that Adnuel was the principal is their filing upon Adnuel's behalf a certificate of doing business under fictitious firm *295 name, showing Adnuel doing business as Perry Masonry. Plaintiff had no actual notice of the filing of the certificate.

Defendants contend upon appeal that the debt was incurred by Adnuel, a corporation, for which they are not individually liable, and that the evidence was insufficient to sustain liability on the theory that defendants were copartners responsible for the debt.

*Liability of Jeffrey*

[1][2][3][4][5][6][7] The evidence, viewed most favorably to the respondent as it must on appeal (Crawford v. Southern Pac. Co. (1935) 3 Cal.2d 427, 429, 45 P.2d 183), was ample to support the judgment against Jeffrey. If, as Jeffrey contends, the principal was Adnuel, and Jeffrey was merely an agent for the corporation, he is nevertheless personally liable because he was acting as an agent of an undisclosed principal at the time plaintiff extended credit.
' The rule is well established that, where one deals with another believing him to be a principal, and subsequently learns that he was dealing with an agent of an undisclosed principal, he may recover either from the person with whom he dealt or from the undisclosed principal. * * * If a person would excuse himself from responsibility on the ground of agency, he must show that he disclosed his principal at the time of making the contract, and that he acted on his behalf, so as to enable the party with whom he deals to have recourse to the principal in case the agent had authority to bind him.' Clark v. Baen (1925) 75 Cal.App. 389, 394, 242 P. 872, 874. (Bradford v. Woodworth **369 (1895) 108 Cal. 684, 41 P. 797; cf. Standard Oil of Cal. v. Doneux (1961) 192 Cal.App.2d 608, 611-612, 13 Cal.Rptr. 749.)

Adnuel's filing a certificate stating that it was doing business under the fictious name of Perry Masonry is immaterial. Adnuel's action is not a performance of Jeffrey's duty to disclose the name of his principal. Constructive notice of the contents of Adnuel's certificate is not a substitute for actual notice of Jeffrey's and Adnuel's capacities in the transaction. Section 2466 of the Civil Code is designed to make available to the public, and especially to creditors, the identities of persons who are doing business under fictitious names for the purpose of benefiting creditors; the purpose is not to estop creditors who do not rely on the public record nor to provide a shield to persons who do business under fictitious names against their creditors who do not avail themselves of *296 the information contained in the records prescribed by section 2466 of the Civil Code.[FN1]

> FN1. None of the cases cited by appellants support the proposition that creditors have a duty to check the public records to ascertain

the identity of those who are doing business under fictitious names, or that creditors who do not check the public records are nevertheless bound by whatever information such an examination would reveal. Andrews v. Glick (1928) 205 Cal. 699, 272 P. 587; Bank of America N.T. & S. v. National Funding Corporation (1941) 45 Cal.App.2d 320, 114 P.2d 49; Hixson v. Boren (1956) 144 Cal.App.2d 547, 301 P.2d 615, each involve the right of one doing business under a fictitious firm name who has not complied with section 2466 of the Civil Code to bring an action by way of a complaint or cross-complaint. Levelon Builders, Inc. v. Lynn (1961) 194 Cal.App.2d 657, 15 Cal.Rptr. 582, held that one who had substantially complied with section 2466 could maintain an action, particularly where the defense of non-compliance with the statute was improperly raised. None of these cases have anything to do with the rights or duties of creditors. J. C. Wattenbarger & Sons v. Sanders (1963) 216 Cal.App.2d 495, 30 Cal.Rptr. 910, held that a limited-partner defendant was not an ostensible general partner merely because the fictitious name certificate listed his name without a designation that he was a limited partner. To the extent that J. C. Wattenbarger & Sons may be in point, it implies that the creditor could not rely entirely on the certificate which was filed.

[8][9][10] Jeffrey's liability is also supported by the evidence that he obtained credit from the plaintiff by holding out himself and Caffin as copartners doing business under the ficitious name Perry Masonry. He can not be heard to say that Perry Masonry was not the fictitious name under which he was doing business, but the fictitious name in which a third person, Adnuel, was doing business. He is in no better position to urge that plaintiff should not have taken seriously his representation of copartnership. A partnership, of course, is not a legal entity apart from exceptional circumstances, none of which here appear. (Reed v. Industrial Accident Commission (1937) 10 Cal.2d 191, 192-193, 73 P.2d 1212, 114 A.L.R. 720; Sonberg v. Bergere (1963) 220 Cal.App.2d 681, 682, 34 Cal.Rptr. 59; Rudnick v. Delfino (1956) 140 Cal.App.2d 260, 266, 294 P.2d 983.) When Jeffrey represented himself as a partner, he necessarily pledged his own unlimited liability to respond to the plaintiff for any debts incurred either by him or by Caffin within the scope of their partnership The representation of partnership, even if disbelieved, in no way diminishes or enlarges the personal liability which he assumed in obtaining credit for himself.

*Liability of Caffin*

The liability of Caffin rests on evidence which is slightly different from that offered against Jeffrey. At the time of the initial conversation with the plaintiff's officers, Caffin let Jeffrey do all the talking. He sat silently by while Jeffrey told **\*297** plaintiff's officers that Caffin was a partner and that Caffin was going to invest a lot of money in Perry Masonry. That he was fully aware of Jeffrey's representations is apparent from his later conversation with **\*\*370** Duncan, in which he admitted that he told Duncan that he and Jeffrey were partners, and explained that he always called anybody that he went into business with his partner ' no matter what the deal is'.

[11][12][13][14] When it is contended that a defendant is an ostensible partner, the question is whether his acts and conduct were sufficient to lead the creditor to believe that he was a copartner and that he assumed responsibility as such. This is an issue of fact for the trial court to determine from all of the evidence presented. (J. C. Wattenbarger & Sons v. Sanders, supra, 216 Cal.App.2d at 500-501, 30 Cal.Rptr. 910.) Unauthorized declarations of Jeffrey made outside the presence of Caffin would not be admissible to establish ostensible partnership of Caffin. (See Vanderhurst, Sanborn, & Co. v. De Witt (1892) 95 Cal. 57, 62-63, 30 P. 94, 20 L.R.A. 595; Milstein v. Sartain (1943) 56 Cal.App.2d 924, 932, 133 P.2d 836.) However, declarations of partnership by Jeffrey in Caffin's presence under circumstances in which Caffin must have known that a response negativing Jeffrey's representation should be made, to avoid misleading plaintiff, are properly received as adoptive admissions of Caffin.

The case most closely in point in California is Singh v. Kashian (1954) 124 Cal.App.2d Supp. 879, 268 P.2d 768. In that case Joseph, a bail broker, arranged for the execution of a property bond for $1,000 by Kashian and Shuklian to free Lahab Singh from custody. One B. Ishar Singh deposited $1,000 cash with the broker. An arrangement was made for a substitution of Samond Singh's cash for B. Ishar Singh's deposit. Joseph, Ishar, Samond, Kashian, and

248 Cal.App.2d 292 Page 6
248 Cal.App.2d 292, 56 Cal.Rptr. 365
**(Cite as: 248 Cal.App.2d 292)**

Shuklian met at Joseph's office. Joseph stated in the presence of Kashian and Shuklian and the plaintiff Singh that he, Kashian, and Shuklian were partners. The ' partners' made no denial. In the presence of Kashian and Shuklian, Joseph delivered a receipt for $1,000 to Samond, signed ' Mike Kashian and A. Shuklian, by Aram Joseph' . The court concluded that upon these facts a reasonable inference arose that the plaintiff relied upon the representations of partnership in paying over his money to the defendants. The court held that the evidence was sufficient to sustain the judgment against Kashian and Shuklian on the alternative theories of partnership (Corp. **\*298** Code, s 15009, subd. 1) or evidence of an estoppel to deny a partnership (Corp. Code, s 15016).

[15] Caffin's failure to deny Jeffrey's statements of partnership, coupled with his later admission that he had held himself out to the plaintiff as a partner, and the extension of credit to the defendants in the fictitious name which each led the plaintiff to believe was the firm name of the copartnership, were sufficient to sustain the liability of Caffin as an ostensible partner of Jeffrey's.

The judgment is affirmed.

KAUS, P.J., and STEPHENS, J., concur.
Cal.App. 1967.
J & J Builders Supply v. Caffin
248 Cal.App.2d 292, 56 Cal.Rptr. 365

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.